## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HON. BENNIE G. THOMPSON,      ) | |
|   in his personal capacity,       ) | |
| HON. KAREN R. BASS,          ) | |
|   in her personal capacity,       ) | |
| HON. STEPHEN I. COHEN,      ) | |
|   in his personal capacity,       ) | Civil Case No. 1:21-CV-400-APM |
| HON. VERONICA ESCOBAR,     ) | Honorable Amit P. Mehta |
|   in her personal capacity,       ) | |
| HON. PRAMILA JAYAPAL,       ) | |
|   in her personal capacity,       ) | **DEFENDANT OATH KEEPERS** |
| HON. HENRY C. JOHNSON, JR.,    ) | **MOTION TO DISMISS** |
|   in his personal capacity,       ) | **PURSUANT TO** |
| HON. MARCIA C. KAPTUR,      ) | **Fed.R.Civ.P. 12(b)(1) & (6)** |
|   in her personal capacity,       ) | |
| HON. BARBARA J. LEE,          ) | |
|   in her personal capacity,       ) | |
| HON. JERROLD NADLER,         ) | |
|   in his personal capacity,       ) | |
| HON. MAXINE WATERS,         ) | |
|   in her personal capacity, and    ) | |
| HON. BONNIE M. WATSON COLEMAN,) | |
|   in her personal capacity        ) | |
|                   ) | |
|       Plaintiffs,           ) | |
| v.                         ) | |
|                   ) | |
| DONALD J. TRUMP,            ) | |
|   solely in his personal, capacity,   ) | |
| RUDOLPH W. GIULIANI,         ) | |
| OATH KEEPERS,              ) | |
| PROUD BOYS INTERNATIONAL, L.L.C.) | |
| WARBOYS LLC, and           ) | |
| ENRIQUE TARRIO            ) | |
|                   ) | |
|       Defendants.          ) | |

Janette Louard (*pro hac vice*
  *motion to befiled*)
Anthony P. Ashton, Bar No. MD0096
Anna Kathryn Barnes, Bar No. 1719493
  (*motion for admission pending*)
Attorneys for Plaintiffs
NAACP Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

Joseph M. Sellers, Bar No. 318410
Brian Corman, Bar No. 1008635
Alison S. Deich, Bar No. 1572878
  (*motion foradmission pending*)
Attorneys for Plaintiffs
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, EastTower
Washington, DC 20005
(202) 408-4600
FAX: (202) 408-4699
jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com

Kerry Lee Morgan, 424566
Pentiuk, Couvreur & Kobiljak, P.C.
Attorneys for Defendant
Oath Keepers, Only
2915 Biddle Street
Suite 200
Wyandotte, MI 48192
(734) 281-7100
Kmorgan@pck-law.com

_____/

## DEFENDANT OATH KEEPERS MOTION TO DISMISS
## PURSUANT TO Fed.R.Civ.P. 12(b)(1) & (6)

Defendant Oath Keepers respectfully moves the Court to dismiss the Plaintiffs' Amended

Complaint under Federal Rules of Civil Procedure12(b)(1), and dismiss all claims for failure to

state a claim upon which relief can be granted under Federal Rules of Civil Procedure12(b)(6).

The undersigned counsel certifies that counsel communicated in writing on May 25,

2021, with opposing counsel, explaining the nature of the relief to be sought by way of this

motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence.

Pursuant to LCvR 78.1, defendant Oath Keepers requests a remote oral hearing on its Motion.

Dated:  May 26, 2021.

/s/  Kerry Lee Morgan
Kerry Lee Morgan, 424566
Pentiuk, Couvreur & Kobiljak, P.C.
Attorneys for Defendant Oath Keepers, Only
2915 Biddle Street
Suite 200
Wyandotte, MI 48192
 (734) 281-7100
Kmorgan@pck-law.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
HON. BENNIE G. THOMPSON,                )
  in his personal capacity,                   )
HON. KAREN R. BASS,                     )
  in her personal capacity,                   )
HON. STEPHEN I. COHEN,                  )
  in his personal capacity,                   )        Civil Case No. 1:21-CV-400-APM
HON. VERONICA ESCOBAR,                  )        Honorable Amit P. Mehta
  in her personal capacity,                   )
HON. PRAMILA JAYAPAL,                   )
  in her personal capacity,                   )        **DEFENDANT OATH KEEPERS**
HON. HENRY C. JOHNSON, JR.,             )        **STATEMENT OF POINTS AND**
  in his personal capacity,                   )        **AUTHORITIES IN SUPPORT OF**
HON. MARCIA C. KAPTUR,                  )        **ITS MOTION TO DISMISS**
  in her personal capacity,                   )
HON. BARBARA J. LEE,                    )
  in her personal capacity,                   )
HON. JERROLD NADLER,                    )
  in his personal capacity,                   )
HON. MAXINE WATERS,                     )
  in her personal capacity, and               )
HON. BONNIE M. WATSON COLEMAN,)
  in her personal capacity                    )
                                        )
      Plaintiffs,                        )
v.                                      )
                                        )
DONALD J. TRUMP,                        )
  solely in his personal, capacity,          )
RUDOLPH W. GIULIANI,                    )
OATH KEEPERS,                           )
PROUD BOYS INTERNATIONAL, L.L.C.)
WARBOYS LLC, and                        )
ENRIQUE TARRIO                          )
                                        )
      Defendants.                        )
_____ )

Janette Louard (*pro hac vice
  motion to befiled*)
Anthony P. Ashton, Bar No. MD0096
Anna Kathryn Barnes, Bar No. 1719493
  (*motion for admission pending*)
Attorneys for Plaintiffs
NAACP Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org


Joseph M. Sellers, Bar No. 318410
Brian Corman, Bar No. 1008635
Alison S. Deich, Bar No. 1572878
  (*motion foradmission pending*)
Attorneys for Plaintiffs
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, EastTower
Washington, DC 20005
(202) 408-4600
FAX: (202) 408-4699
jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com

Kerry Lee Morgan, 424566
Pentiuk, Couvreur & Kobiljak, P.C.
Attorneys for Defendant
Oath Keepers, Only
2915 Biddle Street
Suite 200
Wyandotte, MI 48192
(734) 281-7100
Kmorgan@pck-law.com

# TABLE OF CONTENTS

**Page #**

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS………...v

TABLE OF AUTHORITIES………...........................................................................................vi

MOST CONTROLLING AUTHORITIES

*Raines v Byrd, 521 US 811, 818–19; 117 S Ct 2312, 2317;
138 L Ed 2d 849 (1997) (Individual members lack standing to assert the
institutional interests of a legislature)……………………………………………18,19, 22, 23, 25

*Virginia House of Delegates v Bethune-Hill, 587 U.S. ____, 139 S Ct 1945,
1953–54; 204 L Ed 2d 305 (2019)  (A single House of a legislature lacks
capacity to assert interests belonging to the legislature as a whole.)……………………………19

*Blumenthal v Trump, 949 F3d 14, 18–20; 445 US App DC 169, 173–75,
cert den 141 S Ct 553; 208 L Ed 2d 175 (2020) (Only an institution can assert
an institutional injury.)…………………………………………………………………….......24

I.  INTRODUCTION………………………………………………………………………...1

II. STANDARD OF REVIEW……………………………………………………………....2

        A.     Fed. R. Civ. P. 12(b)(1)………………………………………………………....2
        B.     Fed. R. Civ. P. 12(b)(6)…………………………………………………………3

III. ARGUMENT--PLAINTIFFS' CLAIM UNDER 42 U.S.C. § 1985(1) SHOULD BE
       DISMISSED……………………………………………………………………………4

A.  PLAINTIFFS' COMPLAINT STATES NO CONSTITUTIONAL VIOLATION
THAT WILL SUPPORT A CLAIM UNDER 42 USC 1985(1)…………………………………4

        1.     42 USC 1985(1)…………………………………………………………………4
        2.     Article II, section 1……………………………………………………………...5
        3.     The 12th Amendment…………………………………………………………..6
        4.     No Plaintiffs are granted any Constitutional Duty to Perform In Their
             Personal Capacity………………………………………………………………7
        5.     No individual Member of the House of Representatives has any
             Constitutional Duty to vote, Tally or Count Electoral Certifications…………..7
        6.     The Constitutional Involvement Prescribed Pertains to The House Of
             Representatives as an Institution, not of its members……………………………8
        7.     The Complaint alleges that the Joint Session Stood In Recess Because Of
             a Challenge to The Vote, Not Because Of Any Defendants' Conduct…………..9

