## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HON. BENNIE G. THOMPSON, HON. KAREN R. BASS, HON. STEPHEN I. COHEN, HON. VERONICA ESCOBAR, HON. PRAMILA JAYAPAL, HON. HENRY C. JOHNSON, JR., HON. MARCIA C. KAPTUR, HON. BARBARA J. LEE, HON. JERROLD NADLER, HON. MAXINE WATERS, and HON. BONNIE M. WATSON COLEMAN, *in their personal capacities*,<br><br>        *Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, RUDOLPH W. GIULIANI, OATH KEEPERS, PROUD BOYS INTERNATIONAL, L.L.C., WARBOYS LLC, and ENRIQUE TARRIO,<br><br>        *Defendants*, | Civil Action No. 1:21-cv-00400-APM |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT

### I.    PRELIMINARY STATEMENT

Plaintiffs, who are all members of Congress suing in their individual capacities, have sued Defendant Rudolph W. Giuliani ("***Defendant***" or "***Giuliani***") as well as former president Donald J. Trump ("***President Trump***"), Oath Keepers ("***Oath Keepers***"), Proud Boys International, L.L.C. ("***Proud Boys***"), Warboys LLC ("***Warboys***"), and Enrique Tarrio ("***Tarrio***") on a sole cause of action under 42 U.S.C. § 1985(1), which is based primarily on remarks Defendant made at a rally at the Ellipse Grounds on January 6, 2021 ("***Ellipse Rally***").  *See generally* Plaintiffs' Amended Complaint [Doc. 11-1] ("***Amended Complaint***" or "***Compl.***") at ¶ 81.  Plaintiffs accuse Giuliani

1

and the other Defendants of conspiring to cause the riot at the Capitol that occurred on January 6, 2021 ("***Capitol Riot***"), which allegedly caused Plaintiffs' damages. *See generally id.*

As will be discussed below, Plaintiffs' claims are entirely implausible, inadequately pleaded, and, in any event, are barred by the First Amendment. As a result, Plaintiffs have failed to state any claim upon which relief can be granted as against Giuliani, the Complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

## II.    PERTINENT FACTS

The following are the pertinent facts as alleged in the Amended Complaint, referred to in the Amended Complaint, or which the Court can take judicial notice of:[1]

### A.  Summary Of Pertinent Plaintiffs' Allegations In The Amended Complaint.

Plaintiffs accuse Giuliani "[o]n and before January 6, 2021" of "conspiring" with the other Defendants to "to incite an assembled crowd to march upon and enter the Capitol of the United States" for the purpose of preventing the Plaintiffs from voting to certify the results of the November 3, 2020 Presidential Election (the "***Election***") in favor of President Biden. Compl. at ¶ 1. Plaintiffs allege that Defendants' alleged conspiracy was "instigated according to a common plan that the Defendants pursued since the election held in November 2020" through a "carefully orchestrated series of events". *Id.* at ¶ 6.

---

[1] In deciding a motion under Rule 12(b)(6), a court may take judicial notice of public records from other proceedings. *See, e.g., Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts contained in public records of other proceedings). A court may also take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty. *Mintz v. FDIC*, 729 F. Supp. 2d 276, 278 n.5 (D.D.C. 2010) (internal citation omitted). A court may also consider matters referenced in the plaintiff's complaint. *See Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014), *aff'd*, 715 F. App'x 6 (D.C. Cir. 2018).

Plaintiffs claim that, just after the Election, President Trump and Giuliani launched a "misinformation campaign" that President Biden's win was the product of voter fraud. *Id.* at ¶ 34. Plaintiffs complaint of Giuliani's conduct on behalf of President Trump in filing lawsuits to overturn Election results and thereafter "continued to attack" the integrity of the Election results. *Id.* at ¶¶ 36-37. Plaintiffs complain of Giuliani's statements at a press conference in Pennsylvania on November 7, 2020 wherein he allegedly stated that there had been "widespread voter fraud in Philadelphia and Pittsburgh" that affected the election result in that state. *Id.* at ¶ 38. Plaintiffs also complain that Giuliani claimed that Philadelphia had "a sad history of voter fraud" and that he "called out by name deceased African Americans, whom he falsely claimed were still allowed to vote". *Id.* at ¶ 39.

