*Hon. Bennie G. Thompson, et al. v. Donald J. Trump, et al.*
Civil Action No. 1:21-CV-00400-APM

# APPENDIX A
# DICTIONARY SOURCES

## Index of Dictionary Sources

| | Page |
|---|---|
| 2 Alexander M. Burrill, A Law Dictionary and Glossary 257 (2d ed. 1867) | 1 |
| 2 Alexander M. Burrill, A Law Dictionary and Glossary 549 (2d ed. 1867) | 3 |
| Archibald Brown, New Law Dictionary and Institute of the Whole Law. For the use of Students, the Legal Profession, and the Public 259 (1874) | 5 |
| Benjamin Vaughan Abbott, Dictionary of Terms and Phrases Used in American or English Jurisprudence 203 (1879) | 7 |
| J. J. S. Hopper Wharton, Edward. Law Lexicon, or Dictionary of Jurisprudence 537 (2d ed. 1860) | 9 |
| John Bouvier, Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union 259, 260 (5th ed. 1855) | 11 |

 

DATE DOWNLOADED: Wed Jun 30 15:37:55 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Alexander M. Burrill. Law Dictionary and Glossary (Burrill's Law Dictionary) (2).

ALWD 6th ed.
Burrill, A. L Dictionary & Glossary (Burrill's L Dictionary) (2).

APA 7th ed.
Burrill, A. (2). Law Dictionary and Glossary (Burrill's Law Dictionary). New York, Baker, Voorhis & Co.

Chicago 17th ed.
Burrill Alexander M. Law Dictionary and Glossary (Burrill's Law Dictionary). New York, Baker, Voorhis & Co.

McGill Guide 9th ed.
Alexander M. Burrill, L Dictionary & Glossary (Burrill's L Dictionary) (New York: Baker, Voorhis & Co., 2)

AGLC 4th ed.
Alexander M. Burrill, Law Dictionary and Glossary (Burrill's Law Dictionary) (Baker, Voorhis & Co., 2)

MLA 8th ed.
Burrill, Alexander M. Law Dictionary and Glossary (Burrill's Law Dictionary). New York, Baker, Voorhis & Co. HeinOnline.

OSCOLA 4th ed.
Burrill, Alexander M. Law Dictionary and Glossary (Burrill's Law Dictionary). New York, Baker, Voorhis & Co.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

rule is said to be *of course*, when it may be entered by the attorney without application to the court.

OF NEW. A Scotch expression, closely translated from the Lat. *de novo*, (q. v.)

OFFA EXECRATA. L. Lat. In old English law. The morsel of execration; the corsned, (q. v.) 1 *Reeves' Hist.* 21.

OFFENCE. [from Lat. *offendere*, to offend; Lat. *delictum*.] An act committed against a law, or omitted where the law requires it, and punishable by it. *Jacob.* Now generally used as synonymous with *crime*, (q. v.) An act for which any criminal punishment may by law be inflicted. 2 *N. Y. Rev. Stat.* [702, § 32,] 587, § 33.

OFFICE. L. Fr. and Eng. [Lat. *officium*.] A position or station in which a person is employed to perform certain duties, or by virtue of which he becomes charged with the performance of certain duties, public or private.*—A place of trust. 5 *Mod.* 431, arg. Cowell defines office to be "a function by virtue whereof a man hath some employment in the affairs of another." Finch defines it, "a duty of attendance upon a charge." *Law*, b. 2, ch. 13. Webster defines it to be "a duty, charge or trust." But these seem to be rather the results or incidents (though principal and necessary ones) of office, than to constitute office itself. The idea of an *office* clearly embraces the ideas of tenure, duration, fees or emoluments, rights and powers, as well as that of *duty*. The intrinsic meaning of the word is well expressed by the old English word "place," and the figurative terms "incumbent," "swearing in," "entering upon," "vacating," which are constantly applied to offices, have the same radical idea.

A public station or employment; an employment conferred by appointment of government.*—An employment on behalf of the government, in any station or public trust, not merely transient, occasional or incidental. Platt, J. 20 *Johns. R.* 493. A charge or trust conferred by public authority. 7 *Porter's* (Ala.) *R.* 371. See 26 *Alabama R.* 159, arg. A station or employment conferred by election of the people.

A right to exercise a public or private employment, and to take the fees and emoluments thereto belonging.  2 *Bl. Com.* 36. 1 *Crabb's Real Prop.* 431, § 530. A species of incorporeal hereditament. In the United States, no public office can properly be termed a hereditament, and private ministerial offices of this class are rare or unknown. 3 *Kent's Com.* 454. See 1 *Selden's R.* 285.

An abbreviated name for *inquest of office*, (q. v.) *Finch's Law*, b. 4, ch. 24. *Trove est per office;* it is found by office. *Dyer*, 44, (Fr. ed.)

OFFICE COPY. In practice. A copy of a paper, obtained from the officer with whom the original has been filed or entered. See *Copy*.

OFFICE FOUND. In English law. Inquest of office found; the finding of certain facts by a jury on an inquest or inquisition of office. 3 *Bl. Com.* 258, 259. This phrase has been adopted in American law. 2 *Kent's Com.* 61.

