# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HON. BENNIE G. THOMPSON, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:21-cv-00400-APM |

**MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE FLOYD ABRAMS, ERWIN CHEMERINSKY, MARTHA MINOW, AND LAURENCE H. TRIBE IN SUPPORT OF PLAINTIFFS**

STEVEN A. HIRSCH - #171825
shirsch@keker.com
NIC MARAIS - # 277846
nmarais@keker.com
*Counsel of Record*
MATAN SHACHAM - #262348
mshacham@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:　　　415 391 5400
Facsimile:　　　　415 397 7188

*Attorneys for Movants and Proposed Amici Curiae Floyd Abrams, Erwin Chemerinsky, Martha Minow, and Laurence H. Tribe*

Pursuant to Local Civil Rule 7(o)(2), Floyd Abrams, Erwin Chemerinsky, Martha Minow, and Laurence H. Tribe (collectively, "movants") hereby move the Court for leave to file the accompanying Brief of Amici Curiae in Support of the Plaintiffs.

## Nature of the Movants' Interest

Amici curiae are Constitutional and First Amendment scholars and practitioners who have an interest in the courts' striking an appropriate balance between, on the one hand, the First Amendment rights of free speech, association, and petition, and on the other, the government's ability to carry out its functions—which include preventing the political intimidation of federal officials, voters, and those who seek to support and advocate for candidates for federal office.

## Reasons Why an Amicus Brief Is Desirable

The defendants in all three January 6 Suits[1] pending before this Court have moved the Court to dismiss claims that the plaintiffs have asserted under 42 U.S.C. § 1985(1), originally part of the Ku Klux Klan Act of 1871. Broadly speaking, § 1985(1) creates a civil cause of action against persons who conspire to use force, intimidation, or threats to prevent federal officials from carrying out their duties. The defendants argue that § 1985(1), at least as applied here, violates their First Amendment right to engage in "political speech." The movants believe that it is important not only to reject plaintiffs' spurious and thinly developed First Amendment defenses, but to do so on grounds that preserve the effectiveness of political-intimidation statutes generally.

Section 1985(1) is one of a suite of political-intimidation statutes that, among other things, prohibit threatening federal officials to prevent them from carrying out their duties, threatening citizens to prevent them from voting freely, and threatening anyone for supporting or failing to support federal candidates. *See* 42 U.S.C. § 1985(3); 52 U.S.C. § 10101(b); 52 U.S.C. § 10307(b). But because the political-intimidation statutes share common terms that implicate

---

[1] "January 6 Suits" refers collectively to Thompson v. Trump, No. 1:21-cv-00400-APM, Swalwell v. Trump, No. 1:21-cv-00586-APM, and Blassingame v. Trump, No. 1:21-cv-00858-APM.

speech—"conspire," "intimidate," "threat"—they are collectively vulnerable to erosion by inapt interpretations and applications of the First Amendment. Here, for example, the defendants assert that the plaintiffs' § 1985(1) claims cannot survive First Amendment scrutiny unless they fall within one of two carefully circumscribed exceptions to First Amendment coverage: the "incitement" exception for speech that is "directed to inciting or promoting imminent lawless action and is likely to incite or produce such action," *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), and the "true threat" exception, which denies First Amendment protection to "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359–60 (2003). But many modern forms of political intimidation do not involve inciting imminent lawless action or threatening to inflict physical violence; and there is uncertainty about the degree of intent that a litigant must prove in order to invoke the true-threat exception. Although both exceptions very likely apply here, a ruling that limited the political-intimidation statutes to those circumscribed scenarios would sharply curtail the reach of these statutes at a time when voting, and the public officials who administer voting, are under relentless partisan attack—as the facts of January 6 attest.

   The movants' proposed amicus brief therefore suggests that, in addition to determining whether the incitement and true-threat exceptions apply here, the Court should rely upon the long-recognized, categorical exception to First Amendment coverage for speech that is integral to the commission of a crime or tort—speech, in other words, that is the very vehicle by which a crime or tort is committed. That exception is peculiarly appropriate here, where the speech in question is integral to antidemocratic conduct that federal law has proscribed for 150 years. The movants thus urge the Court to apply a categorical First Amendment exception for speech integral to the forms of political intimidation proscribed by § 1985(1). We believe that this approach not only accords with relevant First Amendment principles but also helps to ensure the continued efficacy of the nation's legal infrastructure for controlling political intimidation. As

the facts of January 6 make clear, that infrastructure is as important to the survival of our democracy as it has ever been.

### Why the Movants' Position Is Not Adequately Represented by a Party and Why the Matters Asserted Are Relevant to the Disposition of the Case

No party brief has discussed or is likely to discuss the potential impact of the Court's First Amendment rulings on the vitality of § 1985(1) and the other political-intimidation statutes. For this reason, the movants believe that their brief will contribute a unique perspective that could shape the way the Court frames its ruling on the First Amendment defenses, with important implications for our democracy.

### Position of Each Party as to the Filing of the Proposed Brief

On July 2, 2021, the movants' counsel sent all defense counsel then listed on the docket of this case an email seeking their position as to the filing of the proposed amicus brief. Defendant **Donald J. Trump** responded through counsel that he **does not oppose** the filing. Defendants **Rudolph Giuliani** and **Oath Keepers** responded through counsel that they **do oppose** the filing. The remaining defendants do not appear to be represented by counsel and their positions as to the filing are unknown.

