**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HON. KAREN R. BASS, HON. STEPHEN I. COHEN, HON. VERONICA ESCOBAR, HON. PRAMILA JAYAPAL, HON. HENRY C. JOHNSON, JR., HON. MARCIA C. KAPTUR, HON. BARBARA J. LEE, HON. JERROLD NADLER, HON. MAXINE WATERS, and HON. BONNIE M. WATSON COLEMAN, *in their personal capacities*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, RUDOLPH W. GIULIANI, OATH KEEPERS, PROUD BOYS INTERNATIONAL, L.L.C., WARBOYS LLC, and ENRIQUE TARRIO,<br><br>*Defendants*, | Civil Action No. 1:21-cv-00400-APM |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT**

## I. OVERVIEW OF POINTS OF REPLY

Plaintiffs open their arguments in their Memorandum in Opposition ("***Opposition***", Doc. 29) with a glass chin. Plaintiffs assure the Court that they have plausibly alleged an actual conspiracy between President Trump, Giuliani, Oath Keepers, Proud Boys, and War Boys. Why? Because this conspiracy was "announced repeatedly on social and mainstream media". Somehow, the FBI and other law enforcement completely missed this "conspiracy in plain sight". In other words, Plaintiffs would like this Court to believe the Defendants engaged in an open-aired conspiracy to commit violence at the Capitol on January 6, 2021—visible to all the world—but neither the Plaintiffs themselves nor law enforcement took any measures to stop the insurrection against the United States government that was advertised for all the world to see.

Of course, Plaintiffs' claims are ludicrous. If they were true, the Capitol Riot would have never occurred. It would have been squashed by our law enforcement before it ever got off the ground. Trump and Giuliani would be sitting in jail for treason. Plaintiffs—partisan politicians—have improperly used this frivolous lawsuit to punish their political adversaries. But the First Amendment—as even Plaintiffs' amici essentially admit—serve to bar Plaintiffs' claims. For the reasons discussed below (and articulated in the Memorandum in support of Defendant's Motion to Dismiss), Plaintiffs' claims should be dismissed and the amici's request for this Court to expand liability under Section 1985 at the expense of the First Amendment should be rejected.[1]

## II. POINTS OF REPLY

### A. Plaintiffs Cite The Wrong Legal Standard.

In their Opposition, Plaintiffs claim that the Supreme Court's decision in *Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993) dispensed with any heightened pleading standards for Section 1985 cases. *See* Opposition at p. 18, n.6. But *Leatherman* had nothing to do with Section 1985 – it was a Section 1983 case. The Court held that "[a] federal court may not apply a "heightened pleading standard"—more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)—in civil rights cases alleging municipal liability under § 1983." No Court has applied this rationale to Section 1985 claims because, unlike Section 1983 claims, Section 1985 claims require elements of conspiracy, which

[1] This Reply will focus primarily on the incurable defects in Plaintiffs' Complaint – the inability to overcome the First Amendment and Plaintiff's implausible and unreasonable construction of the meaning of Giuliani's Statements and those of the other Co-Defendants, which serve as the basis for their claims. Should the Court disagree, Defendant stands on the other pleading deficiencies raised in the Motion that, in the discretion of the Court, may be cured with leave to amend. Defendant, however, does not believe that Plaintiffs can—in good faith—replead to satisfy, for example heightened pleading requirements under FRCP 9 or actual malice, while also complying with FRCP 11.

are required to be pleaded with particularity. This district—and others—has recognized this principal in the years after the *Leatherman* decision. *See, e.g., Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997) (requiring Section 1985 conspiracy claim to be pleaded with particularity). Accordingly, the Court should require Plaintiffs' Section 1985 conspiracy claim to be pleaded with particularity.

**B. The Conspiracy Allegations Fall Short.**

Plaintiffs admit the folly of the conspiracy claim in their Opposition. Plaintiffs argue that "[t]he only question is whether Plaintiffs have plausibly alleged that each of the Defendants shared the insurrectionists' plan to interrupt the Electoral College vote count through force, intimidation, or threats." Opposition at p. 33. But this is not the standard for conspiracy. The standard is that all of the Defendants must have had a **meeting of the minds** wherein they agreed or reached an understanding that the Electoral College would be disrupted by physically invading the Capitol to prevent Plaintiffs from certifying the results. Even if it were true—and it is not—that Giuliani approved of or endorsed the Capitol Riot (he swiftly condemned it) and whatever delay it had on the Electoral Certification, merely having a shared objective is not sufficient to create a conspiracy. *See United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.,* No. CV 15-750 (RC), 2020 WL 686009, at *30 (D.D.C. Feb. 11, 2020) (dismissing conspiracy claim where, like here, plaintiff only alleged a shared conspiratorial objective or "plan"). In other words, the fact that Giuliani may have wanted Vice President Pence to delay certification of the Electoral College by sending it "back to the State Legislatures" as Giuliani alluded to in his Statements, does not mean that he was in a conspiracy with violent rioters to prevent certification by means of violence.

