**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HON. BENNIE G. THOMPSON,<br>*in his personal capacity*, *Et al.*<br><br>                              Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, *"solely in his personal capacity"*<br><br>                              Defendants. | Civil Action No. 1:21-cv-00400-APM<br><br>*responding to the*<br>AMENDED COMPLAINT<br><br>Plaintiffs Requested Trial by Jury |

### DEFENDANT OATH KEEPER'S SUPLEMENTAL EXHIBIT
### IN SUPPORT OF THE OATH KEEPERS' MOTION TO DISMISS

Defendant OATH KEEPERS, Inc. respectfully submits the attached Supplemental Exhibits and objections in support of its Special Motion to Dismiss the Amended Complaint as it pertains to the OATH KEEPERS, Inc. and moves the Court to consider these exhibits before reaching a decision upon the OATH KEEPERS, Inc. Motion to Dismiss.

*The statement claimed by the Honorable Amit Mehta is simply not there.*

**There is no statement in former President Donald Trump's speech on January 6, 2021, as Judge Mehta claimed in the January 10, 2021.**

*It's just not there.*

*The statement which is the cornerstone of the fabled (imagined) conspiracy is simply not found in Donald Trump's speech*, attached as Exhibit A.

Furthermore, in Paragraphs 63, 128, 129, 130, 131, and 132 – the allegations of which are central and essential and crucial to the Plaintiffs' claims and legal theories – the Plaintiffs rely upon written documents containing statements allegedly made by members of the Oath Keepers, known and unknown.  The Plaintiffs tell us what the Plaintiffs think those statements mean.

Defendant moves the Court to allow the Defendant to supplement its Motion to Dismiss with these additional exhibits and order that the Plaintiffs submit any other documents in their entirety that

> **"In general, our review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, *and any documents incorporated in the complaint by reference*. Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir.2002)..."**

*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184 (2nd Cir. 2007) (emphasis added).

Although this is not a trial, it is a test of whether a Complaint – in its present form – states a cause of action. That is, is it capable of being plausibly presented at trial.

**Rule 106** of the Federal Rules of Evidence requires that:

> **If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.**

Defendant disagrees with the Court's comment in hearing January 10, 2022, that the burden of producing the full document is upon the objecting party. If that is "how things are normally done" on Rule 106, those practices are wrong.

This is especially true if the OATH KEEPERS, Inc. do not know where these Plaintiffs claim to have found many of the fragmentary quotes alleged in the

Defendant OATH KEEPERS, Inc., asks the Court to consider the entire document not just the fragments of quotes included in the allegation during deciding its Motion to Dismiss under Rule 12(b)(6). The Court should consider the full context of these statements to the extent that the Defendant can find the referenced document.

Again, for context, new counsel for OATH KEEPERS has not argued that no set of allegations could be brought by these Plaintiffs such as with regard to standing, or that no causes of action could be considered. But the Plaintiffs simply have not pled a valid cause of action.

As with many if not most lawsuits, there is value and importance in seeking precision. Here more than most lawsuits, the actuality or danger of sweeping up people with a drag net approach due to imprecision is very serious.

Certainly if the Plaintiffs had credibly alleged personal injury, they would have standing, for example. That's different from whether they have as of yet alleged a personal interest within the context of the causes of actions mentioned. They might. But have they? Precision allows Defendants and the Court to properly prepare for the progress of a case and for trial.

I. **STRAINED CONCEPTS OF CONSPIRACY ARE SWEEPING IN OATH KEEPERS, Inc.**

Again, it is not the role of the OATH KEEPERS, Inc. or their counsel to carry water for the former President Donald Trump, including because he is fully capable of fighting for his own position. And he can and has hired able attorneys to represent him.

