**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BENNIE G. THOMPSON, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-00400 (APM) |
| | ) | |
| **DONALD J. TRUMP, et al.** | ) | |
| | ) | |
| Defendants | ) | |
| | | |
| **ERIC SWALWELL,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-00586 (APM) |
| | ) | |
| **DONALD J. TRUMP, et al.** | ) | |
| | ) | |
| Defendants | ) | |
| | | |
| **JAMES BLASSINGAME & SIDNEY HEMBY,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 21-cv-00858 (APM) |
| v. | ) | |
| | ) | |
| **DONALD J. TRUMP, et al.** | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

The following supplemental authority is submitted in response to inquiries made by the Court at the hearing on Defendants' motions to dismiss, held on January 10, 2022.

1. **Authority Addressing the Distinction Between Campaign and Official Activity**

The Court has inquired about authorities for distinguishing between the President's official and campaign activities.

During the argument, counsel referred specifically to an opinion issued by the Office of Legal Counsel entitled *Payment of Expenses Associated with Travel by the President and Vice President*, available at 6 Op. O.L.C. 214 (1982), https://www.justice.gov/sites/default/files/olc/opinions/1982/03/31/op-olc-v006-p0214_0.pdf. The 1982 OLC opinion affirms that every recent administration has routinely distinguished between campaign activity and official duties in order to comply with the command that "appropriated funds may be spent only for the purposes for which they have been appropriated." *Id.* at 215 (citing 31 U.S.C. § 628; 52 Comp. 215 Gen. 504 (1973); 50 Comp. Gen. 534 (1971)). *Cf. U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh, J.) ("The Appropriations Clause is thus a bulwark of the Constitution's separation of powers among the three branches of the National Government. It is particularly important as a restraint on Executive Branch officers: If not for the Appropriations Clause, 'the executive would possess an unbounded power over the public purse of the nation; and might apply all its monied resources at his pleasure.'") (quoting 3 Joseph Story, Commentaries on the Constitution of the United States § 1342, at 213–14 (1833))).

The 1982 OLC opinion sets forth an easily administrable benchmark to permit this constitutionally-critical line drawing. S*ee* 6 Op. O.L.C. at 216 (adopting a "reasonable connection" to "official purposes" test for distinguishing between campaign and official

activities and identifying "the nature of the event involved[] and the nature of the individual involved" as "two major variables" for making this determination); *id.* at 218 ("Expenses associated with . . . the President . . . should normally be judged to be official or political depending on the character of the event giving rise to the expense."); *id.* at 217 (citing OLC precedent which affirmed that "[a]ppearing at party functions, fundraising, and campaigning for specific candidates are the principal examples of travel which should be considered political. On the other hand, travel for inspections, meetings, non-partisan addresses, and the like ordinarily should not be considered 'political' travel even though they [sic] may have partisan consequences or concern questions on which opinion is politically divided" (quoting Office of Legal Counsel, Memorandum *Re: Political Trips* (1977), at 11–12)).

This basic, and vitally important, distinction between campaign or political activity and official duties has been applied routinely by administrations for decades. *See, e.g.*, Deputy Chief of Staff Ickes Press Briefing, 9/18/95, 1995 WL 559099, at *2 (White House Sept. 22, 1995) ("Basically, those events that are official events are paid for by the government. The fundraising events tonight are campaign events and prorated costs will be paid by the campaign."); Press Briefing By Mike McCurry and Bruce Reed 8/28/96, 1996 WL 490759, at *6 (White House Aug. 28, 1996) (describing how campaign funds would be used to cover "the work the President is doing in the political capacity as opposed to his official capacity as President"); Press Briefing By Mike McCurry 9/23/96, 1996 WL 537880, at *3 (White House Sept. 24, 1996) ("All travel now during the period in which the President is the designated candidate of the Democratic Party is deemed political travel. The specific costs associated with his presence at the United Nations is judged by the Federal Election Commission to be an official expense since it's in pursuit of U.S. foreign policy. But all the costs of getting there and then getting to New Jersey and

conducting the campaign travel associated with that our [sic] political expenses."); Press Briefing by Scott McClellan, 2004 WL 326832, at *6 (White House Feb. 23, 2004) (explaining that practices for ensuring that campaigns cover the costs of the president's participation in campaign events "are consistent with all the applicable rules and laws governing elections, and they're consistent with practices of previous administrations").  These same principles have been applied to designate areas of the White House where campaign activity may lawfully be undertaken. *See The President—Interpretation of 18 U.S.C. § 603 as Applicable to Activities in the White House*,1979 (Counsel-Inf. Op.) 3 Op. O.L.C. 31, https://www.justice.gov/olc/opinion/application-18-usc-%C2%A7%C2%A0603-activities-white-house-involving-president (applying the longstanding principle that official duties of a president are separable from his campaign duties to conclude that the presidential residence is not a place occupied "in the discharge of official duties" and so can lawfully be used for fundraising activities).