B.  PLAINTIFFS' ALLEGATIONS ARE SPECULATIVE AND CONCLUSORY,
AND LACK SUFFICIENT FACTS TO PLAUSIBLY ENTITLE THEM TO RELIEF………..10

    1.    Plaintiffs Failed To Plead The Essential Elements Of 42 USC 1985(1)………...11
    2.    Plaintiffs Failed To State a Violation of 42 USC 1985(1) Against Oath
        Keepers……………………………………………………………………………..11

C.  PLAINTIFFS LACK STANDING TO ALLEGE DEPRIVATION OF THEIR
OFFICIAL DUTIES IN ARTICLE II, SECTION 1 AND THE 12TH AMENDMENT,
WHEN THEY SUE EXCLUSIVELY IN THEIR PERSONAL CAPACITY…………………..17

    1.    Plaintiffs lack Standing under Article III, § 2 of the U.S. Constitution to
        sue in their personal capacity…………………………………………………………17
    2.    Plaintiffs Lack Standing As House Members Suing In Their Personal
        Capacity, as they Have No Personalized Stake In The Outcome Of The
        Litigation…………………………………………………………………………22
    3.    Plaintiffs Lack Standing Because As Members Suing In Their Personal
        Capacity, They Have no institutionalized Injury shared by the House of
        Representatives……………………………………………………………………23
    4.    Individual Members of Congress Lack Standing To Assert the
        Institutional Interests of a Legislature………………………………………………24

D.  PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER 42 USC § 1985(1),
BECAUSE THE CONSTITUTIONAL TEXT THEY PURPORT TO RELY UPON
SUPPORTS ONLY AN INSTITUTIONAL RIGHT IN THE HOUSE OF
REPRESENTATIVES, NOT A POWER VESTED IN INDIVIDUAL MEMBERS…………...26

E.  DEFENDANT'S STRONG FIRST AMENDMENT INTERESTS TO SPEAK,
ASSEMBLE AND PETITION THE GOVERNMENT FURTHER FAVORS DISMISSAL
WITH PREJUDICE OF PLAINTIFFS' CLAIMS…………………………………………27

IV. CONCLUSION…………………………………………………………………………31

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS

Civil Case No. 1:21-CV-400-APM
Honorable Amit P. Mehta
Thompson, et al, v. Trump, et al.

Certificate required by LCvR 26.1 of the Local Rules of the United States District Court for the

District of Columbia:

I, the undersigned, counsel of record for defendant Oath Keepers, certify that to the best of my

knowledge and belief, the following are parent companies, subsidiaries, affiliates, or companies

which own at least 10% of the stock of Oath Keepers which have any outstanding securities in

the hands of the public.

NONE

These representations are made in order that judges of this Court may determine the need for

recusal.

Attorney of Record for Oath Keepers

Dated:  May 26, 2021.

/s/  Kerry Lee Morgan
Kerry Lee Morgan, 424566
Pentiuk, Couvreur & Kobiljak, P.C.
Attorneys for Defendant Oath Keepers, Only
2915 Biddle Street
Suite 200
Wyandotte, MI 48192
 (734) 281-7100
Kmorgan@pck-law.com

# TABLE OF AUTHORITIES

Page #

## CASES

Alexander v. Wash. Gas Light Co.,
 481 F. Supp. 2d 16, 31 (D.D.C. 2006)……………………………………………….4

Allen v. Wright,
 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), abrogated on other
 Grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,
 572 U.S. 118 (2014)………………………………………………………………… 18

Arizona State Legislature v. Arizona Indep. Redistricting Comm'n,
 576 U.S. 787, 135 S. Ct. 2652, 2664, 192 L.Ed.2d 704 (2015)…………………………23

Ashcroft v. Iqbal,
 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)……………………………..3

Bell Atl. Corp. v. Twombly,
 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)……………………………..3

Bender v. Williamsport Area School Dist.,
 475 U.S. 534, 543–544, 106 S.Ct. 1326, 1332, 89 L.Ed.2d 501 (1986)…………………18

Blumenthal v Trump,
 949 F3d 14, 18–20; 445 US App DC 169, 173–75, cert den 141 S Ct 553;
 208 L Ed 2d 175 (2020)……………………………………………………………….24

Bray v. RHT, Inc.,
 748 F. Supp. 3, 5 (D.D.C. 1990)…………………………………………………………..4

Coleman v. Miller,
 307 U.S. 433, 438, 59 S.Ct. 972, 83 L.Ed. 1385 (1939)…………………………………24

DeJonge v. Oregon,
 299 U.S. 353, 364, 365 (1937)…………………………………………………………...28

Eastern R.R. Presidents Conf. v. Noerr Motor Freight,
 365 U.S. 127 (1961)……………………………………………………………………...28

Graman v. NASD, No.
 97-1556-JR, 1998 WL 294022, *4 (D.D.C. Apr. 24, 1998)………………………………4

Gulf Coast Mar. Supply, Inc. v. United States,
 867 F.3d 123, 128 (D.C. Cir. 2017)………………………………………………………3

Herndon v. Lowry,
    301 U.S. 242 (1937)……………………………………………………………...28

Hollingsworth v. Perry,
    570 U. S. 693, 704 (2013)…………………………………………………………..19

Humane Soc'y of the U.S. v. Vilsack,
    797 F.3d 4, 8 (D.C. Cir. 2015)……………………………………………………….3

Kerr v. Hickenlooper,
    824 F.3d 1207, 1216 (10th Cir. 2016)……………………………………………...24

L. XIA, et al., v. Tillerson,
    2017 WL 3255167, at 35-41 (D.C. Cir. Aug. 1, 2017)…………………………….4

Lagayan v. Odeh,
    199 F. Supp. 3d 21, 26 (D.D.C. 2016)……………………………………………….3

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 561, 112 S.Ct. 2130, 2136–2137, 119 L.Ed.2d 351 (1992)……………18

Maloney v Murphy,
    984 F3d 50, 62–63; 450 US App DC 261 (2020)……………………………………23

McCrea v District of Columbia,
    No. 16-CV-0808 (TSC), 2021 WL 1209219, at 17 (DDC, March 31, 2021)…………26

Mesumbe v. Howard Univ.,
    706 F. Supp. 2d 86, 92 (D.D.C. 2010)……………………………………………….4

Nanko Shipping, USA v. Alcoa, Inc.,
    107 F. Supp. 3d 174, 182 (D.D.C. 2015), rev'd and remanded on other grounds,
    850 F.3d 461 (D.C. Cir. 2017)……………………………………………………...26

Powell v. McCormack,
    395 U.S. 486, 493, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)……………………………23

Raines v Byrd,
    521 US 811, 818–19; 117 S Ct 2312, 2317; 138 L Ed 2d 849 (1997)………………18, 22

Sandvig v Sessions,
    315 F Supp 3d 1, 10–11 (DDC, 2018)……………………………………………….3, 4

Sickle v. Torres Advanced Enter. Sols., LLC,
    884 F.3d 338, 345 (D.C. Cir. 2018)………………………………………………….3

Simon v. Eastern Ky. Welfare Rights Organization,
    426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)…………………………..17

Stern v US Gypsum, Inc,
    547 F2d 1329, 1333 (CA 7, 1977)……………………………………………………….26

Summers v. Earth Island Inst.,
    555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)………………………………..2

Town of Chester v. Laroe Estates, Inc., ––– U.S. –––,
    137 S.Ct. 1645, 1650, 198 L.Ed.2d 64 (2017)…………………………………………….3

United Bhd. of Carpenters & Joiners,
    463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)……………………………26

United States of America v. Thomas Caldwell,
    CR No. 21-28……………………………………………………………………………16

United States v. Ballin,
    144 U.S. 1, 7, 12 S.Ct. 507, 36 L.Ed. 321 (1892)………………………………………25

United States v. Cruikshank,
    92 U.S. 542, 552–53 (1876) overruled on other grounds,
    United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)………….  .29

Va. House of Delegates v. Bethune-Hill,
    139 S.Ct. 1945, 1953–54(2019)………………………………………………………….24

Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,
    454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) …………………………...17

Virginia House of Delegates v Bethune-Hill, 587 U.S. ____,
    139 S Ct 1945, 1953–54; 204 L Ed 2d 305 (2019)……………………………………….19

Warth v. Seldin,
    422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)…………………………18