Plaintiffs also complain that Giuliani published tweets "alleging that the election was fraudulent" and the result of a massive conspiracy by "big city crooks" in multiple states to "steal votes" from Trump supporters. *Id.* at ¶ 41. Plaintiffs claim that Giuliani also sent tweets during the same time period promoting the Ellipse Rally. *Id.* Plaintiffs further claim that on November 19, 2020 Giuliani falsely complained of voter fraud in Detroit, Michigan that cost President Trump the state in the Election. *Id.* at ¶ 42. Plaintiffs make the same complaint regarding Giuliani's statements regarding Wisconsin. *Id.* at ¶ 43. Plaintiffs claim President Trump and Giuliani applied "pressure" to state official to get them to overturn Election results. *Id.* at ¶ 47. They also allege President Trump and Giuliani "encouraged supporters to take desperate measures, including the use of force, intimidation, and threats, to change the outcome" of the Election. *Id.* at ¶¶ 53, 79

Plaintiffs allege that, at the Ellipse Rally, Giuliani spoke before President Trump with remarks that "mirrored" prior statements of President Trump, remarked about "crooked ballots", claimed he would "find criminality" and "proof this election was stolen". *Id.* at ¶ 81. They further

complaint that Giuliani "falsely" told the crowd at the Ellipse Rally that it was "perfectly legal" for former Vice President Pence to unilaterally block Congress from certifying the Electoral College votes.  *Id.*  Plaintiffs allege that Giuliani "incited the crowd to take violent action" by alleging that "[i]f we're right, a lot of them will go to jail" and by calling for "trial by combat" and stating the he was "going to fight to the very end" to make sure that Americans' "free and fair vote" was not taken away.  *Id.*

Plaintiffs then allege that, at 12:50 p.m. on January 6, 2021, Defendant Proud Boys' members "coalesced and marched toward the Capitol" while President Trump was still speaking at the Ellipse Rally.  *Id.* at ¶ 94.  Plaintiffs allege that the Defendant Proud Boys' members "acting according to a carefully coordinated plan" assaulted the Capitol entrance at 12:52 p.m. on January 6, 2021 and admit that this occurred while President Trump was still speaking at the Ellipse Rally.  *Id.* at ¶¶ 98-99.  Plaintiffs admit that the barricades of the Capitol were breached before the Ellipse Rally concluded.  *Id.* at ¶ 100.  They further admit that by the time any attendees of the Ellipse Rally arrived at the Capitol, the breach of Capitol security had already occurred.  *Id.* at ¶ 101.  Plaintiffs go on to claim that President Trump and Giuliani "directed" rioters to join Proud Boys' members in creating "chaos and mayhem" at the Capitol to gain entry into the building.  *Id.* at 104.  Plaintiffs contend that President Trump and Giuliani "incited" and "dispatched" the mob responsible for Capitol Riot at the Ellipse Rally.  *See id.* at ¶¶ 106, 112, 115, and 118.

Plaintiffs additionally allege that on a phone call Giuliani had with select members of Congress in the midst of the Capitol Riot he urged them to "object to numerous states" to delay the certification.  *Id.* at ¶ 138.  Plaintiffs claim that in having these phone conversations with Congress he introduced himself as President Trump's lawyer that supposedly indicated Giuliani's agreement with President Trump's "plans".  *Id.* at ¶ 139.  Plaintiffs claim that the participants in

the Capitol Riot supposedly claimed that they engaged in the Riot on "instructions" and "orders" from President Trump and Giuliani.  *Id.* at ¶ 144.  These "instructions" and "orders" were supposedly the allegations made by President Trump and Giuliani both at the Ellipse Rally and in the weeks preceding the Capitol Riot regarding the integrity of the Election.  *Id.* at ¶ 145.

> **B.  The Lead-Up To The Ellipse Rally And Giuliani's Speech At The Rally**.

The first announcement of any protests regarding the Election in the District appears to have been a tweet from President Trump on December 19, 2021.  Compl. at ¶ 55.  This was approximately 18 days prior the Capitol Riot.  Prior to President Trump's remarks during the Ellipse Rally,[2] there is no evidence (or allegation in the Amended Complaint) that any of the prospective attendees of the Ellipse Rally were informed of any march to the Capitol or activities at the Capitol on January 6, 2021.  Instead, the Rally was held at the Ellipse Grounds near the White House.  Compl. at ¶ 6.  Under normal circumstances, the Ellipse Grounds—about 1.6 miles away—is an approximate 35-minute walk from the Capitol.[3]  And given the tens of thousands of people in the District of Columbia that day, it would have almost certainly taken an inordinate amount of time for attendees of the Ellipse Rally to make it to the Capitol grounds.