OFFICER. [L. Lat. *officiarius*.] One who holds an office; a person lawfully invested with an office. See *Office*.

Officia judicialia non concedantur antequam vacent. Judicial offices should not be granted before they are vacant. 11 *Co.* 4.

OFFICIAL. [Lat. *officialis*.] In the civil law. The minister or apparitor of a magistrate or judge. *Cowell.*

In the canon law. A person to whom a bishop commits the charge of his spiritual jurisdiction. *Id.*

In common and statute law. The person whom the archdeacon substitutes in the execution of his jurisdiction. *Id.*

OFFICIARIUS. L. Lat. An officer. *Clerke's Prax. Cur. Adm.* tit. 3.

OFFICINA. Lat. A shop; a workshop. *Officina justitiæ;* the shop or mint of justice. 3 *Bl. Com.* 273. *Id.* 48. A name anciently given to the court of chancery, or rather to the ordinary legal branch of that court, as being the place where the king's writs, (the instruments of justice,) were framed. *Id. ibid.* Called also *officina brevium;* the shop of writs. 3 *Wooddes. Lect.* 214.

OFFICIUM. Lat. Office. Officium nemini debet esse damnosum. Office ought not to be an occasion of loss to any one. A maxim in Scotch law. *Bell's Dict.* By this rule, a mandatory is entitled to demand from the mandant all reasonable expenses debursed by him *bonâ fide*, and the damage sustained by him in the execution of the mandate, even though the management should have been a losing concern.

OIER, *Oir, Oyer*. L. Fr. To hear. *Kelham.* See *Oir, Oyer*.

OIL. L. Fr. The eye. *LL. Gul. Conq.* l. 21.

 

DATE DOWNLOADED: Thu Jul  1 11:59:13 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Alexander M. Burrill. Law Dictionary and Glossary (Burrill's Law Dictionary) (2).

ALWD 6th ed.
Burrill, A. L Dictionary & Glossary (Burrill's L Dictionary) (2).

APA 7th ed.
Burrill, A. (2). Law Dictionary and Glossary (Burrill's Law Dictionary). New York, Baker, Voorhis & Co.

Chicago 17th ed.
Burrill Alexander M. Law Dictionary and Glossary (Burrill's Law Dictionary). New York, Baker, Voorhis & Co.

McGill Guide 9th ed.
Alexander M. Burrill, L Dictionary & Glossary (Burrill's L Dictionary) (New York: Baker, Voorhis & Co., 2)

AGLC 4th ed.
Alexander M. Burrill, Law Dictionary and Glossary (Burrill's Law Dictionary) (Baker, Voorhis & Co., 2)

MLA 8th ed.
Burrill, Alexander M. Law Dictionary and Glossary (Burrill's Law Dictionary). New York, Baker, Voorhis & Co. HeinOnline.

OSCOLA 4th ed.
Burrill, Alexander M. Law Dictionary and Glossary (Burrill's Law Dictionary). New York, Baker, Voorhis & Co.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

TRU            ( 549 )            TRU

gaged. Thus, in the county of Roussillon, A. D. 1027, it was determined in a synod of the clergy, that no man should attack his enemy from the hour of nones on Saturday, to the hour of prime on Monday. In 1041, a general truce of God was accepted by the barons, first of Aquitaine, and then of all France, to last from the Wednesday evening of every week to the Monday morning following. This regulation was admitted by Edward the Confessor in England, in 1042, with some additions of great festivals and other days. It was confirmed by many councils, especially the Lateran council of 1179. The observance of it was sworn by knights, burgesses, and peasants of the age of fourteen and upwards, and the penalty of its infringement was excommunication. *Brande.* Dr. Robertson supposes the clause in the form of an English indictment, which, as an aggravation of the criminal's guilt, mentions his having assaulted a person who was "in the peace of God and of the king," to be borrowed from the *Truce* or Peace *of God* and of the king, (*Treuga* and *Pax Dei*, and *Pax Regis.*) 1 *Rob. Charles* V. Appendix, Note xxi.

TRUE BILL. [L. Lat. *billa vera.*] In criminal practice. The endorsement made by a grand jury upon a bill of indictment, when they find it sustained by the evidence laid before them, and are satisfied of the truth of the accusation. 4 *Bl. Com.* 306.

TRUST. [Lat. *fiducia, fides, fidei-commissum.*] A confidence; a confidence reposed in one person for the benefit of another; a confidence so reposed, respecting property. See *infra.* "What is a trust? A confidence, for which the party is without remedy, save in a court of equity." Henley, Lord Keeper, in Burgess *v.* Wheate, 1 *W. Bl.* 180.

An obligation or duty, arising out of confidence.* An obligation upon a person, arising out of a confidence reposed in him, to apply property faithfully, and according to such confidence. *Willis on Trustees,* chap. 1, p. 2. *Stair's Inst.* b. 4, tit. 6, § 2, cited *ibid.*

A right or interest, arising out of confidence.* An equitable right, title or interest in property, real or personal, distinct from the legal ownership thereof. 2 *Story's Eq. Jur.* 964. An equitable right or interest in property, which another holds in confidence, as the legal owner.* Both these definitions are essential to make up the complete idea of the word.