### Additional Information About the Movants

**Floyd Abrams** is Senior Counsel at Cahill Gordon & Reindel in New York, a Visiting Lecturer at Yale Law School, and a Lecturer in Law at Columbia Law School. For 15 years he taught as well at the Columbia Graduate School of Journalism as the Willian J. Brennan Jr. Visiting Lecturer in First Amendment law. For the last half century he has been counsel or co-counsel in numerous First Amendment cases of note including, among others, *New York Times Co. v. United States (Pentagon Papers Case)*, 403 U.S. 713 (1971); *Landmark Communications Co. v. Virginia*, 435 U.S. 829 (1978); *Smith v. Daily Mail*, 443 U.S. 97 (1979); *Herbert v. Lando*, 441 U.S. 153 (1979); *McConnell v. Federal Election Commission*, 540 U.S. 93 (2003); and *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010). He has written three books about the First Amendment—*Speaking Freely: Trials of the First Amendment* (2005);

4

*Friend of the Court: On the Front Lines with the First Amendmen*t (2013); and *The Soul of the First Amendment* (2017). He has published numerous articles about the First Amendment and received numerous awards for his work in the area.

**Erwin Chemerinsky** is the Dean of the University of California Berkeley School of Law, where he holds the title of Jesse H. Choper Distinguished Professor of Law. He frequently argues appellate cases, including in the United States Supreme Court. He is the author of 14 books, including leading casebooks and treatises about constitutional law, criminal procedure, and federal jurisdiction, and has authored over 200 law-review articles. His most recent books are *Presumed Guilty: How the Supreme Court Empowered the Police and Subverted Civil Rights* (2021) and *The Religion Clauses: The Case for Separating Church and State* (2020) (with Howard Gillman). In 2017, *National Jurist* magazine again named Dean Chemerinsky as the most influential person in legal education in the United States. In 2016, he was named a fellow of the American Academy of Arts and Sciences.

**Martha Minow** is the 300th Anniversary University Professor at Harvard University and former dean of Harvard Law School. She is the author or editor of 18 books and has authored over 200 law-review articles. Her most recent books are *Saving the News: Why the Constitution Calls for Government Action to Preserve Freedom of Expression* (2021) and *When Should Law Forgive?* (2019). Her many public lectures include the 2017 Alexander Meikeljohn Lecture on the First Amendment at Brown University. A fellow of the American Academy of Arts and Sciences and a fellow of the American Philosophical Society, she has received nine honorary degrees from universities in three nations as well as numerous awards, including the Sacks-Freund Award for Excellence in Teaching, Harvard Law School. She currently serves on the board of public media entity GBH, and previously served on the board of the CBS Corporation.

**Laurence H. Tribe** is the Carl M. Loeb University Professor and Professor of Constitutional Law *Emeritus* at Harvard. He has written over 115 articles and books, including his treatise, *American Constitutional Law*, cited more than any other legal text since 1950. He has prevailed in numerous cases that he argued in the U.S. Supreme Court, including the

following First Amendment cases: *United States v. United Foods*, 533 U.S. 405 (2001) (First Amendment precludes forcing mushroom growers to pay for generic advertising campaign unrelated to substantive regulation of mushroom market); *Sable Communications Co. v. FCC*, 492 U.S. 115 (1989) (Congress may not abolish non-obscene "dial-a-porn" services where methods of keeping children from accessing such services are not shown to be unavailable); *Board of Education of Oklahoma City v. National Gay Task Force*, 470 U.S. 903 (1985) (First Amendment protects gay-rights advocacy in public schools); *Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980) (press and public have right to attend criminal trials). He also prevailed without argument in *Boston v. Anderson*, 439 U.S. 951, 1389 (1978) (state court may not prohibit free speech by municipality on referendum issue pending before the people in statewide election). Professor Tribe helped write the constitutions of South Africa, the Czech Republic, and the Marshall Islands. He was elected to the American Academy of Arts and Sciences in 1980 and was elected to the American Philosophical Society in 2010. He holds 11 honorary degrees.

                Respectfully submitted,

                KEKER, VAN NEST & PETERS LLP

Dated: July 8, 2021

            By:   */s/ Steven A. Hirsch*
                    STEVEN A. HIRSCH

                    */s/ Nic Marais*
                    NIC MARAIS
                    *Counsel of Record*

STEVEN A. HIRSCH
NIC MARAIS
MATAN SHACHAM
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

*Attorneys for Movants and Proposed Amici Curiae Floyd Abrams, Erwin Chemerinsky, Martha Minow, and Laurence H. Tribe*

## CERTIFICATE OF SERVICE

I certify that on July 8, 2021, a copy of the foregoing was filed with the Clerk using the Court's CM/ECF system, which will send a copy to all counsel of record.

> <u>/s/ Nic Marais</u>
> NIC MARAIS
> Keker, Van Nest & Peters LLP
> 633 Battery Street
> San Francisco, CA 94111-1809
> Telephone: 415 391 5400
> Facsimile: 415 397 7188
> nmarais @keker.com

1707685