Realizing that Plaintiffs have nothing to point to by way of specific allegations of a conspiracy involving Giuliani, they attempt to make Giuliani responsible for the statements made

by President Trump because he "worked alongside" him for many months prior to the Riot. Opposition at p. 42. Giuliani—a longtime friend from his days as the mayor of New York—served as President Trump's counsel and represented him in one the impeachment proceedings. This alone is not evidence he was a general-purpose conspirator with Trump and does nothing to establish they had a meeting of the minds to attack the Capitol.

But Plaintiffs must show more than just that Trump and Giuliani were involved in some kind of conspiracy to challenge or overturn the Election results – they must show that Trump and Giuliani were in a conspiracy *with all of the other Defendants* to overturn the Election Results by attacking the Capitol. Plaintiff can point to absolutely nothing to substantiate this frivolous claim. Rather, Plaintiffs point to alleged incendiary statements made by Giuliani at the Ellipse Rally that supposedly inciting a mob to violence.[2]

But Plaintiffs cannot sustain a claim under Section 1985 because Giuliani supposedly "incited" a mob to violence. They must demonstrate that Giuliani conspired—a pre-planned meeting of the minds—with the other Defendants to do so. Plaintiffs have not—and cannot within the confines of FRCP 11—make a good faith pleading that Giuliani had an agreement with Proud Boys, Oath Keepers, or War Boys to engage in violence at the Capitol or to incite others to do so. Plaintiffs have fatally failed to identify any specific facts that would give rise to a meeting of the minds between Giuliani and Proud Boys, Oath Keepers, or War Boys. The claims must be dismissed.

---

[2] Plaintiffs claim in their Opposition that Giuliani "admits" that "Trump's mob" arrived only two minutes after the Capitol perimeter was breached. Opposition at p. 43. But Plaintiffs misread Giuliani's Brief. The Brief very clearly recites—based on public information—that the Ellipse crowd did not arrive at the Capitol until roughly 40 minutes after the Capitol perimeter was breached. *See* Giuliani Br. at pp. 7-8. Thus, the supposedly "incited" Ellipse crowd would have arrived to find the Capitol already breached and occupied.

**C. Giuliani Did Not Call For Any Conspiracy Or Violence.**

In the Opposition, Plaintiff correctly points out that speech used to create an illegal conspiracy and incitements to imminent violence is not protected by the First Amendment. Opposition at p. 49. However, in arguing his Statements are not protected, Plaintiffs ignore Giuliani's actual words used in the Statements at the Ellipse and the context in which those Statements were made. Instead, Plaintiffs paraphrase and interpolate statements to fabricate plausibility for their specious claims. The Court need not accept Plaintiffs' characterization of Giuliani's Statements as true when those Statements are part of the public record.

No rational person could read Defendant's brief Statements at the Ellipse Rally as an "invitation" to join an illegal conspiracy to attack the Capitol. Giuliani's statements, in context, are discussing *legal* challenged wherein he will "fight to the end" and wherein—assuming Vice President Pence sent the certification back to the states—he would have a figurative "trial" (again a *legal* challenge) by pitting his experts/evidence on the alleged voting fraud against those in favor of the results. These statements have nothing to do with any alleged meeting of the minds by Giuliani and the other Defendants wherein they agreed to attack the Capitol and/or incite mob violence against the Capitol.

Plaintiffs then attempt to reverse engineer the Supreme Court's exception in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)) to create the "incitement to violence" exception. Plaintiffs claim that Giuliani's Statements are vulnerable to a tort claim under *Brandenburg* because they are Statements: (1) directed at specific individuals; (2) that specifically advocate for such individuals to take action; and (3) were uttered with specific intent to produce "imminent disorder". Opposition at pp. 54-56. Plaintiffs' attempts are entirely specious and should be rejected.

First, as was the case in *Hess*, Giuliani's Statements were not directed toward any particular person or group. In *Hess v. Indiana*, 414 U.S. 105 (1973), a person faced an unruly crowd on city streets and stated, "We'll take the fucking street later," or "We'll take the fucking street again." *Id.* at 107. The Supreme Court held that this was not speech that was directed toward a specific person or individual. *Id.* at 108-09. This crowd on a city street in *Hess* was clearly much smaller than the crowd at the Ellipse Rally. And this underscores the arguments above with respect to conspiracy – it is implausible that Giuliani directed his comments to everyone at the Ellipse Rally to join him on an escapade of Capitol violence. Plaintiffs can provide no authority where a person was held liable for the actions of a small minority of an audience as large as the Ellipse Rally. If Giuliani had said, "Hey, you Proud Boys and Oath Keepers here on the Ellipse grounds – let's go to the Capitol and confront Congress", then perhaps Plaintiff would have an argument the Statements were directed "specifically directed" toward a person or individual. But as the Court can read for itself, this was not even close to being the case as Giuliani was speaking to not only those present at the Ellipse but people listening across the nation.