Nevertheless, as illustrated strongly in the January 10, 2022, hearing, the exact meaning of one or more conspiracies can potentially affect OATH KEEPERS, Inc. and/or individual members. The deep dive into the precise identification and analysis of what constitutes a conspiracy, if anything, demonstrated that the organization OATH KEEPERS, Inc. and its members or those who identify with it are being considered in the light of the claim of a conspiracy led by Trump.

The Plaintiffs here argued and the Court considered [1] a conspiracy may have been formed

---

[1] Counsel believes that it is particularly important to reject assumptions about what the Honorable Judge Amita Mehta may be inclined to decide or implying from the robust, academic, and legally rigorous legal argument. Counsel views the oral argument as strongly based in the Court

3

between and among President Donald Trump and everyone who heard the sound of his voice in his speech from the Ellipse, including anyone listening around the world or around the nation by radio, TV, or internet.  The Court discussed the idea that people merely listening to Mr. Trump's speech are included in the conspiracy merely because they heard the speech, presumably if they then accepted the invitation by some act of agreement.

## II. ACTUAL SPEECH OF FORMER PRESIDENT DONALD TRUMP JANUARY 6, 2021, DOES NOT FORM A CONSPIRACY

These cases depends completely upon (among other things, but unavoidably upon) the speech that former President Donald Trump gave on January 6, 2021:

The assertions of the Plaintiffs are being argued so as to affect the Defendant OATH KEEPERS, Inc., based upon a conspiracy initiated (if not earlier) at and around the park section of the South White House lawn known as the "Ellipse" when Donald Trump perhaps made a proposal or invitation to engage in a conspiracy during his speech.

The discussion by the Plaintiffs and others was inaccurate and misguided. The speech – attached in full as Exhibit A – of Donald Trump actually says:

> **We have come to demand that Congress do the right thing and only count the electors who have been lawfully slated, lawfully slated. I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard.**

Donald Trump not only stated that the purpose was that "**Congress do the right thing**" but also that he wanted Congress to "**count [only] the electors who have been lawfully slated.**"

Therefore, Donald Trump was proclaiming that he wanted the Joint Session of Congress on January 6, 2021, for the purpose of counting (valid) Electoral College votes *__to be held__*, *__to__*

---

exploring every question and issue that strikes Judge Mehta as important or even potentially influential and inviting the attorneys to think through these issues with the Court.  Probing questions do not imply any decision, but they do raise interesting analyses.

4

*continue*, and *to proceed to a conclusion*, but to do so in a particular way that Trump considered to be legally and factually correct. That is consistent with the legal memoranda that have been leaked from his lawyers

Trump was not suggesting that the Joint Session of Congress be disrupted. Trump's speech from the Ellipse – supposedly the cornerstone of the asserted conspiracy – indicated that

Former President Donald Trump said:

> **"I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard."**

Trump did not instruct or direct that anyone march to the Capitol.

Trump observed that "**I know that**" people will be marching over to the Capitol, because the demonstrations at the U.S. Capitol were announced in December, before Trump's appearance at the Ellipse rally by Women for America First was even announced. Plans for people to go to the U.S. Capitol *predated* plans for Donald Trump to speak at the Ellipse rally.

Mr. Trump then made clear that the action required was by diligent Members of Congress, not by violence by any of those among the crowds:

> **Today, we see a very important event though, because right over there, right there, we see the event going to take place. And I'm going to be watching, because history is going to be made. We're going to see whether or not we have great and courageous leaders or whether or not we have leaders that should be ashamed of themselves throughout history, throughout eternity, they'll be ashamed. And you know what? If they do the wrong thing, we should never ever forget that they did. Never forget. We should never ever forget. With only three of the seven states in question, we win the presidency of the United States.**

Mr. Trump directed the crowd to the question of "**We're going to see whether or not we have great and courageous leaders or whether or not we have leaders that should be ashamed of themselves throughout history…**"

*This puts the focus on Members of Congress, not upon the individuals in the crowd.*

Trump directed the members of the crowd towards watching to see what the Joint Session of Congress would do. That would require that it not be disrupted. And then Trump urged the crowd to remember in the future whether or not Members of Congress had done the right thing. Again, this could not happen if the Joint Session were disrupted. In no way was any conspiracy to attack the Capitol suggested, hinted at, within the realm of possibility of what was proposed to the assembled crowds at the Ellipse on January 6, 2021.