2. **Of What Relevance, if Any, Are the Plaintiffs' Allegations that the Defendants Promoted a False Narrative Before and On January 6, 2021**

During the January 10, 2022, hearing on the currently pending motions to dismiss, the Court inquired whether, and if so in what respect, the false narrative presented by President Trump and other Defendants about fraud in the election is relevant to the issues raised in such motions.

As the authorities cited below demonstrate, the misinformation campaign, along with Trump's consistent support and encouragement of physical violence against his political opponents, are relevant factors in assessing the plausibility of allegations that the Defendants formed a conspiracy with those persons who came to the Ellipse on January 6 in response to Trump's exhortation and then violently descended on the Capitol to disrupt ratification of the

election results. Perpetuation of the false narrative fostered the belief among Trump's supporters that their country was being unlawfully seized and that drastic measures were needed to ensure Trump remained in office. The Defendants' false narrative, therefore, was an integral part of their efforts to encourage support for and induce participation in the conspiracy to prevent Congress from certifying the election. *See*, *e.g.*, *United States v. Carson,* 455 F.3d 336, 366–67 (D.C. Cir. 2006) (a statement is made "in furtherance of a conspiracy" when it "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy. . . . Such statements include those that keep a coconspirator updated on the status of the business, motivate a coconspirator's continued participation, or provide background information on key conspiracy members.") (internal quotation marks and citations omitted); *United States v. Baca*, 409 F.Supp.3d 1041, 1083 (D.N.M. 2019) ("Statements made to induce enlistment or further participation in the group's activities . . . to prompt further action on the part of conspirators . . . [,] to 'reassure' members of a conspiracy's continued existence . . . [,] to allay a coconspirator's fears . . . [, or] to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the 'in furtherance' of requirement.") (citing *United States v. Roberts*, 14 F.3d 502, 515 (10th Cir. 1993), and *United States v. Yarbrough*, 852 F.2d 1522, 1535–36 (9th Cir.), *cert. denied,* 488 U.S. 866 (1988)). *See also U.S. v. Nordean, et al.*, No. CR 21-175, 2021 WL 6134595, at *1 (D.D.C. Dec. 28, 2021) (denying motion to dismiss by Proud Boys leaders charged with conspiracy for Capitol insurrection where leaders used social media to "among other things, encourag[e] other Proud Boys to attend the protest on January 6.").

       In addition, around the time the Ku Klux Klan Act was enacted, the Supreme Court recognized that false narratives could be integral to the formation of conspiracies among large

groups of people.  In *Findlay v. McAllister*, 113 U.S. 104 (1885), a county owed the plaintiff money that would have to be collected through a special tax.  The defendants, along "with about 2,000 other evildisposed [sic] persons, residents of [the] county, . . . did, unlawfully and maliciously . . . combine and conspire to hinder and prevent the county court and the collector from . . . the collection and payment of the special tax." *Id*. at 105.  The defendants

> induce[d] the tax-payers of the county to . . . aid in carrying out their unlawful conspiracy . . . [by] falsely and fraudulently g[iving] out and publish[ing] that such bonds and special tax were illegal, null, and void, and that they were under no obligation, legal or moral, to pay the same, well knowing that such declarations were false.

*Id*. at 106.  The Court held that the defendants' actions provided clear grounds for a conspiracy claim.  *Id*. at 115.  Similarly, Defendants here furthered their conspiracy with those persons who came to the Ellipse in response to Trump's call to arms by promoting the impression that urgent and potentially violent action was needed to "stop the steal" of the 2020 presidential election.

As explained in Plaintiffs' opposition to the motions to dismiss, statements constituting acts in furtherance of a civil conspiracy, including the Defendants' collective statements and actions leading up to, during, and after the January 6 rally, are not entitled to First Amendment protection.  *See Thompson, et al. v. Trump, et al.*, No. 21-cv-400, ECF No. 29 at 50–54; *Swalwell v. Trump et al.*, No. 21-cv-568, ECF No. 23 at 17–24; *Blassingame, et al. v. Trump*, No. 21-cv-858, ECF No. 21 at 36–39.