## CONSTITUTIONAL PROVISIONS

U.S. Const., Art. II, Sec. 1…………………………………………………………………12
U.S. Const., Art. III, Sec. 2…………………………………………………………………17
U.S. Const., Amend. 1………………………………………………………………….27, 31
U.S. Const., Amend. 12……………………………………………...…………1, 5, 7, 8, 12, 17

## COURT RULES

Federal Rule of Civil Procedure 12(b)(1) & (6)…………………………………………1, 2, 3, 7, 26

## STATUTES

3 USC § 1……………………………………………………………………………………..20
3 USC §15……………………………………………………………………………………20, 21
42 USC 1983…………………………………………………………………………………….31
42 USC § 1985(1)……………………………………………………………..4, 11, 21, 27, 30, 31
42 USC 1988…………………………………………………………………………………….2


## OTHER AUTHORITIES

Congressional Research Service, Update October 22, 2020, The Electoral College: A 2020
Presidential Election Timeline.  https://crsreports.congress.gov/product/pdf/IF/IF11641…………21

ENCYCLOPEDIA OF THE SOCIAL SCIENCES 98 (1934)…………………………………..28

Bonus Expeditionary Army
http://recordsofrights.org/events/72/the-bonus-army-march-on-washington…………………....29
https://www.nps.gov/articles/bonus-expeditionary-forces-march-on-washington.htm………...29

Defendant Oath Keepers respectfully submits this memorandum of points and authorities in support of its motion to dismiss with prejudice, under  Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, the sole count of the complaint filed by plaintiffs, for lack of standing and failure to state a claim upon which relief may be granted.

## I. INTRODUCTION

Plaintiffs bring a single count complaint under 42 USC 1985(1) alleging that on and before January 6, 2021, the defendants Donald J. Trump, Rudolph W. Giuliani, Proud Boys, and Oath Keepers conspired to incite an assembled crowd to march upon and enter the Capitol of the United States.  They further allege that defendants entered the Capitol for the common purpose of disrupting the approval by Congress of the count of votes cast by members of the Electoral College under Article II, Section 1 and the Twelfth Amendment of the United States Constitution. In doing so, plaintiffs contend that the defendants each intended to prevent, and ultimately delayed, members of Congress from convening and discharging their duty commanded by the United States Constitution to approve the results of the Electoral College in order to elect the next President and Vice President of the United States.

Plaintiffs allege they are all "Members" of the United States House of Representatives. Plaintiffs, however, do not bring their Complaint as "Members", but rather solely in his or her "personal capacity."  (Doc. 11.1, paras. 11-21).  Each plaintiff either complains that they were present to "to discharge [his or her] constitutional duty to observe and approve the votes cast by members of the Electoral College" or were prepared "to discharge [his or her] duties of tallying ballots of the Electoral College and certifying the results . . . ." (Doc. 11.1, paras. 11-16 and 17-21, respectively).

1

Plaintiffs specifically allege in 13 numbered paragraphs all of their allegations against defendant Oath Keepers.  Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and an award of attorney fees and costs pursuant to 42 USC 1988.

Defendant Oath Keepers is a non-partisan association of current and formerly serving military, police, and first responders, of all genders, races and ethnicities, who pledge to fulfill the oath all military and police take to "defend the Constitution against all enemies, foreign and domestic." That oath, mandated by Article VI of the Constitution itself, is to the Constitution, and Oath Keepers declare that they will not obey unconstitutional orders, such as orders to disarm the American people, to conduct warrantless searches, or to detain Americans as "enemy combatants" in violation of their ancient right to jury trial.

Oath Keepers also reaches out to currently serving veterans of all genders, races and ethnicities to remind them of their oaths, to teach those more about the Constitution they swore to defend, and to inspire them to defend it.  Oath Keepers also includes a membership program designated as "Associate Members", which consists of patriotic citizens who have not served in uniform but who serve now by supporting this mission with their Associate Membership and volunteer activities.

## II. STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(1).

When facing a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a plaintiff " bears the burden of showing that he has standing." Summers v. Earth Island Inst., 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).  Just because a plaintiff makes it through the courthouse doors on one claim does not mean that other claims can tag along; rather, a plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief

that is sought." <u>Town of Chester v. Laroe Estates, Inc.,</u> —— U.S. ——, 137 S.Ct. 1645, 1650, 198 L.Ed.2d 64 (2017) (citation omitted). On a motion to dismiss, plaintiffs must plead facts that, taken as true, raise a plausible standing claim. *See* <u>Humane Soc'y of the U.S. v. Vilsack</u>, 797 F.3d 4, 8 (D.C. Cir. 2015). The Court must take all facts alleged in the complaint as true and make all reasonable inferences in plaintiffs' favor. <u>*See*</u> <u>Gulf Coast Mar. Supply, Inc. v. United States</u>, 867 F.3d 123, 128 (D.C. Cir. 2017). However, the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." <u>Id.</u> <u>Sandvig v Sessions</u>, 315 F Supp 3d 1, 10–11 (DDC, 2018).

**B.  Fed. R. Civ. P. 12(b)(6).**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plausibility does not mean certainty, or that a claim is more likely to succeed than not, but rather that the claim at issue rises "above the speculative level." <u>*Twombly*</u>, 550 U.S. at 555, 127 S.Ct. 1955. In other words, if what plaintiffs lay out in the complaint actually happened, is it more than merely possible that the law has been violated? However, a complaint's "mere conclusory statements" need not be accepted as true, nor its statements of law, including "[t]hreadbare recitals of the elements of a cause of action," supported by nothing more. Iqbal, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); <u>Lagayan v. Odeh</u>, 199 F. Supp. 3d 21, 26 (D.D.C. 2016). Likewise, a court need not accept a plaintiff's legal conclusions, even if they are dressed up as factual allegations. *See* <u>Sickle v. Torres Advanced Enter. Sols., LLC</u>, 884 F.3d 338, 345 (D.C. Cir. 2018). However, courts must accept as true all facts stated in the complaint,

making all reasonable inferences in plaintiffs' favor. Id.  Sandvig v Sessions, 315 F Supp 3d 1, 10–11 (DDC, 2018).

While plaintiffs need not "establish a prima facie case" at this stage in the proceedings to survive a motion to dismiss on their single 42 USC 1985(1) claim, they still must plead sufficient facts to plausibly entitle them to relief under the elements of a Section 1981 claim. *See* Alexander v. Wash. Gas Light Co., 481 F. Supp. 2d 16, 31 (D.D.C. 2006) (requiring plaintiff "to plead facts necessary to establish a prima facie case under Section 1981") (citing Bray v. RHT, Inc., 748 F. Supp. 3, 5 (D.D.C. 1990)); Graman v. NASD, No. 97-1556-JR, 1998 WL 294022, *4 (D.D.C. Apr. 24, 1998) (requiring "essential element[s] of a section 1981 claim" be pled in complaint); see also, e.g., L. XIA, et al., v. Tillerson, 2017 WL 3255167, at 35-41 (D.C. Cir. Aug. 1, 2017) (dismissing Section 1981 claim for failure to state non-conclusory allegations of racial discrimination in the complaint); Mesumbe v. Howard Univ., 706 F. Supp. 2d 86, 92 (D.D.C. 2010) (dismissing Section 1981 claim when element of prima facie case, intentional discrimination, was not alleged in the complaint).

### III. ARGUMENT

**PLAINTIFFS' CLAIM UNDER 42 U.S.C. § 1985(1) SHOULD BE DISMISSED.**

**A.  PLAINTIFFS' COMPLAINT STATES NO CONSTITUTIONAL VIOLATION THAT WILL SUPPORT A CLAIM UNDER 42 USC 1985(1).**

1.  42 USC 1985(1).

42 USC 1985(1) states:

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from *discharging any duties thereof*; or to induce by like means any officer of the United States to *leave any State, district, or place, where his duties as an officer are required to be performed*, or to injure him in his person or property *on account of his lawful discharge of the duties of his office*, or while engaged in

the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;" (emphasis added).

The core of plaintiffs' complaint is that they have Constitutional duties which the defendants impaired. They opaquely reference duties but to establish to the Court that a possible amendment to the Complaint to be more specific would be futile, defendant addresses three possibilities.  Section 1985(1) speaks to three types of claims: 1) discharging any duties thereof, i.e., duties of the office under the United States; 2) leave the place where duties as an officer are required to be performed; and 3)  injure him or her in the lawful discharge of the duty of the office.