In Giuliani's brief remarks at the Ellipse Rally, which were only a few minutes,[4] he told the crowd that:

> *Hello. Hello everyone. We're here just very briefly to make a very important two*
> *points.  Number one; every single thing that has been outlined as the plan for today*

---

[2]   *See*   https://www.rev.com/blog/transcripts/donald-trump-speech-save-america-rally-transcript-january-6 (last visited May 17, 2021) ("***Trump Speech***") at 01:12:43-01:13:09 and 018:16-19:03 (admonishing crowd at the Ellipse Rally to "walk down Pennsylvania Avenue" to the Capitol and to "peacefully and patriotically protest").

[3] *See, e.g.,*  https://www.rome2rio.com/s/White-House/United-States-Capitol (last visited May 17, 2021).

[4]   *See*   https://www.rev.com/blog/transcripts/rudy-giuliani-speech-transcript-at-trumps-washington-d-c-rally-wants-trial-by-combat (last visited May 17, 2021) ("***Giuliani Speech***").

*is perfectly legal. I have Professor Eastman here with me to say a few words about that. He's one of the preeminent constitutional scholars in the United States. It is perfectly appropriate given the questionable constitutionality of the Election Counting Act of 1887 that the Vice President can cast it aside and he can do what a president called Jefferson did when he was Vice President. He can decide on the validity of these crooked ballots, or he can send it back to the legislators, give them five to 10 days to finally finish the work. We now have letters from five legislators begging us to do that. They're asking us. Georgia, Pennsylvania, Arizona, Wisconsin, and one other coming in.*

*It seems to me, we don't want to find out three weeks from now even more proof that this election was stolen, do we? So it is perfectly reasonable and fair to get 10 days... and you should know this, the Democrats and their allies have not allowed us to see one machine, or one paper ballot. Now if they ran such a clean election, why wouldn't they make all the machines available immediately? If they ran such a clean election, they'd have you come in and look at the paper ballots. Who hides evidence? Criminals hide evidence. Not honest people. Over the next 10 days, we get to see the machines that are crooked, the ballots that are fraudulent, and if we're wrong, we will be made fools of. But if we're right, a lot of them will go to jail. Let's have trial by combat. I'm willing to stake my reputation, the President is willing to stake his reputation, on the fact that we're going to find criminality there.*

*Is Joe Biden willing to stake his reputation that there's no crime there? No. Also, last night one of the experts that has examined these crooked dominion machines has absolutely what he believes is conclusive proof that in the last 10%, 15% of the vote counted, the votes were deliberately changed. By the same algorithm that was used in cheating President Trump and Vice President Pence. Same algorithm, same system, same thing was done with the same machines. You notice they were ahead until the very end, right? Then you noticed there was a little gap, one was ahead by 3%, the other was ahead by 2%, and gone, gone, they were even. He can take you through that and show you how they programmed that machine from the outside to accomplish that. And they've been doing it for years to favor the Democrats.*

*It is a matter of scientific proof. We need two days to establish that. It would be a shame if that gets established after it's over, wouldn't it be? This was the worst election in American history. This election was stolen in seven states. They picked states where they have crooked Democratic cities, where they could push everybody around. And it has to be vindicated to save our republic. This is bigger than Donald Trump. It's bigger than you and me. It's about these monuments and what they stand for.*

*This has been a year in which they have invaded our freedom of speech, our freedom of religion, our freedom to move, our freedom to live. I'll be darned if they're going to take away our free and fair vote. And we're going to fight to the very end to make sure that doesn't happen. Let me ask Professor Eastman to explain as easily as we*

*can, I know this is complicated, but what happened last night, how they cheated, and how it was exactly the same as what they did on November 3rd.*
*God bless you. And thank you so much for your support. I know the courage it takes to be out there. I know how you get ridiculed. I know how they try to take jobs away from you. But you look in the mirror every night and you say to yourself, "I'm doing the right thing for myself, for my family, for my children, and most importantly for the United States of America."*

*Id.*

Also, in the midst of Giuliani's Speech, a law professor named John Eastman gave comments regarding how he believed that former Vice President Pence could "let the legislators of the state look into this". *Id.* at 07:45-0815.

### C. The Capitol Riot And The Aftermath.

The Ellipse Rally did not conclude until around 1:10 p.m. on January 6, 2021.[5]  President Trump closed the Ellipse Rally with a speech beginning at noon (*see id.*) and ended by encouraging the attendees to march to the Capitol, having already admonished them—eighteen minutes into his speech at approximately 12:20 p.m.— that any protest at the Capitol should be peaceful and patriotic.  *See* note 2 *supra*.  Given that—on a normal day—the walk from the Ellipse to the Capitol was a 35-minute walk, the earliest any Rally attendees could have arrived at the Capitol (assuming they immediately embarked to the Capitol upon hearing President Trump mention a Capitol protest and did not wait for the end of the Trump Speech) would have been approximately 12:55 p.m.