*⁎* The radical idea of a trust is *confidence,* and this is the word employed by Lord Coke in his definition of a *use,* which has been adopted by Mr. Butler and Mr. Lewin, as the best and most exact definition of a *trust. Butler's Co. Litt.* Note 249, lib. 3. *Lewin on Trustees,* 15. See *infra.* The same idea is still more aptly expressed by the Roman term *fidei-commissum,* which literally means a thing *committed to* one's *faith;* and Justinian explains that it was so called, because it rested upon no obligation of law, (*nullo vinculo juris,*) but only on the *honor* of those to whom it was committed, (*sed tantum pudore eorum qui rogabantur, continebantur.*) *Inst.* 2. 23. 1.

A trust, then, in its simplest elements, is a *confidence* reposed in one person, who is termed the *trustee,* for the benefit of another, who is called the *cestui que trust;* and it is a confidence respecting *property,* which is thus held by the former for the benefit of the latter. Out of this confidence arise two *estates* in the property which is the subject of it; a *legal* estate in the trustee, which consists essentially in *obligation;* and an *equitable* estate in the *cestui que trust,* which consists in *right* and beneficial *enjoyment.* So that a trust embraces the two ideas of an *obligation* on the part of one person, and a corresponding *right* on the part of another, which are presented in the definitions above given; both founded upon, and growing out of the radical idea of *confidence,* which has been already explained.

In a trust thus constituted, the legal owner holds the direct and absolute dominion over the property, in the view of the law; but the income, profits or benefits thereof in his hands belong wholly, or in part, to others. The legal estate in the property is thus made subservient to certain uses, benefits or charges in favor of others; and these uses, benefits or charges, constitute the *trusts* which courts of equity will compel the legal owner, as trustee, to perform, in favor of the *cestui que trust,* or beneficiary. 2 *Story's Eq. Jur.* § 964.

Mr. Cruise defines a trust or trust estate to be "a right in equity to take the rents and profits of lands whereof the legal estate is vested in some other person; to compel the person thus seised of the legal estate, who is called the *trustee,* to execute such conveyances of the land as the person entitled to the profits, who is called the *cestui que trust,* shall direct, and to defend the

4

 

DATE DOWNLOADED: Wed Jun 30 15:59:10 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Archibald Brown. New Law Dictionary and Institute of the Whole Law. For the Use of Students, the Legal Profession, and the Public (1874).

ALWD 6th ed.
Brown, A. New L Dictionary & Institute of the Whole L. For the Use of Students, the Leg Profession, & the Public (1874).

APA 7th ed.
Brown, A. (1874). New Law Dictionary and Institute of the Whole Law. For the Use of Students, the Legal Profession, and the Public. London, Stevens & Haynes.

Chicago 17th ed.
Brown Archibald. New Law Dictionary and Institute of the Whole Law. For the Use of Students, the Legal Profession, and the Public. London, Stevens & Haynes.

McGill Guide 9th ed.
Archibald Brown, New L Dictionary & Institute of the Whole L. For the Use of Students, the Leg Profession, & the Public (London: Stevens & Haynes., 1874)

AGLC 4th ed.
Archibald Brown, New Law Dictionary and Institute of the Whole Law. For the Use of Students, the Legal Profession, and the Public (Stevens & Haynes., 1874)

MLA 8th ed.
Brown, Arch bald. New Law Dictionary and Institute of the Whole Law. For the Use of Students, the Legal Profession, and the Public. London, Stevens & Haynes. HeinOnline.

OSCOLA 4th ed.
Brown, Arch bald. New Law Dictionary and Institute of the Whole Law. For the Use of Students, the Legal Profession, and the Public. London, Stevens & Haynes.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

**OCCUPANCY**—*continued.*

entered on the land after his death might lawfully retain possession thereof, as long as the *cestui que vie* lived by right of occupancy, because it belonged to nobody. Special occupancy occurred where an estate was limited to a man and his heirs, or the heirs of his body, during the life of another person, by which the heir or heirs of the body of such grantee might enter on the death of the ancestor, and hold possession as special occupant, having an exclusive right, by the terms of the original contract, to occupy the lands during the residue of the estate granted. General occupancy, in the sense before described, was abolished by the Statute of Frauds, and the remnant of the estate was made distributable among the creditors (if any), and the surplus remaining over was (after 14 Geo. 2, c. 20) to be distributed among the next of kin of the deceased grantee. The whole law is now regulated by the 1 Vict. c. 26, which re-enacts the provisions of both the last-mentioned two statutes as regards occupancy.

*Occupancy*, in a larger sense, has played a great part in international law and in jurisprudence. In international law, it is regarded as the title to the ownership of newly-discovered countries, and also (under the particular name of hostile capture) as the title to the ownership of newly-conquered countries. In jurisprudence, it is put forward, at least very commonly, as the foundation and origin of all property, whether in lands or in goods; but an objection is taken to it as such in Maine's Ancient Law, upon the ground that occupancy, in order to be a foundation of property, is an *advised* taking possession of a thing, and the notion of advisedness is too abstract for an early age. Probably, this objection refutes itself; and, after all, to quote the words of Savigny, property has had its origin in "adverse possession ripened by prescription."