But even if Plaintiffs could satisfy this condition, they certainly cannot satisfy the next. Speech is protected even if it "encourage[d] unlawful acts". *Id.* at 245 (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002)). Giuliani's only words that can even be arguably associated with violence are "fight to the end" and "trial by combat". But he in no way associated these rhetorical phrases with a call for any *listener* or *audience member* to engage in actual violence or any action whatsoever. The listeners would not be part of any "trial"—combat or otherwise—as this was a legal issue and would involve Giuliani and the legal team at some point in the future. Giuliani says "we" will "fight to the end" to secure a free and fair vote, again referring to himself

and the legal team. None of these are calls for listeners or audience members to take any action – much less actions of physical violence directed at the Capitol.

Under Plaintiffs' arguments, if a listener in California became incensed by Giuliani's Statements and proceeded to ransack Congresswoman Waters' home believing she was part of some Election conspiracy, Giuliani would be liable. But this cannot be, and is not, the law of the First Amendment. Defendant must have specifically directed statements at individuals or a readily definable group and given them "marching orders" for violence. We can debate as a society whether the Ellipse Rally's speakers and an alleged narrative of a "stolen election" were responsible or prudent in promoting civility, democracy, and peaceful transfer of power, but in no way can this deprive the Statements of First Amendment protection. Plaintiffs' claims must be dismissed.

Finally, even were Plaintiffs to have colorable arguments to satisfy the first two aspects of the *Brandenburg* exception, they also cannot satisfy the third – that Defendant uttered the Statements with intent to create imminent disorder. Plaintiffs claim that they "do not simply allege that Trump and Giuliani stirred a crowd to anger […] they urged the crowd to take immediate action at the Capitol, and the crowd heeded their call." Opposition at p. 56. This is ludicrous. The undisputed facts reveal that Giuliani immediately condemned the violence at the Capitol – he in no way endorsed it. And there is simply no way that one can construe Giuliani's Statements as inciting "imminent" violence. In fact, Plaintiffs purposefully ignore the fact that the "trial by combat" Statements were in the context of an assessment of voting machines "over the next 10 days" and was not at all a call to any action on that day. At worst, Giuliani's Statements advocated for his belief that Vice President Pence had the power to send the vote back to the state legislatures and "give them five to 10 days to finally finish the work" during which time he would be able to

stake his reputation on which expert was right about the machines. Plaintiffs' arguments are completely without merit.

The question the Court should ask is: If the Capitol Riot had never occurred, would one be able to look at Giuliani's Statements (or even the statements of other speakers at the Ellipse Rally) and determine that Giuliani and/or other speakers engaged in a *failed* attempt to incite listeners to march to the Capitol and launch a violent attack? The answer is clearly "no". Because that answer is "no", neither the Court nor law enforcement can impose liability on any of the speakers.

Whatever "moral" responsibility members of Congress, the Senate, the media, law professors, or anyone else want to place on Giuliani or other speakers at the Ellipse Rally for "irresponsible" or even "inflammatory" rhetoric, legal responsibility cannot lie. Otherwise, every time impassioned political speech called for "action" or "fighting" against injustice—or calling for "unrest in the streets"—that speaker would be held vicariously liable as "inviting a criminal conspiracy" for anyone who exercised free moral agency to engage in violence after hearing the speech. The First Amendment does not, and cannot, tolerate liability in such a circumstance as this and the Court should dismiss Plaintiffs' claims.[3]

---

[3] Amici have filed a brief supporting the Plaintiffs against Giuliani. *See* Doc. 31-1. Giuliani responds only to point out that, in their Brief, they impliedly admit that established First Amendment law may be "too narrow" to allow Plaintiffs' suit to withstand the protections of the First Amendment and urge the Court for changes in the law to ensure Plaintiffs and more like them may bring similar strategic lawsuits against public participation wherein they use Section 1985 to conjure images of the "Ku Klux Klan". *Id.* at pp. 10-11. Giuliani is confident the Court will not deviate from established Supreme Court precedent and will not allow Giuliani's First Amendment rights to be dictated by the partisan interests of leftist academics.

## III. CONCLUSION

For all of the reasons discussed herein, the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

By: */s/ Joseph D. Sibley IV*

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131
Email: sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH GIULIANI**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2021, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which I understand to have caused service on all counsel of record.

*/s/ Joseph D. Sibley IV*
Joseph D. Sibley IV