And again, former President Trump emphasized that Members of Congress were meeting to vote on disputed Electoral College, the Joint Session of Congress would need to actually be held and the core action was to be held by Members of Congress:

> **I want to thank the more than 140 members of the House. Those are warriors. They're over there working like you've never seen before, studying, talking, actually going all the way back, studying the roots of the Constitution, because they know we have the right to send a bad vote that was illegally got.**

Again, the focus of Trump's speech was on the Members of Congress acting in their official capacities, not on any actions by the crowds. He emphasized the good work being done (expected to be done) by 140 Members of the U.S. House of Representatives.

This is not calling on, suggesting, hinting at, even conceiving of any action by the crowds other than to express their encouragement to those 140 Congressmen and others to do the right thing when they voted.

6

This all would require the Joint Session of Congress to convene, remain in session, and continue to complete its work.

As Donald Trump's advisor Peter Navarro has explained, the violence by a few actually destroyed the Trump team's legal plans and strategies to contest disputed Electoral College votes and undermined Donald Trump's strategies and position.[2]

And Mr. Trump made clear that "fight" meant to fight rhetorical, in political argument:

> **But it used to be that they'd argue with me, I'd fight. So I'd fight, they'd fight. I'd fight, they'd fight. Boop-boop. You'd believe me, you'd believe them. Somebody comes out. You know. They had their point of view, I had my point of view. But you'd have an argument. Now what they do is they go silent. It's called suppression. And that's what happens in a communist country. That's what they do. They suppress. You don't fight with them anymore, unless it's a bad story. If they have a little bad story about me, they'll make it 10 times worse and it's a major headline. But Hunter Biden, they don't talk about him. What happened to Hunter? Where's Hunter? Where is Hunter? They don't talk about him.**

Clearly, Mr. Trump was not actually physically battling with people in the incidents recounted.  There were no actual, physical brawls in what Trump describes as "fight[s]."

By contrast, Mr. Trump's opponent threatened on many occasions to physically assault and batter Mr. Trump.

> **[JOE BIDEN THREATENING DONALD TRUMP]**
> **"The press always asks me: don't I wish I were debating him," Biden said. "No, I wish we were in**

---

[2]     Dominick Mastrangelo, "Trump adviser Navarro: Rioters on Jan. 6 hurt plan to challenge election result," THE HILL, January 5, 2022, accessible at https://thehill.com/homenews/588312-navarro-rioters-on-jan-6-hurt-plan-to-challenge-election-result

> high school—I could take him behind the gym. That's what I wish." [3]

But no one took Biden's very frequent threats of physical violence against Trump and other political rivals literally. Finally

> **So we're going to, we're going to walk down Pennsylvania Avenue, I love Pennsylvania Avenue, and we're going to the Capitol and we're going to try and give -- the Democrats are hopeless. They're never voting for anything, not even one vote. But we're going to try and give our Republicans, the weak ones, because the strong ones don't need any of our help, we're going to try and give them the kind of pride and boldness that they need to take back our country. So let's walk down Pennsylvania Avenue. I want to thank you all. God bless you and God bless America. Thank you all for being here. This is incredible. Thank you very much. Thank you.**

At worst, Mr. Trump's rambling conclusion of his speech is a jumble rather typical of former President Donald Trump. But in no way is it the imminent call to storm the U.S. Capitol portrayed by Judge Mehta and Plaintiffs when undersigned counsel tried to point to the actual words of the speech.

These words quotes are allegedly the cornerstone of the strained and ill-defined conspiracy.