5

Dated: January 14, 2022

Respectfully submitted,

| | |
|---|---|
| */s/ Janette McCarthy-Wallace* | */s/ Joseph M. Sellers* |
| Janette McCarthy-Wallace (*pro hac vice* motion pending) | Joseph M. Sellers, Bar No. 318410 |
| Anthony P. Ashton, Bar No. MD25220 | Brian Corman, Bar No. 1008635 |
| Anna Kathryn Barnes, Bar No. 1719493 | Alison S. Deich, Bar No. 1572878 |
| NAACP | COHEN MILSTEIN SELLERS & TOLL PLLC |
| Office of General Counsel | 1100 New York Avenue, N.W., Fifth Floor |
| 4805 Mount Hope Drive | Washington, D.C. 20005 |
| Baltimore, MD 21215 | Telephone: (202) 408-4600 |
| Telephone: (410) 580-5777 | Facsimile: (202) 408-4699 |
| jlouard@naacpnet.org | jsellers@cohenmilstein.com |
| aashton@naacpnet.org | bcorman@cohenmilstein.com |
| | adeich@cohenmilstein.com |

*/s/ Robert B. McDuff*
Robert B. McDuff (admitted pro hac vice)
MISSISSIPPI CENTER FOR JUSTICE
767 North Congress Street
Jackson, MS 39202
601-259-8484
rbm@mcdufflaw.com

*Attorneys for Plaintiffs Karen Bass, Stephen Cohen, Veronica Escobar, Pramila Jayapal, Henry Johnson, Marcia Kaptur, Barbara Lee, Jerrold Nadler, Maxine Waters, and Bonnie Watson Coleman*

| | |
|---|---|
| */s/ Philip Andonian* | */s/ Matthew Kaiser* |
| CALEBANDONIAN PLLC | KAISERDILLON PLLC |
| Philip Andonian (D.C. Bar No. 490792) | Matthew Kaiser (D.C. Bar No. 486272) |
| Joseph Caleb (D.C. Bar No. 495383) | William Pittard (D.C. Bar No. 482949) |
| 1100 H Street, N.W., Suite 315 | Sarah Fink (D.C. Bar No. 166663) |
| Washington, D.C. 20005 | 1099 Fourteenth Street, N.W., 8th Fl. |
| Telephone: (202) 953-9850 | Washington, D.C. 20005 |
| phil@calebandonian.com | Telephone: (202) 640-2850 |
| joe@calebandonian.com | mkaiser@kaiserdillon.com |
| | wpittard@kaiserdillon.com |
| | sfink@kaiserdillon.com |

*/s/ Barry Coburn*
COBURN & GREENBAUM PLLC

Barry Coburn (D.C. Bar No. 358020)
Marc Eisenstein (D.C. Bar No. 1007208)
1710 Rhode Island Avenue, N.W., 2nd Fl.
Washington, D.C. 20036
Telephone: (202) 643-9472
barry@coburngreenbaum.com
marc@coburngreenbaum.com

*Attorneys for Plaintiff Eric Swalwell*

| | |
|---|---|
| /s/ Patrick A. Malone | /s/ Anne Tindall |
| Patrick A. Malone (Bar No. 397142) | Anne Tindall (Bar No. 494607) |
| Daniel Scialpi (Bar No. 997556) | Cameron Kistler (Bar No. 1008922) |
| Heather J. Kelly (Bar No. 453154) | Erica Newland (motion for admission pending) |
| PATRICK MALONE & ASSOCIATES, P.C. | UNITED TO PROTECT DEMOCRACY |
| 1310 L Street, N.W., Suite 800 | 2020 Pennsylvania Ave. NW, #163 |
| Washington, D.C. 20005 | Washington, D.C. 20006 |
| Telephone: 202-742-1500 | Telephone: 202-579-4582 |
| Facsimile: 202-742-1515 | anne.tindall@protectdemocracy.org |
| pmalone@patrickmalonelaw.com | cameron.kistler@protectdemocracy.org |
| dscialpi@patrickmalonelaw.com | erica.newland@protectdemocracy.org |
| hkelly@patrickmalonelaw.com | |
| | |
| /s/ John Paredes | /s/ Benjamin L. Berwick |
| John Paredes (Bar No. NY0418) | Benjamin L. Berwick (Bar No. MA0004) |
| UNITED TO PROTECT DEMOCRACY | UNITED TO PROTECT DEMOCRACY |
| 115 Broadway, 5th Floor | 15 Main St., Suite 312 |
| New York, N.Y. 10006 | Watertown, MA 02472 |
| Telephone: 202-579-4582 | Telephone: 202-579-4582 |
| john.paredes@protectdemocracy.org | ben.berwick@protectdemocracy.org |

*Attorneys for Plaintiffs James Blassingame and Sidney Hemby*

7

**CERTIFICATE OF SERVICE**

I certify that on January 14, 2022, a copy of the foregoing was filed with the Clerk using the Court's CM/ECF system, which will send a copy to all counsel of record.

<u>*/s/ Joseph M. Sellers*</u>
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
jsellers@cohenmilstein.com