In each of the three cases, there must be a *duty of the office to be performed*.  The statute does not create the constitutional violation.   Plaintiffs must identity the basis for their duty elsewhere.  In the instant case they have plead that Article II, section 1, and the 12th Amendment of the United States Constitutions establish the duties of their office as Members of the House of Representatives.  Alas, a review of these two Constitutional provisions reveals the existence of *no duty of the office* incumbent upon any individual member of the House of Representatives. Nor do they reveal any duty whatsoever to be performed by persons that sue in their personal capacity.

2. Article II, section 1.

Article II, section 1 states in relevant part:

The Electors shall meet in their respective States, and vote by Ballot for two Persons, of whom one at least shall not be an Inhabitant of the same State with themselves. And they shall make a List of all the Persons voted for, and of the Number of Votes for each; which List they shall sign and certify, and transmit sealed to the Seat of the Government of the United States, directed to the President of the Senate. The President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the certificates, and the Votes shall then be counted. The Person having the greatest Number of Votes shall be the President, if such Number be a Majority of the whole Number of Electors appointed; and if there be more than one who have such Majority, and have an

equal Number of Votes, then the House of Representatives shall immediately chose by Ballot one of them for President; and if no Person have a Majority, then from the five highest on the List the said House shall in like Manner chose the President.

The Article addresses the duty of Electors, but Electors do not include any Member of the House of Representatives.  The Article also addresses the duties of the President of the Senate, but that has no relationship to any member of the House of Representatives.  The Article states that the President of the Senate shall open the certificates and the vote be counted in the "presence of … the House of Representatives.  This clause has no relationship to any duty of the House.  Nor does it establish any duty of the any individual House Member as the opportunity to observe is an institutional one, not an individual one.

3. 12th Amendment.

The 12th Amendment states in relevant part:

The Electors shall meet in their respective states and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;–the President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;–The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice.

The scope of this Amendment is the same as Article II.  No individual duty is extended to any individual member of the House.  The opportunity to observe is an institutional one. Moreover, there are no allegations that the count did not result in a winner which would have

triggered a vote in the House to choose the next President.  This is not alleged.  This did not occur.  This is not applicable.

> 4.  No Plaintiffs are Granted any Constitutional Duty In Their Personal Capacity.

In response to this complaint, defendant Oath Keepers has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) for lack of standing, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  No plaintiff in their personal capacity has standing to assert an official duty or right "to discharge [his or her] constitutional duty to observe and approve the votes cast by members of the Electoral College."  Nor does any plaintiff enjoy any Constitutional prerogative "to discharge [his or her] duties of tallying ballots of the Electoral College and certifying the results . . . ."  (Doc. 11.1, paras. 11-21).  Not even Members in their official capacity have such Constitutional standing.  Plaintiffs have plead no such actual Constitutional authorization and merely throwing in a citation to Article II, section 1 or the 12th Amendment is insufficient.

> 5. No individual Member of the House of Representatives has any Constitutional
> Duty to vote, Tally or Count Electoral Certifications.

Moreover, no provision of Article II, section 1, or the 12th Amendment established any constitutional duty of the types alleged by the plaintiffs.  Neither provision imposes a duty upon any individual Members "to observe and approve the votes cast by members of the Electoral College." Neither establishes any duty of any individual Members "of tallying ballots of the Electoral College and certifying the results."  All obligations of these provisions fall on the President of the Senate.  No Plaintiff has alleged that he or she was then the President of the Senate.  The only opportunity described (not even a duty) is the *opportunity t*o observe the vote.  This falls far short of section 1985's requirement that a duty be established by law incumbent upon any plaintiff.

6. The Constitutional Involvement Prescribed Pertains to The House Of Representatives as an Institution, not of its members.

"The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted." U.S. Const., 12th Amend.  As noted, the only constitutional *involvement* of the House of Representatives *qua* House of Representative is to observe the certificates being opened and counted in the presence "of the House of Representatives."  No constitutional provision states that any individual Member of the House has a duty to be present.  No constitutional provision states that any individual Member of the House has a Constitutional duty to count, tally, or certify anything.  No constitutional provision states that any individual Member of the House has a Constitutional duty to count or certify anything in their personal capacity.

The 12th amendment only speaks in terms of observation by the House as an institution. It speaks of no duty of the House or any of its members as plead in the complaint.[1] The duty of the President of the Senate is to open the certifications and count them in the presence of the House of Representatives—that distinct body identified in Article 1, section 1 (All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate *and House of Representatives*.) Nothing in the Amendment describes a duty pertaining to any individual House member.  It merely specifies that the House as a district institution must be present.  There is no allegation that the House of Representative was not present.

---

[1]  The 12th Amendment only has one provision that involves the House in counting votes. Plaintiffs, however, never allege the application of this contingency.  "The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice."

<u>7.  The Complaint alleges that the Joint Session Stood In Recess Because Of A
Challenge To The Vote, Not Because Of Any Defendants' Conduct.</u>

The complaint alleges that the House was present in a joint session on January 6, 2021, at 1 pm.  It is alleged that the Joint Session was recessed by Congress itself due to an objection to the count, and that the plaintiffs were waiting to reconvene, some returning to their office, some remaining on the Floor or the House or Gallery of the House.   According to the Complaint, Congress recessed for this internal reason, not because of the alleged attack.  (Doc. 11-1, paras. 238, 238, 243 and 244).  Allegations that plaintiffs were "delayed" in their duty are clarified in the complaint to mean they were delayed by the action of the Congress itself to deal with challenges to the Electoral College certifications. This set of facts as alleged fails to state a claim upon which relief can be granted as the delay was occasioned by Congress, not defendants.

Plaintiffs also allege that they were all "present in" or "present at" the Capitol on January 6, 2021. (Doc. 11.1, paras. 11-21.) Taken in its best light, plaintiffs' complaint therefore admits that which is constitutionally required—i.e., not only was the House of Representatives as a body present by and through the Speaker of the House, but even the plaintiffs admit factually they were present in some official capacity at the appointed day and hour (even though they bring their suit in their personal capacity).

Plaintiffs further allege that each member in his or her personal capacity were delayed, but this states no constitutional violation as a matter of law because the Constitutional provisions asserted in the complaint do not speak to or address delay of the proceeding.  The allegedly violated constitutional provisions make no reference to delay and have no timing component applicable here.  As also noted, Representative Jerrold Nadler alleges that the Joint Session was in recess because "an objection was made to the counting of the certified Electoral College

ballots" and he returned to his office waiting for the "joint session of Congress to be reconvened." (Doc. 11-1, para. 239).

In summary, the plaintiffs complaint 1) alleges violation of certain constitutional provisions which do not support their claims, 2) express no individual duty of any House member or duty of the House itself, 3) merely require the House as an institution be present to observe the duties Constitutionally assigned to the President of the Senate, 4) admit the House as an institution was in fact present; 5) admit that the joint Session stood in recess on its own accord to deal with a challenged vote, and 6)  no constitutional provision addresses timetable or delay in regard to the proceeding.  As such plaintiffs in their personal or even official capacity have failed to state a constitutional claim that comes within the scope of section 1985(1).  That section requires the existence of a legal duty.  The Constitutional provisions cited present no duty.  The *opportunity* they do present is not an individual one but rather an institutional one only. A complaint's "mere conclusory statements" need not be accepted as true, nor its statements of law, including unsupported Constitutional references.  The complaint should be dismissed.

## B.  PLAINTIFFS' ALLEGATIONS ARE SPECULATIVE AND CONCLUSORY, AND LACK SUFFICIENT FACTS TO PLAUSIBLY ENTITLE THEM TO RELIEF.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  The claim at issue must rise "above the speculative level." A complaint's "mere conclusory statements" need not be accepted as true, nor its statements of law, including threadbare recitals of the elements of a cause of action.  Likewise, a court need not accept a plaintiff's legal conclusions, even if they are dressed up as factual allegations.  Plaintiffs are required to plead the "essential element" of the statute in a non-conclusory manner.  Anything less will not do.

1.  Plaintiffs Failed To Plead The Essential Elements Of 42 USC 1985(1).

Plaintiffs' complaint referenced 42 USC 1985 five times.  All but one reference are merely perfunctory.  The Act addresses those who conspire to prevent, by force, intimidation, or threat, any person holding any office, trust, or place of confidence under the United States from discharging any duties thereof; or to induce by like means any officer of the United States to leave any place where his duties as an officer are required to be performed, or to molest, interrupt, hinder, or impede him in the discharge of his official duties.