However, public information shows that at approximately 12:28 p.m., there were reports of 10,000 to 15,000 people marching down Pennsylvania Avenue toward the Capitol.[6]  At 12:30 p.m. there were already large crowds surrounding the Capitol and at 12:53 p.m. the Capitol

---

[5] https://en.wikipedia.org/wiki/Timeline_of_the_2021_storming_of_the_United_States_Capitol (last visited May 17, 2021) ("***Timeline***").

[6] https://apnews.com/article/docs-expose-depth-january-6-capitol-siege-chaos-fd3204574c11e453be8fb4e3c81258c3 (last visited May 17, 2021).

perimeter was breached by rioters.  *See* Timeline, note 5 *supra*.  Public information does not report any large numbers of Ellipse Rally attendees marching from the Ellipse to the Capitol until approximately 1:30 p.m.[7]  Whenever they left the Ellipse Grounds—and however many ultimately made the trek to the Capitol—the Rally attendees would have had a thousands of people "in line" ahead of them to fight through in order breach the Capitol if that was, indeed, the intent of those who marched to the Capitol from the Ellipse Grounds.

The first rioter entered the Capitol building at 2:12 p.m.  *See* Compl. at ¶ 134; Timeline, note 5 *supra*.  At 2:38 p.m. President Trump tweeted out for his supporters to support Capitol Police and to "stay peaceful".  *Id.*  As everyone now knows, Riot resulted in death and vandalism to the Capitol.  Those responsible for the violence at the Capitol have been the subject of one of the most extensive FBI investigations in history.  Over 500 persons have been arrested in connection with the Capitol Riot.[8]  However, there is no evidence that Giuliani or President Trump have been implicated or investigated as in any way conspiring with the rioters or encouraging the Riot.  Although Plaintiffs allege that an FBI "review" of phone records supposedly revealed a person "associated" with the Trump White House communicated with a member of Defendant Proud Boys in the days prior the Riot (Compl. at ¶ 70), there is no evidence that this alleged communication had anything to do with the Capitol Riot or that this communication in any way implicated either President Trump or Giuliani.

---

[7]    *See*    https://www.washingtonpost.com/nation/interactive/2021/capitol-insurrection-visual-timeline/?itid=hp-top-table-main-0106 (last visited May 17, 2021).

[8]  *See*  https://news.yahoo.com/fbi-nears-500-arrests-stemming-from-pro-trump-riot-at-us-capitol-on-jan-6-221709836.html (last visited May 17, 2021).

III.     **SUMMARY OF ARGUMENT**

Plaintiffs bring a sole consolidated cause of action against Giuliani under 42 U.S.C. § 1985(1), which Plaintiffs go to great pains to repeatedly refer to as the "Ku Klux Klan Act". *See* Compl. at ¶¶ 259-268. The Court should dismiss the Amended Complaint in its entirety against Giuliani for at least <u>three</u> (3) reasons. <u>First</u>, the Amended Complaint is implausible on its face. <u>Second</u>, the Amended Complaint is inadequately pleaded. <u>Finally</u>, even if the Amended Complaint were plausibly and adequately pleaded, the First Amendment bars the claims.

IV.     **ARGUMENTS AND AUTHORITIES**

    **A. Overview Of Pertinent Legal Standards.**

    *1. Fed. R. Civ. P. 12(b)(6) – Failure To State A Claim.*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition, a Rule 12(b)(6) motion is a proper vehicle for dismissal on an affirmative defense when the facts that give rise to the defense are clear from the face of the complaint. *See Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015). Moreover, where a plaintiff is a public official—as is the case here—tort claims based on the defendant's exercise of First Amendment rights, the plaintiff must plausibly plead that the defendant acted with

actual malice.  *See Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021).  The actual malice standard applies to all claims involving free speech – not just defamation claims. *See id.* at 243 (applying to false light claims); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 267 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) (applying to common law assault claim).