**ODIO ET ATIA.** An old writ which was directed to the sheriff to inquire whether a man committed to prison on suspicion of murder was committed on just cause of suspicion, or only out of malice. And if upon an inquisition it were found that he was not guilty, then another writ was directed to the sheriff to bail him. *Les Termes de la Ley.*

**OFFENCE** (*delictum*). Offences are either capital or not capital; capital offences are such as draw down the punishment of death on the offender, such as high treason, felony, &c. Offences not capital are those of a less important nature, and which are generally termed misdemeanors.

**OFFICE** (*officium*). An office is defined to be the right to exercise a public or private employment, and to take the fees and emoluments belonging thereto; and it is considered in law a species of incorporeal hereditament.

*See* also next title.

**OFFICE, INQUEST OF.** An inquisition or inquest of office is an inquiry made by the king's officer, his sheriff, coroner, or escheator, by virtue of his office (*virtute officii*), or by writ sent to him for that purpose, or by commissioners specially appointed, concerning any matter that entitles the king to the possession of lands or tenements, goods, or chattels, &c. This inquiry is made by a jury formed of an indefinite number of persons; it used frequently to be made during the existence of the military tenures, but is now grown almost out of use. For further information on this subject, *see* titles INQUEST; and INQUISITION OF OFFICE.

**OFFICIAL, or OFFICIAL PRINCIPAL.** This was the name given to a judicial officer of high ecclesiastical authority in the province of Canterbury, and who was appointed by and under the authority of the archbishop. He had extraordinary jurisdiction in almost all ecclesiastical causes, and all appeals from bishops and their surrogates were directed to him. His ordinary jurisdiction extended throughout the whole province of Canterbury; but his citation, except upon appeal, or by letters of request, was confined to his own diocese. This office was at one time separate from that of the Dean of the Arches' Court of Canterbury; but as the two Courts met at the same place (formerly Bow Church, *de Arcubus*), and the Dean of the Arches frequently performed the duties of the official, in the course of time they became, and ever afterwards remained, completely united and identified. The Court of the Official Principal was therefore called the Arches Court of Canterbury, and was of very ancient origin, having subsisted before the time of Henry II. It was held in the hall belonging to the College of Civilians, or Doctors of the Civil Law, at Doctors' Commons. The duties of the Official Principal, or Dean of Arches, are now discharged by the Judge of the Court for Ecclesiastical Causes, an office which is at present combined with that of the Judge of the High Court of Admiralty.

*See* title COURT OF ARCHES.

**OFFICIO, OATH EX.** An oath formerly administered to persons by which they might be compelled to confess, accuse, or purge themselves of any criminal matter

S 2

 

DATE DOWNLOADED: Wed Jun 30 16:34:35 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Benjamin Vaughan Abbott. Dictionary of Terms and Phrases Used in American or English Jurisprudence (1879).

ALWD 6th ed.
Abbott, B. Dictionary of Terms & Phrases Used in American or English Jurisprudence (1879).

APA 7th ed.
Abbott, B. (1879). Dictionary of Terms and Phrases Used in American or English Jurisprudence. Boston, Little, Brown and Company.

Chicago 17th ed.
Abbott Benjamin Vaughan. Dictionary of Terms and Phrases Used in American or English Jurisprudence. Boston, Little, Brown and Company.

McGill Guide 9th ed.
Benjamin Vaughan Abbott, Dictionary of Terms & Phrases Used in American or English Jurisprudence (Boston: Little, Brown and Company., 1879)

AGLC 4th ed.
Benjamin Vaughan Abbott, Dictionary of Terms and Phrases Used in American or English Jurisprudence (Little, Brown and Company., 1879)

MLA 8th ed.
Abbott, Benjamin Vaughan. Dictionary of Terms and Phrases Used in American or English Jurisprudence. Boston, Little, Brown and Company. HeinOnline.

OSCOLA 4th ed.
Abbott, Benjamin Vaughan. Dictionary of Terms and Phrases Used in American or English Jurisprudence. Boston, Little, Brown and Company.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

OFFICER 203 OFFICER

Navy agents are officers of the United States. Armstrong v. United States, *Gilp.* 399.

The phrase officers and seamen, in a special act for the relief of the widows and orphans of the officers and seamen of a United States vessel, does not include marines serving on such vessel. 8 *Op. Att.-Gen.* 28.

What persons are "officers" or are "employed in the civil service," and as such entitled to increased compensation under the "twenty per cent resolutions" of Congress, — see Twenty per cent Cases, 20 *Wall.* 179; United States v. Saunders, 22 *Id.* 492; and many cases in *Ct. of Cl. Rep.*

Clerks in the executive departments of the federal government or of a state are officers. Talbot v. United States, 10 *Ct. of Cl.* 426; Vaughn v. English, 8 *Cal.* 39.

A special deputy of a sheriff is not an officer. Kavanaugh v. State, 41 *Ala.* 399.