### III.    PARAGRAPH 63

Paragraph 63 of the Amended Complaint vaguely asserts:

> **An Oath Keepers leader has stated that the group coordinated with the Proud Boys about how members of the two organizations would work together during the insurrection on January 6.**

---

[3] https://thehill.com/blogs/ballot-box/presidential-races/302257-biden-blasts-trump-i-wish-i-could-take-him-behind-the-gym

8

> **The Oath Keepers leader posted a Facebook message on December 19, 2020 stating, "[T]hs week I organized an alliance between Oath Keepers ... and Proud Boys.  We have decided to work together and shut this shit down."**
>
> **... "This leader then posted a Facebook message on December 25, 2020 discussing communications with Proud Boys leadership and how the Oath Keepers had "orchestrated a plan with the Proud Boys" (emphasis added).**

However, the only actual post that this could be referring to was about an event in Florida, not in D.C., and not on January 6.

Furthermore, this appears to relate to Kelly Meggs, who was not a leader of the Oath Keepers on December 19, 2020, and could not speak on behalf of the Oath Keepers.

Furthermore, note the vague and deficient allegation that the Facebook post was "discussing communications" – but what did it say?  The Court cannot have blinders put upon it and be led around by the nose.  What exactly did the post say? *Or do Plaintiffs not know?*

This post cannot be found by  a search on Facebook.

Paragraph 63 further alleges that

> **The leader sent another Facebook message on Decmeber 22 saying Defendant Trump "wants us to make it WILD that's what he's saying.  He called us all to the Capitol and wants us to make it wild!!! ... Gentlemen we are heading to DC pack your shit!!"**

Again, if this involves Kelly Meggs, Meggs was not a leader on December 22.  He was appointed to leadership in Florida only just before the January 6 event.  And the quote above is meaningless for the purpose of establishing any conspiracy.

A search for these phrases on Facebook finds nothing.  The conversation alleges is not

9

available on Facebook.  But for the Plaintiffs to quote it must be easy unless it was invented (by someone).

The entire conversations posted by some unidentified "Oath Keepers leader" must be placed before the Court, and it is the Plaintiffs who must put it before the Court, not the Defendants.  The Defendant cannot be sure that the Plaintiffs are referring to.

IV.   **PARAGRAPH 128**

Paragraph 128 alleges inadequately:

> **One member of Defendant Oath Keepers, for example, posted a photograph of herself at the Capitol on the social media site Parler, along with the statement "Me before forcing entry into the Capitol building.  #stopthesteal #stormthecapitol #oathkeepers #ohiomilitia."  Another post late in the day declared:  "Yeah.  we stormed the Capitol today.  Teargassed, the whole, 9.  Pushed our way into the Rotunda.  Made it into the Senate even.  The news is lying (even Fox) about the Historical events today."**

Aside from the obvious defect that the person is unidentified, the Plaintiffs must place before the Court the entire posts.

Parler, of course, was shut down by Left-wing fascism.  When Parler was restored, it was only on condition that all content relating to January 6, 2021, be removed (by Parler).  Therefore, the Defendant cannot reconstruct what post the Plaintiffs are referring to.

V.   **PARAGRAPH 129**

Paragraph 129 alleges that:

> **A message later posted on Facebook for example revealed Defendant Oath Keepers was transmitting intelligence about the location of members of Congress whom they were hunting.**

10

> **It said "All members are in the tunnels under
> capital seal them in.  Turn on gas."**

In addition to the obvious defect that the poster on Facebook is unidentified, the post is vague and ambiguous.

It is offered to imply that 'members' refers to Members of Congress.  This is a term commonly used within the Congress, but never used by the general public.  The public do not call Senators and Congressmen "members" unless they have been involved with Congress in some way and are talking to Congressional Members or staff.  Among common parlance, if someone referred to Congressmen or Senators as "members" it might be taken as a derogatory insult.  Only Members of Congress, their staff, and Capitol personnel refer to "members."  Certainly, if a member of the general public were going to use the inside-baseball short-hand, they would spell it out in full.