Only in paragraph 261 after quoting the statute do the plaintiffs then allege: "261. Defendants Trump, Giuliani, Proud Boys and Oath Keepers plotted, coordinated, and executed a common plan to prevent Congress from discharging its official duties in certifying the results of the presidential election."  This allegation is merely conclusory.  It identified no duty.  It identified no duty constitutionally imposed.  It identifies no duty upon any plaintiff in their personal capacity.  It references Congress but plaintiffs are not Congress.  It references a common plan, but does not allege that the plan was built on force to deprive plaintiffs of any legal duty.  The plaintiffs have not plead the essential elements of the statute except in a conclusory manner.  They may have discussed the elements somewhere else in their complaint but they do not plead these elements by any reference to section 1985(1), nor even when stating their sole cause of action beginning in paragraph 259. This includes their conclusory allegations in paragraphs 1-3.

2.  Plaintiffs Failed To State a Violation of 42 USC 1985(1) Against
Oath Keepers.

Looking through the balance of the complaint's allegations against Oath Keepers does not overcome this shortcoming.  In 13 separate paragraphs, plaintiffs specifically identify Oath Keepers by name.  Each of these paragraphs is speculative and conclusory, or lack sufficient

facts to plausibly entitle plaintiffs to relief.   Paragraph 14 for instance simply alleges that defendants conspired to incite an assembled crowd to march upon and enter the Capitol in order to disrupt the approval "by Congress of the count of votes cast by members of the Electoral College as required by Article II, Section 1 and the Twelfth Amendment of the United States Constitution."

As already discussed in the preceding section, nothing in Article 2 or the 12th Amendment empowers Congress to count the votes. These matters are extended to the President of the Senate with both Houses present. The Constitution prescribes no duty for any House member to perform and certainly not in any personal capacity. Nor does it command any specific member to be present, let alone these plaintiffs.  Nor does the Constitution require any member of the House to approve any vote. The Constitution designates the House as a corporate body to be present without regard to the whereabouts of any individual member, to witness or observe the counting.   Thus, by referencing the Constitutional provisions in their complaint, but never articulating exactly what they say or what they require, or even noting any particular duties based upon the text, the conclusion is inevitable that such reference is merely conclusory. It is also speculative because it fails to articulate any actual constitutional basis for the claim.

The same can be said of paragraph 6 which alleges that defendant Oath Keepers, "through their leadership, acted in concert to spearhead the assault on the Capitol while the angry mob that Defendants Trump and Giuliani incited descended on the Capitol."  References to leadership are hardly factually specific. They are too general to have any specific meaning. Likewise references to mobs and incitement are conclusory.  These are all speculative and lack sufficient factual detail to be pled sufficiently.

So too paragraph 28 which does nothing other than slander Oath Keepers calling it a militia organization located in Nevada. This is the "identification of defendants" section of the pleading and is simply irrelevant to establishing any specific factual.

Paragraph 54 declares that an unknown Oath Keepers leader made statements to President Donald Trump and that President Trump tweeted his support in response. All details about what was said are not provided. There are no details about who said it or in what capacity the speaker spoke. There is no indication of who the speaker was or how he or she was a "leader" of Oath Keepers and not just some person. It alleges no violation of any act or law or constitutional right of the plaintiffs. The same generalizations can be seen in paragraph 63 with its additional reference to an "Oath Keepers leader" and a Facebook posting declaring an intent to travel to the District with a plan. This could be said of every elementary school trip—they all come with a plan. What that plan is, is unstated. Who the leader is, is unstated. What the leader is actually proposing is left to speculation and the imagination.

Paragraph 71 alleges that Oath Keepers agreed to be security for a non-party Roger Stone. This allegation has no relationship to plaintiffs' allegations. Paragraph 72 alleges that Oath Keeper flocked to Washington DC urged on by the President. This is hardly a novel claim that persons would come to Washington DC. The vague claim that "Oath Keepers" flocked to the Capitol neglects to identify a single Oath Keeper by name. Were they members? Were they corporate officers? Were they there by an on behalf of the organization? It neglects to identify that any person at the Capitol was a member of Oath Keepers. It neglects to identify any leader by name, of Oath Keepers. It neglects to identify how it concluded that people by the name of Oath Keepers, came to the Capitol. It neglects to identify any of these things for the obvious

reason that the allegations are based on news reports and other third and fourth hand accounts of what went on.

Pleading should be based on personal knowledge and if not, then upon information and belief stated as such. They must comply with Federal Rules of Civil Procedure 11 that the allegations are based of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, rather than what might have been printed in the newspaper. In any event, these paragraphs and others like it lack any details about the organization Oath Keepers who is named defendant. They lack any allegation that Oath Keepers (as an entity that may sue and be sued), directed or controlled anyone to do anything at any time. The complaint lacks any kind of allegation that the corporate defendant Oath Keepers undertook some action officially or sent any members as its representative to the District, or the Capitol, or the House chamber.

To keep it all in perspective if plaintiffs had alleged that members of the NAACP were present in the District of Colombia or at the Capitol, would that be enough facts to conclude that plaintiffs had met their burden to state a claim against the NAACP corporation itself. Would it meet the pleading threshold that their unidentified members were planning "insurrection" *on behalf* of that organization? Recall that plaintiffs have alleged in paragraph 28 that Oath Keeper members "are comprised of current and former military and law enforcement officers." This allegation standing alone would no more implicate any law enforcement organization simply because there current employee traveled to the District of Columbia on January 6, 2021 for lawful or lawless purposes. Nor would it be enough to implicate each branch of the US military and try to hold them accountable for their "members" traveling to the District or Capitol on that date for better or for worse.

14

Yet, that is precisely what the plaintiffs allege in their complaint. They alleged generically that "Oath Keepers" did this and that and showed up here and said these things, and planned and plotted to stop the vote.  They alleged that unknown members did and said these things.  But all these allegations are conclusory as to the organization, the named defendant.  As to this defendant the allegations are speculating that its "members" or people claiming to act on its behalf traveled to the District and proceeded to the Capitol.  Allegations of membership are not enough. Nor are self-declared allegations that unknown and unnamed persons acted on behalf of Oath Keepers enough to plead with sufficiency. These are not enough to bind the Corporation or to impute liability to the Corporation as a matter of law. They are not enough to state a claim that the corporation can understand just who are we talking about.

Paragraph 126 is another example of this effort to impute to the Corporation the acts of individuals.  It alleges that "members of Defendant Oath Keepers wore paramilitary equipment, helmets, reinforced vests and clothing with Oath Keepers paraphernalia."  That these things were worn is taken as true.  What is disputed is that this allegation is declaring that because someone wore an Oath Keeper patch or paraphernalia they must be a member of Oath Keepers. What is being disputed as failing to state a claim and what is speculative about the assertion is that someone who wore Oath Keeper paraphernalia is *ipso facto* acting on behalf of Oath Keepers. This is like saying that someone who shows up in an army jacket is representing the Army. This is like saying that someone who shows up in a T-shirt that says "United States Marines" is representing and is authorized to represent the Marine Corps and all actions taken by the person with a T-shirt are actions on behalf of the Marine Corps merely by wearing a T-shirt. Articles of clothing do not signify membership or approval of an organization. They do not signify agency.

15

They do not signify action on behalf of the corporation. The implication that they do is speculative and conclusory.

Paragraphs 127 through 130 come a little closer to meeting the pleading standards but yet still fall short. Each of these allegations turns on the implication that Thomas Caldwell was a member of Oath Keepers and also a leader that was somehow authorized to speak and act on behalf of Oath Keepers. While normally Rule 12(b)(6) motions are taken on the pleadings, defense counsel would observe that this court's ruling in United States of America v. Thomas Caldwell, CR No. 21-28, is controlling here as a matter of law. The Court may also consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.

In that case during a hearing held on March 12, 2021, the issue regarding Thomas Caldwell's representation of Oath Keepers as well as his presence at the Capitol was discussed and decided. During oral argument this court stated:  [T]there is an absence of evidence of -- direct evidence at least of planning violence by Mr. Caldwell to enter the Capitol building. There are no text messages, communications by him that speak to actually entering the building or trying to enter the building. And ultimately, he did not enter the building." (Transcript Of Status Conference/Arraignment Via Videoconference Proceedings Before The Honorable Amit P. Mehta, United States District Judge, p. 50).  Mr. David William Fischer, Sr., counsel for Mr. Caldwell had previously argued that: "As the government conceded, there is no evidence in these interactions between Oath Keepers, the national leaders, the state leaders, the membership of any indication of a plan to stop the election or to invade the Capitol." (Hearing Transcript. 23).