### 2. *SPECIAL PLEADING STANDARDS FOR CLAIMS UNDER 42 U.S.C. § 1985(1).*

Section 1985(1) makes it unlawful for "two or more persons ... [to] conspire to prevent, by force, intimidation, or threat, any person ... from discharging any duties [of public office]; ... or to injure him in his person or property on account of his lawful discharge of the duties of his office." 42 U.S.C. § 1985(1).  Among other things, Section 1985 plaintiffs must allege the elements of civil conspiracy, including: "an agreement to take part in an unlawful action or a lawful action in an unlawful manner."  *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002).  The elements of civil conspiracy consist of: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.  *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). A plaintiff must allege a "meeting of the minds" as to some improper purpose, as it is an essential element of a conspiracy claim under Section 1985.  *See Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997).

A plaintiff must also allege a causal connection between the overt act(s) taken in furtherance of the conspiracy and the alleged injury.  *See id.* at 321.  Moreover, the plaintiff must allege these elements with particularity.  *See Leon v. Murphy*, 988 F.2d 303, 310–11 (2d Cir.1993). Finally, where the plaintiff is a public official, the protections of the First Amendment apply to a Section 1985 claim.  *Barr v. Clinton*, 370 F.3d 1196, 1203–04 (D.C. Cir. 2004) ("[W]e hold that

10

First Amendment protections apply to section 1985 claims[.]").  Accordingly, in addition to the normal heightened pleading standards imposed on a Section 1985 claim, a plaintiff must also allege plausible facts sufficient to demonstrate actual malice.

### B.  Plaintiffs' Claims Are Facially Implausible.

Plaintiffs' claims are facially and utterly implausible.  In essence, Plaintiffs' claims require the Court to believe the following fantastical claim of conspiracy:  (1) All of the Defendants, immediately after the Election, conferred, had a meeting of the minds and reached an agreement; (2) said agreement was to file frivolous litigation and make public statements undermining public confidence in the Election; (3) for the purpose of riling Trump supporters into a frenzy, which would then permit incensed attendees at the Ellipse Rally to join with the "strike force" of Proud Boys' members who had broken down the Capitol defenses while the Rally was concluding; (4) for the ultimate purposes of a completing violent attack on the Capitol and thereby interfering with the Plaintiffs' official duties of participating in the certification of the Election ("**Electoral Certification**").  The conspiracy defies all plausibility and believability on its face.  In fact, it makes all of the theories of Election fraud look tame by comparison.  However, aside from the fact that this conspiracy theory is overall implausible, there are several specific aspects of the conspiracy theory that are inconsistent with publicly available information.

### 1.  GIULIANI'S SPEECH CANNOT BE CONSTRUED AS AN INCITEMENT TO VIOLENCE.

As the Court can determine for itself, there is simply no reasonable reading of the Giuliani Speech that can be construed as an incitement to violence.  A reasonable reading of Giuliani's Speech gives a reasonable reader/listener the following impression:  (1) Giuliani believes that former Vice President Pence had the power to send the Election certifications back to the state legislators; (2) that during the 5 to 10 day time frame that this occurs, Giuliani will have an

opportunity to collect more evidence on the integrity of the voting machines/software; (3) he expects that evidence to show evidence of fraud; (4) he admits he will be a "fool" if the evidence does not support his claims; and (5) he hyperbolically refers to this future evidentiary contest as a "trial by combat". *See generally* Giuliani Speech, note 4 *supra*. No reasonable reader or listener would have perceived Giuliani's speech as an instruction to march to the Capitol, violently breach the perimeter and enter the Capitol building, and then violently terrorize Congress into not engaging in the Electoral Certification. Nor would anyone perceive the "trial by combat" reference as a call to arms to invade the Capitol. The statement is clearly hyperbolic and not literal and, even if it were to be perceived literally, Giuliani is referring to an event in the future after evidence of alleged Election fraud is collected. No one could reasonably perceive the "trial by combat" reference as one inciting the listeners to an immediate violent attack on the Capitol, which could have nothing to do with Giuliani's allegorical "trial by combat" over evidence of fraud in the Election.

Given that there are no literal calls for violent action by the attendees against the Capitol, Plaintiffs could only argue that Giuliani's Speech incited the Ellipse Rally attendees to riot by "implication". "[I]mplication stems not from what is literally stated, but from what is implied." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). To establish statement by implication, Plaintiffs must demonstrate (1) that an "inference can reasonably be drawn" in accordance with Plaintiffs' allegations and (2) that "the particular manner or language" of Giuliani's Speech supplies "additional, affirmative evidence suggesting that the [Giuliani] intends or endorses the" inference suggested by Plaintiffs. *See id.* at 520; *Nunes v. WP Co. LLC*, No. 20-CV-01403 (APM), 2020 WL 7668900, at *3–4 (D.D.C. Dec. 24, 2020). Plaintiffs' purported inference that Giuliani's Speech is an implied message to attack the Capitol is completely

unreasonable.  Further, even if it were not, Plaintiffs have not pleaded any facts—and cannot do so—that Giuliani intended or endorsed the inference Plaintiffs suggest.  To the contrary, the publicly available evidence demonstrates that Giuliani immediately condemned the Capitol Riot, calling it "shameful".[9]

Accordingly, because Plaintiffs' claims that Giuliani's Speech was an incitement to violence is entirely implausible, their Amended Complaint must be dismissed.