Commissioners appointed under some state statute to execute a function designated, have been held not to be officers, in People v. Middleton, 28 *Cal.* 603; Bunn v. People, 45 *Ill.* 397; Conrey v. Copland, 4 *La. Ann.* 307.

Managers of a state lottery were held agents, not officers, of the state, in State v. Platt, 4 *Harr. (Del.)* 154.

A road supervisor is not such an officer as is referred to in the statute against resisting officers in the service of process or in the discharge of their duties: it contemplates only such officers as are authorized to execute legal process. State v. Putnam, 35 *Iowa*, 561.

A police juryman is not an officer, within a clause of the constitution prohibiting a person from holding more than one office. Such clause of the constitution applies only to constitutional offices, and does not prevent a constitutional officer from holding a municipal office. State v. Montgomery, 25 *La. Ann.* 138.

A collector of city taxes is a public officer, within the exception in the bankrupt act of 1841, of debts created in consequence of a defalcation as a public officer, from the operation of a discharge. Morse v. City of Lowell, 7 *Met.* 152.

A pension officer of the United States is not an officer of the general government, so as to be disqualified under the state constitution from holding an office of trust or profit under this state. Lindsey v. Attorney-General, 33 *Miss.* 508.

A representative in the state legislature is a public officer. Morril v. Haynes, 2 *N. H.* 246.

The post of health officer of New York is included in the class denominated in the constitution of that state as "other officers." Matter of Whiting, *Edm. Sel. Cas.* 498.

The superintendent or principal keeper of the Albany county penitentiary is a public officer. Porter v. Pillsbury, 11 *How. Pr.* 240.

A board of supervisors of a county is not a public officer, within the meaning of a statute giving double costs when the action is against a public officer. People v. Supervisors of Niagara, 50 *How. Pr.* 353.

The licensing of a merchant under the United States revenue laws does not render him an officer of the United States, or not liable to a state tax. State v. Bell, *Phill. L.*, 76.

That the public printer is not within the constitutional provisions relative to officers, see Brown v. Turner, 70 *N. C.* 93.

A supervisor of roads, in Ohio, is an officer, within a statute punishing resistance to a sheriff, constable, or other officer. Woodworth v. State, 26 *Ohio St.* 196.

County commissioners are officers, within a statute restricting the powers of the several courts to punish for contempts. Hummel's Case, 9 *Watts*, 416.

County commissioners are not officers of the commonwealth, within code of 1860, § 48, prohibiting bribery. Commonwealth v. Neely, 3 *Pittsb.* 527.

A provision for the punishment of embezzlement committed by any cashier "or other officer" of a bank, includes embezzlement committed by the president and directors of a bank. Commonwealth v. Wyman, 8 *Met.* 247.

The treasurer of a railroad company is an officer, &c., of an incorporated company, within a statute relative to embezzlement by such persons. Commonwealth v. Tuckerman, 10 *Gray*, 173.

That the trustees of a corporation — *e.g.* a building society — are not embraced within the term officers, see Second Manhattan Build. Assoc. v. Hayes, 2 *Keyes*, 192.

Trustees of an insurance company, one of whom was its solicitor, and the other its travelling agent, — the by-laws not designating these as officers, — were held not to be officers, in Commonwealth v. Christian, 9 *Phila.* 556.

That a professor is not properly an officer of the college corporation, but a person in its employment, see Union County v. James, 21 *Pa. St.* 525; *Exp.* Bailey, 27 *Eng. L. & Eq.* 190.

A professor in a state university is not a public officer in such a sense as to prevent his employment as such by the board of regents of the university, from creating a contract relative between himself and the board. Butler v. Board of Regent, 32 *Wis.* 124.

**Officer de facto, or de jure.** One is said to be officer *de jure* when he is clothed with full legal right and title to the office, though circumstances, such as the intrusion of an unauthorized person, may prevent his performance of the duties. He is officer *de facto* when, having some apparent authority or color of title, he is actually in the possession of the office, exercising its functions,

Reproduction by Permission of Buffalo & Erie County Public Library Buffalo, NY

 

DATE DOWNLOADED: Wed Jun 30 15:53:26 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
J. J. S.; Hopper Wharton, Edward. Law Lexicon, or Dictionary of Jurisprudence: Explaining the Technical Words and Phrases Employed in the Several Departments of English Law (2).

ALWD 6th ed.
Wharton, J. L Lexicon, or Dictionary of Jurisprudence: Explaining the Technical Words & Phrases Employed in the Several Departments of English L (2).

APA 7th ed.
Wharton, J. (2). Law Lexicon, or Dictionary of Jurisprudence: Explaining the Technical Words and Phrases Employed in the Several Departments of English Law. Philadelphia, Kay & Brother.

Chicago 17th ed.
Wharton J. J. S.; Hopper, Edward. Law Lexicon, or Dictionary of Jurisprudence: Explaining the Technical Words and Phrases Employed in the Several Departments of English Law. Philadelphia, Kay & Brother.