The allegation is used to imply that the Oath Keepers had gas – which they did not – especially in quantities needed to fill tunnels.

The implication that this means that Oath Keepers were "hunting" Members of Congress is not supported by the quote and the entire conversation must be produced as an exhibit before the Court.

A search for this quote on Facebook returns news coverage, but not the actual conversation asserted in context.

Indeed, it is not remotely credible that this message was ever posted on Facebook.  If there ever were a communication of this nature, it would be sent by other private means such as the darkly-mentioned communication channels and text messages.

It is likely that this Facebook message is a spoof by some other party (or misunderstood as being on Facebook when actually posted by some other platform).  It is not a message that one

11

would post generally, rather than being communicated directly and privately.

During the demonstrations of January 6, 2021, no one would be viewing Facebook, especially since the cell phone service was jammed or slow by quantity of users and Facebook is slower than sending and receiving text messages.[4] So no one among the demonstrators would see such a post in real time. It would take the unknown sender more time and effort to post on Facebook than to send a text message or Telegram or other chat message.

Therefore, given the improbability of the Facebook post being genuine, the Plaintiffs must place the full conversation posted before the Court.

## VI.   PARAGRAPH 130

Paragraph 130 alleges that:

> **Reflecting on their success in interfering with the tally of the Electoral College votes, Defendant Oath Keepers leader Thomas Caldwell posted a message on Facebook at nearly 8:00 PM on the same day with a video of himself inside the Capitol and the message "Us storming the castle. Please share.  Sharon was with me.  I am such an instigator!  She was ready for it man!  Didn't even mind the tear gas."**

However, the U.S. Attorney's Office concedes that Thomas Caldwell was never a leader of the Oath Keepers and never went inside the Capitol building. The security camera video recordings show Thomas Caldwell only outside the building.

---

[4]   Sascha Segan, "Why Cell Networks Cut Out at the US Capitol Riot:  As the mob descended on the US Capitol complex yesterday, did law enforcement jam cell signals to thwart communication? No, the networks were probably just overwhelmed. Here's why." PCMAG, January 7, 2021, accessible at: https://in.pcmag.com/networking/140085/why-cell-networks-cut-out-at-the-us-capitol-riot#:~:text=Why%20Cell%20Networks%20Cut%20Out%20at%20the%20US,communication%3F%20No%2C%20the%20networks%20were%20probably%20just%20overwhelmed.

The prosecution claims that being on the terrace outside the building is legally being in the building.

There is no post on Facebook that can be found of this message. There are references to news articles and discussion. But the post is not present on Facebook.

The Facebook post appears to be a spoof by the very active Left-wing activists on-line, sometimes called "Twitter Antifa." It appears that at first the U.S. Government merely assumed that posts on Facebook were legitimate without inquiry. For example, it seems improbable that Thomas Caldwell would have said "Please share" to such a post, which would have been written only to his friends and known contacts.

### VII.  PARAGRAPH 131

Paragraph 131 alleges that:

> **Gloating over their perceived success, Caldwell then sent another message reporting: "Proud boys scuffled with cops and drove them inside to hide. Breached the doors. One guy made it all the way to the house floor, another to Pelosi's office. A good time."**

Of course if we are to accept the Plaintiff's own self-serving opinions about what other people meant, we would have to see the entire conversation in context.

Again, we know that when a mother says "I am going to kill that boy" she is not, in fact, going to kill that boy, but is just expressing frustration. Human language demands context for accurate interpretation.

These comments are clearly rumors being passed along.

The U.S. Attorney's Office admits that no Proud Boys scuffled with any cops nor drove

13

any cops anywhere. The U.S. Attorney's Office admits that no Proud Boys breached any doors. We don't know who "one guy" is. So the Plaintiffs must put before the Court the entire message posted, which should be easy to do if the message ever actually existed.