The Government conceded the absence of evidence of interactions between Oath Keepers and Thomas Caldwell.  The Court also found the lack of evidence that He entered the Capitol.  If he did not represent Oath Keepers, was not a member or leader, and did not enter the Capitol, then no set of facts can established the allegation that he, on behalf of Oath Keepers or at its direction caused the delay alleged by the plaintiffs and their complaint in connection with their alleged duty to vote.  Thomas Caldwell is the only individual named by the plaintiffs and specifically identified as being affiliated with and the leader of Oath Keepers. Yet, Counsel submits this Court knows otherwise as a matter of law.

This court has already found no direct evidence that Caldwell entered into the Capitol and it also appears that the government has conceded he is not connected to Oath Keepers itself. Thus, allegations implying the contrary need not be taken at face value or accepted by the court. As to the other allegations, all failed to identify any other person by name as a leader or agent of Oath Keepers.  These allegations are merely conclusory to the extent they implicate Oath Keepers the defendant.  As such plaintiffs failed to state a claim upon which relief can be granted against the corporate defendant Oath Keepers when alleging Caldwell was a leader. Plaintiffs' complaint should be dismissed.

### C.  PLAINTIFFS LACK STANDING TO ALLEGE DEPRIVATION OF THEIR OFFICIAL DUTIES IN ARTICLE II, SECTION 1 AND THE 12TH AMENDMENT, WHEN THEY SUE EXCLUSIVELY IN THEIR PERSONAL CAPACITY.

#### 1.  Plaintiffs lack Standing under Article III, § 2 of the U.S. Constitution to sue in their personal capacity.

Article III, § 2, of the Constitution extends jurisdiction to the federal courts to a "case" or "controversy." This is a "bedrock requirement." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).  In Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 37, 96

S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976), the Supreme Court observed: "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." <u>Raines v Byrd</u>, 521 US 811, 818–19; 117 S Ct 2312, 2317; 138 L Ed 2d 849 (1997).

One element of the case-or-controversy requirement is that plaintiffs, based on their complaint, must establish that they have standing to sue.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136–2137, 119 L.Ed.2d 351 (1992) (plaintiff bears burden of establishing standing). The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit, *Simon, supra,* at 38, 96 S.Ct., at 1924, although that inquiry "often turns on the nature and source of the claim asserted," <u>Warth v. Seldin</u>, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). To meet the standing requirements of Article III, "[a] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." <u>Allen v. Wright,</u> 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (emphasis added), abrogated on other grounds by <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.,</u> 572 U.S. 118 (2014).

For Rule 12(b)(1) purposes, the italicized words in the quotation from *Allen* are the key ones. Courts have consistently stressed that a plaintiff's complaint must establish that a "stake" in the alleged dispute, and that the alleged injury suffered is particularized as to plaintiff. See, *e.g., Lujan, supra,* at 560–561, and n. 1, 112 S.Ct., at 2136, and n. 1 (to have standing, the plaintiff must have suffered a "particularized" injury, which means that "the injury must affect the plaintiff in a personal and individual way"); <u>Bender v. Williamsport Area School Dist.,</u> 475 U.S. 534, 543–544, 106 S.Ct. 1326, 1332, 89 L.Ed.2d 501 (1986) (school board member who "has no personal stake in the outcome of the litigation" has no standing); *Simon, supra,* at 39, 96

S.Ct., at 1925 ("The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement.")

Therefore, to cross the standing threshold, a litigant must show (1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision. Hollingsworth v. Perry, 570 U. S. 693, 704 (2013).

In Virginia House of Delegates v Bethune-Hill, 587 U.S. ____,139 S Ct 1945, 1953–54; 204 L Ed 2d 305 (2019), the Virginia House of Delegates and its Speaker intervened as defendants, after Virginia redrew legislative districts for the State's Senate and House of Delegates based on the 2010 census. Voters in 12 impacted House districts sued two state agencies and four election officials charging that the redrawn districts were racially gerrymandered in violation of the Fourteenth Amendment's Equal Protection Clause.  The House and Speaker intervened to defend the redrawn districts.  Their standing was challenged. The Supreme Court held that the House and speaker lacked standing to represent the government's interests. "Just as individual members lack standing to assert the institutional interests of a legislature, see *Raines*, 521 U.S. at 829, 117 S.Ct. 2312, a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." 587 U.S.___, Slip Op. p. 8.

In the instant case, the eleven House plaintiffs do not allege they represent the House of Representative.  Nor do they allege they are authorized by the House to represent it.  Nor do they allege that they represent the U.S. Senate or that the Senate has authorized them to represent that body. Nor do the plaintiffs allege that they represent the United States Congress or that Congress has authorized them to represent the Congress. What they do allege is that they have standing to bring their complaint in their personal capacity.  But, just as individual members in *Virginia*

*House of Delegates* lack standing to assert any institutional interests, so too plaintiffs lack standing to assert any institutional interest of the House of Representatives.

The only relevant Constitutional clauses identified in plaintiffs' amended complaint (Doc 11-1, p. 6, para. 1) are Article 2, section 1 of the Constitution and the 12th Amendment. As our prior Constitutional analysis demonstrates, the Constitutional interest in the 12th Amendment is an institutional one, not an individual one, i.e., "[T]he President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted." The Electors themselves are chosen well in advance.[2] Plaintiffs' lack standing to allege a conspiracy to interfere with Congress' Article 2, section 1 power or 12th Amendment power precisely because these powers are not individual but institutional. Even were plaintiffs to sue in their institutional capacity they could not represent the institution of the House of Representatives. Plaintiffs have failed to allege that they are authorized by the House to bring this action and in fact have chosen to proceed as individual persons. No Constitutional provision empowers individual persons to take any action whatsoever in connection with a vote of electors.

According to statute, the date for the President of the Senate to count the votes is January 6, 2021, a date also set by law. At that time a Joint Session of Congress to Count Electoral Votes and Declare Election Results meets.  The Senate and House of Representatives assemble at 1:00 p.m. in a joint session at the Capitol, in the House chamber, and the President of the Senate opens and counts the electoral votes and declare the results (See 3 U.S.C. §15). The Vice President presides as President of the Senate. The Vice President opens the certificates and presents them to four tellers, two from each chamber. The tellers read and make a list of the

---

[2]  3 U.S. Code § 1 "The electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." (June 25, 1948, ch. 644, 62 Stat. 672.

returns. When the votes have been ascertained and counted, the tellers transmit them to the Vice President. If one of the tickets has received a majority of 270 or more electoral votes, the Vice President announces the results, which "shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President."[3]

What duty of plaintiffs exactly is alleged to have been prevented or hindered?  The statute articulates a duty incumbent upon the "President of the Senate" to open all the certificates and the votes.  No plaintiff has alleged he or she is the President of the Senate.  The statute requires the Vice President to open the certificates and presents them to four tellers, two from each chamber.  Plaintiffs' amended complaint states no allegation that any plaintiff is the Vice President of the United States.   Nor does the complaint allege that any plaintiff was appointed a teller from either House.  In fact, the amended complaint fails to allege a violation of any statute whatsoever.

Nor does the amended complaint allege that any plaintiff either sought to file "objections" as provided for in 3 U.S.C. sec. 15.  There is no allegation that any plaintiff ever challenged or contested the electors or challenged the election of either President Joe Biden or Vice President Kamala Harris. Nor is the statutory recognition of the right to object a "duty" the performance of which may not be interfere with by two or more persons by force as per 42 USC 1985(1).

All of the foregoing underscores the fact that plaintiffs have no standing under the Constitution and no standing under any statute (which they failed to plead) or which they may argue a non-futile amendment may cure. Therefore, plaintiffs fail to cross the pleading threshold. They alleged no concrete or particularized injury to themselves in their personal capacity. The

---

[3]  See Congressional Research Service, Update October 22, 2020, The Electoral College: A 2020 Presidential Election Timeline.  https://crsreports.congress.gov/product/pdf/IF/IF11641

injury they allege in their personal capacity being a delay in their vote on the Electoral College certifications is not traceable to the constitution. Thus, no favorable proceeding can ever remedy their claim of personal wrong.

    2.  Plaintiffs Lack Standing As House Members Suing In Their Personal
    Capacity, as they Have No Personalized Stake In The Outcome Of The Litigation.