### 2. *PRESIDENT TRUMP'S SPEECH AT THE ELLIPSE RALLY CANNOT BE CONSTRUED AS AN INCITEMENT TO VIOLENCE.*

To the extent Plaintiffs may argue that even though Giuliani's Speech does not incite violence, President Trump's speech did, these arguments fail for the same reasons.  Even other speakers, such as Rep. Brooks' speech, mentions nothing about violence or any march to the Capitol.[10]  Neither does President Trump's son's speech.[11]  President Trump's Speech does mention a march to the Capitol, but expressly provides that any protests should be peaceful.  *See* note 2 *supra*.  Moreover, President Trump, upon learning of the Capitol Riot, admonished those present at the Capitol to remain peaceful and support the Capitol Police.  Timeline, note 5 *supra*. Language such as being "wild", "fighting", "kicking ass" and the like cannot be construed as calls to commit immediate and specific acts of violence, especially when—in the context of the march to the Capitol—President Trump admonished peaceful protest.  Simply, put there is no "overt act" of any alleged co-speaker at the Ellipse Rally that can be plausibly construed as inciting violence at the Capitol that harmed Plaintiffs.  As such, the claims must be dismissed.

---

[9]    *See*    https://www.newsweek.com/giuliani-condemns-washington-violence-twitter-shameful-1559761 (last visited May 17, 2021).

[10] *See* https://www.youtube.com/watch?v=ZKHwV6sdrMk (last visited May 17, 2021).

[11]  *See*   https://www.rev.com/blog/transcripts/donald-trump-jr-2020-rnc-speech-transcript (last visited May 17, 2021).

### *3.   CONSPIRACY WITH RIOTERS IS IMPLAUSIBLE.*

The FBI is the most respected and advanced law enforcement organization in the world. As discussed above, it has launched an extensive investigation into the Capitol Riot, making over 500 arrests.  The FBI and Department of Justice have revealed that the attack on the Capitol was, in substantial part, the result of coordinated efforts by extremist groups.[12]  There is no evidence that either Giuliani or President Trump has been investigated for, let alone charged with, any crime related to the Capitol Riot or involvement with these extremist groups.  Plaintiffs would have the Court believe that what the FBI has been unable to do—tie Giuliani and Trump to a vast conspiracy to mastermind the attack on the Capitol—Plaintiffs will accomplish through this litigation.  This is simply too far-fetched and outlandish to pass the plausibility standards of Rule 12(b)(6).

### *4.   CAUSATION IS IMPLAUSIBLE.*

Finally, aside from all else, Plaintiffs cannot plausibly plead causation.  As discussed above, thousands of demonstrators were already at the Capitol and breaching its perimeter before President Trump made any suggestion of marching to the Capitol at the Ellipse Rally.  The initial attacks on the Capitol were pre-planned and were completely independent of the Ellipse Rally.[13] As discussed above, it would have been impossible for those supposedly "incited" by the words of President Trump or Giuliani to have been responsible for the initial breach at the Capitol because by the time attendees walked from the Ellipse through the thousands of people flooding the streets to the Capitol, the violence had already begun.  Even if some of the Ellipse Rally attendees were stirred to violence from the Ellipse Rally speeches, the attack on the Capitol would have occurred

---

[12]  *See*  https://www.npr.org/2021/03/30/982381991/capitol-conspiracy-cases-show-plans-for-violence-not-necessarily-for-breach (last visited May 17, 2021).

[13]  *See*  https://www.npr.org/2021/03/02/972895521/prosecutors-proud-boys-gave-leader-war-powers-planned-ahead-for-capitol-riot (last visited May 17, 2021).

regardless.  This is clearly evidenced by public records demonstrating that extremists planned the attack independent of the Ellipse Rally and with no plans to attend the Rally or hear the speeches. *See id.*

Therefore, the publicly available facts demonstrate that Plaintiffs cannot, as a matter of law, prove that they were injured as a result of the Ellipse Speech when the evidence shows that the Capitol was attacked independent of the Trump or Giuliani Speeches.  Plaintiffs therefore cannot plausibly demonstrate any actions of Giuliani were the proximate cause of their injuries given the indisputable evidence the Capitol Riot would have occurred regardless of the Ellipse Rally.