McGill Guide 9th ed.
J. J. S.; Hopper Wharton, Edward, L Lexicon, or Dictionary of Jurisprudence: Explaining the Technical Words & Phrases Employed in the Several Departments of English L (Philadelphia: Kay & Brother., 2)

AGLC 4th ed.
J. J. S.; Hopper Wharton, Edward, Law Lexicon, or Dictionary of Jurisprudence: Explaining the Technical Words and Phrases Employed in the Several Departments of English Law (Kay & Brother., 2)

MLA 8th ed.
Wharton, J. J. S., and Edward Hopper. Law Lexicon, or Dictionary of Jurisprudence: Explaining the Technical Words and Phrases Employed in the Several Departments of English Law. Philadelphia, Kay & Brother. HeinOnline.

OSCOLA 4th ed.
Wharton, J. J. S.; Hopper, Edward. Law Lexicon, or Dictionary of Jurisprudence: Explaining the Technical Words and Phrases Employed in the Several Departments of English Law. Philadelphia, Kay & Brother.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

(6.) Riding or going armed with dangerous or unusual weapons.—Statute of Northampton, 2 Edw. III. c. 3.

(7.) Spreading false news.

(8.) False and pretended prophecies, with intent to disturb the peace.

(9.) Challenges to fight, either by word or letter, or knowingly bearing them.

(10.) Libel.—6 & 7 Vict. c. 96, and 8 & 9 Vict. c. 75.

(VIII.) Against Public Trade.

(1.) Cheating or selling adulterated or unwholesome food, or using false weights and measures.—Numerous statutes.

(2.) Monopoly.—21 Jac. I. c. 3.

(3.) Conspiracy by illegal means to raise wages.

(4.) Interfering with the rights of labor.—6 Geo. IV. c. 129. s. 3, and 9. Geo. IV. c. 31, s. 29.

(IX.) Against the Public Health, Police or Economy.

(1.) Offending against the Quarantine and Vaccination Acts.—16 & 17 Vict. c. 100.

(2.) Common nuisances, such as—

(a) Omitting to repair public highways or bridges.

(b) Obstructing, encroaching on, or annoying the public in using public highways, bridges, or shores.

(c) Carrying on unwholesome occupations near to public highways or habitations, keeping gaming-houses, brothels, dangerous animals, &c.—Several statutes. As to betting-houses, see 16 & 17 *Vict.* c. 119. As to the smoke nuisance in the metropolis, see 16 & 17 *Vict.* c. 128.

(3.) Indecency, such as insults offered to magistrates in the discharge of their duty, and the publication or exhibition of indecent books or pictures, or the indelicate exposure of the person in public places.—See 20 & 21 *Vict.* c. 83, as to the sale of obscene books, &c.

(4.) Drunkenness.—4 Jac. I. c. 5, and 21 Jac. I. c. 7, ss. 1 & 3.

(5.) Wanton and furious driving.—See 1 *Geo. IV.* c. 4.

(6.) Cruelty to animals.—12 & 13 Vict. c. 92, amended by the 17 & 18 Vict. c. 60.

(7.) Concealing a child-birth.

(8.) Refusing to bury dead bodies.

(9.) Taking up dead bodies.—The Anatomy Act is 2 & 3 Wm. IV. c. 75.

(10.) Refusing to serve a public office.

(11.) Buying and selling wives.

(12.) Offences against the Game Acts or poaching by night, which for this purpose commences at the expiration of the first hour after sunset, and concludes at the beginning of the last hour before sunrise.—9 Geo. IV. c. 69. The prosecution must be commenced within twelve months of the offence.

(13.) Poaching by day, which for this purpose commences at the beginning of the last hour before sunrise, and concludes at the expiration of the last hour after sunset.—1 & 2 Wm. IV. c. 32.

(14.) Vagrancy divided into three classes — (1.) Idle and disorderly persons; (2.) Rogues and vagabonds; and (3.) Incorrigible rogues. 5 Geo. IV. c. 83; amended by 1 & 2 Vict. c. 38. [*Wharton's Cr. Law.*]

OFFERINGS, personal tithes, payable by custom to the parson or vicar of the parish, either occasionally, as at sacraments, marriages, christenings, churching of women, burials, &c.; or at constant times, as at Easter, Christmas, &c.—2 & 3 *Edw. VI.* cc. 13, 20, 21.

OFFERTORIUM, the offerings of the faithful, or the place where they are made or kept; the service at the time of sacrament.

OFFICE, that function by virtue whereof a person has some employment in the affairs of another, whether judicial, ministeral, legislative, municipal, ecclesiastical, &c.—*Cowel.* It is a species of incorporeal hereditament.—2 *Bl. Com.* 36.

Also, a place where business is transacted.

OFFICE-COPY, a transcript of a proceeding filed in the proper office of a court under the seal of such office.

OFFICE-FOUND, an inquisition made to the sovereign's use of anything by virtue of an inquest of office, and it is found by the inquiry.

OFFICE-HOURS. The several offices of the Court of Chancery, except the offices of the accountant-general, and of the masters in ordinary, and taxing masters, are to be opened on every day of the year except Sundays, Good Friday, Monday and Tuesday in Easter week, Christmas day, and all days appointed by proclamation to be observed as days of general fast or thanksgiving.—*Order* 5, *8th May*, 1845.

The offices of the accountant-general, and of the masters in ordinary, and taxing masters, are to be opened on every day of the year, except the days specified in order 5, and except during vacations.—*Order* 6.