## VIII. PARAGRAPH 132

Paragraph 132 further alleges that Thomas Caldwell sent a message:

> **"We need to do this at the local level. Let's storm the capitol in Ohio. Tell me when!"**

However, Thomas Caldwell lives in rural Virginia and Ohio was not one of the seven disputed states in the 2020 presidential election.   See:  Ivan Pentchoukov, "Electors in 7 States Cast Dueling Votes for Trump," EPOCH TIMES,  December 15, 2020, accessible at:

https://www.theepochtimes.com/electors-in-7-states-cast-dueling-votes-for-trump_3620059.html

Why would Thomas Caldwell be focused on Ohio? This appears to be another spoof on social media. The entire conversation needs to be produced before the Court.

Dated: January 11, 2022                              Respectfully submitted, OATH KEEPERS, Inc.
                                                                                          *By Counsel*


                                                                      /s/  Jonathon Moseley
                                                                     Jonathon A. Moseley, Esq., VSB #41058
                                                                     Mailing address only:
                                                                     5765-F Burke Centre Parkway, PMB #337
                                                                     Telephone:  (703) 656-1230
                                                                     Fax: (703) 997-0937
                                                                     Telephone:  (703) 656-1230
                                                                     Fax: (703) 997-0937
                                                                     Contact@JonMoseley.com
                                                                     Moseley391@gmail.com


**CERTIFICATE OF SERVICE**

14

I hereby certify that on January 11, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant(s), and also mailed a copy to the following by first class U.S. mail, postage prepaid, one single copy to each law firm for distribution internally to all counsel involved from that law firm, to:

>Mr. Joseph M. Sellers, Esq., Bar No. 318410
>Mr. Brian Corman, Esq., Bar No. 1008635
>Ms. Alison S. Deich, Esq., Bar No. 1572878
>(application for admission to be filed)
>COHEN MILSTEIN SELLERS & TOLL PLLC
>1100 New York Avenue, N.W. Suite 500, East Tower Washington, DC 20005
>Telephone: (202) 408-4600
>Facsimile: (202) 408-4699
>jsellers@cohenmilstein.com
>bcorman@cohenmilstein.com
>adeich@cohenmilstein.com
>   *Attorneys for Plaintiffs*


>**John Daniel Hull, IV**
>HULL MCGUIRE PC
>1420 N Street, NW
>Washington, DC 20005
>202-429-6520
>412-261-2627 (fax)
>jdhull@hullmcguire.com


>Ms. Janette Louard, Esq.
> (*pro hac vice* motion to be filed)
>Mr. Anthony P. Ashton, Esq., Bar No. MD0096
>Office of General Counsel
>National Association for the Advancment
>         of Colored People ("NAACP")
>4805 Mount Hope Drive
>Baltimore, Maryland 21215
>Telephone: (410) 580-5777
>jlouard@naacpnet.org
>aashton@naacpnet.org
>   *Attorneys for Plaintiffs*

Mr. Jesse R Binnall, Esq.
BINNALL LAW GROUP
717 King Street, Suite 200

15

Alexandria, Virginia 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jesse@binnall.com
> *Attorneys for Defendant*
> *Donald J. Trump*

Mr. Joseph D. Sibley, IV, Esq.
CAMARA & SIBLEY, LLP
1108 Lavaca Street, Suite 110263
Austin, Texas 78701
> *Attorneys for Defendant*
> *Rudolph W. Guiliani*

Mr. Kerry Lee Morgan, Esq.
CONSUMER LAW GROUP, P.C.
20601 Sumner
Redford, Michigan 48240-1064
Telephone: (313) 477-0180
Facsimile: (734) 281-2524
Email: kmorganesq@aol.com
> *Former Attorneys for Defendant*
> *Oath Keepers*

                                                   /s/ Jonathon Moseley