The *Virginia House of Delegates* Court also cited to its prior decision in Raines v. Byrd, 521 U. S. 811, 819 (1997) as authoritative. In that case six Members of Congress, four of whom served as Senators and two of whom served as Congressmen in the 104th Congress (1995-1996) challenged the constitutionality of the Line Item Veto Act (Act). Pub.L. 104-130, 110 Stat. 1200, codified at 2 U.S.C.A. §691 et seq. (Supp.1997). The Act went into effect on January 1, 1997. See Pub.L. 104-130, §5. They filed a complaint in the District Court for the District of Columbia. The Supreme Court ultimately found that the House and Speaker "have alleged no injury to themselves as individuals." It noted that "the institutional injury they allege is wholly abstract and widely dispersed and their attempt to litigate this dispute at this time and in this form is contrary to historical experience."  521 U.S. at 829. The court further observed that: "We attach some importance to the fact that appellees have not been authorized to represent their respective Houses of Congress in this action, and indeed both Houses actively oppose their suit." *Id*.

The Court concluded "that these individual members of Congress do not have a sufficient 'personal stake' in this dispute and have not alleged a sufficiently concrete injury to have established Article III standing." *Id*. at 830. Likewise in the instant case, none of the plaintiffs have alleged any injury to themselves as individuals which is constitutionally established. The Constitution establishes no right of a plaintiff in his or her personal capacity to participate in, or observe the President of the Senate as he performs his obligations under law. Moreover, it establishes no right of the plaintiffs as a member to participate in or observe the President of the

Senate as he performs his obligations under law.  For the reasons stated in *Raines*, plaintiffs here lacked standing because they have no personal stake in this dispute. They have no personal stake in vindicating a claim to sue in their personal capacity.

    3.  Plaintiffs Lack Standing Because As Members Suing In Their Personal Capacity, They Have no institutionalized Injury shared by the House of Representatives.

Plaintiffs will no doubt argue that a line of cases does permit an individual member of the legislature to sue in order to vindicate some individual right.  For instance in <u>Maloney v Murphy</u>, 984 F3d 50, 62–63; 450 US App DC 261 (2020), the court observed that "In addition, in analyzing the standing of legislators, cases have traditionally asked whether the asserted injury is "institutional" or "personal." An institutional injury is one that belongs to the legislative body of which the legislator is a member. *See* <u>Arizona State Legislature v. Arizona Indep. Redistricting Comm'n,</u> 576 U.S. 787, 135 S. Ct. 2652, 2664, 192 L.Ed.2d 704 (2015) (The Arizona Legislature was an institutional plaintiff asserting an institutional injury); *see also Bethune-Hill*, 139 S. Ct. at 1953  ("[I]ndividual members lack standing to  assert  the  institutional  interests  of  a legislature[.]"). Such institutional injuries afflict the interests of the legislature as an entity; they do not have a distinct personal, particularized effect on individual legislators.

A personal injury, by contrast, refers to an injury suffered directly by the individual legislators to a right that they themselves individually hold. A personal injury to a legislator, for Article III purposes, is not limited to injuries suffered in a purely private capacity, wholly divorced from their occupation. Rather, in the context of legislator lawsuits, an injury is also "personal" if it harms the legal rights of the individual legislator, as distinct from injuries to the institution in which they work or to legislators as a body. *See* <u>Powell v. McCormack</u>, 395 U.S. 486, 493, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (reviewing legislator's claim that he was

inappropriately barred from taking his seat and from receiving his pay); *see also* Kerr v. Hickenlooper, 824 F.3d 1207, 1216 (10th Cir. 2016) (stating that, if a subset of legislators was barred from voting, members of the subset "could claim a personal injury"); *cf.* Coleman v. Miller, 307 U.S. 433, 438, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) (although asserting an institutional injury, legislators had standing because their individual "votes * * * ha[d] been overridden and virtually held for naught")."

Despite this narrow concept of individual standing, plaintiffs must still allege that the constitutional provisions to which they point actually provide them any similar individual authority. The Constitution, however, does not identify any right which they themselves individually hold. No legislative representative has an individual right or duty to vote concerning the Electoral College as plaintiffs failed to allege that the certifications did not result in the election of the President and Vice President. The constitutional duty pertains to the House of Representatives solely in its institutional capacity. Plaintiffs have no individual duty to do anything under the Constitution. The Constitution merely provides that the House of Representatives as an institution shall observe the opening of the certifications and counting of the ballots. This is not an individual right in any sense of the text.

Thus, at the end of the day while the case law does discuss some application of an individual legislators rights, as a matter of constitutional law within the four corners of the complaint no such similar right exists in any legislator who is a member of the House of Representatives or has been pled.

### 4.  Individual Members Of The Congress Lack Standing To Assert The Institutional Interests of a Legislature.

The recent decision in Blumenthal v Trump, 949 F3d 14, 18–20; 445 US App DC 169, 173–75, cert den 141 S Ct 553; 208 L Ed 2d 175 (2020), involving Congress and foreign

emoluments is also instructive.  The Court of Appeals for the District of Columbia held that "This case is really no different from *Raines*. The Members were not singled out—their alleged injury is shared by the other 320 members of the Congress who did not join the lawsuit—and their claim is based entirely on the loss of political power."

The Court first affirmed the holdings in *Raines* and in *Va. House of Delegates:* "The Supreme Court's recent summary reading of Raines that "individual members" of the Congress "lack standing to assert the institutional interests of a legislature" in the same way "a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole," Va. House of Delegates v. Bethune-Hill, 139 S.Ct. 1945, 1953–54(2019)," leaves no "doubt regarding the Members' lack of standing."

The Appeals Court then applied that holding to the case before it.  "After *Raines* and *Bethune-Hill*, only an institution can assert an institutional injury provided the injury is not "wholly abstract and widely dispersed." *Raines*, 521 U.S. at 829."  This means the instant Plaintiffs cannot assert an institutional injury on behalf of the House.

The Appeals Court also referred to United States v. Ballin, 144 U.S. 1, 7, 12 S.Ct. 507, 36 L.Ed. 321 (1892) ("The two houses of [C]ongress are legislative bodies representing larger constituencies. Power is not vested in any one individual, but in the aggregate of the members who compose the body[.]").  "Because *Raines* and *Bethune-Hill* control this case, we begin and end our analysis with them."

In summary, "individual members" of the Congress "lack standing to assert the institutional interests of a legislature." Power is not vested in any one individual, but in the aggregate of the members who compose the body.  The allegations in the complaint taken in their light most favorable to the nonmoving party does not change the law that individual

members of Congress such as the plaintiffs here lack standing to assert the institutional interest which the Constitution grants exclusively to the House of Representatives. As such power is not vested in any plaintiff but rather in the aggregate being the House itself as an institution. Therefore, plaintiffs fail to meet the standing requirements and their suit must be dismissed under Fed.R.Civ. Pro. 12 (b)(1).

**D.  PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER 42 USC § 1985(1), BECAUSE THE CONSTITUTIONAL TEXT THEY PURPORT TO RELY UPON SUPPORTS ONLY AN INSTITUTIONAL RIGHT IN THE HOUSE OF REPRESENTATIVES, NOT A POWER VESTED IN INDIVIDUAL MEMBERS.**

Recall that 42 U.S.C. § 1985 does not create any substantive rights, but only permits a private cause of action to sue for conspiracy to violate a federal right.  Nanko Shipping, USA v. Alcoa, Inc., 107 F. Supp. 3d 174, 182 (D.D.C. 2015), *rev'd and remanded on other grounds*, 850 F.3d 461 (D.C. Cir. 2017) (citing United Bhd. of Carpenters & Joiners, 463 U.S. 825, 833, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (other citations omitted). As such, § 1985 "serve[s] as a device through which vicarious liability for the underlying wrong may be imposed upon all who are a party to it, where the requisite agreement exists among them." *Nanko Shipping,* F. Supp. 3d at 182 (citation omitted)".  Moreover, the requirement of an invidiously discriminatory conspiratorial animus, which has been applied to s 1985(3), should be applied to s 1985(1) as well," Stern v US Gypsum, Inc, 547 F2d 1329, 1333 (CA 7, 1977). See also McCrea v District of Columbia, No. 16-CV-0808 (TSC), 2021 WL 1209219, at 17 (DDC, March 31, 2021).