### C.  Plaintiffs Have Failed To Adequately Plead The Claims.

Even if Plaintiffs' claims were plausible, they are nonetheless inadequately pleaded. Plaintiffs have failed to allege actual malice as required by the First Amendment.  In addition, Plaintiffs have failed to plead conspiracy with the particularity required by Section 1985.

### 1. *FAILURE TO PLEAD ACTUAL MALICE.*

As discussed above, where a public official brings a tort claim based on speech, the First Amendment requires the plaintiff to plead and prove actual malice.  This type of pleading requires more than "labels and conclusions" and a simple reference to the relevant legal standard.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The ill-will or wrongful motivation of the defendant is not sufficient to demonstrate actual malice.  *See Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012); *see also Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law.").

Rather, Plaintiffs must show that Giuliani made the statements complained of with knowledge that the statements were false or with reckless disregard as to whether they were true

or false.  *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996).  In order to prove that a statement was made with reckless disregard for the truth, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth" of his statements.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Here, Plaintiffs complain of multiple statements made by Giuliani:  (1) public statements designed to undermine public confidence in the Election such as the Election being "rigged" and that there was fraudulent voting with "crooked ballots"; (2) that Vice President Pence had the power to block the Electoral Certification; (3) that there had been "widespread voter fraud in Philadelphia and Pittsburgh" that affected the election result in that state; (4) that Philadelphia had "a sad history of voter fraud"; (5) that deceased persons in Pennsylvania were still eligible to vote in the Election; and (6) that there was voter fraud in Michigan and Wisconsin that cost President Trump those state in the Election, among others.  *See* § II.A *supra.*

Plaintiffs have made absolutely no attempt to plead any allegations—much less plausible ones—that Giuliani had subjective knowledge of the alleged falsity of the statements made regarding the claims that the Election was tainted by widespread fraud in the contested states, that there was manipulation of votes as Giuliani discussed during his Speech, that Philadelphia had a history of voter fraud,[14]  that dead people were on voter rolls in Pennsylvania,[15] or that Vice President Pence had the legal power to block the Electoral Certification.  Because Plaintiffs have made no allegations that Giuliani made the statements with knowledge of falsity or with reckless

---

[14] It appears to be true that Philadelphia has a history of voter fraud as recently as 2017 and 1993.  *See* *https://www.newsweek.com/fact-check-does-philadelphia-have-rotten-history-election-integrity-trump-claims-1545650* (last visited May 26, 2021).

[15] This also appears to have been true. *See* *https://publicinterestlegal.org/press/lawsuit-to-remove-dead-voters-in-pennsylvania-ends-with-win-for-election-integrity/* (last visited May 26, 2021).

disregard for truth, Plaintiffs have failed to adequately state claims on which relief can be granted. Likewise, to the extent Plaintiffs seek to hold Giuliani accountable as a co-conspirator for the statements of President Trump, they cannot do so since they has not adequately pleaded that President Trump made his statements with knowledge of falsity or with reckless disregard for truth of his statements.  Accordingly, all of the Plaintiffs' claims should be dismissed.

### 2.  FAILURE TO PLEAD CONSPIRACY WITH PARTICULARITY.

As discussed above, a Section 1985 claim must be pleaded with particularity.  Plaintiffs' Section 1985 Claim is not pleaded with sufficient particularity.  Plaintiffs have failed to particularly plead conspiracy – a necessary element of a Section 1985 claim.

First, Plaintiffs have not pleaded the particularization of an agreement between Giuliani and the alleged co-conspirators as he is required to do.  Plaintiffs have pleaded no specific facts that would give rise to an inference that Giuliani and all other Defendants agreed and had a meeting of the minds on the far-sweeping plot that Plaintiffs allege in their Amended Complaint – namely to engage a public disinformation campaign to create an army of rabid Trump supporters who— in concert with Defendant Proud Boys as "shock troopers"—could ultimately be incited to disrupt and block the Electoral Certification.  Plaintiffs cannot—within the confines of FED. R. CIV. P. 11—allege that President Trump and Giuliani had a secret meeting with Proud Boys, Oath Keepers, Warboys, and Tarrio wherein they came to a meeting of minds to engage in an elaborate plot to create an insurrection.  This conspiracy theory is far more fantastical than any of the allegations of Election fraud that Plaintiffs claim incited the Capitol Riot.