The offices of the vacation master in ordinary, and of the vacation taxing master, are to be opened during the vacations on every day, except the days specified in order 5.—*Order* 7.

The Lord Chancellor may, from time to time, by special order, direct the offices to be closed on days other than those mentioned in order 5, and direct any of the vacations to commence and terminate on days different from the fixed days mentioned in order 8.—*Order* 10.

At common law, by R. 173, H. T. 1853, "the masters' offices in the several Courts shall be open in term time from eleven o'clock in the forenoon till five o'clock in the afternoon, and not in the evening; and in the vacation from eleven o'clock in the forenoon till three o'clock in the afternoon, except between the 10th day of August and the 24th day of October, when they are to be open from eleven in the morning till two in the afternoon, and except on Good Friday, Easter eve, Monday and Tuesday in Easter week, Christmas day, and the three following days, and such of the four following days as may not fall in the time of term, but not otherwise, namely, the Queen's birthday, the Queen's accession, Whit Monday, and Whit Tuesday, when the offices shall be closed." By the directions of the judges made in H. T. 1853, "between the first day of September and the 24th day of October in each year, one of the masters of the Courts of Queen's Bench, Common Pleas, or Exchequer, shall have authority to tax bills of costs, take

 

DATE DOWNLOADED: Thu Jul  1 09:24:59 2021
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
John Bouvier. Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union (5).

ALWD 6th ed.
Bouvier, J. John Bouvier, Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union (5th ed., rev. enl.) (5).

APA 7th ed.
Bouvier, J. (5). Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union. Philadelphia, Printed for the Estates of John Bouvier.

Chicago 17th ed.
Bouvier John. Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union. Philadelphia, Printed for the Estates of John Bouvier.

McGill Guide 9th ed.
John Bouvier, L Dictionary, Adapted to the Constitution & Ls of the United States of America, & of the Several States of the American Union (Philadelphia: Printed for the Estates of John Bouvier., 5)


AGLC 4th ed.
John Bouvier, Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union (Printed for the Estates of John Bouvier., 5)

MLA 8th ed.
Bouvier, John. Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union. Philadelphia, Printed for the Estates of John Bouvier. HeinOnline.

OSCOLA 4th ed.
Bouvier, John. Law Dictionary, Adapted to the Constitution and Laws of the United States of America, and of the Several States of the American Union. Philadelphia, Printed for the Estates of John Bouvier.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

asked; as, a rule to plead is a matter of course.

OFFENCE, *crimes*. The doing that which a penal law forbids to be done, or omitting to do what it commands; in this sense it is nearly synonymous with crime. (q. v.) In a more confined sense, it may be considered as having the same meaning with misdemeanor, (q. v.) but it differs from it in this, that it is not indictable, but punishable summarily by the forfeiture of a penalty. 1 Chit. Prac. 14.

OFFER, *contracts*. A proposition to do a thing.

2. An offer ought to contain a right, if accepted, of compelling the fulfilment of the contract, and this right when not expressed, is always implied.

3. By virtue of his natural liberty, a man may change his will at any time, if it is not to the injury of another; he may, therefore, revoke or recall his offers, at any time before they have been accepted; and, in order to deprive him of this right, the offer must have been accepted on the terms in which it was made. 10 Ves. 438; 2 C. & P. 553.

4. Any qualification of, or departure from those terms, invalidates the offer, unless the same be agreed to by the party who made it. 4 Wheat. R. 225; 3 John. R. 534; 7 John. 470; 6 Wend. 103.

5. When the offer has been made, the party is presumed to be willing to enter into the contract for the time limited, and, if the time be not fixed by the offer, then until it be expressly revoked, or rendered nugatory by a contrary presumption. 6 Wend. 103. See 8 S. & R. 243; 1 Pick. 278; 10 Pick. 326; 12 John. 190; 9 Porter, 605; 1 Bell's Com. 326, 5th ed.; Poth. Vente, n. 32; 1 Bouv. Inst. n. 577, et seq.; and see *Acceptance of contracts; Assent; Bid*.

OFFICE. An office is a right to exercise a public function or employment, and to take the fees and emoluments belonging to it. Shelf. on Mortm. 797; Cruise, Dig. Index, h. t.; 3 Serg. & R. 149.

2. Offices may be classed into civil and military.

3.—1. Civil offices may be classed into political, judicial, and ministerial.

4.—1. The political offices are such as are not connected immediately with the administration of justice, or the execution of the mandates of a superior officer; the office of the president of the United States, of the heads of departments, of the members of the legislature, are of this number.

5.—2. The judicial offices are those which relate to the administration of justice, and which must be exercised by persons of sufficient skill and experience in the duties which appertain to them.

6.—3. Ministerial offices are those which give the officer no power to judge of the matter to be done, and require him to obey the mandates of a superior. 7 Mass. 280. See 5 Wend. 170; 10 Wend. 514; 8 Verm. 512; Breese, 280. It is a general rule, that a judicial office cannot be exercised by deputy, while a ministerial may.