As previously stated in the foregoing argument, "individual members" of the Congress "lack standing to assert the institutional interests of a legislature." Power is not vested in any one individual, but in the aggregate of the members who compose the body.  The allegations in the complaint taken in their light most favorable to the nonmoving party, establish that plaintiffs make no claim to act on behalf of the institution being the House of Representatives. They also

plead as plaintiffs that they are acting in their personal capacity. But even if it were otherwise, no individual member of the House in any capacity has standing to state a claim on behalf of the institution which has not authorized it and on behalf of which they do not represent a numerical majority.  Thus, even if plaintiffs alleged facts related to conspiracy or a plan to prevent their vote, the law itself provides they have no standing to allege such a constitutional violation. But more importantly, the Constitution itself provides they have no authority in any individual or personal capacity to do anything in connection with counting the electoral vote. Though plaintiffs spend a great number of paragraphs and pages describing the conspiracy in great detail, all of this falls far short of establishing a cause of action if they can point to no constitutional violation independent of 42 USC 1985(1).

### E.  DEFENDANT'S STRONG FIRST AMENDMENT INTERESTS TO SPEAK, ASSEMBLE AND PETITION THE GOVERNMENT FURTHER FAVORS DISMISSAL WITH PREJUDICE OF PLAINTIFFS' CLAIMS.

The act of petition for a redress of grievances has ancient roots.  At the beginning of recorded history we are told that "the people began to call upon the name of the Lord" to right grievances against them. Genesis 4:26.  This was later codified into a more formal practice of petition as laid down by the lawgiver Moses during the early period of the Ancient Hebrew Republic. Exodus 33:7.  The right of petition was revived in its English form and stated in chapter 61 of the Magna Carta (1215).  In 1669, the English house Commons further resolved that every commoner in England possessed "the inherent right to prepare and present petitions" to it "in case of grievance," and of Commons "to receive the same" and to judge whether they were "fit" to be received. Finally Chapter 5 of the Bill of Rights of 1689 asserted the right of the subjects to petition the King and "all commitments and prosecutions for such petitioning to be

illegal."[4] Today, the right of peaceable assembly is, in the language of the Court, "cognate to those of free speech and free press and is equally fundamental. . . . [It] is one that cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all civil and political institutions,—principles which the Fourteenth Amendment embodies in the general terms of its due process clause."  The Court also wisely observed that: "The holding of meetings for peaceable political action cannot be proscribed. Those who assist in the conduct of such meetings cannot be branded as criminals on that score. The question . . . is whether their utterances transcend the bounds of the freedom of speech which the Constitution protects." DeJonge v. Oregon, 299 U.S. 353, 364, 365 (1937). See also Herndon v. Lowry, 301 U.S. 242 (1937).

Furthermore, the right of petition has expanded. It is no longer confined to demands for "a redress of grievances," in any accurate meaning of these words, but comprehends demands for an exercise by the government of its powers in furtherance of the interest and prosperity of the petitioners and of their views on politically contentious matters.[5] The right extends to the "approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government especially and including the House of Representatives, the Senate and the Congress in joint session. Historically, the right has been expressed in marches upon the Capitol and demands made of Congress to Act.  The instant case presents no case of first impression.  For instance, in 1894 General Coxey of Ohio organized armies of unemployed persons to march on Washington and

---

[4]  12 ENCYCLOPEDIA OF THE SOCIAL SCIENCES 98 (1934).

[5]  See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, 365 U.S. 127 (1961).

present petitions, only to see their leaders arrested for unlawfully walking on the grass of the Capitol.

The march of WWI Veterans on Washington in 1932 demanding bonus legislation was defended as an exercise of the right of petition. In the spring and summer of 1932, approximately 45,000 World War I Veterans marched on Washington and camped in unoccupied lands. Desperate for financial help, they sought early payment of a bonus due in 1945. The members of the "Bonus Expeditionary Army," as they called themselves claimed they were exercising their First Amendment rights to assemble peacefully and petition the Government for "a redress of grievances." Fearing violence after Congress denied their request, the Administration called out the army to expel the marchers, assaulting them with tanks and burned their camps.[6]

"The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances, or for anything else connected with the powers or the duties of the National Government, is an attribute of national citizenship, and, as such, under the protection of, and guaranteed by, the United States. The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." United States v. Cruikshank, 92 U.S. 542, 552–53 (1876) overruled on other grounds, United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939).

In analyzing Plaintiffs' instant complaint, the inescapable conclusion is that it stigmatizes with inflammatory language the right of the people present in the District and at the Capitol to assemble for the purpose of petitioning the government of the United States in connection with

---

[6] http://recordsofrights.org/events/72/the-bonus-army-march-on-washington
https://www.nps.gov/articles/bonus-expeditionary-forces-march-on-washington.htm

the Electoral College. It does not matter whether the substance of their petition was accurate or inaccurate. Nor does it matter whether they planned the petition, organize themselves to attend the Capitol and present the petition, or in the language of the complaint "conspired" to do any of the foregoing. What is it root in this lawsuit is the characterization that the right of the people to exercise their right to peaceably assemble for the purpose of petitioning Congress for redress of grievances should be subject to a conspiracy law (42 U.S.C. 1985(1) law which effectively punishes the exercise of a Constitutional right.

As we have seen, plaintiffs allege that they in their individual and/or personal capacities had certain duties under the Constitution with which the defendants allegedly interfered with and conspired to interfere with.  Plaintiffs would reduce the right of petitioning to conduct that is not planned, or conduct that may only be undertaken on a seconds notice, or in an impromptu fashion.  If planning to petition is a conspiracy and insurrection there will be nothing left of the right.

Stripped of its inflammatory allegations all that remains of the complaint is the allegation that the defendants plan to attend a speech of the President in the District of Columbia, that the defendants planned to march to the Capitol itself, and make known its views to the Congress regarding the Electoral College and election.  Plaintiffs' additional statements that defendant Oath Keepers entered the Capitol and attempted to disrupt the actual proceedings fail because they are conclusory and speculative and in the case of Mr. Caldwell contrary to the holdings of this court.

Even assuming the defendant Oak Keepers planned violence as alleged by the plaintiffs and that violent acts are not a form of protected speech or assembly, there is no allegation that defendant Oath Keepers *engaged* in violence or *entered* the Capitol itself, as further analyzed in

Section B *supra*. Those who are present in the conduct of such meetings cannot be branded as criminals on that score. The question is not as to the auspices under which the Capitol meeting is held, but as to its purpose; not as to the relations of the speakers, but whether their utterances transcend the bounds of the freedom of speech which the Constitution protects.

Taking the complaint in a light most favorable to the nonmoving party the utterances attributed to unknown persons purportedly acting by or on behalf of defendant Oath Keepers constitutes protected speech alone. No allegations transcend the bounds of the freedom of speech which the Constitution protects.  To permit this case to proceed and not be dismissed for all the reasons previously stated would be equivalent to stating a claim against the First Amendment itself. For these prudential reasons, defendants move this court to dismiss the complaint for failure to state a claim upon which relief can be granted. Courts ought not entertain claims which suppress the freedoms protected by the First Amendment of the Constitution, the supreme law of the land, supreme above 42 USC 1983 as applied here.

The Constitution does not protect one from violence, but the allegations and holding of this Court in Caldwell amply demonstrate no Oath Keeper entered the Capitol violently or otherwise and therefor nothing in the amended complaint reaches to any violent act to physically prevent the House from observing the Electoral proceedings.  Absent violence, the First Amendment erects a strong barrier against use of 42 USC 1985(1) to trample down First Amendment rights.

## V. CONCLUSION

For the reasons stated herein, defendant Oak Keepers prays that this court dismiss the plaintiffs complaint for lack of standing, failure to state a claim upon which relief can be granted,

and because it is contrary to our First Amendment freedoms which provide the people the legal

authority to undertake the exact planning and conduct alleged to be a violation of federal statute.

Dated: May 26, 2021.

/s/  Kerry Lee Morgan
Kerry Lee Morgan, 424566
Pentiuk, Couvreur & Kobiljak, P.C.
Attorneys for Defendant Oath Keepers, Only
2915 Biddle Street, Suite 200
Wyandotte, MI 48192
 (734) 281-7100
Kmorgan@pck-law.com


## CERTIFICATE OF SERVICE

On May 26, 2021, I certify that I electronically filed this document with the Clerk of the

Court through the ECF System, which will send notification of such electronic filing to all

counsel of record registered electronically.

/s/  Kerry Lee Morgan
Kerry Lee Morgan, 424566
Pentiuk, Couvreur & Kobiljak, P.C.
Attorneys for Defendant Oath Keepers, Only