In their Complaint, Plaintiffs do nothing other than make the conclusory assertion that the Defendants "coordinated, and executed a common plan" to engage in the conspiratorial conduct complained of.  *See* Compl. at ¶ 261.  This Court has recently held mere allegations of a shared

conspiratorial objective or purpose is insufficient to state a claim for conspiracy. *See United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.,* No. CV 15-750 (RC), 2020 WL 686009, at *30 (D.D.C. Feb. 11, 2020) (dismissing conspiracy claim subject to heightened pleading standard where, like here, plaintiff only alleged a shared conspiratorial objective). There is no allegation in the Complaint of the time, place, and manner of how the Defendants came to a meeting of the minds and reached an agreement on the course of action Plaintiffs complain of. Because Section 1985 claims are subject to a heightened pleading standard, Plaintiffs were required to—but did not—plausibly alleged the "who, what, where, when" of the supposed meeting of the minds and agreement of the conspirators. *See id*.

### D. Plaintiffs' Claims Are Barred By The First Amendment.

Even were Plaintiffs' claims plausibly and adequately pleaded, they are nonetheless barred by the First Amendment. Their claim is entirely based on the protected opinions, governmental criticisms, political expressions, and rights of association of Giuliani. Multiple authorities weighing the limits of the First Amendment have forbade liability for speech far more incendiary than the speech complained of in this case.

In *Hess v. Indiana*, 414 U.S. 105, (1973), the Supreme Court reversed the conviction of an antiwar demonstrator. In *Hess*, during a demonstration on the campus of Indiana University, approximately 100 to 150 of the demonstrators moved onto a public street and blocked the passage of vehicles. *Id.* at 106. When the demonstrators did not respond to verbal directions from the sheriff to clear the street, the sheriff and his deputies began walking up the street, and the demonstrators in their path moved to the curbs on either side, joining a large number of spectators who had gathered. *Id.* Hess, the relevant antiwar demonstrator, was standing off the street as the

sheriff passed him.  *Id.*  Hess was arrested for disorderly conduct for saying "We'll take the fucking street later," or "We'll take the fucking street again."  *Id.* at 107.

The Indiana Supreme Court upheld Hess's conviction on the theory that—similar to Plaintiffs' theory here— Hess' statement was intended to incite further lawless action on the part of the crowd in his vicinity and was likely to produce such action.  *Id.* at 108.  In reversing, the Supreme Court held that, viewing Hess' speech in the light most favorable to the State of Indiana, "it amounted to nothing more than advocacy of illegal action at some indefinite future time".  *Id.* The *Hess* Court rested its holding on the basis that "[u]nder our decisions, 'the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'")  *Id.* (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).  Clearly, Giuliani's Speech at its theoretical worst—that is, assuming one adopted the completely implausible and ridiculous interpretation that trial by combat" or "fight to the end" meant literal and physical violence—was not a call for imminent and immediate violence, but rather—like in *Hess*—advocacy for some violent conduct at some indefinite point in the future.

Likewise, in *Terminiello v. City of Chicago*, 337 U.S. 1 (1949) the Supreme Court overturned a conviction under a statute that "permitted conviction […] if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest" because a "conviction resting on any of those grounds may not stand" under the First Amendment.  *Id.* at 5.  Thus, even if it were the case that some persons were stirred to action by Giuliani's words or actions—before or during the Ellipse Rally—that caused them to attack the Capitol, this is still not sufficient to

impose liability on Giuliani.  Only speech that presents a "clear and present danger" tantamount to the proverbial yelling "fire" in a crowded theater may be prohibited.  *See id.*

Simply put, regardless of how artfully Plaintiffs plead their claims, the First Amendment simply does not permit action based on Giuliani's statements complained of in the Amended Complaint.  There is no plausible way to construe Giuliani's statements to incite a clear and present danger of violent mob action.  The First Amendment bars all claims and causes of action based on Giuliani's statements and his activities in criticizing the Election results, regarding Election fraud, and all other speech complained of in the Amended Complaint.  It would be unconstitutional to subject Giuliani to liability for the expressions Plaintiffs complain of.

## V.    CONCLUSION

For all of the reasons discussed herein, the Court should dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

By: */s/ Joseph D. Sibley IV*

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone:  (713) 966-6789
Fax:  (713) 583-1131
Email:  sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH W. GIULIANI**