7. In the United States, the tenure of office never extends beyond good behaviour. In England, offices are public or private. The former affect the people generally, the latter are such as concern particular districts, belonging to private individuals. In the United States, all offices, according to the above definition, are public; but in another sense, employments of a private nature are also called offices; for example, the office of president of a bank, the office of director of a corporation. For the incompatibility of office, see *Incompatibility*; 4 S. & R. 277; 4 Inst. 100; Com Dig. h. t., B. 7; and vide, generally, 3 Kent, Com. 362; Cruise, Dig. tit. 25; Ham. N. P. 283; 16 Vin. Ab. 101; Ayliffe's Parerg. 395; Poth. Traité des Choses, § 2; Amer. Dig. h. t.; 17 S. & R. 219.

8.—2. Military offices consist of such as are granted to soldiers or naval officers.

9. The room in which the business of an officer is transacted is also called an office, as the land office. Vide *Officer*.

OFFICE BOOK, *evidence*. A book kept in a public office, not appertaining to a court, authorized by the law of any state.

2. An *exemplification*, (q. v.) of any such office book, when authenticated under the act of congress of 27th March, 1804, Ingers. Dig. 77, is to have such faith and credit given to it in every court and office within the United States, as such exemplification has by law or usage in the courts or offices of the state from whence the same has been taken.

OFFICE COPY. A transcript of a record or proceeding filed in an office established by law, certified under the seal of the proper officer.

OFFICE FOUND, *Eng. law*. When an inquisition is made to the king's use of anything, by virtue of office of him who inquires,

and the inquisition is found, it is said to be *office found*.

OFFICE, INQUEST OF. An examination into a matter by an officer in virtue of his office. Vide *Inquisition*.

OFFICER. He who is lawfully invested with an office,

2. Officers may be classed into, 1. Executive; as the president of the United States of America, the several governors of the different states. Their duties are pointed out in the national constitution, and the constitutions of the several states, but they are required mainly to cause the laws to be executed and obeyed.

3.—2. The legislative; such as members of congress; and of the several state legislatures. These officers are confined in their duties by the constitution, generally to make laws, though sometimes in cases of impeachment, one of the houses of the legislature exercises judicial functions, somewhat similar to those of a grand jury, by presenting to the other articles of impeachment; and the other house acts as a court in trying such impeachments. The legislatures have, besides, the power to inquire into the conduct of their members, judge of their elections, and the like.

4.—3. Judicial officers; whose duties are to decide controversies between individuals, and accusations made in the name of the public against persons charged with a violation of the law.

5.—4. Ministerial officers, or those whose duty it is to execute the mandates, lawfully issued, of their superiors.

6.—5. Military officers, who have commands in the army; and

7.—6. Naval officers, who are in command in the navy.

8. Officers are required to exercise the functions which belong to their respective offices. The neglect to do so, may, in some cases, subject the offender to an indictment; 1 Yeates, R. 519; and in others, he will be liable to the party injured. 1 Yeates, R. 506.

9. Officers are also divided into public officers and those who are not public. Some officers may bear both characters; for example, a clergyman is a public officer when he acts in the performance of such a public duty as the marriage of two individuals; 4 Conn. 209; and he is merely a private person when he acts in his more ordinary calling of teaching his congregation. See 4 Conn. 134; 1 Apple. 155.

OFFICIAL, *civil and canon laws*. In the ancient civil law, the person who was the minister of, or attendant upon a magistrate, was called the *official*.

2. In the canon law, the person to whom the bishop generally commits the charge of his spiritual jurisdiction, bears this name. Wood's Inst. 30, 505; Merl. Répert. h. t.

OFFICINA JUSTITIÆ, *Eng. law*. The chancery is so called, because all writs issue from it, under the great seal, returnable into the courts of common law.

OFFICIO, EX. By virtue of one's office. Vide *Ex officio;* 3 Bl. Com. 447.

OHIO. The name of one of the new states of the United States of America. It was admitted into the Union by virtue of the act of congress, entitled "An act to enable the people of the eastern division of the territory north-west of the river Ohio, to form a constitution and state government, and for the admission of such state into the Union, on an equal footing with the original states, and for other purposes," approved, May 30, 1802, 2 Story's L. U. S. 869; by which it is enacted,

§ 1. That the inhabitants of the eastern division of the territory north-west of the river Ohio, be, and they are hereby authorized to form for themselves a constitution and state government, and to assume such name as they shall deem proper; and the said state, when formed, shall be admitted into the Union, upon the same footing with the original states, in all respects whatever.

2.—§ 2. That the said state shall consist of all the territory included within the following boundaries, to wit: Bounded on the east by the Pennsylvania line, on the south by the Ohio river, to the mouth of the Great Miami river, on the west by the line drawn due north from the mouth of the Great Miami aforesaid, and on the north by an east and west line drawn through the southerly extreme of lake Michigan, running east, after intersecting the due north line aforesaid, from the mouth of the Great Miami, until it shall intersect lake Erie, or the territorial line, and thence, with the same, through lake Erie, to the Pennsylvania line aforesaid: Provided, That congress shall be at liberty, at any time hereafter, either to attach all the territory lying east of the line to be drawn due north from the mouth of the Miami aforesaid to the territorial line, and north of an east and west line