IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BENNIE G. THOMPSON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CV No. 21-400 |
| vs. | ) | Washington, D.C. |
| | ) | January 10, 2022 |
| DONALD J. TRUMP, ET AL., | ) | 1:09 p.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ERIC SWALWELL, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CV No. 21-586 |
| | ) | |
| DONALD J. TRUMP, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| JAMES BLESSINGER, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CV No. 21-858 |
| DONALD J. TRUMP, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

TRANSCRIPT OF ORAL ARGUMENT VIA ZOOM PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the
Thompson Plaintiffs:                Joseph M. Sellers
                                    COHEN MILSTEIN
                                    SELLERS & TOLL PLLC
                                    1100 New York Avenue, NW
                                    Suite 500 East Tower
                                    Washington, D.C. 20005
                                    (202) 408-4604
                                    Email:
                                    jsellers@cohenmilstein.com

For the
Swalwell Plaintiffs:                Philip C. Andonian
                                    CALEB ANDONIAN PLLC
                                    1100 H Street, NW
                                    Suite 315
                                    Washington, D.C. 20005
                                    (202) 953-9850
                                    Email: phil@calebandonian.com

                                    William Bullock Pittard, IV
                                    KAISER DILLON, PLLC
                                    1099 14th Street
                                    Suite 800 West
                                    Washington, D.C. 20005
                                    (202) 640-2850
                                    Email:
                                    wpittard@kaiserdillon.com

For the
Blassingame Plaintiffs:             Patrick A. Malone
                                    PATRICK MALONE & ASSOCIATES,
                                    P.C.
                                    1310 L Street, NW
                                    Suite 800
                                    Washington, D.C. 20005
                                    (202) 742-1500
                                    Email:
                                    pmalone@patrickmalonelaw.com

APPEARANCES CONTINUED:

For Defendant
Donald J. Trump:                Jesse R Binnall
                                BINNALL LAW GROUP
                                717 King Street
                                Suite 200
                                Alexandria, VA 22314
                                (703) 888-1943
                                Email: jesse@binnall.com

For Defendant
Rudolph W. Giuliani:            Joseph D. Sibley, IV
                                CAMARA & SIBLEY LLP
                                1108 Lavaca St
                                Suite 110263
                                Austin, TX 78701
                                (713) 966-6789
                                Email: sibley@camarasibley.com

For Defendant
Enrique Tarrio:                 John Daniel Hull, IV
                                HULL MCGUIRE PC
                                1420 N Street, NW
                                Washington, D.C. 20005
                                (202) 429-6520
                                Email: jdhull@hullmcguire.com

For Defendant
Oath Keepers:                   Jonathon Alden Moseley
                                JONATHON MOSELEY
                                ATTORNEY AT LAW
                                5765-F Burke Centre Parkway
                                #337
                                Burke, VA 22015
                                (703) 656-1230
                                Email: contact@jonmoseley.com

APPEARANCES CONTINUED:

For Defendant
Representative Mo Brooks:          Pro Se
                                  Representative Mo Brooks
                                  1000 New Jersey Avenue, SE
                                  Unit 1208
                                  Washington, D.C. 20003


For Non-Party Respondent
United States of America:         Brian M. Boynton
                                  DOJ-CIV
                                  950 Pennsylvania Avenue NW
                                  Washington, D.C. 20530
                                  (202) 514-4015
                                  Email:
                                  brian.m.boynton@usdoj.gov


Court Reporter:                   William P. Zaremba
                                  Registered Merit Reporter
                                  Certified Realtime Reporter
                                  Official Court Reporter
                                  E. Barrett Prettyman CH
                                  333 Constitution Avenue, NW
                                  Washington, D.C. 20001
                                  (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S
 2          COURTROOM DEPUTY:  Good afternoon, Your Honor.
 3          THE COURT:  Good afternoon.
 4          COURTROOM DEPUTY:  This is an oral argument for
 5   Civil Action 21-400, Bennie G. Thompson, et al., versus
 6   Donald J. Trump, et al; Civil Action 21-586, Eric Swalwell,
 7   et al., versus Donald J. Trump, et al.; and Civil Action
 8   21-CV-858, James Blessinger, et al., versus Donald J. Trump.
 9          Joseph Sellers for the Thompson Plaintiffs.
10          Philip Andonian and William Pittard for the
11   Swalwell Plaintiffs.
12          And Patrick Malone for the Blassingame Plaintiffs.
13          Jesse Binnall for Defendant Trump.
14          Joseph Sibley for Defendant Giuliani; John Hull
15   for Defendant Tarrio; Jonathon Moseley for the Oath Keepers
16   Defendants.
17          Representative Mo Brooks as a pro se litigant.
18          And Brian Boynton for the DOJ for Non-Party
19   Respondent United States of America.
20          THE COURT:  Okay.
21          Good afternoon, everybody, and welcome to our
22   virtual courtroom.  I hope everybody is safe and healthy and
23   your families are doing well in this new year.
24          We've got a fair amount to cover this afternoon.
25   So I just want to raise one preliminary issue, and that
```

```
 1    concerns Mr. Moseley and the Oath Keepers' motion.
 2              I know, Mr. Moseley, you've recently entered your
 3    appearance in the case; there's a pending motion on behalf
 4    of the Oath Keepers.  If you want to make argument today,
 5    you're certainly free to do so on appropriate issues that
 6    pertain to your client.
 7              I was intending to take that motion under
 8    consideration after today's hearing, so I wanted to just
 9    make you aware that you're certainly invited to make
10    argument on behalf of your client, okay?
11              MR. MOSELEY:  Thank you, Your Honor.
12              I expect other counsel to overlap very
13    effectively, so we'll see.
14              THE COURT:  Okay.
15              All right.  So I issued an order last week that
16    laid out the order in which we'll take up the issues this
17    afternoon; there are a number of them.  And I've tried to
18    apportion some time to each of those, and I'll try and stick
19    to that as much as possible.
20              So why don't we go ahead and get started.  And
21    we'll begin on the presidential immunity and Article III
22    standing questions, and why don't we begin.
23              And if there's counsel who will be speaking on
24    behalf of a particular topic on behalf of all the parties on
25    one side, please just let me know that; otherwise, what I'll
```

1   do is -- if that happens, what I'll do is then turn to the

2   other lawyers and ask if they'd like to add anything at the

3   end of that particular presentation.

4           So why don't we begin with Mr. Binnall and hear

5   first from him on the presidential immunity issue.

6           MR. BINNALL:  May it please the Court.

7           Jesse Binnall on behalf of President Trump.

8   And I also represent Donald Trump, Jr., in the case brought

9   by Congressman Swalwell.

10          Your Honor, as a preliminary matter, I would like

11  to reserve four minutes on this issue for rebuttal, if that

12  would be allowed.  And I think that should be easy on this

13  one because I think we're the only defendants that this

14  particular argument applies to.

15          THE COURT:  That's fine, Mr. Binnall.  Go ahead.

16          We don't have -- I'm not keeping a formal clock

17  here, so you'll have an opportunity for rebuttal.

18          MR. BINNALL:  Thank you very much, Your Honor.

19          Your Honor, these cases should be dismissed

20  because they never should have been brought in the first

21  place.  The complaints themselves are devoid of any legal

22  basis.  Instead, they're chock-full of propaganda that's

23  meant to achieve a political rather than a legal objective.

24          On January 6th, President Trump spoke to Americans

25  gathered by the Ellipse, and his message was clear:

1      Those gathered would peacefully and patriotically make their

2      voices heard.

3            But that unequivocal statement was ignored in all

4      the pleadings that have been brought by the plaintiffs in

5      these cases.  Instead, they want the Court to disregard

6      firmly entrenched precedent regarding bedrock constitutional

7      principles involving separation of powers and freedom of

8      speech, among others.

9            And the congressional Democrat plaintiffs are

10     hoping that this Court will help them score points against a

11     political rival at the expense of the Constitution.  That is

12     an invitation that this Court should firmly reject.

13           THE COURT:  Can we turn, Mr. Binnall, to the

14     actual legal issues, rather than framing this in rhetorical

15     terms.

16           Let me just start with what is the test under

17     *Nixon v.* -- under *Nixon*, presidential immunity, I assume you

18     agree, is limited to official acts, correct?

19           MR. BINNALL:  Presidential immunity, it's -- the

20     phrase used is not "official acts," it's everything within

21     the outer perimeters of the responsibilities of the

22     presidency.

23           THE COURT:  Right.

24           MR. BINNALL:  And I say that because, official

25     acts is something that, for instance, is used in qualified

1    immunity analyses.

2            THE COURT:  Right.  That's fair.

3            And the Supreme Court adopts a functional test for

4    purposes of determining what's within the outer perimeter.

5    So I think the question to you is, how is the -- how are the

6    allegations in this complaint, how do they fall within the

7    outer perimeter under that functional test?  What function

8    was President Trump performing by virtue of the various

9    Tweets that are identified in the complaint, and his -- most

10   importantly, the speech that he made on January 6th?

11           Are you still there, Mr. Binnall?

12           There you are.

13           MR. BINNALL:  I am, Your Honor.

14           Can you hear me okay?

15           THE COURT:  I can, yes.

16           MR. BINNALL:  Okay.

17           THE COURT:  My view switched for a moment.

18           MR. BINNALL:  Yes, sir.

19           Your Honor, a couple things.

20           First of all, the test was actually described as

21   much broader.  And matter of fact, in the *Fitzgerald* case,

22   the respondents in that case argued for a functional

23   approach that was similar to qualified immunity, and the

24   Court specifically rejected a functional approach, and

25   instead they said it's very broad.  And the language the

1    Court used in *Fitzgerald* made clear that it was very broad.

2            So to the Court's question about how these really

3    fall within the outer perimeter of the presidency, first

4    off, this has to be a content-neutral analysis.  This is not

5    an analysis where you can really look at the words that are

6    spoken in order to determine whether this is falling within

7    the outer perimeter or not.  If that was, it would be more

8    akin to the qualified-immunity approach that the *Fitzgerald*

9    courts are citing.

10           THE COURT:  But you would have me ignore what

11   he said in its entirety to determine whether it falls within

12   his presidential functions or not?

13           MR. BINNALL:  Yes, sir.

14           What I would have you do for presidential immunity

15   is I would have you look at the type of act that was being

16   conducted.

17           So, for instance, speaking to the American people.

18   Giving a speech is something that Presidents do using the

19   bully pulpit.  Bully pulpit is, I believe, a phrase that

20   President Theodore Roosevelt came up and is something that

21   has been repeated since then, and giving speeches --

22           THE COURT:  So a content-neutral review, in your

23   view, would require me to find presidential immunity for any

24   presidential statement made to the American people even if

25   it has nothing to do with the Office of the President and

1  the duties of the President?

2          MR. BINNALL:  That's right.

3          And let me give you some examples of that,

4  Your Honor, is that why it can't just be limited to

5  something that we say Presidents are actively involved in,

6  such as, for instance, signing or vetoing legislation.

7          Recently, President Biden has spoken about the use

8  of the legislative filibuster.  The legislative filibuster

9  has nothing to do with the presidency, but that's very

10  typical.

11          THE COURT:  No, no, I understand.  But those are

12  more core legislative than government function type

13  speeches.

14          But the plaintiffs' position is that the words

15  that were spoken on January the 6th had nothing to do with

16  the Office of the President, had everything to do with

17  President Trump's capacity as a candidate for office.

18  So why is that wrong?

19          I guess the question -- let me first ask:  Do you

20  agree that statements made by a President in his capacity as

21  a candidate would fall outside absolute immunity?

22          MR. BINNALL:  Not necessarily, Your Honor.

23          But there's an important point here.

24          As the plaintiffs --

25          THE COURT:  Well, hang on.

1          When you say "not necessarily," help me

2     understand -- tell me where you think the line is supposed

3     to be drawn.

4               MR. BINNALL:  Sure.

5               THE COURT:  Say the President is making a campaign

6     speech, pure campaign speech, current President, all

7     Presidents do it, is that something that is subject to and

8     enjoys presidential immunity?

9               MR. BINNALL:  Generally it would, Your Honor.

10              And let me use this as an example.

11              Let's say the President is running for re-election

12    and gives a State of the Union Address, and then the

13    president, as Presidents typically do, hit the trail after

14    that State of the Union Address and say many of those same

15    things on the -- as part of their campaign.  Just because

16    the President is no longer in front of Congress advocating

17    policies but is advocating policies as part of a campaign,

18    that in no way limits the fact that the President --

19              THE COURT:  But isn't that contrary -- that kind

20    of analysis contrary to what the Supreme Court has said,

21    which is that context matters when we're thinking about

22    immunity issues and the impact it's going to have on the

23    function of the presidency?

24              I mean, to say that a speech before Congress is

25    equivalent to a campaign trail stump speech seems to me to

1   not be consistent with what the Supreme Court has said what

2   we ought to be thinking about in terms of the scope of

3   immunity.

4          MR. BINNALL:  What the Supreme Court said is that

5   it is -- that presidential immunity is intentionally broad

6   and it reaches all the way to anything that is within that

7   outer perimeter.

8          And it's important to note that the arguments that

9   are brought up in this case by the plaintiffs are the

10  same -- are functionally the same as by the respondents in

11  the *Fitzgerald* case that we're trying to argue for some

12  level of qualified immunity, and that's not the direction

13  that --

14         THE COURT:  Well, look, I would agree with you --

15  to the extent they're suggesting I ought to probe the

16  President's motives, I would agree that that seems to be

17  inappropriate under *Fitzgerald*.

18         Let me ask you, you know, there are other

19  allegations in this complaint.  So, for example, President--

20  filed lawsuits after November the 3rd.  Would the filing of

21  those lawsuits, in your view, be within the function of the

22  Presidency and subject to immunity?  Let's leave aside the

23  immunity that exists for filing lawsuits, but would you say

24  that he's absolutely immune as President for filing those

25  lawsuits?

1          MR. BINNALL:  I would say yes, Your Honor, for a

2     couple reasons.

3          First of all, after November 3rd, as the

4     plaintiffs in these cases have pointed out, the campaign is

5     over.  At that point -- and it's important to note that the

6     January 6th rally is in no way related to the campaign; that

7     the campaign doesn't pay it for it; the campaign is not

8     involved with it at all.

9          THE COURT:  That's not true; I mean, at least not

10    according to the allegations.

11          The allegations are that the campaign both

12    contributed money to the January 6th rally and helped

13    organize it, which I have to take as true.  And I don't know

14    whether it's true or not, but that's certainly an

15    allegation.

16          MR. BINNALL:  And there is the 12(b) standard,

17    Your Honor, that I do understand.  It's a little bit

18    possibly different between a 12(b)(6) and what we're looking

19    at here.

20          That being said, I don't think we need to squall

21    over that fact, because, at this stage, you certainly are

22    assuming that these facts as pled are operative, although

23    I don't think they can make those allegations pursuant to

24    the pleading requirements in Rule 11, because it's just not

25    true.

1          That being said --

2          THE COURT:  Can I ask you another question, sir?

3          How about a different act that's alleged in the

4    complaint?

5          The President is alleged to have picked up the

6    phone and called a state official in the state of Georgia

7    after November 3rd and urged that official to scrutinize the

8    election results in Georgia.  That's a very generic way of

9    describing what was said.

10          In your view, does he enjoy presidential immunity,

11    does he enjoy absolute impunity for that act?

12          MR. BINNALL:  Yes, sir, he does.

13          THE COURT:  On what basis?

14          How is he carrying out the function of the

15    presidency by calling a state official and asking a state

16    official to scrutinize state election -- how a state

17    election -- excuse me, an election was carried out by a

18    state?

19          MR. BINNALL:  Your Honor, one of the core

20    constitutional responsibilities of the President is to see

21    that the laws are faithfully executed.

22          THE COURT:  They're not state laws.  They're not

23    state laws.

24          MR. BINNALL:  I'm getting there.

25          THE COURT:  Okay.

1          MR. BINNALL:  When you start to get into the

2     selection of electors, and then pursuant to the election

3     clause of the Constitution, there's this merger of state

4     officials, where they're doing both a federal function and a

5     state function.  And so you're not able to say, in that way,

6     Your Honor, that, well, he's just trying to talk about a

7     state issue.  So that's the first issue, is that because the

8     selection of federal electors is federal in nature, it's

9     still part of his take-care duties.

10         But, you know, more importantly, again, this is

11    part of the general duties of the President to speak, you

12    know, freely and frankly on matters of public concern, as

13    Presidents going all the way back to President Washington

14    have done.

15         And what the Supreme Court makes clear is we

16    are -- in the *Fitzgerald* case, they didn't remove remedies.

17    There are remedies for dealing with something that if

18    members of Congress as these very members of Congress that

19    are in this case right now did.  Every single one of them

20    took advantage of the remedy they had, and they voted for

21    articles of impeachment.  Now, that attempt failed.  Again,

22    President Trump was acquitted.  But that was their remedy.

23    They don't get another bite at the apple here on these

24    questions.

25         THE COURT:  Can I ask:  Is there anything in your

1   view that a President could say or do in his capacity as a

2   candidate that would not receive immunity?

3          MR. BINNALL:  Your Honor, for "say," I cannot

4   think of an example.

5          For "do," let me give you an example of something

6   that may very well that I've thought of not be subject to

7   presidential immunity is, let's say that the President is

8   acting as an agent of a campaign and signs a lease for an

9   office.  That's just for the campaign.  That action -- and

10  it's fair for the campaign of just signing a lease -- may

11  very well.

12         You know, although there has -- to my knowledge,

13  never been an example of someone successfully being able to

14  sue a President for something that happened during his term

15  of office, that is something that theoretically would be in

16  a different footing from where we are now and would be a

17  different analysis.

18         But by and large, that absolute immunity of the

19  presidency is very important.  It arises from the same place

20  that -- the same concepts as judicial immunity and

21  prosecutorial acts of immunity come from.

22         And you don't take and start looking at degrees

23  for how much someone might be upset at the actions of a

24  President, any more than you would at how much someone might

25  be upset at the actions of a judge or a prosecutor.  If a

 1     Judge makes a decision on bond and someone gets out and runs

 2     over pedestrians like we saw happen in Wisconsin recently,

 3     as much as that might infuriate people, judges have to be

 4     free to make the right decision in their discretion and not

 5     be afraid of civil litigation.  So we can't open up

 6     Pandora's box.

 7             THE COURT:  So say if I would -- say

 8     hypothetically I were to conclude -- or I were to be of the

 9     view that the plaintiffs had made out a case of civil

10     conspiracy under 1985(1) in this case, and, two, that the

11     President's speech on January the 6th was not protected

12     activity under the First Amendment because it, at least at

13     this stage plausibly, meets *Brandenburg*, in your view, is

14     that still -- he still would be entitled to absolute

15     immunity even if those two pleading standards had been met

16     for those two particular issues?

17             MR. BINNALL:  Yes, sir, Your Honor.

18             Of course, this is a threshold issue, it has to be

19     decided first and is independent of those questions.  And,

20     of course, we disagree with the premise.

21             But under that hypothetical, Your Honor, it would

22     most certainly still be barred by presidential immunity

23     because of the fact that you cannot take and dive that

24     deeply, as they would have the Court do, as to saying, well,

25     this particular speech is not part of the duties because of

1    what issues he was speaking on and advocating.

2             The President has been very clear that he was

3    there at the Ellipse on January 6th as President.  And in

4    that case, he was advocating for Congress to take or not

5    take certain actions.

6             And when a President is speaking about

7    congressional action, that is something -- we're not at the

8    outer perimeters here, we are dead center on immunity,

9    because a President always has the authority to speak about

10   whether or not any of the other branches, frankly, can or

11   should take action.

12            You know, there's the famous example of -- at his

13   State of the Union address of President Obama commenting

14   about a Supreme Court case, the *Citizens United* case.  Now,

15   that's not, again, something that he has direct involvement

16   in, but it is very normal for Presidents to comment and urge

17   action for the co-equal branches of government.

18            And that is exactly what was happening here, is

19   the President was saying that -- was discussing action that

20   was to be before Congress, and that is, again, dead center

21   on the responsibilities of the presidency.

22            THE COURT:  And you take that view even though the

23   President and the Executive Branch has no formal role in the

24   Electoral College votes either by constitutional or statute?

25            MR. BINNALL:  Yes, sir.

1          That is not part of the test is whether that's

2    part -- because if that were part of the test, it would

3    substantially narrow the immunity of the President.  So if a

4    President was to show up at a rally advocating for the Equal

5    Rights Amendment, passage of the Equal Rights Amendment,

6    then that speech ostensibly would not be protected by

7    immunity if that was the test that the Court is discussing

8    would be the law because --

9          THE COURT:  And in your view, if the President

10   made a defamatory statement at a campaign rally, that would

11   be also -- at a campaign rally, he makes a defamatory

12   statement, in your view, he would be absolutely immune from

13   suit from such a statement?

14         MR. BINNALL:  Yes, sir.

15         And it's very much the case that when serving as

16   President, Presidents are expected and required to answer,

17   for instance, allegations against them and to make other

18   statements.

19         And when you are President, under the *Fitzgerald*

20   case, all those issues are such that you would not be

21   subject to being sued civilly.  There are other remedies

22   available but being sued civilly.

23         And the *Fitzgerald* case is, I think --

24         THE COURT:  Is there anything the President would

25   say, could say, in your view, while President -- because I'm

```
 1   trying to figure out where the line would be drawn in your
 2   view -- is there anything a President could say while
 3   President of the United States that could subject him to
 4   civil suit?
 5             MR. BINNALL:  As far as what the President could
 6   say, Your Honor, I've tried to think of examples, and
 7   I cannot come up with an example of something that the
 8   President says as President that would not be covered by
 9   executive privilege, although, like I mentioned before, it's
10   possible that something related, for instance -- you know,
11   the clearest example of something that would not be within
12   the outer perimeters might be a mortgage on a home that was
13   bought clearly before someone was President, and so if the
14   President takes and says something, it would be actionable
15   only relating to that particular mortgage, then perhaps,
16   maybe that would survive a lawsuit being outside of the
17   outer perimeter of the President's duties.
18             But that is a -- even then, it's a purposefully
19   hard row to hoe, because the duties of the President are
20   all-encompassing when that person holds the office.
21             You know, for that term of office, what a
22   President does is constantly part of being the sole person
23   responsible for the Executive Branch of government.  And so
24   it must be broad in order to -- executive immunity must be
25   broad, and it must be other remedies other than civil
```

1    litigation that are used if somebody thinks that a President

2    needs to be held to account.

3            THE COURT:  Okay.

4            Mr. Binnall, one more question but not about

5    presidential immunity but about Article III standing.

6            I thought I understood you to suggest in your

7    papers that none of the plaintiffs here in any of the three

8    cases have asserted Article III standing.

9            Do I misunderstand your argument?

10           MR. BINNALL:  Your Honor, I think what we -- I'm

11   trying to remember exactly that statement, and I think

12   there's a couple points:

13           First of all, you have the concreteness

14   Article III standard issue that is simply missing here.

15   And then there is the political question doctrine, which is

16   largely overlapping the presidential immunity question.

17           So we do not --

18           THE COURT:  So let's stick with concreteness,

19   because I don't think the political question doctrine sort

20   of -- at least in terms of the three standing requirements,

21   I'm not sure how it would play in there.

22           But just sticking with concreteness, so is it your

23   view that emotional injury -- well, let's put it backwards:

24   Certainly physical injury, in your view, constitutes

25   concrete injury.  Would you agree with that?

1          MR. BINNALL:  If it's caused by the actions of

2    another, yes.

3          THE COURT:  Right.  Okay.

4          And then what about emotional injury, which

5    everyone has alleged here, that, at a minimum, everybody's

6    alleged some emotional injury?

7          MR. BINNALL:  No.

8          And I think that there's somewhat of a spectrum

9    here.  But, for instance, Plaintiff Waters was not even on

10   the floor of Congress on January 6th when things were

11   happening that are alleged in this complaint.  And so, you

12   know, certainly for Plaintiff Waters, there's no

13   concreteness of any injury.

14         And further, any other emotional --

15         THE COURT:  Don't I have to assume at this

16   juncture the truth of her allegation that she has suffered

17   emotional injuries?

18         I mean, you may be able to demonstrate after

19   discovery that, in fact, she hasn't had any emotional

20   injuries.  But for purposes of a motion to dismiss, don't

21   I have to assume the truth of her allegation, that she has

22   suffered some emotional injury?

23         MR. BINNALL:  Well, under the 12(b)(1) standard,

24   I would say that the Court is able to look at the

25   reasonableness of that.  And even under 12(b)(6), their

 1   allegations have to be plausible.

 2          I would say that Plaintiff Waters has not even

 3   come so far as to allege a plausible injury that could

 4   withstand scrutiny under Article III.

 5          And that goes the same for the other -- certainly

 6   the other congressional Democrat plaintiffs as well that

 7   have sued the President, and, on that issue, Donald Trump,

 8   Jr., because of the fact that there is no plausible

 9   allegation that they have a concreteness and any injury that

10   would be caused by anything that either President Trump or

11   Donald Trump, Jr., did.

12          THE COURT:  Okay.

13          All right.  Let me turn then to -- and then I'll

14   give you a few minutes in rebuttal, Mr. Binnall --

15          MR. BINNALL:  Sure.

16          THE COURT:  Let me turn then to counsel for the

17   plaintiffs, and hopefully somebody's going to take the lead

18   on this.

19          MR. SELLERS:  Yes, Your Honor.  It's

20   Joseph Sellers.

21          THE COURT:  Hi, Mr. Sellers.

22          MR. SELLERS:  If it's acceptable to the Court, the

23   arrangement that counsel made for the plaintiffs in the

24   three cases is that I will take the lead on the argument for

25   the first three issues that you've identified, but that one

1    or both of my colleagues in the other cases might step in at

2    the very end for one or two issues that are unique to their

3    case, if that's acceptable.

4               THE COURT:  That's fine, Mr. Sellers.

5               MR. SELLERS:  All right.

6               So let me begin with a couple, I think, principles

7    that are virtually impossible to challenge.

8               First of all, the Supreme Court has made clear

9    that the immunity that Mr. Binnall is seeking on behalf of

10   Mr. Trump must be closely related to its purpose, and the

11   purpose is to protect for the discharge of official acts.

12              And, yes, we agree, in reading the *Nixon* case,

13   *Fitzgerald*, that the official acts can extend to the outer

14   perimeter of those duties.  But it's important to recognize,

15   as the Supreme Court observed in the *Clinton v. Jones* case,

16   that the President remains, and I quote, "subject to laws

17   for his purely private actions."  And we contend, for two

18   reasons, that the acts in which Mr. Trump was engaged on

19   January 6th qualify as purely private actions.

20              The Supreme Court has made clear that the duties

21   of the President are conferred by the Constitution and

22   statutes.  And the activities in which Mr. Trump engaged on

23   January 6th, particularly campaigning -- and I'll come back

24   to each of these in a moment -- and fomenting a riot

25   directed at interfering with the functioning of a co-equal

1   branch of government, that neither of those qualify as

2   official actions that even remotely fall within the

3   legitimate duties of the President.

4           Before I speak to those in detail, let me just

5   comment on a few other points that were made.  One is the

6   question of whether the Court should inquire about the

7   content of what was said or what was done.

8           The only way that the Court can assess whether

9   these actions or these remarks fall within those that --

10  categories that are purely private or are arguably within

11  the official duties of the President, is to look at what was

12  said or what was done, not for the purpose of judging and

13  condemning them or judging them and -- I'm assuming

14  Mr. Binnall's argument is they're immune because of the

15  First Amendment.

16          But the Supreme Court in the *Wisconsin* case made

17  the point that -- *Wisconsin v. Mitchell*, that -- in

18  connection with a First Amendment issue -- that speech can

19  still be used as evidence of participation in a particular

20  action -- in their case, it was an unlawful conspiracy --

21  even if it is not actionable in and of itself.

22          In order for the Court to make an assessment of

23  whether Mr. Trump's conduct and his remarks fall within

24  public -- what was it, public duties of the President or

25  purely private acts of the President, you have to make an

1    assessment of what he was doing.

2            And merely standing in front of a group of people

3    and speaking, I mean, he could be promoting treason or some

4    other thing that goes even beyond what we saw on

5    January 6th.

6            And I think the argument that Mr. Binnall has made

7    is that, as long as he's speaking in front of the public, he

8    can say whatever he wants and do whatever he wants and he's

9    still protected.

10            THE COURT:  Let's for a moment -- hang on.

11            For a moment, I want to just be clear, we're

12    talking about immunity from civil suit and not immunity from

13    criminal prosecution.

14            MR. SELLERS:  That is correct.

15            THE COURT:  And I think the Supreme Court has

16    established a broader immunity from civil prosecution, from

17    civil suit than it has from criminal prosecution.  The Court

18    has said that with respect to criminal prosecution, a

19    President can't be criminally prosecuted during the course

20    of his term of presidency, but can be prosecuted afterwards.

21    However, with respect to civil suits, they've said that the

22    President is absolutely immune for any action taken in his

23    capacity within the outer perimeter of the presidential

24    duties.

25            And so Mr. Binnall's point is, look, this is

1  President of the United States, he is speaking on a matter

2  of public concern, that is, the integrity of the election,

3  and so the President has the duty to -- or has the authority

4  or it's within his capacity to speak to the American public

5  on matters of American public concern.

6          So why isn't that something that is squarely

7  something to which he enjoys immunity?

8          MR. SELLERS:  Your Honor, because what he spoke

9  about was a campaign issue seeking to secure his

10 re-election.

11         If he were simply speaking about election

12 integrity, for instance, he could have done that without

13 talking, as he did, and we allege, saying all Mike Pence has

14 to do is send the election back to the states and we win.

15         Now, those are not remarks associated with calling

16 attention to election integrity.  I can quote, as you know,

17 a whole slew of other allegations in our complaint, which --

18 of a similar nature that go to the heart of Mr. Trump's

19 efforts to secure his re-election by means of having the

20 electoral-votes count suspended in order to give him an

21 opportunity to do a re-do.  That is not --

22         THE COURT:  I'm sorry, Mr. Sellers, but shouldn't

23 I, as Mr. Binnall has suggested, take a broader view of

24 this?

25         Yes, it's true that undoubtedly a motive of his

1    statements was to secure a result that would get him

2    re-elected or have him stay in office.

3           But Mr. Binnall makes the point that, look, there

4    was congressional action being taken on January the 6th, the

5    President has a right and the ability to try and influence

6    that congressional action.  It's within the scope of his

7    authority, whether it's legislation or in this case counting

8    of the Electoral College vote, to try and influence an

9    outcome of a congressional action.

10          So why isn't that the right way to think about

11   this?  If you think about it in that way, that seems to me

12   to be within the outer perimeters, well within the outer

13   perimeters of a President's duties.

14          MR. SELLERS:  Well, for a couple reasons,

15   Your Honor.

16          First of all, as I think you may have observed by

17   questions you asked earlier, the President has no legitimate

18   role in the counting of the electoral ballots.  The 12th

19   Amendment and the statutes that apply entrust that

20   responsibility to the Vice President in counting it before

21   Congress.  There's no legitimate, lawful role for the

22   President in connection with that.

23          And there's clearly no -- I'm moving now to my

24   second argument here, but is no legitimate role absolutely

25   for fomenting an insurrection directed Congress.  And the

complaint, we think, ably and plausibly alleges in many
respects that this -- that Mr. Trump dispatched a crowd that
he assembled, directed them away from the Ellipse,
notwithstanding that their permit only permitted them to
remain there, told them to go to the Capitol, fight like
hell, that they can't re-take the country in a position of
weakness.

And then, of course, after he saw that they were
engaged in breaking into the Capitol, instead of trying to
calm them, he retweeted his incendiary remarks from the
rally before.

THE COURT:  But, Mr. Sellers, can I ask -- I mean,
aren't you asking me to do what the Court said was not
proper and look into the motives of the President for
purposes of immunity?

In *Fitzgerald*, the issue was, well, what was the
real reason that President Nixon fired Fitzgerald?  And
Fitzgerald's view was it was because it was retaliation for
speech, and the Supreme Court said, look, it's not
appropriate to look into the motive for that action.

It seems to me you're asking me to look -- at
least for purposes -- let's leave aside the question of
pleading, but it seems to me you're asking me to look past
the words the President used and try to get into his head
about what he was intending to do, and based on that,

1  conclude he's not entitled to immunity.  That seems to me to

2  be a step too far in the analysis.

3          MR. SELLERS:  Yeah, I certainly am not suggesting

4  that you should examine the motivations.

5          If you look simply at the actions that he took and

6  that he directed, both with respect to the campaign activity

7  in which he engaged, which, taken at his word, is about

8  seeking to secure his re-election.  What his motives were

9  doesn't matter, I'm simply looking at the words and the

10  actions that he took.  The same is true with what he did in

11  the remarks he delivered, the effect on the crowd, and then

12  the response that he issued after that.

13          Without regard to what his purpose was, those are

14  actions that have to fall outside the scope of the

15  presidency.  By Mr. Binnall's argument, as I said, the

16  President could promote treason in a public forum.  And by

17  Mr. Binnall's argument, the Court would be powerless to

18  assess whether his conduct was protected by -- was immune.

19  That's inconceivable as something that the Supreme Court had

20  in mind when it said that notwithstanding the broad

21  boundaries that are accorded to protection, that the

22  President -- this is, again, in the *Clinton v. Jones* case --

23  is still subject of the laws for his purely private acts.

24          There is an area outside which the Supreme Court

25  has said, construing the *Fitzgerald* case, that the

 1    President's actions -- purely private actions still can

 2    subject him to suit.  And if these aren't purely private

 3    actions, it's hard to conceive of what would be.

 4              THE COURT:  So how would you, if you were me and

 5    you're a Court sitting trying to determine --

 6              MR. SELLERS:  Right.

 7              THE COURT:  -- what factors ought to be

 8    considered, this is -- we're sort of forging new ground

 9    here.

10              MR. SELLERS:  Yes.

11              THE COURT:  Because there are not a lot of civil

12    actions brought against the President for conduct while in

13    office and Supreme Court cases that even address the issue.

14              So how do I make the distinction or how does any

15    judge make a distinction between what is speech in a purely

16    personal capacity, which you say is not subject to immunity,

17    versus that which is within the Presidential capacity, which

18    does enjoy immunity?

19              MR. SELLERS:  Right.

20              Well, let me start with the easier of the two,

21    I think, which is the election activity.

22              We have a whole body of regulatory authority that

23    already exists and is administered -- I'm going to identify

24    some of it for you -- that gives to the Executive Branch and

25    others guidance on how to allocate expenses that are

attributable to campaign activity versus official activity,
what activities may be permissibly undertaken in areas of
the White House.

So some examples beside the *Office of Legal
Counsel* opinion, which was issued in 1984 by then-Assistant
Attorney General Ted Olson, which said, "campaigning for
specific candidates is a principal example which should be
considered political and not part of the duties of the
President."  We cite it in our brief, but it's volume 6 of
the Office of Legal Counsel opinion, beginning -- that's
page 4, from 1984.

But there are other examples.

So the accounting for appropriated funds, it's
clear that appropriated funds can only be used for the
discharge of official duties.  So funds that aren't maybe
used for political purposes have to be allocated in some
kind of private way and can't be used -- appropriated funds
can't be used.  The Federal Election Campaign Act
distinguishes between expenses for campaigns and
non-campaign official activities.

And I understand I could give you other examples,
but -- none of these are exactly the situation we have here,
but I would suggest to the Court that those are indicia of
what qualifies under the broad rubric of campaign activity
that's been administered for 30 or 40 years.  This is not

 1   just something the Court is being asked to fashion out of

 2   whole cloth, and that those can provide ample guidance.

 3          And under any one of those standards, the activity

 4   in which Mr. Trump engaged on January 6th qualifies as

 5   campaign activity.  There's just no way, given the

 6   private -- the campaign contributions to the event, the

 7   manner -- the remarks that he delivered, the lack of any

 8   legitimate legal role that the President had with respect to

 9   overseeing or influencing the counting of the Electoral

10   College ballots, all of those things suggest that this was a

11   purely private act and was campaign activity.

12          The second category of grounds on which to

13   characterize his actions as outside the scope of permissible

14   Presidential duties, I submit that there are cases, and this

15   isn't one of them, where the line is closer; that is, where

16   the President has engaged in something that would be an

17   unlawful action.

18          But I think that it's, again, hard to conceive of.

19   And I think the Court has to accept, for purposes of the

20   complaint, the well-pleaded allegations, that what's been

21   attributed to Mr. Trump is fomenting an insurrection

22   directed at a co-equal branch of government that was

23   either -- purpose or at least had the effect of disrupting

24   the functioning -- lawful function of the government, of the

25   Congress.

1          And I understand that this is not to be

2   distinguished from a traffic ticket, this is something that

3   goes way beyond that.  And, again, I'm not contending

4   that --

5          THE COURT:  So where would you have a court draw

6   the line?

7          I mean, again, I go back to where I was.  You

8   know, in *Nixon versus Fitzgerald*, the allegation was that

9   the President had violated a civil statute by firing someone

10  improperly for speech.

11         MR. SELLERS:  Right.

12         THE COURT:  And here, whether you characterize

13  this as fomenting an insurrection or not, the bottom line

14  is, you've alleged the violation of a civil statute.

15         And it doesn't seem to me that we ought to have or

16  there's any basis or it would be very difficult to have a

17  hierarchy of civil statutes that matter versus those that

18  are less significant.

19         And the violation -- alleged violation in

20  *Fitzgerald* was deemed immune.  It's not clear to me why a

21  violation of this statute ought not to be subject to the

22  same analysis.

23         MR. SELLERS:  Right.

24         So there's a simple answer at least as to part of

25  your question, which is that, in the *Fitzgerald* case,

1    President Nixon, while he may have been alleged to have

2    engaged in some improper conduct, the action he took was

3    well within the legitimate scope of his duties.

4         There was no question this was the heart of

5    Presidential authority; that he can oversee or direct a

6    personnel action.  That is core Presidential duty.  The fact

7    that it may have been allegedly undertaken in an

8    impermissible way doesn't, as I think the Court properly

9    concluded, remove it from the protection of the normal

10   activities of the President.

11        Campaign activity has never been viewed as within

12   the normal functioning of the President.  And as I said,

13   there's an enormous administrative infrastructure that

14   exists and is administered every year to ensure that

15   Presidential campaigning, other campaigning members of

16   Congress and others all have to abide by various rules

17   distinguishing between their official duties and their

18   campaign activity.  So that's one distinction.

19        The second one, as I said, about fomenting an

20   insurrection is -- I think if this were a closer call,

21   we would be having a harder time with the second point.  But

22   it is -- it's hard to conceive of a scenario, other than the

23   President traveling down to the Capitol himself and busting

24   through the doors and, you know -- and stopping things

25   himself.  But, of course, he did this with third-party

1  agents, with the crowd, he did exactly that.

2          I don't see how -- and, again, I realize the Court

3  wants to articulate a standard that's easily administered,

4  and I guess I'm asking the Court to consider that wherever

5  the close-call standard is, this falls well outside it.

6          THE COURT:  Okay.

7          All right.  Thank you, Mr. Sellers.

8          Is there anything -- I don't know whether your

9  colleagues want to add anything.

10          MR. SELLERS:  Do you want me to -- Well, I --

11  okay.

12          I guess they may.

13          And do you want me to talk about Article III

14  standing or I'll come back to that?

15          THE COURT:  If you want to go ahead and address

16  that, why don't you go ahead and address that, and then I'll

17  ask your colleagues if they want to add anything.

18          MR. SELLERS:  Okay.  Thank you.

19          So, first of all, on the issue of Article III

20  standing, I think it is quite clear, as your questions may

21  have reflected, that each of the plaintiffs has alleged a

22  form of harm that is cognizable under the tort laws of this

23  country and that's the statute Section 1985(1), is a tort,

24  at least provides for tort-like remedies.

25          And so whether Mr. Binnall is not impressed or

1    impressed with the nature and extent of harm of any of our

2    clients, they all pled cognizable injuries that are

3    concrete, they're specific, and they attribute them to the

4    conduct that occurred that was precipitated by the actions

5    of the conspiracy of the defendants.

6          So that -- but I want to address another issue,

7    which maybe I'm going too far, but I thought was in the

8    Court's mind, and that is why the plaintiffs are entitled to

9    bring this action in their personal capacity, something

10   that, perhaps, is going to be raised by the Oath Keepers.

11         And if you want me to wait to hear their argument

12   first, I'm happy to do that, but I --

13         THE COURT:  No.  Go ahead.  I don't know whether

14   Mr. -- whether counsel for the Oath Keepers intends to make

15   argument or not.

16         MR. SELLERS:  Well, I know it was in their brief,

17   so I thought I should help the Court by at least addressing

18   it.

19         So the point here is that the statute is, unlike

20   the *Raines* case -- that's R-a-i-n-e-s --

21         THE COURT:  Right.

22         MR. SELLERS:  -- the case that the Supreme Court

23   decided that's in our brief, where the members of Congress

24   sought to challenge the line-item veto and claimed as the

25   injury that the act diminished the value of their votes,

 1   their power, which was an official act, and the Court found

 2   that they had no standing to do so, the Court made exactly

 3   the distinction we are making here, which is, the members

 4   have -- or our clients were injured because they were

 5   attempting to discharge their official duties, in the course

 6   of which were injured.

 7          And as such, the statute does not seek -- does not

 8   protect them in their discharge of their official duties;

 9   that is, not ensure that they will be guaranteed their

10   ability to discharge their official duties.  What it's

11   intended to do is protect them against harm while they

12   perform their official duties, and that they have

13   Article III standing to pursue.

14          THE COURT:  Okay.  Understood.

15          All right.  Let me turn mack to Mr. Binnall, and

16   I'll give you a few minutes for rebuttal.

17          And I know Mr. Moseley --

18          MR. MOSELEY:  I'm sorry, Your Honor?

19          MR. MALONE:  One second.

20          THE COURT:  Oh, that's right.  I forgot.

21          Mr. Sellers.

22          MR. SELLERS:  I wanted to give my colleagues a

23   chance to say something if they wanted to.  I apologize.

24          THE COURT:  Right.

25          No, that's all right.  I neglected to turn back to

1    them as well.

2          MR. MALONE:  Your Honor, Patrick Malone for the

3    Blassingame Plaintiffs.

4          Just to underscore Mr. Seller's point about what

5    is a test for private conduct versus conduct within the

6    scope of the office, my test would be, is this something

7    that only a President can do as an official act.  That's

8    clearly what the Court had in mind in the *Fitzgerald* case.

9    If you are the President of the United States of America,

10   you have the power to fire this guy, whatever your motives

11   are.

12         But in the situation we're in today, the issue is,

13   is the exact same conduct that --

14         THE COURT:  Mr. Malone, you don't mean to suggest

15   that Presidents' immunity authority must be traced back to

16   some constitutional -- or immunity protection, I should say,

17   has to be traceable to some constitutional or statutory

18   authority, do you?  I mean, that can't be right.

19         MR. MALONE:  Well, is it within the scope -- we're

20   struggling with --

21         THE COURT:  Even legislative immunity, for

22   example, isn't so constrained, right?

23         Legislative immunity for congresspeople isn't

24   constrained only to legislative acts or legislative

25   authority that's derived from Constitution; the courts have

1    viewed it more broadly than that.

2              MR. MALONE:  Sure.

3              What I was trying to struggle with is the

4    distinction between private and public -- or personal

5    conduct versus public conduct.  I think it goes to the issue

6    of:  Are you acting as a candidate or are you acting as an

7    officeholder?

8              What I want to suggest is that let's just assume a

9    scenario where some other candidate who was not the

10   incumbent officeholder had lost the election and they gave a

11   big speech saying the election's been stolen, I want all of

12   you thousands of people to march to the Capitol and Stop the

13   Steal.  So this is a non-officeholder in this scenario.

14             Are we really saying that if you happen to be the

15   incumbent in office, you are immune from any tortious injury

16   that happens to people who get in the way of the march to

17   the -- on the Capitol to Stop the Steal, where the incumbent

18   would be immune but his adversary, his opponent, would not

19   be immune?  I don't see how that could be.

20             THE COURT:  Okay.

21             Does Mr. Andonian want to add anything?

22             MR. ANDONIAN:  Yes.  Thank you very much,

23   Your Honor.  Just very briefly.  I just want to piggyback on

24   two points that both my colleagues made.

25             With respect to Mr. Binnall's suggestion that a

President is essentially never going to be liable civilly
for anything that they said while in office, I just wanted
to remind the Court that we have an example of a President
being held liable for words spoken during the presidency,
when Bill Clinton when sanctioned for lying under oath about
his relationship with Monica Lewinsky.

And, in fact, the courts considered that an
unofficial act in the sense that he was speaking an untruth,
I think admittedly an untruth that was in violation of the
Court's discovery order.  So it's not as though -- that
Presidents can do nothing or say nothing while they're in
office.  That's beyond the reach of the law in some
respects.

And the second point I want to make, you know,
I think everyone has said this but I just want to make sure
it's clear on at least on behalf of my client, Congressman
Swalwell, the notion that you cannot look at the words at
all and it's just -- if a President happens to be uttering
words of any kind when that person is in office, that ends
the inquiry.  I mean, that clearly is too broad -- just on
its face, that's far too broad, that's no standard at all.

But if you look at *Nixon*, the idea was, once the
Court determined that the core duty there, exercising powers
as commander-in-chief over personnel within one of the other
branches, once the Court made that determination, that ended

1    the inquiry.

2         The motive behind why Nixon took the action that

3    he did in the context of a clearly established official

4    duty, that was beyond the scope or out of bounds.  We're not

5    asking the Court to do that here.

6         In other words, it doesn't matter what

7    Donald Trump's motives were in saying and doing the things

8    that he did, whether he was trying to overturn the election

9    or whether he was just doing it for sport, and who knows

10   which one it was.

11        But the fact of the matter is, the words he spoke

12   have legal significance, as we pled that.  And the Court has

13   to at least look at the words to determine whether or not

14   the speech is of an official nature or not.

15        Even Mr. Binnall's own examples require some

16   assessment of what was being said, when he referenced

17   President Obama's speech talking about Citizens United, or

18   he referenced examples of the type of speech a President

19   might make on the trail after the State of the Union.  That

20   still at least requires some threshold examination to

21   determine whether or not we're even talking about an

22   official act.  Here, we're just clearly not, for all of the

23   reasons that Mr. Sellers stated.

24        THE COURT:  Thank you, Mr. Andonian.

25        Mr. Binnall, I'll just give you a couple minutes.

1  We're, not surprisingly, already off schedule here, but

2  go ahead.

3         MR. BINNALL:  Thank you, Your Honor.

4         Initially, regarding the function analysis about

5  it being something that, as Counsel Mr. Malone pointed out,

6  tried to assert, rather, that has to be something that only

7  a President can do.

8         Your Honor, as the Court has already pointed out,

9  it can't be the rule that it has to tie back to some sort of

10 constitutional or statutory rule, but it really kind of --

11 it really goes beyond that, Your Honor.  It needs to be

12 something where there is this bright line, that that

13 President knows that there's not these gray areas, because

14 these gray areas --

15        THE COURT:  Why isn't campaigning a bright line?

16        I mean, Mr. Sellers has posited that, look,

17 there's this entire body of law that has been established

18 both by Congress and by regulation that distinguishes

19 between speech and acts in furtherance of official duties

20 than those on a campaign, and you've got to segregate money,

21 you can't use certain federal resources, you cannot have

22 employees of the Federal Government act in certain ways.

23        I mean, why isn't that a bright line here that can

24 be followed in distinguishing between official duties and

25 unofficial duties?  Even the outer perimeter of those

1    official duties of a President.

2              MR. BINNALL:  I think there are three answers to

3    that, Your Honor.

4              And the first is that if it is speech that would

5    otherwise be protected if it was said outside of the

6    campaign but in his normal Presidential duties, then it does

7    not lose its immunity simply because it's said in the

8    context of a campaign.  And I think that's the most

9    important answer to that, is that if he could say that in a

10   State of the Union Address, the same that he could say it in

11   a speech on the campaign trail, then it does not lose its

12   immunity in that case.

13             Because otherwise it would be the exception that

14   would swallow the rule, because so many of the things that a

15   President does during their entire terms of office is

16   something that is political in nature:  Advocating for, you

17   know, not only their own re-election but the election of

18   their political allies as well.

19             And to say, well, this particular speech, it

20   really was going for a political purpose, rather than a

21   Presidential purpose, we would now see an exception that

22   would swallow the rule, it would lead to too much vagueness

23   in the immunity, that is just something that is not workable

24   for the immunity.

25             Second of all, Your Honor, the issue on the

1    campaign hypothetical at the 12(b) -- at the stage of this

2    that we're at on this important threshold question, they

3    would have to meet a higher standard than they've met here,

4    even if that were the rule, to show that this was a campaign

5    activity, which I've already pointed out they simply cannot

6    do.

7           This was not a campaign activity.  Electioneering,

8    for instance, has a very specific definition in the law.

9    This wasn't electioneering; this was not something that the

10   campaign was directly involved in.

11          And so even if that were the rule, they would not

12   be able to meet that standard here.  And so to a certain

13   extent, it's a question that the Court need not consider

14   because it's not adequately pled, and it certainly isn't

15   pled to a plausibility standard, because it's readily

16   available information that this was not part of the

17   campaign.

18          And, finally, Your Honor, in that vein -- well,

19   actually, on the second point still, the Fourth Circuit, in

20   a case that we can find is -- has recently held that the

21   campaign was over in November and there were no more

22   campaign activities at that point.

23          And, finally, Your Honor, anything that had to do

24   with the campaign exception would necessarily start to have

25   courts examining the motives of the speaker, and whether the

1    motive was such for a political speech or other Presidential

2    duties, and that's something that was specifically rejected

3    by the *Fitzgerald* court.

4              THE COURT:  Okay.

5              Mr. Binnall, I'm going to give you 30 more seconds

6    to make your last point and then we're going to have to move

7    on to the next topic.

8              MR. BINNALL:  Yes, sir.  And I understand the time

9    concerns here.

10             The other thing that I would just say briefly

11   regarding the Clinton matter is that, I believe that the

12   Clinton matter that was just discussed is not *Clinton versus*

13   *Jones*, I think it has to do with the regulation of Bar

14   duties, and that is different -- or someone's Bar status,

15   and that's something that is very different from a suit for

16   damages.  And the --

17             THE COURT:  Well, I think -- well, I think what

18   happened is that the Court that oversaw the *Clinton v. Jones*

19   case sanctioned the President for his testimony, and then

20   the Supreme Court subsequently took Bar action.

21             MR. BINNALL:  Took Bar action, yes.

22             THE COURT:  Okay.

23             MR. BINNALL:  And so that's very different than a

24   suit for damages.

25             And that's something that is more in the lines of,

1   Your Honor, what goes back to the *Burr* case, is that a

2   President is still subject to the subpoena power, for

3   instance, and it has to comply with that.  But that's

4   different from being sued for damages for something that

5   occurred during the President's administration.

6           THE COURT:  Thank you, Counsel.

7           Why don't we move on to the next topic, and that

8   is the pleading of the conspiracy count under 1985(1).  And

9   under that, I included the argument that the plaintiffs have

10  made, that these plaintiffs -- excuse me, that the

11  defendants have made that these plaintiffs don't have

12  statutory standing under the statute.

13          So, Mr. Binnall, I assume we'll begin with you, or

14  will one of your colleagues be taking the lead?

15          MR. BINNALL:  Your Honor, actually, I believe

16  Mr. Sibley is going to start this argument.

17          THE COURT:  All right.

18          Mr. Sibley.

19          MR. SIBLEY:  Your Honor, good afternoon.

20          I'm going to let Mr. Binnall handle the standing

21  issue, because that's really something that they've raised.

22  I'm going to talk about the pleading issue.

23          And it really comes down to one element,

24  Your Honor, and that is under Section 1985.  We have a lot

25  of things that we discussed in our motion, but, really, some

1    of those issues are probably something they could cure on

2    leave to amend, so I want to focus on what I think are the

3    incurable issues where it would be futile to grant leave to

4    amend.

5            THE COURT:  Can I ask you -- I'm sorry to

6    interrupt you real quick, but I want to pose this question

7    to all defense counsel, and you can just answer it in due

8    course when you speak.  But I want to ask you whether I can

9    take all of the allegations collectively across the three

10   cases.

11           And the reason I ask is, it seems to me that

12   it would be an odd result here if, for example,

13   hypothetically I were to say that one case was sufficiently

14   pleaded but a second case was not, because, for example,

15   case one contained certain allegations that case two did

16   not, and, therefore, we would then be in a position where a

17   case that was dismissed simply would just replead and

18   include the allegations that were found to be sufficient.

19           So I'm asking whether, as just a practical and

20   procedural matter, I can consider the allegations

21   collectively across the three complaints.

22           MR. SIBLEY:  So, Your Honor, we're not actually in

23   the Blassingame case.

24           THE COURT:  Right.  I know.

25           MR. SIBLEY:  Honestly, I haven't looked at the

1    allegations, but here's what I can say about that:

2            I think, for plausibility purposes, the Court's

3    ruling should be uniform, right, because plausibility should

4    not be dependent on which case -- I mean, some of these

5    allegations we've claimed are implausible because of matters

6    of public record and just sort of the intrinsic nature of

7    the allegations.  So I think from a plausibility standpoint,

8    the answer is yes --

9            THE COURT:  Okay.

10           MR. SIBLEY:  -- that's true, Your Honor.

11           THE COURT:  Okay.

12           MR. SIBLEY:  That's Giuliani's position.

13   My colleagues might disagree with me.

14           THE COURT:  Okay.

15           Well, I'll ask them when they speak next, but

16   go ahead.

17           MR. SIBLEY:  So, Your Honor, the real issue here

18   is, was there an injury caused by an unlawful overt act

19   performed by one of the parties to this conspiracy?

20           And that's important because the *NCO Financial*

21   case says, it's not enough that the alleged co-conspirators,

22   right -- and when we talk about conspiracy, it's an

23   essential element, under 1985, to allege a meeting of the

24   minds as to an improper purpose or, you know, to commit some

25   illegal act -- but it's not enough that there's a shared

1    objective or a shared goal, right, it's not enough that

2    they're on the same team, that they might all want the

3    election results overturned, that they might be part of the

4    same political party, they're all holding the same political

5    signs.

6          It's not enough that they're on the same team or

7    the same side.  You have to actually plead plausibly that

8    there was a huddle, essentially, right?  Like, we got in a

9    huddle and we called the play.  The play was, let's have an

10   insurrection, and here's how we're going to do it.

11         And so that's part of this, Your Honor, that is

12   inadequately pled.  And I don't think it's plausible -- it's

13   possible -- to plausibly plead that, because the only people

14   who committed overt illegal acts are the actual individuals

15   that went to the Capitol and committed the crimes at the

16   Capitol.

17         THE COURT:  I guess I don't understand your huddle

18   analogy, because while it's true that, you know,

19   conspirators can huddle and can reach an agreement that way,

20   that's certainly not required.

21         I mean, black letter law is that a tacit agreement

22   is sufficient, and that doesn't necessarily require

23   everybody getting into a room together to come to an

24   agreement.  And, in fact, all the co-conspirators don't need

25   to know who the other conspirators are, and they don't need

1    to know what other roles people are playing as part of the

2    conspiracy, as long as they all come to an agreement about

3    the objective, which has to be unlawful.

4          And so why hasn't that been pled in this case,

5    where you have public statements made by various

6    individuals, immediately followed by conduct that is in

7    response to essentially a call for action; that is, to march

8    down to the Capitol and what resulted in a taking of the

9    Capitol for about a three- to four-hour period, and putting

10   lawmakers and others in physical and emotional jeopardy?

11         MR. SIBLEY:  Sure.

12         Because the problem with that, Your Honor, is that

13   that conspiracy with the rioters has to be established in

14   one of two ways.  Either it was before they arrived that

15   day, which is implausible, right, because there's no

16   evidence that there was any kind of communication

17   whatsoever.

18         I understand His Honor's point about it doesn't

19   have to be a meeting per se and a huddle per se.  But there

20   has to be some kind of -- there has to be some meeting of

21   the minds, right?  There has to be some communication.  I

22   don't know how you can conspire with someone to commit an

23   objective or a plan to commit some legal act if you've never

24   spoken to them, right?

25         So if this was a conspiracy based on Tweets --

1          THE COURT:  So let's put it down to its basic

2    elements here.  Let's leave aside -- the President invited

3    people to the Ellipse on January the 6th.  And what the

4    plaintiffs contend is that his invitation was accepted,

5    people arrived at the Ellipse on January the 6th.  And then

6    once they arrived there, he further invited them and

7    encouraged them, if not incited them, to march to the

8    Capitol and take the Capitol by force, and people accepted

9    that invitation, people followed that exhortation.

10          In your view, that's not enough to establish a

11    meeting of the minds to establish a conspiracy?  Because

12    that's what all of this comes down to.  You can talk about

13    Tweets and this, that, and the other thing.  That's what

14    this comes down to:  A statement by the President to walk to

15    the Capitol and take the -- and people responding to that

16    invitation or that direction and doing just that.

17          MR. SIBLEY:  And that's where I was going next,

18    Your Honor.

19          The conspiracy has to be either before arrival to

20    commit the act or a sort of impromptu conspiracy, where they

21    showed up at the Ellipse and there was this invitation to

22    join a conspiracy, to go commit the crimes at the Capitol.

23    And that's the only -- that's the only theoretically

24    plausible thing that they could be alleging.

25          The problem is, when you look at the actual

1    statements, and this is where the plausibility problem is,

2    there's simply no way you can construe the statements that

3    were made by any of the speakers to be an invitation to join

4    a conspiracy to go to the Capitol and commit crimes.

5              THE COURT:  Why not?  Why not?

6              I mean, let's use the words of the people that

7    were there that were alleged.  You know, according to the

8    complaint, the timing of this is a little unclear, but

9    people started chanting, "Let's take the" -- you know,

10   "Let's storm the Capitol."  Let's -- hang on for a second.

11   "Let's storm the Capitol, let's invade the Capitol building,

12   take the Capitol right now."  Those are the allegations in

13   Mr. -- in Representative Thompson's complaint at 88, and the

14   Blassingame complaint makes similar allegations, that people

15   started that chant immediately.

16             The further allegation is that people said, once

17   they were in the Capitol, that, "We're here," you know,

18   "Mr. Trump," the President, "sent us here."

19             So why isn't that enough to at least get it past

20   the plausibility standard?

21             MR. SIBLEY:  Because those are the statements of

22   people that may have been in the crowd and people that

23   invaded the Capitol.  Those are not the statements of those

24   accused of the conspiracy to incite the conduct, right?

25             So that would be like --

1            THE COURT:  No, but they made the invitation.

2   The invitation was, march down to the Capitol and fight,

3   show strength.  And then people responded, including by

4   saying "Storm the capitol, invade the Capitol building, take

5   the Capitol," essentially -- that could be construed

6   plausibly, I'm not saying it is, as an acceptance of the

7   invitation, an acceptance of the direction to go down and do

8   just what was requested.

9            Why isn't that enough to establish a meeting of

10  the minds?

11           MR. SIBLEY:  Because that's not what was pleaded

12  and that's not what was said.

13           I think if you look at what was said, there's a

14  seriatim of different speeches.

15           For example, my client was talking about -- this

16  was professor -- the part about Professor Eastman,

17  challenging the elections result, trial by combat with the

18  machines.  He didn't even mention marching to the Capitol.

19           THE COURT:  Right.

20           So I think that puts Mr. Giuliani in a different

21  position than the President.

22           MR. SIBLEY:  But let's just say -- I'm just trying

23  to take their allegations as true, that Giuliani somehow was

24  part of the conspiracy with all the other speakers,

25  Congressman Brooks, et cetera, to all get out and sort of do

```
 1    their part of the invitation to this conspiracy to commit
 2    these acts.
 3              Even if you look at it from just -- the same way
 4    that His Honor might construe a newspaper article to
 5    determine defamation, right, what is the -- how does the
 6    ordinary listener or reader perceive all of these
 7    statements, okay?
 8              THE COURT:  Well, I think we're now -- hang on.
 9    I think we're sort of leaking into the First Amendment
10    question at the moment.
11              But let me just ask a fairly straightforward
12    question, which is:  Hypothetically, if there was an
13    invitation to engage in criminal conduct or in this case
14    tortious conduct, and that invitation was accepted, it was a
15    public request at a speech to engage in tortious conduct or
16    criminal conduct, that was then accepted by a group of
17    people, is that enough, in your view, to establish a
18    conspiracy -- a plausible conspiracy at this stage?
19              MR. SIBLEY:  I think that would be enough to
20    establish a plausible conspiracy.  I also think it would be
21    criminal -- I think it would be an incitement to riot, and I
22    think the people --
23              THE COURT:  Let's leave aside whether it's
24    criminal or not.
25              My question is:  There's an invitation -- if the
```

1   words can be construed as an invitation to engage in

2   tortious conduct, that invitation is accepted, is that, in

3   your view, sufficient to establish a conspiracy?

4            MR. SIBLEY:  If His Honor construes the statements

5   of the speakers at the January 6th Ellipse rally as such,

6   I would agree with His Honor that that would be sufficient.

7            THE COURT:  Okay.

8            MR. SIBLEY:  Our problem is, we believe that's an

9   implausible construction of the statements.  But His Honor,

10  I think, has suggested that may be more of a First Amendment

11  issue.

12           THE COURT:  Well, I mean, let's talk about why you

13  think that's an implausible construction of statements.

14           I mean, I would agree with you that Mr. Giuliani

15  doesn't have -- did not say anything that day that was a

16  call to action to march to the Capitol.  Donald Trump, Jr.,

17  didn't say anything like that.  Congressman Brooks, I think,

18  makes reference to going to the Capitol in passing.  But the

19  President did twice, at the beginning of his speech, and

20  then at the very end.  In fact, his last words were:  "Go to

21  the Capitol."  And before that, I think the words were:

22  "Show strength" or "fight."

23           So why isn't that a plausible invitation to do

24  exactly what those rioters ended up doing?  And once, you

25  know -- because words are hard to walk back.  "We're going

1   to walk down Pennsylvania Avenue.  We're going to" --

2          MR. SIBLEY:  I'm sorry, Your Honor.  I thought

3   they were qualified with peacefully do so.

4          THE COURT:  That was -- he did say that earlier,

5   but his last words were, "So we're going to walk down

6   Pennsylvania Avenue.  I love Pennsylvania Avenue.  And we're

7   going to go into the Capitol.  And we're going to try and

8   give the Democrats, who are hopeless, never vote for

9   anything, not even one vote, and we're going to try and give

10  our Republicans the weak ones, because the strong ones don't

11  need our help.  We're going to try and give them the kind of

12  pride and boldness they need to take back our country."

13         And before that, he immediately says, "And we

14  fight.  And we fight like hell.  And if we don't fight like

15  hell, you're not going to have a country anymore."

16         MR. SIBLEY:  Let me pose the question this way,

17  Your Honor.

18         Let's imagine that President Trump said those

19  words and people marched to the Capitol.  And let's put

20  aside the fact that there were already people breaching the

21  Capitol perimeter before The Ellipse crowd got there, let's

22  put that aside.

23         But let's assume January 6th didn't happen, as far

24  as the violence.  The question you would have to ask is,

25  looking at the speech, would that in and of itself be

1 actionable as an attempt to conspire, to get people to go

2 commit violence at the Capitol, right?

3          Because if I go to a crowded theater and falsely

4 yell "fire" and everybody looks at me and says, I don't

5 believe you, and keeps watching the movie, I've still

6 committed a crime, right?

7          THE COURT:  But the Supreme Court, if you'll

8 remember in *NAACP v. Claiborne* -- and we'll talk about that

9 in a moment -- they made that very observation.  There, the

10 case was about a boycott, and there were some forceful words

11 used in the speech.  And ultimately the Court said, well,

12 that's protected by the First Amendment; there were no

13 actual violent acts that resulted from the speech.

14          What the Court then said is as follows, this is a

15 quote from the Court:  "A substantial question would be

16 presented whether Evers could be held liable for

17 consequences of that unlawful conduct" if violence had

18 resulted or if violence had followed.

19          And so I guess this is a case where violence did

20 follow, where it did immediately come on the heels of the

21 speech.  And so it seems to me to be in a very different

22 position than the hypothetical you've just posed.

23          MR. SIBLEY:  Well, Your Honor, what, I think, the

24 standard, though, is that the speech itself -- I mean, this

25 is from the conspiracy standpoint.  The speech itself has to

1   be an invitation to join in something violent and overtly

2   unlawful.

3          There's nothing overtly unlawful about going to

4   the Capitol and pro- -- I mean, every protest, the reason

5   why people protest and assemble is so that, presumably,

6   legislators understand that there is a group of people that

7   have a particular viewpoint, and fighting, those kind of

8   words, that just can't be construed as an incitement to

9   immediate violence.  I just don't think -- no one speaks to

10  crowds with the lowest common denominator in mind.

11         THE COURT:  How do I deal with the fact that --

12  what do I make of -- what would you have me do with the

13  allegation that the President did not act; that the

14  President -- I think it was 12 minutes in or so, tweeted --

15  after the initial Capitol breach, 12 minutes later, tweeted

16  something about the Vice President and the Vice President's

17  failure to act.  It's not until about 20-some-odd minutes

18  later, I think, 26 minutes later that he Tweets, "Support

19  the Capitol police and law enforcement and stay peaceful."

20  And then it's not until two hours later the video comes in.

21         So you have an almost two-hour period in which the

22  President doesn't take to Twitter or to any other type of

23  communication and say, stop, get out of the Capitol, what

24  you're doing is not what I wanted you to do.  Isn't that, at

25  least at the motion-to-dismiss stage, evidence of

1    ratification of the very agreement that's been alleged?

2         MR. SIBLEY:  Your Honor, I don't think that's a

3    relevant factor of whether there was an invitation to join a

4    conspiracy.

5         THE COURT:  Well, why not?

6         If my words have been misconstrued, if I said

7    something, my words were misconstrued and they led to

8    violence, you know, wouldn't somebody, the reasonable person

9    whose words were being misconstrued, come out and say, wait

10   a minute, stop, this is not what I meant you to do or it's

11   not what I meant for you to do?

12        I know this is outside the four corners of the

13   pleadings, but there's been news that Donald Trump, Jr.,

14   texted Mark Meadows and said, the President needs to do

15   something about this, this has gotten out of hand.

16        MR. SIBLEY:  Well, here's what I would say about

17   that, Your Honor, and it's probably an answer that a lot of

18   us don't like.

19        But I think it's the First Amendment, which is, if

20   I give a speech that inspires people to have hatred against

21   a particular group, but I don't tell them to go commit

22   violence, right, I tell them, we've got to fight against

23   this group -- and that was kind of the Bible Books [sic]

24   case, right, against the anti-Muslim demonstration, that

25   these people are bad, they have a horrible religion.

1          But the fact that someone might have gone out and

2    that inspired them to commit violence against a particular

3    group, even if I like it, even if I say that's great.  You

4    can't look at the result and my reaction to the result, you

5    have to look at the speech and whether the speech itself can

6    be construed as an invitation to join a conspiracy to commit

7    violence.

8          Now, we can look at if from a moral standpoint and

9    say, that was wrong, people should be more responsible with

10   their speech, it's hate speech, whatever we want to say

11   about it.  But that's not, as a matter of law, a plausible

12   invitation to join a conspiracy just because I may have

13   liked the fact of the results of my speech that's otherwise

14   protected.

15          THE COURT:  All right.

16          Any other -- it's been about 20 minutes.  Anything

17   else you would like to add, Mr. Sibley?

18          MR. SIBLEY:  I don't have anything else,

19   Your Honor.

20          I don't know if the Court wants to address whether

21   the plaintiffs can bring this in their individual capacities

22   now or later, but some -- I'll let Mr. Binnall --

23          THE COURT:  I envisioned the sort of -- if what

24   you mean by why that, sort of the statutory-standing issue,

25   whether they can bring an action, given their capacities as

1    members of Congress and as police officers, then, yes, now

2    would be the appropriate time to make that argument.

3              MR. SIBLEY:  I'll turn it over to him, Your Honor.

4              THE COURT:  Okay.

5              MR. BINNALL:  And just to be clear, Your Honor,

6    you want to hear from me now; is that correct?

7              THE COURT:  Yes.

8              MR. BINNALL:  Yes.  Okay.

9              So let me answer a few of the questions that the

10   Court, I think, had regarding my client.

11             And first off, we must always remember that in the

12   speech, President Trump told his supporters that they should

13   peacefully and patriotically make their voices heard,

14   peacefully and patriotically, and that was very, very clear.

15             The next question has to be, were there -- any

16   words that he said were independently actionable regardless

17   of what actions from third parties must have had.

18             It's going to be difficult to separate some of

19   these issues that we're discussing here from the

20   First Amendment argument that is coming up next, but I think

21   it's important just for me to separate just the statutory

22   analysis of making sure that we have a statute that isn't

23   read too broad; that isn't read so broad, as it starts, you

24   know, from an overbreadth perspective, it starts regulating

25   activities that the Congress -- the Reconstruction Congress

1   that passed what is now Section 1985 intended.

2          And there's nothing that President Trump said,

3   either leading up to January 6th or at January 6th, that

4   would be independently actionable.  Instead, he made clear

5   that peace and patriotism was his goal here.

6          It cannot be a situation that --

7          THE COURT:  Well, I guess I don't understand that.

8          I mean, you know, yes, you're right, he did talk

9   about peacefully and patriotically going down -- I can't

10  remember the exact words -- I have to look for them in the

11  speech.

12         MR. BINNALL:  Peacefully and patriotically make

13  your voices heard.

14         THE COURT:  Right, make your voices heard.

15         That is outweighed by at least, I think --

16  I haven't counted the number of references to fighting, to

17  showing strength, to not letting the country being taken

18  away.  And then, you know, having -- and then calling on

19  folks to come -- go down to the Capitol building.

20         And, you know, at least according to the

21  complaint, I think this is in the Thompson complaint, it was

22  not part of the plan of the Ellipse rally to have a march

23  down to the Capitol.  That was something that was added by

24  the President in his campaign.

25         That seems to me to be a very different situation

```
 1    than what you're talking about, which is a political speech
 2    in which someone is simply saying, be patriotic and --
 3    I mean, that those are two or three words he uttered in a
 4    much longer speech in which there are other words about
 5    fighting and strength and then ultimate call to action to
 6    march down to the Capitol.
 7              MR. BINNALL:  Your Honor, if the Court reads
 8    Section 1985(1) as being so broad as to call for a protest
 9    at the Capitol building actionable, then I suggest that the
10    Court is going to be very busy.  The Capitol is a very
11    popular place.
12              THE COURT:  Well, Mr. Binnall, let's not --
13    come on, let's not recharacterize what happened, okay?
14    The statute says, "A conspiracy to prevent by force,
15    intimidation, or threat."  There is no doubt that there was
16    force, intimidation, or threat used on January 6th.  Those
17    elements are clearly met.
18              MR. BINNALL:  Not by the President.
19              THE COURT:  Hang on.
20              But the question is whether the President's words
21    contributed to or resulted in conspiracy or created -- or
22    incited that conduct.  That's the question.  So we're not
23    just -- we're not talking here about any ordinary protest.
24              MR. BINNALL:  Yes, Your Honor.
25              And what it cannot do.  And, again, we're bleeding
```

1    into the First Amendment argument here, but I don't see any

2    way around that, is you cannot interpret Section 1985 in

3    such a way that it would be so broad as to be

4    unconstitutional and regulate politically active speech.

5             THE COURT:  But that's not what we're doing.

6    I mean, I don't think that's what is being asked here.

7             I mean, at a minimum, at a minimum, you would

8    agree -- and we are bleeding into the First Amendment --

9    that, you know, words of incitement aren't protected by the

10   First Amendment, right?  *Brandenburg*, those types of words

11   are not protected by the First Amendment.  And it seems to

12   me the question here is, does his Ellipse speech satisfy

13   that standard?

14            MR. BINNALL:  That's right, Your Honor.

15            And so to do that, what you have to do -- one of

16   the things that you have to do is look at words that are

17   typically used in political dialogue.

18            One of the things that we did in our papers is we

19   cited to a video that we produced.  And in that video that

20   we produced, we showed a number of the people that are right

21   here in this virtual courtroom today, using words -- you

22   know, for instance, someone that tends to use the words

23   "fight" a lot is Plaintiff Waters, and uses very inflaming

24   rhetoric.

25            And she, you know, at marker one --

```
 1              THE COURT:  Let me say the following, which is

 2    that:  If any representative -- and forget about those who

 3    are here.

 4              Let's stick with the facts.  I'm not interested in

 5    sort of playing whataboutism and so-and-so may have said

 6    something similar.

 7              What we do know here is the allegations are that

 8    these are the words that were spoken and what followed

 9    immediately, and we know what the President's reaction was,

10    which was quite mute.  And the question ultimately is, is

11    that sufficient for a conspiracy?

12              Your co-counsel has suggested and agreed that an

13    invitation to engage in tortious conduct and an acceptance

14    of that invitation is sufficient to establish a conspiracy.

15              Do you agree with that?

16              MR. BINNALL:  For the elements of conspiracy, you

17    would have to have some sort of invitation and some sort of

18    overt act, I believe, to do that.

19              And --

20              THE COURT:  So is the answer to that -- hang on.

21              Is the answer that, yes, you agree that the

22    invitation --

23              MR. BINNALL:  The invitation.

24              THE COURT:  -- I'm sorry -- that the invitation to

25    engage in tortious conduct, followed by an acceptance of
```

 1   that invitation, is sufficient to establish a meeting of the

 2   minds for purposes of a conspiracy?

 3           MR. BINNALL:  Words could theoretically do that.

 4   They certainly haven't done it in this record.

 5           THE COURT:  Simple question.

 6           MR. BINNALL:  Yes.

 7           THE COURT:  And I'll ask you for your answer to

 8   the question I'm asking; let's leave aside what's alleged.

 9           An invitation to engage in tortious conduct, an

10   acceptance of that invitation to engage in tortious conduct,

11   does that satisfy the meeting-of-the-minds element to

12   establish a civil conspiracy?

13           MR. BINNALL:  It has to be done in a way that is

14   specific enough between the people that are alleged to be as

15   part of the conspiracy.

16           And so --

17           THE COURT:  So let's be specific about this case.

18           MR. BINNALL:  Yeah.

19           THE COURT:  The President says, march to the

20   Capitol, and, again, he uses various words like "fight,"

21   "show strength," et cetera.

22           And people are then alleged to say, storm the

23   Capitol, invade the Capitol building, take the Capitol right

24   now, on the Ellipse, either during the speech or immediately

25   after the speech has concluded.

1          MR. BINNALL:  That is certainly not something that

2    would be actionable in any circumstance.

3          THE COURT:  No, no.

4          My question is, is that sufficient to establish a

5    conspiracy?  Does that establish the meeting of the minds?

6          MR. BINNALL:  No, it does not, Your Honor.

7          THE COURT:  Why not?

8          MR. BINNALL:  It doesn't, because at this point,

9    it doesn't have -- a conspiracy must be to do something --

10   for a meeting of the minds to do something that is otherwise

11   actionable.  And going and -- and you can't have a

12   conspiracy to exercise a constitutional right.

13         And, moreover, if conspiracy is read so broadly as

14   to allow -- I mean, especially for someone that is the

15   President.

16         THE COURT:  So what do I about the fact that --

17   and I proposed this to your colleague -- that the President

18   didn't denounce the conduct immediately.  And, in fact,

19   about 10 minutes in or so, 12 minutes in, sends a tweet that

20   arguably exacerbated things, to the extent anybody saw it

21   who was inside the Capitol.  What do I do about those facts,

22   that he doesn't do anything for about two hours to tell

23   people to stand down and leave the Capitol?

24         MR. BINNALL:  Inaction --

25         THE COURT:  Isn't that, from a plausibility

1    standpoint, enough to at least plausibly infer that the

2    President agreed with the conduct of the people who were

3    inside the Capitol that day?

4              MR. BINNALL:  I think there are two answers to

5    that.

6              Because, first of all, the answer is, no, you

7    cannot have a situation where failure to say something is

8    itself actionable as being part of the conspiracy.  Saying

9    nothing is not part of the conspiracy.

10             But the other part, and I think this is extremely

11   important, is that -- this ties back into the executive

12   immunity, the Presidential immunity argument, where you

13   cannot put a situation where a President is obligated to

14   take certain actions and say certain things or be subject to

15   litigation and subject to action by the Court.  That's the

16   Court very much at that point being able to invade the

17   province of the executive.

18             So if you were to go with that theory, you would

19   run straight into, in a very, very strong Presidential

20   immunity argument that there's no way around.

21             But even --

22             THE COURT:  So the President, in your view, is

23   both immune for inciting a riot and failing to stop it?

24   At least if that's what the allegations are and to be

25   believed.

1          MR. BINNALL:  Of course, this President did none

2     of those things.

3          THE COURT:  I understand.  I understand that's

4     your view.  But as a legal matter.

5          MR. BINNALL:  As a legal matter and at this stage,

6     he did none of those things.

7          THE COURT:  Okay.

8          MR. BINNALL:  But that being said, the President

9     cannot be subject to judicial action of any sort for damages

10    because he failed to do something, failed to act, because

11    that's now the core essentially --

12         THE COURT:  So let me ask it a different way and

13    be clear about how I'm using this allegation or thinking

14    about this allegation --

15         MR. BINNALL:  Right.

16         THE COURT:  -- or how it ought to be thought of.

17         Not being subject to liability for failing to act

18    on its own, but, rather, at this stage, as allegations that

19    would establish the plausibility of a conspiracy; that is, a

20    plausibility of an agreement.

21         I mean, in, for example, in the Charlottesville

22    case, signs -- you know, there were similar allegations

23    against Richard Spencer, organizing -- assistance with

24    organizing the rally, participating in the rally, speaking

25    at the rally, and then not doing anything to stop the

violence.  At least the District Court there found all of
that sufficient to establish a conspiracy, that he
participated in a conspiracy.

      MR. BINNALL:  And in this case, Your Honor, when
you have someone like President Trump who is speaking only
about doing peaceful things, only about protesting lawfully,
in a very normal sense in political dialogue...

      And, that's important, Your Honor.  We can't just
shrug that off, as the Court put it, whataboutism.  That's
not whataboutism at all.  It's about equal application of
the law.  It's about making sure that you don't say the law
is one thing for Democrats and another thing for Trump
supporters.  That cannot be the law, and it would be wrong
to look at that.

      And the simple fact --

      THE COURT:  Well, it's -- well, why don't we bring
this to a close, and I'll just say this:

      It's not the law.  It's certainly not the law in
my courtroom.  And I don't think of this in terms of the
party of anybody who's alleged to have behaved in a
particular way.  I'm simply trying to apply the law to the
facts as they've been alleged here without any passion or
prejudice to anyone, okay?

      MR. BINNALL:  I absolutely appreciate that,
Your Honor, that the Court is trying to do that here.

 1              My point is that we do have to look -- if you're

 2    going to read Section 1985(1) so broadly as to encompass

 3    this activity, you would have to look about what activity

 4    that it would encompass at that point.  That would be part

 5    of the chilling-effect analysis, of an overbreadth analysis,

 6    of a vagueness analysis.  And that's something that could

 7    suscept a very important, historically important statute

 8    unnecessarily to constitutional scrutiny, being that

 9    it would be that overbroad, and it wasn't meant to be that

10    overbroad.

11              THE COURT:  But it wouldn't create overbreadth

12    issues, in your view, and I think you've written it as such,

13    I think you've taken this position, if it were to be

14    constrained, at least in this case, to acts, or more

15    precisely, speech that meets the *Brandenburg* test?

16              MR. BINNALL:  That's right, Your Honor.

17              THE COURT:  Okay.  All right.

18              MR. BINNALL:  And under *Brandenburg* -- I mean,

19    obviously, these are two separate analyses under the

20    statute.  Just because it violates *Brandenburg*, doesn't

21    necessarily mean it's going to violate Section 1985(1).

22              THE COURT:  Right.

23              MR. BINNALL:  But, yeah, that's --

24              THE COURT:  But just in terms of avoiding the

25    constitutional problem that you've identified with overly --

1    with reading the statute too broadly, if it were to be

2    limited to -- to the extent speech were to be the basis of

3    any action under 1985(1), limiting it to *Brandenburg*-type

4    incitement speech would not create constitutional

5    First Amendment problems.

6              MR. BINNALL:  I would only add to that,

7    Your Honor, that it would not only necessarily be

8    *Brandenburg*, but there still is the other constitutional

9    concerns with overbreadth that don't necessarily arise out

10   of a *Brandenburg* analysis.  And so in that way, I think you

11   would have to look about -- at any other types of activity

12   would be pulling into the statute by reading it so broadly.

13   And I think a plain reading of this statute doesn't support

14   that.

15             I would like to discuss very briefly, unless the

16   Court has any other questions, just our issue regarding

17   whether or not the statute -- their statutory standing here

18   regarding these plaintiffs.

19             THE COURT:  Okay.

20             MR. BINNALL:  And that is --

21             THE COURT:  Can I interrupt you for a second --

22             MR. BINNALL:  Yes, sir.

23             THE COURT:  -- because I want to make sure

24   I understand this argument.

25             As I understand it, you're not suggesting they

1   don't have statutory standing.  And that's because statute

2   speaks in terms of any person who's injured, right?

3   The statute doesn't create categories of people who can

4   bring the case; rather, I think what you're arguing is that

5   the tortious conduct that is proscribed in 1985(1), that has

6   not been alleged here because the people who are the object

7   of the tortious conduct don't qualify as federal officers.

8   I think that's your argument, right?

9           MR. BINNALL:  That's largely right.

10          But one reason that we couched it as standing is

11  because they allege that their position as members of

12  Congress gave them standing, and so -- and that they were

13  covered under Section 1985(1).

14          But the Court is right in its reading of the

15  statute.  So it largely -- it can be read as a standing

16  argument or as a sufficiency argument.

17          But the important thing is to read the *Mouat* case

18  and the *Rutledge* case here, where it's very clear that

19  members of Congress are not officers of the United States.

20  And for that matter, Capitol police officers, while being

21  very important, are not officers of the United States.

22          And the other phrases that are in the --

23          THE COURT:  So why -- let me ask you, because your

24  argument is entirely premised, as I understand it, on the

25  constitutional definition of who is an officer of the

 1    United States.  The statutory language is different in 1985;

 2    it doesn't track precisely the language in the Constitution.

 3             The words that were in use at the time, as the

 4    plaintiffs, I think, have demonstrated were broader than

 5    just those who were appointed by the President.

 6             And courts have not construed the statute to only

 7    be limited to those who were appointed by the President or

 8    appointed by -- those who appoint -- those appointed by the

 9    President who are appointed, the appointees.

10             So help me understand why I ought to read this

11    statute in such a narrow way and what the basis for that is.

12             MR. BINNALL:  Your Honor, because the

13    Reconstruction Congress did specifically limit the people --

14    the specific individuals that the statute would apply to.

15    And so under any form of statutory construction, we'd see

16    that by including certain types of people, we would be

17    excluding all others.

18             And we see that it talks about specifically

19    office, trust, or someone with a place of confidence under

20    the United States, so we have to look at who those people

21    are and what that means.  And we see -- when you read *Mouat*

22    and when you read *Rutledge* and you read them together, you

23    see that that is something that --

24             THE COURT:  Hang on.

25             But neither of those are Section 1985(1) cases,

1    correct?

2          MR. BINNALL:  That's right.

3          THE COURT:  And so why should I assume that the

4    Supreme Court cases that are interpreting the word "officer"

5    in a different context apply equally to this particular

6    statute?

7          MR. BINNALL:  So, first of all, it's the same

8    Congress, I think, that's -- generally, that's adopting this

9    same language.  There's no reason to look at it differently.

10          And then we also include other sources to look at

11    in deciding, aside from *Mouat* and aside from *Rutledge*, to

12    see who is in an office, trust, or place of confidence or an

13    officer of the United States, what do these particular

14    statements mean?

15          Congress certainly had the vocabulary to include

16    members of Congress in that statute if they wanted to.  They

17    were, in fact, members of Congress.  So they could have

18    added themselves.  But they didn't.  And we have to assume

19    that that was intentional by not adding themselves into that

20    list of people.

21          And there is --

22          THE COURT:  I mean, is it also your view that

23    neither the President nor the Vice President are covered by

24    this statute?

25          MR. BINNALL:  Yes, sir.

1          THE COURT:  Because the alternative theory they've

2   posed is that the conduct here was meant to prevent

3   President Biden and Vice President Harris from accepting

4   office.

5          MR. BINNALL:  Your Honor, first of all, they were

6   not -- there's no argument that, on that date, they were --

7   they held any office.

8          THE COURT:  No, no.

9          But it's from accepting office --

10          MR. BINNALL:  Right.

11          THE COURT:  -- or holding any office.

12          So it can arguably be construed prospectively, to

13   prevent somebody from accepting or holding office.

14          MR. BINNALL:  It's reading it -- a broad reading

15   of that is possible.

16          But, more importantly, here, is that a President

17   and a Vice President are also not officers of the

18   United States or someone holding office, trust, or place of

19   confidence under the United States which merge under that.

20          So it's not members of Congress and it's not the

21   President and the Vice President.  It applies to people who

22   are appointed by the President, under the appointments

23   clause, and then others appointed by those individuals.

24          THE COURT:  But can I just ask you:  Doesn't that

25   sort of result in a pretty strange construction, to think

1    that Congress intended to exclude the highest two officers

2    of the Executive Branch and the vast majority of the

3    Executive Branch which carries out that function, but only

4    intended to protect Cabinet members and those appointed by

5    Cabinet members?  That's a strange result, it seems to me.

6            MR. BINNALL:  I don't think it is, when you look

7    at it in terms of reconstruction and the harm that Congress

8    was trying to work with at the moment.

9            They were concerned with what officers of the

10   United States that were involved in Reconstruction that were

11   meeting with resistance in the Reconstruction period.  It

12   wasn't the President or the Vice President that was involved

13   in that.  It was officers of the United States, people that

14   were either appointed by the President or, you know,

15   secondarily.

16           And in those cases, that shows exactly what

17   Congress was concerned about.  And, again, Congress has the

18   ability to change that law.  Congress has the ability to

19   make it broader, and in 150-plus years, they have not done

20   so.

21           THE COURT:  Okay.

22           All right.  Mr. Binnall, why don't I move on here,

23   just because I've taken up quite a bit of time with

24   plaintiffs on this issue.

25           So, Mr. Moseley, it looks like you're motioning,

1    so do you want to add something?

2          MR. MOSELEY:  Without interrupting too much, yes.

3          I think that I want to add a few things, starting,

4    really, with your -- or framed by your questioning

5    throughout -- openly -- about how do you take all of the

6    allegations.

7          We've had some obviously very important

8    discussions here that I think have to do with whether

9    certain allegations can be pled.  But the Oath Keepers'

10   motion to dismiss, you know, focuses, from our perspective,

11   different from the former President's perspective, have they

12   been pled, maybe against Donald Trump and some other people,

13   we have a lot of attention to the detailed allegations

14   there.  But part of the motion to dismiss is from the

15   standpoint of some of the other defendants, that my question

16   is, has the amended complaint actually alleged things.

17         And I think part of that discussion is to sort

18   of -- for example, one of the issues is about the

19   First Amendment, things like that.  It isn't, as some have

20   worried, that actually committing violence against a police

21   officer could be covered by the First Amendment.  It's more,

22   I think, if we blow away some -- if we separate some of the

23   things from there, what people said, from allegations of

24   what people did, what's left.

25         It's not that bad acts are covered by the

 1    First Amendment, it's whether, if we separate out, if we

 2    boil it down, is there an opposition.

 3             THE COURT:  So can I just cut to the chase, at

 4    least with respect to the Oath Keepers and the conspiracy?

 5    And that is, it seems to me, I think it's the Thompson

 6    complaint, adequately alleges a conspiracy between the Oath

 7    Keepers and the Proud Boys; in fact, there's an allegation

 8    that says that the two organizations had made a plan with

 9    respect to January the 6th.  So there's a statement there of

10    an express agreement between those two organizations.

11             The question then becomes --

12             MR. MOSELEY:  Well, the --

13             THE COURT:  I'm sorry?

14             MR. MOSELEY:  Yes, it may be alleged.

15             But go ahead, I'm sorry.

16             THE COURT:  No.  It's alleged, and you'd agree

17    I have to sort of assume that to be true at this point?

18             MR. MOSELEY:  Yes, yes, as to all.

19             THE COURT:  And so then the question really is,

20    with respect to the Oath Keepers, is whether there's then a

21    further conspiracy with the other defendants, namely the

22    President, Donald Trump, Jr., Rudy Giuliani, and

23    Representative Brooks.  I think that's the question for your

24    purposes.  Am I wrong about that?

25             MR. MOSELEY:  That's part of it.

1          But also, the allegation that somebody decided to

2    come to Washington, D.C., on January 6th is being, you know,

3    smeared over into that they came to beat on police and break

4    windows.

5          And so the question raised in the motion to

6    dismiss by prior counsel is whether there's enough

7    specificity, especially -- it should have said more

8    explicitly, gosh, well, *Bell Atlantic v. Twombly* and

9    *Ashcroft v. Iqbal* is the ruling.

10         THE COURT:  Let me ask you the same question I

11   asked the other counsel and we'll move on, and that is, if

12   there's an invitation by one actor to engage in tortious

13   conduct that is accepted by the other actor, is that

14   sufficient to establish a conspiracy?

15         MR. MOSELEY:  I think that that would -- I think

16   that would lose at trial.  But I think at this stage, yes,

17   that would be.

18         THE COURT:  Okay.

19         MR. MOSELEY:  But the question is whether

20   everybody is similarly situated; that the decision was to

21   make this very broad, omnibus complaint that involves a lot

22   of people.

23         And so from my perspective is that the allegations

24   be considered -- you asked whether all three lawsuits can be

25   considered directly.  And I don't think even one within one

1    lawsuit -- I think you're going to have to -- I guess maybe

2    look at it from the extent of what are the principles and

3    then apply them to each of the different defendants.

4              THE COURT:  Okay.

5              MR. MOSELEY:  Otherwise, I think people will get

6    swept up, perhaps, unfairly, in what maybe other people --

7    let's say there's such an invitation and response, some

8    people go to lunch, some people go beat on police, some

9    people go home, some people go to see a movie, who all heard

10   the invitation or proposal.

11             THE COURT:  You know, in any event, look, I'm

12   focused on your clients, or the Oath Keepers, who I have

13   some familiarity with, and they aren't accused of going out

14   to lunch, they're accused of something more serious.

15             All right.  Let's do the following.  It's now

16   3:00.  We've been at this for two hours.  I've got a court

17   reporter who works very hard and needs a couple minutes and

18   we're obviously well off the schedule that I had intended.

19             So it's now about 3:00.  Let's take about ten

20   minutes.  Let's come back at 3:10 and we'll continue on.

21   And then I think we've already hit some of what we need to

22   discuss on the First Amendment issue, so maybe we can go

23   through that topic more quickly than I had originally

24   anticipated.

25             So we'll see everybody back in about ten minutes.

1    Thank you, everyone.

2              (Recess from 2:57 p.m. to 3:10 p.m.)

3              THE COURT:  Okay.  Welcome back, everyone.

4    Can everybody hear me okay?

5              So let's turn to Mr. Sellers, and we'll hear from

6    you on the 1985 issue.  And to the extent the

7    First Amendment arguments have bled into that, I'll hear

8    from you on that as well.

9              MR. SELLERS:  Thank you, Your Honor.

10             I had thought -- I can speak to the First

11   Amendment, but I thought what I would do is first speak to

12   1985 and its interpretation, a little bit about the

13   arguments about what qualifies as a conspiracy under that

14   statute, and then I'll address any other questions,

15   obviously, the Court has, if that's all right.

16             THE COURT:  Okay.

17             MR. SELLERS:  So can you hear me?

18             THE COURT:  I can, yes.  Yes, I can hear you just

19   fine.

20             MR. SELLERS:  So let me begin with respect to the

21   interpretation of Section 1985(1), with the admonition, from

22   the Supreme Court from the *Griffin v. Breckenridge* case,

23   about the broad sweep that Congress intended with this

24   statute.

25             And it did so, if you look at the legislative

1    history, which we discuss and which I don't believe any of

2    the defendants addressed at all, that this was a statute

3    enacted because there had been a prior act that were --

4    failed to adequately protect federal officers and others

5    from violence.

6         So it was intended to be broad.  And I don't think

7    its breadth means it's unconstitutionally broad.  And I know

8    what exactly that means.  I think it is quite specific about

9    what it covers.

10        So let me just address the different categories,

11   because I think -- and I guess -- we've briefed this, so if

12   the Court doesn't feel the need to hear it --

13        THE COURT:  Yeah, I don't think, Mr. Sellers, we

14   need to go through the different categories.  I mean, I've

15   read your briefs and understand the different categories.

16        MR. SELLERS:  Understood.  And I'm happy to rest

17   on our brief on that.

18        Let me just make one small point that I don't

19   think was elicited very clearly.

20        There was an argument, I think, Mr. Binnall made

21   about the role of Mr. Trump and whether he didn't go to the

22   Capitol and how could he have promoted this.

23        In the end of Section 1985, the entire statute,

24   this is actually kind of the end of Section 1985(3), as has

25   been codified, I'm just going to read a portion of it,

```
1    because I want to highlight some language.  And if you want,

2    I'll wait while you unearth your copy.

3              THE COURT:  I have it.

4              MR. SELLERS:  Okay.

5              At the very end it says, "In any case of

6    conspiracy set forth in this section, if one or more persons

7    engaged therein do" -- and then the language I want to focus

8    on, "or cause to be done, any act in furtherance of the

9    object of such conspiracy, whereby another is injured in his

10   person or property" -- and it goes on that you can have

11   damages.

12             We submit that we think that Mr. Trump was a

13   participant in the conspiracy to begin with.  But even if

14   that in some way was -- his presence in the Capitol

15   didn't -- was somehow disqualifying, he clearly caused to be

16   done the injuries that were -- that the plaintiffs are

17   complaining about.  I submit that language is intended to be

18   broad to copy -- to cover the consequences of harm caused by

19   people who may not themselves be present at the time the

20   harm is occurring but set it in motion.

21             THE COURT:  But the person still needs to be a

22   co-conspirator; in other words, you can't --

23             MR. SELLERS:  Yes.

24             THE COURT:  Right.  Okay.

25             MR. SELLERS:  Absolutely.
```

1          I'm not suggesting otherwise.

2          THE COURT:  Right.  Okay.

3          MR. SELLERS:  On the question of proximity,

4   I suggest that that is -- it expands the breadth of who's

5   going to be liable.

6          Let me just see if I have any other points very

7   quickly from the section on -- I guess I would make a point

8   that the cases that were referred to, the *Mouat* case, among

9   others, there's a serious of cases that are quoted, I think,

10  by Mr. Trump's reply brief, they didn't consider the scope

11  of this statute as it applies in this setting.  All they did

12  was to reject the application of coverage by a private

13  citizen, saying this statute applies to federal officers.

14  They didn't consider what qualifies the federal officer,

15  they didn't consider whether members of Congress are

16  covered.  So I don't think these cases in any way are a

17  reputation of the positions we take.

18          As you know, they also made no response to the

19  *Lamar v. United States* Supreme Court case, which makes clear

20  that the use of the terms in the Constitution, things like

21  offices of the United States, do not remotely have to be the

22  same as those that are used by Congress in the enactment of

23  statutes.

24          So I just want to highlight some things that we

25  pointed out that I don't think -- to which there was really

1    no response.

2            THE COURT:  Mr. Sellers, can I move you to what

3    I'd like to -- and this isn't to preclude you going back to

4    the topics that you may want to address.

5            MR. SELLERS:  Sure.

6            THE COURT:  But I'm sure you've read and carefully

7    reviewed the D.C. Circuit's decision in *Halberstam* --

8            MR. SELLERS:  Yes.

9            THE COURT:  -- which probably, to this day, still

10   stands, the high-water mark of the explanation of the torts

11   of conspiracy and aiding-and-abetting liability.

12           Let me just ask:  Why, in your view -- well, let

13   me put it differently:  Why isn't it that this complaint

14   doesn't do anything more than allege aiding-and-abetting

15   liability?  I mean, all it really does is allege that the

16   President urged people to act unlawfully and that they did

17   act unlawfully.

18           As you know, *Halberstam* draws a pretty clear

19   distinction between mere encouragement and an actual

20   conspiracy that is a meeting of the minds to engage in

21   unlawful conduct.

22           MR. SELLERS:  Well, certainly one brief response

23   to that is the ratification that the President engaged in

24   after he had occasion to see the consequences of his

25   incendiary remarks.  Not just the absence of taking action

1   and the declining to respond to those who were urging him to

2   take action.

3          But he doubled-down, as you observed, in the

4   allegations we have, and retweeted his incendiary remarks

5   from the rally itself shortly after he started to see this

6   occurring.

7          And then later on in the day, he did a similar

8   kind of tweet which was likewise encouraging the very

9   conduct that he saw on television was violent.  And if he

10  had -- if he intended something other than what ensued, he

11  clearly didn't just fail to act, he actually acted

12  affirmatively to endorse it.  I think that is a ratification

13  and a confirmation of his intentions.

14         And I should add -- and we can come back to this,

15  but I know Mr. Malone, who spoke to me during the break, had

16  some additional information on the significance of

17  ratification that he would like to bring up when I'm done.

18             THE COURT:  Okay.

19             MR. SELLERS:  So -- go ahead.  I'm sorry.

20             THE COURT:  No.  Go ahead, Mr. Sellers.

21             MR. SELLERS:  Well, I mean, I -- there are a

22  couple --

23             THE COURT:  What I've struggled with in terms of

24  this allegation of conspiracy, I'll just be frank with you,

25  is it's an unusual conspiracy, right?  There is not, unlike

1  most conspiracies, or nearly every conspiracy I've come

2  across, an allegation that people either got in a room or

3  that they communicated regularly through some means, in a

4  way that was direct.

5          And what I mean by that is the President, you

6  know, insofar as he was tweeting, he wasn't just tweeting to

7  the Proud Boys or the Oath Keepers, he was tweeting to

8  everyone who subscribes to his Twitter feed.

9          MR. SELLERS:  Right.

10         THE COURT:  And so what makes this allegation of

11  conspiracy very unusual and, I think, problematic in some

12  sense, is that it doesn't allege any kind of direct

13  communication between the alleged conspirators.

14         Now, that may not be true with respect to the

15  Proud Boys and the Oath Keepers; I'll concede that you've

16  made an allegation as to those two groups.  And, arguably,

17  there's an inference to be made as between the President's

18  son and Mr. Giuliani.  I'd agree that those two -- with

19  respect to those two groupings, you probably have sufficient

20  allegations to infer communications.

21         But as between those two groups, other than a

22  fairly oblique allegation about communication at the

23  White House with a Proud Boy, there's not a whole lot there;

24  in fact, there's nothing there.

25         MR. SELLERS:  Sorry, I didn't mean to interrupt

1    you.

2              THE COURT:  No.  Go ahead, Mr. Sellers.

3              MR. SELLERS:  Yeah.

4              So, first of all, as I think you're aware, the law

5    in this Circuit does not require that more than two

6    defendants, two persons have conspired.  So the fact that

7    the Proud Boys and the Oath Keepers conspired -- and I think

8    the allegations there are quite explicit and sufficient --

9    doesn't mean they -- doesn't require that we then have to

10   link them to Trump, for instance.

11             THE COURT:  No.  I understand that.

12             MR. SELLERS:  Okay.

13             THE COURT:  No, but I take it you would be

14   disappointed in an outcome that dismissed the President but

15   kept the Proud Boys and the Oath Keepers in it?

16             MR. SELLERS:  Yeah.  No, I -- well, I -- yeah, of

17   course I would be.

18             But the point I'm making is, I think the President

19   engaged in a meeting -- let me turn to the issue that

20   I think is really behind your question, which is, could the

21   President have had a meeting of the minds with the crowd

22   that he elicited to come to The Ellipse --

23             THE COURT:  Right.

24             MR. SELLERS:  -- and dispatched to come to the

25   Capitol?

1                And I think that the Court is correct that,

2       historically, in an era before we had social media, there

3       were people who furtively met and sent signals, and --

4       whether they had agreements, explicit or tacit or the like,

5       this is a different era.

6                And I submit that the fact that the President was

7       engaged in communications through his social media that may

8       have reached more people than just those people who

9       assembled at the Ellipse, doesn't mean in any way that those

10      people at the Ellipse were not -- had a meeting of the

11      minds.

12               In fact, we alleged in our complaint, and I have

13      to find the cites if you want but I'm sure you've seen them,

14      numerous occasions where the President said, you know, come

15      here, come to Washington, it's going to be wild, and the

16      response from various social postings was, you know, we have

17      our marching orders from our chief executive and we're going

18      to be there and things of that sort.  These were intended to

19      show that the people who --

20               THE COURT:  Isn't that kind of evidence a little

21      dangerous in the following sense?

22               You know, the speaker can't control necessarily

23      the reaction of the listener.  And particularly when you're

24      talking about political speech, which I think everybody

25      would agree this is, it would be dangerous, it seems to me,

1    to infer a conspiracy, and particularly a conspiracy that

2    doesn't get First Amendment protection, if what we're simply

3    basing it --

4           MR. SELLERS:  Right.

5           THE COURT:  -- on is the reaction of the audience.

6           MR. SELLERS:  And I would -- sorry.

7           THE COURT:  Go ahead.

8           MR. SELLERS:  I would agree with you if that's all

9    there was.  I would agree that speakers can't always control

10   the reactions of the people -- their audience, but there was

11   more here.

12          So when the President was about to dispatch the

13   crowd to the Capitol, the crowd was chanting, "seize the

14   Capitol."  And there were a couple of other phrases;

15   I don't have them in mind right now, but they're in the

16   complaint.

17          THE COURT:  This says, "Storm the Capitol, invade

18   the Capitol, take the Capitol right now."

19          MR. SELLERS:  Right.  Thank you.

20          And after that, he said, "Go out and fight like

21   hell."  You know, this was not -- this was -- and that was

22   just the beginning of this.  Then, as I said, there was a

23   ratification later in the day.

24          So there were several occasions when the President

25   and the crowd, whom he dispatched, exhibited a meeting of

1    the minds of common purpose, and the President, lest he be

2    claiming that he was just as surprised as everybody else by

3    the violence that ensued, he ratified it on several

4    different occasions by the way he spoke.  And when he heard

5    them saying "Seize the capitol," that is not language of the

6    sort that you would expect people were coming simply to --

7    down to the Capitol to say, we want to announce our concern

8    about voter fraud.  These are people, given the energy and

9    the fervor and the language they used, that he knew what he

10   was dispatching them to do, at least plausibly I think we've

11   made that case --

12            THE COURT:  Mr. Sellers, can I --

13            MR. SELLERS:  -- and he nonetheless ratified.

14            THE COURT:  Can I ask you to clarify something?

15   And there's a little bit of a tension between your complaint

16   and the Blassingame complaint on this issue.

17            In your complaint, this is paragraph 88, the

18   allegation is that the crowd began to shout, "Storm the

19   Capitol, invade the Capitol building, and take the Capitol

20   right now."  And that those shouts were during the course of

21   the President's speech, and that he then continued on with

22   his invitation to walk down to the Capitol.

23            Mr. Malone's complaint, on the other hand, said

24   that those responses from the crowd, "Storm the Capitol,

25   invade the Capitol building, take the Capitol right now,"

1  this is complaint paragraph 61 in his complaint, were made

2  after he was done speaking.

3          So to the extent it matters, can you provide some

4  clarity as to which -- in terms of timing, is based on your

5  understanding of when the crowd responded and what, if

6  anything, the President did afterwards?

7          MR. SELLERS:  Yeah.

8          You know, obviously, we pled the complaint the way

9  we understood the facts; I'm sure Mr. Malone did the same.

10         I'm not sure you're going to be able to have us

11  reconcile that on a motion to dismiss, as opposed to after

12  we get some discovery.

13         And if that were the only thing we were relying

14  on, I could understand the Court's concern.  But as I said,

15  we have other indicia of ratification that go beyond that

16  that make the timing of that, those particular remarks,

17  perhaps less important.  We think it's important, is the

18  reason I cited it.  But if it turned out that Mr. Malone's

19  sequence turned out to be correct, we still have other forms

20  of ratification.

21         But I think for purposes -- I know the Court wants

22  to apply a common set of standards across the complaints,

23  but it may have to make allowance for the possibility that

24  one complaint views these sequence of events differently

25  than the other or give leave to amend, I don't know.

1        But as I said, I don't think these particular --

2   we do think this is a particular important example and the

3   sequence here would suggest that the President was ratifying

4   the sentiments of this outraged crowd to seize the Capitol.

5   But I think we have other indicia of ratification that the

6   complaints are completely in agreement on that would confirm

7   that.

8            THE COURT:  Okay.

9            MR. SELLERS:  Your Honor, I only have -- I may

10  only have a few more points, and I'm mindful of the lateness

11  of the hour, so I'm sorry.

12       So one thing that I wanted to highlight is,

13  I think Mr. Sibley made some arguments on behalf of

14  Mr. Giuliani about his having a vastly different and less

15  faultworthy role here.

16       One piece of information that was not -- besides

17  the fact that we think that statements by Mr. Giuliani like

18  "trial by combat" and "fight to the very end" are not, in

19  and of themselves, grounds for action, but they are

20  certainly consistent with and part of the fervor that

21  generated -- was generated in this crowd, which Mr. Trump

22  then dispatched to the Capitol, wasn't Mr. Giuliani, I agree

23  with that.

24       But the other part of this that is important, is

25  we allege -- and I think all the complaints allege, in the

1  afternoon while the riot was going on at the Capitol,

2  Mr. Giuliani was calling members of Congress, urging them to

3  slow down the count of the Electoral College ballots.  Why

4  is that important?  Because that goes to the very heart of

5  the reliability.

6           THE COURT:  So to be clear -- I'm sorry to

7  interrupt.

8           So to be clear, I think that allegation is that

9  call happened around 7:00 p.m., it happened after the

10 Capitol was cleared.

11          MR. SELLERS:  Oh, I'm sorry.

12          Well --

13          THE COURT:  I mean, there are allegations that the

14 President spoke to members of Congress, including

15 Leader McCarthy, while rioters were inside the Capitol.

16          MR. SELLERS:  Okay.

17          THE COURT:  But the Giuliani allegation,

18 I believe, is something that helps in the early-evening

19 hours in a call to Senators Tuberville -- the call to

20 Senator Tuberville.

21          MR. SELLERS:  I must say, Your Honor, I think

22 you -- I defer to the Court's -- I know the Court's --

23          THE COURT:  If I'm wrong, tell me, but I think

24 that's right.  I mean, I believe that's correct.

25          MR. SELLERS:  Well, I only will say that I think

 1    our complaint alleges otherwise.

 2              THE COURT:  Does it?  Okay.

 3              MR. SELLERS:  And maybe it's wrong.

 4              I can -- do you have your notes?  I can find it

 5    very quickly, I think, but -- just a second.  Forgive me for

 6    just a second to find it.

 7              Your Honor, I think -- yes.  So if the Court were

 8    to look at paragraph 138 on page 35 of our complaint,

 9    amended complaint.

10              THE COURT:  Right.  Okay.

11              MR. SELLERS:  It says, "While the rioting crowd

12    was forcibly entering the Capitol, roaming its halls and

13    desecrating its offices, Defendant Giuliani joined the other

14    defendants in seeking to delay and derail the tally by

15    calling members of Congress, urging them to do everything

16    they could to slow it down and delay the Electoral College

17    vote in Congress."  And it goes on.  I don't need to read it

18    to you, but I think our understanding was it was going on in

19    the afternoon.

20              THE COURT:  Okay.  Just hang on for a second.

21    I don't want to get hung up on this, but...

22              MR. SELLERS:  Page 35 of our amended complaint.

23              THE COURT:  Okay.

24              I think maybe I was thinking of, if you look at

25    the Blassingame complaint at page 128, it says that, "at

1   7:00 p.m., Trump's agent, Mr. Giuliani, attempted to leave a

2   voicemail for Senator Tuberville.

3          Now, there may be more than one; I think that

4   that's what I was thinking of.

5          MR. SELLERS:  Oh, I think -- yeah, sorry,

6   Your Honor.  I think that's a different point.

7          THE COURT:  Okay.

8          MR. SELLERS:  Our understanding here is that he

9   was calling members, a number of them, with the -- it says,

10  "I know they're reconvening at 8:00 tonight, but the only

11  strategy we can follow is to object to numerous states."

12         And anyway, I don't think the two are

13  inconsistent, I guess, is the point I want to say.

14         THE COURT:  Okay.

15         MR. SELLERS:  So the point I'm making about this

16  more broadly is that Mr. Giuliani, there's allegations with

17  respect to Mr. Giuliani, wholly apart from whatever

18  incendiary language that we allege attribute to him, that go

19  to the very heart of his conduct, intended to disrupt the

20  final discharge of the congressional responsibility that

21  ratify the results of the election by urging members to slow

22  down the count.  And that, I think, goes to the heart of the

23  conduct that Section 1985(1) was intended to prohibit.

24         THE COURT:  All right.

25         Anything further, Mr. Sellers, from you, or should

1  we turn to Mr. Binnall and Mr. Andonian?

2          MR. SELLERS:  Unless the Court has any other

3  questions, I know Mr. Malone wants to talk about

4  ratification.  I'll defer to him for the rest of that.

5          THE COURT:  Mr. Malone.

6          MR. MALONE:  Your Honor, thank you.

7          You asked a question of Mr. Sibley that I want to

8  go back to, because I think it strikes at the heart of the

9  whole afternoon we've been talking today.

10          You said, if there was an invitation to engage in

11  tortious conduct by Mr. Trump to the crowd and they then

12  accepted that invitation, would that be actionable under

13  Section 1985?

14          His answer was, yes, it would be, but then he

15  segued to his plausibility argument that that is just not a

16  plausible allegation based on the words of Mr. Trump.

17          So the issue that we've all been struggling with

18  this afternoon is whether there is some ambiguity in

19  Mr. Trump's language that is fatal to the idea that he

20  issued an invitation to engage in tortious conduct.

21          You mentioned ratification, Your Honor, but

22  somewhat narrowly just in the sense of his failure to act

23  over a period of a few hours.  I want to suggest to you that

24  it's much stronger than that, and it takes out all the

25  possible ambiguity in what he was -- whether or not he was

1   issuing an invitation to engage in tortious conduct.

2          First off, just as a matter of what the law is

3   here, it is absolute black letter law that, "a principal is

4   liable to a third party harmed by an agent's conduct if the

5   agent's conduct is either within the scope of the agency or

6   ratified by the principal."  That's Section 7.04.

7          THE COURT:  Mr. Malone, I don't mean to interrupt

8   you, but is there something you want to point in the

9   complaint that you think sort of fits in this for you?

10  Can you get there?

11         MR. MALONE:  Yeah, I'm getting there, Your Honor.

12  I was just trying to give a little bit of legal background.

13         THE COURT:  That's okay.

14         I can assume I understand the legal framework.

15         MR. MALONE:  Yeah, Section 7.04 of the Restatement

16  (Third) of Agency talks about that.

17         And Section 4.01 talks about, well, what is

18  ratification?

19         Mr. Sibley said that you cannot use the later

20  conduct as proof what the earlier intent was.  That's

21  absolutely wrong.  That's not what ratification is all

22  about.

23         Now, here, in addition -- in our complaints, what

24  we have, in addition to the silence, when he was being

25  begged by his own advisors -- as we pointed out in our

1  complaint -- by Representative Kevin McCarthy to do

2  something, to call off the mob, what we have is, at 4:17

3  p.m. in the afternoon -- this is our complaint at paragraph

4  125, where he finally breaks his silence -- and this is

5  after the Capitol is strewn with --

6            THE COURT:  Right.

7            MR. MALONE:  -- you know, everything.

8            THE COURT:  What about the video, Mr. Malone?

9            MR. MALONE:  He says, "Go home, we love you,

10  you're very special."

11            THE COURT:  Right.

12            MR. MALONE:  And in addition to that, if

13  there's -- if that's not ratification by praising the

14  insurrectionists, less than two hours later, he tweets

15  again -- and this is paragraph 127 of our complaint --

16  "These are the events that happen when a sacred landslide

17  vicary is so unceremoniously and viciously stripped away

18  from great patriots," leaving out a few words there.

19  "Go home with love and peace.  Remember this day forever."

20            THE COURT:  Right.

21            MR. MALONE:  So I just don't see how anyone could

22  not see that any ambiguity in what he had said earlier was

23  "peacefully and patriotically enough" to take him out of the

24  realm of issuing an invitation to tortious conduct.

25            THE COURT:  Right.  Okay.

1          MR. MALONE:  If so, why would he be praising what

2     these people did when he knew exactly what they had done and

3     the violence that they had already committed, the injuries

4     that they had inflicted on my people and on many others?

5          THE COURT:  I don't know if I should address this

6     to you or address it to counsel for Representative Swalwell.

7     I just had some questions about the allegations about

8     Mr. Giuliani and Mr. Trump, Jr.

9          MR. MALONE:  That's not for me.  We didn't submit.

10          THE COURT:  Yeah.

11          So let me turn to Mr. Andonian and just ask him a

12     few questions about that.

13          So look, Mr. Andonian, as I've been thinking about

14     this case, trying to distinguish between two types of

15     conspiracies; one is -- or two conspiracies; one is, this

16     conspiracy that's been alleged to foment distrust in the

17     election outcome or argue that the election was fraudulent

18     when it was, in fact, not.

19          That's not what violates the law, and I think

20     you'd agree with that.  I mean, that type of mere conspiracy

21     to sow disinterest in the election, no matter what we might

22     think about that kind of behavior, that's not the violation

23     that you've alleged and there's no statutory prohibition on

24     that, as far as I'm aware.

25          The conspiracy is to prevent by force,

 1   intimidation, or threat the conduct -- the actions of

 2   Mr. Swalwell in carrying out his duties as a representative

 3   in Congress.

 4          Let's start with Mr. Trump, Jr., with the

 5   President's son.  Other than his -- I think there's one

 6   tweet and then his statement on January the 6th, what else

 7   is there that, in your view, establishes his participation

 8   in the conspiracy to essentially incite violent conduct?

 9          MR. ANDONIAN:  Yes, Your Honor.

10          We do agree that what you said is the correct

11   interpretation of the conspiracy that has to be in order for

12   our claim to go, but we think we've maintained that.

13          So with respect to Trump, Jr. -- and, really, this

14   applies to everybody except Representative Brooks, and I'm

15   happy to talk about that separately.

16          But the words that were spoken on January 6th,

17   I mean, first and foremost, cannot be taken in isolation,

18   and we are not alleging or pleading them in isolation.  They

19   are both in context of what else was said on January 6th,

20   and all of that is in context of what happened up to January

21   6th.

22          So the fact that all of the defendants in our case

23   spoke on January 6th is --

24          THE COURT:  All he said was, "Republicans who have

25   not been willing to actually fight."  I mean, I think that's

1    in the main allegations that you've raised against him.

2              And, you know, the term "fight" is something that

3    is -- you know, is fairly commonly -- it's not at least been

4    unusual to hear the word "fight" used in political speech.

5              And unlike the other plaintiffs -- excuse me, some

6    of the other defendants, there's no allegation of an

7    immediate call to arms, if you will, or walk to the Capitol.

8    And there's no sort of ratification; in fact, as I've

9    alluded to earlier, there's at least been news stories that

10   he texted the Chief of Staff to ask his father to put an end

11   to the activities on Capitol Hill.

12             So I'm wondering how you get there with the

13   President's son just based upon his sort of passing

14   statement to fight on January 6th.

15             MR. ANDONIAN:  Your Honor, I guess first what I

16   would say is, if I were to isolate a statement on

17   January 6th, it would be the end of his speech, which

18   he said, you know, you have a choice, you can be the hero or

19   you can be the zero.  And if you're going to choose to be

20   the zero, we're coming for you and we're going to have a

21   good time doing it.

22             And, again, our point would be that statement and

23   other statements that were made on January 6th have to be

24   taken in the bigger context, except with respect to

25   Donald Trump and Congressman Brooks, both of whom, we would

1    argue, made explicit calls for violent action and for

2    exactly what happened, not that they needed to do that under

3    an incitement standard, but that they, in fact, did.

4          But in any event, with Donald Trump, Jr., he also,

5    you know, the day before, a couple of days before, sent out

6    a message on Instagram, that we allege in the complaint,

7    saying, be brave, do something.  He himself was --

8          THE COURT:  Aren't those exactly the kind of words

9    that don't get to incitement under *Brandenburg*?

10          I mean, I know we've sort of erased the line here

11   between these two topics that I've set forth, but, you know,

12   incitement speech is only actionable and not protected by

13   the First Amendment only if it leads to immediate results.

14          And that's why the words on January 6th stand in

15   different stead than any tweets that may have come before.

16   And it seems to me that I'm not giving undue weight to what

17   was said and what he said on January the 6th relative to

18   anything he may have said before, given that, you know,

19   *Brandenburg* does require this immediacy of violence that

20   either occurs or is likely to occur as a result of the

21   speech in order to not receive First Amendment protection,

22   particularly in the context of political speech.

23          MR. ANDONIAN:  Well, Your Honor, so we are

24   intertwining *Brandenburg* and conspiracy.

25          So I want to make sure -- you know, a lot of the

1    facts do double duty.  I mean, we've pled very separately a

2    conspiracy under 1985 and the -- are D.C.-based claims, but

3    there is an overlapping nucleus of facts.

4            To answer your question again, *Brandenburg*

5    requires that there be words directed at imminent

6    lawlessness that's likely to happen.  I would argue that the

7    entire lead-up to January 6th was focused on January 6th.

8    There's no -- it's not a mistake that the calls to show up

9    in D.C. on January 6th on the Mall just down from the

10   Capitol hours before Congress was meeting in a joint session

11   to certify the Electoral College vote, it's not an accident

12   that that is the day -- that was the place and that was the

13   time all of the defendants asked people to show up, and

14   that --

15           THE COURT:  Is there an allegation that the

16   President's son or Mr. Giuliani asked anybody to show up on

17   January 6th?

18           MR. ANDONIAN:  Well, yes -- well, yes.

19           Paragraph 74, for example, I mean, to be brave, do

20   something -- or do something, be brave, was in reference to

21   showing up at the rally to be brave and do something.  And,

22   again, I mean, query:  What does that mean if not do

23   something to stop Congress from certifying Joe Biden as the

24   winner at that point in time, given everything that had come

25   before?

1          With respect to Mr. Giuliani, he specifically

2   stated, in a January 5th tweet, paragraph 66 of our

3   complaint, he invited everybody to show up at the rally and

4   noted that Donald Trump would be joining them.

5          You know, Representative Brooks, you know, we --

6   again, his speech on January 6th is in and of itself

7   actionable on all fronts, but he also --

8          THE COURT:  Yeah, let me just pause for a moment

9   on the topic of Representative Brooks.  And I know he's been

10  on this call and he's been patiently waiting to have his

11  issue aired.

12         But, you know, he hasn't moved to dismiss the

13  complaint.  And maybe his thinking is this ought to be

14  sequenced to first deal with the Westfall Act.

15         MR. ANDONIAN:  That's fair.

16         THE COURT:  So I'm not considering the sufficiency

17  or the allegations as to him today, because there is no

18  motion pending before me to consider those allegations.

19         MR. ANDONIAN:  Fair enough, Your Honor.

20  My colleague, Mr. Pittard, will be talking about the

21  Westfall Act, so I'll move on from that.

22         THE COURT:  Okay.

23         All right.  That's all I had, Mr. Andonian;

24  I didn't have anything further on those subjects.

25         All right.  Anything else from plaintiffs' counsel

1   on the 1985 issue?

2            MR. MALONE:  I forgot to mention one tiny thing,

3   Your Honor.

4            You were suggesting to Mr. Sellers that it's

5   somewhat of a dangerous standard to -- because a speaker

6   cannot control the reactions of his listeners.

7            And there we're getting -- I just want to

8   underscore that that gets us back to the ambiguity of the

9   invitation and whether or not it was ambiguous.

10           And all I wanted to add in that respect was that

11   it takes me, anyway, back to the very clear ratification

12   later.  When all the violence had occurred and it had all

13   been on television, it becomes very clear that this was not

14   an out-of-control audience, but an audience that was doing

15   exactly what this man wanted them to do.

16           THE COURT:  All right.  Let me --

17           MR. ANDONIAN:  Your Honor, I'm so sorry.  May I

18   just add one more point I forgot to make?  It's very quick.

19           I just wanted make clear, since we were talking

20   about the invitation to the rioters.  In our complaint, we

21   are alleging that there was a conspiracy among the

22   defendants as well, which happened before the rioters were

23   brought into it and for all the reasons that we've argued.

24   I just wanted to make sure I didn't miss that point.

25           THE COURT:  Can I ask -- I meant to ask you this.

 1  Can you tell me who you allege the President conspired with?

 2           MR. ANDONIAN:  Well, at a minimum, the other

 3  defendants in our case.

 4           THE COURT:  Okay.

 5           MR. ANDONIAN:  And at a maximum, we don't know.

 6           But it would also include the people on the ground

 7  who stormed the Capitol, including all of the defendants in

 8  the other cases that are before you today.

 9           But to the extent that, for example, Donald Trump,

10  Jr., we allege, was part of a conspiracy to, by force,

11  intimidation, or threat, interfere with the discharge of

12  official duties, our complaint is not dependent only on what

13  he said or did on January 6th.

14           THE COURT:  No.  I understand.  I understand it

15  involves all the lead-up as well.

16           MR. ANDONIAN:  Thank you.

17           THE COURT:  Let me turn back to defense counsel.

18  I'll give you a very quick rebuttal if you'd like one,

19  Mr. Sibley and Mr. Binnall.

20           MR. SIBLEY:  If I may, Your Honor, I'm glad that

21  they brought this up, because, as I've heard the Court sort

22  of recite the plausible conspiracy, it basically is

23  President Trump giving an impromptu invitation while he's

24  speaking or at the end of the speech, and there's people in

25  the crowd who are sort of yelling, let's go to the Capitol,

1    let's take...

2            I don't think that's sufficient for conspiracy.

3    But from my client's standpoint, how could we have conspired

4    for this result, right?  Because if this was something that

5    happened at the end of the speech with people in the crowd

6    yelling, let's do this, that's part of their argument about

7    how this conspiracy took place.  So how could we possibly

8    have known, before the rally, even when we were speaking,

9    that this sequence of events would occur afterwards, right?

10   That's not a plausible or even possible conspiracy, so

11   that's point one.

12           Point two, Your Honor --

13           THE COURT:  Well, I think, if I could interrupt,

14   I mean, I think the question is, for example, is it a

15   plausible inference to believe that Mr. Giuliani would have

16   known that the President would have encouraged his

17   supporters to leave the Ellipse and march to the Capitol?

18   I mean, there's not an allegation.  I think the question is,

19   is that a plausible inference?

20           MR. SIBLEY:  I suppose you could make that

21   allegation.  But my understanding --

22           THE COURT:  To be clear, they haven't made the

23   allegation.

24           My question is, is it a plausible inference based

25   upon their relationship and other allegations made in the

1    complaint?

2           MR. SIBLEY:  I don't think it's a plausible

3    inference, but it's probably something you give them leave

4    to amend to plead specifically however they wanted to.  So

5    I wanted to address the implausible scenario here, right?

6           My understanding is the way this is supposedly an

7    invitation for conspiracy is not just what President Trump

8    said but the sort of tenor of the crowd, right?  You have

9    people who are saying, let's do this, let's go.  And he sort

10   of hears that and says, hey, that sounds like a good idea,

11   let's march down there with this sort of wild crowd who's

12   ready to take the Capitol, right?

13          Because otherwise, it's just a conspiracy to march

14   to the Capitol, it's just a conspiracy to go there and make

15   your voice heard.  The only way this is a conspiracy to

16   commit violence is with that extra -- and I think His Honor

17   pointed that out.  Were these statements being made while

18   President Trump was speaking or was it afterwards?

19          I don't know the answer to that question.  I don't

20   know whether they were even made at it, but they've alleged

21   it.  But it certainly wasn't while my client or even

22   Representative Brooks or the President's son were speak --

23          THE COURT:  What about the allegation that

24   Mr. Giuliani, during the course of the riot, was calling

25   members of Congress to essentially take advantage of the

1    situation?

2           I mean, isn't that the kind of ratification that

3    would, at least at the motion-to-dismiss stage, suggest that

4    he was of one mind with both the President and the rioters

5    and the goal that was intended that day?

6           MR. SIBLEY:  No, Your Honor, and there's several

7    reasons.

8           One is, I do think this actually occurred later in

9    the evening.  But let's just take the allegation as it is,

10   it's not -- they don't really describe the temporal sequence

11   of events.

12          But let's assume that that's true.  That's

13   completely consistent with what he said at the Ellipse,

14   right?  Because what he said was, hey, we just need to delay

15   this election certification because we've got this Professor

16   Eastman and we're going to have these machines checked and

17   we just need a little more time so we can prove the fraud.

18          And so the people he called actually were not the

19   plaintiffs, Your Honor.  He didn't call the plaintiffs and

20   say, hey, you saw what our mob did, you need to delay this

21   so we can get this thing -- let's delay the certification.

22   He called, apparently, other members of the GOP who he

23   wanted to sort of participate in this Professor Eastman idea

24   of delaying the certification.

25          But that wouldn't mean that he's ratifying the

1    violence that occurred at the Capitol; that's just

2    consistent with his plan, from a legal standpoint, of

3    challenging the election results, Your Honor.

4            He can't be -- he actually -- it's undisputed he

5    came out and condemned the violence.

6            THE COURT:  Okay.

7            All right.

8            MR. ANDONIAN:  I don't think I have anything else.

9            THE COURT:  Mr. Binnall, anything you'd like to

10   add?

11           MR. BINNALL:  I apologize, Your Honor.

12           THE COURT:  That's okay.

13           MR. BINNALL:  Yes.

14           First of all, there's -- Mr. Andonian's point

15   should be important here.

16           When the Court specifically asked him about who

17   the conspiracy involved, he listed two groups.  First of

18   all, he listed the other defendants.  But we already know

19   that there's no actionable cause for simply holding a rally.

20   Even if the words used in that rally aren't to his clients'

21   liking, that's not actionable.  And then after that,

22   he said, we don't know.  He pointed out the others are, we

23   don't know.

24           *Twombly* was a conspiracy case.  We get to

25   plausibility on that is a conspiracy case.  By saying that,

1   I think the cat is very much out of the bag.  They do not

2   have a plausible conspiracy that they even can allege here.

3           And it's especially the case with looking at

4   political speech, which I know we're about to get to next.

5           But even aside from the issues with *Brandenburg*

6   and political speech, trying to say that there was some sort

7   of agency relationship involved here or that there was a

8   conspiracy to do anything inappropriate, going into the

9   Capitol.  They do not have the facts to show that, because

10  it just simply didn't happen.

11          THE COURT:  What didn't -- I'm sorry, what didn't

12  happen?

13          MR. BINNALL:  President Trump did not tell his

14  supporters to go riot at the Capitol.

15          THE COURT:  No.  But, of course, he doesn't have

16  to.

17          I mean, neither *Brandenburg* nor the statute, you

18  know, 1985(1), requires that kind of express command, right?

19  You would agree with that, right, that at a minimum, it

20  requires -- *Brandenburg* requires some degree of likelihood.

21  I mean, it's easier if it's an express command, but, you

22  know, all it requires is an incitement to imminent lawless

23  action.

24          MR. BINNALL:  And there's none of the things that

25  they have said that -- or that they could say.

1          We know what President Trump said on that day, and

2    none of it was anything that would inspire people to any

3    sort of lawless action.  Encouraging people to --

4          THE COURT:  All it requires is a likelihood to

5    incite or produce such action.

6          MR. BINNALL:  That's right.

7          THE COURT:  I guess the question is, we have two

8    allegations here; one, that the lawless action occurred,

9    I don't think there's any doubt about that; and, two, that

10   those who participated in the lawless action, at least some

11   of them said they were there at the behest of your client.

12         Now, you know, maybe that's true, maybe that's

13   not, and maybe that wasn't what was in his head.  I think

14   the question is ultimately, is that enough at a

15   motion-to-dismiss stage to establish a plausible conspiracy.

16         MR. BINNALL:  And at the motion-to-dismiss stage,

17   after *Twombly*, Your Honor, it's simply not enough.  It's not

18   enough to plausibly show that there was that meeting of the

19   minds or agreements for any form of conspiracy on behalf --

20   that either President Trump or Donald Trump, Jr., was

21   involved in or that was pled to have said at the -- either

22   at the rally or before that would even just meet the

23   statutory standard.

24         Aside from the constitutional hurdles, just the

25   statutory --

```
 1              THE COURT:  Okay.

 2              MR. BINNALL:  -- standards of conspiracy.

 3              And what they're required to plead as far as

 4    conspiracy, they did not do it, they cannot do it.

 5              The leaps of logic that they're making here is

 6    exactly what the Supreme Court cautioned against in Twombly.

 7              THE COURT:  All right.

 8              Let's move on.  Let's talk about the

 9    First Amendment.  I don't think we need to spend as much

10    time on it as we've --

11              MR. MOSELEY:  Your Honor --

12              THE COURT:  Mr. Moseley, yes, I should have --

13    I neglected to turn to you as well.

14              MR. MOSELEY:  If I promise not to talk in the next

15    segment, can I just say a few things?

16              I believe -- first of all, I appreciate the

17    Court's attempt to draw the right lines and it obviously

18    cannot be that everybody who heard Donald Trump speak is

19    part of the conspiracy.

20              And I think that the allegations against the

21    Oath Keepers, for example, are based upon unsourced and

22    unidentified quotes.  I could take anybody on this call and

23    wrap my interpretation and opinions around something that

24    they said or things that they said.

25              I think Rule 106, it's not a trial, I know, but it
```

1    is, when it states a claim, would require the complete

2    document.  I would never want to quote something without

3    telling the Court what happened that was said before and

4    after.  I'd bring my toothbrush if I came to court with

5    that.

6            In *McCarthy v. Dun & Bradstreet Corp.*, it has said

7    that -- in this Circuit, 482 F.3d 184, that the motion --

8    the Rule 12(b)(6) motion includes any documents incorporated

9    in the complaint by reference.

10           And most of the allegations against the

11   Oath Keepers constitute plaintiffs', and everybody else's

12   opinion about what was meant, and I think the Court should

13   have the entire documents before it for this Rule 12(b)(6).

14   I don't know where they got these things, but I would try

15   to --

16           THE COURT:  I guess I'm not sure what documents

17   you're referring to, Mr. Moseley, but --

18           MR. MOSELEY:  Well, they refer to written comments

19   or posts.  And it would be my understanding that those --

20   that the fragmentary quotes do not represent what the Oath

21   Keepers think.

22           THE COURT:  Well, I guess the bottom line is,

23   ordinarily the way this would work is that if you thought

24   that there were statements taken out of context, that you

25   could, in your motion to dismiss, attach the full statement

1    in order to provide the context.

2              MR. MOSELEY:  Assuming I know where to find them.

3              THE COURT:  I know you weren't counsel at the

4    time, but that hasn't been done here, and so --

5              MR. MOSELEY:  Yeah.  Assuming that I know where

6    they got it from, which they haven't sourced it in many

7    cases.

8              But in any event -- and I also -- for example,

9    I think that -- I don't represent Donald Trump, but, as

10   I recall the statement says, we know you're going, I know

11   that many of you are going to the Capitol, because plans for

12   a demonstration at the Capitol were announced weeks earlier.

13   I don't recall him saying, go over to the Capitol --

14             THE COURT:  Right.

15             MR. MOSELEY:  -- and it affects my clients.

16             THE COURT:  All right.

17             Yeah, those weren't not at least -- those weren't

18   his words, at least at the end of the speech.  They were

19   very much, let's walk down Pennsylvania Avenue.  It wasn't,

20   I know some of you are going to do that.  It was, let's do

21   it.

22             Okay.  Let's turn to the First Amendment issues.

23   I think we can, hopefully, go through this a little bit more

24   quickly than I expected.

25             Let me just say, I'm going to make one change in

1  our schedule.  We'll deal with Representative Brooks's

2  Westfall certification next.  I know he's been waiting a

3  long time, as well as the U.S. Attorney, on this call.

4  And so instead of making them wait any longer, we'll move

5  that up, and, frankly, it's consistent with the discussion

6  that we've been having, and they don't need to sit through

7  the pending argument regarding the D.C. Code and common-law

8  claims and the D.C. statutory inferences.

9         Okay.  Let's talk about the First Amendment issue.

10 And so to the extent arguments -- I ask you not to repeat

11 any arguments that have already been made, so let's start

12 with Mr. Binnall or counsel for Mr. Giuliani, whoever will

13 be going first.

14         MR. BINNALL:  Your Honor, I'll start on the

15 First Amendment.

16         And the Court has talked about *Brandenburg* a bit

17 already, and so we understand that that is a standard that

18 we're looking at.

19         But what's important to remember here is that the

20 language actually used -- the speech actually used here is

21 far more benign than in the *Brandenburg* case or any other

22 case that has reached the Supreme Court on First Amendments,

23 where the Supreme Court said, no, this is clearly

24 First Amendment speech.

25         And to the extent they are -- want to interpret

1  this statute as saying, it prohibits a conspiracy to hold a

2  political event, a conspiracy to protest at the Capitol,

3  which is, perhaps, one of the most --

4  THE COURT:  I mean, look, that's not what the

5  allegation is.

6  MR. BINNALL:  Your Honor, respectfully, it is.

7  And the Court has just said that one of the things that it

8  pleads --

9  THE COURT:  Well, to be clear, I'm trying to

10  figure out what it pleads.

11  And my point was simply --

12  MR. BINNALL:  Right.

13  THE COURT:  -- that a conspiracy to question the

14  election results and a conspiracy to hold a rally or even

15  hold a demonstration near Congress, none of that violates

16  the statute.  And that's not what the allegation is, at

17  least as to the violation.  And I'm trying to focus on

18  whether the facts alleged are sufficient to make out the

19  conspiracy that violates the statute.

20  So let me ask you this, let me ask you to focus on

21  this, which is:  I'm sure you're familiar with *Claiborne*

22  *Hardware* and the case that involved Charles Evers' speeches

23  involving a boycott, I think it was in Missouri, I think --

24  Mississippi.  I misspoke.

25  MR. BINNALL:  Yeah.

 1          THE COURT:  So the Court there holds that Evers's

 2   speeches are protected by the First Amendment.

 3          MR. BINNALL:  Right.

 4          THE COURT:  And part of the speech included

 5   essentially an enforcement of the boycott.  And during his

 6   speech, he said, you know, we're going to break the necks of

 7   anybody that violates it.  There was some reference to the

 8   Sheriff wouldn't be able to sleep.  Those were the two

 9   statements that, apparently, were problematic.

10          The Court says as follows -- the Supreme Court

11   says as follows, in holding that Evers's speech was

12   protected.  It says, "The emotionally charged rhetoric of

13   Charles Evers' speech did not transcend the bounds of

14   protected speech set forth in *Brandenburg*.  The lengthy

15   addresses generally contained an impassioned plea for black

16   citizens to unify, to support and respect each other, and to

17   realize the political and economic power available to them.

18   In the course of those pleas, strong language was used."

19          And here's the key passage:  If that language had

20   been followed by acts of violence, a substantial question

21   would be presented whether Evers could be held liable for

22   the consequences of that unlawful conduct.  In this case,

23   however, the acts of violence identified weeks and months

24   later.

25          So if the Supreme Court seems to have said in

1    *Evers* that -- excuse me, in *Claiborne Hardware*, that if the

2    violence had followed immediately upon the speech, that

3    there would be a substantial question as to whether he could

4    be held liable.

5              Why doesn't that, at least in this case, get us

6    past the plausibility standard with respect to the motion to

7    dismiss?

8              MR. BINNALL:  A couple reasons, Your Honor, is,

9    you still have to look at all speech from the words that are

10   said from the speaker.  You can't put too much emphasis on

11   the hearer and what a hearer does based on that.

12             And the words that President Trump use in this

13   case, assuming -- well, assuming them to be true, as you

14   must at this stage, it doesn't rise to any level of

15   violence.

16             There's not the facts that are in -- that are

17   present in the *Evers* case.  You do not have a situation

18   where he is talking about violence at all.  What the

19   plaintiffs want you to do is they want you to read context

20   into his speech to say, well, here's, obviously, what he

21   really meant and what he really wanted to happen, and that

22   is a very dangerous road to go down.

23             And that's not something that the Supreme Court

24   has ever allowed in a speech case, is to use the words that

25   are at issue in this case in order to try to make actionable

1   political speech, speech made at a rally, something that is

2   at the very heart of the First Amendment, something that is

3   at the very heart of -- and at the very center of freedom of

4   speech and the protections of the First Amendment.

5          And, of course we don't even -- we're not limited

6   here just to freedom of speech.  We're also looking at

7   freedom of assembly.  We're looking at the right to petition

8   for a redress of grievances.  Almost every major

9   First Amendment right that could be at play is at play in

10  these cases.

11         So to ask the Court, even at the motion-to-dismiss

12  stage --

13         THE COURT:  So just to be clear, I want to make

14  sure I understand the distinction you want to draw from

15  *Claiborne*, is that, in your view, where the substantial

16  question was raised or would have been raised by violence in

17  *Claiborne Hardware*, but it is not raised here is because of

18  the content of the speech; in other words, the words used by

19  Evers in *Claiborne Hardware* are different than the words

20  used by President Trump.

21         Is that the distinction you want to make?

22         MR. BINNALL:  Your Honor -- and I think it's what

23  the Supreme Court's getting at in *Claiborne Hardware*, is

24  that if I were to say to somebody, go break his neck, and

25  the person I'm talking to goes and breaks somebody's neck

 1    right then and there, that's not protected speech,

 2    I understand that.

 3              That's not what happened here; that's not the

 4    facts of these cases.  Here, you have political dialogue,

 5    using very common words in political dialogue.  And then you

 6    have the actions that take place afterwards by third

 7    parties.  That is not something that ever becomes actionable

 8    based on the words at play here, which are not calls to

 9    violence.

10              THE COURT:  Okay.

11              MR. BINNALL:  And if it would -- and it is

12    important to look at words that are used in context.

13              And, again, I remind the Court of the video that

14    we've submitted.  And perhaps the most striking example of

15    this is the shooting of congressional Republicans.

16              THE COURT:  Mr. Binnall, I've asked you to not

17    reference these other incidents.  I know what your response

18    involves.  Let's stick to the facts here.  And I'll also

19    note that that event occurs four days after Senator Sanders'

20    speech, as tragic as it was.  So let's stick with what's

21    before me.

22              MR. BINNALL:  Well, if we want to, Your Honor,

23    there's not just the congressional baseball shooting.

24    If you want something that happened --

25              THE COURT:  I actually don't.

1          This is what I've been trying to urge you to

2   avoid, which I want to talk about this case and these facts.

3          And, look, regrettably in our current political

4   environment, I suspect you can come up with multiple

5   examples of very troubling conduct during or in the

6   aftermath of political speech, and that's why I'm trying to

7   press you on the questions that I am.

8          MR. BINNALL:  Understood.

9          Your Honor, if I might, just briefly on this, my

10  issue and why I'm bringing these up is that you can't make

11  these decisions about political speech in a vacuum.  You

12  can't say it's so bad that, you know, Donald Trump or

13  Donald Trump, Jr., or Rudy Giuliani used certain words that

14  are used by every member of Congress, every Democrat member

15  of Congress that is on this call right now, that's in this

16  hearing.

17         And that's something that is particularly

18  problematic from a First Amendment perspective.  And the

19  reason why that's so problematic, Your Honor, is that the

20  First Amendment only works when it's applied equally,

21  because otherwise you have a real problem with chilling

22  effects.  And if it's something where people say, well, you

23  know what --

24         THE COURT:  Mr. Binnall, I really -- you know,

25  I don't disagree with the concept that it needs to be

 1   applied equally; in fact, I wholeheartedly embrace that.

 2   And I'm not being asked to compare conduct here based on

 3   political affiliation.  I'm being asked to evaluate your

 4   client's conduct and whether it's protected by the

 5   First Amendment.

 6           And telling me that it's common for politicians to

 7   use these words is a fair argument.  But to suggest that I

 8   or that -- to suggest that I am going to treat the President

 9   differently because of his party or that the law ought to be

10   treating -- you know, be used in a different way given his

11   party, is simply just not appropriate, and I'd ask you to

12   avoid those arguments, okay?

13           I mean, there are arguments that you made that

14   raise a lot of constitutional concerns.  And I'll be honest

15   with you, if this hearing hasn't demonstrated -- I'd hope

16   that one thing this hearing has demonstrated is that this is

17   not an easy case and that I have struggled with a lot of

18   these issues because they raise a lot of important

19   constitutional questions.  And so let's stay on course to

20   what matters, okay?

21           MR. BINNALL:  Your Honor, and I want to make it

22   clear that none of what I said was an indictment against the

23   Court on these particular questions.  What it was is me

24   saying very clearly we have to look at political speech in

25   context.

```
1              THE COURT:  I got it.

2              Let me ask you one more question.  I think it's

3    plausible, and it's been plausibly alleged, that a number of

4    the statements that the President made during the January

5    6th rally are false, false statements concerning the way the

6    election was conducted.  How, in your view, should that

7    play, if at all, in my evaluation?

8              MR. BINNALL:  A couple things, Your Honor.

9              First of all, I don't know why the Court would say

10   that they're false before evidence is taken.  They're not

11   false.

12             THE COURT:  I didn't.  All I said was -- I didn't.

13             MR. BINNALL:  Yeah.

14             THE COURT:  I said they've alleged to be false.

15   I didn't say they were false.

16             MR. BINNALL:  I apologize.

17             THE COURT:  They're alleged to be false.

18             I choose my words carefully.

19             MR. BINNALL:  Okay.

20             And so, first of all, even though we very much

21   disagree that the words are false, what is more important

22   here is the fact that the truth or falsity of speech is of

23   no consequence for First Amendment grounds, because what

24   First Amendment jurisprudence is clear on is we don't

25   adjudicate, in political speech, the accuracy of that speech
```

1    in a court of law, and so a speech is not less protected,

2    even if it was false, which is not the case here.

3            And so --

4            THE COURT:  Well, why can't I weigh the allegation

5    of falsity in connection with the question of incitement and

6    whether the words are not protected when considering the

7    statements as a whole?  I mean, it is a contextual analysis,

8    I think you'd agree it's not just based upon the words on

9    the page, the spoken words; it's context that matters.

10           So why can't I consider that allegation that there

11   were false statements made elsewhere in the speech in trying

12   to determine whether the particular words here concerning

13   fighting, strength, and the like were just mere political

14   speech or something that's now protected?

15           MR. BINNALL:  Because, Your Honor, once courts

16   start trying to determine whether speech is protected based

17   on whether it's true or whether it's false, you have to

18   start making value determinations based on that, you have

19   to -- it makes it so it's no longer viewpoint-neutral, it

20   makes it so it's no longer content-neutral.

21           And to start saying that the First Amendment

22   protects one type of political speech more than another

23   based on the determination of a court as to whether it's

24   true or false is something that would be completely

25   unsupported by long-established First Amendment precedent,

1  it would be something that also would be particularly

2  dangerous for courts to at that point be drawn into

3  political disputes over which speech from a politician is

4  accurate and which speech is not.  That's not a road I think

5  that anyone wants the courts to go down.

6          And so as a result, what the Supreme Court has

7  said, and what a number of courts have said is, we don't

8  look at falsity when taking the issue of First Amendment

9  protected speech into account.  What we look at is whether

10  this is political speech, whether or not it meets -- or

11  First Amendment protected speech and whether it would meet

12  any exception.

13          And you would not be able to, for instance, in a

14  *Brandenburg* analysis or a true-threats analysis, be able to

15  say, well, it's more likely to incite violence because it's

16  false.  That is not part of the legal test.

17          THE COURT:  Okay.  That's helpful.  Thank you.

18  I appreciate that response.

19          All right.  Why don't we turn then to -- do any of

20  the other plaintiffs' counsel wish to add anything to

21  Mr. Binnall's argument concerning the First Amendment?

22          MR. SIBLEY:  Your Honor, did you mean defendant?

23          THE COURT:  If I said plaintiffs, I meant

24  defendants.  Sorry, it's been a long day.

25          MR. SIBLEY:  It's all right, Your Honor.

1            I just wanted to add one thing.

2            I think His Honor is correct that the distinction

3    in the *Claiborne Hardware* case is that in order for you to

4    even get into the discussion of whether you can proscribe

5    the speech because of violence, it has to first be speech

6    that's objectively capable of being construed as such,

7    right?

8            Because if you say something that would be

9    otherwise benign or innocuous but then someone goes out and

10   does something violent, you can't then go back and look at

11   the speech and say, oh, I can see why this person who's

12   mentally ill -- by that argument, Your Honor, I guess

13   The Beatles could be responsible for the Tate murders,

14   right, because Charles Manson thought that the songs meant,

15   let's go do all these horrible things, right?

16           So you have to look at the speech and determine

17   whether this speech could be reasonably -- kind of like in

18   defamation.  Is the gist of this reasonably encouraging

19   someone to do something?  You can't look at just violent

20   consequences and then go back and say, oh, this must be what

21   it meant.

22           THE COURT:  Okay.

23           All right.  Mr. Sellers, are you up for the

24   plaintiffs?

25           MR. SELLERS:  Yes, I am.

1          Your Honor, I think I can be brief, because we've

2     covered a lot of other things.

3          So, first of all, the *Brandenburg* case, of course,

4     speaks to imminent lawlessness.  Violence is certainly one

5     form of lawlessness; there are others here.  And certainly,

6     the violence committed against Congress is one form.

7          But the imminence also just of lawlessness

8     exhibited by efforts to interfere with the ability of

9     Congress to ratify the results of the election is another

10    form of lawlessness.

11         You were asking, I think, about speech or

12    discussion about speech at a political rally.  And I think

13    there was a -- Mr. Binnall may have made the argument that

14    speech in political rallies is necessarily almost always

15    protected under the First Amendment.

16         I think you'd have to look at the question of

17    whether the speech, whether it's a political rally or

18    whatever it is, public speech, whether it is followed by

19    imminent lawlessness.

20         And to the point that that was just -- you just

21    were asking about the persistent use of false narratives,

22    I think the relevance is that it goes -- it's relevant to

23    the question of whether the imminent lawlessness is

24    foreseeable and likely.  It goes to foreseeability and

25    likelihood; that is, if I perpetuate a false narrative about

1    something and it eventually leads to some dire reaction from

2    an audience I was speaking to, as I think happened here.

3    I think the persistent use of a false narrative makes it

4    much harder for the author of that to claim total surprise,

5    because I think --

6              THE COURT:  Mr. Sellers, can you --

7              MR. SELLERS:  -- it contributes to the --

8              THE COURT:  -- I take it your -- and this is why I

9    asked Mr. Binnall this question, and I'm curious to

10   understand your point.

11             I guess the question is, do you have the authority

12   that you think would best support the notion that the Court

13   can consider the truth or falsity of political speech in

14   determining whether the overall speech is protected?

15             MR. SELLERS:  Not as I sit here.  I'm happy to --

16   if I can to locate something, I can certainly provide a

17   citation on the record.

18             THE COURT:  Okay.

19             MR. SELLERS:  But I speak to it not so much

20   because it is -- there may be authority on this point, but

21   it goes -- there's no question, I think, that there's an

22   element of foreseeability and likelihood that I think we

23   would all agree goes into the calculus of whether a

24   speaker's -- reaction of an audience to a speaker's remarks

25   is something for which the speaker bears some

 1    responsibility, and I think persistent --

 2          THE COURT:  Can I ask you a different question

 3    just to try and keep things moving along?

 4          MR. SELLERS:  Yep.

 5          THE COURT:  You in your briefs have suggested that

 6    the President's statements lose their First Amendment

 7    protections because they were part of a conspiracy.

 8          MR. SELLERS:  Yes.

 9          THE COURT:  I wonder how much you really mean that

10    and to what extent that's true, and here's what I mean.

11          Take, for example, a conspiracy to tortiously

12    interfere with contracting.  You know, if you were to allege

13    that the President got up and made a speech that interfered

14    with the contractual rights of a government contractor and

15    conspired to do so, would your position be that that is not

16    protected political speech because it involved tortious

17    conduct?

18          MR. SELLERS:  I guess I would say, as a general

19    proposition, that speech which satisfies elements of --

20    demonstrates -- is unlawful is -- I think, loses its

21    protection under the First Amendment, and I think the --

22          THE COURT:  But that sort of proves too much,

23    right?

24          If the conduct is unlawful, you know, the question

25    is unlawful in what respect?

1          And I guess, you know, the question -- the

2    overarching question I have here is whether essentially the

3    question, the First Amendment question sort of collapses

4    into *Brandenburg*.  And that is, it is ultimately the

5    question here, is this speech excluded under the *Brandenburg*

6    test or is there some broader concept of First Amendment

7    excluded speech that would be applicable here?  There's an

8    amicus brief that suggests that there's another construct.

9          MR. SELLERS:  Right.

10          THE COURT:  I have to confess that I'm having a

11    hard time wrapping my head around how to apply that here

12    when the allegation of conspiracy has to do with speech that

13    is alleged to have incited a riot.

14          And so how a freestanding exception for

15    conspiratorial speech applies to political speech is a

16    little unclear to me.

17          MR. SELLERS:  Well, I'll speak to what I think was

18    an excellent amicus brief.

19          But as I understood the point of the authors, it

20    was intended to call the separate category to the attention

21    of the Court, not so much to argue that the existing

22    standards are not already satisfied.  So I think it was

23    asking the Court to acknowledge this but not necessarily

24    that it's necessary to conclude that the speech here was not

25    protected.

1          But let me just go back to a point that you were,

2    I think, asking about, which is --

3          THE COURT:  Well, let me just ask this question,

4    Mr. Sellers, and I'll let you go back to your point, which

5    was, if I were to find -- or let me put it differently:

6    Can your case go forward only if I find that the speech is

7    unprotected under *Brandenburg*?

8          MR. SELLERS:  I don't think so.

9          I mean, *Brandenburg*, I think of as a -- and it's

10   the most widely cited yardstick for assessing when speech is

11   no longer protected.

12         THE COURT:  So if not *Brandenburg*, then what other

13   exception to First Amendment protection would apply here?

14         MR. SELLERS:  I mean, I submit -- and, again,

15   I have to find some authority and I'd be happy to submit it,

16   but, more generally, speech which is itself an element of an

17   unlawful action.

18         And actually if you look at -- I'm being handed

19   some case.  I just want to mention the Supreme Court's case

20   in *Wisconsin v. Mitchell*, which is -- we cite but is found

21   at 508 U.S. 476, the particular section is page 489.  And it

22   addresses the point that elements of speech may be -- parts

23   of speech may be evidence of participation in an unlawful

24   conspiracy, notwithstanding that they have First Amendment

25   protections.

1          So I guess the point is, I don't think either --

2          THE COURT:  I think that's right, although the

3     question is, what's the object of the conspiracy?

4          MR. SELLERS:  Yeah.

5          THE COURT:  And it seems to me here that the

6     object of the conspiracy has First Amendment -- or

7     implicates the First Amendment in some respects.

8          MR. SELLERS:  Understood.  You may be --

9          THE COURT:  Unless the allegation is that the

10    conspiracy was to engage in criminal conduct, and that's not

11    what we have alleged here.

12         MR. SELLERS:  We're not alleging that here.

13         But let me just say to be clear, the point I was

14    trying to get at is, I don't think it's an either-or; that

15    either the speech is not protected, in which case we have a

16    viable claim, or the speech is protected and we don't.

17         I think the *Wisconsin* case stands for the

18    proposition the speech can on its own be protected speech,

19    but it may be an element of conduct -- of a pattern that

20    suggests that there's an underlying unlawful action.

21         So we're not seeking to challenge or indict the

22    speech per se, but we contend that the speeches constitute

23    elements of this unlawful conspiracy taken -- it's expressed

24    in furtherance of an unlawful conspiracy.  And to that

25    extent, it is --

1            THE COURT:  I guess I just don't see it -- this

2    will be the last thing I'll say.

3            I'm just having trouble wrapping my head around,

4    on this fact pattern, how a speech can be viewed -- how

5    the -- the question of whether the speech is protected by

6    the First Amendment or loses that protection can be viewed

7    through any other lens other than did it incite the riot.

8            MR. SELLERS:  Well --

9            THE COURT:  Because if it didn't, because if it

10   didn't --

11           MR. SELLERS:  No.

12           THE COURT:  If it didn't --

13           MR. SELLERS:  Yeah.

14           THE COURT:  -- incite the riot, then it seems to

15   me to fall into a different category.

16           MR. SELLERS:  I'm with you on that.

17           THE COURT:  Okay.

18           MR. SELLERS:  I think if that's your question,

19   I think we believe we have plausibly alleged that the speech

20   incited the riot and that the fact that it might be -- and

21   insofar as it was an element of this conspiracy that we are

22   alleging, unlawful conspiracy, it may be relevant to proving

23   the conspiracy, but that doesn't mean the speech is not

24   otherwise protected, if it's being used, I guess is the way

25   I'm putting it, for an unlawful purpose.

1          THE COURT:  One last question, Mr. Sellers, and

2    that goes to Mr. Binnall's point about what the words were.

3          MR. BINNALL:  Sorry about what?  I didn't hear

4    you.

5          THE COURT:  About what the words were that the

6    President used.

7          You know, he used the word "fight" multiple times.

8          MR. SELLERS:  Yeah.

9          THE COURT:  He does talk about fighting.

10   "You need to fight like hell.  If you're not going to fight

11   like hell, you're not going to have a country anymore.

12   You have to show strength."

13         MR. SELLERS:  Right.

14         THE COURT:  None of those words -- those words are

15   neutral, at a minimum, to -- or at least on their face don't

16   involve or ask anyone to engage in violence.

17         MR. SELLERS:  So --

18         THE COURT:  And, secondly, they're essentially

19   words that are commonly used in political speech.

20         MR. SELLERS:  Yeah.

21         THE COURT:  So why shouldn't I be concerned here,

22   as Mr. Binnall has suggested, that if I find that these

23   types of words don't have First Amendment protection, then

24   there's going to be a vast variety or a vast swath of

25   political speech potentially that is left unprotected?

1          MR. SELLERS:  So I think you can't isolate the

2    particular words from the broader context.

3          There's been a lead-in.  We've talked about it

4    but -- and you've nodded when we've mentioned it, but it

5    bears repeating, which is that our complaint alleges, as to

6    the other complaints, a series of statements made leading up

7    to this, which began even before the election in which

8    President Trump said, "The only way I lose this election is

9    if there's fraud."

10          And he just beat the drum of fraud, fraud, fraud,

11   all the way up to January 6th, where he warned the crowd

12   that if you don't stop this, we're going to inaugurate an

13   illegitimate President.  And that you can go down to the

14   Capitol and use different, very different rules because

15   there's fraud here.

16          And I suggest that this is not -- you can't just

17   look at it, fight like hell and take it in isolation, you

18   have to look at the broader context.

19          THE COURT:  All right.  Thank you, Mr. Sellers.

20          MR. MALONE:  May I just follow-up quickly on that

21   point, Your Honor?

22          THE COURT:  Quickly, Mr. Malone, because I really

23   do want to move forward.

24          MR. MALONE:  Yes.

25          It's not so much the truth or falsity of the

1    allegation in the speech about the fraud, it's the extreme

2    nature of the allegation without any evidence for the

3    speaker; in other words, it's the speaker's subjective

4    intent here when, without any evidence whatsoever, in the

5    face of 60 courts or more having rejected the allegations of

6    fraud, to then continue to tell your people that there has

7    been this massive fraud that strikes at the very heart of

8    our democracy, and then to tell them, and this is an exact

9    quote, "when fraud occurs, you're allowed to play by very

10   different rules," that is part of the invitation to commit a

11   tortious -- commit tortious conduct.

12             THE COURT:  Thank you, Mr. Malone.

13             All right.  Let's move forward.  We've got, as I

14   said, we're going to change up the order here.

15             Let me just -- Bill, how are you doing; are you

16   okay?

17             COURT REPORTER:  Yes.

18             THE COURT:  All right.

19             Let's turn to the certification -- the Westfall

20   certification question concerning Congressman Brooks.

21             Congressman Brooks, I believe you're on, and I

22   appreciate your patience, if I can find you here on my Zoom

23   screen.

24             Are you still here with us, Congressman Brooks?

25             There he is.  Okay.

1              So, Congressman Brooks, we'll hear from you on

2    your motion.

3              Congressman, you're actually on mute, so you'll

4    have to unmute your computer.

5              CONGRESSMAN BROOKS:  If you'll please forgive me,

6    I'm a little bit hoarse.  I've got some soda pop or

7    something to lubricate my throat as circumstances warrant.

8    Hopefully, my voice will last.

9              I would ask the Court permission to please indulge

10   with me as I read my remarks into the record.

11             THE COURT:  I'm going to interrupt you,

12   Congressman, because it's late in the afternoon and you

13   don't need to do that because those remarks are already in

14   the record by virtue of your submission.

15             CONGRESSMAN BROOKS:  But this is different from

16   what's in the briefings.  And it's less than the ten minutes

17   allotted to me, but I'm happy to --

18             THE COURT:  Okay.  I'm sorry.  I understood --

19   sorry.

20             I understood you to want to say you wanted to read

21   your remarks on January 6th into the record, as opposed to

22   an argument.

23             CONGRESSMAN BROOKS:  Oh.  No, sir.

24             THE COURT:  Okay.  Go ahead.

25             CONGRESSMAN BROOKS:  Thank you.

1          The issue in this matter is the scope of my

2    employment as a U.S. congressman.

3          I grouped the underlying facts into two parts.

4    If I acted within the scope of my employment under either

5    set of facts, then the Westfall Act applies.

6          Fact set No. 1 encouraged 50 -- excuse me,

7    concerns 50-plus election contests and Electoral College

8    vote count complaint allegations.

9          The United States Constitution, Article I in the

10   12th Amendment and various U.S. Code Sections, including,

11   but not limited to, 3 U.S.C. 15, make Congress the final

12   arbiter, judge, and jury of all election disputes involving

13   Presidents, U.S. Senators, and Congressmen.

14         Hence, as a matter of federal, constitutional, and

15   statutory law, every action I took, every speech I gave,

16   every vote I cast concerning the accuracy of the 2020

17   elections was within the scope of my employment, because

18   they were all a part of my job duties stated in the

19   U.S. Constitution and the U.S. Code.

20         As an aside, the plaintiffs seem to contend that

21   opposing Electoral College submittals of various states is

22   somehow the basis of a lawsuit.

23         That is not true.  As detailed in my brief, since

24   the year 2000, more than 180 Democrat and Republican

25   Congressmen and senators have opposed Electoral College vote

1   submittals of various states.

2          By way of ironic example, in 2016, Congresswoman

3   Pramila Jayapal objected to receipt of Georgia's Electoral

4   College votes submittal.

5          And by way of another ironic example, since both

6   of these Congresswomen are on this Zoom meeting,

7   Congresswoman Maxine Waters objected to Florida's Electoral

8   College vote submittals, stating -- and I quote from the

9   Congressional Record -- "I am voicing my objections to the

10  electoral votes submitted by Florida, Mr. Speaker.

11  I believe these electoral votes to be illegitimate and

12  unrepresentative of the true popular vote in Florida.  Vice

13  President Gore is leading in popular votes in excess of

14  500,000 votes in this country and all of Florida's votes

15  recounts are not yet tabulated.  The recounts will document

16  that Gore won Florida, despite voter fraud, despite voter

17  intimidation, despite the butterfly ballots, despite the

18  criminal record of ID numbers on absentee ballots."

19         I disagree with those two congresswomen, but I

20  absolutely defend their right to make those kinds of

21  contentions.

22         THE COURT:  So, Congressman, if I could just

23  interrupt you and you can continue.

24         Just to be clear, I want to make sure that there's

25  no confusion here.

1          I am not at all here to litigate what your votes

2    were that day or the votes of any other person on that day

3    or any votes that were taken in the past.

4          The question is a different one, and that concerns

5    in what capacity you made the speech on January the 6th.

6    That's what I'm focused on.

7          CONGRESSMAN BROOKS:  Yes, sir.

8          And I would submit that a review of my public

9    remarks made at the Ellipse indicate that over roughly

10   90 percent of the speech was wholly unrelated to the bulk of

11   the allegations in the complaint.

12         Hence, as I will cover next, I would submit in the

13   second fact questions, is that my public remarks at the

14   Ellipse rally on January 6th, over a mile from the Capitol

15   riot and roughly three to four hours before the Capitol riot

16   started, are within the scope of my employment.  Numerous

17   Federal Court decisions make it abundantly clear that my

18   Ellipse remarks are in that vein.

19         By way of example, in the *Council on*

20   *American-Islamic Relations versus Ballenger*, a 2006

21   D.C. Circuit case, the Court held that public remarks in a

22   media interview were within the scope of Congressman

23   Ballenger's employment, even though slanderous statements

24   made by Ballenger standing alone might not have been within

25   the scope of employment.

1          The *Ballenger* court held that since public remarks

2    in media interviews are generally within the scope of

3    employment, "Ballenger's allegedly defamatory statement was

4    incidental to the kind of conduct he was employed to

5    perform."  And "Even a partial desire to serve the master is

6    sufficient."  And that "Ballenger's conduct was motivated --

7    at least in part -- by a legitimate desire to discharge his

8    duties as a congressman."

9          Further, in *Wuterich versus Murtha*, a 2009 D.C.

10   Court of Appeals case, the Court held that Congressman

11   Murtha's public remarks were subject to the Westfall Act

12   because, "it is underlying conduct -- interviews with the

13   media about the pressures on American troops in the ongoing

14   Iraq war -- is unquestionably of the kind that Congressman

15   Murtha was employed to perform as a Member of Congress,"

16   again, emphasizing that, "even a partial desire to serve the

17   master is sufficient."

18          Similarly --

19          THE COURT:  Congressman, if I could just interrupt

20   you, because I want to try and get to some of the questions

21   that I have, and this is not preclusion of you completing

22   your statement.

23          But, look, it's been posited by both the

24   plaintiffs and the United States, in which the Department of

25   Justice has denied certification, that you were not acting

1  in your capacity as a legislator that day, but, rather, were

2  acting in the capacity as a campaigner; this was a campaign

3  activity.

4          I think the first question I have is whether you

5  accept that distinction as a distinction between conduct

6  that's within the scope of employment and conduct that's

7  without the scope of employment.

8          CONGRESSMAN BROOKS:  I reject it.

9          THE COURT:  Okay.

10          And on what basis do you reject that distinction?

11          CONGRESSMAN BROOKS:  Well, name the campaign that

12  was ongoing that I asked people to vote for or to

13  participate in.  There was not one.

14          THE COURT:  Well --

15          CONGRESSMAN BROOKS:  That's the challenge that I

16  would issue to the plaintiffs.

17          THE COURT:  Well, I mean, your own words

18  and explaining your words from that day and your brief and

19  your affidavit suggest that a lot of what you meant or

20  intended that day was to rally people not with respect to

21  the past campaigns, which, as you've rightly pointed out,

22  were done by that point, including the Georgia senatorial

23  elections that happened the day before, but to look forward,

24  and to look forward to the 2022 and the 2024 elections that

25  you said were right around the corner and to start thinking

1    about those elections.

2               CONGRESSMAN BROOKS:  But in --

3               THE COURT:  So why isn't that, even by your own

4    acknowledgment, a speech that you gave in connection with

5    campaigning in elections, rather than in your capacity as a

6    legislator?

7               CONGRESSMAN BROOKS:  Because it was more along the

8    lines of asking people to exercise their civic duties to

9    participate in our Republic and, in a very general sense, in

10   future elections.

11              I was not advocating that anyone do anything with

12   respect to any existing campaign.

13              THE COURT:  Okay.

14              I mean, you've suggested that part of your

15   motivation that day was to address the upcoming

16   certification that was scheduled to happen later that

17   afternoon.

18              Just I'll note that in paragraph 47 of your

19   affidavit, you sort of list the reasons for making the

20   speech.  You write, "I gave the Ellipse speech because I

21   love my country and I sought, amongst other things, to

22   remind and inspire Ellipse rally citizens," and there are

23   sort of multiple bullet points after that.

24              None of those bullet points refer to the Electoral

25   College vote and your reasons for making that speech

1   relating to the Electoral College vote.  So isn't it more

2   accurate to say that the speech that day had nothing to do

3   with what you were constitutionally and statutorily going to

4   do that afternoon?

5              CONGRESSMAN BROOKS:  No, sir, I would respectfully

6   disagree.

7              I would submit that the entire context of

8   January 6th related to the Electoral College vote

9   submissions and House floor debates that we were going to

10  have that day.

11             THE COURT:  Okay.

12             And can you --

13             CONGRESSMAN BROOKS:  I thought that that was --

14  that everybody knew that.

15             THE COURT:  I guess what I want to know is, are

16  there words in your speech that you think support that view,

17  that that was the overarching purpose of the speech?

18             CONGRESSMAN BROOKS:  I would have to review my

19  speech in greater detail, because I did not discern that

20  there would be questions on that particular perspective.

21             THE COURT:  If I could just go back then to,

22  I think, where I started.

23             And you've acknowledged that you are bound,

24  obviously, by House ethics rules.  Those ethics rules do

25  make a distinction between campaign and political activity

1    and conduct that's sort of official.  And as a consequence

2    of conduct being official, you can use the resources that

3    are afforded to you as a Congressman for those purposes.

4              Is that a line that you accept as distinguishing

5    between within scope of employment and outside of scope of

6    employment?  That is, conduct that is either sort of

7    electioneering, political activity is outside, and that

8    which is otherwise arguably official?

9         CONGRESSMAN BROOKS:  Judge, you have to look at

10   the entire remarks.  You cannot just take bits and pieces

11   under the cases that I have just cited.

12             It's much like the media interviews that some of

13   these Congressmen had that had bits and pieces that were

14   offensive or involve slander or libel or things of that

15   nature.  The media interview is the crux of the decisions of

16   all these various courts.

17             In this case, I gave public remarks on a day that

18   related to the certification of Electoral College votes.

19   Whether 100 percent of those public remarks were related to

20   that issue is not important.  What is important is whether

21   the public remarks, as a whole, were something that a

22   Congressman would be expected to do.

23             I would expect that if any of the Congressmen who

24   are on this Zoom call were asked by the White House to give

25   a speech, to be at an event, they would be there, and that's

1    the way it was with me.

2            THE COURT:  So I appreciate that, and I've got

3    questions about that for plaintiffs and the United States in

4    a moment.

5            But to go back to just the questions that I've

6    posed earlier, which is whether you accept -- again, the

7    United States and -- the Department of Justice and the

8    plaintiffs have sort of suggested this, that there is this

9    distinction to be drawn between campaigning and

10   electioneering, on the one hand, that's not within the scope

11   of employment and to official activities on the other.

12           And, again, the question is, do you accept that

13   distinction as a defining line between what is within the

14   scope of employment, what is not within the scope of

15   employment?

16           CONGRESSMAN BROOKS:  I would submit, Your Honor,

17   in response, that there is nothing in the House rules of

18   ethics that I have violated at any part of my speech on

19   January the 6th.

20           And I'm not sure if you're aware of this, but

21   since you brought it up, on March 10, 2021, one of the

22   members of this Zoom call, Congresswoman Pramila Jayapal,

23   submitted an ethics complaint against me with the House

24   Ethics Committee, which is the committee that is responsible

25   for resolving questions of ethics.

1          Quoting from her complaint:

2          "I respectfully request the Committee on Ethics

3     launch an investigation into Representative Mo Brooks AL-05

4     for his involvement in instigating and aiding the violent

5     riot at the Capitol building on January 6th, 2021."

6          The Ethics Committee had a vote, correspondence

7     from the Ethics Committee, signed by the Democrat Chairman

8     Theodore Deutch, and the ranking member Jackie Walorski:

9          "Pursuant to House Rule 11, clause 3(k)(2), and

10    Committee Rule 16B, the committee voted on a motion to

11    establish an investigative subcommittee and forward the

12    complaint to that subcommittee for its consideration.

13         "In accord with Committee Rule 26K, we hereby

14    notify you that the motion failed and an investigative

15    subcommittee was not established.  Because Committee Rule 16

16    provides for no specific further action, the Committee will

17    not further review the complaint."

18         The House Ethics Committee, I would submit to the

19    Court, agrees with me that there were no Ethics Committee

20    violations.

21         My remarks, even to the extent they may have

22    related, in a very ambiguous way, to elections at some point

23    in the future in 2022 or 2024, did not, I repeat, did not

24    violate any of the ethics rules.

25         THE COURT:  All right, Congressman.  Those are the

```
 1    questions that I had.  I know you had a prepared statement,
 2    and if there's a portion of it that you want to make sure
 3    you read into the record, I'll give you that -- you can do
 4    that now, if you'd like.
 5              CONGRESSMAN BROOKS:  Your Honor, I just want to
 6    emphasize that the complaint has two different sets of
 7    allegations against me; one of those sets -- and there's
 8    over 50 complaint allegations that relate to it -- concern
 9    the election contest that is clearly a duty of mine, as a
10    United States Congressman, to address.  As such, the
11    Westfall Act applies.
12              The second set, which the plaintiffs cleverly want
13    to focus on, which is just the speech, the public remarks
14    part, I would submit, as I already have, as you and I have
15    gone into detail, that that also was within the scope of my
16    duties and responsibilities, as set forth in any number of
17    prior Federal Court decisions.
18              THE COURT:  All right.  Thank you, Congressman.
19    I appreciate your argument, and I appreciate your patience
20    this afternoon.  I know it's been a long afternoon.
21              CONGRESSMAN BROOKS:  Judge, if I might add, I'm
22    happy to get you a copy of the Ethics Committee complaint by
23    Congresswoman Jayapal and the Ethics Committee ruling, if
24    you so wish it.  If this had been in person, I would have
25    handed it to you.
```

1          THE COURT:  Yeah, why don't you go ahead and do

2     that.  I was going to ask you to do that.  And if you want

3     to submit both of those either to the Clerk of the Court by

4     email, or I don't know if you've got access to the ECF

5     system, we'll make sure it gets on the record.

6          CONGRESSMAN BROOKS:  Thank you, Judge.

7          THE COURT:  Thank you, sir.

8          All right.  Why don't we turn now to counsel for

9     Congressman Swalwell, and then we'll hear argument on

10    Westfall certification.

11         MR. PITTARD:  Good afternoon, Your Honor.  This is

12    Bill Pittard for Congressman Eric Swalwell.

13         I have spoken to counsel for the Department of

14    Justice, Mr. Boynton.  And while we're happy to do it

15    however you like, we thought it might make sense for you to

16    hear from him next --

17         THE COURT:  Okay.

18         MR. PITTARD:  -- in that that's the way the

19    certification process normally works, right?  The employee

20    who is seeking certification --

21         THE COURT:  That's fine.  I'm happy to turn to the

22    Department first.

23         So, Mr. Boynton.

24         MR. BOYNTON:  Good afternoon, Your Honor.  May it

25    please the Court.  Brian Boynton from the Department of

1    Justice.

2            As we explained in our brief, we believe

3    Mr. Brooks's petition for certification should be denied

4    because he was acting outside of the scope of his employment

5    when he gave a speech on January 6th at the rally.

6            It's a bedrock principle of our democracy that the

7    government must remain strictly neutral with respect to

8    elections.  This ensures that taxpayer dollars and

9    government resources are not used to advantage one candidate

10   over another.  Consistent with this principle, it's

11   well-established that campaign activity is outside of the

12   scope of employment for government officials.

13           Your Honor asked Mr. Brooks a couple of times

14   whether he disputes this basic proposition about whether a

15   campaign activity is outside of the scope of employment.

16   We do not believe he has disputed that.  He disputes that

17   his speech constituted campaign activity, and we're happy to

18   discuss that, but the initial question of whether campaign

19   activity is inside the scope of employment or outside, we

20   don't understand any of his briefs to be contesting the

21   proposition that it's outside.  We think that's

22   well-established policy.

23           THE COURT:  Can I ask you this:  If he gave a

24   speech that day that explained, announced how he would be

25   proceeding during the Electoral College certification and

1    the reasons for it, would you agree that that would be

2    within the scope of his employment?

3              MR. BOYNTON:  Assuming it was not a speech at a

4    Trump campaign rally and was just --

5              THE COURT:  Well, why does that matter?

6              I mean, the Supreme Court has recognized that

7    Congressmen/women make speeches outside of the halls of

8    Congress all the time, and location -- I mean, one of the

9    cases I guess that's a First Amendment case -- excuse me,

10   the First Circuit case involved the speech that Senator

11   Kennedy gave in the immediate aftermath of a fundraiser.

12   So I don't know how much the location carries weight.

13             MR. BOYNTON:  So we think the location and the

14   context of the speech is relevant to the consideration.

15             Obviously, the content of the speech is also

16   relevant.  The *Operation Rescue* case that you mentioned from

17   the District of Massachusetts, we actually think supports

18   this proposition.  Although the Court doesn't get into this

19   in much depth, the plaintiff in that case argued that the

20   speech was out of scope because it was at a campaign

21   fundraiser.

22             The Court makes a point of noting that actually

23   the remarks at issue occurred afterwards.

24             THE COURT:  Right.

25             MR. BOYNTON:  The *Murtha* case from the

1  D.C. Circuit similarly, obliquely addresses this issue.

2  There, the Court noted that there was an affidavit in the

3  record that the interviews at issue were not

4  campaign-related interviews.

5       The case law we've cited is unchallenged --

6       THE COURT:  I'm sorry, Mr. Boynton, let me just

7  ask -- because I think everybody's sort of reading from the

8  same playbook when it comes to the cases, there aren't that

9  many of them, I think we all have read them.  But let me

10  just go to the Congressman's speech itself, and I want to

11  read a portion of it to you that he's put into the record.

12       He said:  "Today is also a day of revelation and

13  separation.  Today, the curtain will be pulled back and

14  American patriots will learn by their votes which Republican

15  senators and congressmen have the courage to fight for

16  America.  Today, by their votes, Americans will learn which

17  Republican congressmen and senators love their bourbon, love

18  their cigars, love their prestige, love their personal

19  power, love their special interest group money more than

20  they love America.

21       "Because today, Republican senators and

22  congressmen have a simple choice.  Today, Republican

23  senators and congressmen will either vote to turn America

24  into a godless, amoral, dictatorial, oppressed and socialist

25  nation on the decline or they will join us and they will

1   fight and vote against voter fraud and election theft and

2   vote to keep America great."

3           "Now, I can't speak for anyone else, but I promise

4   you, as for me, Mo Brooks from Alabama's 5th congressional

5   district, I will vote and fight for America on the House

6   floor."

7           And then he says:  "Let's be clear, regardless of

8   the outcome, the 2022 and 2024 elections are right around

9   the corner."

10          So that portion that I just read, why isn't that

11  portion of the speech entirely consistent with Congressman

12  Brooks's duties as a congressman, which is that it can be

13  read to essentially announce what he is going to do that

14  afternoon in furtherance of his constitutional and statutory

15  duties, and to some extent maybe it can be read as

16  encouraging his colleagues to vote consistently with him.

17          Why can't it be read that way?  And if it is read

18  that way, why is it not within the scope of his employment?

19          MR. BOYNTON:  So I think it can be read that way.

20  And, in fact, I think that's what he was doing.  He was

21  encouraging other lawmakers to vote to reject Electoral

22  College votes so that Donald Trump could be declared the

23  winner of the 2020 election.

24          The language is somewhat oblique, but I think

25  that's how it is best read, and that's how we understood it.

1    And we believe that to be campaign activity, not activity

2    within the scope of his employment.

3              It's certainly true --

4              THE COURT:  How do I separate that?

5              It's acknowledged and there's no doubt that he had

6    a constitutional and statutory duty he was going to carry

7    out that afternoon.  And he was explaining, or at least

8    announcing in this speech, I think he had done it by Twitter

9    previously, how he intended to vote and was urging, as

10   you've just said, other Congressmen to do the same.

11             You mean to be saying that he's stripped of his

12   Westfall -- or he's stripped of the protection of the

13   Westfall Act; one, because this was a campaign rally

14   arguably; and, two, because a member of his party would have

15   benefited from the vote if it had gone as he was arguing it

16   should be.

17             I mean, it doesn't seem to me the basis to say

18   that his speech was outside the scope, at least based on

19   those two factual distinctions.

20             MR. BOYNTON:  We disagree respectfully,

21   Your Honor.

22             We believe that the fact that this was at a

23   campaign rally and he was advocating for the election of

24   President Trump with these remarks at a President Trump

25   rally does make this campaign activity.

1        Now, it's certainly true that in his role as a

2   Congressman, he could make an objection, and when he did, he

3   was acting within the scope.

4        And the lawsuit, though, doesn't challenge his

5   vote on the House floor, and so --

6        THE COURT:  Say he had said words that I just

7   recited to you.  Say he had walked out on the front of the

8   Capitol steps before the riot, and in front of a bank of

9   cameras, said what I just said, what would be the

10  Department's position in that circumstance?

11       MR. BOYNTON:  So I think that would be a different

12  circumstance, Your Honor, if this was not at a campaign

13  rally, and particularly if he was focused just on what he

14  was going to do, if he said, I plan to vote this way, that

15  would be a very different case.  Here, though, the remarks

16  were at a rally, and he was urging other lawmakers to reject

17  Electoral College votes so that Donald Trump could be

18  declared the winner.

19       Now, a couple of the cases that we've cited touch

20  on this basic issue.  What do you do when you have remarks

21  that are delivered at a campaign event, but the remarks are

22  about the official's public duties?  Does that make it an

23  official-capacity event?

24       And the two cases that address this say no.  One

25  is the *Williams versus Gordon* case from the Ninth Circuit,

1   where the then-Attorney General was talking about actions he

2   took as Attorney General against Williams and Williams's car

3   dealerships.  And the content of what he was saying was

4   about government actions, in fact, official actions he had

5   taken.  But the context of the remarks were part of a

6   campaign event; he was running to be re-elected.

7           The *Glacken* case from EDNY is similar.  It was a

8   mayor running for re-election.  And his remarks also focused

9   on things he had done as mayor and official-capacity issues.

10  But because they were given as part of a campaign event,

11  that's outside of the scope.

12          THE COURT:  Does it matter that in both of those

13  cases, the speech, as it referred to the acts of the

14  officeholder, were retrospective; in other words, the person

15  was summarizing what they had done, whereas in this speech,

16  Congressman Brooks was arguably -- it was prospective, he's

17  saying what I am going to do; and, in fact, what I'm going

18  to do this very afternoon when I'm on the House floor.

19          MR. BOYNTON:  We don't think that makes it

20  different.

21          It's certainly true that -- so let me back up a

22  half a step.

23          There's nothing improper about him giving these

24  remarks.  A member of Congress can engage in campaign

25  activity, it's just not within his scope of employment, his

```
1    or her scope of employment when the Congressperson does so.
2            And so there's nothing that stops Mr. Brooks from
3    making this speech at the Trump rally, and there's certainly
4    nothing that would have stopped him from making it
5    separately from this rally.  But when he chooses to make
6    remarks advocating for the election of Donald Trump at a
7    Trump rally, we think that's best deemed to be campaign
8    activity.
9            Separate from the portion of the speech dealing
10   with the vote on the Electoral College votes, there's also
11   the portion of the speech that Mr. Brooks says relates to
12   the 2022 and 2024 elections.
13           THE COURT:  Right.
14           MR. BOYNTON:  One thing that's --
15           THE COURT:  So can I -- go ahead.
16           MR. BOYNTON:  So one thing that I think is
17   important is, Mr. Brooks points to a key passage of this
18   speech in his affidavit when he explains what he was talking
19   about was the 2022 and 2024 elections.
20           You were looking at paragraph 47 of his affidavit
21   previously.  Paragraph 46 is also very important.  That's
22   where he responds to paragraph 108 of the Swalwell
23   complaint.  And paragraph 108 of the Swalwell complaint sets
24   forth the language that -- if any language in the speech is
25   tortious, this is the language that's most likely to be
```

1    tortious.

2           Now, we haven't taken a position on whether any of

3    the language in the speech is tortious; that's not at issue

4    here.  But if any of it were going to be, the language that

5    it would be where he says, "Today is important in another

6    way.  Today is the day American patriots start taking down

7    names and kicking ass."  And then he continues on and he

8    asks the rallygoers, are you willing to sacrifice your

9    lives?

10          Now, that's the portion of the speech quoted in

11   paragraph 108.  Mr. Brooks's response in paragraph 46 is,

12   well, no, I was talking about the 2022 and 2024 elections.

13          THE COURT:  Right.

14          MR. BOYNTON:  We think there's no dispute that the

15   portion of his remarks dealing with those elections are

16   campaign activities.

17          He points to the fact that he wasn't talking about

18   particular individuals who were going to be in particular

19   elections because at that point he didn't know who would be

20   in those elections, but the Ethics Committee report and the

21   Rogers report we cite in our brief deals with that issue.

22          THE COURT:  Mr. Boynton, can I ask you one

23   additional question about this?

24          I think I've heard you acknowledge that at least a

25   portion of the speech was intended to convey what

1   Congressman Brooks was going to do that afternoon.

2   And I think I heard you say that if, perhaps, that's all

3   there was and if it was in a different location, then maybe

4   you would have taken a different position.

5           But doesn't the case law suggest that all the

6   Congressman needed to have as a motive was he would in part

7   be attempting to carry out functions of his office to

8   receive protection under the Westfall Act and how the scope

9   of employment is considered under the Restatement?

10          MR. BOYNTON:  So we don't think that's correct.

11  Mr. Brooks makes that argument.

12          THE COURT:  Right.

13          MR. BOYNTON:  He's focused on the third prong of

14  Section 228 of the Restatement, which looks at whether the

15  activity was actuated, at least in part, for the purpose of

16  serving the master.

17          THE COURT:  Right.

18          MR. BOYNTON:  There's two other prongs to the

19  Restatement.  And to be within scope, you have to fall

20  within all three prongs.

21          The first prong is the one we focused on

22  primarily, where the activity has to be of the kind the

23  person who's employed to perform.  And we think that because

24  this is campaign activity, it was not of the kind he's

25  employed to perform.  So the fact that, in part, he had in

1   his mind a purpose of serving the master doesn't take --
2   doesn't put this in scope.
3           He makes another argument that is related to this
4   point in his brief.  He looks at the *Ballenger* case and the
5   *Murtha* case.  And he notes that the courts there say, the
6   fact that the person engaged in an intentional tort doesn't
7   take it outside of the scope of employment.  Yes, no one
8   hires someone to engage in an intentional tort.  But that's
9   not what you look at, you look at the activity that was
10  being undertaken out of which the intentional tort arose.
11          We agree that that's the standard here, but we
12  don't think that means that if just a single portion of the
13  activities might be deemed to be in scope, that the entire
14  speech has to be deemed in scope.
15          Under the House --
16          THE COURT:  Hang on, Mr. Boynton, I'm going to ask
17  you to wrap up, just because we're now approaching the five
18  o'clock hour and I've got one more subject I need to get
19  through quickly.
20          But if I could just ask one more question as a
21  procedural -- actually, two questions as a procedural
22  matter.  The first if is, in terms of how this works in
23  terms of burden, the Department of Justice has not
24  certified, is that, in your view, simply a burden
25  shifting -- burden-shifting effect, or is there any

1    evidentiary weight I'm supposed to give under the case law

2    to the Department of Justice's decision not to certify?

3              MR. BOYNTON:  There's no evidentiary weight,

4    Your Honor, that does have the effect of shifting the

5    burden, under the *Sala* case and the *Lyons* case we cited in

6    our brief.

7              THE COURT:  Okay.  Good.  I just wanted to get

8    that clarified.

9              And then the second question is, if I were to rule

10   that Congressman Brooks was acting within the scope of his

11   employment, the U.S. should be substituted at least with

12   respect to the tort claims here -- and I need to make sure

13   Congressman Brooks agrees with that or at least acknowledges

14   that -- am I right that those tort claims would have to be

15   dismissed because, at least on this record, there's been no

16   presentation of a tort claim under the Tort Claims Act?

17             MR. BOYNTON:  So that's correct, Your Honor.

18   As far as we know, there's been no administrative claim,

19   which is a prerequisite to bringing a suit under the FTCA.

20             THE COURT:  All right.

21             All right.  Thank you, Mr. Boynton.  I appreciate

22   your argument.  I appreciate the Department of Justice

23   providing a brief in this case.  It was very helpful.  Thank

24   you very much.

25             MR. BOYNTON:  Thank you, Your Honor.

1          THE COURT:  Thank you for your argument.

2          Okay.  Does plaintiff's counsel want to add

3    anything?  I think Mr. Boynton has covered a fair amount of

4    the territory here.

5          MR. PITTARD:  Yes, Your Honor.  Thank you for

6    hearing from us.

7          As you've heard, Congressman Brooks would like to

8    have the United States substituted in his place here.  He'd

9    have to -- he'd like to walk away from this case, to be

10   excused from this case, and to leave the United States in

11   his place as the defendant.

12         THE COURT:  Right.

13         So, Mr. Pittard, I'm going to interrupt you

14   because it's 5:00.  And you've waited a long time, I know,

15   but if there are arguments you want to make that go to

16   specific legal issues or factual issues, I'm happy to hear

17   them.  But sort of the wind-up, it's a little too late in

18   the day for that.  So I'll just ask you to be focused in

19   your remarks.

20         MR. PITTARD:  Great.  I will try to do that.

21   I apologize.

22         THE COURT:  That's okay.

23         MR. PITTARD:  The point I'd like to make there is

24   simply that there's an irony, a great irony, of course, in

25   what Congressman Brooks is asking the Court to do, right, to

 1   have the United States, one of the primary victims here,

 2   take his responsibility in this case.

 3             And that irony, respectfully, that sort of

 4   absurdity of that ask, I think, tells a lot about it.

 5   And the law doesn't support it.  That's why the House has

 6   rejected it, that's why the Department of Justice has --

 7             THE COURT:  Well, to be clear, the House --

 8   I'm not sure that they've rejected it, but there's a letter

 9   in the record, I understand that, but I don't know that

10   that's the position of the House.

11             But in any event, go ahead.

12             MR. PITTARD:  Well, Your Honor, I think that's an

13   important point and I'd like to address that, because

14   I think it is true that the House has rejected it.

15             The way that the House handles FTCA matters and

16   certification matters is they delegate that to their

17   Committee on House Administration.  And that's the entity

18   that reached the conclusion here and provided the three- or

19   four-page letter that's in the record.

20             I worked for a number of years in the House

21   General Counsel's Office.  In that role, we, all the time,

22   provided advice to the Committee on House Administration on

23   FTCA matters.  That was something we did routinely.  And we

24   would prepare memos that explained why our advice was X or Y

25   as to particular certification requests.

1           And the Committee on House Administration, like

2     all clients, would sometimes simply defer to our

3     recommendation and would oftentimes push back on it, and

4     ultimately it would be the committee that would reach the

5     determination.

6           That issue, Your Honor, is important here,

7     I think, because, of course, when the House speaks, and

8     particularly when the House speaks on its own rules and its

9     own regulations, as it is here, about whether those rules

10    indicate that Mr. Brooks was acting within the scope or

11    outside the scope of his official duties, that determination

12    is entitled to weight from this Court, all right?

13          The Supreme Court --

14          THE COURT:  Is that true insofar as -- I mean,

15    I would agree with you that the House's interpretation of

16    its own rules would be entitled to deference as a legal

17    matter, but in terms of the House's application of fact to

18    those rules, that's entitled to deference?

19          MR. PITTARD:  Your Honor, I think in applying the

20    rules here, you have the same result, the same point, right,

21    because the House committee has looked at the facts and has

22    said, look, the law is that --

23          THE COURT:  Right.

24          But you don't mean to say that the fact that --

25    and honestly, I don't know whether I'll have to go back and

1  look whether the House -- whether the letter I have before

2  me was written by the chairwoman, in her capacity as

3  chairwoman alone, or whether she was writing that letter on

4  behalf of the committee in its entirety.

5          I mean, I don't understand, for example, am I

6  wrong that this was just in her capacity as chairwoman and

7  the she wasn't writing on behalf of the committee as a

8  whole?

9          For example, I don't know that the committee had

10  voted on that letter.

11          MR. PITTARD:  Your Honor, I don't believe the

12  committee did vote on it.

13          THE COURT:  Okay.  All right.

14          MR. PITTARD:  Nor do I think that the committee

15  needed to, and certainly it would not be normal practice for

16  the committee to do so.  Rather, the chair of the committee

17  typically makes these decisions, and that's what happened

18  here.

19          And so I think that's an important point, and

20  it's, at the very least, quite persuasive on, is this

21  conduct that is within the scope of a member's duties.

22          And the congressman makes the point that, look,

23  members speak all the time about a wide variety of things,

24  including public-policy things.  And this is an issue that

25  you had a colloquy back and forth with Mr. Boynton about.

1          THE COURT:  Could I ask you this?  I should have

2     asked the government this.

3          The government's position seems to be that any

4     statements that are made at a campaign-type event are

5     outside the scope of employment.  Is that your view as well,

6     that even if what the Congressman in this case did was sort

7     of project forward as to what he was going to do, the fact

8     it was in the context of a campaign rally makes it outside

9     the scope of his employment?

10         MR. PITTARD:  Yes, Your Honor, that is exactly our

11    view.

12         THE COURT:  Okay.

13         MR. PITTARD:  The fact that he is -- that part of

14    his remarks are about a public-policy event does not answer

15    for us whether he is acting in a campaign capacity or an

16    official capacity, and, therefore, does not answer for us

17    whether he's acting within the scope or not.

18         Folks at campaign rallies all the time talk about

19    policy issues.  That's fine, right?  But the key is, are you

20    acting in your official capacity or are you acting in the

21    quintessential nonofficial capacity, which, for a member, is

22    their campaign capacity.

23         That's why we have all these rules and regulations

24    defining exactly when they're in one versus the other.

25    That's why we have a 60-page chapter in the House Ethics

1   Manual about campaign conduct and the fact that you need to

2   segregate that.

3           THE COURT:  Okay.

4           MR. PITTARD:  So here --

5           THE COURT:  So, Mr. Pittard, you'll have to

6   forgive me because it is late in the day.  So if there is

7   anything new you want to add, I'll hear it, but I really

8   would like to try and bring this to a close, because I've

9   got a very tired court reporter who I need to give a break

10  to as well.

11          MR. PITTARD:  Okay.  I'll make two short points,

12  if I could.

13          THE COURT:  Okay.

14          MR. PITTARD:  One, to follow up on the

15  Congressman's citation of an action of the Ethics Committee,

16  the Ethics Committee, as Your Honor may well know, is

17  divided evenly between the parties; two members from the

18  Democratic Party, two members from the Republican Party.

19          My understanding is it requires a majority vote to

20  move forward for any motion to carry in that committee, and,

21  therefore, we should not be surprised that the Ethics

22  Committee did not take further action on the complaint that

23  he references.

24          And furthermore, I'm not sure at that time --

25  he said that the complaint was submitted just a few days

1    after January 6th.  I'm not sure at that time it was clear

2    that the Congressman had used official resources to do this

3    campaign thing, so they may not have been aware of that.

4          In any event, I think what's important and the

5    Court should focus on that issue is what did the Committee

6    on House Administration, all right, the entity that's been

7    delegated the authority by the House to make the decision on

8    these FTCA matters, what did that committee do, and you have

9    that in the record.  That's my first point.

10         My second point is to follow-up on something that

11   Mr. Boynton noted, where he noted that in Section 228(1) of

12   the Restatement, there are three requirements, and the

13   Congressman needs to meet all three to carry his burden

14   here, all right?

15         I want to point out to Your Honor that part of the

16   law under D.C., black letter law, is also Section 228(2) and

17   Section --

18              THE COURT:  Refers to location, right?

19              MR. PITTARD:  Well, "too little actuated."

20              THE COURT:  Oh, right, right.

21              MR. PITTARD:  Right?

22         It says that even if part of your purpose is to do

23   something official, that doesn't qualify you, that doesn't

24   meet the third prong in 228(1), right, because it can still

25   be too little actuated.

1          So, for example, the Congressman, I know, argued

2    in his reply brief that, well, maybe the President,

3    then-President Trump, in his last two weeks in office, would

4    have pulled 50,000 federal jobs out of my district in

5    Alabama, right, and so that was why I did what I did.

6          And, Your Honor, as the D.C. Circuit cases make

7    clear, you are charged with making an objective

8    determination based on all the facts -- all the facts and

9    circumstances.  And here, you can make that determination

10   and look at the actual evidence, which is his affidavit,

11   where he swears he was doing this for election purposes, he

12   emphasizes "elections" by capitalizing it, by bolding it, by

13   underlining it, and by italicizing it, and you can make a

14   determination whether it was too little actuated.

15          THE COURT:  Can I ask you one question?

16          MR. PITTARD:  Of course.

17          THE COURT:  The D.C. Circuit in *Ballenger*,

18   I believe, wrote, "Although the scope of employment is

19   generally a question for the jury, it becomes a question of

20   law for the Court; however, there's not sufficient evidence

21   from which a reasonable juror could conclude that the action

22   was within the scope of the employment."  And I guess that

23   would sort of be flipped a little bit here, would be to

24   conclude that the action was without the scope of the

25   employment in this case.

1          So what is the burden that you think the

2     Congressman has to satisfy here in order for me to determine

3     as a matter of law at this stage that he is entitled to

4     certification?  Because it's got to be something more than

5     plausibility, I assume.  What does he have to show, in your

6     view, at this stage?

7               MR. PITTARD:  He needs to show, on all the facts

8     and circumstances that he presents, that he was acting

9     within the scope, right, and the House, that the entity that

10    he worked for, said no.

11              THE COURT:  So I'm sorry to interrupt, but, for

12    example, on a motion for summary judgment, we would ask,

13    well, is there any genuine dispute of material fact?  And

14    even then if there are no genuine disputes of material fact,

15    could a jury infer only one legal conclusion?

16              And I think the question I have for you is:

17    Is that the standard I ought to be thinking about for

18    purposes of this motion at this stage of the case or is it

19    something more favorable to the plaintiffs' burden?

20              MR. PITTARD:  Your Honor, I'm not sure the cases

21    speak with a lot of clarity as to what exactly the standard

22    is.

23              My understanding is that it is Congress's burden

24    to convince you now that he was acting within the scope.

25    And I think he has failed to do that when you look at his

1   own affidavit, where he has sworn to you, paragraph 20, that

2   this was a Donald Trump rally, and where he has sworn to you

3   that he was doing this to affect elections, that was

4   paragraph 46 that I just quoted to you, where he emphasized

5   it.

6          And finally, I'll quote two more, if I could, from

7   his affidavit; one is also in paragraph 46, where he swore

8   to you, Your Honor, "My intent in uttering these words was

9   to encourage the Ellipse Rally attendees to put the 2020

10  elections behind them, and, in particular, the preceding

11  day's two GOP Senator losses in Georgia, and to start

12  focusing on the 2022 and 2024 elections."  So that's him

13  swearing what his intent was.

14         And the last one I'll proffer is paragraph 50 from

15  his affidavit, where he swears to you that he wanted the

16  Ellipse Rally attendees to do exactly three things, and he

17  says, one, I wanted them to chant U.S.A., he says; two,

18  I wanted them to, "take down the names of those Congressmen

19  and Senators they want to beat in the 2022 and 2024

20  elections."  And then the third thing he wanted them to do,

21  the reason he was speaking at the rally, "In the 2022 and

22  2024 elections, beat, kick the ass of those Congressmen and

23  Senators whose names were taken down because they did not

24  vote the way Ellipse Rally attendees believe they should

25  vote."  So on that record, I think it's very clear the

1    capacity in which he was acting.

2            THE COURT:  Okay.

3            All right.  Thank you, Mr. Pittard, I appreciate

4    your argument.

5            Congressman Brooks, I'll give you --

6            CONGRESSMAN BROOKS:  No more than two minutes,

7    please.

8            THE COURT:  Sure.

9            Before we do that, I want to make sure you

10   understand and are in agreement with me that the Westfall

11   Act only extends to the tort claims against you and not to

12   the statutory violations?

13           CONGRESSMAN BROOKS:  I have no information to the

14   contrary, Your Honor.

15           THE COURT:  Okay.  All right.

16           CONGRESSMAN BROOKS:  First, I would like to

17   respond to the comments that this was a campaign rally.

18           I've been in politics for a long time, four

19   decades, and I would submit to the Court that there's no

20   evidence to support that.  The campaign for election ended

21   on November 3rd, that was the last day to cast votes.

22   Everything after that was a legal proceeding, it was an

23   election contest.  So I would submit that that's different

24   from an actual campaign rally as that term is meant.

25           Second, I would ask the Court to scrutinize the

1   portion of my brief relating to governing ethics rules and

2   advisory comments, and I think the Court will conclude that

3   no ethics laws were violated as the Ethics Committee

4   determined.

5          Third, the reasons for my speech, if you go

6   through my affidavits, you will find that they are

7   multifaceted, there is no one particular reason, rather,

8   there were many for my having given that speech.

9          And then finally, the part about taking down names

10  of people you disagree with, that sounds like to me an

11  admission, on the part of the plaintiffs, that this was not

12  to inspire people to attack the Capitol; and if they so want

13  to stipulate, then let's go to it.

14          THE COURT:  All right.  Thank you, Congressman.

15          CONGRESSMAN BROOKS:  Thank you, Your Honor.

16          THE COURT:  I appreciate your arguments here this

17  afternoon.

18          Okay.  We've got one more topic to cover, it's

19  very late, and I want to give -- Bill, how are you doing?

20  I want to give you a little bit of a break here and we'll

21  finish up by 6:00.

22          COURT REPORTER:  That's fine.  Give me two

23  minutes.

24          THE COURT:  All right.

25          It's now 20 after, I'm going to give you five.

```
 1    If you need more, let me know.
 2              COURT REPORTER:  No.  That's fine.
 3              THE COURT:  Are you sure?
 4              COURT REPORTER:  Yes.
 5              THE COURT:  Okay.
 6              So we'll resume at 5:25 on that last topic
 7    concerning the common-law claims and the D.C. statutory
 8    inferences and we'll go from there.  Thank you, everyone.
 9              (Recess from 5:20 p.m. to 5:27 p.m.)
10              THE COURT:  Okay.  Welcome back, everybody.
11    So let's head into the home stretch and try and get through
12    this very quickly.
13              I think how I'm going to do this is I've got some
14    very specific questions I want to ask.  If there are
15    arguments that people want to make on top of that, I'll hear
16    you, but I do want to get to these questions first, and
17    we'll go from there.  And I actually want to start with
18    plaintiffs' counsel instead of with the defense.
19              So let me start with the Swalwell case first, and
20    who should I be addressing on these issues?
21              MR. ANDONIAN:  Your Honor, I'll be addressing
22    these issues.
23              THE COURT:  Okay.
24              Mr. Andonian, I'm having trouble hearing you.
25    I don't know if --
```

1              MR. ANDONIAN:  Is this better?

2              THE COURT:  There you go.  Yeah, that is better.

3              MR. ANDONIAN:  I'm sorry, I'm just too far away.

4              THE COURT:  That's okay.

5              I want to understand your negligence counts;

6      I don't quite understand how they've been pled.

7              In Count 3, you've got a negligence per se claim;

8      Count 4 is a negligence per se claim, both rely upon

9      D.C. Code provisions; and then negligence -- and then

10     Count 9 is a negligence claim that's standing alone.

11             Help me understand what you're trying to plead

12     here.  I mean, negligence per se, the statutory violations

13     go to the question of standard of care and they inform the

14     question of standard of care, separate and apart from duty.

15     We'll talk about duty in a moment.

16             But if I were to conclude or am I being asked to

17     conclude or find at this point that the statutes you've

18     cited for purposes of Counts 3 and 4 are sufficient to

19     establish or inform the standard of care?  And if I don't

20     agree with you, am I supposed to dismiss those counts at

21     this point?

22             MR. ANDONIAN:  Well --

23             THE COURT:  Or essentially are all these three

24     counts just rolled into one and that if you've established a

25     negligence claim, we'll figure out what the standard of care

1   is and what's relevant to that later down the road?

2         MR. ANDONIAN:  Well, Your Honor, I think the way

3   to look at it is, you know, if you conclude the underlying

4   statutory violation for Counts 3 and 4, then it is

5   negligence per se, in the sense that there was a clear

6   breach of the duty of the standard of care and then

7   we believe we've adequate --

8         THE COURT:  Right, it would be a clear breach of

9   the standard of care; I guess that's what I meant.

10         MR. ANDONIAN:  Right.

11         And then --

12         THE COURT:  But why do I need to make that

13   decision now?

14         In other words, I mean, if there is a duty, and

15   that seems to me to be the bigger question, I mean, I think

16   the breach of the duty is an easier call, at least at the

17   motion-to-dismiss stage.

18         MR. ANDONIAN:  Well, I -- sure.

19         I mean, I guess -- we might be circling around the

20   same point.

21         But I mean, I guess I would look at Count 9 as

22   more of a broader fallback if, for whatever reason, the

23   Court didn't address the issues in Counts 3 and 4.

24         But I think it's all coming from the same place,

25   which is, what the defendants did to contribute to what

1    happened, which we allege proximately caused the harm our

2    clients suffered, is -- you know, satisfies the elements of

3    negligent.

4            To the effect extent you use, as a predicate, the

5    statutory violations that we allege, I guess it just -- it

6    saves some steps in the analysis, although we would not --

7            THE COURT:  I mean, it's not clear to me that

8    D.C. law supports the view that you seem to be pushing

9    forward, at least on these negligence per se claims, that

10   the mere violation of a criminal statute constitutes

11   negligence per se; in other words, you know, it's only a

12   limited kind of statute that informs the standard of care,

13   and it's public -- you know, it's public protection statutes

14   and statutes that provide a particular type of conduct.

15           And these statutes that you've cited are just

16   essentially prohibitory; that is, they prohibit a certain

17   kind of conduct, they don't prescribe conduct somebody must

18   engage in, which is typically what we're talking about when

19   we're talking about negligence per se, right?  It's -- you

20   know, you have to take the following steps to avoid injury

21   to the public, and you failed to take those steps and,

22   therefore, you're negligent per se.  And so I think this is

23   an unusual use of negligence per se, I would submit to you.

24           MR. ANDONIAN:  Your Honor, I understand where

25   you're coming from.

1            I guess our position is that the law with respect

2     to the statutory violation involves public-safety related --

3     or public protection or public welfare.

4            THE COURT:  But every criminal statute is a

5     public-safety protection.  I mean, I can't think of a

6     criminal statute that can't be.  Perhaps maybe not make --

7     making a false statement, I guess, perhaps, that may not be.

8            But the vast majority of criminal statutes that we

9     ordinarily think of, they don't, you know, criminal assault,

10    that doesn't establish a negligence per se standard.

11           MR. ANDONIAN:  Well, Your Honor, I guess what

12    I would say about that is, I'm being a little bit more

13    narrow in the use.  Yes, to the extent that everyone gets

14    the protection of criminal statutes that prevent against

15    specific bodily injury, you could widen the lens that far to

16    include it.

17           I guess what I mean is specifically, statutes that

18    are designed to protect the greater welfare.  I mean, you

19    know, for example, the murder statutes -- you know, a

20    statute prohibiting murder doesn't necessarily, you know,

21    address a whole bunch of people at one time, as opposed to

22    one putative victim after another.

23           Here, disorderly conduct and incitement are

24    uniquely targeted at preventing public unrest or more

25    widespread lawlessness that could lead to greater harm to a

```
 1   greater swath of people all at once.
 2           And to the extent negligence can be construed from
 3   a violation of those particular statutes, it follows,
 4   because to the extent you're engaged in conduct that
 5   definitionally puts, you know, the public at large in danger
 6   literally because of the nature of the statutes, then the
 7   actions in committing those statutory violations, which,
 8   again, lead to harm that was proximately caused by the
 9   conduct, I think that's how we get our negligence claim
10   here.
11           I mean, I guess if we were talking about a
12   different statutory --
13           THE COURT:  Well, let me -- you know, I'm not sure
14   the statutes establish a standard of care, but let's move
15   on -- to a different issue, because I wanted to get your
16   view on, let me move on to a different issue, and that's the
17   issue of duty which the defendants have raised and whether
18   they owed a duty to Congressman Swalwell.  And this
19   obviously extends to the Congressman in the -- I'm sorry, to
20   Congressman Swalwell, and arguably to the police officers as
21   well, so that's something we need to discuss.
22           But I mean, you've sort of suggested in your
23   briefing that sort of the standard foreseeability analysis
24   is what defines the duty here, but I don't think that's
25   right.
```

1                You know, because there is criminal conduct here

2      by a third party, what the D.C. Court of Appeals has said is

3      that ordinarily, there is not a duty to prevent a third

4      party from engaging in criminal conduct; however, there is a

5      duty only if there's a heightened showing of foreseeability

6      in the context of intervening criminal acts involving the

7      discharge of weapons and just generally in terms of criminal

8      conduct.

9                And so the question is, how do we get to a

10     heightened degree of foreseeability here based upon the

11     allegations at least as to Congressman Swalwell?

12               And the reason I ask is that the Court of Appeals

13     in -- D.C. Court of Appeals in both *Sigmund* case --

14     I'm sorry, it's *Bd. of Trustees of Univ. versus Disalvo*,

15     974 A.2d 868, and then the D.C. Circuit in the *Sigmund* case,

16     617 F.3d 512, now they take up a very narrow view of what

17     that means, and it's both temporal and geographic.  In other

18     words, have similar instances of criminal conduct occurred

19     that would have put the person on notice of the possibility

20     of future criminality, and I think that arguably includes

21     the victims of the criminal conduct.

22               And so here, you know, while there are allegations

23     in the complaint that I'm sure would be pointed out in the

24     *Blassingame* case of violence involving police officers and

25     Trump supporters, there's nothing like that with respect to

1    Congressmen.

2           And so isn't that enough to defeat -- or the

3    absence of such an allegation sufficient to defeat any kind

4    of duty that this would not be foreseeable -- that this kind

5    of criminal conduct would not have been foreseeable even

6    from his speech?

7           MR. ANDONIAN:  Well, I guess, no.

8           I mean, our point -- I mean, this kind of goes

9    back on our allegations generally.

10          I mean, the point of all of what the defendants

11   did, we allege in the complaint, was specifically to

12   interfere with the count that was happening with the joint

13   session through threats, intimidation, or force.

14          So I guess at the outset, I would disagree that

15   the analysis necessarily turns on whether or not there were

16   intervening acts.  I think our first point would be, there

17   are no intervening acts.  The acts of the people who stormed

18   the Capitol were directly related, they were the weapons as

19   you -- as it were that the defendants deployed to carry out

20   what they were trying to do.  But if you were -- so, I mean,

21   hard stop, that's our primary point.

22          If you --

23          THE COURT:  Right.

24          Your point is that the intervening criminal act

25   principle doesn't apply here because, at least according to

1   your allegations, he was a participant in those acts?

2           MR. ANDONIAN:  Right.

3           I mean, either a participant in those acts, a

4   co-conspirator in those acts, and/or he specifically incited

5   those acts.

6           But either way, it's not the same situation as

7   when you have -- you know, the first thing that comes to

8   mind with third-party liability is premises liability cases,

9   where you've got somebody who's truly independent that does

10  something that the issue then becomes is that foreseeable

11  enough such that --

12          THE COURT:  I guess the question that I have is,

13  if that's the theory, then how does every criminal case not

14  collapse into a negligence cause of action?

15          In other words, I mean, you only seem to be

16  suggesting that the fact that somebody is aspiring to either

17  commit a tort or commit a criminal violation automatically

18  means that the criminal injury or the injury is foreseeable.

19          You know, in the case of somebody who's in a bar

20  fight, it can't be that -- there's some inconsistency

21  between intentional torts and negligence.  So what you've

22  alleged is an intentional tort, right?  And so how does that

23  fit within a theory of negligence?  Because the person who

24  hits somebody else in a bar fight, I don't think anybody

25  thinks that that person was negligent in striking somebody

1   else.

2          MR. ANDONIAN:  Well, yeah.

3          And, again, Your Honor, I think that's why our

4   first point primarily is that we are -- we're talking about

5   the direct acts of the defendants, and that's why, you know,

6   in our bias-crimes count --

7          THE COURT:  Hang on.

8          Are your negligence claims alternative claims?

9          In other words, if the jury were to find, for

10  example, that there was no intentional act here, that they

11  would reject your claim of conspiracy, is it your

12  alternative pleading and theory that, nevertheless, even if

13  there was not intentional conduct, that the President was

14  negligent by his words here, and, therefore, the third-party

15  intervening -- it actually would matter then in that case,

16  because I just don't understand how he can be both part of a

17  conspiracy and be subject to a negligence claim, because

18  those two things don't make sense.

19         MR. ANDONIAN:  Well, again, I think, here, there's

20  two issues.  As I said earlier, there's obviously a lot of

21  factual overlap.

22         But with respect to the negligence claims based on

23  the statutory violation, you could have, under our theory

24  the way we've pled it, it's independent of the conspiracy

25  claim.

1          Again, if you take our facts as pled and you were

2     to credit them, then --

3          THE COURT:  That doesn't make sense, because both

4     of those underlying criminal statutes require intentional

5     conduct themselves; in other words, you know, those are

6     still effectively intentional torts the way you've pled

7     them, right?

8          MR. ANDONIAN:  Sure.

9          THE COURT:  If you violate those criminal

10    statutes, at least the way those statutes are framed, those

11    are intent statutes.  They all -- I think they all involve

12    some kind of specific intent to engage in them.

13         MR. ANDONIAN:  Right.

14         So then I guess to your point then, if you want to

15    look at it as an alternative, in the event that all other

16    allegations that we've made surrounding intentional conduct

17    were rejected, then our point -- I guess we would then get

18    to what it is that the defendants did to create the special

19    environment in which the harm occurred.

20         And here, unlike the bar-fight example, to take

21    the hypothetical you pose, you know, this is a much

22    different scenario.  Again, I guess if we're just talking

23    about purely ignoring the intentionality -- or the

24    intentional law violations, I mean, the creation of an

25    environment where everyone is directed to a specific place

```
 1   at a specific time and they're fomented to be acting in a
 2   specific way --
 3                THE COURT:  Right.  Okay.  I think that then
 4   brings in this question again of third-party criminal
 5   conduct and a heightened foreseeability standard and whether
 6   there's a duty required.
 7                All right.  I think I get it.
 8                The next question concerns Count 5 and the bias
 9   claim, and I think the bias claim is based on political
10   affiliation.  I guess I don't understand what that means in
11   this context.
12                I mean, the allegation is that he sent people off
13   to interfere with Congress's conduct writ large as
14   Congresspeople and not as Republicans or Democrats.  So I
15   don't understand, what's the political affiliation that you
16   pled in this context?
17                MR. ANDONIAN:  I think it's two separate things.
18                It's either party affiliation, as there were
19   numerous instances that we pointed out in the complaint
20   where all of the defendants were specifically naming, you
21   know, either -- I'm just using the phrases without pegging
22   it to the specific paragraph.  But, you know, weak-kneed
23   Democrats or Socialist Democrats, I think, was a favorite of
24   Mr. Brooks, you know, or RINOs, you know, Republicans In
25   Name Only.
```

1          And to the extent that there were individuals

2    targeted because of their political affiliation --

3          THE COURT:  But that would include everybody.

4          I mean, I guess there are a couple of independents

5    on the Hill, but, otherwise, that's everybody.  You're not

6    excluding anybody by saying "political affiliation."

7    There's two parties.  And I guess there's one or two --

8    maybe a handful of independents on the Hill.

9          MR. ANDONIAN:  That might be true, and I don't

10   know that that necessarily -- that presents any problem.

11         THE COURT:  It just seems to me to prove too much.

12         MR. ANDONIAN:  Well, but the second reason then,

13   Your Honor, is -- and perhaps this will sit better.  The

14   case out of the District Court from 2019, *Kurd versus*

15   *Republic of Turkey* --

16         THE COURT:  Right.

17         MR. ANDONIAN:  -- it very clearly states a

18   political affiliation is broad enough to encompass simply

19   anti-politician sentiment; in that case, anti-Kurdism.

20         Here, if nothing else, we have, we believe, more

21   than plausibly alleged that whatever the exact words were,

22   the target clearly were people who were not with Trump, who

23   were not, you know, pro Trump, or who are anti-Trump, in the

24   way that the defendants viewed them.

25         THE COURT:  Right.  Okay.

1              All right.  Last question concerns Count 6 and 7,

2      your intentional infliction and negligent infliction claims.

3              Tell me how you've established or pled severe

4      emotional distress, that's what's required for intentional

5      infliction.  For negligent infliction, it requires serious

6      and verifiable, in other words, sort of acute, enduring, or

7      life-altering.

8              I've looked very closely at the complaint, and

9      while I don't want -- for a minute want to minimize what the

10     Congressmen experienced that day, I'm not sure it gets to

11     severe emotional distress, which is usually something that's

12     associated with a physical -- at least under the case law,

13     requires some association with physical injury or physical

14     harm.

15             MR. ANDONIAN:  Well, I guess I don't know that I

16     totally agree with that.

17             I mean, I think the intentional infliction of

18     emotional distress body of cases, you know, typically

19     revolves around the discussion of -- even assuming it's

20     emotional harm, whether or not the circumstances give rise

21     to sufficient facts that could plead it, and admittedly it's

22     a tough standard.  I mean, there are any number of cases in

23     a variety of contexts where pretty bad conduct or shocking

24     conduct has been found to fall short, and I guess in that

25     regard what I would say is, this case on its facts as we

1   have pleaded --

2         THE COURT:  I mean, this is what the

3   D.C. Circuit -- I mean, D.C. Court of Appeals said in

4   *Ortberg versus Goldman Sachs*, 64 A.3d 158, high standard for

5   requiring emotional -- for emotional distress.

6         "Emotional distress of so acute a nature that

7   harmful physical consequences might be not unlikely to

8   result.  Recovery is not allowed merely because conduct

9   causes mental distress.  'Embarrassment and difficulty' do

10   not approach the level of foreseeable harm essential to

11   establish potential tort liability."  A person

12   intentionally -- some worrying and concern's not enough, "so

13   long as she refrains from conduct intended or likely to

14   cause physical illness."

15         So there is some physical component to it, and

16   there hasn't been any allegation that Representative

17   Swalwell suffered any.

18         MR. ANDONIAN:  Well, Your Honor, I don't -- well,

19   at this stage what we've pleaded, I think, is the emotional

20   distress stemming from the facts that we allege, and I don't

21   think that that forecloses any, you know, allegation --

22   inference or any more fleshing out of the injury.

23         But I guess what I would say to the cases is,

24   certainly emotional distress that is so severe as to cause

25   physical manifestations of symptoms, would tend to be in the

1   category of extreme and outrageous, as the test goes.

2          But the cases, if you look at the facts, I think

3   they almost always are surrounding conduct and it's almost

4   always in the workplace or, you know, at -- you know, the

5   workplace is the main situation, where there's interactions

6   that lead to somebody having a specific reaction.  And I

7   view the way the language that you read as a way to

8   articulate how ordinary angst or ordinary feelings of

9   distress or discomfort aren't enough to rise to extreme and

10  outrageous.

11         But I think the main point --

12         THE COURT:  I think -- I mean, look, I think there

13  are two separate inquiries, and I guess -- I'm not

14  suggesting that they're not related, because obviously the

15  more outrageous the conduct, the more likely it is to result

16  in severe emotional distress.

17         MR. ANDONIAN:  And that's the point that I would

18  want to end on, is that the critical part of the pleadings

19  here and the argument we're making is that the conduct here

20  is so clearly beyond the pale and well beyond the cases.

21         THE COURT:  All right.

22         Thank you, Mr. Andonian.

23         MR. ANDONIAN:  Thank you, Your Honor.

24         THE COURT:  Let me see.  Do I have Mr. Malone?

25  There you are.  Just a quick question for you.

1          I want to -- you pled in Counts 4 and 5 violation

2    of public safety statute, inciting to riot; Count 5,

3    violation of public safety statute, disorderly conduct.

4          I guess I'm not quite sure what you've pled.

5    Are you pleading negligence per se cases claims there or are

6    you suggesting that you somehow got a private right of

7    action under these statutes that have been violated that

8    you're trying to remedy?

9          MR. MALONE:  The statutes provide the standard of

10   care, as you said before, but the standard of care can be

11   violated either intentionally or negligently.

12         We pled these as intentional or I intend to --

13   I intended to say intent.

14         THE COURT:  So are these negligence claims or are

15   they something else?

16         MR. MALONE:  No.

17         THE COURT:  They are not.

18         MR. MALONE:  I did not mean them to be negligence

19   claims.  I meant them to be essentially a common law

20   version.  Because the common law incorporates statutory

21   violations, a common law --

22         THE COURT:  It doesn't -- I don't understand that.

23         I mean, just because somebody violates a law

24   doesn't mean that there's then a common law right of action.

25         MR. MALONE:  No, I disagree with you.  People

1   always have a duty to follow the law.

2         The reason to -- that we put statutes in the

3   complaint is actually -- and I think this goes to, perhaps,

4   also the Swalwell thing as well.  The breach of a duty

5   imposed by a statute stands on a different ground than a

6   breach of a common-law duty.

7         THE COURT:  But those are negligence claims.

8         And, you know, if you say that a breach of a

9   statute or a breach of an administrative rule, those are

10  oftentimes simply negligence claims in which you're trying

11  to inform the standard of care with the statute or the

12  regulation.

13        I don't think there's any freestanding claim that

14  arises under the common law every time somebody violates

15  something, whether it's intentional or not.  You've got to

16  still tie it to a common-law tort.

17        MR. MALONE:  The degree of the wrongful conduct --

18  you're not immunized if your conduct is so outrageous that

19  it goes beyond mere negligence into the realm of

20  intentionality.

21        THE COURT:  I'm not suggesting that.  I'm just

22  trying to understand what the vehicle is for the claim.

23        Again, you just told me it's not a common law

24  negligence claim.  You told me it's not a private right of

25  action under these statutes, so I don't know what the

```
 1   vehicle is.
 2            MR. MALONE:  Well, it's common law wrongful
 3   conduct.  The common law --
 4            THE COURT:  I've never heard of such a tort.
 5            MR. MALONE:  Well, there are gradations of
 6   wrongful conduct.  You can be negligent, you can be
 7   reckless, you can be intentional.
 8            This would give rise to the punitive damages claim
 9   as well.  We have that separate, but it really segues into
10   that.
11            THE COURT:  Okay.  All right.  So those are the
12   questions that I had of plaintiffs' counsel.
13            Mr. Binnall and --
14            MR. MALONE:  I'm sorry, I didn't finish the one
15   thought.
16            THE COURT:  Yep.
17            MR. MALONE:  I was just going to say, the reason
18   to get into statutes as providing standard of care is that
19   there's a long line of D.C. cases that say that the breach
20   of a duty imposed by the statute makes the defendant not be
21   able to rely on common-law defenses of contributory
22   negligence.
23            THE COURT:  I keep saying this:  There are no
24   context of some claim in the context of a negligence claim,
25   for example.
```

1          MR. MALONE:  Well, it can be --

2          THE COURT:  And maybe I'm just missing it and

3    maybe you have to cite me a case, but this notion that

4    there's sort of some free-floating cause of action for a

5    statutory violation, I just don't get it.  I mean, I'm not

6    seeing it and don't know where it's coming from.

7          Maybe I'm not understanding what you're saying or

8    pleading.  But, you know, if you've got a common law claim

9    of negligence from which you want to rely on a statutory

10   violation as a breach of standard of care, okay, I get that.

11   If the statute has a private right of action for a

12   violation, I get that, too.

13         But just, you know, this free-floating notion that

14   if somebody violates a law and you're injured by it without

15   some recognized vehicle for bringing a claim, I don't

16   understand that at all.

17         MR. MALONE:  I think we're two ships passing in

18   the night here.

19         Part of it is that I'm trying to say that, yes,

20   this could be a negligence cause of action, but we have

21   conduct that's a lot worse than negligence, so why would

22   that conduct be immune from suit?  That's where I'm not

23   following Your Honor.

24         THE COURT:  Okay.

25         Well, I guess I'm just -- I don't quite understand

```
 1    what the argument is here.
 2              I mean, again, just because you've violated a
 3    statute doesn't mean you've got a right of action.
 4              MR. MALONE:  I disagree.
 5              I think you do have a --
 6              THE COURT:  Just by virtue of any violation of any
 7    statute --
 8              MR. MALONE:  No, public safety statutes that are
 9    intended to protect a certain group of plaintiffs.
10              THE COURT:  So, look, I will ask you to submit to
11    me a case or cases that stand for the proposition that
12    independent of a negligence claim or any other common law
13    tort or private right of action, that the mere violation of
14    a statute gives rise to a claim, okay?
15              MR. MALONE:  And I'm telling you that we're
16    alleging -- this is like a negligence per se claim, except
17    it's negligence on steroids.
18              THE COURT:  Okay.
19              As I said, I'll give you the opportunity, you've
20    told me it's not a negligence claim, so I'm trying to figure
21    out what it is.
22              MR. MALONE:  Okay.  Thank you.
23              THE COURT:  If there's some case out there that
24    supports what you've suggested, please send it to me,
25    because I'll not getting my head around it, okay?
```

1          All right.  So for the plaintiffs, would you like

2    to be heard on any of this?  I think primarily the arguments

3    that you've made covered some of it, I think most of it's

4    covered by the First Amendment issues, but if there's

5    anything specific you wanted to address, I'm happy to hear

6    it.  At this point, we're going on 6:00.

7          MR. BINNALL:  Your Honor, I think you probably

8    meant defendants.

9          THE COURT:  Yes, the defendants.

10         MR. BINNALL:  The hour is late and I do

11   understand, Your Honor.

12         I think the Court has framed the issues on this

13   well and we've briefed the issues well.  So unless the Court

14   has any other questions on this, then --

15         THE COURT:  I do have one question for you --

16         MR. BINNALL:  Yes, Your Honor.

17         THE COURT:  -- which is, I have -- the *Halberstam*

18   aiding-and-abetting issue, you've suggested that there is no

19   common-law claim for aiding and abetting or no common-law

20   liability, I should say, for aiding and abetting in the

21   District of Columbia.

22         That issue, that question is an open question for

23   the D.C. Court of Appeals, but the D.C. Circuit has

24   predicted that under D.C. law that there is such a claim.

25   Am I not bound by the D.C. Circuit's prediction that there

1    is such a claim, even though the D.C. Court of Appeals has

2    not affirmatively ruled on it?

3            MR. BINNALL:  You are bound, I'd say, only by the

4    Court of Appeals opinions on this, Your Honor.  And since it

5    is only predictive from the Circuit, then that is not

6    binding in this case since we're --

7            THE COURT:  So you think that the Circuit's

8    predictive decisions or predictive rulings are not binding

9    on me?

10           MR. BINNALL:  The protective rulings, I think, are

11   more akin to dicta at that point, Your Honor.

12           THE COURT:  Okay.

13           MR. BINNALL:  And so the binding aspect for state

14   law claims, or D.C. claims in this case, would be from the

15   Court of Appeals.

16           THE COURT:  Yeah.

17           Okay.  All right.  Anything else?

18           MR. MALONE:  May I just be heard on that one

19   little point?

20           THE COURT:  Yeah.

21           MR. MALONE:  The Trump reply brief was the first

22   time to raise this issue about *Halberstam*.  And they

23   miscited the case of *Flax versus Schertler*, a

24   D.C. Court of Appeals decision --

25           THE COURT:  Right.

1          MR. MALONE:  -- which was just about legal

2  malpractice and whether it was not -- or not -- it was legal

3  malpractice to -- for a lawyer to fail to assert a claim of

4  aiding and abetting.

5          THE COURT:  Right.

6          MR. MALONE:  But *Halberstam* still stands.  You

7  said as much in the *Energy Fund* case you had a few years

8  ago, end of story.

9          THE COURT:  Right.  Yeah.  That's right.

10          I mean, I've written on this topic in the *EIG*

11  decision -- I don't have a case citation, but, nevertheless,

12  that at least was my view at the time, and other judges have

13  ascribed to that as well; that is, we are bound by the

14  predictive judgments of the D.C. Circuit.  I'm not going to

15  revisit that.

16          Okay.  All right.  I think that brings us to a

17  close after a lot of argument and a lot of interesting

18  discussion.  We will get to the business of getting a

19  decision, and we will work quickly.

20          I want to thank everybody for being here this

21  afternoon.  I know there are a number of Congresspeople who

22  are on the line today and have been here with us all

23  afternoon, so thank you for being here, and thank you for

24  your interest in the case.  Obviously you're parties, but

25  taking this time out underscores the importance of it to me

1   and anybody that has been watching this afternoon or

2   listening in.

3            Thank you, all, very much.  And with that, we will

4   stand adjourned and we'll get you out a decision as soon as

5   we can.  Thank you, everyone.

6            (Proceedings concluded at 6:00 p.m.)

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.

        Please note:  This hearing occurred during
the COVID-19 pandemic and is therefore subject to the
technological limitations of court reporting remotely.


Date:__January 13, 2022____     _____

                                William P. Zaremba, RMR, CRR

**CONGRESSMAN BROOKS: [22]** 142/5
142/15 142/23 142/25
145/7 147/8 147/11
147/15 148/2 148/7
149/5 149/13 149/18
150/9 151/16 153/5
153/21 154/6 177/6
177/13 177/16 178/15

**COURT REPORTER:**
**[4]** 141/17 178/22
179/2 179/4

**COURTROOM DEPUTY: [2]** 5/2 5/4
**MR. ANDONIAN: [35]**
41/22 104/9 105/15
106/23 107/18 108/15
108/19 109/17 110/2
110/5 110/16 114/8
179/21 180/1 180/3
180/22 181/2 181/10
181/18 182/24 183/11
186/7 187/2 188/2
188/19 189/8 189/13
190/17 191/9 191/12
191/17 192/15 193/18
194/17 194/23

**MR. BINNALL: [104]**
7/6 7/18 8/19 8/24 9/13
9/16 9/18 10/13 11/2
11/22 12/4 12/9 13/4
14/1 14/16 15/12 15/19
15/24 16/1 17/3 18/17
19/25 20/14 21/5 22/10
23/1 23/7 23/23 24/15
44/3 45/2 47/8 47/21
47/23 48/15 63/5 63/8
64/12 65/7 65/18 65/24
66/14 67/16 67/23 68/3
68/6 68/13 68/18 69/1
69/6 69/8 69/24 70/4
71/1 71/5 71/8 71/15
72/4 72/24 73/16 73/18
73/23 74/6 74/20 74/22
75/9 76/12 77/2 77/7
77/25 78/5 78/10 78/14
79/6 114/11 114/13
115/13 115/24 116/6
116/16 117/2 120/14
121/6 121/12 121/25
122/3 123/8 124/22
125/11 125/22 126/8
127/21 128/8 128/13
128/16 128/19 129/15
139/3 200/7 200/10
200/16 201/3 201/10
201/13

**MR. BOYNTON: [17]**
154/24 156/3 156/13
156/25 158/19 159/20
160/11 161/19 162/14
162/16 163/14 164/10
164/13 164/18 166/3
166/17 166/25

**MR. MALONE: [35]**
39/19 40/2 40/19 41/2
100/6 101/11 101/15
102/21 103/1 103/9
109/2 140/20 140/24
195/9 195/16 195/18
195/25 196/17 197/2
197/5 197/14 197/17
198/1 198/17 199/4
199/8 199/15 199/22
201/18 201/21 202/1
202/6

**MR. MOSELEY: [16]**
6/11 39/18 80/2 81/12
81/14 81/18 81/25
82/15 82/19 83/5
117/11 117/14 118/18
119/2 119/5 119/15

**MR. PITTARD: [19]**
154/11 154/18 167/5
167/20 167/23 168/12
169/19 170/11 170/14
171/10 171/13 172/4
172/11 172/14 173/19
173/21 174/16 175/7
175/20

**MR. SELLERS: [78]**
24/19 24/22 25/5 27/14
28/8 29/14 31/3 32/6
32/10 32/19 35/11
35/23 37/10 37/18
38/16 38/22 39/22 84/9
84/17 84/20 85/16 86/4
86/23 86/25 87/3 88/5
88/8 88/22 89/19 89/21
90/9 90/25 91/3 91/12
91/16 91/24 93/4 93/6
93/8 93/19 94/13 95/7
96/9 97/11 97/16 97/21
97/25 98/3 98/11 98/22
99/5 99/8 99/15 100/2
131/25 133/7 133/15
133/19 134/4 134/8
134/18 135/9 135/17
136/8 136/14 137/4
137/8 137/12 138/8
138/11 138/13 138/16
138/18 139/8 139/13
139/17 139/20 140/1

**MR. SIBLEY: [27]**
48/19 49/22 49/25
50/10 50/12 50/17
52/11 53/17 54/21
55/11 55/22 56/19 57/4
57/8 58/2 58/16 59/23
61/2 61/16 62/18 63/3
110/20 111/20 112/2
113/6 130/22 130/25

**THE COURT: [360]**

**'**

**'Embarrassment [1]**
193/9

**0**

**05 [1]** 152/3

**1**

**10 [3]** 1/5 69/19 151/21
**100 [1]** 150/19
**106 [1]** 117/25
**108 [3]** 162/22 162/23
163/11
**1099 [1]** 2/13
**11 [2]** 14/24 152/9
**1100 [2]** 2/4 2/9
**110263 [1]** 3/8
**1108 [1]** 3/8
**12 [10]** 14/16 14/18
23/23 23/25 46/1 60/14
60/15 69/19 118/8
118/13
**1208 [1]** 4/4
**1230 [1]** 3/18
**125 [1]** 102/4
**127 [1]** 102/15
**128 [1]** 98/25
**12th [2]** 29/18 143/10
**13 [1]** 204/10
**1310 [1]** 2/19
**138 [1]** 98/8
**1420 [1]** 3/12
**14th [1]** 2/13
**15 [1]** 143/11
**150-plus [1]** 79/19
**1500 [1]** 2/20
**158 [1]** 193/4
**16 [1]** 152/15
**16B [1]** 152/10
**180 Democrat [1]**
143/24
**184 [1]** 118/7
**19 [1]** 204/6
**1943 [1]** 3/5
**1984 [2]** 33/5 33/11
**1985 [25]** 18/10 37/23
48/8 48/24 50/23 64/1
65/8 66/2 73/2 73/21
74/3 75/5 75/13 76/1
76/25 84/6 84/12 84/21
85/23 85/24 99/23
100/13 107/2 109/1
115/18
**1:09 [1]** 1/6

**2**

**20 [3]** 62/16 176/1
178/25
**20-some-odd [1]** 60/17
**200 [1]** 3/4
**2000 [1]** 143/24
**20001 [1]** 4/13
**20003 [1]** 4/4
**20005 [5]** 2/5 2/10 2/14
2/20 3/13
**2006 [1]** 145/20
**2009 [1]** 146/9
**2016 [1]** 144/2
**2019 [1]** 191/14
**202 [7]** 2/5 2/10 2/14
2/20 3/13 4/8 4/13
**2020 [3]** 143/16 158/23
176/9
**2021 [2]** 151/21 152/5
**2022 [11]** 1/5 147/24
152/23 158/8 162/12
162/19 163/12 176/12

**2024 [9]** 147/24 152/23
158/8 162/12 162/19
163/12 176/12 176/19
176/22
**20530 [1]** 4/7
**21-400 [2]** 1/4 5/5
**21-586 [2]** 1/10 5/6
**21-858 [1]** 1/16
**21-CV-858 [1]** 5/8
**22015 [1]** 3/18
**22314 [1]** 3/4
**228 [4]** 164/14 173/11
173/16 173/24
**26 [1]** 60/18
**26K [1]** 152/13
**2850 [1]** 2/14
**2:57 [1]** 84/2

**3**

**30 [2]** 33/25 47/5
**315 [1]** 2/9
**3249 [1]** 4/13
**333 [1]** 4/12
**337 [1]** 3/17
**35 [2]** 98/8 98/22
**354-3249 [1]** 4/13
**3:00 [2]** 83/16 83/19
**3:10 [2]** 83/20 84/2
**3rd [4]** 13/20 14/3 15/7
177/21

**4**

**4.01 [1]** 101/17
**40 [1]** 33/25
**400 [2]** 1/4 5/5
**4015 [1]** 4/8
**408-4604 [1]** 2/5
**429-6520 [1]** 3/13
**46 [4]** 162/21 163/11
176/4 176/7
**4604 [1]** 2/5
**47 [2]** 148/18 162/20
**476 [1]** 136/21
**482 [1]** 118/7
**489 [1]** 136/21
**4:17 [1]** 102/2

**5**

**50 [3]** 143/6 153/8
176/14
**50,000 [1]** 174/4
**50-plus [1]** 143/7
**500 [1]** 2/4
**500,000 [1]** 144/14
**508 [1]** 136/21
**512 [1]** 185/16
**514-4015 [1]** 4/8
**5765-F [1]** 3/17
**586 [2]** 1/10 5/6
**5:00 [1]** 167/14
**5:20 [1]** 179/9
**5:25 [1]** 179/6
**5:27 [1]** 179/9
**5th [2]** 108/2 158/4

**6**

**60 [1]** 141/5
**60-page [1]** 171/25

**601 [1]** 95/1

**617 [1]** 185/16
**64 [1]** 193/4
**640-2850 [1]** 2/14
**6520 [1]** 3/13
**656-1230 [1]** 3/18
**66 [1]** 108/2
**6789 [1]** 3/9
**6:00 [3]** 178/21 200/6
203/6
**6th [48]** 7/24 9/10
11/15 14/6 14/12 18/11
19/3 23/10 25/19 25/23
27/5 29/4 34/4 53/3
53/5 57/5 58/23 64/3
64/3 65/16 81/9 82/2
104/6 104/16 104/19
104/21 104/23 105/14
105/17 105/23 106/14
106/17 107/7 107/7
107/9 107/17 108/6
110/13 128/5 140/11
142/21 145/5 145/14
149/8 151/19 152/5
155/5 173/1

**7**

**7.04 [2]** 101/6 101/15
**703 [2]** 3/5 3/18
**713 [1]** 3/9
**717 [1]** 3/3
**74 [1]** 107/19
**742-1500 [1]** 2/20
**78701 [1]** 3/3
**7:00 [2]** 97/9 99/1

**8**

**800 [2]** 2/13 2/19
**858 [2]** 1/16 5/8
**868 [1]** 185/15
**88 [2]** 54/13 94/17
**888-1943 [1]** 3/5
**8:00 [1]** 99/10

**9**

**90 percent [1]** 145/10
**950 [1]** 4/7
**953-9850 [1]** 2/10
**966-6789 [1]** 3/9
**974 A.2d [1]** 185/15
**9850 [1]** 2/10

**A**

**A.2d [1]** 185/15
**A.3d [1]** 193/4
**abetting [6]** 88/11
88/14 200/18 200/19
200/20 202/4
**abide [1]** 36/16
**ability [5]** 29/5 39/10
79/18 79/18 132/8
**able [11]** 16/5 17/13
23/18 23/24 46/12
70/16 95/10 122/8
130/13 130/14 197/21
**ably [1]** 30/1
**about [150]** 10/2 11/7
12/21 13/2 15/3 16/6
19/6 19/9 19/14 22/4

**A**

**about... [140]** 22/5 23/4 26/6 27/12 28/9 28/11 29/10 29/11 30/25 31/7 36/19 37/13 40/4 42/5 43/17 43/21 44/4 48/22 50/1 50/22 52/2 52/9 52/18 53/12 55/15 55/16 57/12 59/8 59/10 60/3 60/16 60/17 61/15 61/16 62/11 62/16 64/9 65/1 65/4 65/23 67/2 68/17 69/16 69/19 69/21 69/22 71/13 71/14 72/6 72/6 72/10 72/11 73/3 74/11 76/18 79/17 80/5 80/18 81/24 83/19 83/19 83/25 84/12 84/13 84/23 85/8 85/21 86/17 90/22 92/24 93/12 94/8 96/14 99/15 100/3 101/16 101/17 101/22 102/8 103/7 103/7 103/12 103/13 103/22 104/15 108/20 109/20 111/6 112/23 114/16 115/4 116/9 117/8 118/12 120/9 120/16 123/18 126/2 126/11 132/11 132/12 132/21 132/25 136/2 139/2 139/3 139/5 139/9 140/3 141/1 146/13 148/1 151/3 155/14 160/22 161/1 161/4 161/23 162/19 163/12 163/17 163/23 168/4 169/9 170/23 170/25 171/14 171/18 172/1 175/17 178/9 180/15 182/18 182/19 183/12 184/11 188/4 189/23 201/22 202/1

**above [1]** 204/4

**above-titled [1]** 204/4

**absence [2]** 88/25 186/3

**absentee [1]** 144/18

**absolute [5]** 11/21 15/11 17/18 18/14 101/3

**absolutely [8]** 13/24 20/12 27/22 29/24 72/24 86/25 101/21 144/20

**absurdity [1]** 168/4

**abundantly [1]** 145/17

**accept [5]** 34/19 147/5 150/4 151/6 151/12

**acceptable [2]** 24/22 25/3

**acceptance [5]** 55/6 55/7 67/13 67/25 68/10

**accepted [7]** 53/4 53/8 56/14 56/16 57/2 82/13 100/12

**accepting [3]** 78/3 78/9

**access [1]** 154/4

**accident [1]** 107/11

**accord [1]** 152/13

**accorded [1]** 31/21

**according [4]** 14/10 54/7 64/20 186/25

**account [2]** 22/2 130/9

**accounting [1]** 33/13

**accuracy [2]** 128/25 143/16

**accurate [2]** 130/4 149/2

**accused [3]** 54/24 83/13 83/14

**achieve [1]** 7/23

**acknowledge [2]** 135/23 163/24

**acknowledged [2]** 149/23 159/5

**acknowledges [1]** 166/13

**acknowledgment [1]** 148/4

**acquitted [1]** 16/22

**across [4]** 49/9 49/21 90/2 95/22

**act [37]** 10/15 15/3 15/11 33/18 34/11 38/25 39/1 40/7 42/8 43/22 44/22 50/18 50/25 52/23 53/20 60/13 60/17 67/18 71/10 71/17 85/3 86/8 88/16 88/17 89/11 100/22 108/14 108/21 143/5 146/11 153/11 159/13 164/8 166/16 177/11 186/24 188/10

**acted [2]** 89/11 143/4

**acting [17]** 17/8 41/6 41/6 146/25 147/2 155/4 160/3 166/10 169/10 171/15 171/17 171/20 171/20 175/8 175/24 177/1 190/1

**action [54]** 5/5 5/6 5/7 17/9 19/7 19/11 19/17 19/19 26/20 27/22 29/4 29/6 29/9 30/20 34/17 36/2 36/6 38/9 43/2 47/20 47/21 52/7 57/16 62/25 65/5 70/15 71/9 74/3 88/25 89/2 96/19 106/1 115/23 116/3 116/5 116/8 116/10 136/17 137/20 143/15 152/16 172/15 172/22 174/21 174/24 187/14 195/7 195/24 196/25 198/4 198/11 198/20 199/3 199/13

**actionable [16]** 21/14 26/21 59/1 63/16 64/4 65/9 69/2 69/11 70/8 100/12 106/12 108/7 114/19 114/21 123/25 125/7

**acronims [25]** 17/24 17/25 19/5 23/1 25/17 25/19 26/2 26/9 31/5 31/10 31/14 32/1 32/1 32/3 32/12 34/13 38/4 63/17 70/14 104/1 125/6 161/1 161/4 161/4 184/7

**active [1]** 66/4

**actively [1]** 11/5

**activities [10]** 25/22 33/2 33/20 36/10 46/22 63/25 105/11 151/11 163/16 165/13

**activity [32]** 18/12 31/6 32/21 33/1 33/1 33/24 34/3 34/5 34/11 36/11 36/18 46/5 46/7 73/3 73/3 74/11 147/3 149/25 150/7 155/11 155/15 155/17 155/19 159/1 159/1 159/25 161/25 162/8 164/15 164/22 164/24 165/9

**actor [2]** 82/12 82/13

**acts [28]** 8/18 8/20 8/25 17/21 25/11 25/13 25/18 26/25 31/23 40/24 44/19 51/14 56/2 59/13 73/14 80/25 122/20 122/23 161/13 185/6 186/16 186/17 186/17 187/1 187/3 187/4 187/5 188/5

**actual [7]** 8/14 51/14 53/25 59/13 88/19 174/10 177/24

**actually [24]** 9/20 46/19 48/15 49/22 51/7 80/16 80/20 85/24 89/11 104/25 113/8 113/18 114/4 120/20 120/20 125/25 136/18 142/3 156/17 156/22 165/21 179/17 188/15 196/3

**actuated [4]** 164/15 173/19 173/25 174/14

**acute [2]** 192/6 193/6

**add [17]** 7/2 37/9 37/17 41/21 62/17 74/6 80/1 80/3 89/14 109/10 109/18 114/10 130/20 131/1 153/21 167/2 172/7

**added [2]** 64/23 77/18

**adding [1]** 77/19

**addition [3]** 101/23 101/24 102/12

**additional [2]** 89/16 163/23

**address [22]** 12/12 12/14 19/13 32/13 37/15 37/16 38/6 45/10 62/20 84/14 85/10 88/4 103/5 103/6 112/5 148/15 153/10 160/24 168/13 181/23 183/21

**addressed [1]** 85/2

**addresses [3]** 122/15 136/22 157/1

**addressing [3]** 38/17 179/20 179/21

**adequate [1]** 181/7

**adequately [3]** 46/14 81/6 85/4

**adjourned [1]** 203/4

**adjudicate [1]** 128/25

**administered [4]** 32/23 33/25 36/14 37/3

**administration [5]** 48/5 168/17 168/22 169/1 173/6

**administrative [3]** 36/13 166/18 196/9

**admission [1]** 178/11

**admittedly [2]** 42/9 192/21

**admonition [1]** 84/21

**adopting [1]** 77/8

**adopts [1]** 9/3

**advantage [3]** 16/20 112/25 155/9

**adversary [1]** 41/18

**advice [2]** 168/22 168/24

**advisors [1]** 101/25

**advisory [1]** 178/2

**advocating [9]** 12/16 12/17 19/1 19/4 20/4 45/16 148/11 159/23 162/6

**affect [1]** 176/3

**affects [1]** 119/15

**affidavit [9]** 147/19 148/19 157/2 162/18 162/20 174/10 176/1 176/7 176/15

**affidavits [1]** 178/6

**affiliation [7]** 127/3 190/10 190/15 190/18 191/2 191/6 191/18

**affirmatively [2]** 89/12 201/2

**afforded [1]** 150/3

**afraid [1]** 18/5

**after [28]** 6/8 12/13 13/20 14/3 15/7 23/18 30/8 31/12 43/19 60/15 68/25 88/24 89/5 93/20 95/2 95/11 97/9 102/5 114/21 116/17 118/4 125/19 148/23 173/1 177/22 178/25 183/22 202/17

**aftermath [2]** 126/6 156/11

**afternoon [26]** 5/2 5/3 5/21 5/24 6/17 48/19 97/1 98/19 100/9 100/18 102/3 142/12 148/17 149/4 153/20 153/20 154/11 154/24 158/14 159/7 161/18 164/1 178/17 202/21

**afterwards [6]** 27/20 95/6 111/9 112/18 125/6 156/23

**again [30]** 16/10 16/21 19/15 19/20 31/22 34/18 35/3 35/7 37/2 65/25 68/20 79/17 102/15 105/22 107/4 107/22 108/6 125/13 136/14 146/16 151/6 151/12 184/8 188/3 188/19 189/1 189/22 190/4 196/23 199/2

**against [23]** 8/10 20/17 32/12 39/11 61/20 61/22 61/24 62/2 71/23 80/12 80/20 105/1 117/6 117/20 118/10 127/22 132/6 151/23 153/7 158/1 161/2 177/11 183/14

**agency [3]** 101/5 101/16 115/7

**agent [2]** 17/8 99/1

**agent's [2]** 101/4 101/5

**agents [1]** 37/1

**ago [1]** 202/8

**agree [27]** 8/18 11/20 13/14 13/16 22/25 25/12 57/6 57/14 66/8 67/15 67/21 81/16 90/18 92/25 93/8 93/9 96/22 103/20 104/10 115/19 129/8 133/23 156/1 165/11 169/15 180/20 192/16

**agreed [2]** 67/12 70/2

**agreement [9]** 51/19 51/21 51/24 52/2 61/1 71/20 81/10 96/6 177/10

**agreements [2]** 92/4 116/19

**agrees [2]** 152/19 166/13

**ahead [16]** 6/20 7/15 37/15 37/16 38/13 44/2 50/16 81/15 89/19 89/20 91/2 93/7 142/24 154/1 162/15 168/11

**aided [1]** 4/15

**aiding [7]** 88/11 88/14 152/4 200/18 200/19 200/20 202/4

**aired [1]** 108/11

**akin [1]** 10/8 201/11

**al [12]** 1/3 1/6 1/8 1/11 1/14 1/17 5/5 5/6 5/7 5/7 5/8 152/3

**AL-05 [1]** 152/3

**Alabama's [1]** 158/4

**Alabama, [1]** 174/5

**Alabama, right [1]** 174/5

**Alden [1]** 3/15

**Alexandria [1]** 3/4

**all [154]** 6/15 6/24 8/3

all... [151]  9/20 12/6
13/6 14/3 14/8 16/13
20/20 21/20 22/13
24/13 25/5 25/8 28/15
29/16 34/10 36/16 37/7
37/19 38/2 39/15 39/25
41/11 42/18 42/21
43/22 45/25 48/17 49/7
49/9 51/2 51/4 51/24
52/2 53/12 55/24 55/25
56/6 62/15 70/6 72/1
72/10 73/17 76/17 77/7
78/5 79/22 80/5 81/18
82/24 83/9 83/15 84/15
85/2 87/11 88/15 91/4
93/8 96/25 99/24
100/17 100/24 101/21
104/20 104/22 104/24
107/13 108/7 108/23
108/23 108/25 109/10
109/12 109/12 109/16
109/23 110/7 110/15
114/7 114/14 114/18
115/22 116/4 117/7
117/16 119/16 123/9
123/18 128/7 128/9
128/12 128/20 130/19
130/25 131/15 131/23
132/3 133/23 140/11
140/19 141/13 141/18
143/12 143/18 144/14
145/1 150/16 152/25
153/18 154/8 156/8
157/9 164/2 164/5
164/20 166/20 166/21
168/21 169/2 169/12
170/13 170/23 171/18
171/23 173/6 173/13
173/14 174/8 174/8
175/7 177/3 177/15
178/14 178/24 180/23
181/24 184/1 186/10
189/11 189/11 189/15
190/7 190/20 192/1
194/21 197/11 198/16
200/1 201/17 202/16
202/22 203/3
all right [11]  73/17
83/15 84/15 109/16
130/25 166/20 170/13
173/6 173/14 200/1
201/17
all-encompassing [1]
21/20
allegation [39]  14/15
23/16 23/21 24/9 35/8
54/16 60/13 71/13
71/14 81/7 82/1 89/24
90/2 90/10 90/16 90/22
94/18 97/8 97/17
100/16 105/6 107/15
111/18 111/21 111/23
112/23 113/9 121/5
121/16 129/4 129/10
135/12 137/9 141/1
141/2 186/3 190/12
193/16 193/21

allegations [51]  9/6
13/19 14/10 14/11
14/23 20/17 24/1 28/17
34/20 49/9 49/15 49/18
49/20 50/1 50/5 50/7
54/12 54/14 55/23 67/7
70/24 71/18 71/22 80/6
80/9 80/13 80/23 82/23
89/4 90/20 91/8 97/13
99/16 103/7 105/1
108/17 108/18 111/25
116/8 117/20 118/10
141/5 143/8 145/11
153/7 153/8 185/11
185/22 186/9 187/1
189/16
allege [19]  24/3 28/13
50/23 75/11 88/14
88/15 90/12 96/25
96/25 99/18 106/6
110/1 110/10 115/2
134/12 182/1 182/5
186/11 193/20
alleged [35]  15/3 15/5
23/5 23/6 23/11 35/14
35/19 36/1 37/21 50/21
54/7 61/1 68/8 68/14
68/22 72/20 72/22 75/6
80/16 81/14 81/16
90/13 92/12 103/16
103/23 112/20 121/18
128/3 128/14 128/17
135/13 137/11 138/19
187/22 191/21
allegedly [2]  36/7
146/3
alleges [4]  30/1 81/6
98/1 140/5
alleging [6]  53/24
104/18 109/21 137/12
138/22 199/16
allies [1]  45/18
allocate [1]  32/25
allocated [1]  33/16
allotted [1]  142/17
allow [1]  69/14
allowance [1]  95/23
allowed [4]  7/12
123/24 141/9 193/8
alluded [1]  105/9
almost [5]  60/21 124/8
132/14 194/3 194/3
alone [3]  145/24 170/3
180/10
along [2]  134/3 148/7
already [13]  32/23 44/1
44/8 46/5 58/20 83/21
103/3 114/18 120/11
120/17 135/22 142/13
153/14
also [25]  7/8 20/11
56/20 77/10 77/22
78/17 82/1 87/18 106/4
108/7 110/6 119/8
124/6 125/18 130/1
132/7 153/15 156/15
157/12 161/8 162/10
162/21 173/16 176/7

altering [1]  192/7
alternative [4]  78/1
188/8 188/12 189/15
although [7]  14/22
17/12 21/9 137/2
156/18 174/18 182/6
always [7]  19/9 63/11
93/9 132/14 194/3
194/4 196/1
am [14]  9/13 31/3
81/24 126/7 127/8
131/25 144/9 145/1
161/17 166/14 170/5
180/16 180/20 200/25
ambiguity [4]  100/18
100/25 102/22 109/8
ambiguous [2]  109/9
152/22
amend [4]  49/2 49/4
95/25 112/4
amended [3]  80/16
98/9 98/22
Amendment [58]  18/12
20/5 20/5 26/15 26/18
29/19 56/9 57/10 59/12
61/19 63/20 66/1 66/8
66/10 66/11 74/5 80/19
80/21 81/1 83/22 84/7
84/11 93/2 106/13
106/21 117/9 119/22
120/9 120/15 120/24
122/2 124/2 124/4
124/9 126/18 126/20
127/5 128/23 128/24
129/21 129/25 130/8
130/11 130/21 132/15
134/6 134/21 135/3
135/6 136/13 136/24
137/6 137/7 138/6
139/23 143/10 156/9
200/4
Amendments [1]
120/22
America [8]  4/6 5/19
40/9 157/16 157/20
157/23 158/2 158/5
American [8]  10/17
10/24 28/4 28/5 145/20
146/13 157/14 163/6
American-Islamic [1]
145/20
Americans [2]  7/24
157/16
amicus [2]  135/8
135/18
AMIT [1]  1/21
among [3]  8/8 87/8
109/21
amongst [1]  148/21
amoral [1]  157/24
amount [2]  5/24 167/3
ample [1]  34/2
analogy [1]  51/18
analyses [2]  9/1 73/19
analysis [18]  10/4 10/5
12/20 17/17 31/2 35/22
44/4 63/22 73/5 73/5

130/14 130/14 182/6
184/23 186/15
Andonian [11]  2/8 2/8
5/10 41/21 43/24 100/1
103/11 103/13 108/23
179/24 194/22
Andonian's [1]  114/14
angst [1]  194/8
announce [2]  94/7
158/13
announced [2]  119/12
155/24
announcing [1]  159/8
another [14]  15/2
16/23 23/2 38/6 72/12
86/9 129/22 132/9
135/8 144/5 155/10
163/5 165/3 183/22
answer [16]  20/16
35/24 45/9 49/7 50/8
61/17 63/9 67/20 67/21
68/7 70/6 100/14 107/4
112/19 171/14 171/16
answers [2]  45/2 70/4
anti [4]  61/24 191/19
191/19 191/23
anti-Kurdism [1]
191/19
anti-Muslim [1]  61/24
anti-politician [1]
191/19
anti-Trump [1]  191/23
anticipated [1]  83/24
any [92]  7/21 10/23
17/24 19/10 22/7 23/13
23/14 23/19 24/9 27/22
32/14 34/3 34/7 35/16
38/1 41/15 42/19 52/16
54/3 60/22 62/16 63/15
65/23 66/1 67/2 69/2
71/9 72/22 74/3 74/11
74/16 75/2 76/15 78/7
78/11 83/11 84/14 85/1
86/5 86/8 87/6 87/16
90/12 92/9 100/2
102/22 106/4 106/15
116/2 116/9 116/19
118/8 119/8 120/4
120/11 120/21 123/14
130/12 130/19 138/7
141/2 141/4 145/2
145/3 148/12 150/23
151/18 152/24 153/16
155/20 162/24 163/2
163/4 165/25 168/11
171/3 172/20 173/4
175/13 186/3 191/10
192/22 193/16 193/17
193/21 193/22 196/13
199/6 199/6 199/12
200/2 200/14
anybody [8]  69/20
72/20 107/16 117/22
122/7 187/24 191/6
203/1
anymore [2]  58/15
139/11

anyone [6]  72/23
102/21 130/5 139/16
148/11 158/3
anything [35]  7/2 13/6
16/25 20/24 21/2 24/10
37/8 37/9 37/17 41/21
42/2 46/23 57/15 57/17
58/9 62/16 62/18 69/22
71/25 88/14 95/6 99/25
106/18 108/24 108/25
114/8 114/9 115/8
116/2 130/20 148/11
167/3 172/7 200/5
201/17
anyway [2]  99/12
109/11
apart [2]  99/17 180/14
apologize [4]  39/23
114/11 128/16 167/21
apparently [2]  113/22
122/9
Appeals [10]  146/10
185/2 185/12 185/13
193/3 200/23 201/1
201/4 201/15 201/24
appearance [1]  6/3
APPEARANCES [3]
1/22 2/22 3/19
apple [1]  16/23
applicable [1]  135/7
application [3]  72/10
87/12 169/17
applied [2]  126/20
127/1
applies [8]  7/14 78/21
87/11 87/13 104/14
135/15 143/5 153/11
apply [9]  29/19 72/21
76/14 77/5 83/3 95/22
135/11 136/13 186/25
applying [1]  169/19
appoint [1]  76/8
appointed [9]  76/5
76/7 76/8 76/8 76/9
78/22 78/23 79/4 79/14
appointees [1]  76/9
appointments [1]
78/22
apportion [1]  6/18
appreciate [11]  72/24
117/16 130/18 141/22
151/2 153/19 153/19
166/21 166/22 177/3
178/16
approach [4]  9/23 9/24
10/8 193/10
approaching [1]
165/17
appropriate [4]  6/5
30/20 63/2 127/11
appropriated [3]  33/13
33/14 33/17
arbiter [1]  143/12
are [214]
are D.C.-based [1]
107/2
Are you [2]  9/11 195/5
area [1]  31/24

**A**

**areas [3]** 33/2 44/13 44/14
**aren't [9]** 30/13 32/2 33/15 66/9 83/13 106/8 114/20 157/8 194/9
**aren't you [1]** 30/13
**arguably [9]** 26/10 69/20 78/12 90/16 150/8 159/14 161/16 184/20 185/20
**argue [5]** 13/11 103/17 106/1 107/6 135/21
**argued [4]** 9/22 109/23 156/19 174/1
**arguing [2]** 75/4 159/15
**argument [46]** 1/20 5/4 6/4 6/10 7/14 22/9 24/24 26/14 27/6 29/24 31/15 31/17 38/11 38/15 48/9 48/16 63/2 63/20 66/1 70/12 70/20 74/24 75/8 75/16 75/16 75/24 78/6 85/20 100/15 111/6 120/7 127/7 130/21 131/12 132/13 142/22 153/19 154/9 164/11 165/3 166/22 167/1 177/4 194/19 199/1 202/17
**arguments [12]** 13/8 84/7 84/13 96/13 120/10 120/11 127/12 127/13 167/15 178/16 179/15 200/2
**arise [1]** 74/9
**arises [2]** 17/19 196/14
**arms [1]** 105/7
**arose [1]** 165/10
**around [11]** 66/2 70/20 97/9 117/23 135/11 138/3 147/25 158/8 181/19 192/19 199/25
**arrangement [1]** 24/23
**arrival [1]** 53/19
**arrived [3]** 52/14 53/5 53/6
**article [10]** 6/21 22/5 22/8 22/14 24/4 37/13 37/19 39/13 56/4 143/9
**Article I [1]** 143/9
**Article III [7]** 6/21 22/5 22/8 22/14 24/4 37/13 39/13
**articles [1]** 16/21
**articulate [2]** 37/3 194/8
**as [262]**
**As far [1]** 166/18
**ascribed [1]** 202/13
**Ashcroft [1]** 82/9
**aside [12]** 13/22 30/22 53/2 56/23 58/20 58/22 68/8 77/11 77/11 115/5 116/24 143/20
**ask [49]** 7/2 11/19 13/18 15/2 16/25 30/12 50/15 56/11 58/24 68/7 71/12 75/23 78/24 82/10 88/12 94/14 103/11 105/10 109/25 109/25 120/10 121/20 121/20 124/11 127/11 128/2 134/2 136/3 139/16 142/9 154/2 155/23 157/7 163/22 165/16 165/20 167/18 168/4 171/1 174/15 175/12 177/25 179/14 185/12 199/10
**asked [18]** 29/17 34/1 66/6 82/11 82/24 100/7 107/13 107/16 114/16 125/16 127/2 127/3 133/9 147/12 150/24 155/13 171/2 180/16
**asking [14]** 15/15 30/13 30/21 30/23 37/4 43/5 49/19 68/8 132/11 132/21 135/23 136/2 148/8 167/25
**asks [1]** 163/8
**aspect [1]** 201/13
**aspiring [1]** 187/16
**ass [2]** 163/7 176/22
**assault [1]** 183/9
**assemble [1]** 60/5
**assembled [2]** 30/3 92/9
**assembly [1]** 124/7
**assert [2]** 44/6 202/3
**asserted [1]** 22/8
**assess [2]** 26/8 31/18
**assessing [1]** 136/10
**assessment [3]** 26/22 27/1 43/16
**assistance [1]** 71/23
**Assistant [1]** 33/5
**associated [2]** 28/15 192/12
**ASSOCIATES [1]** 2/18
**association [1]** 192/13
**assume [12]** 8/17 23/15 23/21 41/8 48/13 58/23 77/3 77/18 81/17 101/14 113/12 175/5
**assuming [8]** 14/22 26/13 119/2 119/5 123/13 123/13 156/3 192/19
**Atlantic [1]** 82/8
**attach [1]** 118/25
**attack [1]** 178/12
**attempt [3]** 16/21 59/1 117/17
**attempted [1]** 99/1
**attempting [2]** 39/5 164/7
**attendees [3]** 176/9 176/16 176/24
**attention [3]** 28/16 80/13 135/20
**ATTORNEY [5]** 3/16 33/6 120/3 161/1 161/2 33/6
**attributable [1]** 131/1
**attribute [2]** 38/3 99/18
**attributed [1]** 34/21
**audience [6]** 93/5 93/10 109/14 109/14 133/2 133/24
**Austin [1]** 3/9
**author [1]** 133/4
**authority [12]** 19/9 28/3 29/7 32/22 36/5 40/15 40/18 40/25 133/11 133/20 136/15 173/7
**authors [1]** 135/19
**automatically [1]** 187/17
**available [3]** 20/22 46/16 122/17
**Avenue [8]** 2/4 4/3 4/7 4/12 58/1 58/6 58/6 119/19
**avoid [3]** 126/2 127/12 182/20
**avoiding [1]** 73/24
**aware [5]** 6/9 91/4 103/24 151/20 173/3
**away [6]** 30/3 64/18 80/22 102/17 167/9 180/3

**B**

**back [34]** 16/13 25/23 28/14 35/7 37/14 39/25 40/15 44/9 48/1 57/25 58/12 70/11 83/20 83/25 84/3 88/3 89/14 100/8 109/8 109/11 110/17 131/10 131/20 136/1 136/4 149/21 151/5 157/13 161/21 169/3 169/25 170/25 179/10 186/9
**background [1]** 101/12
**backwards [1]** 22/23
**bad [4]** 61/25 80/25 126/12 192/23
**bag [1]** 115/1
**Ballenger [2]** 145/20 145/24 146/1 165/4 174/17
**Ballenger's [3]** 145/23 146/3 146/6
**ballots [5]** 29/18 34/10 97/3 144/17 144/18
**bank [1]** 160/8
**bar [7]** 47/13 47/14 47/20 47/21 187/19 187/24 189/20
**bar-fight [1]** 189/20
**barred [1]** 18/22
**Barrett [1]** 4/12
**baseball [1]** 125/23
**based [20]** 30/25 52/25 95/4 100/16 105/13 107/2 111/24 117/21 123/11 125/8 135/24 129/23 159/18 174/8 185/10 188/22 190/9
**basic [3]** 53/1 155/14 160/20
**basically [1]** 110/22
**basing [1]** 93/3
**basis [8]** 7/22 15/13 35/16 74/2 76/11 143/22 147/10 159/17
**Bd [1]** 185/14
**be [334]**
**bears [2]** 133/25 140/5
**beat [5]** 82/3 83/8 140/10 176/19 176/22
**Beatles [1]** 131/13
**because [135]** 7/13 7/20 8/24 12/15 14/21 14/24 16/7 18/12 18/23 18/25 19/9 20/2 20/8 20/25 21/19 22/19 24/8 26/14 28/8 30/18 32/11 39/4 44/13 45/7 45/13 45/14 46/14 46/15 48/21 49/14 50/3 50/5 50/20 51/13 51/18 52/12 52/15 53/11 54/21 55/11 57/25 58/10 59/3 62/12 69/8 70/6 71/10 71/10 73/20 74/23 75/1 75/6 75/11 75/23 76/12 78/1 79/23 85/3 85/11 86/1 97/4 100/8 108/17 109/5 110/21 111/4 112/13 113/14 113/15 115/9 119/11 124/17 126/21 127/9 127/18 128/23 129/15 130/15 131/5 131/8 131/14 132/1 133/5 133/20 134/7 134/16 138/9 138/9 140/14 140/22 142/12 142/13 143/17 146/12 146/20 148/7 148/20 149/19 152/15 155/4 156/20 157/7 157/21 159/13 159/14 161/10 163/19 164/23 165/17 166/15 167/14 168/13 169/7 169/21 172/6 172/8 173/24 175/4 176/23 184/4 184/6 184/15 185/1 186/25 187/23 188/16 188/17 189/3 191/2 193/8 194/14 195/20 195/23 199/2 199/25
**becomes [5]** 81/11 109/13 125/7 174/19 187/10
**bedrock [2]** 8/6 155/6
**been [62]** 7/20 8/4 10/21 17/13 18/15 19/2 33/25 34/20 36/1 36/7 36/11 41/11 44/17 52/4 54/22 61/1 61/6 61/13 62/16 72/22 75/6 80/12 85/16 85/3 85/25 100/9 100/17 103/13 103/16 104/25 105/3 105/9 108/9 108/10 109/13 119/4 120/2 120/6 120/11 122/20 124/16 126/1 128/3 130/24 140/3 141/7 145/24 146/23 153/20 153/24 166/15 166/18 173/3 173/6 177/18 180/6 186/5 192/24 193/16 195/7 202/22 203/1
**before [36]** 1/21 12/24 19/20 21/9 21/13 26/4 29/20 30/11 52/14 53/19 57/21 58/13 58/21 92/2 106/5 106/5 106/15 106/18 107/10 107/25 108/18 109/22 110/8 111/8 116/22 118/3 118/13 125/21 128/10 140/7 145/5 147/23 160/8 170/1 177/9 195/10
**began [2]** 94/18 140/7
**begged [1]** 101/25
**begin [7]** 6/21 6/22 7/4 25/6 48/13 84/20 86/13
**beginning [3]** 33/10 57/19 93/22
**behalf [11]** 6/3 6/10 6/24 6/24 7/7 25/9 42/16 96/13 116/19 170/4 170/7
**behaved [1]** 72/20
**behavior [1]** 103/22
**behest [1]** 116/11
**behind [3]** 43/2 91/20 176/10
**being [38]** 10/15 14/20 15/1 17/13 20/21 20/22 21/16 21/22 29/4 34/1 42/4 43/16 44/5 48/4 61/9 64/17 65/8 66/6 70/8 70/16 71/8 71/17 73/8 75/20 82/2 101/24 112/17 127/2 127/3 131/6 136/18 138/24 150/2 165/10 180/16 183/12 202/20 202/23
**believe [23]** 10/19 47/11 48/15 57/8 59/5 67/18 85/1 97/18 97/24 111/15 117/16 138/19 141/21 144/11 155/2 155/16 159/1 159/22 170/11 174/18 176/24 181/7 191/20
**believed [1]** 70/25
**Bell [1]** 82/8
**benefited [1]** 159/15
**benign [2]** 120/21 131/9
**BENNIE [2]** 1/3 5/5
**beside [1]** 33/4
**besides [1]** 96/16
**best [3]** 133/12 158/25

**B**

best... [1] 162/7
better [3] 180/1 180/2 191/13
between [24] 14/18 32/15 33/19 36/17 41/4 44/19 44/24 68/14 81/6 81/10 88/19 90/13 90/17 90/21 94/15 103/14 106/11 147/5 149/25 150/5 151/9 151/13 172/17 187/21
beyond [9] 27/4 35/3 42/12 43/4 44/11 95/15 194/20 194/20 196/19
bias [3] 188/6 190/8 190/9
bias-crimes count [1] 188/6
Bible [1] 61/23
Biden [3] 11/7 78/3 107/23
big [1] 41/11
bigger [2] 105/24 181/15
Bill [4] 42/5 141/15 154/12 178/19
binding [3] 201/6 201/8 201/13
Binnall [34] 3/2 3/3 5/13 7/4 7/7 7/15 8/13 9/11 22/4 24/14 25/9 27/6 28/23 29/3 37/25 39/15 43/25 47/5 48/13 48/20 62/22 65/12 79/22 85/20 100/1 110/19 114/9 120/12 125/16 126/24 132/13 133/9 139/22 197/13
Binnall's [8] 26/14 27/25 31/15 31/17 41/25 43/15 130/21 139/2
binnall.com [1] 3/5
bit [11] 14/17 79/23 84/12 94/15 101/12 119/23 120/16 142/6 174/23 178/20 183/12
bite [1] 16/23
bits [2] 150/10 150/13
black [4] 51/21 101/3 122/15 173/16
Blassingame [8] 2/17 5/12 40/3 49/23 54/14 94/16 98/25 185/24
bled [1] 84/7
bleeding [2] 65/25 66/8
BLESSINGER [2] 1/14 5/8
blow [1] 80/22
bodily [1] 183/15
body [3] 32/22 44/17 192/18
boil [1] 81/2
bolding [1] 174/12
boldness [1] 58/12
bond [1] 18/1

both [19] 14/11 16/4 25/1 31/6 41/24 44/18 70/23 104/19 105/25 113/4 144/5 146/23 154/3 161/12 180/8 185/13 185/17 188/16 189/3
bottom [2] 35/13 118/22
bought [1] 21/13
bound [4] 149/23 200/25 201/3 202/13
boundaries [1] 31/21
bounds [2] 43/4 122/13
bourbon [1] 157/17
box [1] 18/6
Boy [1] 90/23
boycott [3] 59/10 121/23 122/5
Boynton [12] 4/6 5/18 154/14 154/23 154/25 157/6 163/22 165/15 166/21 167/3 170/25 173/11
Boys [5] 81/7 90/7 90/15 91/7 91/15
Bradstreet [1] 118/6
branch [7] 19/23 21/23 26/1 32/24 34/22 79/2 79/3
branches [3] 19/10 19/17 42/25
Brandenburg [25] 18/13 66/10 73/15 73/18 73/20 74/3 74/8 74/10 106/9 106/19 106/24 107/4 115/5 115/17 115/20 120/16 120/21 122/14 130/14 132/3 135/4 135/5 136/7 136/9 136/12
Brandenburg-type [1] 74/3
brave [4] 106/7 107/19 107/20 107/21
breach [10] 60/15 181/6 181/8 181/16 196/4 196/6 196/8 196/9 197/19 198/10
breaching [1] 58/20
breadth [2] 85/7 87/4
break [6] 82/3 89/15 122/6 124/24 172/9 178/20
breaking [1] 30/9
breaks [2] 102/4 124/25
Breckenridge [1] 84/22
Brian [3] 4/6 5/18 154/25
brian.m.boynton [1] 4/9
brief [19] 33/9 38/16 38/23 85/17 87/10 88/22 132/1 135/8

5/11 163/4 163/21 165/4 166/6 166/23 174/2 178/1 201/21
briefed [2] 85/11 200/13
briefing [1] 184/23
briefings [1] 142/16
briefly [4] 41/23 47/10 74/15 126/9
briefs [3] 85/15 134/5 155/20
bright [3] 44/12 44/15 44/23
bring [8] 38/9 62/21 62/25 72/16 75/4 89/17 118/4 172/8
bringing [1] 126/10 166/19 198/15
brings [2] 190/4 202/16
broad [20] 9/25 10/1 13/5 21/24 21/25 31/20 33/24 42/20 42/21 63/23 63/23 65/8 66/3 78/14 82/21 84/23 85/6 85/7 86/18 191/18
broader [9] 9/21 27/16 28/23 76/4 79/19 135/6 140/2 140/18 181/22
broadly [6] 41/1 69/13 73/2 74/1 74/12 99/16
Brooks [31] 4/2 4/3 5/17 55/25 57/17 81/23 104/14 105/25 108/5 108/9 112/22 141/20 141/21 141/24 142/1 152/3 155/13 158/4 161/16 162/2 162/11 162/17 164/1 164/11 166/10 166/13 167/7 167/25 169/10 177/5 190/24
Brooks's [4] 120/1 155/3 158/12 163/11
brought [8] 7/8 7/20 8/4 13/9 32/12 109/23 110/21 151/21
building [8] 54/11 55/4 64/19 65/9 68/23 94/19 94/25 152/5
bulk [1] 145/10
bullet [2] 148/23 148/24
Bullock [1] 2/12
bully [2] 10/19 10/19
bunch [1] 183/21
burden [8] 165/23 165/24 165/25 166/5 173/13 175/1 175/19 175/23
burden-shifting [1] 165/25
Burke [2] 3/17 3/18
Burr [1] 48/1
business [1] 202/18
busting [1] 36/23
busy [1] 65/10

**C**

Cabinet [2] 79/4 79/5
calculus [1] 133/23
CALEB [2] 2/8
calebandonian.com [1] 2/11
call [20] 36/20 37/5 52/7 57/16 65/5 65/8 97/9 97/19 97/19 102/2 105/7 108/10 113/19 117/22 120/3 126/15 135/20 150/24 151/22 181/16
called [4] 15/6 51/9 113/18 113/22
calling [7] 15/15 28/15 64/18 97/2 98/15 99/9 112/24
calls [3] 106/1 107/8 125/8
calm [1] 30/10
CAMARA [1] 3/7
camarasibley.com [1] 3/10
came [4] 10/20 82/3 114/5 118/4
cameras [1] 160/9
campaign [72] 12/5 12/6 12/15 12/17 12/25 14/4 14/6 14/7 14/7 14/11 17/8 17/9 17/10 20/10 20/11 28/9 31/6 33/1 33/18 33/20 33/24 34/5 34/6 34/11 36/11 36/18 44/20 45/6 45/8 45/11 46/1 46/4 46/7 46/10 46/17 46/21 46/22 46/24 64/24 147/2 147/11 148/12 149/25 155/11 155/15 155/17 155/18 156/4 156/20 157/4 159/1 159/13 159/23 159/25 160/12 160/21 161/6 161/10 161/24 162/7 163/16 164/24 171/4 171/8 171/15 171/18 171/22 172/1 173/3 177/17 177/20 177/24
campaign-related [1] 157/4
campaign-type [1] 171/4
campaigner [1] 147/2
campaigning [7] 25/23 33/6 36/15 36/15 44/15 148/5 151/9
campaigns [2] 33/19 147/21
can [111] 8/13 9/14 9/15 10/5 14/23 15/2 16/25 19/10 25/13 26/8 26/18 27/8 27/20 28/16 30/12 32/1 33/14 34/2 36/5 40/7 42/11 44/7 44/23 46/20 49/5 49/7

butterfly [1] 44/9

51/19 52/22 53/12 54/2 57/1 62/5 62/8 62/21 62/25 74/21 75/3 75/15 78/12 78/24 80/9 81/3 82/24 83/22 84/4 84/10 84/17 84/18 84/18 86/10 88/2 89/14 94/12 94/14 95/3 98/4 98/4 99/11 101/10 101/14 105/18 105/19 109/25 110/1 113/17 113/21 115/2 117/15 119/23 126/4 131/4 131/11 132/1 133/6 133/13 133/16 133/16 134/2 136/6 137/18 138/4 138/6 140/13 141/22 144/23 149/12 150/2 153/3 155/23 158/12 158/15 158/19 161/24 162/15 163/22 173/24 174/9 174/13 174/16 184/2 188/16 195/10 197/6 197/6 197/7 198/1 203/5
Can everybody [1] 84/4
Can you [1] 101/10
Can your [1] 136/6
can't [32] 11/4 18/5 27/19 30/6 33/17 33/18 40/18 44/9 44/21 60/8 62/4 64/9 69/11 72/8 86/22 92/22 93/9 114/4 123/10 126/10 126/12 129/4 129/10 131/10 131/19 140/1 140/16 158/3 158/17 183/5 183/6 187/20
candidate [6] 11/17 11/21 17/2 41/6 41/9 155/9
candidates [1] 33/7
cannot [19] 17/3 18/23 21/7 42/17 44/21 46/5 64/6 65/25 66/2 70/7 70/13 71/9 72/13 101/19 104/17 109/6 117/4 117/18 150/10
capable [1] 131/6
capacities [2] 62/21 62/25
capacity [22] 11/17 11/20 17/1 27/23 28/4 32/16 32/17 38/9 145/5 147/1 147/2 148/5 160/23 161/9 170/2 170/6 171/15 171/16 171/20 171/21 171/22 177/1
capitalizing [1] 174/12
capitol [95] 30/5 30/9 36/23 41/12 41/17 51/15 51/16 52/8 52/9 53/8 53/8 53/15 53/22 54/4 54/10 54/11 54/11 54/12 54/17 54/23 55/2

**capitol... [74]** 55/4 55/4
55/5 55/18 57/16 57/18
57/21 58/7 58/19 58/21
59/2 60/4 60/15 60/19
60/23 64/19 64/23 65/6
65/9 65/10 68/20 68/23
68/23 68/23 69/21
69/23 70/3 75/20 85/22
86/14 91/25 93/13
93/14 93/17 93/18
93/18 94/5 94/7 94/19
94/19 94/19 94/22
94/24 94/25 94/25 96/4
96/22 97/1 97/10 97/15
98/12 102/5 105/7
105/11 107/10 110/7
110/25 111/17 112/12
112/14 114/1 115/9
115/14 119/11 119/12
119/13 121/2 140/14
145/14 145/15 152/5
160/8 178/12 186/18
**car [1]** 161/2
**care [14]** 16/9 180/13
180/14 180/19 180/25
181/6 181/9 182/12
184/14 195/10 195/10
196/11 197/18 198/10
**carefully [2]** 88/6
128/18
**carried [1]** 15/17
**carries [2]** 79/3 156/12
**carry [5]** 159/6 164/7
172/20 173/13 186/19
**carrying [2]** 15/14
104/2
**case [127]** 6/3 7/8 9/21
9/22 13/9 13/11 16/16
16/19 18/9 18/10 19/4
19/14 19/14 20/15
20/20 20/23 25/3 25/12
25/15 26/16 26/20 29/7
31/22 31/25 35/25
38/20 38/22 40/8 45/12
46/20 47/19 48/1 49/13
49/14 49/15 49/15
49/17 49/23 50/4 50/21
52/4 56/13 59/10 59/19
61/24 68/17 71/22 72/4
73/14 75/4 75/17 75/18
84/22 86/5 87/8 87/19
94/11 103/14 104/22
110/3 114/24 114/25
115/3 120/21 120/22
121/22 122/22 123/5
123/13 123/17 123/24
123/25 126/2 127/17
129/2 131/3 132/3
136/6 136/19 136/19
137/15 137/17 145/21
146/10 150/17 156/9
156/10 156/16 156/19
156/25 157/5 160/15
160/25 161/7 164/5
165/4 165/5 166/1
166/5 166/5 166/23
167/9 167/10 168/2
179/19 185/13 185/15
185/24 187/13 187/19
188/15 191/14 191/19
192/12 192/25 198/3
199/11 199/23 201/6
201/14 201/23 202/7
202/11 202/24
**cases [36]** 7/19 8/5
14/4 22/8 24/24 25/1
32/13 34/14 49/10
76/25 77/4 79/16 87/8
87/9 87/16 110/8 119/7
124/10 125/4 150/11
156/9 157/8 160/19
160/24 161/13 174/6
175/20 187/8 192/18
192/22 193/23 194/2
194/20 195/5 197/19
199/11
**cast [2]** 143/16 177/21
**cat [1]** 115/1
**categories [5]** 26/10
75/3 85/10 85/14 85/15
**category [4]** 34/12
135/20 138/15 194/1
**cause [7]** 86/8 114/19
187/14 193/14 193/24
198/4 198/20
**caused [7]** 23/1 24/10
50/18 86/15 86/18
182/1 184/8
**causes [1]** 193/9
**cautioned [1]** 117/6
**center [2]** 19/8 19/20
124/3
**Centre [1]** 3/17
**certain [12]** 19/5 44/21
44/22 46/12 49/15
70/14 70/14 76/16 80/9
126/13 182/16 199/9
**certainly [27]** 6/5 6/9
14/14 14/21 18/22
22/24 23/12 24/5 31/3
46/14 51/20 68/4 69/1
72/18 77/15 88/22
96/20 112/21 132/4
132/5 133/16 159/3
160/1 161/21 162/3
170/15 193/24
**certainly true [1]** 159/3
**certification [17]**
113/15 113/21 113/24
120/2 141/19 141/20
146/25 148/16 150/18
154/10 154/19 154/20
155/3 155/25 168/16
168/25 175/4
**certified [2]** 4/11
165/24
**certify [3]** 107/11 166/2
204/2
**certifying [1]** 107/23
**cetera [2]** 55/25 68/21
**CH [1]** 4/12
**chair [1]** 170/16
**Chairman [1]** 152/7
**chairwoman [3]** 170/2
**challenge [5]** 25/7
38/24 137/21 147/15
160/4
**challenging [2]** 55/17
114/3
**chance [1]** 39/23
**change [3]** 79/18
119/25 141/14
**chant [2]** 54/15 176/17
**chanting [2]** 54/9
93/13
**chapter [1]** 171/25
**characterize [2]** 34/13
35/12
**charged [2]** 122/12
174/7
**Charles [3]** 121/22
122/13 131/14
**Charlottesville [1]**
71/21
**chase [1]** 81/3
**checked [1]** 113/16
**chief [3]** 42/24 92/17
105/10
**chilling [2]** 73/5 126/21
**chilling-effect [1]** 73/5
**chock [1]** 7/22
**chock-full [1]** 7/22
**choice [2]** 105/18
157/22
**choose [2]** 105/19
128/18
**chooses [1]** 162/5
**cigars [1]** 157/18
**circling [1]** 181/19
**Circuit [14]** 46/19 91/5
118/7 145/21 156/10
157/1 160/25 174/6
174/17 185/15 193/3
200/23 201/5 202/14
**Circuit's [3]** 88/7
200/25 201/7
**circumstance [3]** 69/2
160/10 160/12
**circumstances [4]**
142/7 174/9 175/8
192/20
**citation [3]** 133/17
172/15 202/11
**cite [4]** 33/9 136/20
163/21 198/3
**cited [9]** 66/19 95/18
136/10 150/11 157/5
160/19 166/5 180/18
182/15
**cites [1]** 92/13
**citing [1]** 10/9
**citizen [1]** 87/13
**citizens [4]** 19/14
43/17 122/16 148/22
**CIV [1]** 4/6
**civic [1]** 148/8
**civil [16]** 5/5 5/6 5/7
18/5 18/9 21/4 21/25
27/12 27/16 27/17
27/21 32/11 35/9 35/14
35/17 68/12
**finally [2]** 33/14
42/1
**Claiborne [8]** 59/8
121/21 123/1 124/15
124/17 124/19 124/23
131/3
**claim [32]** 104/12
118/1 133/4 137/16
166/16 166/18 180/7
180/8 180/10 180/25
184/9 188/11 188/17
188/25 190/9 190/9
196/13 196/22 196/24
197/8 197/24 197/24
198/8 198/15 199/12
199/14 199/16 199/20
200/19 200/24 201/1
202/3
**claimed [2]** 38/24 50/5
**claiming [1]** 94/2
**claims [19]** 107/2
120/8 166/12 166/14
166/16 177/11 179/7
182/9 188/8 188/8
188/22 192/2 195/5
195/14 195/19 196/7
196/10 201/14 201/14
**clarified [1]** 166/8
**clarify [1]** 94/14
**clarity [2]** 95/4 175/21
**clause [3]** 16/3 78/23
152/9
**clear [39]** 7/25 10/1
16/15 19/2 25/8 25/20
27/11 33/14 35/20
37/20 42/16 63/5 63/14
64/4 71/13 75/18 87/19
88/18 97/6 97/8 109/11
109/13 109/19 111/22
121/9 124/13 127/22
128/24 137/13 144/24
145/17 158/7 168/7
173/1 174/7 176/25
181/5 181/8 182/7
**cleared [1]** 97/10
**clearest [1]** 21/11
**clearly [16]** 21/13
29/23 40/8 42/20 43/3
43/22 65/17 85/19
86/15 89/11 120/23
127/24 153/9 191/17
191/22 194/20
**Clerk [1]** 154/3
**cleverly [1]** 153/12
**client [7]** 6/6 6/10
42/16 55/15 63/10
112/21 116/11
**client's [2]** 111/3 127/4
**clients [6]** 38/2 39/4
83/12 119/15 169/2
182/2
**clients' [1]** 114/20
**Clinton [7]** 25/15 31/22
42/5 47/11 47/12 47/12
47/18
**clock [1]** 7/16
**close [4]** 37/5 72/17
172/8 202/17
**close-call [1]** 37/5
**closely [2]** 25/10 192/8
**closer [2]** 34/15 36/20
**cloth [1]** 34/2
**co [8]** 19/17 25/25
34/22 50/21 51/24
67/12 86/22 187/4
**co-conspirator [2]**
86/22 187/4
**co-conspirators [2]**
50/21 51/24
**co-counsel [1]** 67/12
**co-equal [3]** 19/17
25/25 34/22
**Code [4]** 120/7 143/10
143/19 180/9
**codified [1]** 85/25
**cognizable [2]** 37/22
38/2
**COHEN [1]** 2/3
**cohenmilstein.com [1]**
2/6
**collapse [1]** 187/14
**collapses [1]** 135/3
**colleague [2]** 69/17
108/20
**colleagues [8]** 25/1
37/9 37/17 39/22 41/24
48/14 50/13 158/16
**collectively [2]** 49/9
49/21
**College [19]** 19/24
29/8 34/10 97/3 98/16
107/11 143/7 143/21
143/25 144/4 144/8
148/25 149/1 149/8
150/18 155/25 158/22
160/17 162/10
**colloquy [1]** 170/25
**COLUMBIA [2]** 1/1
200/21
**combat [2]** 55/17 96/18
**come [22]** 17/21 21/7
24/3 25/23 37/14 51/23
52/2 59/20 61/9 64/19
65/13 82/2 83/20 89/14
90/1 91/22 94/22 94/14
92/15 106/15 107/24
126/4
**come on [1]** 65/13
**comes [6]** 48/23 53/12
53/14 60/20 157/8
187/7
**coming [6]** 63/20 94/6
105/20 181/24 182/25
198/6
**command [2]** 115/18
115/21
**commander [1]** 42/24
**comment [2]** 19/16
26/5
**commenting [1]** 19/13
**comments [3]** 118/18
177/17 178/2
**commit [16]** 50/24
52/22 52/23 53/20
53/22 54/4 56/1 59/2
61/21 62/2 62/6 112/16

**commit... [4]** 141/10 141/11 187/17 187/17
**committed [5]** 51/14 51/15 59/6 103/3 132/6
**committee [34]** 151/24 151/24 152/2 152/6 152/7 152/10 152/10 152/13 152/15 152/16 152/18 152/19 153/22 153/23 163/20 168/17 168/22 169/1 169/4 169/21 170/4 170/7 170/9 170/12 170/14 170/16 170/16 172/15 172/16 172/20 172/22 173/5 173/8 178/3
**committing [2]** 80/20 184/7
**common [22]** 60/10 94/1 95/22 120/7 125/5 127/6 179/7 195/19 195/20 195/21 195/24 196/6 196/14 196/16 196/23 197/2 197/3 197/21 198/8 199/12 200/19 200/19
**common-law [7]** 120/7 179/7 196/6 196/16 197/21 200/19 200/19
**commonly [2]** 105/3 139/19
**communicated [1]** 90/3
**communication [5]** 52/16 52/21 60/23 90/13 90/22
**communications [2]** 90/20 92/7
**compare [1]** 127/2
**complaining [1]** 86/17
**complaint [62]** 9/6 9/9 13/19 15/4 23/11 28/17 30/1 34/20 54/8 54/13 54/14 64/21 64/21 80/16 81/6 82/21 88/13 92/12 93/16 94/15 94/16 94/17 94/23 95/1 95/1 95/8 95/24 98/1 98/8 98/9 98/22 98/25 101/9 102/1 102/3 102/15 106/6 108/3 108/13 109/20 110/12 112/1 118/9 140/5 143/8 145/11 151/23 152/1 152/12 152/17 153/6 153/8 153/22 162/23 162/23 172/22 172/25 185/23 186/11 190/19 192/8 196/3
**complaints [7]** 7/21 49/21 95/22 96/6 96/25 101/23 140/6
**complete [1]** 118/1
**completely [3]** 96/6 113/13 129/24
**completing [1]** 146/21
**comply [1]** 48/3

**computer [2]** 4/15 142/4
**computer-aided [1]** 4/15
**concede [1]** 90/15
**conceive [3]** 32/3 34/18 36/22
**concept [2]** 126/25 135/6
**concepts [1]** 17/20
**concern [6]** 16/12 28/2 28/5 94/7 95/14 153/8
**concern's [1]** 193/12
**concerned [3]** 79/9 79/17 139/21
**concerning [6]** 128/5 129/12 130/21 141/20 143/16 179/7
**concerns [8]** 6/1 47/9 74/9 127/14 143/7 145/4 190/8 192/1
**conclude [9]** 18/8 31/1 135/24 174/21 174/24 178/2 180/16 180/17 181/3
**concluded [3]** 36/9 68/25 203/6
**conclusion [2]** 168/18 175/15
**concrete [2]** 22/25 38/3
**concreteness [5]** 22/13 22/18 22/22 23/13 24/9
**condemned [1]** 114/5
**condemning [1]** 26/13
**conduct [92]** 26/23 31/18 32/12 36/2 38/4 40/5 40/5 40/13 41/5 41/5 52/6 54/24 56/13 56/14 56/15 56/16 57/2 59/17 65/22 67/13 67/25 68/9 68/10 69/18 70/2 75/5 75/7 78/2 82/13 88/21 89/9 99/19 99/23 100/11 100/20 101/1 101/4 101/5 101/20 102/24 104/1 104/8 122/22 126/5 127/2 127/4 134/17 134/24 137/10 137/19 141/11 146/4 146/6 146/12 147/5 147/6 150/1 150/2 150/6 170/21 172/1 182/14 182/17 182/17 183/23 184/4 184/9 185/1 185/4 185/8 185/18 185/21 186/5 188/13 189/5 189/16 190/5 190/13 192/23 192/24 193/8 193/13 194/3 194/15 194/19 195/3 196/17 196/18 197/3 197/6 198/21 198/22
**conducted [2]** 10/16 128/6

**confess [1]** 135/10
**confidence [3]** 76/19 77/12 78/19
**confirm [1]** 96/6
**confirmation [1]** 89/13
**confusion [1]** 144/25
**Congress [49]** 12/16 12/24 16/18 16/18 19/4 19/20 23/10 29/21 29/25 34/25 36/16 38/23 44/18 63/1 63/25 63/25 75/12 75/19 76/13 77/8 77/15 77/16 77/17 78/20 79/1 79/7 79/17 79/17 79/18 84/23 87/15 87/22 97/2 97/14 98/15 98/17 104/3 107/10 107/23 112/25 121/15 126/14 126/15 132/6 132/9 143/11 146/15 156/8 161/24
**Congress's [2]** 175/23 190/13
**congressional [11]** 8/9 9/7 24/6 29/4 29/6 29/9 99/20 125/15 125/23 144/9 158/4
**congressman [47]** 7/9 42/16 55/25 57/17 105/25 141/20 141/21 141/24 142/1 142/3 142/12 143/2 144/22 145/22 146/8 146/10 146/14 146/19 150/3 150/22 152/25 153/10 153/18 154/9 154/12 158/11 158/12 160/2 161/16 164/1 164/6 166/10 166/13 167/7 167/25 170/22 171/6 173/2 173/13 174/1 175/2 177/5 178/14 184/18 184/19 184/20 185/11
**Congressman's [2]** 157/10 172/15
**congressmen [14]** 143/13 143/25 150/13 150/23 156/7 157/15 157/17 157/22 157/23 159/10 176/18 176/22 186/1 192/10
**Congressmen/women [1]** 156/7
**congresspeople [3]** 40/23 190/14 202/21
**Congressperson [1]** 162/1
**Congresswoman [4]** 144/2 144/7 151/22 153/23
**congresswomen [2]** 144/6 144/14
**connection [4]** 26/18 29/22 129/5 148/4
**consequence [1]**

**consequences [6]** 59/17 86/18 88/24 122/22 131/20 193/7
**consider [9]** 37/4 46/13 49/20 87/10 87/14 87/15 108/18 129/10 133/13
**consideration [3]** 6/8 152/12 156/14
**considered [6]** 32/8 33/8 42/7 82/24 82/25 164/9
**considering [2]** 108/16 129/6
**consistent [7]** 13/1 96/20 113/13 114/2 120/5 155/10 158/11
**consistently [1]** 158/16
**conspiracies [3]** 90/1 103/15 103/15
**conspiracy [105]** 18/10 26/20 38/5 48/8 50/19 50/22 52/2 52/13 52/25 53/11 53/19 53/20 53/22 54/4 54/24 55/24 56/1 56/18 56/18 56/20 57/3 59/25 61/4 62/6 62/12 65/14 65/21 67/11 67/14 67/16 68/2 68/12 68/15 69/5 69/9 69/12 69/13 70/8 70/9 71/19 72/2 72/3 81/4 81/6 81/21 82/24 84/13 86/6 86/9 86/13 88/11 88/20 89/24 89/25 90/1 90/11 93/1 93/1 103/16 103/20 103/25 104/8 104/11 106/24 107/2 109/21 110/10 110/22 111/2 111/7 111/10 112/7 112/13 112/14 112/15 114/17 114/24 114/25 115/2 115/8 116/15 116/19 116/22 117/4 117/19 121/1 121/2 121/13 121/14 121/19 134/7 134/11 135/12 136/24 137/3 137/6 137/10 137/23 137/24 138/21 138/22 138/23 188/17 188/17 188/24
**conspirator [2]** 86/22 187/4
**conspiratorial [1]** 135/15
**conspirators [5]** 50/21 51/19 51/24 51/25 90/13
**conspire [2]** 52/22 59/1
**conspired [5]** 91/6 91/7 110/1 111/3 134/15
**constantly [1]** 21/22
**constitute [2]** 118/11

**constituted [1]** 155/17
**constitutes [2]** 22/24 182/10
**Constitution [9]** 4/12 8/11 16/3 25/21 40/25 76/2 87/20 143/9 143/19
**constitutional [18]** 8/6 15/20 19/24 40/16 40/17 44/10 69/12 73/8 73/25 74/4 74/8 75/25 116/24 127/14 127/19 143/14 158/14 159/6
**constitutionally [1]** 149/3
**constrained [3]** 40/22 40/24 73/14
**construct [1]** 135/8
**construction [4]** 57/9 57/13 76/15 78/25
**construe [2]** 54/2 56/4
**construed [8]** 55/5 57/1 60/8 62/6 76/6 78/12 131/6 184/2
**construes [1]** 57/4
**construing [1]** 31/25
**contact [1]** 3/19
**contained [2]** 49/15 122/15
**contend [4]** 25/17 53/4 137/22 143/20
**contending [1]** 35/3
**content [7]** 10/4 10/22 26/7 124/18 129/20 156/15 161/3
**content-neutral [3]** 10/4 10/22 129/20
**contentions [1]** 144/21
**contest [2]** 153/9 177/23
**contesting [1]** 155/20
**contests [1]** 143/7
**context [25]** 12/21 43/3 45/8 77/5 104/19 104/20 105/24 106/22 118/24 119/1 123/19 125/12 127/25 129/9 140/2 140/18 149/7 156/14 161/5 171/8 185/6 190/11 190/16 197/24 197/24
**contexts [1]** 192/23
**contextual [3]** 129/7
**continue [3]** 83/20 141/6 144/23
**continued [3]** 3/1 4/1 94/21
**continues [1]** 163/7
**contracting [1]** 134/12
**contractor [1]** 134/14
**contractual [1]** 134/14
**contrary [3]** 12/19 12/20 177/14
**contribute [1]** 181/25
**contributed [2]** 14/12 65/21
**contributes [1]** 133/7

**C**

**contributes to [1]** 133/7

**contributions [1]** 34/6

**contributory [1]** 197/21

**control [4]** 92/22 93/9 109/6 109/14

**convey [1]** 163/25

**convince [1]** 175/24

**copy [3]** 86/2 86/18 153/22

**core [5]** 11/12 15/19 36/6 42/23 71/11

**corner [2]** 147/25 158/9

**corners [1]** 61/12

**Corp [1]** 118/6

**correct [12]** 8/18 27/14 63/6 77/1 92/1 95/19 97/24 104/10 131/2 164/10 166/17 204/3

**correspondence [1]** 152/6

**couched [1]** 75/10

**could [55]** 17/1 20/25 21/2 21/3 21/5 24/3 27/3 28/12 31/16 33/21 41/19 45/9 45/10 49/1 53/24 55/5 59/16 68/3 73/6 77/17 80/21 85/22 91/20 95/14 98/16 102/21 111/3 111/7 111/13 111/20 115/25 117/22 118/25 122/21 123/3 124/9 131/13 131/17 144/22 146/19 149/21 158/22 160/2 160/17 165/20 171/1 172/12 174/21 175/15 176/6 183/15 183/25 188/23 192/21 198/20

**Council [1]** 145/19

**counsel [26]** 6/12 6/23 24/16 24/23 33/5 33/10 38/14 44/5 48/6 49/7 67/12 82/6 82/11 103/6 108/25 110/17 119/3 120/12 130/20 154/8 154/13 167/2 179/18 197/12

**Counsel's [1]** 168/21

**count [14]** 28/20 48/8 97/3 99/22 143/8 180/7 180/8 180/10 181/21 186/12 188/6 190/8 192/1 195/2

**Count 3 [1]** 180/7

**Count 4 [1]** 180/8

**Count 5 [2]** 190/8 195/2

**Count 9 [2]** 180/10 181/21

**counted [1]** 64/16

**counting [4]** 29/7 29/18 29/20 34/9

**country [8]** 30/6 37/23 58/12 58/15 64/17

**counts [7]** 180/5 180/18 180/20 180/24 181/4 181/23 195/1

**Counts 4 [1]** 195/1

**couple [15]** 9/19 14/2 22/12 25/6 29/14 43/25 83/17 89/22 93/14 106/5 123/8 128/8 155/13 160/19 191/4

**courage [1]** 157/15

**course [19]** 18/18 18/20 27/19 30/8 36/25 39/5 49/8 71/1 91/17 94/20 112/24 115/15 122/18 124/5 127/19 132/3 167/24 169/7 174/16

**court [144]** 1/1 4/10 4/11 7/6 8/5 8/10 8/12 9/3 9/24 10/1 12/20 13/1 13/4 16/15 18/24 19/14 20/7 23/24 24/22 25/8 25/15 25/20 26/6 26/8 26/16 26/22 27/15 27/17 30/13 30/19 31/17 31/19 31/24 32/5 32/13 33/23 34/1 34/19 35/5 36/8 37/2 37/4 38/17 38/22 39/1 39/2 40/8 42/3 42/23 42/25 43/5 43/12 44/8 46/13 47/3 47/18 47/20 59/7 59/11 59/14 59/15 62/20 63/10 65/7 65/10 70/15 70/16 72/1 72/9 72/25 74/16 75/14 77/4 83/16 84/15 84/22 85/12 87/19 92/1 95/21 98/7 100/2 110/21 114/16 117/6 118/3 118/4 118/12 120/16 120/22 120/23 121/7 122/1 122/10 122/10 122/25 123/23 124/11 125/13 127/23 128/9 129/1 129/23 130/6 133/12 135/21 135/23 142/9 145/17 145/21 146/1 146/10 146/10 152/19 153/17 154/3 154/25 156/6 156/18 156/22 157/2 167/25 169/12 169/13 172/9 173/5 174/20 177/19 177/25 178/2 181/23 185/2 185/12 185/13 191/14 193/3 200/12 200/13 200/23 201/1 201/4 201/15 201/24 204/7

**Court's [10]** 10/2 38/8 42/10 50/2 95/14 97/22 97/22 117/17 124/23 136/19

**courtroom [3]** 5/22 66/21 72/19

**courts [12]** 10/9 40/25

130/2 130/5 130/7 141/5 150/16 165/5

**cover [4]** 5/24 86/18 145/12 178/18

**coverage [1]** 87/12

**covered [10]** 21/8 75/13 77/23 80/21 80/25 87/16 132/2 167/3 200/3 200/4

**covers [1]** 85/9

**COVID [1]** 204/6

**COVID-19 [1]** 204/6

**create [4]** 73/11 74/4 75/3 189/18

**created [1]** 65/21

**creation [1]** 189/24

**credit [1]** 189/2

**crime [1]** 59/6

**crimes [4]** 51/15 53/22 54/4 188/6

**criminal [29]** 27/13 27/17 27/18 56/13 56/16 56/21 56/24 137/10 144/18 182/10 183/4 183/6 183/8 183/9 183/14 185/1 185/4 185/6 185/7 185/18 185/21 186/5 186/24 187/13 187/17 187/18 189/4 189/9 190/4

**criminality [1]** 185/20

**criminally [1]** 27/19

**critical [1]** 194/18

**crowd [21]** 30/2 31/11 37/1 54/22 58/21 91/21 93/13 93/13 93/25 94/18 94/24 95/5 96/4 96/21 98/11 100/11 110/25 111/5 112/8 112/11 140/11

**crowded [1]** 59/3

**crowds [1]** 60/10

**CRR [2]** 204/2 204/11

**crux [1]** 150/15

**cure [1]** 49/1

**curious [1]** 133/9

**current [2]** 12/6 126/3

**curtain [1]** 157/13

**cut [1]** 81/3

**CV [4]** 1/4 1/10 1/16 5/8

**D**

**D.C [24]** 1/5 2/5 2/10 2/14 2/20 3/13 4/4 4/7 4/13 82/2 107/9 120/7 120/8 146/9 173/16 174/6 179/7 185/13 193/3 197/19 200/23 200/24 201/1 201/14

**D.C. [14]** 88/7 107/2 145/21 157/1 174/17 180/9 182/8 185/2 185/15 193/3 200/23 200/25 201/24 202/11

**D.C. Circuit [7]** 145/21

193/3 200/23 202/14

**D.C. Circuit's [2]** 88/7 200/25

**D.C. Code [1]** 180/9

**D.C. Court [1]** 185/2

**D.C. law [1]** 182/8

**damages [6]** 47/16 47/24 48/4 71/9 86/11 197/8

**danger [1]** 184/5

**dangerous [5]** 92/21 92/25 109/5 123/22 130/2

**Daniel [1]** 3/11

**date [2]** 78/6 204/10

**day [29]** 52/15 57/15 70/3 88/9 89/7 93/23 102/19 106/5 107/12 113/5 116/1 130/24 145/2 145/2 147/1 147/18 147/20 147/23 148/15 149/2 149/10 150/17 155/24 157/12 163/6 167/18 172/6 177/21 192/10

**day's [1]** 176/11

**days [3]** 106/5 125/19 172/25

**dead [2]** 19/8 19/20

**deal [3]** 60/11 108/14 120/1

**dealerships [1]** 161/3

**dealing [3]** 16/17 162/9 163/15

**deals [1]** 163/21

**debates [1]** 149/9

**decades [1]** 177/19

**decided [3]** 18/19 38/23 82/1

**deciding [1]** 77/11

**decision [11]** 18/1 18/4 82/20 88/7 166/2 173/7 181/13 201/24 202/11 202/19 203/4

**decisions [6]** 126/11 145/17 150/15 153/17 170/17 201/8

**declared [2]** 158/22 160/18

**decline [1]** 157/25

**declining [1]** 89/1

**deemed [4]** 35/20 162/7 165/13 165/14

**deeply [1]** 18/24

**defamation [2]** 56/5 131/18

**defamatory [3]** 20/10 20/11 146/3

**defeat [2]** 186/2 186/3

**defend [1]** 144/20

**defendant [12]** 3/2 3/6 3/11 3/15 4/2 5/13 5/14 5/15 98/13 130/22 167/11 197/20

**defendants [31]** 1/7 1/12 1/18 5/16 7/13 38/5 48/11 80/15 81/21

193/3 200/23 202/14

**defense [3]** 49/7 110/17 179/18

**defenses [1]** 197/21

**defer [3]** 97/22 100/4 169/2

**deference [2]** 169/16 169/18

**defines [1]** 184/24

**defining [2]** 151/13 171/24

**definition [2]** 46/8 75/25

**definitionally [1]** 184/5

**degree [3]** 115/20 185/10 196/17

**degrees [1]** 17/22

**delay [5]** 98/14 98/16 113/14 113/20 113/21

**delaying [1]** 113/24

**delegate [1]** 168/16

**delegated [1]** 173/7

**delivered [3]** 31/11 34/7 160/21

**democracy [2]** 141/8 155/6

**Democrat [5]** 8/9 24/6 126/14 143/24 152/7

**Democratic [1]** 172/18

**Democrats [5]** 58/8 72/12 190/14 190/23 190/23

**demonstrate [1]** 23/18

**demonstrated [3]** 76/4 127/15 127/16

**demonstrates [1]** 134/20

**demonstration [3]** 61/24 119/12 121/15

**denied [2]** 146/25 155/3

**denominator [1]** 60/10

**denounce [1]** 69/18

**Department [9]** 146/24 151/7 154/13 154/22 154/25 165/23 166/2 166/22 168/6

**Department's [1]** 160/10

**dependent [2]** 50/4 110/12

**deployed [1]** 186/19

**depth [1]** 156/19

**derail [1]** 98/14

**derived [1]** 40/25

**describe [1]** 113/10

**described [1]** 9/20

**describing [1]** 15/9

**desecrating [1]** 98/13

**designed [1]** 183/18

**desire [3]** 146/5 146/7 146/16

**despite [4]** 144/16 144/16 144/17 144/17

**detail [3]** 26/4 149/19 153/15

**detailed [2]** 80/13 143/23

**determination [7]** 42/25 129/23 169/5 169/11 174/8 174/9 174/14

**determinations [1]** 129/18

**determine [10]** 10/6 10/11 32/5 43/13 43/21 56/5 129/12 129/16 131/16 175/2

**determined [2]** 42/23 178/4

**determining [2]** 9/4 133/14

**Deutch [1]** 152/8

**devoid [1]** 7/21

**dialogue [4]** 66/17 72/7 125/4 125/5

**dicta [1]** 201/11

**dictatorial [1]** 157/24

**did [53]** 16/19 24/11 28/13 31/10 36/25 37/1 43/3 43/8 49/15 57/15 57/19 58/4 59/19 59/20 60/13 64/8 66/18 71/1 71/6 76/13 80/24 84/25 87/11 88/16 89/7 95/6 95/9 103/2 106/3 110/13 113/20 115/13 117/4 122/13 130/22 138/7 149/19 152/23 152/23 160/2 168/23 170/12 171/6 172/22 173/5 173/8 174/5 174/5 176/23 181/25 186/11 189/18 195/18

**didn't [30]** 16/16 55/18 57/17 58/23 69/18 77/18 85/21 86/15 87/10 87/14 87/15 89/11 90/25 103/9 108/24 109/24 113/19 115/10 115/11 115/11 128/12 128/12 128/15 138/9 138/10 138/12 139/3 163/19 181/23 197/14

**different [46]** 14/18 15/3 17/16 17/17 47/14 47/15 47/23 48/4 55/14 55/20 59/21 64/25 71/12 76/1 77/5 80/11 83/3 85/10 85/14 85/15 92/5 94/4 96/14 99/6 106/15 124/19 127/10 134/2 138/15 140/14 140/14 141/10 142/15 145/4 153/6 160/11 160/15 161/20 164/3 164/4 177/23 184/12 184/15 184/16 189/22

**differently [5]** 77/9 88/13 95/24 127/9 136/5

**difficult [2]** 35/16 63/18

**difficulty' [1]** 193/9

**DILLON [1]** 2/12

**diminished [1]** 38/25

**dire [1]** 133/1

**direct [5]** 19/15 36/5 90/4 90/12 188/5

**directed [7]** 25/25 29/25 30/3 31/6 34/22 107/5 189/25

**direction [3]** 13/12 53/16 55/7

**directly [3]** 46/10 82/25 186/18

**disagree [11]** 18/20 50/13 126/25 128/21 144/19 149/6 159/20 178/10 186/14 195/25 199/4

**Disalvo [1]** 185/14

**disappointed [1]** 91/14

**discern [1]** 149/19

**discharge [9]** 25/11 33/15 39/5 39/8 39/10 99/20 110/11 146/7 185/7

**discomfort [1]** 194/9

**discovery [3]** 23/19 42/10 95/12

**discretion [1]** 18/4

**discuss [5]** 74/15 83/22 85/1 155/18 184/21

**discussed [2]** 47/12 48/25

**discussing [3]** 19/19 20/7 63/19

**discussion [6]** 80/17 120/5 131/4 132/12 192/19 202/18

**discussions [1]** 80/8

**disinterest [1]** 103/21

**dismiss [15]** 23/20 60/25 80/10 80/14 82/6 95/11 108/12 113/3 116/15 116/16 118/25 123/7 124/11 180/20 181/17

**dismissed [4]** 7/19 49/17 91/14 166/15

**disorderly [2]** 183/23 183/24

**dispatch [1]** 93/12

**dispatched [4]** 30/2 91/24 93/25 96/22

**dispatching [1]** 94/10

**dispute [2]** 163/14 175/13

**disputed [1]** 155/16

**disputes [5]** 130/3 143/12 155/14 155/16 175/14

**disqualifying [1]** 86/15

**disregard [1]** 99/19

**disrupt [1]** 99/19

**disrupting [1]** 34/23

**distinction [15]** 32/14 32/15 36/18 39/3 41/4 88/19 124/14 124/21 131/2 147/5 147/5 147/10 149/25 151/9 151/13

**distinctions [1]** 159/19

**distinguish [1]** 103/14

**distinguished [1]** 35/2

**distinguishes [2]** 33/19 44/18

**distinguishing [3]** 36/17 44/24 150/4

**distress [10]** 192/4 192/11 192/18 193/5 193/6 193/9 193/20 193/24 194/9 194/16

**district [9]** 1/1 1/1 1/21 72/1 156/17 158/5 174/4 191/14 200/21

**distrust [1]** 103/16

**dive [1]** 18/23

**divided [1]** 172/17

**do [155]** 6/5 7/1 7/1 9/6 10/14 10/18 10/25 11/9 11/15 11/16 11/19 12/7 12/13 14/17 17/1 17/5 18/24 22/9 22/17 27/8 28/14 28/21 28/21 30/13 30/25 32/14 37/10 37/13 38/12 39/2 39/11 40/7 40/18 42/11 43/5 44/7 46/6 46/23 47/13 51/10 55/7 55/25 57/23 58/3 60/11 60/12 60/12 60/24 61/10 61/11 61/14 65/25 66/15 66/15 66/16 67/7 67/15 67/18 68/3 69/9 69/10 69/16 69/21 69/21 69/22 71/10 72/25 73/1 77/13 80/1 80/5 80/8 83/15 84/11 86/7 87/21 88/14 94/10 96/2 98/4 98/15 102/1 104/10 106/2 106/7 107/1 107/19 107/20 107/21 107/22 109/15 111/6 112/9 113/8 115/1 115/8 115/9 117/4 117/4 118/20 119/20 119/20 123/17 123/19 130/19 131/15 131/19 133/11 134/15 135/12 140/23 142/13 147/10 148/11 149/2 149/4 149/24 150/22 151/12 153/3 154/1 154/2 154/14 155/16 158/13 159/4 159/10 160/14 160/20 160/20 161/17 161/18 164/1 167/20 167/25 170/14 173/8 173/22 175/25

**do you [6]** 11/19 40/18 67/15 80/5 147/10 151/12

**do you have [2]** 98/4 133/11

**doctrine [2]** 22/15 22/19

**document [2]** 118/2 144/15

**documents [3]** 118/8 118/13 118/16

**does [38]** 15/10 15/11 15/12 21/22 32/14 32/18 39/7 39/7 41/21 45/6 45/11 45/15 56/5 66/12 68/11 69/5 69/6 88/15 91/5 98/2 106/19 107/22 123/11 131/10 139/9 156/5 159/25 160/22 161/12 162/1 166/4 167/2 171/14 171/16 175/5 187/9 187/13 187/22

**doesn't [45]** 14/7 31/9 35/15 36/8 43/6 51/22 52/18 57/15 60/22 69/8 69/9 69/22 73/20 74/13 75/3 76/2 78/24 85/12 88/14 90/12 91/9 91/9 92/9 93/2 115/15 123/5 123/14 138/23 156/18 159/17 160/4 164/5 165/1 165/2 165/6 168/5 173/23 173/23 183/10 183/20 186/25 189/3 195/22 195/24 199/3

**doing [18]** 5/23 16/4 27/1 43/7 43/9 53/16 57/24 60/24 66/5 71/25 72/6 105/21 109/14 141/15 158/20 174/11 176/3 178/19

**DOJ [2]** 4/6 5/18

**DOJ-CIV [1]** 4/6

**dollars [1]** 155/8

**don't [131]** 6/20 6/22 7/4 7/16 14/13 14/20 14/23 16/23 17/22 22/19 23/15 23/20 37/2 37/8 37/16 38/13 40/14 41/19 48/7 48/11 51/12 51/17 51/24 51/25 52/22 58/10 58/14 59/4 60/9 61/2 61/18 61/21 62/18 62/20 64/7 66/1 66/6 72/11 72/16 72/19 74/9 75/1 75/7 79/6 79/22 82/25 85/1 85/6 85/13 85/18 87/16 87/25 93/15 95/25 96/1 98/17 98/21 99/12 101/7 102/21 103/5

**DONALD [28]** 1/6 1/11 1/17 3/2 5/6 5/7 5/8 7/8 24/7 24/11 43/7 57/16 61/13 80/12 81/22 105/25 106/4 108/4 110/9 116/20 117/18 119/9 126/12 126/13 158/22 160/17 162/6 176/2

**Donald Trump [19]** 24/7 24/11 57/16 61/13 80/12 81/22 105/25 106/4 108/4 110/9 116/20 117/18 119/9 126/12 126/13 158/22 160/17 162/6 176/2

**Donald Trump's [1]** 43/7

**done [17]** 16/14 26/7 26/12 28/12 68/4 68/13 79/19 86/8 86/16 89/17 95/2 103/2 119/4 147/22 159/8 161/9 161/15

**doors [1]** 36/24

**double [1]** 107/1

**doubled [1]** 89/3

**doubled-down [1]** 89/3

**doubt [3]** 65/15 116/9 159/5

**down [33]** 36/23 48/23 52/8 53/1 53/12 53/14 55/2 55/7 58/1 58/5 64/9 64/19 64/23 65/6 69/23 81/2 89/3 94/7 94/22 97/3 98/16 99/22 107/9 112/11 119/9 123/22 130/5 140/13 163/6 176/18 176/23 178/9 181/1

**draw [3]** 35/5 117/17 124/14

**drawn [4]** 12/3 21/1

**D**

**drawn... [2]** 130/2
151/9
**draws [1]** 88/18
**drum [1]** 140/10
**due [1]** 49/7
**Dun [1]** 118/6
**during [14]** 17/14
27/19 42/4 45/15 48/5
68/24 89/15 94/20
112/24 122/5 126/5
128/4 155/25 204/5
**duties [40]** 11/1 16/9
16/11 18/25 21/17
21/19 25/14 25/20 26/3
26/11 26/24 27/24
29/13 33/8 33/15 34/14
36/3 36/17 39/5 39/8
39/10 39/12 44/19
44/24 44/25 45/1 45/6
47/2 47/14 104/2
110/12 143/18 146/8
148/8 153/16 158/12
158/15 160/22 169/11
170/21
**duty [23]** 28/3 36/6
42/23 43/4 107/1 153/9
159/6 180/14 180/15
181/6 181/14 181/16
184/17 184/18 184/24
185/3 185/5 186/4
190/6 196/1 196/4
196/6 197/20

**E**

**each [5]** 6/18 25/24
37/21 83/3 122/16
**earlier [8]** 29/17 58/4
101/20 102/22 105/9
119/12 151/6 188/20
**early [1]** 97/18
**early-evening [1]**
97/18
**easier [3]** 32/20 115/21
181/16
**easily [1]** 37/3
**East [1]** 2/4
**Eastman [3]** 55/16
113/16 113/23
**easy [2]** 7/12 127/17
**ECF [1]** 154/4
**economic [1]** 122/17
**EDNY [1]** 161/7
**effect [6]** 31/11 34/23
73/5 165/25 166/4
182/4
**effectively [2]** 6/13
189/6
**effects [1]** 126/22
**efforts [2]** 28/19 132/8
**EIG [1]** 202/10
**either [26]** 19/24 24/10
34/23 52/14 53/19 64/3
68/24 79/14 90/2 101/5
106/20 116/20 116/21
137/1 137/14 137/15
143/4 150/6 154/3
157/23 187/3 187/6
195/11
**either-or [1]** 137/14
**elected [2]** 29/2 161/6
**election [42]** 12/11
15/8 15/16 15/17 15/17
16/2 28/2 28/10 28/11
28/14 28/16 28/19 31/8
32/21 33/18 41/10 43/8
45/17 45/17 51/3 99/21
103/17 103/17 103/21
113/15 114/3 121/14
128/6 132/9 140/7
140/8 143/7 143/12
153/9 158/1 158/23
159/23 161/8 162/6
174/11 177/20 177/23
**election's [1]** 41/11
**electioneering [4]** 46/7
46/9 150/7 151/10
**elections [22]** 55/17
143/17 147/23 147/24
148/1 148/5 148/10
152/22 155/8 158/8
162/12 162/19 163/12
163/15 163/19 163/20
174/12 176/3 176/10
176/12 176/20 176/22
**electoral [23]** 19/24
28/20 29/8 29/18 34/9
97/3 98/16 107/11
143/7 143/21 143/25
144/3 144/7 144/10
144/11 148/24 149/1
149/8 150/18 155/25
158/21 160/17 162/10
**electoral-votes [1]**
28/20
**electors [2]** 16/2 16/8
**element [7]** 48/23
50/23 68/11 133/22
136/16 137/19 138/21
**elements [7]** 53/2
65/17 67/16 134/19
136/22 137/23 182/2
**elicited [2]** 89/19 91/22
**Ellipse [24]** 7/25 19/3
30/3 53/3 53/5 53/21
57/5 58/21 64/22 66/12
68/24 91/22 92/9 92/10
111/17 113/13 145/9
145/14 145/18 148/20
148/22 176/9 176/16
176/24
**Ellipse rally [1]** 145/14
**else [13]** 62/17 62/18
94/2 104/6 104/19
108/25 114/8 158/3
187/24 188/1 191/20
195/15 201/17
**else's [1]** 118/11
**elsewhere [1]** 129/11
**email [10]** 2/6 2/11
2/15 2/21 3/5 3/10 3/14
3/19 4/8 154/4
**embrace [1]** 127/1
**emotional [18]** 22/23
23/4 23/6 23/14 23/17
192/4 192/11 192/18
192/20 193/5 193/5
193/6 193/19 193/24
194/16
**emotionally [1]** 122/12
**emphasis [1]** 123/10
**emphasize [1]** 153/6
**emphasized [1]** 176/4
**emphasizes [1]** 174/12
**emphasizing [1]**
146/16
**employed [4]** 146/4
146/15 164/23 164/25
**employee [1]** 154/19
**employees [1]** 44/22
**employment [31]**
143/2 143/4 143/17
145/16 145/23 145/25
146/3 147/6 147/7
150/5 150/6 151/11
151/14 151/15 154/4
155/12 155/15 155/19
156/2 158/18 159/2
161/25 162/1 164/9
165/7 166/11 171/5
171/9 174/18 174/22
174/25
**enacted [1]** 85/3
**enactment [1]** 87/22
**encompass [3]** 73/2
73/4 191/18
**encompassing [1]**
21/20
**encourage [1]** 176/9
**encouraged [3]** 53/7
111/16 143/6
**encouragement [1]**
88/19
**encouraging [5]** 89/8
116/3 131/18 158/16
158/21
**end [14]** 7/3 25/2 57/20
85/23 85/24 86/5 96/18
105/10 105/17 110/20
111/5 119/18 194/18
202/8
**ended [3]** 42/25 57/24
177/20
**endorse [1]** 89/12
**ends [1]** 42/19
**enduring [1]** 192/6
**energy [2]** 94/8 202/7
**enforcement [2]** 60/19
122/5
**engage [18]** 56/13
56/15 57/1 67/13 67/25
68/9 68/10 82/12 88/20
100/10 100/20 101/1
137/10 139/16 161/24
165/8 182/18 189/12
**engaged [13]** 25/18
25/22 30/9 31/7 34/4
34/16 36/2 86/7 88/23
91/19 92/7 165/6 184/4
**engaging [1]** 185/4
**enjoy [3]** 15/10 15/11
32/18
**enjoys [2]** 14/8 14/22
**enormous [1]** 36/13
**enough [22]** 50/21
50/25 51/1 51/6 53/10
54/19 55/9 56/17 56/19
68/14 70/1 82/6 102/23
108/19 116/14 116/17
116/18 186/2 187/11
191/18 193/12 194/9
**Enrique [1]** 3/11
**ensued [2]** 89/10 94/3
**ensure [2]** 36/14 39/9
**ensures [1]** 155/8
**entered [1]** 6/2
**entering [1]** 98/12
**entire [8]** 44/17 45/15
85/23 107/7 118/13
149/7 150/10 165/13
**entirely [1]** 158/11
**entirety [3]** 10/11
75/24 170/4
**entitled [7]** 18/14 31/1
38/8 169/12 169/16
169/18 175/3
**entity [3]** 168/17 173/6
175/9
**entrenched [1]** 8/6
**entrust [1]** 29/19
**environment [3]** 126/4
189/19 189/25
**envisioned [1]** 62/23
**equal [6]** 19/17 20/4
20/5 25/25 34/22 72/10
**equally [3]** 77/5 126/20
127/1
**equivalent [1]** 12/25
**era [2]** 92/2 92/5
**erased [1]** 106/10
**ERIC [3]** 1/8 5/6 154/12
**especially [3]** 69/14
82/7 115/3
**essential [2]** 50/23
193/10
**essentially [14]** 42/1
51/8 52/7 55/5 71/11
104/8 112/25 122/5
135/2 139/18 158/13
180/23 182/16 195/19
**establish [20]** 53/10
53/11 55/9 56/17 56/20
57/3 67/14 68/1 68/12
69/4 69/5 71/19 72/2
82/14 116/15 152/11
180/19 183/10 184/14
193/11
**established [10]** 27/16
43/3 44/17 52/13
129/25 152/15 155/11
155/22 180/24 192/3
**establishes [1]** 104/7
**et [13]** 1/3 1/6 1/8 1/11
1/14 1/17 5/5 5/6 5/7
5/7 5/8 55/25 68/21
**et al [3]** 5/5 5/7 5/8
**et cetera [2]** 55/25
68/21
**ethics [22]** 149/24
149/24 151/18 151/23
151/24 151/25 152/2
152/6 152/7 152/18
152/19 152/24 153/22
153/23 163/20 171/25
172/15 172/16 172/21
178/1 178/3 178/3
**evaluate [1]** 127/3
**evaluation [1]** 128/7
**even [52]** 10/24 18/15
19/22 21/18 23/9 23/25
24/2 26/2 26/21 27/4
32/13 40/21 43/15
43/21 44/25 46/4 46/11
55/18 56/3 58/9 62/3
62/3 70/21 82/25 86/13
111/8 111/10 112/20
112/21 114/20 115/2
115/5 116/22 121/14
124/5 124/11 128/20
129/2 131/4 140/7
145/23 146/5 146/16
148/3 152/21 171/6
173/22 175/14 186/5
188/12 192/19 201/1
**evening [2]** 97/18
113/9
**evenly [1]** 172/17
**event [16]** 34/6 83/11
106/4 119/8 121/2
125/19 150/25 160/21
160/23 161/6 161/10
168/11 171/4 171/14
173/4 189/15
**events [4]** 95/24
102/16 111/9 113/11
**eventually [1]** 133/1
**ever [2]** 123/24 125/7
**Evers [5]** 59/16 122/21
123/1 123/17 124/19
**Evers' [2]** 121/22
122/13
**Evers's [2]** 122/1
122/11
**every [13]** 16/19 36/14
60/4 90/1 124/8 126/14
126/14 143/15 143/15
143/16 183/4 187/13
196/14
**everybody [18]** 5/21
5/22 51/23 59/4 82/20
83/25 84/4 92/24 94/2
104/14 108/3 117/18
118/11 149/14 179/10
191/3 191/5 202/20
**everybody's [2]** 23/5
157/7
**everyone [9]** 23/5
42/15 84/1 84/3 90/8
179/8 183/13 189/25
203/5
**everything [6]** 8/20
11/16 98/15 102/17
107/24 177/22
**evidence [11]** 26/19
52/16 60/25 92/20
128/10 136/23 141/2
141/4 174/10 174/20
177/20

**E**

**evidentiary [2]** 166/1
166/3
**exacerbated [1]** 69/20
**exact [4]** 40/13 64/10
141/8 191/21
**exactly [17]** 19/18
22/11 33/22 37/1 39/2
57/24 79/16 85/8 103/2
106/2 106/8 109/15
117/6 171/10 171/24
175/21 176/16
**examination [1]** 43/20
**examine [1]** 31/4
**examining [1]** 46/25
**example [35]** 12/10
13/19 17/14 17/5 17/13
19/12 21/7 21/11 33/7
40/22 42/3 49/12 49/14
55/15 71/21 80/18 96/2
107/19 110/9 111/14
117/21 119/8 125/14
134/11 144/2 144/5
145/19 170/5 170/9
174/1 175/12 183/19
188/10 189/20 197/25
**examples [8]** 11/3 21/6
33/4 33/12 33/21 43/15
43/18 126/5
**excellent [1]** 135/18
**except [3]** 104/14
105/24 199/16
**exception [6]** 45/13
45/21 46/24 130/12
135/14 136/13
**excess [1]** 144/13
**exclude [1]** 79/1
**excluded [2]** 135/5
135/7
**excluding [2]** 76/17
191/6
**excuse [6]** 15/17 48/10
105/5 123/1 143/6
156/9
**excused [1]** 167/10
**executed [1]** 15/21
**executive [10]** 19/23
21/9 21/23 21/24 32/24
70/1 70/17 79/2 79/3
92/17
**exercise [2]** 69/12
148/8
**exercising [1]** 42/23
**exhibited [2]** 93/25
132/8
**exhortation [1]** 53/9
**existing [2]** 135/21
148/12
**exists [3]** 13/23 32/23
36/14
**expands [1]** 87/4
**expect [3]** 6/12 94/6
150/23
**expected [3]** 20/16
119/24 150/22
**expense [1]** 8/11
**expenses [2]** 32/25
33/19

experienced [1]
192/10
**explained [2]** 155/2
155/24 168/24
**explaining [2]** 147/18
159/7
**explains [1]** 162/18
**explanation [1]** 88/10
**explicit [3]** 91/8 92/4
106/1
**explicitly [1]** 82/8
115/18 115/21
**express [3]** 81/10
115/18 115/21
**expressed [1]** 137/23
**extend [1]** 25/13
**extends [2]** 177/11
184/19
**extent [20]** 13/15 38/1
46/13 69/20 74/2 83/2
84/6 95/3 110/9 120/10
120/25 134/10 137/25
152/21 158/15 182/4
183/13 184/2 184/4
191/1
**extra [1]** 112/16
**extreme [3]** 141/1
194/1 194/9
**extremely [1]** 70/10

**F**

**F.3d [2]** 118/7 185/16
**face [3]** 42/21 139/15
141/5
**fact [50]** 9/21 12/18
14/21 18/23 23/19 24/8
36/6 42/7 43/11 51/24
57/20 58/20 60/11 62/1
62/13 69/16 69/18
72/15 77/17 81/7 90/24
91/6 92/6 92/12 96/17
103/18 104/22 105/8
106/3 127/1 128/22
138/4 138/20 143/6
145/13 158/20 159/22
161/4 161/17 163/17
164/25 165/6 169/17
169/24 171/7 171/13
172/1 175/13 175/14
187/16
**factor [1]** 61/3
**factors [1]** 32/7
**facts [24]** 14/22 67/4
69/21 72/22 95/9 107/1
107/3 115/9 121/18
123/16 125/4 125/18
126/2 143/3 143/5
169/21 174/8 174/8
175/7 189/1 192/21
192/25 193/20 194/2
**factual [1]** 159/19
167/16 188/21
**fail [2]** 89/11 202/3
**failed [7]** 16/21 71/10
71/10 85/4 152/14
175/25 182/21
**failing [2]** 70/23 71/17
**failure [3]** 60/17 70/7
100/22

experienced [1]
108/15 108/19 127/7
167/3
**fairly [3]** 56/11 90/22
105/3
**faithfully [1]** 15/21
**fall [10]** 9/6 10/3 11/21
26/2 26/9 26/23 31/14
138/15 164/19 192/24
**fallback [1]** 181/22
**falling [1]** 50/8
**falls [2]** 10/11 37/5
**false [17]** 128/5 128/5
128/10 128/11 128/14
128/15 128/17 128/21
129/2 129/11 129/17
129/24 130/16 132/21
132/25 133/3 183/7
**falsely [1]** 59/3
**falsity [5]** 128/22 129/5
130/8 133/13 140/25
**familiar [1]** 121/21
**familiarity [1]** 83/13
**families [1]** 5/23
**famous [1]** 19/12
**far [12]** 21/5 24/3 31/2
38/7 42/21 58/23
103/24 117/3 120/21
166/18 180/3 183/15
**fashion [1]** 34/1
**fatal [1]** 100/19
**father [1]** 105/10
**faultworthy [1]** 96/15
**favorable [1]** 175/19
**favorite [1]** 190/23
**federal [14]** 16/4 16/8
16/8 33/18 44/21 44/22
75/7 85/4 87/13 87/14
143/14 145/17 153/17
174/4
**feed [1]** 90/8
**feel [1]** 85/12
**feelings [1]** 194/8
**fervor [2]** 94/9 96/20
**few [12]** 24/14 26/5
39/16 63/9 80/3 96/10
100/23 102/18 103/12
117/15 172/25 202/7
**fight [25]** 30/5 55/2
57/22 58/14 58/14
58/14 61/22 66/23
68/20 93/20 96/18
104/25 105/2 105/4
105/14 139/7 139/10
139/10 140/17 157/15
158/1 158/5 187/20
187/24 189/20
**fighting [5]** 60/7 64/16
65/5 129/13 139/9
**figure [4]** 21/1 121/10
180/25 199/20
**filed [1]** 13/20
**filibuster [2]** 11/8 11/8
**filing [3]** 13/20 13/23
13/24
**final [2]** 99/20 143/11
**finally [5]** 46/18 46/23
102/4 176/6 178/9

financial [1]
**find [14]** 10/23 46/20
92/13 98/4 98/6 119/2
136/5 136/6 136/15
139/22 141/22 178/6
180/17 188/9
**fine [7]** 7/15 25/4 84/19
154/21 171/19 178/22
179/2
**finish [2]** 178/21
197/14
**fire [2]** 40/10 59/4
**fired [1]** 30/17
**firing [1]** 35/9
**firmly [2]** 8/6 8/12
**first [101]** 7/5 7/20 9/20
10/3 11/19 14/3 16/7
18/12 18/19 22/13
24/25 25/8 26/15 26/18
29/16 37/19 38/12 45/4
56/9 57/10 59/12 61/19
63/11 63/20 66/1 66/8
66/10 66/11 70/6 74/5
77/7 78/5 80/19 80/21
81/1 83/22 84/7 84/10
84/11 91/4 93/2 101/2
104/7 105/15 106/13
106/21 108/14 114/14
114/17 117/9 117/16
119/22 120/9 120/13
120/15 120/22 120/24
122/2 124/2 124/4
124/9 126/18 126/20
127/5 128/9 128/20
128/23 128/24 129/21
129/25 130/8 130/11
130/21 131/5 132/3
132/15 134/6 134/21
135/3 135/6 136/13
136/24 137/6 137/7
138/6 139/23 147/4
154/22 156/9 156/10
164/21 165/22 173/9
177/16 179/16 179/19
186/16 187/7 188/4
200/4 201/21
**First Amendment [49]**
18/12 26/15 26/18 56/9
57/10 61/19 63/20 66/1
66/8 66/10 66/11 74/5
80/19 80/21 81/1 83/22
84/7 93/2 106/13
106/21 117/9 120/15
120/24 122/2 124/2
124/4 124/9 126/18
126/20 127/5 128/23
128/24 129/21 129/25
130/8 130/11 130/21
132/15 134/6 134/21
135/6 136/13 136/24
137/6 137/7 138/6
139/23 156/9 200/4
**First Amendments [1]**
120/22
**First Circuit [1]** 156/10
**fit [1]** 187/23
**fits [1]** 101/9
**Fitzgerald [17]** 9/21

**Fitzgerald [17]** 9/21
10/8 13/11 13/17
16/16 20/19 20/23
25/13 30/16 30/17
31/25 35/8 35/20 35/25
40/8 47/3
**Fitzgerald court [1]**
47/3
**Fitzgerald's [1]** 30/18
**five [2]** 165/17 178/25
**Flax [1]** 201/23
**fleshing [1]** 193/22
**flipped [1]** 174/23
**floating [2]** 198/4
198/13
**floor [5]** 23/10 149/9
158/6 160/5 161/18
**Florida [3]** 144/10
144/12 144/16
**Florida's [1]** 144/7
144/14
**focus [6]** 49/2 86/7
121/17 121/20 153/13
173/5
**focused [8]** 83/12
107/7 145/6 160/13
161/8 164/13 164/21
167/18
**focuses [1]** 80/10
**focusing [1]** 176/12
**folks [2]** 64/19 171/18
**follow [6]** 59/20 99/11
140/20 172/14 173/10
196/1
**follow-up [2]** 140/20
173/10
**followed [9]** 44/24 52/6
53/9 59/18 67/8 67/25
122/20 123/2 132/18
**following [5]** 67/1
83/15 92/21 182/20
198/23
**follows [4]** 59/14
122/10 122/11 184/3
**foment [1]** 103/16
**fomented [1]** 190/1
**fomenting [5]** 25/24
29/25 34/21 35/13
36/19
**footing [1]** 17/16
**force [6]** 53/8 65/14
65/16 103/25 110/10
186/13
**forceful [1]** 59/10
**forcibly [1]** 98/12
**forecloses [1]** 193/21
**foregoing [1]** 204/3
**foremost [1]** 104/17
**foreseeability [6]**
132/24 133/22 184/23
185/5 185/10 190/5
**foreseeable [6]** 132/24
186/4 186/5 187/10
187/18 193/10
**forever [1]** 102/19
**forget [1]** 67/2
**forging [1]** 32/8
**forgive [9]** 98/5 142/5
172/6

| F |
|---|

**forgot [3]** 39/20 109/2 109/18
**form [6]** 37/22 76/15 116/19 132/5 132/6 132/10
**formal [2]** 7/16 19/23
**former [1]** 80/11
**forms [1]** 95/19
**forth [6]** 86/6 106/11 122/14 153/16 162/24 170/25
**forum [1]** 31/16
**forward [9]** 136/6 140/23 141/13 147/23 147/24 152/11 171/7 172/20 182/9
**found [5]** 39/1 49/18 72/1 136/20 192/24
**four [7]** 7/11 52/9 61/12 125/19 145/15 168/19 177/18
**four-hour [1]** 52/9
**four-page [1]** 168/19
**Fourth [1]** 46/19
**fragmentary [1]** 118/20
**framed [3]** 80/4 189/10 200/12
**framework [1]** 101/14
**framing [1]** 8/14
**frank [1]** 89/24
**frankly [3]** 16/12 19/10 120/5
**fraud [13]** 94/8 113/17 140/9 140/10 140/10 140/15 141/1 141/6 141/7 141/9 144/16 158/1
**fraudulent [1]** 103/17
**free [4]** 6/5 18/4 198/4 198/13
**free-floating [2]** 198/4 198/13
**freedom [4]** 8/7 124/3 124/6 124/7
**freely [1]** 16/12
**freestanding [2]** 135/14 196/13
**front [5]** 12/16 27/2 27/7 160/7 160/8
**fronts [1]** 108/7
**FTCA [4]** 166/19 168/15 168/23 173/8
**full [2]** 7/22 118/25
**function [10]** 9/7 11/12 12/23 13/21 15/14 16/4 16/5 34/24 44/4 79/3
**functional [4]** 9/3 9/7 9/22 9/24
**functionally [1]** 13/10
**functioning [3]** 25/25 34/24 36/12
**functions [2]** 10/12 164/7
**Fund [1]** 202/7
**fundraiser [2]** 156/11 156/21
**funds [4]** 33/13 33/14

**further [10]** 23/14 53/6 54/16 81/21 99/25 108/24 146/9 152/16 152/17 172/22
**furtherance [4]** 44/19 86/8 137/24 158/14
**furthermore [1]** 172/24
**furtively [1]** 92/3
**futile [1]** 49/3
**future [3]** 148/10 152/23 185/20

| G |
|---|

**gathered [2]** 7/25 8/1
**gave [9]** 41/10 75/12 143/15 148/4 148/20 150/17 155/5 155/23 156/11
**general [7]** 16/11 33/6 134/18 148/9 161/1 161/2 168/21
**generally [8]** 12/9 77/8 122/15 136/16 146/2 174/19 185/7 186/9
**generated [2]** 96/21 96/21
**generic [1]** 15/8
**genuine [2]** 175/13 175/14
**geographic [1]** 185/17
**Georgia [4]** 15/6 15/8 147/22 176/11
**Georgia's [1]** 144/3
**get [41]** 6/20 16/1 16/23 29/1 30/24 41/16 54/19 55/25 59/1 60/23 83/5 93/2 95/12 98/21 101/10 105/12 106/9 113/21 114/24 115/4 123/5 131/4 137/14 146/20 153/22 156/18 165/18 166/7 179/11 179/16 184/9 184/15 185/9 189/17 190/7 197/18 198/5 198/10 198/12 202/18 203/4
**gets [5]** 18/1 109/8 154/5 183/13 192/10
**getting [9]** 15/24 51/23 101/11 109/7 124/23 199/25 202/18
**gist [1]** 131/18
**Giuliani [23]** 3/7 5/14 55/20 55/23 57/14 81/22 90/18 96/14 96/17 96/22 97/2 97/17 98/13 99/1 99/16 99/17 103/8 107/16 108/1 111/15 112/24 120/12 126/13
**Giuliani's [1]** 50/12
**give [29]** 11/3 17/5 24/14 28/20 33/21 39/16 39/22 43/25 47/5 58/8 58/9 58/11 61/20 95/25 101/12 110/18 112/3 150/24 153/3

178/19 178/20 178/22 178/25 192/20 197/8 199/19
**given [8]** 34/5 62/25 94/8 106/18 107/24 127/10 161/10 178/8
**gives [3]** 12/12 32/24 199/14
**giving [5]** 10/18 10/21 106/16 110/23 161/23
**Glacken [1]** 161/7
**glad [1]** 110/20
**go [70]** 6/20 7/15 28/18 30/5 35/7 37/15 37/16 38/13 44/2 50/16 53/22 54/4 55/7 57/20 58/7 59/1 59/3 61/21 64/19 70/18 81/15 83/8 83/8 83/9 83/9 83/22 85/14 85/21 89/19 89/20 91/2 93/7 93/20 95/15 99/18 100/8 102/9 102/19 104/12 110/25 112/9 112/14 115/14 119/13 119/23 123/22 124/24 130/5 131/10 131/15 131/20 136/1 136/4 136/6 140/13 142/24 149/21 151/5 154/1 157/10 162/15 167/15 168/11 169/25 178/5 178/13 179/8 179/17 180/2 180/13
**go ahead [11]** 7/15 38/13 44/2 50/16 81/15 89/19 89/20 91/2 93/7 162/15 168/11
**Go home [1]** 102/19
**goal [3]** 51/1 64/5 113/5
**godless [1]** 157/24
**goes [21]** 24/5 27/4 35/3 41/5 44/11 48/1 86/10 97/4 98/17 99/22 124/25 131/9 132/22 132/24 133/21 133/23 139/2 186/8 194/1 196/3 196/19
**going [77]** 12/22 16/13 24/17 32/23 38/7 38/10 42/1 45/20 47/5 47/6 48/16 48/20 48/22 51/10 53/17 57/18 57/25 58/1 58/5 58/7 58/7 58/9 58/11 58/15 60/3 63/18 64/9 65/10 69/11 73/2 73/21 83/1 83/13 85/25 87/5 88/3 92/15 92/17 95/10 97/1 98/18 105/19 105/20 113/16 115/8 119/10 119/11 119/20 119/25 120/13 122/6 127/8 139/10 139/11 139/24 140/12 141/14 142/11 149/3 149/9 154/2 158/13 159/6 160/14

163/18 164/1 165/16 167/13 171/7 178/25 179/13 197/17 200/6 202/14
**Goldman [1]** 193/4
**gone [3]** 62/1 153/15 159/15
**good [9]** 5/2 5/3 5/21 48/19 105/21 112/10 154/11 154/24 166/7
**GOP [2]** 113/22 176/11
**Gordon [1]** 160/25
**Gore [2]** 144/13 144/16
**gosh [1]** 82/8
**got [27]** 5/24 44/20 51/8 58/21 61/22 83/16 90/2 113/15 118/14 119/6 128/1 134/13 141/13 142/6 151/2 154/4 165/18 172/9 175/4 178/18 179/13 180/7 187/9 195/6 196/15 198/8 199/3
**gotten [1]** 61/15
**governing [1]** 178/1
**government [13]** 11/12 19/17 21/23 26/1 34/22 34/24 44/22 134/14 155/7 155/9 155/12 161/4 171/2
**government's [1]** 171/3
**gradations [1]** 197/5
**grant [1]** 49/3
**gray [2]** 44/13 44/14
**great [5]** 62/3 102/18 158/2 167/20 167/24
**greater [4]** 149/19 183/18 183/25 184/1
**grievances [1]** 124/8
**Griffin [1]** 84/22
**ground [3]** 32/8 110/6 196/5
**grounds [3]** 34/12 96/19 128/23
**group [9]** 3/3 27/2 56/16 60/6 61/21 61/23 62/3 157/19 199/9
**grouped [1]** 143/3
**groupings [1]** 90/19
**groups [3]** 90/16 90/21 114/17
**guaranteed [1]** 39/9
**guess [48]** 11/19 37/4 37/12 51/17 59/19 64/7 83/1 85/11 87/7 99/13 105/15 116/7 118/16 118/22 131/12 133/11 134/18 135/1 137/1 138/1 138/24 149/15 156/9 174/22 181/9 181/19 181/21 182/5 183/1 183/7 183/11 183/17 184/11 186/7 186/14 187/12 189/14 189/17 189/22 190/10 191/4 191/7 192/15

193/23 194/11 194/13 195/4 198/25
**guidance [2]** 32/25 34/2
**guy [1]** 40/10

| H |
|---|

**had [64]** 11/15 11/16 16/20 18/9 18/15 23/19 31/19 34/8 34/23 35/9 39/2 40/8 41/10 46/23 59/17 59/18 63/10 63/17 77/15 80/7 81/8 83/18 83/23 84/10 85/3 88/24 89/10 89/15 91/21 92/2 92/4 92/10 102/22 103/2 103/3 103/4 103/7 107/24 108/23 109/12 109/12 122/19 123/2 149/2 150/13 150/13 152/6 153/1 153/1 153/24 159/5 159/8 159/15 160/6 160/7 161/4 161/9 161/15 164/25 170/9 170/25 173/2 197/12 202/7
**Halberstam [5]** 88/7 88/18 200/17 201/22 202/6
**half [1]** 161/22
**halls [2]** 98/12 156/7
**hand [1]** 61/15 94/23 151/10
**handed [2]** 136/18 153/25
**handful [1]** 191/8
**handle [1]** 48/20
**handles [1]** 168/15
**hang [10]** 11/25 27/10 54/10 56/8 65/19 67/20 76/24 98/20 165/16 188/7
**happen [9]** 18/2 41/14 58/23 102/16 107/6 115/10 115/12 123/21 148/16
**happened [16]** 17/14 47/18 65/13 97/9 97/9 104/20 106/2 109/22 111/5 118/3 125/3 125/24 133/2 147/23 170/17 182/1
**happening [3]** 19/18 23/11 186/12
**happens [3]** 7/1 41/16 42/18
**happy [12]** 38/12 85/16 104/15 133/15 136/15 142/17 153/22 154/14 154/21 155/17 167/16 200/5
**hard [8]** 21/19 32/3 34/18 36/22 57/25 83/17 135/11 186/21
**harder [2]** 36/21 133/4
**Hardware [6]** 121/22 123/1 124/17 124/19

**H**

**Hardware... [2]** 124/23 131/3

**harm [13]** 37/22 38/1 39/11 79/7 86/18 86/20 182/1 183/25 184/8 189/19 192/14 192/20 193/10

**harmed [1]** 101/4

**harmful [1]** 193/7

**Harris [1]** 78/3

**has [105]** 10/4 10/21 10/25 11/7 11/9 12/20 13/1 17/12 18/18 19/2 19/9 19/15 19/23 23/5 23/16 23/21 24/2 25/8 25/20 27/6 27/15 27/17 27/18 28/3 28/3 28/13 28/23 29/5 29/17 31/25 34/16 34/19 36/11 37/21 40/17 42/15 43/12 44/6 44/8 44/9 44/16 44/17 46/8 46/20 47/13 48/3 52/3 52/13 52/20 52/20 52/21 53/19 57/10 59/25 61/15 63/15 67/12 68/13 68/25 74/16 75/5 79/17 79/18 80/16 84/15 85/24 100/2 104/11 118/6 120/16 120/22 121/7 123/24 127/16 130/6 131/5 135/12 137/6 139/22 141/6 146/25 153/6 155/16 156/6 164/22 165/14 165/23 167/3 168/5 168/6 168/14 169/21 169/21 175/2 175/25 176/1 176/2 185/2 192/24 198/11 200/12 200/14 200/23 201/1 203/1

**hasn't [6]** 23/19 52/4 108/12 119/4 127/15 193/16

**hate [1]** 62/10

**hatred [1]** 61/20

**have [244]**

**have Mr. Malone [1]** 194/24

**haven't [6]** 49/25 64/16 68/4 111/22 119/6 163/2

**having [11]** 28/19 36/21 64/18 96/14 120/6 135/10 138/3 141/5 178/8 179/24 194/6

**he [226]**

**he didn't [3]** 85/21 113/19 163/19

**he said [13]** 10/11 63/16 93/20 104/24 105/18 106/17 110/13 113/14 114/22 122/6 157/12 160/14 172/25

**he'd [2]** 167/8 167/9

27/7 27/8 31/1 108/9 108/10 110/23 113/25 120/2 157/11 159/11 159/12 161/16 164/13 164/24 171/17

**head [6]** 30/24 116/13 135/11 138/3 179/11 199/25

**healthy [1]** 5/22

**hear [19]** 7/4 9/14 38/11 63/6 84/4 84/5 84/7 84/17 84/18 85/12 105/4 139/3 142/1 154/9 154/16 167/16 172/7 179/15 200/5

**heard [15]** 8/2 63/13 64/13 64/14 83/9 94/4 110/21 112/15 117/18 163/24 164/2 167/7 197/4 200/2 201/18

**hearer [2]** 123/11 123/11

**hearing [7]** 6/8 126/16 127/15 127/16 167/6 179/24 204/5

**hears [1]** 112/10

**heart [9]** 28/18 36/4 97/4 99/19 99/22 100/8 124/2 124/3 141/7

**heels [1]** 59/20

**heightened [3]** 185/5 185/10 190/5

**held [10]** 22/2 42/4 46/20 59/16 78/7 122/21 123/4 145/21 146/1 146/10

**hell [7]** 30/6 58/14 58/15 93/21 139/10 139/11 140/17

**help [6]** 8/10 12/1 38/17 58/11 76/10 180/11

**helped [1]** 14/12

**helpful [2]** 130/17 166/23

**helps [1]** 97/18

**Hence [2]** 143/14 145/12

**her [6]** 23/16 23/21 152/1 162/1 170/2 170/6

**here [132]** 7/17 11/23 14/19 16/23 19/8 19/18 22/7 22/14 23/5 23/9 29/24 32/9 33/22 35/25 38/19 39/3 43/5 43/22 44/1 44/23 46/3 46/12 47/9 49/12 50/17 53/2 54/17 54/18 63/19 64/5 65/23 66/1 66/6 66/12 66/21 67/3 67/7 72/22 72/25 74/17 75/6 75/18 78/2 78/16 79/22 80/8 92/15 93/11 96/3 96/15 99/8 101/3 101/23 106/10 112/5 114/15 115/2 115/7 116/8

120/20 124/6 124/17 125/3 125/4 125/8 125/18 127/2 128/22 129/2 129/12 132/5 133/2 133/15 135/2 135/5 135/7 135/11 135/24 136/13 137/5 137/11 137/12 139/21 140/15 141/4 141/14 141/22 141/24 144/25 145/1 160/15 163/4 165/11 166/12 167/4 167/8 168/1 168/18 169/6 169/9 169/20 170/18 172/4 173/14 174/9 174/23 175/2 178/16 178/20 180/12 183/23 184/10 184/24 185/1 185/10 185/22 186/25 188/10 188/14 188/19 189/20 191/20 194/19 194/19 198/18 199/1 202/20 202/22 202/23

**here's [6]** 50/1 51/10 61/16 122/19 123/20 134/10

**hereby [1]** 152/13

**hero [1]** 105/18

**hey [3]** 112/10 113/14 113/20

**Hi [1]** 24/21

**hierarchy [1]** 35/17

**high [2]** 88/10 193/4

**high-water [1]** 88/10

**higher [1]** 46/3

**highest [1]** 79/1

**highlight [1]** 86/1 87/24 96/12

**Hill [3]** 105/11 191/5 191/8

**him [21]** 7/5 21/3 28/20 29/1 29/2 32/2 63/3 89/1 99/18 100/4 102/23 103/11 105/1 108/17 114/16 119/13 154/16 158/16 161/23 162/4 176/12

**himself [3]** 36/23 36/25 106/7

**hires [1]** 165/8

**his [126]** 7/25 9/9 10/12 11/20 16/9 17/1 17/14 19/12 25/17 26/23 27/20 27/22 28/4 28/9 28/19 28/25 29/6 30/10 30/24 31/7 31/8 31/8 31/13 31/18 31/23 34/13 36/3 41/18 41/18 42/6 45/6 47/19 52/18 53/4 56/4 57/4 57/6 57/9 57/20 57/20 58/5 63/12 64/5 64/24 66/12 86/9 86/14 88/24 89/4 89/13 90/8 92/7 94/22 95/1 96/14 99/19 100/14 100/15 100/22

104/5 104/6 104/7 105/10 105/13 105/17 108/6 108/10 108/13 109/6 111/16 112/16 114/2 114/20 115/13 116/13 119/18 122/5 123/20 124/24 127/9 127/10 131/2 146/7 152/4 155/4 155/17 155/20 156/2 158/14 158/16 158/18 159/2 159/11 159/14 159/18 160/1 160/4 161/8 161/25 161/25 162/18 162/20 163/15 164/7 165/1 165/4 166/10 167/8 167/11 168/2 169/11 171/9 171/14 173/13 174/2 174/3 174/10 175/25 176/7 176/13 176/15 186/6 188/14

**His Honor [1]** 131/2

**historically [2]** 73/7 92/2

**history [1]** 85/1

**hit [2]** 12/13 83/21

**hits [1]** 187/24

**hoarse [1]** 142/6

**hoe [1]** 21/19

**hold [3]** 121/1 121/14 121/15

**holding [6]** 51/4 78/11 78/13 78/18 114/19 122/11

**holds [2]** 21/20 122/1

**home [5]** 21/12 83/9 102/9 102/19 179/11

**honest [1]** 127/14

**honestly [2]** 49/25 169/25

**Honor [141]** 5/2 6/11 7/10 7/18 7/19 9/13 9/19 11/4 11/22 12/9 14/1 14/17 15/19 16/6 17/3 18/17 18/21 21/6 22/10 24/19 28/8 29/15 39/18 40/2 41/23 44/3 44/8 44/11 45/3 45/25 46/18 46/23 48/1 48/15 48/19 48/24 49/22 50/10 50/17 51/11 52/12 53/18 56/4 57/4 57/6 57/9 58/2 58/17 59/23 61/2 61/17 62/19 63/3 63/5 65/7 65/24 66/14 69/6 72/4 72/8 72/25 73/16 74/7 76/12 78/5 84/9 96/9 97/21 98/7 99/6 100/6 100/21 101/1 104/9 105/15 106/23 108/19 109/3 109/17 110/20 111/12 112/16 113/6 113/19 114/3 114/11 116/17 117/11 120/14 121/6 123/8 124/22 125/22

128/6 129/15 130/22 130/25 131/2 131/12 132/1 140/21 151/16 153/5 154/11 154/24 155/13 159/21 160/12 166/4 166/17 166/25 167/5 168/12 169/6 169/19 170/11 171/10 172/16 173/15 174/6 175/20 176/8 177/14 178/15 179/21 181/2 182/24 183/11 188/3 191/13 193/18 194/23 198/23 200/7 200/11 200/16 201/4 201/11

**Honor's [1]** 52/18

**HONORABLE [1]** 1/21

**hope [2]** 5/22 127/15

**hopefully [3]** 24/17 119/23 142/8

**hopeless [1]** 58/8

**hoping [1]** 8/10

**horrible [2]** 61/25 131/15

**hour [5]** 52/9 60/21 96/11 165/18 200/10

**hours [8]** 60/20 69/22 83/16 97/19 100/23 102/14 107/10 145/15

**House [30]** 33/3 90/23 149/9 149/24 150/24 151/17 151/23 152/9 152/18 158/5 160/5 161/18 165/15 165/5 168/7 168/10 168/14 168/15 168/17 168/20 168/22 169/1 169/7 169/8 169/21 170/1 171/25 173/6 173/7 175/9

**House's [2]** 169/15 169/17

**how [54]** 9/5 9/5 9/6 10/2 15/3 15/14 15/16 17/23 17/24 22/21 32/4 32/14 32/14 32/25 37/2 41/19 51/10 52/22 56/5 60/11 71/13 71/16 80/5 85/22 102/21 105/12 111/3 111/7 111/7 128/6 134/9 135/11 135/14 138/4 138/4 141/15 155/24 156/12 158/25 158/25 159/4 159/9 164/8 165/22 178/19 179/13 180/6 184/9 185/9 187/13 187/22 188/16 192/3 194/8

**however [6]** 27/21 112/4 122/23 154/15 174/20 185/4

**huddle [5]** 51/8 51/9 51/17 51/19 52/19

**Hull [3]** 3/11 3/12 5/14

**hullmcguire.com [1]** 3/14

**H**

**hung** [1] 98/21
**hurdles** [1] 116/24
**hypothetical** [4] 18/21
46/1 59/22 189/21
**hypothetically** [3] 18/8
49/13 56/12

**I**

**I also** [1] 56/20
**I am** [6] 9/13 126/7
131/25 144/9 145/1
161/17
**I apologize** [1] 167/21
**I appreciate** [2] 130/18
153/19
**I assume** [4] 8/17
48/13 77/3 175/5
**I believe** [9] 10/19
47/11 48/15 67/18
97/18 97/24 117/16
144/11 174/18
**I can** [10] 49/8 49/20
50/1 84/10 84/18 84/18
98/4 98/4 131/11 132/1
**I can't** [1] 158/3
**I cannot** [1] 21/7
**I did** [3] 149/19 174/5
174/5
**I didn't** [6] 108/24
109/24 128/12 128/12
128/15 197/14
**I don't** [33] 14/20 14/23
22/19 51/12 61/2 61/21
66/6 72/19 79/6 82/25
85/1 85/6 85/18 87/16
96/1 98/17 98/21 99/12
111/2 112/2 114/8
116/9 117/9 119/9
126/25 137/14 170/11
179/25 180/6 187/24
193/18 193/20 198/25
**I don't have** [3] 62/18
93/15 202/11
**I don't recall** [1]
119/13
**I gave** [3] 143/15
148/20 150/17
**I guess** [38] 11/19 37/4
51/17 59/19 64/7 83/1
85/11 87/7 105/15
116/7 118/16 118/22
131/12 134/18 135/1
137/1 138/1 156/9
181/9 181/19 181/21
182/5 183/1 183/7
183/11 183/17 184/11
186/7 186/14 187/12
189/14 189/17 189/22
190/10 191/4 193/23
195/4 198/25
**I have** [19] 14/13 23/21
64/10 81/17 83/12 86/3
92/12 114/8 127/17
135/2 136/15 147/4
151/18 154/13 170/1
175/16 177/13 187/12
200/17

**I hope** [1] 5/22
**I intended** [1] 195/13
**I just** [16] 5/25 41/23
42/2 42/15 87/24 103/7
109/7 109/24 131/1
136/19 138/1 140/20
153/5 158/10 166/7
201/18
**I know** [24] 6/2 38/16
39/17 49/24 61/12
89/15 95/21 97/22
99/10 100/3 108/9
115/4 117/25 119/2
119/3 119/5 119/10
119/20 120/2 125/17
153/1 153/20 174/1
202/21
**I mean** [62] 12/24 14/9
27/3 35/7 40/18 44/16
44/23 51/21 54/6 57/12
59/24 64/8 65/3 66/6
66/7 69/14 71/21 73/18
77/22 85/14 88/15
89/21 90/5 97/24
103/20 104/17 107/19
107/22 111/14 113/2
115/17 115/21 129/7
134/10 136/9 136/14
147/17 148/14 156/6
156/8 159/17 170/5
180/12 181/14 181/15
182/7 183/5 183/17
183/18 184/11 186/8
186/8 186/10 187/15
189/24 191/4 192/22
193/3 194/12 195/23
198/5 199/2
**I mean, there's** [1]
111/18
**I misspoke** [1] 121/24
**I neglected** [1] 117/13
**I recall** [1] 119/10
**I should** [6] 38/17
40/16 89/14 117/12
171/1 200/20
**I suggest** [1] 87/4
**I think** [165] 7/12 7/13
20/23 22/10 22/11 23/8
25/6 27/15 29/16 32/21
34/18 34/19 36/8 37/20
41/5 42/9 42/15 45/2
45/8 47/13 47/17 47/17
49/2 50/2 55/13 56/8
56/9 56/19 57/10 57/17
57/21 59/23 60/14
60/18 63/10 63/20
64/21 70/4 70/10 73/12
73/13 74/10 74/13 75/4
75/8 76/4 80/3 80/8
80/17 80/22 81/5 81/23
82/15 82/15 82/16 83/1
83/5 83/21 85/8 85/11
85/20 90/11 91/4 91/7
91/18 91/20 92/1 92/24
94/10 95/21 96/5 96/13
96/25 97/8 97/21 97/23
97/25 98/5 98/7 98/18

103/19 104/5 104/25
111/13 115/1 116/13
117/20 117/25 118/12
119/9 119/23 121/23
121/23 124/22 128/2
129/8 131/2 132/1
132/11 132/12 132/16
132/22 133/2 133/3
133/5 133/21 133/22
134/1 134/20 134/21
135/17 136/2 136/9
137/2 137/17 138/18
138/19 149/22 157/7
158/24 159/8 162/16
163/24 168/4 168/12
168/14 169/7 169/19
170/14 173/4 175/16
175/25 176/25 178/2
179/13 181/2 181/24
185/20 186/16 188/3
188/19 189/11 190/3
190/7 190/9 190/17
190/23 192/17 193/19
194/2 194/11 194/12
194/12 196/3 198/17
199/5 200/3 200/7
200/12 201/10 202/16
**I thought** [4] 22/6 38/7
58/2 84/11
**I understand** [16]
11/11 33/21 35/1 47/8
52/18 71/3 71/3 74/24
74/25 75/24 101/14
110/14 124/14 125/2
168/9 182/24
**I want** [23] 27/11 38/6
41/8 42/14 49/6 49/8
74/23 80/3 99/13 100/7
100/23 106/25 126/2
127/21 144/24 146/20
149/15 157/10 173/15
178/19 178/20 180/5
195/1
**I wanted** [7] 6/8 60/24
96/12 109/10 112/5
176/17 176/18
**I was** [8] 6/7 35/7 41/3
98/24 133/2 148/11
154/2 163/12
**I were** [1] 105/16
**I will** [2] 145/12 167/20
**I will ask you** [1]
199/10
**I will take** [1] 24/24
**I would** [5] 10/14 23/24
57/6 169/15 183/12
**I'd** [9] 88/3 90/18 118/4
127/11 127/15 136/15
167/23 168/13 201/3
**I'll** [41] 6/18 6/25 7/1
24/13 25/23 37/14
37/16 39/16 43/25
50/15 62/22 63/3 68/7
72/17 84/7 84/14 86/2
89/24 90/15 100/4
108/11 110/18 120/14
125/18 127/14 135/17

103/19 104/5 104/25
111/13 115/1 116/13
117/20 117/25 118/12
119/9 119/23 121/23
121/23 124/22 128/2
129/8 131/2 132/1
132/11 132/12 132/16
132/22 133/2 133/3
133/5 133/21 133/22
134/1 134/20 134/21
135/17 136/2 136/9
137/2 137/17 138/18
138/19 149/22 157/7
158/24 159/8 162/16
163/24 168/4 168/12
168/14 169/7 169/19
170/14 173/4 175/16
175/25 176/25 178/2
179/13 181/2 181/24
185/20 186/16 188/3
188/19 189/11 190/3
190/7 190/9 190/17
190/23 192/17 193/19
194/2 194/11 194/12
194/12 196/3 197/14
198/2 198/5 198/7
198/19 198/22 198/25
199/15 199/20 200/5
202/14
**I'm going** [7] 38/7 47/5
48/22 119/25 142/11
165/16 178/25
**I'm just** [8] 55/22 85/25
138/3 180/3 190/21
196/21 198/2 198/25
**I'm not** [15] 7/16 55/6
67/4 87/1 106/16
108/16 127/2 192/10
194/13 195/4 196/21
198/5 198/7 198/22
202/14
**I'm not sure** [9] 22/21
95/10 118/16 151/20
168/8 172/24 173/1
175/20 184/13
**I'm sorry** [11] 39/18
81/13 81/15 89/19
96/11 115/11 142/18
157/6 184/19 185/14
197/14
**I'm sure** [5] 88/6 92/13
95/9 121/21 185/23
**I've** [27] 6/17 17/6 21/6

85/14 89/23 90/1
103/13 105/8 106/11
110/21 125/16 126/1
142/6 151/2 151/5
163/24 165/18 172/8
177/18 179/13 192/8
197/4 202/10
**ID** [1] 144/18
**idea** [4] 42/22 100/19
112/10 113/23
**identified** [4] 9/9 24/25
73/25 122/23
**identify** [1] 32/23
**ignore** [1] 10/10
**ignored** [1] 8/3
**ignoring** [1] 189/23
**III** [8] 6/21 22/5 22/8
22/14 24/4 37/13 37/19
39/13
**ill** [1] 131/12
**illegal** [2] 50/25 51/14
**illegitimate** [2] 140/13
144/11
**illness** [1] 193/14
**imagine** [1] 58/18
**immediacy** [1] 106/19
**immediate** [4] 60/9
105/7 106/13 156/11
**immediately** [8] 52/6
54/15 58/13 59/20 67/9
68/24 69/18 123/2
**imminence** [1] 132/7
**imminent** [5] 107/5
115/22 132/4 132/19
132/23
**immune** [11] 13/24
20/12 26/14 27/22
31/18 35/20 41/15
41/18 41/19 70/23
198/22
**immunity** [51] 6/21 7/5
8/17 8/19 9/1 9/23 10/8
10/14 10/23 11/21 12/8
12/22 13/3 13/5 13/12
13/22 13/23 15/10 17/2
17/7 17/18 17/20 17/21
18/15 18/22 19/8 20/3
20/7 21/24 22/5 22/16
25/9 27/12 27/12 27/16
28/7 30/15 31/1 32/16
32/18 40/15 40/16
40/21 40/23 45/7 45/12
45/23 45/24 70/12
70/12 70/20
**immunized** [1] 196/18
**impact** [1] 12/22
**impassioned** [1]
122/15
**impeachment** [1]
16/21
**impermissible** [1] 36/8
**implausible** [5] 50/5
52/15 57/9 57/13 112/5
**implicates** [1] 137/7
**importance** [1] 202/25
**important** [35] 11/23
13/8 14/5 17/19 25/14

219

**important...** [30] 45/9 46/2 50/20 63/21 70/11 72/8 73/7 73/7 75/17 75/21 80/7 95/17 95/17 96/2 96/24 97/4 114/15 120/19 125/12 127/18 128/21 150/20 150/20 162/17 162/21 163/5 168/13 169/6 170/19 173/4

**importantly** [3] 9/10 16/10 78/16

**imposed** [2] 196/5 197/20

**impossible** [1] 25/7

**impressed** [2] 37/25 38/1

**impromptu** [2] 53/20 110/23

**improper** [3] 36/2 50/24 161/23

**improperly** [1] 35/10

**impunity** [1] 15/11

**Inaction** [1] 69/24

**inadequately** [1] 51/12

**inappropriate** [2] 13/17 115/8

**inaugurate** [1] 140/12

**incendiary** [4] 30/10 88/25 89/4 99/18

**incidental** [1] 146/4

**incidents** [1] 125/17

**incite** [6] 54/24 104/8 116/5 130/15 138/7 138/14

**incited** [5] 53/7 65/22 135/13 138/20 187/4

**incitement** [10] 56/21 60/8 66/9 74/4 106/3 106/9 106/12 115/22 129/5 183/23

**inciting** [2] 70/23 195/2

**include** [6] 49/18 77/10 77/15 110/6 183/16 191/3

**included** [2] 48/9 122/4

**includes** [2] 118/8 185/20

**including** [7] 55/3 76/16 97/14 110/7 143/10 147/22 170/24

**inconceivable** [1] 31/19

**inconsistency** [1] 187/20

**inconsistent** [1] 99/13

**incorporated** [1] 118/8

**incorporates** [1] 195/20

**incumbent** [3] 41/10 41/15 41/17

**incurable** [1] 49/3

**independent** [4] 18/19 187/9 188/24 199/12

**independently** [2]

**independents** [2] 191/4 191/8

**indicate** [2] 145/9 169/10

**indicia** [3] 33/23 95/15 96/5

**indict** [1] 137/21

**indictment** [1] 127/22

**individual** [1] 62/21

**individuals** [6] 51/14 52/6 76/14 78/23 163/18 191/1

**indulge** [1] 142/9

**infer** [4] 70/1 90/20 93/1 175/15

**inference** [6] 90/17 111/15 111/19 111/24 112/3 193/22

**inferences** [2] 120/8 179/8

**inflaming** [1] 66/23

**inflicted** [1] 103/4

**infliction** [5] 192/2 192/2 192/5 192/5 192/17

**influence** [2] 29/5 29/8

**influencing** [1] 34/9

**inform** [3] 180/13 180/19 196/11

**information** [4] 46/16 89/16 96/16 177/13

**informs** [1] 182/12

**infrastructure** [1] 36/13

**infuriate** [1] 18/3

**initial** [2] 60/15 155/18

**initially** [1] 44/4

**injured** [5] 39/4 39/6 75/2 86/9 198/14

**injuries** [5] 23/17 23/20 38/2 86/16 103/3

**injury** [18] 22/23 22/24 22/25 23/4 23/6 23/13 23/22 24/3 24/9 38/25 41/15 50/18 182/20 183/15 187/18 187/18 192/13 193/22

**innocuous** [1] 131/9

**inquire** [1] 26/6

**inquiries** [1] 194/13

**inquiry** [2] 42/20 43/1

**inside** [4] 69/21 70/3 97/15 155/19

**insofar** [3] 90/6 138/21 169/14

**inspire** [3] 116/2 148/22 178/12

**inspired** [1] 62/2

**inspires** [1] 61/20

**Instagram** [1] 106/6

**instance** [12] 8/25 10/17 11/6 20/17 21/10 23/9 28/12 46/8 48/3 66/22 91/10 130/13

**instances** [2] 185/18 190/19

**instead** [7] 7/22 8/5

179/18

**instigating** [1] 152/4

**insurrection** [5] 29/25 34/21 35/13 36/20 51/10

**insurrectionists** [1] 102/14

**integrity** [3] 28/2 28/12 28/16

**intend** [1] 195/12

**intended** [20] 39/11 64/1 79/1 79/4 83/18 84/23 85/6 86/17 89/10 92/18 99/19 99/23 113/5 135/20 147/20 159/9 163/25 193/13 195/13 199/9

**intending** [2] 6/7 30/25

**intends** [1] 38/14

**intent** [7] 101/20 141/4 176/8 176/13 189/11 189/12 195/13

**intentional** [18] 77/19 165/6 165/8 165/10 187/21 187/22 188/10 188/13 189/4 189/6 189/16 189/24 192/2 192/4 192/17 195/12 196/15 197/7

**intentionality** [2] 189/23 196/20

**intentionally** [3] 13/5 193/12 195/11

**intentions** [1] 89/13

**interactions** [1] 194/5

**interest** [2] 157/19 202/24

**interested** [1] 67/4

**interesting** [1] 202/17

**interfere** [5] 110/11 132/8 134/12 186/12 190/13

**interfered** [1] 134/13

**interfering** [1] 25/25

**interpret** [2] 66/2 120/25

**interpretation** [5] 84/12 84/21 104/11 117/23 169/15

**interpreting** [1] 77/4

**interrupt** [11] 49/6 74/21 90/25 97/7 101/7 111/13 142/11 144/23 146/19 167/13 175/11

**interrupting** [1] 80/2

**intertwining** [1] 106/24

**intervening** [5] 185/6 186/16 186/17 186/24 188/15

**interview** [2] 145/22 150/15

**interviews** [5] 146/2 146/12 150/12 157/3 157/4

**intimidation** [6] 65/15 65/16 104/1 110/11 144/17 146/13

**invade** [7] 54/11 55/4 68/23 70/16 93/17 94/19 94/25

**invaded** [1] 54/23

**investigation** [1] 152/3

**investigative** [2] 152/11 152/14

**invitation** [43] 8/12 53/4 53/9 53/16 53/21 54/3 55/1 55/2 55/7 56/1 56/13 56/14 56/25 57/1 57/2 57/23 60/1 61/3 62/6 62/12 67/13 67/14 67/17 67/22 67/23 67/24 68/1 68/9 68/10 82/12 83/7 83/10 94/22 100/10 100/12 100/20 101/1 102/24 109/9 109/20 110/23 112/7 141/10

**invited** [4] 6/9 53/2 53/6 108/3

**involve** [3] 139/16 150/14 189/11

**involved** [11] 11/5 14/8 46/10 79/10 79/12 114/7 115/7 116/21 121/22 134/16 156/10

**involvement** [2] 19/15 152/4

**involves** [4] 82/21 110/15 125/18 183/2

**involving** [5] 8/7 121/23 143/12 185/6 185/24

**Iqbal** [1] 82/9

**Iraq** [1] 146/14

**ironic** [2] 144/2 144/5

**irony** [3] 167/24 167/24 168/3

**is** [670]

**is a** [1] 21/18

**is that** [2] 97/8 175/17

**is that correct** [1] 63/6

**is there** [11] 16/25 20/24 21/2 37/8 81/2 101/8 104/7 107/15 135/6 165/25 175/13

**Islamic** [1] 145/20

**isn't** [25] 12/19 28/6 29/10 34/15 40/22 40/23 44/15 44/23 46/14 54/19 55/9 57/23 60/24 63/22 63/23 69/25 80/19 88/3 88/13 92/20 113/2 148/3 149/1 158/10 186/2

**isolate** [2] 105/16 140/1

**isolation** [3] 104/17 104/18 140/17

**issue** [54] 5/25 7/5 7/11 16/7 16/7 18/18 22/14 24/7 26/18 28/9 30/16 32/13 37/19 38/6 40/12 41/5 45/25 48/21 48/22 50/17 57/11

83/22 84/6 91/19 94/16 100/17 108/11 109/1 120/9 123/25 126/10 130/8 143/1 147/16 150/20 156/23 157/1 157/3 160/20 163/3 163/21 169/6 170/24 173/5 184/15 184/16 184/17 187/10 200/18 200/22 201/22

**issued** [4] 6/15 31/12 33/5 100/20

**issues** [28] 6/5 6/16 8/14 12/22 18/16 19/1 20/20 24/25 25/2 49/1 49/3 63/19 73/12 80/18 115/5 119/22 127/18 161/9 167/16 167/16 171/19 179/20 179/22 181/23 188/20 200/4 200/12 200/13

**issuing** [2] 101/1 102/24

**it** [411]

**it doesn't** [1] 76/2

**it would be** [18] 10/7 21/14 35/16 45/13 49/3 49/12 56/20 56/21 66/3 72/13 73/9 92/25 100/14 118/19 130/1 163/5 169/4 181/8

**it's** [170] 8/19 8/20 9/25 12/22 13/8 14/5 14/14 14/17 14/24 16/8 17/10 20/15 21/9 21/18 23/1 24/19 24/22 25/14 28/4 28/25 29/6 29/7 30/19 32/3 33/9 33/13 34/18 35/20 36/22 39/10 42/10 42/16 42/18 45/7 46/13 46/14 46/15 50/21 50/22 50/25 51/1 51/6 51/12 51/12 51/18 56/23 60/17 60/20 61/10 61/17 61/19 62/10 62/16 63/18 63/21 72/10 72/11 72/16 72/18 72/18 73/21 75/18 77/7 78/9 78/14 78/20 78/20 80/21 80/25 81/1 81/5 81/16 83/15 83/19 85/7 89/25 92/15 95/17 98/3 100/24 105/3 107/8 107/11 109/4 109/18 112/2 112/3 112/13 112/14 113/10 114/4 115/3 115/21 115/21 116/17 116/17 117/25 120/5 124/22 126/12 126/20 126/22 127/4 127/6 128/2 128/3 129/8 129/9 129/17 129/17 129/19 129/20 129/23 130/15 130/15 130/24 130/25 132/17

**I**

it's... [52] 132/22 135/24 136/9 137/14 137/23 138/24 140/25 141/1 141/3 142/12 142/16 146/23 150/12 153/20 155/6 155/10 155/21 159/3 159/5 160/1 161/21 161/25 167/14 167/17 170/20 175/4 176/25 178/18 178/25 181/24 182/7 182/11 182/13 182/13 182/19 185/14 185/17 187/6 188/24 190/17 190/18 192/19 192/21 194/3 196/15 196/23 196/24 197/2 198/6 199/17 199/20 200/3

italicizing [1] 174/13
item [1] 38/24
its [20] 10/11 25/10 42/21 45/7 45/11 53/1 71/18 75/14 84/12 85/7 98/12 98/13 134/20 137/18 152/12 169/8 169/8 169/16 170/4 192/25
itself [10] 26/21 58/25 59/24 59/25 62/5 70/8 89/5 108/6 136/16 157/10
IV [3] 2/12 3/7 3/11

**J**

Jackie [1] 152/8
JAMES [2] 1/14 5/8
January [51] 1/5 7/24 9/10 11/15 14/6 14/12 18/11 19/3 23/10 25/19 25/23 27/5 29/4 34/4 53/3 53/5 57/5 58/23 64/3 64/3 65/16 81/9 82/2 104/6 104/16 104/19 104/20 104/23 105/14 105/17 105/23 106/14 106/17 107/7 107/7 107/9 107/17 108/2 108/6 110/13 128/4 140/11 142/21 145/5 145/14 149/8 151/19 152/5 155/5 173/1 204/10
January 6th [3] 27/5 105/17 149/8
Jayapal [3] 144/3 151/22 153/23
jdhull [1] 3/14
jeopardy [1] 52/10
Jersey [1] 4/3
jesse [4] 3/2 3/5 5/13 7/7
job [1] 143/18
jobs [1] 174/4
Joe [1] 107/23
John [2] 3/11 5/14
join [7] 53/22 54/3 60/1 61/3 62/6 62/12 157/25

joining [1] 108/4
joint [2] 107/10 186/12
Jonathon [3] 3/15 3/16 5/15
Jones [4] 25/15 31/22 47/13 47/18
jonmoseley.com [1] 3/19
Joseph [5] 2/2 3/7 5/9 5/14 24/20
Joseph Sellers [2] 5/9 24/20
Joseph Sibley [1] 5/14
Jr [13] 7/8 24/8 24/11 57/16 61/13 81/22 103/8 104/4 104/13 106/4 110/10 116/20 126/13
jsellers [1] 2/6
judge [8] 1/21 17/25 18/1 32/15 143/12 150/9 153/21 154/6
judges [2] 18/3 202/12
judging [2] 26/12 26/13
judgment [1] 175/12
judgments [1] 202/14
judicial [2] 17/20 71/9
juncture [1] 23/16
jurisprudence [1] 128/24
juror [1] 174/21
jury [4] 143/12 174/19 175/15 188/9
just [172] 5/25 6/8 6/25 8/16 11/4 12/15 14/24 16/6 17/9 17/10 22/22 26/4 27/11 34/1 34/5 40/4 41/8 41/23 41/23 42/2 42/15 42/18 42/20 43/9 43/22 43/25 45/23 47/10 47/12 49/7 49/17 49/19 50/6 53/16 55/8 55/22 55/22 56/3 56/11 59/22 60/8 60/9 62/12 63/5 63/21 63/21 65/23 72/8 72/17 73/20 73/24 74/16 76/5 78/24 79/23 81/3 84/18 85/10 85/18 85/25 87/6 87/24 88/12 88/25 89/11 89/24 90/6 92/8 93/22 94/2 98/5 98/6 98/20 100/15 100/22 101/2 101/12 102/21 103/7 103/11 105/13 107/9 108/8 109/7 109/18 109/19 109/24 112/7 112/13 112/14 113/9 113/14 113/17 114/1 115/10 116/22 116/24 117/15 119/25 121/7 124/6 124/13 125/23 126/9 127/11 129/8 129/13 131/1 131/19 132/7 132/20 132/20 134/3 136/1 136/3 136/19

140/1 140/16 140/20 141/15 144/22 144/24 146/19 148/18 149/21 150/10 150/11 151/5 153/5 153/13 156/4 157/6 157/10 158/10 159/10 160/6 160/9 160/13 161/25 165/12 165/17 165/20 166/7 167/18 170/6 172/25 176/4 180/3 180/24 182/5 182/15 185/7 188/16 189/22 190/21 191/11 194/25 195/23 196/21 196/23 197/17 198/2 198/5 198/13 198/25 199/2 199/6 201/18 202/1
Justice [7] 146/25 151/7 154/14 155/1 165/23 166/22 168/6
Justice's [1] 166/2

**K**

KAISER [1] 2/12
kaiserdillon.com [1] 2/15
keep [3] 134/3 158/2 197/23
Keepers [16] 3/15 5/15 6/4 38/10 38/14 81/4 81/7 81/20 83/12 90/7 90/15 91/7 91/15 117/21 118/11 118/21
Keepers' [2] 6/1 80/9
keeping [1] 7/16
keeps [1] 59/5
Kennedy [1] 156/11
kept [1] 91/15
Kevin [1] 102/1
key [3] 122/19 162/17 171/19
kick [1] 176/22
kicking [1] 163/7
kind [28] 12/19 33/17 42/19 44/10 52/16 52/20 58/11 60/7 61/23 85/24 89/8 90/12 92/20 103/22 106/8 113/2 115/18 131/17 146/4 146/14 164/22 164/24 182/12 182/17 186/3 186/4 186/8 189/12
kinds [1] 144/20
King [1] 3/3
kneed [1] 190/22
knew [3] 94/9 103/2 149/14
know [157] 6/2 6/25 13/18 14/13 16/10 16/12 17/12 19/12 21/10 21/21 23/12 28/16 35/8 36/24 37/8 38/13 38/16 39/17 42/14 45/17 49/24 50/24 51/18 51/25 52/1 52/22 54/7 54/9 54/17

63/24 64/8 64/18 64/20 66/9 66/22 66/25 67/7 67/9 71/22 79/14 80/10 82/2 83/11 85/7 87/18 88/18 89/15 90/6 92/14 92/16 92/22 93/21 95/8 95/21 95/25 97/22 99/10 100/3 102/7 103/5 105/2 105/3 105/18 106/5 106/10 106/11 106/18 106/25 108/5 108/5 108/9 108/12 110/5 112/19 112/20 114/18 114/22 114/23 115/4 115/18 115/22 116/1 116/12 117/25 118/14 119/2 119/3 119/5 119/10 119/10 119/20 120/2 122/6 125/17 126/12 126/23 126/24 127/10 128/9 134/12 134/24 135/1 139/7 149/15 153/1 153/20 154/4 156/12 163/19 166/18 167/14 168/9 169/25 170/9 172/16 174/1 179/1 179/25 181/3 182/2 182/11 182/13 182/20 183/9 183/19 183/19 183/20 184/5 184/13 185/1 185/22 187/7 187/19 188/5 189/5 189/21 190/21 190/22 190/24 190/24 191/10 191/23 192/15 192/18 193/21 194/4 194/4 196/8 196/25 198/6 198/8 198/13 202/21
knowledge [1] 17/12
known [2] 111/8 111/16
knows [2] 43/9 44/13
Kurd [1] 191/14
Kurdism [1] 191/19

**L**

lack [1] 34/7
laid [1] 6/16
Lamar [1] 87/19
landslide [1] 102/16
language [21] 9/25 76/1 76/2 77/9 86/1 86/7 86/17 94/5 94/9 99/18 100/19 120/20 122/18 122/19 158/24 162/24 162/24 162/25 163/3 163/4 194/7
large [3] 17/18 184/5 190/13
largely [3] 22/16 75/9 75/15
last [12] 6/15 47/6 57/20 58/5 138/2 139/1 142/8 174/3 176/14 177/21 179/6 192/1

[5] 142/12 167/17 172/6 178/19 200/10
lateness [1] 96/10
later [14] 60/15 60/18 60/18 60/20 62/22 89/7 93/23 101/19 102/14 109/12 113/8 122/24 146/16 181/1
launch [1] 152/3
Lavaca [1] 3/8
law [58] 3/3 3/16 20/8 42/12 44/17 46/8 51/21 60/19 62/11 72/11 72/11 72/13 72/18 72/18 72/21 79/18 91/4 101/2 101/3 103/19 120/7 127/9 129/1 143/15 157/5 164/5 166/1 168/5 169/22 173/16 173/16 174/20 175/3 179/7 182/8 183/1 189/24 192/12 195/19 195/20 195/21 195/23 195/24 196/1 196/6 196/14 196/16 196/23 197/2 197/3 197/21 198/8 198/14 199/12 200/19 200/19 200/24 201/14
lawful [2] 29/21 34/24
lawfully [1] 72/6
lawless [4] 115/22 116/3 116/8 116/10
lawlessness [8] 107/6 132/4 132/5 132/7 132/10 132/19 132/23 183/25
lawmakers [3] 52/10 158/21 160/16
laws [7] 15/21 15/22 15/23 25/16 31/23 37/22 178/3
lawsuit [4] 21/16 83/1 143/22 160/4
lawsuits [5] 13/20 13/21 13/23 13/25 82/24
lawyer [1] 202/3
lawyers [1] 7/2
lead [10] 24/17 24/24 45/22 48/14 107/7 110/15 140/3 183/25 184/8 194/6
lead-in [1] 140/3
lead-up [1] 107/7 110/15
Leader [1] 97/15
Leader McCarthy [1] 97/15
leading [3] 64/3 140/6 144/13
leads [2] 106/13 133/1
leaking [1] 56/9
leaps [1] 117/5
learn [2] 157/14 157/16
lease [2] 17/8 17/10
least [46] 14/9 18/12 22/20 30/22 34/23

**L**

least... **[41]** 35/24 37/24 38/17 42/16 43/13 43/20 54/19 60/25 64/15 64/20 70/1 70/24 72/1 73/14 81/4 94/10 105/3 105/9 113/3 116/10 119/17 119/18 121/17 123/5 139/15 146/7 159/7 159/18 163/24 164/15 166/11 166/13 166/15 170/20 181/16 182/9 185/11 186/25 189/10 192/12 202/12

**leave [13]** 13/22 30/22 49/2 49/3 53/2 56/23 68/8 69/23 95/25 99/1 111/17 112/3 167/10

**leaving [1]** 102/18

**led [1]** 61/7

**left [2]** 80/24 139/25

**legal [20]** 7/21 7/23 8/14 33/4 33/10 34/8 43/12 52/23 71/4 71/5 101/12 101/14 114/2 130/16 167/16 169/16 175/15 177/22 202/1 202/2

**legislation [2]** 11/6 29/7

**legislative [8]** 11/8 11/8 11/12 40/21 40/23 40/24 40/24 84/25

**legislator [2]** 147/1 148/6

**legislators [1]** 60/6

**legitimate [7]** 26/3 29/17 29/21 29/24 34/8 36/3 146/7

**lengthy [1]** 122/14

**lens [2]** 138/7 183/15

**less [6]** 35/18 95/17 96/14 102/14 129/1 142/16

**lest [1]** 94/1

**let [51]** 6/25 8/16 11/3 11/19 12/10 13/18 17/5 24/13 24/16 25/6 26/4 32/20 39/15 48/20 56/11 58/16 62/22 63/9 67/1 71/12 75/23 82/10 84/20 85/10 85/18 87/6 88/12 88/12 91/19 103/11 108/8 109/16 110/17 119/25 121/20 121/20 128/2 136/1 136/3 136/4 136/5 137/13 141/15 157/6 157/9 161/21 179/1 179/19 184/13 184/16 194/24

**let's [61]** 12/11 13/22 17/7 22/18 22/23 27/10 30/22 41/8 51/9 53/1 53/2 54/6 54/9 54/10 54/10 54/11 54/11 55/22 56/23 57/12

58/23 65/12 65/13 67/4 68/8 68/17 83/7 83/15 83/19 83/20 84/5 104/4 110/25 111/1 111/6 112/9 112/9 112/11 113/9 113/12 113/21 117/8 117/8 119/19 119/20 119/22 120/9 120/11 125/18 125/20 127/19 131/15 141/13 141/19 158/7 178/13 179/11 184/14

**letter [8]** 51/21 101/3 168/8 168/19 170/1 170/3 170/10 173/16

**letting [1]** 64/17

**level [3]** 13/12 123/14 193/10

**Lewinsky [1]** 42/6

**liability [7]** 71/17 88/11 88/15 187/8 187/8 193/11 200/20

**liable [7]** 42/1 42/4 59/16 87/5 101/4 122/21 123/4

**libel [1]** 150/14

**life [1]** 192/7

**life-altering [1]** 192/7

**like [47]** 7/2 7/10 18/2 21/9 30/5 37/24 51/8 54/25 57/17 58/14 58/14 61/18 62/3 62/17 68/20 72/5 74/15 79/25 80/19 87/20 88/3 89/17 92/4 93/20 96/17 110/18 112/10 114/9 129/13 131/17 139/10 139/11 140/17 150/12 153/4 154/15 167/7 167/9 167/23 168/13 169/1 172/8 177/16 178/10 185/25 199/16 200/1

**liked [1]** 62/13

**likelihood [4]** 115/20 116/4 132/25 133/22

**likely [7]** 106/20 107/6 130/15 132/24 162/25 193/13 194/15

**likewise [1]** 89/8

**liking [1]** 114/21

**limit [1]** 76/13

**limitations [1]** 204/7

**limited [7]** 8/18 11/4 74/2 76/7 124/5 143/11 182/12

**limiting [1]** 74/3

**limits [1]** 12/18

**line [15]** 12/2 21/1 34/15 35/6 35/13 38/24 44/12 44/15 44/23 106/10 118/22 150/4 151/13 197/19 202/22

**line-item [1]** 38/24

**lines [3]** 47/25 117/17 148/8

**link [1]** 91/10

**listed [2]** 114/17 114/18

**listener [2]** 56/6 92/23

**listeners [1]** 109/6

**listening [1]** 203/2

**literally [1]** 184/6

**litigant [1]** 5/17

**litigate [1]** 145/1

**litigation [3]** 18/5 22/1 70/15

**little [18]** 14/17 54/8 84/12 92/20 94/15 101/12 113/17 119/23 135/16 142/6 167/17 173/19 173/25 174/14 174/23 178/20 183/12 201/19

**lives [1]** 163/9

**LLP [1]** 3/7

**locate [1]** 133/16

**location [5]** 156/8 156/12 156/13 164/3 173/18

**logic [1]** 117/5

**long [10]** 27/7 52/2 120/3 129/25 130/24 153/20 167/14 177/18 193/13 197/19

**long-established [1]** 129/25

**longer [6]** 12/16 65/4 120/4 129/19 129/20 136/11

**look [70]** 10/5 10/15 13/14 23/24 26/11 27/25 29/3 30/14 30/19 30/20 30/21 30/23 31/5 42/17 42/22 43/13 44/16 53/25 55/13 56/3 62/4 62/5 62/8 64/10 66/16 72/14 73/1 73/3 74/11 76/20 77/9 77/10 79/6 83/2 83/11 84/25 98/8 98/24 103/13 121/4 123/9 125/12 126/3 127/24 130/8 130/9 131/10 131/16 131/19 132/16 136/18 140/17 140/18 146/23 147/23 147/24 150/9 165/9 165/9 169/22 170/1 170/22 174/10 175/25 181/3 181/21 189/15 194/2 194/12 199/10

**looked [3]** 49/25 169/21 192/8

**looking [9]** 14/18 17/22 31/9 58/25 115/3 120/18 124/6 124/7 162/20

**looks [4]** 59/4 79/25 164/14 165/4

**lose [5]** 45/7 45/11 82/16 134/6 140/8

**loses [2]** 134/20 138/6

**losses [1]** 176/11

**lot [19]** 32/11 48/24 61/17 66/23 80/13 82/21 90/23 106/25 127/14 127/17 127/18 132/2 147/19 168/4 175/21 188/20 198/21 202/17 202/17

**love [10]** 58/6 102/9 102/19 148/21 157/17 157/17 157/18 157/18 157/19 157/20

**lowest [1]** 60/10

**lubricate [1]** 142/7

**lunch [2]** 83/8 83/14

**lying [1]** 42/5

**Lyons [1]** 166/5

**M**

**machines [2]** 55/18 113/16

**mack [1]** 39/15

**made [50]** 9/10 10/1 10/24 11/20 18/9 20/10 24/23 25/8 25/20 26/5 26/16 27/6 39/2 41/24 42/25 48/10 48/11 52/5 54/3 55/1 59/9 64/4 81/8 85/20 87/18 90/16 90/17 94/11 95/1 96/13 105/23 106/1 111/22 111/25 112/17 112/20 120/11 124/1 127/13 128/4 129/11 132/13 134/13 140/6 145/5 145/9 145/24 171/4 189/16 200/3

**main [3]** 105/1 194/5 194/11

**maintained [1]** 104/12

**major [1]** 124/8

**majority [3]** 79/2 172/19 183/8

**make [68]** 6/4 6/9 6/9 8/1 14/23 18/4 20/17 26/22 26/25 32/14 32/15 38/14 42/14 42/15 43/19 47/6 60/12 63/2 63/13 64/12 64/14 74/23 79/19 82/21 85/18 87/7 95/16 95/23 106/25 109/18 109/19 109/24 111/20 112/14 119/25 121/18 123/25 124/13 124/21 126/10 127/21 143/11 144/20 144/24 145/17 149/25 153/2 154/5 154/15 156/7 159/25 160/2 160/22 162/5 166/12 167/15 167/23 172/11 173/7 174/6 174/9 174/13 177/9 179/15 181/12 183/6 188/18 189/3

**makes [19]** 16/15 18/1 20/11 29/3 54/14 57/18 87/19 90/10 129/19

32/20 133/3 156/22 161/19 164/11 165/3 170/17 170/22 171/8 197/20

**making [16]** 12/5 39/3 63/22 72/11 91/18 99/15 117/5 120/4 129/18 148/19 148/25 162/3 162/4 174/7 183/7 194/19

**Mall [1]** 107/9

**Malone [15]** 2/17 2/18 5/12 40/2 40/14 44/5 89/15 95/9 100/3 100/5 101/7 102/8 140/22 141/12 194/24

**Malone's [2]** 94/23 95/18

**malpractice [2]** 202/2 202/3

**man [1]** 109/15

**manifestations [1]** 193/25

**manner [1]** 34/7

**Manson [1]** 131/14

**Manual [1]** 172/1

**many [8]** 12/14 30/1 45/14 103/4 119/6 119/11 157/9 178/8

**march [13]** 41/12 41/16 52/7 53/7 55/2 57/16 64/22 65/6 68/19 111/17 112/11 112/13 151/21

**marched [1]** 58/19

**marching [2]** 55/18 92/17

**mark [2]** 61/14 88/10

**marker [1]** 66/25

**Massachusetts [1]** 156/17

**massive [1]** 141/7

**master [4]** 146/5 146/17 164/16 165/1

**material [2]** 175/13 175/14

**matter [25]** 7/10 9/21 28/1 31/9 35/17 43/6 43/11 47/11 47/12 49/20 62/11 71/4 71/5 75/20 101/2 103/21 143/1 143/14 156/5 161/12 165/22 169/17 175/3 188/15 204/4

**matters [11]** 12/21 16/12 28/5 50/5 95/3 127/20 129/9 168/15 168/16 168/23 173/8

**maximum [1]** 110/5

**Maxine [1]** 144/7

**may [40]** 7/6 17/6 17/10 23/18 29/16 33/2 36/1 36/7 37/12 37/20 54/22 57/10 62/12 67/5 81/14 86/19 88/4 90/14 92/7 95/23 96/9 99/3 106/15 106/18 109/17 110/20 132/13 133/20

**M**

**may... [12]** 136/22
136/23 137/8 137/19
138/22 140/20 152/21
154/24 172/16 173/3
183/7 201/18
**maybe [21]** 21/16
33/15 38/7 80/12 83/1
83/6 83/22 98/3 98/24
108/13 116/12 116/12
116/13 158/15 164/3
174/2 183/6 191/8
198/2 198/3 198/7
**mayor [2]** 161/8 161/9
**McCarthy [3]** 97/15
102/1 118/6
**MCGUIRE [1]** 3/12
**me [130]** 6/25 8/16
9/14 10/10 10/23 11/3
11/19 12/1 12/2 12/10
12/25 13/18 15/17 17/5
24/13 24/16 25/6 26/4
29/11 30/13 30/21
30/21 30/23 30/23 31/1
32/4 32/20 35/15 35/20
37/10 37/13 38/11
39/15 48/10 49/11
50/13 56/11 58/16 59/4
59/21 60/12 63/6 63/9
63/21 64/25 66/12 67/1
71/12 75/23 76/10 79/5
81/5 82/10 84/4 84/17
84/20 85/10 85/18 87/6
88/12 88/13 89/15
91/19 92/25 97/23 98/5
103/9 103/11 105/5
106/16 108/8 108/18
109/11 109/16 110/1
110/17 119/25 121/20
121/20 123/1 125/21
127/6 127/23 128/2
135/16 136/1 136/3
136/5 137/5 137/13
138/15 141/15 142/5
142/10 142/17 143/6
151/1 151/23 152/19
153/7 156/9 157/6
157/9 158/4 159/17
161/21 170/2 172/6
175/2 177/10 178/10
178/22 179/1 179/19
180/11 181/15 182/7
184/13 184/16 191/11
192/3 194/24 196/23
196/24 198/3 199/11
199/20 199/24 201/9
202/25
**Meadows [1]** 61/14
**mean [102]** 12/24 14/9
23/18 27/3 30/12 35/7
40/14 40/18 42/20
44/16 44/23 50/4 51/21
54/6 57/12 57/14 59/24
60/4 62/24 64/8 65/3
66/6 66/7 69/14 71/21
73/18 73/21 77/14
77/22 85/14 88/15
89/21 90/5 90/25 91/9

103/20 104/17 104/25
106/10 107/1 107/19
107/22 107/22 111/14
113/2 113/25 115/17
115/21 121/4 127/13
129/7 130/22 134/9
134/10 136/9 136/14
138/23 147/17 148/14
156/6 156/8 159/11
159/17 169/14 169/24
170/5 180/12 181/14
181/15 181/19 181/21
182/7 183/5 183/17
183/18 184/11 184/22
186/8 186/8 186/10
186/20 187/3 187/15
189/24 190/12 191/4
192/17 192/22 193/2
193/3 194/12 195/18
195/23 195/24 198/5
199/2 199/3 202/10
**mean, [1]** 111/18
**means [9]** 28/19 76/21
85/7 85/8 90/3 165/12
185/17 187/18 190/10
**meant [16]** 7/23 61/10
61/11 73/9 78/2 109/25
118/12 123/21 130/23
131/14 131/21 147/19
177/24 181/9 195/19
200/8
**mechanical [1]** 4/14
**media [7]** 92/2 92/7
145/22 146/2 146/13
150/12 150/15
**meet [6]** 46/3 46/12
116/22 130/11 173/13
173/24
**meeting [18]** 50/23
52/19 52/20 53/11 55/9
68/1 68/11 69/5 69/10
79/11 88/20 91/19
91/21 92/10 93/25
107/10 116/18 144/6
**meets [3]** 18/13 73/15
130/10
**MEHTA [1]** 1/21
**member [7]** 126/14
126/14 146/15 152/8
159/14 161/24 171/21
**member's [1]** 170/21
**members [25]** 16/18
16/18 36/15 38/23 39/3
63/1 75/11 75/19 77/16
77/17 78/20 79/4 79/5
87/15 97/2 97/14 98/15
99/9 99/21 112/25
113/22 151/22 170/23
172/17 172/18
**memos [1]** 168/24
**mental [1]** 193/9
**mentally [1]** 131/12
**mention [3]** 55/18
109/2 136/19
**mentioned [4]** 21/9
100/21 140/4 156/16
**mere [6]** 88/19 103/20

199/13
**merely [2]** 27/2 193/8
**merge [1]** 78/19
**merger [1]** 16/3
**Merit [2]** 4/10
**message [2]** 7/25
106/6
**met [4]** 18/15 46/3
65/17 92/3
**might [21]** 17/23 17/24
18/3 21/12 25/1 43/19
50/13 51/2 51/3 56/4
62/1 103/21 126/9
138/20 145/24 153/21
154/15 165/13 181/19
191/9 193/7
**Mike [1]** 28/13
**mile [1]** 145/14
**MILSTEIN [1]** 2/3
**mind [8]** 31/20 38/8
40/8 60/10 93/15 113/4
165/1 187/8
**mindful [1]** 96/10
**minds [13]** 50/24 52/21
53/11 55/10 68/2 68/11
69/5 69/10 88/20 91/21
92/11 94/1 116/19
**mine [1]** 153/9
**minimize [1]** 192/9
**minimum [6]** 23/5 66/7
66/7 110/2 115/19
139/15
**minute [2]** 61/10 192/9
**minutes [17]** 7/11
24/14 39/16 43/25
60/14 60/15 60/17
60/18 62/16 69/19
69/19 83/17 83/20
83/25 142/16 177/6
178/23
**miscited [1]** 201/23
**misconstrued [3]** 61/6
61/7 61/9
**miss [1]** 109/24
**missing [2]** 22/14
198/2
**Mississippi [1]** 121/24
**Missouri [1]** 121/22
**misspoke [1]** 121/24
**mistake [1]** 107/8
**misunderstand [1]**
22/9
**Mitchell [2]** 26/17
136/20
**Mo [5]** 4/2 4/3 5/17
152/3 158/4
**mob [2]** 102/2 113/20
**moment [10]** 9/17
25/24 27/10 27/11
56/10 59/9 79/8 108/8
151/4 180/15
**money [3]** 14/12 44/20
157/19
**Monica [1]** 42/6
**months [1]** 122/23
**moral [1]** 62/8
**more [55]** 10/7 11/12

46/21 47/5 47/25 57/10
62/9 73/14 78/16 80/21
82/7 83/14 83/23 86/6
88/14 91/5 92/8 93/11
96/10 99/3 99/16
109/18 113/17 119/23
120/21 128/2 128/21
129/22 130/15 136/16
141/5 143/24 148/7
149/1 157/19 165/18
165/20 175/4 175/19
176/6 177/6 178/18
179/1 181/22 183/12
183/24 191/20 193/22
194/15 194/15 201/11
**moreover [1]** 69/13
**mortgage [2]** 21/12
21/15
**Moseley [9]** 3/15 3/16
5/15 6/1 6/2 39/17
79/25 117/12 118/17
**most [10]** 9/19 18/22
45/8 90/1 118/10 121/3
125/14 136/10 162/25
200/3
**motion [27]** 6/1 6/3 6/7
23/20 48/25 60/25
80/10 80/14 82/5 86/20
95/11 108/18 113/3
116/15 116/16 118/7
118/8 118/25 123/6
124/11 142/2 152/10
152/14 172/20 175/12
175/18 181/17
**motioning [1]** 79/25
**motivated [1]** 146/6
**motivation [1]** 148/15
**motivations [1]** 31/4
**motive [5]** 28/25 30/20
43/2 47/1 164/6
**motives [5]** 13/16
30/14 31/8 40/10 43/7
46/25
**Mouat [4]** 75/17 76/21
77/11 87/8
**move [13]** 47/6 48/7
79/22 82/11 88/2
108/21 117/8 120/4
140/23 141/13 172/20
184/14 184/16
**moved [1]** 108/12
**movie [2]** 59/5 83/9
**moving [2]** 29/23 134/3
**Mr [6]** 28/22 38/14
54/13 100/5 140/22
144/10
**Mr. [149]** 6/1 6/2 7/4
7/15 8/13 9/11 22/4
24/14 24/21 25/4 25/9
25/10 25/18 25/22
26/14 26/23 27/6 27/25
28/18 28/23 29/3 30/2
30/12 31/15 31/17 34/4
34/21 37/7 37/25 39/15
39/17 39/21 40/4 40/14
41/21 41/25 43/15
43/23 43/24 43/25 44/5

46/16 47/5 48/13 48/16
48/18 48/20 54/18
55/20 57/14 62/17
62/22 65/12 79/22
79/25 84/5 85/13 85/20
85/21 86/12 87/10 88/2
89/15 89/20 90/18 91/2
94/12 94/23 95/9 95/18
96/13 96/14 96/17
96/21 96/22 97/2 99/1
99/16 99/17 99/25
100/1 100/1 100/3
100/7 100/11 100/16
100/19 101/7 101/19
102/8 103/8 103/8
103/11 103/13 104/2
104/4 107/16 108/1
108/20 108/23 109/4
110/19 110/19 111/15
112/24 114/9 114/14
117/12 118/17 120/12
120/12 125/16 126/24
130/21 131/23 132/13
133/6 133/9 136/4
139/1 139/2 139/22
140/19 141/12 154/14
154/23 155/3 155/13
157/6 162/2 162/11
162/17 163/11 163/22
164/11 165/16 166/21
167/3 167/13 169/10
170/25 172/5 173/11
177/3 179/24 190/24
194/22 194/24 197/13
**Mr. Andonian [8]**
41/21 43/24 100/1
103/11 103/13 108/23
179/24 194/22
**Mr. Andonian's [1]**
114/14
**Mr. Binnall [30]** 7/4
7/15 8/13 9/11 22/4
24/14 25/9 27/6 28/23
29/3 37/25 39/15 43/25
47/5 48/13 48/20 62/22
65/12 79/22 85/20
100/1 110/19 114/9
120/12 125/16 126/24
132/13 133/9 139/22
197/13
**Mr. Binnall's [8]** 26/14
27/25 31/15 31/17
41/25 43/15 130/21
139/2
**Mr. Boynton [9]**
154/14 154/23 157/6
163/22 165/16 166/21
167/3 170/25 173/11
**Mr. Brooks [7]** 155/13
162/2 162/11 162/17
164/11 169/10 190/24
**Mr. Brooks's [2]** 155/3
163/11
**Mr. Giuliani [16]** 55/20
57/14 90/18 96/14
96/17 96/22 97/2 99/1
99/16 99/17 103/8
107/16 108/1 111/15

**M**

Mr. Giuliani... [2] 112/24 120/12
Mr. Malone [8] 40/14 44/5 89/15 95/9 100/3 101/7 102/8 141/12
Mr. Malone's [2] 94/23 95/18
Mr. Moseley [6] 6/1 6/2 39/17 79/25 117/12 118/17
Mr. Pittard [4] 108/20 167/13 172/5 177/3
Mr. Seller's [1] 40/4
Mr. Sellers [20] 24/21 25/4 30/12 37/7 39/21 43/23 44/16 84/5 85/13 88/2 89/20 91/2 94/12 99/25 109/4 131/23 133/6 136/4 139/1 140/19
Mr. Sibley [7] 48/16 48/18 62/17 96/13 100/7 101/19 110/19
Mr. Swalwell [1] 104/2
Mr. Trump [14] 25/10 25/18 25/22 30/2 34/4 34/21 54/18 85/21 86/12 96/21 100/11 100/16 103/8 104/4
Mr. Trump's [4] 26/23 28/18 87/10 100/19
much [32] 6/19 7/18 9/21 17/23 17/24 18/3 20/15 41/22 45/22 65/4 70/16 80/2 100/24 115/1 117/9 119/19 123/10 128/20 133/4 133/19 134/9 134/22 135/21 140/25 150/12 156/12 156/19 166/24 189/21 191/11 202/7 203/3
multifaceted [1] 178/7
multiple [3] 126/4 139/7 148/23
murder [2] 183/19 183/20
murders [1] 131/13
Murtha [4] 146/9 146/15 156/25 165/5
Murtha's [1] 146/11
Muslim [1] 61/24
must [13] 21/24 21/24 21/25 25/10 40/15 63/11 63/17 69/9 97/21 123/14 131/20 155/7 182/17
mute [2] 67/10 142/3
my [69] 9/17 17/12 25/1 29/23 39/22 40/6 41/24 42/16 50/13 55/15 56/25 61/6 61/7 62/4 62/13 63/10 69/4 72/19 73/1 80/15 82/23 103/4 108/20 111/3 111/21 111/24 112/6 112/21 117/23 118/4

126/9 128/7 128/18 135/11 138/3 141/22 142/7 142/8 142/10 143/1 143/4 143/17 143/18 143/23 144/9 145/8 145/13 145/16 145/17 148/21 149/18 151/18 152/21 153/15 172/19 173/9 173/10 174/4 175/23 176/8 178/1 178/5 178/6 178/8 199/25 202/12
My colleague [1] 108/20
My colleagues [1] 50/13

**N**

NAACP [1] 59/8
name [2] 147/11 190/25
namely [1] 81/21
names [4] 163/7 176/18 176/23 178/9
naming [1] 190/20
narrative [2] 132/25 133/3
narratives [1] 132/21
narrow [4] 20/3 76/11 183/13 185/16
narrowly [1] 100/22
nation [1] 157/25
nature [10] 16/8 28/18 38/1 43/14 45/16 50/6 141/2 150/15 184/6 193/6
NCO [1] 50/20
near [1] 121/15
nearly [1] 90/1
necessarily [13] 11/22 12/1 46/24 51/22 73/21 74/7 74/9 92/22 132/14 135/23 183/20 186/15 191/10
necessary [1] 135/24
neck [2] 124/24 124/25
necks [1] 122/6
need [24] 14/20 46/13 51/24 51/25 58/11 58/12 83/21 85/12 85/14 98/17 113/14 113/17 113/20 117/9 120/6 139/10 142/13 165/18 166/12 172/1 172/9 179/1 181/12 184/21
need to [1] 85/12
needed [3] 106/2 164/6 170/15
needs [8] 22/2 44/11 61/14 83/17 86/21 126/25 173/13 175/7
neglected [2] 39/25 117/13
negligence [37] 180/5 180/7 180/8 180/9 180/10 180/12 180/25

182/19 182/23 183/10 184/2 184/9 187/14 187/21 187/23 188/8 188/17 188/22 195/5 195/14 195/18 196/7 196/10 196/19 196/24 197/22 197/24 198/9 198/20 198/21 199/12 199/16 199/17 199/20
negligent [7] 182/3 182/22 187/25 188/14 192/2 192/5 197/6
negligently [1] 195/11
neither [4] 26/1 76/25 77/23 115/17
neutral [6] 10/4 10/22 129/19 129/20 139/15 155/7
never [8] 7/20 17/13 36/11 42/1 52/23 58/8 118/2 197/4
nevertheless [2] 188/12 202/11
new [5] 2/4 4/3 5/23 32/8 172/7
new you want [1] 172/7
news [2] 61/13 105/9
newspaper [1] 56/4
next [12] 47/7 48/7 50/15 53/17 63/15 63/20 115/4 117/14 120/2 145/12 154/16 190/8
night [1] 198/18
Ninth [1] 160/25
Ninth Circuit [1] 160/25
Nixon [8] 8/17 8/17 25/12 30/17 35/8 36/1 42/22 43/2
no [94] 1/4 1/10 1/16 11/11 11/11 12/16 12/18 14/6 19/23 23/7 23/12 24/8 29/17 29/21 29/23 29/24 34/5 36/4 38/13 39/2 39/25 42/21 46/21 52/15 54/2 55/1 59/12 60/9 65/15 69/3 69/3 69/6 70/6 70/20 77/9 78/6 78/8 78/8 81/16 87/18 88/1 89/20 91/2 91/11 91/13 91/16 103/21 103/23 105/6 105/8 107/8 108/17 110/14 113/6 114/19 115/15 120/23 128/23 129/19 129/20 133/21 136/11 138/11 142/23 143/6 144/25 149/5 152/16 152/19 159/5 160/24 163/12 163/14 165/7 166/3 166/15 166/18 175/10 175/14 177/6 177/13 177/19 178/3 178/7 179/2 186/7 186/17 188/10

199/8 200/18 200/19
nodded [1] 140/4
non [4] 4/5 5/18 33/20 41/13
non-campaign [1] 33/20
non-officeholder [1] 41/13
Non-Party [2] 4/5 5/18
none [10] 22/7 33/22 71/1 71/6 115/24 116/2 121/15 127/22 139/14 148/24
nonetheless [1] 94/13
nonofficial [1] 171/21
normal [6] 19/16 36/9 36/12 45/6 72/7 170/15
normally [1] 154/19
not [336]
note [5] 13/8 14/5 125/19 148/18 204/5
noted [4] 108/4 157/2 173/11 173/11
notes [2] 98/4 165/5
nothing [16] 10/25 11/9 11/15 42/11 42/11 60/3 64/2 70/9 90/24 149/2 151/17 161/23 162/2 162/4 185/25 191/20
notice [1] 185/19
notify [1] 152/14
noting [1] 156/22
notion [4] 42/17 133/12 198/3 198/13
notwithstanding [3] 30/4 31/20 136/24
November [5] 13/20 14/3 15/7 46/21 177/21
now [40] 16/19 16/21 17/16 19/14 28/15 29/23 45/21 54/12 56/8 62/8 62/22 63/1 63/6 64/1 68/24 71/1 83/15 83/19 90/14 93/15 93/18 94/20 94/25 99/3 101/23 116/12 126/15 129/14 153/4 154/8 158/3 160/1 160/19 163/2 163/10 165/17 175/24 178/25 181/13 185/16
nucleus [1] 107/3
number [10] 6/17 64/16 66/20 99/9 128/3 130/7 153/16 168/20 192/22 202/21
numbers [1] 144/18
numerous [4] 92/14 99/11 145/16 190/19
NW [6] 2/4 2/9 2/19 3/12 4/7 4/12

**O**

o'clock [1] 165/18
oath [19] 3/15 5/15 6/1 6/4 38/10 38/14 42/5

206/9 81/4 81/6 81/20 83/12 90/7 90/15 91/7 91/15 117/21 118/11 118/20
Oath Keepers [2] 117/21 118/11
Obama [1] 19/13
Obama's [1] 43/17
object [5] 75/6 86/9 99/11 137/3 137/6
objected [2] 144/3 144/7
objection [1] 160/2
objections [1] 144/9
objective [5] 7/23 51/1 52/3 52/23 174/7
objectively [1] 131/6
obligated [1] 70/13
oblique [2] 90/22 158/24
obliquely [1] 157/1
observation [1] 59/9
observed [3] 25/15 29/16 89/3
obviously [13] 73/19 80/7 83/18 84/15 95/8 117/17 123/20 149/24 156/15 184/19 188/20 194/14 202/24
occasion [1] 88/24
occasions [3] 92/14 93/24 94/4
occur [2] 106/20 111/9
occurred [10] 38/4 48/5 109/12 113/8 114/1 116/8 156/23 185/18 189/19 204/5
occurring [2] 86/20 89/6
occurs [3] 106/20 125/19 141/9
odd [2] 49/12 60/17
off [8] 10/4 44/1 63/11 72/9 83/18 101/2 102/2 190/12
offensive [1] 150/14
office [28] 10/25 11/16 11/17 17/9 17/15 21/20 21/21 29/2 32/13 33/4 33/10 40/6 41/15 42/2 42/12 42/19 45/15 76/19 77/12 78/4 78/7 78/9 78/11 78/13 78/18 164/7 168/21 174/3
officeholder [4] 41/7 41/10 41/13 161/14
officer [5] 75/25 77/4 77/13 80/21 87/14
officers [13] 63/1 75/7 75/19 75/20 75/21 78/17 79/1 79/9 79/13 85/4 87/13 184/20 185/24
offices [2] 87/21 98/13
official [41] 4/11 8/18 8/20 8/24 15/6 15/7 15/15 15/16 25/11 25/13 26/2 26/11 33/1

**O**

official... [28] 33/15
33/20 36/17 39/1 39/5
39/8 39/10 39/12 40/7
43/3 43/14 43/22 44/19
44/24 45/1 110/12
150/1 150/2 150/8
151/11 160/23 161/4
161/9 169/11 171/16
171/20 173/2 173/23
official's [1] 160/22
official-capacity [2]
160/23 161/9
officials [2] 16/4
155/12
oftentimes [2] 169/3
196/10
oh [6] 39/20 99/5
131/11 131/20 142/23
173/20
Oh, [1] 97/11
Oh, I'm [1] 97/11
okay [99] 5/20 6/10
6/14 9/14 9/16 15/25
22/3 23/3 24/12 37/6
37/11 37/18 39/14
41/20 47/4 47/22 50/9
50/11 50/14 56/7 57/7
63/4 63/8 65/13 71/7
72/23 73/17 74/19
79/21 82/18 83/4 84/3
84/4 84/16 86/4 86/24
87/2 89/18 91/12 96/8
97/16 98/2 98/10 98/20
98/23 99/7 99/14
101/13 102/25 108/22
110/4 114/6 114/12
117/1 119/22 120/9
125/10 127/12 127/20
128/19 130/17 131/22
133/18 138/17 141/16
141/25 142/18 142/24
147/9 148/13 149/11
154/17 166/7 167/2
167/22 170/13 171/12
172/3 172/11 172/13
177/2 177/15 178/18
179/5 179/10 179/23
180/4 190/3 191/25
197/11 198/10 198/24
199/14 199/18 199/22
199/25 201/12 201/17
202/16
Olson [1] 33/6
omnibus [1] 82/21
once [7] 42/22 42/25
53/6 54/16 57/24
129/15 184/1
one [93] 5/25 6/25 7/13
15/19 16/19 22/4 24/25
25/2 26/5 34/3 34/15
36/18 36/19 39/19
42/24 43/10 48/14
48/23 49/13 49/15
50/19 52/14 58/9 60/9
66/15 66/18 66/25
72/12 75/10 80/18
82/12 82/25 82/25

96/12 96/16 99/3
103/15 103/15 104/5
109/2 109/18 110/18
111/11 113/4 113/8
116/8 119/25 121/3
121/7 127/16 128/2
129/22 131/1 132/4
132/6 139/1 145/4
147/13 151/10 151/21
153/7 155/9 156/8
159/13 160/24 162/14
162/16 163/22 164/21
165/7 165/18 165/20
168/1 171/24 172/14
174/15 175/15 176/7
176/14 176/17 178/7
178/18 180/24 183/21
183/22 191/7 197/14
200/15 201/18
ones [2] 58/10 58/10
ongoing [2] 146/13
147/12
only [38] 7/13 21/15
26/8 30/4 33/14 40/7
40/24 44/6 45/17 51/13
53/23 53/23 72/5 72/6
74/6 74/7 76/6 79/3
95/13 96/9 96/10 97/25
99/10 106/12 106/13
110/12 112/15 126/20
136/6 140/8 175/15
177/11 182/11 185/5
187/15 190/25 201/3
201/5
open [2] 18/5 200/22
openly [1] 80/5
Operation [1] 156/16
operative [1] 14/22
opinion [2] 33/5 33/10
118/12
opinions [2] 117/23
201/4
opponent [1] 41/18
opportunity [3] 7/17
28/21 199/19
opposed [4] 95/11
142/21 143/25 183/21
opposing [1] 143/21
opposition [1] 81/2
oppressed [1] 157/24
oral [2] 1/20 5/4
order [14] 6/15 6/16
10/6 21/24 26/22 28/20
42/10 104/11 106/21
119/1 123/25 131/3
141/14 175/2
orders [1] 92/17
ordinarily [3] 118/23
183/9 185/3
ordinary [4] 56/6 65/23
194/8 194/8
organizations [2] 81/8
81/10
organize [1] 14/13
organizing [2] 71/23
71/24
originally [1] 83/23

ostensibly [1] 20/6
other [97] 6/12 7/2
13/18 19/10 20/17
20/21 21/25 21/25
23/14 24/5 24/6 25/1
26/5 27/4 28/17 33/12
33/21 36/15 36/22 41/9
42/24 43/6 47/1 47/10
51/25 52/1 53/13 55/24
60/22 62/16 65/4 70/10
74/8 74/11 74/16 75/22
77/10 80/12 80/15
81/21 82/11 82/13 83/6
84/14 86/22 87/6 89/10
90/21 93/14 94/23
95/15 95/19 95/25 96/5
96/24 98/13 100/2
104/5 105/5 105/6
105/23 110/2 110/8
111/25 113/22 114/18
120/21 122/16 124/18
125/17 130/20 132/2
136/12 138/7 138/7
140/6 141/3 145/2
148/21 151/11 158/21
159/10 160/16 161/14
164/18 171/24 181/14
182/11 185/17 187/15
188/9 189/5 189/15
192/6 199/12 200/14
202/12
others [11] 8/8 32/25
36/16 52/10 76/17
78/23 85/4 87/9 103/4
114/22 132/5
otherwise [14] 6/25
45/5 45/13 62/13 69/10
83/5 87/1 98/1 112/13
126/21 131/9 138/24
150/8 191/5
ought [10] 13/2 13/15
32/7 35/15 35/21 71/16
76/10 108/13 127/9
175/17
our [60] 5/21 28/17
33/9 38/1 38/23 39/4
48/25 57/8 58/10 58/11
58/12 66/18 74/16
80/10 85/17 92/12
92/17 92/17 94/7 98/1
98/8 98/18 98/22 99/8
101/23 101/25 102/3
102/15 104/12 104/22
105/22 108/2 109/20
110/3 110/12 113/20
120/1 126/3 140/5
141/8 148/9 155/2
155/6 163/21 166/6
168/24 169/2 171/10
182/1 183/1 184/9
186/8 186/9 186/16
186/21 188/3 188/6
188/23 189/1 189/17
out [58] 6/16 14/4
15/14 15/17 18/1 18/9
21/1 34/1 43/4 44/5
44/8 46/5 55/25 60/23

79/3 81/1 83/13 87/25
93/20 95/18 95/19
100/24 101/25 102/18
102/23 104/2 106/5
109/14 112/17 114/5
114/22 115/1 118/24
120/10 121/18 131/9
147/21 156/20 159/7
160/7 164/7 165/10
173/15 174/4 180/25
185/23 186/19 190/19
191/14 193/22 199/21
199/23 202/25 203/4
outcome [4] 29/9
91/14 103/17 158/8
outer [14] 8/21 9/4 9/7
10/3 10/7 13/7 19/8
21/12 21/17 25/13
27/23 29/12 29/12
44/25
outraged [1] 96/4
outrageous [4] 194/1
194/10 194/15 196/18
outset [1] 186/14
outside [22] 11/21
21/16 31/14 31/24
34/13 37/5 45/5 61/12
150/5 150/7 155/4
155/11 155/15 155/19
155/21 156/7 159/18
161/11 165/7 169/11
171/5 171/8
outweighed [1] 64/15
over [14] 14/5 14/21
18/2 42/24 46/21 63/3
82/3 100/23 119/13
130/3 145/9 145/14
153/8 155/10
overall [1] 133/14
overarching [2] 135/2
149/17
overbreadth [4] 63/24
73/5 73/11 74/9
overbroad [2] 73/9
73/10
overlap [2] 6/12 188/21
overlapping [2] 22/16
107/3
overly [1] 73/25
oversaw [1] 47/18
oversee [1] 36/5
overseeing [1] 34/9
overt [3] 50/18 51/14
67/18
overtly [2] 60/1 60/3
overturn [1] 43/8
overturned [1] 51/3
owed [1] 184/18
own [11] 43/15 45/17
71/18 101/25 137/18
147/17 148/3 169/6
169/9 169/16 176/1

**P**

P.C [1] 2/18
p.m [9] 1/6 84/2 84/2
97/9 99/1 102/3 179/9

page [8] 33/11 98/8
98/22 98/25 129/9
136/21 168/19 171/25
pale [1] 194/20
pandemic [1] 204/6
Pandora's [1] 18/6
papers [2] 22/7 66/18
paragraph [19] 94/17
95/1 98/8 102/3 102/15
107/19 108/2 148/18
162/20 162/21 162/22
162/23 163/11 163/11
176/1 176/4 176/7
176/14 190/22
Parkway [1] 3/17
part [54] 12/15 12/17
16/9 16/11 18/25 20/1
20/2 20/2 21/22 33/8
35/24 46/16 51/3 51/11
52/1 55/16 55/24 56/1
64/22 68/15 70/8 70/9
70/10 73/4 80/14 80/17
81/25 96/20 96/24
110/10 111/6 117/19
122/4 130/16 134/7
141/10 143/18 146/7
148/14 151/18 153/14
161/5 161/10 164/6
164/15 164/25 171/13
173/15 173/22 178/9
178/11 188/16 194/18
198/19
partial [2] 146/5 146/16
participant [3] 86/13
187/1 187/3
participate [3] 113/23
147/13 148/9
participated [2] 72/3
116/10
participating [1] 71/24
participation [2] 26/19
104/7 136/23
particular [29] 6/24 7/3
7/14 18/16 18/25 21/15
26/19 45/19 60/7 61/21
62/2 72/21 77/5 77/13
95/16 96/1 96/2 127/23
129/12 136/21 140/2
149/20 163/18 163/18
168/25 176/10 178/7
182/14 184/3
particularly [8] 25/23
92/23 93/1 106/22
126/17 130/1 160/13
169/8
parties [7] 6/24 50/19
63/17 125/6 172/17
191/7 202/24
parts [2] 136/22 143/3
party [17] 4/5 5/18
36/25 51/4 72/20 101/4
127/9 127/11 159/14
172/18 172/18 185/2
185/4 187/8 188/14
190/4 190/18
passage [3] 20/5
122/19 162/17

P

Case 1:21-cv-02900-CJN Document 113 Filed 09/25/22 Page 225 of 236

passed [1] 64/1
passing [3] 57/18 105/13 198/17
passion [1] 72/22
past [5] 30/23 54/19 123/6 145/3 147/21
patience [2] 141/22 153/19
patiently [1] 108/10
Patrick [3] 2/17 2/18 5/12 40/2
patrickmalonelaw.com [1] 2/21
patriotic [1] 65/2
patriotically [6] 8/1 63/13 63/14 64/9 64/12 102/23
patriotism [1] 64/5
patriots [3] 102/18 157/14 163/6
pattern [2] 137/19 138/4
pause [1] 108/8
pay [1] 14/7
PC [1] 3/12
peace [2] 64/5 102/19
peaceful [2] 60/19 72/6
peacefully [7] 8/1 58/3 63/13 63/14 64/9 64/12 102/23
pedestrians [1] 18/2
pegging [1] 190/21
Pence [1] 28/13
pending [3] 6/3 108/18 120/7
Pennsylvania [5] 4/7 58/1 58/6 58/6 119/19
people [88] 10/17 10/24 18/3 27/2 41/12 41/16 51/13 52/1 53/3 53/5 53/8 53/9 53/15 54/6 54/9 54/14 54/16 54/22 54/22 55/3 56/17 56/22 58/19 58/20 59/1 60/5 60/6 61/20 61/25 62/9 66/20 68/14 68/22 69/23 70/2 75/3 75/6 76/13 76/16 76/20 77/20 78/21 79/13 80/12 80/23 80/24 82/22 83/5 83/6 83/8 83/8 83/9 83/9 86/19 88/16 90/2 92/3 92/8 92/8 92/10 92/19 93/10 94/6 94/8 103/2 103/4 107/13 110/6 110/24 111/5 112/9 113/18 116/2 116/3 126/22 141/6 147/12 147/20 148/8 178/10 178/12 179/15 183/21 184/1 186/17 190/12 191/22 195/25
people to [1] 116/3
per [15] 52/19 52/19 137/22 180/7 180/8 180/12 181/5 182/9
182/23 183/10 195/5 199/16
perceive [1] 56/6
percent [2] 145/10 150/19
perform [5] 39/12 146/5 146/15 164/23 164/25
performed [1] 50/19
performing [1] 9/8
perhaps [11] 21/15 38/10 83/6 95/17 121/3 125/14 164/2 183/6 183/7 191/13 196/3
perimeter [10] 9/4 9/7 10/3 10/7 13/7 21/17 25/14 27/23 44/25 58/21
perimeters [5] 8/21 19/8 21/12 29/12 29/13
period [4] 52/9 60/21 79/11 100/23
permissible [1] 34/13
permissibly [1] 33/2
permission [1] 142/9
permit [1] 30/4
permitted [1] 30/4
perpetuate [1] 132/25
persistent [3] 132/21 133/3 134/1
person [18] 21/20 21/22 42/19 61/8 75/2 86/10 86/21 124/25 131/11 145/2 153/24 161/14 164/23 165/6 185/19 187/23 187/25 193/11
personal [4] 32/16 38/9 41/4 157/18
personnel [2] 36/6 42/24
persons [2] 86/6 91/6
perspective [6] 63/24 80/10 80/11 82/23 126/18 149/20
persuasive [1] 170/20
pertain [1] 6/6
petition [2] 124/7 155/3
phil [1] 2/11
Philip [2] 2/8 5/10
phone [1] 15/6
phrase [2] 8/20 10/19
phrases [3] 75/22 93/14 190/21
physical [9] 22/24 52/10 192/12 192/13 192/13 193/7 193/14 193/15 193/25
picked [1] 15/5
piece [1] 96/16
pieces [2] 150/10 150/13
piggyback [1] 41/23
Pittard [7] 2/12 5/10 108/20 154/12 167/13 172/5 177/3
65/11 76/19 77/12 78/18 107/12 111/7 125/6 167/8 167/11 181/24 189/25
plain [1] 74/13
plaintiff [5] 23/9 23/12 24/2 66/23 156/19
plaintiff's [1] 167/2
plaintiffs [46] 1/4 1/9 1/15 2/2 2/8 2/17 5/9 5/11 5/12 8/4 8/9 11/24 13/9 14/4 18/9 22/7 24/6 24/17 24/23 37/21 38/8 40/3 48/9 48/10 48/11 53/4 62/21 74/18 76/4 79/24 86/16 105/5 113/19 113/19 123/19 130/23 131/24 143/20 146/24 147/16 151/3 151/8 153/12 178/11 199/9 200/1
plaintiffs' [7] 11/14 108/25 118/11 130/20 175/19 179/18 197/12
plan [5] 52/23 64/22 81/8 114/2 160/14
plans [1] 119/11
plausibility [13] 46/15 50/2 50/3 50/7 54/1 54/20 69/25 71/19 71/20 100/15 114/25 123/6 175/5
plausible [19] 24/1 24/3 24/8 51/12 53/24 56/18 56/20 57/23 62/11 100/16 110/22 111/10 111/15 111/19 111/24 112/2 115/2 116/15 128/3
plausibly [11] 18/13 30/1 51/7 51/13 55/6 70/1 94/10 116/18 128/3 138/19 191/21
play [8] 22/21 51/9 51/9 124/9 124/9 125/8 128/7 141/9
playbook [1] 157/8
playing [2] 52/1 67/5
plea [1] 122/15
plead [6] 51/7 51/13 112/4 117/3 180/11 192/21
pleaded [5] 34/20 49/14 55/11 193/1 193/19
pleading [9] 14/24 18/15 30/23 48/8 48/22 104/18 188/12 195/5 198/8
pleadings [3] 8/4 61/13 194/18
pleads [2] 121/8 121/10
pleas [1] 122/18
please [8] 6/25 7/6 142/5 142/9 154/25 177/7 199/24 204/5
43/12 46/14 46/15 51/12 52/4 80/9 80/12 95/8 107/1 116/21 180/6 188/24 189/1 189/6 190/16 192/3 195/1 195/4 195/12
PLLC [3] 2/3 2/8 2/12
plus [2] 79/19 143/7
pmalone [1] 2/21
point [74] 11/23 14/5 26/17 27/25 29/3 36/21 38/19 40/4 42/14 46/19 46/22 47/6 52/18 69/8 70/16 73/1 73/4 81/17 85/18 87/7 91/18 99/6 99/13 99/15 101/8 105/22 107/24 109/18 109/24 111/1 111/12 114/14 121/11 130/2 132/20 133/10 133/20 135/19 136/1 136/4 136/22 137/1 137/13 139/2 140/21 147/22 152/22 156/22 163/19 165/4 167/23 168/13 169/20 170/19 170/22 173/9 173/10 173/15 180/17 180/21 181/20 186/8 186/10 186/16 186/21 186/24 188/4 189/14 189/17 194/11 194/17 200/6 201/11 201/19
pointed [11] 14/4 44/5 44/8 46/5 87/25 101/25 112/17 114/22 147/21 185/23 190/19
points [8] 8/10 22/12 26/5 41/24 87/6 96/10 148/23 148/24 162/17 163/17 172/11
police [8] 60/19 63/1 75/20 80/20 82/3 83/8 184/20 185/24
policies [2] 12/17 12/17
policy [4] 155/22 170/24 171/14 171/19
political [50] 7/23 8/11 22/15 22/19 33/8 33/16 45/16 45/18 45/20 47/1 51/4 51/4 65/1 66/17 72/7 92/24 105/4 106/22 115/4 115/6 121/2 122/17 124/1 125/4 125/5 126/3 126/6 126/11 127/3 127/24 128/25 129/13 129/22 130/3 130/10 132/12 132/14 132/17 133/13 134/16 135/15 139/19 139/25 149/25 150/7 190/9 190/15 191/2 191/6 191/18
politically [1] 66/4
politician [2] 130/3 191/19
politicians [1] 127/6
politics [1] 177/18
pop [1] 142/6
popular [3] 65/11 144/12 144/13
portion [12] 85/25 153/2 157/11 158/10 158/11 162/9 162/11 163/10 163/15 163/25 165/12 178/1
pose [3] 49/6 58/16 189/21
posed [3] 59/22 78/2 151/6
posited [2] 44/16 146/23
position [15] 11/14 30/6 49/16 50/12 55/21 59/22 73/13 75/11 134/15 160/10 163/2 164/4 168/10 171/3 183/1
positions [1] 87/17
possibility [2] 95/23 185/19
possible [6] 6/19 21/10 51/13 78/15 100/25 111/10
possibly [2] 14/18 111/7
postings [1] 92/16
posts [1] 118/19
potential [1] 193/11
potentially [1] 139/25
power [5] 39/1 40/10 48/2 122/17 157/19
powerless [1] 31/17
powers [2] 8/7 42/23
practical [1] 49/19
practice [1] 170/15
praising [2] 102/13 103/1
Pramila [2] 144/3 151/22
precedent [2] 8/6 129/25
preceding [1] 176/10
precipitated [1] 38/4
precisely [2] 73/15 76/2
preclude [1] 88/3
preclusion [1] 146/21
predicate [1] 182/4
predicted [1] 200/24
prediction [1] 200/25
predictive [4] 201/5 201/8 201/8 202/14
prejudice [1] 72/23
preliminary [2] 5/25 7/10
premise [1] 18/20
premised [1] 75/24
premises [1] 187/8
prepare [1] 168/24
prepared [1] 153/1
prerequisite [1] 166/19
prescribe [1] 182/17
presence [1] 86/14

**P**

**present [2]** 86/19 123/17

**presentation [2]** 7/3 166/16

**presented [2]** 59/16 122/21

**presents [2]** 175/8 191/10

**presidency [11]** 8/22 10/3 11/9 12/23 13/22 15/15 17/19 19/21 27/20 31/15 42/4

**president [171]** 7/7 7/24 9/8 10/20 10/25 11/1 11/7 11/16 11/17 11/20 12/5 12/6 12/11 12/13 12/16 12/18 13/19 13/24 15/5 15/20 16/11 16/13 16/22 17/1 17/7 17/14 17/24 19/2 19/3 19/6 19/9 19/13 19/19 19/23 20/3 20/4 20/9 20/16 20/19 20/24 20/25 21/2 21/3 21/5 21/8 21/8 21/13 21/14 21/19 21/22 22/1 24/7 24/10 25/16 25/21 26/3 26/11 26/24 26/25 27/19 27/22 28/21 28/3 29/5 29/17 29/20 29/22 30/14 30/17 30/24 31/16 31/22 32/12 33/9 34/8 34/16 35/9 36/1 36/10 36/12 36/23 40/7 40/9 42/1 42/3 42/18 43/17 43/18 44/7 44/13 45/1 45/15 47/19 48/2 53/2 53/14 54/18 55/21 57/19 58/18 60/13 60/14 60/16 60/22 61/14 63/12 64/2 64/24 65/18 68/19 69/15 69/17 70/2 70/13 70/22 71/1 71/8 72/5 76/5 76/7 76/9 77/23 77/23 78/3 78/3 78/16 78/17 78/21 78/21 78/22 79/12 79/12 79/14 81/22 88/16 88/23 90/5 91/14 91/18 91/21 92/6 92/14 93/12 93/24 94/1 95/6 96/3 97/14 110/1 110/23 111/16 112/7 112/18 113/4 115/13 116/1 116/20 123/12 124/20 127/8 128/4 134/13 139/6 140/8 140/13 144/13 159/24 159/24 174/2 174/3 188/13

**President Trump [19]** 7/7 9/8 16/22 24/10 58/18 63/12 64/2 72/5 110/23 112/7 112/18 115/13 116/1 116/20 123/12 124/20 140/8 159/24 159/24

18/11 21/17 29/13 32/1 48/5 60/16 65/20 67/9 80/11 90/17 94/21 104/5 105/13 107/16 112/22 134/6

**presidential [26]** 6/21 7/5 8/17 8/19 10/12 10/14 10/23 10/24 12/8 13/5 15/10 17/7 18/22 22/5 22/16 27/23 32/17 34/14 36/5 36/6 36/15 45/6 45/21 47/1 70/12 70/19

**Presidents [9]** 10/18 11/5 12/7 12/13 16/13 19/16 20/16 42/11 143/13

**Presidents' [1]** 40/15

**press [1]** 126/7

**pressures [1]** 146/13

**prestige [1]** 157/18

**presumably [1]** 60/5

**pretty [3]** 78/25 88/18 192/23

**Prettyman [1]** 4/12

**prevent [6]** 65/14 78/2 78/13 103/25 183/14 185/3

**preventing [1]** 183/24

**previously [2]** 159/9 162/21

**pride [1]** 58/12

**primarily [3]** 164/22 188/4 200/2

**primary [2]** 168/1 186/21

**principal [3]** 33/7 101/3 101/6

**principle [3]** 155/6 155/10 186/25

**principles [3]** 8/7 25/6 83/2

**prior [3]** 82/6 85/3 153/17

**private [17]** 25/17 25/19 26/10 26/25 31/23 32/1 32/2 33/17 34/6 34/11 40/5 41/4 87/12 195/6 196/24 198/11 199/13

**privilege [1]** 21/9

**pro [4]** 4/2 5/17 60/4 191/23

**probably [6]** 49/1 61/17 88/9 90/19 112/3 200/7

**probe [1]** 13/15

**problem [7]** 52/12 53/25 54/1 57/8 73/25 126/21 191/10

**problematic [4]** 90/11 122/9 126/18 126/19

**problems [1]** 74/5

**procedural [3]** 49/20 165/21 165/21

**proceeding [2]** 155/25 177/22

4/14 203/6 204/4

**process [1]** 154/19

**produce [1]** 116/5

**produced [3]** 4/15 66/19 66/20

**professor [4]** 55/16 55/16 113/15 113/23

**proffer [1]** 176/14

**prohibit [2]** 99/23 182/16

**prohibiting [1]** 183/20

**prohibition [1]** 103/23

**prohibitory [1]** 182/16

**prohibits [1]** 121/1

**project [1]** 171/7

**promise [2]** 117/14 158/3

**promote [1]** 31/16

**promoted [1]** 85/22

**promoting [1]** 27/3

**prong [3]** 164/13 164/21 173/24

**prongs [2]** 164/18 164/20

**proof [1]** 101/20

**propaganda [1]** 7/22

**proper [1]** 30/14

**properly [1]** 36/8

**property [1]** 86/10

**proposal [1]** 83/10

**proposed [1]** 69/17

**proposition [6]** 134/19 137/18 155/14 155/21 156/18 199/11

**proscribe [1]** 131/4

**proscribed [1]** 75/5

**prosecuted [2]** 27/19 27/20

**prosecution [4]** 27/13 27/16 27/17 27/18

**prosecutor [1]** 17/25

**prosecutorial [1]** 17/21

**prospective [1]** 161/16

**prospectively [1]** 78/12

**protect [7]** 25/11 39/8 39/11 79/4 85/4 183/18 199/9

**protected [31]** 18/11 20/6 27/9 31/18 45/5 59/12 62/14 66/9 66/11 106/12 122/2 122/12 122/14 125/1 127/4 129/1 129/6 129/14 129/16 130/9 130/11 132/15 133/14 134/16 135/25 136/11 137/15 137/16 137/18 138/5 138/24

**protection [15]** 31/21 36/9 40/16 93/2 106/21 134/21 136/13 138/6 139/23 159/12 164/8 182/13 183/3 183/5 183/14

**protections [3]** 124/4 134/7 136/25

**protects [1]** 129/22

**protest [5]** 60/4 60/5 65/8 65/23 121/2

**protesting [1]** 72/6

**Proud [6]** 81/7 90/7 90/15 90/23 91/7 91/15

**prove [2]** 113/17 191/11

**proves [1]** 134/22

**provide [6]** 34/2 95/3 119/1 133/16 182/14 195/9

**provided [2]** 168/18 168/22

**provides [2]** 37/24 152/16

**providing [2]** 166/23 197/18

**province [1]** 70/17

**proving [1]** 138/22

**provisions [1]** 180/9

**proximately [2]** 182/1 184/8

**proximity [1]** 87/3

**public [38]** 16/12 26/24 26/24 27/7 28/2 28/4 28/5 31/16 41/4 41/5 50/6 52/5 56/15 132/18 145/8 145/13 145/21 146/1 146/11 150/17 150/19 150/21 153/13 160/22 170/24 171/14 182/13 182/13 182/21 183/2 183/3 183/3 183/5 183/24 184/5 195/2 195/3 199/8

**public-policy [2]** 170/24 171/14

**public-safety [2]** 183/2 183/5

**pulled [2]** 157/13 174/4

**pulling [1]** 74/12

**pulpit [2]** 10/19 10/19

**punitive [1]** 197/8

**pure [1]** 12/6

**purely [10]** 25/17 25/19 26/10 26/25 31/23 32/1 32/2 32/15 34/11 189/23

**purpose [14]** 25/10 25/11 26/12 31/13 34/23 45/20 45/21 50/24 94/1 138/25 149/17 164/15 165/1 173/22

**purposefully [1]** 21/18

**purposes [14]** 9/4 23/20 30/15 30/22 33/16 34/19 50/2 68/2 81/24 95/21 150/3 174/11 175/18 180/18

**pursuant [3]** 14/23 16/2 152/9

**pursue [1]** 39/13

**push [1]** 169/3

**pushing [1]** 182/8

**put [15]** 22/23 53/1

88/13 105/10 123/10 136/5 157/11 165/2 176/9 185/19 196/2

**putative [1]** 183/22

**puts [2]** 55/20 184/5

**putting [2]** 52/9 138/25

**Q**

**qualified [5]** 8/25 9/23 10/8 13/12 58/3

**qualified-immunity [1]** 10/8

**qualifies [4]** 33/24 34/4 84/13 87/14

**qualify [4]** 25/19 26/1 75/7 173/23

**query [1]** 107/22

**question [93]** 9/5 10/2 11/19 15/2 22/4 22/15 22/16 22/19 26/6 30/22 35/25 36/4 46/2 46/13 49/6 56/10 56/12 56/25 58/16 58/24 59/15 63/15 65/20 65/22 66/12 67/10 68/5 68/8 69/4 80/15 81/11 81/19 81/23 82/5 82/10 82/19 87/3 91/20 100/7 107/4 111/14 111/18 111/24 112/19 116/7 116/14 121/13 122/20 123/3 124/16 128/2 129/5 132/16 132/23 133/9 133/11 133/21 134/2 134/24 135/1 135/2 135/3 135/3 135/5 136/3 137/3 138/5 138/18 139/1 141/20 145/4 147/4 151/12 155/18 163/23 165/20 166/9 174/15 174/19 174/19 175/16 180/13 180/14 181/15 185/9 187/12 190/4 190/8 192/1 194/25 200/15 200/22 200/22

**question -- let [1]** 11/19

**questioning [1]** 80/4

**questions [26]** 6/22 16/24 18/19 29/17 37/20 63/9 74/16 84/14 100/3 103/7 103/12 126/7 127/19 127/23 145/13 146/20 149/20 151/3 151/5 151/25 153/1 165/21 179/14 179/16 197/12 200/14

**quick [4]** 49/6 109/18 110/18 194/25

**quickly [9]** 83/23 87/7 98/5 119/24 140/20 140/22 165/19 179/12 202/19

**quintessential [1]** 171/21

**quite [9]** 37/20 67/10

**Q**

quite... [7] 79/23 85/8
91/8 170/20 180/6
195/4 198/25
quote [7] 25/16 28/16
59/15 118/2 141/9
144/8 176/6
quoted [3] 87/9 163/10
176/4
quotes [2] 117/22
118/20
Quoting [1] 152/1

**R**

R-a-i-n-e-s [1] 38/20
Raines [1] 38/20
raise [4] 5/25 127/14
127/18 201/22
raised [8] 38/10 48/21
82/5 105/1 124/16
124/16 124/17 184/17
rallies [2] 132/14
171/18
rally [44] 14/6 14/12
20/4 20/10 20/11 30/11
57/5 64/22 71/24 71/24
71/25 89/5 107/21
108/3 111/8 114/19
114/20 116/22 121/14
124/1 128/5 132/12
132/17 145/14 147/20
148/22 155/5 156/4
159/13 159/23 159/25
160/13 160/16 162/3
162/5 162/7 171/8
176/2 176/9 176/16
176/21 176/24 177/17
177/24
rallygoers [1] 163/8
ranking [1] 152/8
rather [10] 7/23 8/14
44/6 45/20 71/18 75/4
147/1 148/5 170/16
178/7
ratification [16] 61/1
88/23 89/12 89/17
93/23 95/15 95/20 96/5
100/4 100/21 101/18
101/21 102/13 105/8
109/11 113/2
ratified [3] 94/3 94/13
101/6
ratify [2] 99/21 132/9
ratifying [2] 96/3
113/25
re [10] 12/11 28/10
28/19 28/21 29/2 30/6
31/8 45/17 161/6 161/8
re-do [1] 28/21
re-elected [2] 29/2
161/6
re-election [6] 12/11
28/10 28/19 31/8 45/17
161/8
re-take [1] 30/6
reach [3] 42/12 51/19
169/4
reached [3] 92/8

reaches [1] 13/6
reaction [7] 62/4 67/9
92/23 93/5 133/1
133/24 194/6
reactions [2] 93/10
109/6
read [28] 63/23 63/23
69/13 73/2 75/15 75/17
76/10 76/21 76/22
76/22 85/15 85/25 88/6
98/17 123/19 142/10
142/20 153/3 157/9
157/11 158/10 158/13
158/15 158/17 158/17
158/19 158/25 194/7
reader [1] 56/6
readily [1] 46/15
reading [8] 25/12 74/1
74/12 74/13 75/14
78/14 78/14 157/7
reads [1] 65/7
ready [1] 112/12
real [4] 30/17 49/6
50/17 126/21
realize [2] 37/2 122/17
really [23] 10/2 10/5
41/14 44/10 44/11
45/20 48/21 48/23
48/25 80/4 81/19 87/25
88/15 91/20 104/13
113/10 123/21 123/21
126/24 134/9 140/22
172/7 197/9
realm [2] 102/24
196/19
Realtime [1] 4/11
reason [14] 30/17
49/11 60/4 75/10 77/9
95/18 126/19 176/21
178/7 181/22 185/12
191/12 196/2 197/17
reasonable [2] 61/8
174/21
reasonableness [1]
23/25
reasonably [2] 131/17
131/18
reasons [11] 14/2
25/18 29/14 43/23
109/23 113/7 123/8
148/19 148/25 156/1
178/5
rebuttal [5] 7/11 7/17
24/14 39/16 110/18
recall [2] 119/10
119/13
receipt [1] 144/3
receive [4] 17/2 106/21
164/8
recently [4] 6/2 11/7
18/2 46/20
Recess [2] 84/2 179/9
recharacterize [1]
65/13
recite [1] 110/22
recited [1] 160/7
reckless [1] 197/7

recognize [1] 156/6
198/15
recommendation [1]
169/3
reconcile [1] 95/11
reconstruction [5]
63/25 76/13 79/7 79/10
79/11
reconvening [1] 99/10
record [18] 50/6 68/4
133/17 142/10 142/14
142/21 144/9 144/18
153/3 154/5 157/3
157/11 166/15 168/9
168/19 173/9 176/25
204/3
recorded [1] 4/14
recounts [1] 144/15
144/15
Recovery [1] 193/8
redress [1] 124/8
refer [2] 118/18 148/24
reference [5] 57/18
107/20 118/9 122/7
125/17
referenced [2] 43/16
43/18
references [1] 64/16
172/23
referred [2] 87/8
161/13
referring [1] 118/17
Refers [1] 173/18
reflected [1] 37/21
refrains [1] 193/13
regard [3] 31/13
192/25
regarding [7] 8/6 44/4
47/11 63/10 74/16
74/18 120/7
regardless [2] 63/16
158/7
Registered [1] 4/10
regrettably [1] 126/3
regularly [1] 90/3
regulate [1] 66/4
regulating [1] 63/24
regulation [3] 44/18
47/13 196/12
regulations [2] 169/9
171/23
regulatory [1] 32/22
reject [3] 8/12 87/12
147/8 147/10 158/21
160/16 188/11
rejected [9] 9/24 47/2
141/5 168/6 168/8
168/14 189/17
relate [1] 153/8
related [12] 14/6 21/10
25/10 149/8 150/18
150/19 152/22 157/4
165/3 183/2 186/18
194/14
relates [1] 162/11
relating [3] 21/15
191/1 178/1

relationship [3] 42/6
111/25 115/7
relative [1] 106/17
relevance [1] 132/22
relevant [6] 61/3
132/22 138/22 156/14
156/16 181/1
reliability [1] 97/5
religion [1] 61/25
rely [3] 180/8 197/21
198/9
relying [1] 95/13
remain [2] 30/5 155/7
remains [1] 25/16
remarks [37] 26/9
26/23 28/15 30/10
31/11 34/7 88/25 89/4
95/16 133/24 142/10
142/13 142/21 145/9
145/13 145/18 145/21
146/1 146/11 150/10
150/17 150/19 150/21
152/21 153/13 156/23
159/24 160/15 160/20
160/21 161/5 161/8
161/24 162/6 163/15
167/19 171/14
remedies [5] 16/16
16/17 20/21 21/25
37/24
remedy [3] 16/20 16/22
195/8
remember [6] 22/11
59/8 63/11 64/10
102/19 120/19
remind [3] 42/3 125/13
148/22
remotely [3] 26/2
87/21 204/7
remove [2] 16/16 36/9
repeat [2] 120/10
152/23
repeated [1] 10/21
repeating [1] 140/5
replead [1] 49/17
reply [3] 87/10 174/2
201/21
report [2] 163/20
163/21
reporter [6] 4/10 4/10
4/11 4/11 83/17 172/9
reporting [1] 204/7
represent [3] 7/8
118/20 119/9
representative [16] 4/2
4/3 5/17 54/13 67/2
81/23 102/1 103/6
104/2 104/14 108/5
108/9 112/22 120/1
152/3 193/16
Republic [2] 148/9
191/15
Republican [6] 143/24
157/14 157/17 157/21
157/22 172/18
Republicans [5] 58/10
104/24 125/15 190/14

reputation [1] 87/17
request [2] 56/15
152/2
requested [1] 55/8
requests [1] 168/25
require [8] 10/23 43/15
51/22 91/5 91/9 106/19
118/1 189/4
required [5] 20/16
51/20 117/3 190/6
192/4
requirements [3] 14/24
22/20 173/12
requires [10] 43/20
107/5 115/18 115/20
115/20 115/22 116/4
172/19 192/5 192/13
requiring [1] 193/5
Rescue [1] 156/16
reserve [1] 7/11
resistance [1] 79/11
resolving [1] 151/25
resources [1] 44/21
150/2 155/9 173/2
respect [26] 27/18
27/21 31/6 34/8 41/25
81/4 81/9 81/20 84/20
90/14 90/19 99/17
104/13 105/24 108/1
109/10 122/16 123/6
134/25 147/20 148/12
155/7 166/12 183/1
185/25 188/22
respectfully [5] 121/6
149/5 152/2 159/20
168/3
respects [3] 30/2 42/13
137/7
respond [2] 89/1
177/17
responded [2] 55/3
95/5
Respondent [2] 4/5
5/19
respondents [2] 9/22
13/10
responding [1] 53/15
responds [1] 162/22
response [11] 31/12
52/7 83/7 87/18 88/1
88/22 92/16 125/17
130/18 151/17 163/11
responses [1] 94/24
responsibilities [4]
8/21 15/20 19/21
153/16
responsibility [4]
29/20 99/20 134/1
168/2
responsible [4] 21/23
62/9 131/13 151/24
rest [2] 85/16 100/4
Restatement [5]
101/15 164/9 164/14
164/19 173/12
result [13] 29/1 49/12
55/17 62/4 62/4 78/25

**R**

result... [7]  79/5 106/20
111/4 130/6 169/20
193/8 194/15
resulted [4]  52/8 59/13
59/18 65/21
results [8]  15/8 51/3
62/13 99/21 106/13
114/3 121/14 132/9
resume [1]  179/6
retaliation [1]  30/18
retrospective [1]
161/14
retweeted [1]  30/10
89/4
revelation [1]  157/12
review [4]  10/22 145/8
149/18 152/17
reviewed [1]  88/7
revisit [1]  202/15
revolves [1]  192/19
rhetoric [2]  66/24
122/12
rhetorical [1]  8/14
Richard [1]  71/23
right [179]  6/15 8/23
9/2 11/2 16/19 18/4
23/3 24/13 25/5 29/5
29/10 32/6 32/19 35/11
35/23 37/7 38/21 39/15
39/20 39/24 39/25
40/18 40/22 48/17
49/24 50/3 50/22 51/1
51/8 52/15 52/21 52/24
54/12 54/24 55/19 56/5
59/2 59/6 61/22 61/24
62/15 64/8 64/14 66/10
66/14 66/20 68/23
69/12 71/15 73/16
73/17 73/22 75/2 75/8
75/9 75/14 77/2 78/10
79/22 83/15 84/15
86/24 87/2 89/25 90/9
91/23 93/4 93/15 93/18
93/19 94/20 94/25
97/24 98/10 99/24
102/6 102/11 102/20
102/25 108/23 108/25
109/16 111/4 111/9
112/5 112/8 112/12
113/14 114/7 115/18
115/19 116/6 117/7
117/17 119/14 119/16
121/12 122/3 124/7
124/9 125/1 126/15
130/19 130/25 131/7
131/14 131/15 131/23
134/23 135/9 137/2
139/13 140/19 141/13
141/18 144/20 147/25
152/25 153/18 154/8
154/19 156/24 158/8
162/13 163/13 164/12
164/17 166/14 166/20
166/21 167/12 167/25
169/12 169/20 169/23
170/13 171/19 173/6
173/14 173/18 173/20

174/5 175/9 177/3
177/15 178/14 178/24
181/8 181/10 182/19
184/25 186/23 187/2
187/22 189/7 189/13
190/3 190/7 191/16
191/25 192/1 194/21
195/6 195/24 196/24
197/11 198/11 199/3
199/13 200/1 201/17
201/25 202/5 202/9
202/9 202/16
rightly [1]  147/21
rights [3]  20/5 20/5
134/14
RINOs [1]  190/24
riot [15]  25/24 56/21
70/23 97/1 112/24
115/14 135/13 138/7
138/14 138/20 145/15
145/15 152/5 160/8
195/2
rioters [6]  52/13 57/24
97/15 109/20 109/22
113/4
rioting [1]  98/11
rise [5]  123/14 192/20
194/9 197/8 199/14
rival [1]  8/11
RMR [2]  204/2 204/11
road [3]  123/22 130/4
181/1
roaming [1]  98/12
Rogers [1]  163/21
role [9]  19/23 29/18
29/21 29/24 34/8 85/21
96/15 160/1 168/21
roles [1]  52/1
rolled [1]  180/24
room [2]  51/23 90/2
Roosevelt [1]  10/20
roughly [2]  145/9
145/15
routinely [1]  168/23
row [1]  21/19
rubric [1]  33/24
Rudolph [1]  3/7
Rudy [2]  81/22 126/13
Rudy Giuliani [2]
81/22 126/13
rule [16]  14/24 44/9
44/10 45/14 45/22 46/4
46/11 117/25 118/8
118/13 152/9 152/10
152/13 152/15 166/9
196/9
Rule 11 [2]  14/24 152/9
Rule 12 [2]  118/8
118/13
Rule 16 [1]  152/15
Rule 16B [1]  152/10
Rule 26K [1]  152/13
ruled [1]  201/2
rules [14]  36/16 140/14
141/10 149/24 149/24
151/17 152/24 169/8
169/9 169/16 169/18

ruling [3]  50/3 82/9
153/23
rulings [2]  201/8
201/10
run [1]  70/19
running [3]  12/11
161/6 161/8
runs [1]  18/1
Rutledge [3]  75/18
76/22 77/11

**S**

Sachs [1]  193/4
sacred [1]  102/16
sacrifice [1]  163/8
safe [1]  5/22
safety [5]  183/2 183/5
195/2 195/3 199/8
said [97]  9/25 10/11
12/20 13/1 13/4 14/20
15/1 15/9 26/7 26/12
27/18 27/21 30/13
30/19 31/15 31/20
31/25 33/6 36/12 36/19
42/2 42/15 43/16 45/5
45/7 54/16 55/12 55/13
58/18 59/11 59/14 61/6
61/14 63/16 64/2 67/5
71/8 80/23 82/7 92/14
93/20 93/22 94/23
95/14 96/1 100/10
101/19 102/22 104/10
104/19 104/24 105/18
106/17 106/17 106/18
110/13 112/8 113/13
113/14 114/22 115/25
116/1 116/11 116/21
117/24 117/24 118/3
118/6 120/23 121/7
122/6 122/25 123/10
127/22 128/12 128/14
130/7 130/7 130/23
140/8 141/14 147/25
157/12 159/10 160/6
160/9 160/9 160/14
169/22 172/25 175/10
185/2 188/20 193/3
195/10 199/19 202/7
Sala [1]  166/5
same [28]  12/14 13/10
13/10 17/19 17/20 24/5
31/10 35/22 40/13
45/10 51/2 51/4 51/4
51/6 51/7 56/3 77/7
77/9 82/10 87/22 95/9
157/8 159/10 169/20
169/20 181/20 181/24
187/6
sanctioned [2]  42/5
47/19
Sanders' [1]  125/19
satisfied [1]  135/22
satisfies [2]  134/19
182/2
satisfy [3]  66/12 68/11
175/2
saves [1]  182/6

saw [91]  8/24 11/5 12/1
12/5 12/11 12/14 12/24
13/23 14/1 16/5 17/1
17/3 17/17 18/7 18/7
20/25 20/25 21/2 21/6
23/24 24/2 27/8 32/16
39/23 40/16 42/11 45/9
45/10 45/19 47/10
49/13 50/1 55/22 57/15
57/17 58/4 60/23 61/9
61/16 62/3 62/9 62/10
67/1 68/22 70/7 70/14
72/11 72/17 83/7 94/7
97/21 97/25 99/13
105/16 113/20 115/6
115/25 117/15 119/25
123/20 124/24 126/12
126/22 128/9 128/15
130/15 131/8 131/11
131/20 134/18 137/13
138/2 142/20 149/2
159/17 160/6 160/7
160/24 164/2 165/5
169/24 183/12 192/25
193/23 195/13 196/8
197/17 197/19 198/19
200/20 201/3
saying [25]  18/24
19/19 28/13 41/11
41/14 43/7 55/4 55/6
65/2 70/8 87/13 94/5
106/7 112/9 114/25
119/13 121/1 127/24
129/21 159/11 161/3
161/17 191/6 197/23
198/7
says [25]  21/8 21/14
50/21 58/13 59/4 65/14
68/19 81/8 86/5 93/17
98/11 98/25 99/9 102/9
112/10 119/10 122/10
122/11 122/12 158/7
162/11 163/5 173/22
176/17 176/17
scenario [5]  36/22 41/9
41/13 112/5 189/22
schedule [3]  44/1
83/18 120/1
scheduled [1]  148/16
Schertler [1]  201/23
scope [56]  13/2 29/6
31/14 34/13 36/3 40/6
40/19 43/4 87/10 101/5
143/1 143/4 143/17
145/16 145/22 145/25
146/2 147/6 147/7
150/5 150/5 151/10
151/14 151/14 153/15
155/4 155/12 155/15
155/19 156/2 156/20
158/18 159/2 159/18
160/3 161/11 161/25
162/1 164/8 164/19
165/2 165/7 165/13
165/14 166/10 169/10
169/11 170/21 171/5

say [91]  8/24 11/5 12/1
69/20 89/9 113/20

score [1]  8/10
screen [1]  141/23
scrutinize [3]  15/7
15/16 177/25
scrutiny [2]  24/4 73/8
se [18]  4/2 4/3 5/17
52/19 52/19 137/22
180/7 180/8 180/12
181/5 182/9 182/11
182/19 182/22 182/23
183/10 195/5 199/16
second [20]  29/24
34/12 36/19 36/21
39/19 42/14 45/25
46/19 49/14 54/10
74/21 98/5 98/6 98/20
145/13 153/12 166/9
173/10 177/25 191/12
secondarily [1]  79/15
secondly [1]  139/18
seconds [1]  47/5
section [24]  37/23
48/24 64/1 65/8 66/2
73/2 73/21 75/13 76/25
84/21 85/23 85/24 86/6
87/7 99/23 100/13
101/6 101/15 101/17
136/21 164/14 173/11
173/16 173/17
Section 7.04 [1]
101/15
Sections [1]  143/10
secure [4]  28/9 28/19
29/1 31/8
see [21]  6/13 15/20
37/2 41/19 45/21 66/1
76/15 76/18 76/21
76/23 77/12 83/9 83/25
87/6 88/24 89/5 102/21
102/22 131/11 138/1
194/24
seeing [1]  198/6
seek [1]  39/7
seeking [6]  25/9 28/9
31/8 98/14 137/21
154/20
seem [5]  35/15 143/20
159/17 182/8 187/15
seems [20]  12/25
13/16 29/11 30/21
30/23 31/1 49/11 59/21
64/25 66/11 79/5 81/5
92/25 106/16 122/25
137/5 138/14 171/3
181/15 191/11
seen [1]  92/13
segment [1]  117/15
segregate [2]  44/20
172/2
segued [1]  100/15
segues [1]  199/7
seize [3]  93/13 94/5
96/4
selection [1]  16/2 16/8
Seller's [1]  40/4

**Sellers [25]** 2/2 2/3 5/9 24/20 24/21 25/4 28/22 30/12 37/7 39/21 43/23 44/16 84/5 85/13 88/2 89/20 91/2 94/12 99/25 109/4 131/23 133/6 136/4 139/1 140/19

**Senator [5]** 97/20 99/2 125/19 156/10 176/11

**senatorial [1]** 147/22

**senators [9]** 97/19 143/13 143/25 157/15 157/17 157/21 157/23 176/19 176/23

**send [2]** 28/14 199/24

**sends [1]** 69/19

**sense [10]** 42/8 72/7 90/12 92/21 100/22 148/9 154/15 181/5 188/18 189/3

**sent [4]** 54/18 92/3 106/5 190/12

**sentiment [1]** 191/19

**sentiments [1]** 96/4

**separate [12]** 63/18 63/21 73/19 80/22 81/1 135/20 159/4 162/9 180/14 190/17 194/13 197/9

**separately [3]** 104/15 107/1 162/5

**separation [2]** 8/7 157/13

**sequence [5]** 95/19 95/24 96/3 111/9 113/10

**sequenced [1]** 108/14

**seriatim [1]** 55/14

**series [1]** 140/6

**serious [3]** 83/14 87/9 192/5

**serve [2]** 146/5 146/16

**serving [3]** 20/15 164/16 165/1

**session [2]** 107/10 186/13

**set [9]** 86/6 86/20 95/22 106/11 122/14 143/5 143/6 153/12 153/16

**sets [3]** 153/6 153/7 162/23

**setting [1]** 87/11

**several [3]** 93/24 94/3 113/6

**severe [4]** 192/3 192/11 193/24 194/16

**shared [2]** 50/25 51/1

**she [7]** 23/16 23/19 23/21 66/25 170/3 170/7 193/13

**Sheriff [1]** 122/8

**shifting [3]** 165/25 165/25 166/4

**ships [1]** 198/17

**shocking [1]** 192/23

**shooting [2]** 125/15

**short [2]** 172/11 192/24

**shortly [1]** 89/5

**should [32]** 7/12 7/19 7/20 8/12 19/11 26/6 31/4 33/7 38/17 40/16 50/3 50/3 62/9 63/12 77/3 82/7 89/14 99/25 103/5 114/15 117/12 118/12 128/6 155/3 159/16 166/11 171/1 172/21 173/5 176/24 179/20 200/20

**shouldn't [2]** 28/22 139/21

**shout [1]** 94/18

**shouts [1]** 94/20

**show [15]** 20/4 46/4 55/3 57/22 68/21 92/19 107/8 107/13 107/16 108/3 115/9 116/18 139/12 175/5 175/7

**showed [2]** 53/21 66/20

**showing [3]** 64/17 107/21 185/5

**shows [1]** 79/16

**shrug [1]** 72/9

**sibley [11]** 3/7 3/7 3/10 5/14 48/16 48/18 62/17 96/13 100/7 101/19 110/19

**sic [1]** 61/23

**side [2]** 6/25 51/7

**Sigmund [2]** 185/13 185/15

**signals [1]** 92/3

**signed [1]** 152/7

**significance [2]** 43/12 89/16

**significant [1]** 35/18

**signing [2]** 11/6 17/10

**signs [3]** 17/8 51/5 71/22

**silence [2]** 101/24 102/4

**similar [8]** 9/23 28/18 54/14 67/6 71/22 89/7 161/7 185/18

**similarly [3]** 82/20 146/18 157/1

**simple [4]** 35/24 68/5 72/15 157/22

**simply [22]** 22/14 28/11 31/5 31/9 45/7 46/5 49/17 54/2 65/2 72/21 93/2 94/6 114/19 115/10 116/17 121/11 127/11 165/24 167/24 169/2 191/18 196/10

**since [8]** 10/21 109/19 143/23 144/5 146/1 151/21 201/4 201/6

**single [2]** 16/19 165/12

**sir [14]** 9/18 10/13 15/2 15/12 18/17 19/25 20/14 47/8 74/22 77/25

**154/7**

**sit [3]** 120/6 133/15 191/13

**sitting [1]** 32/5

**situated [1]** 82/20

**situation [10]** 33/22 40/12 64/6 64/25 70/7 70/13 113/1 123/17 187/6 194/5

**slander [1]** 150/14

**slanderous [1]** 145/23

**sleep [1]** 122/8

**slew [1]** 28/17

**slow [3]** 97/3 98/16 99/21

**small [1]** 85/18

**smeared [1]** 82/3

**so [264]**

**So I [1]** 156/12

**so I think [9]** 9/5 50/7 55/20 135/22 140/1 158/19 160/11 170/19 182/22

**So it's [2]** 78/20 83/19

**So let's [1]** 179/11

**So this is [1]** 41/13

**So why [1]** 11/18

**social [3]** 92/2 92/7 92/16

**socialist [2]** 157/24 190/23

**soda [1]** 142/6

**sole [1]** 21/22

**some [82]** 6/18 11/3 13/11 23/6 23/22 27/3 32/24 33/4 33/16 36/2 40/16 40/17 41/9 42/12 43/15 43/20 44/9 48/25 50/4 50/24 52/20 52/20 52/21 52/23 59/10 60/17 62/22 63/18 67/17 67/17 80/7 80/12 80/15 80/19 80/22 80/22 83/7 83/8 83/8 83/9 83/13 83/21 86/1 86/14 87/24 89/16 90/3 90/11 95/3 95/12 96/13 100/18 103/7 105/5 115/6 115/20 116/10 119/20 122/7 133/1 133/25 135/6 136/15 136/19 137/7 142/6 146/20 150/12 152/22 158/15 179/13 182/6 187/20 189/12 192/13 193/12 193/15 197/24 198/4 198/15 199/23 200/3

**somebody [15]** 22/1 61/8 78/13 82/1 124/24 182/17 187/9 187/16 187/19 187/24 187/25 194/6 195/23 196/14 198/14

**somebody's [2]** 24/17 124/25

**somehow [4]** 55/23

**someone [17]** 17/13 17/23 17/24 18/1 21/13 35/9 52/22 62/1 65/2 66/22 69/14 72/5 76/19 78/18 131/9 131/19 165/8

**someone's [1]** 47/14

**something [94]** 8/25 10/18 10/20 11/5 12/7 16/17 17/5 17/14 17/15 19/7 19/15 21/7 21/10 21/11 21/14 28/6 28/7 31/19 34/1 34/16 35/2 38/9 39/23 40/6 44/5 44/6 44/12 45/16 45/23 46/9 47/2 47/15 47/25 48/4 48/21 49/1 60/1 60/16 61/7 61/15 64/23 67/6 69/1 69/9 69/10 70/7 71/10 73/6 76/23 80/1 83/14 89/10 94/14 97/18 101/8 102/2 105/2 106/7 107/20 107/20 107/21 107/23 111/4 112/3 117/23 118/2 123/23 124/1 124/2 125/7 125/24 126/17 126/22 129/14 129/24 130/1 131/8 131/10 131/19 133/1 133/16 133/25 142/7 150/21 168/23 173/10 173/23 175/4 175/19 184/21 187/10 192/11 195/15 196/15

**sometimes [1]** 169/2

**somewhat [4]** 23/8 100/22 109/5 158/24

**son [5]** 90/18 104/5 105/13 107/16 112/22

**songs [1]** 131/14

**soon [1]** 203/4

**sorry [26]** 28/22 39/18 49/5 58/2 67/24 81/13 81/15 89/19 90/25 93/6 96/11 97/6 97/11 99/5 109/7 115/11 130/24 139/3 142/18 142/19 157/6 175/11 180/3 184/19 185/14 197/14

**sort [46]** 22/19 32/8 44/9 50/6 53/20 55/25 56/9 62/23 62/24 67/5 67/17 67/17 71/9 78/25 80/17 81/17 92/18 94/6 101/9 105/8 105/13 106/10 110/21 110/25 112/8 112/9 112/11 113/23 115/6 116/3 134/22 135/3 148/19 148/23 150/1 150/6 151/8 157/7 167/17 168/3 171/6 174/23 184/22 184/23 192/6 198/4

**sought [2]** 38/24 148/21

**sounds [2]** 112/10 178/10

**sourced [1]** 119/6

**sources [1]** 77/10

**sow [1]** 103/21

**speak [15]** 16/11 19/9 26/4 28/4 49/8 50/15 84/10 84/11 112/22 117/18 133/19 135/17 158/3 170/23 175/21

**speaker [7]** 46/25 92/22 109/5 123/10 133/25 141/3 144/10

**speaker's [3]** 133/24 133/24 141/3

**speakers [4]** 54/3 55/24 57/5 93/9

**speaking [17]** 6/23 10/17 19/1 19/6 27/3 27/7 28/1 28/11 42/8 71/24 72/5 95/2 110/24 111/8 112/18 133/2 176/21

**speaks [5]** 60/9 75/2 132/4 169/7 169/8

**special [3]** 102/10 157/19 189/18

**specific [18]** 33/7 38/3 46/8 68/14 68/17 76/14 85/8 152/16 167/16 179/14 183/15 189/12 189/25 190/1 190/2 190/22 194/6 200/5

**specific paragraph [1]** 190/22

**specifically [11]** 9/24 47/2 76/13 76/18 108/1 112/4 114/16 183/17 186/11 187/4 190/20

**specificity [1]** 82/7

**spectrum [1]** 23/8

**speech [173]** 8/8 9/10 10/18 12/6 12/6 12/24 12/25 18/11 18/25 20/6 26/18 30/19 32/15 35/10 41/11 43/14 43/17 43/18 44/19 45/4 45/11 45/19 47/1 56/15 57/19 58/25 59/11 59/13 59/21 59/24 59/25 61/20 62/5 62/5 62/10 62/10 62/13 63/12 64/11 65/1 65/4 66/4 66/12 68/24 68/25 73/15 74/2 74/4 92/24 94/21 105/4 105/17 106/12 106/21 106/22 108/6 110/24 111/5 115/4 115/6 119/18 120/20 120/24 122/4 122/6 122/11 122/13 122/14 123/2 123/9 123/20 123/24 124/1 124/1 124/4 124/6 124/18 125/1 125/20 126/5 126/11 127/24 128/22 128/25 128/25 129/1 129/11 129/14

**speech... [85]** 129/16
129/22 130/3 130/4
130/9 130/10 130/11
131/5 131/5 131/11
131/16 131/17 132/11
132/12 132/14 132/17
132/18 133/13 133/14
134/13 134/16 134/19
135/5 135/7 135/12
135/15 135/15 135/24
136/6 136/10 136/16
136/22 136/23 137/15
137/16 137/18 137/18
137/22 138/4 138/5
138/19 138/23 139/19
139/25 141/1 143/15
145/5 145/10 148/4
148/20 148/20 148/25
149/2 149/16 149/17
149/19 150/25 151/18
153/13 155/5 155/17
155/24 156/3 156/10
156/14 156/15 156/20
157/10 158/11 159/8
159/18 161/13 161/15
162/3 162/9 162/11
162/18 162/24 163/3
163/10 163/25 165/14
178/5 178/8 186/6
**speeches [7]** 10/21
11/13 55/14 121/22
122/2 137/22 156/7
**Spencer [1]** 71/23
**spend [1]** 117/9
**spoke [7]** 7/24 28/8
43/11 89/15 94/4 97/14
104/23
**spoken [9]** 10/6 11/7
11/15 42/4 52/24 67/8
104/16 129/9 154/13
**sport [1]** 43/9
**squall [1]** 14/20
**squarely [1]** 28/6
**St [1]** 3/8
**Staff [1]** 105/10
**stage [18]** 14/21 18/13
46/1 56/18 60/25 71/5
71/18 82/16 113/3
116/15 116/16 123/14
124/12 175/3 175/6
175/18 181/17 193/19
**stand [4]** 69/23 106/14
199/11 203/4
**standard [38]** 14/16
22/14 23/23 37/3 37/5
42/21 46/3 46/12 46/15
54/20 59/24 66/13
106/3 109/5 116/23
120/17 123/6 165/11
175/17 175/21 180/13
180/14 180/19 180/25
181/6 181/9 182/12
183/10 184/14 184/23
190/5 192/22 193/4
195/9 195/10 196/11
197/18 198/10
**standards [5]** 18/15
135/22
**standing [19]** 6/22
22/5 22/8 22/20 27/2
37/14 37/20 39/2 39/13
48/12 48/20 62/24
74/17 75/1 75/10 75/12
75/15 145/24 180/10
**standpoint [7]** 50/7
59/25 62/8 70/1 80/15
111/3 114/2
**stands [4]** 88/10
137/17 196/5 202/6
**start [17]** 8/16 16/1
17/22 32/20 46/24
48/16 104/4 120/11
120/14 129/16 129/18
129/21 147/25 163/6
176/11 179/17 179/19
**started [6]** 6/20 54/9
54/15 89/5 145/16
149/22
**starting [1]** 80/3
**starts [2]** 63/23 63/24
**state [18]** 12/12 12/14
15/6 15/6 15/15 15/15
15/16 15/16 15/18
15/22 15/23 16/3 16/5
16/7 19/13 43/19 45/10
201/13
**stated [3]** 43/23 108/2
143/18
**statement [18]** 8/3
10/24 20/10 20/12
20/13 22/11 53/14 81/9
104/6 105/14 105/16
105/22 118/25 119/10
146/3 146/22 153/1
183/7
**statements [26]** 11/20
20/18 29/1 52/5 54/1
54/2 54/21 54/23 56/7
57/4 57/9 57/13 77/14
96/17 105/23 112/17
118/24 122/9 128/4
128/5 129/7 129/11
134/6 140/6 145/23
171/4
**states [32]** 1/1 1/21 4/6
5/19 21/3 28/1 28/14
40/9 75/19 75/21 76/1
76/20 77/13 78/18
78/19 79/10 79/13
87/19 87/21 99/11
118/1 143/9 143/21
144/1 146/24 151/3
151/7 153/10 167/8
167/10 168/1 191/17
**stating [1]** 144/8
**status [1]** 47/14
**statute [50]** 19/24 35/9
35/14 35/21 37/23
38/19 39/7 48/12 63/22
65/14 73/7 73/20 74/1
74/12 74/13 74/17 75/1
75/3 75/15 76/6 76/11
76/14 77/6 77/16 77/24
84/14 84/24 85/2 85/23
121/1 121/16 121/19
182/10 182/12 183/4
183/6 183/20 195/2
195/3 196/5 196/9
196/11 197/20 198/11
199/3 199/7 199/14
**statutes [25]** 25/22
29/19 35/17 87/23
180/17 182/13 182/14
182/15 183/8 183/14
183/17 183/19 184/3
184/6 184/14 189/4
189/10 189/10 189/11
195/7 195/9 196/2
196/25 197/18 199/8
**statutorily [1]** 149/3
**statutory [28]** 40/17
44/10 48/12 62/24
63/21 74/17 75/1 76/1
76/15 103/23 116/23
116/25 120/8 143/15
158/14 159/6 177/12
179/7 180/12 181/4
182/5 183/2 184/7
184/12 188/23 195/20
198/5 198/9
**statutory-standing [1]**
62/24
**stay [3]** 29/2 60/19
127/19
**stead [1]** 106/15
**Steal [2]** 41/13 41/17
**stemming [1]** 193/20
**stenography [1]** 4/14
**step [3]** 25/1 31/2
161/22
**steps [4]** 160/8 182/6
182/20 182/21
**steroids [1]** 199/17
**stick [5]** 6/18 22/18
67/4 125/18 125/20
**sticking [1]** 22/22
**still [23]** 9/11 16/9
18/14 18/14 18/22
26/19 27/9 31/23 32/1
43/20 46/19 48/2 59/5
74/8 86/21 88/9 95/19
123/9 141/24 173/24
189/6 196/16 202/6
**stipulate [1]** 178/13
**stolen [1]** 41/11
**stop [9]** 41/12 41/17
60/23 61/10 70/23
71/25 107/23 140/12
186/21
**stopped [1]** 162/4
**stopping [1]** 36/24
**stops [1]** 162/2
**stories [1]** 105/9
**storm [7]** 54/10 54/11
55/4 68/22 93/17 94/18
94/24
**stormed [2]** 110/7
186/17
**story [1]** 202/8
**straight [1]** 70/19
**straightforward [1]**

**strange [2]** 78/25 79/5
**strategy [1]** 99/11
**Street [5]** 2/9 2/13 2/19
3/3 3/12
**strength [7]** 55/3 57/22
64/17 65/5 68/21
129/13 139/12
**stretch [1]** 179/11
**strewn [1]** 102/5
**strictly [1]** 155/7
**strikes [2]** 100/8 141/7
**striking [2]** 125/14
187/25
**stripped [3]** 102/17
159/11 159/12
**strong [3]** 58/10 70/19
122/18
**stronger [1]** 100/24
**struggle [1]** 41/3
**struggled [2]** 89/23
127/17
**struggling [2]** 40/20
100/17
**stump [1]** 12/25
**subcommittee [3]**
152/11 152/12 152/15
**subject [19]** 12/7 13/22
17/6 20/21 21/3 25/16
31/23 32/2 32/16 35/21
48/2 70/14 70/15 71/9
71/17 146/11 165/18
188/17 204/6
**subjective [1]** 141/3
**subjects [1]** 108/24
**submission [1]** 142/14
**submissions [1]** 149/9
**submit [18]** 34/14
86/12 86/17 92/6 103/9
136/14 136/15 145/8
145/12 149/7 151/16
152/18 153/14 154/3
177/19 177/23 182/23
199/10
**submittal [1]** 144/4
**submittals [3]** 143/21
144/1 144/8
**submitted [4]** 125/14
144/10 151/23 172/25
**subpoena [1]** 48/2
**subscribes [1]** 90/8
**subsequently [1]**
47/20
**substantial [4]** 59/15
122/20 123/3 124/15
**substantially [1]** 20/3
**substituted [2]** 166/11
167/8
**successfully [1]** 17/13
**such [19]** 11/6 20/13
20/20 39/7 47/1 57/5
66/3 73/12 76/11 83/7
86/9 116/5 131/6
153/10 186/3 187/11
197/4 200/24 201/1
**sue [1]** 17/14
**sued [4]** 20/21 20/22
24/7 48/4

**suffered [4]** 23/16
23/22 182/2 193/17
**sufficiency [2]** 75/16
108/16
**sufficient [20]** 49/18
51/22 57/3 57/6 67/11
67/14 68/1 69/4 72/2
82/14 90/19 91/8 111/2
121/18 146/6 146/17
174/20 180/18 186/3
192/21
**sufficiently [1]** 49/13
**suggest [15]** 22/6
33/23 34/10 40/14 41/8
65/9 87/4 96/3 100/23
113/3 127/7 127/8
140/16 147/19 164/5
**suggested [10]** 28/23
57/10 67/12 134/5
139/22 148/14 151/8
184/22 199/24 200/18
**suggesting [9]** 13/15
31/3 74/25 87/1 109/4
187/16 194/14 195/6
196/21
**suggestion [1]** 41/25
**suggests [2]** 135/8
137/20
**suit [9]** 20/13 21/4
27/12 27/17 32/2 47/15
47/24 146/19 198/22
**Suite [6]** 2/4 2/9 2/13
2/19 3/4 3/8
**suits [1]** 27/21
**summarizing [1]**
161/15
**summary [1]** 175/12
**support [7]** 60/18
74/13 122/16 133/12
149/16 168/5 177/20
**supporters [5]** 63/12
72/13 111/7 115/14
185/25
**supports [3]** 156/17
182/8 199/24
**suppose [1]** 111/20
**supposed [3]** 12/2
166/1 180/20
**supposedly [1]** 112/6
**Supreme [32]** 9/3
12/20 13/1 13/4 16/15
19/14 25/8 25/15 25/20
26/16 27/15 30/19
31/19 31/24 32/13
38/22 47/20 59/7 77/4
84/22 87/19 117/6
120/22 120/23 122/10
122/25 123/23 124/23
130/6 136/19 156/6
169/13
**Supreme Court [26]**
9/3 12/20 13/4 19/14
25/8 25/15 25/20 26/16
27/15 30/19 31/19
31/24 32/13 47/20 59/7
77/4 84/22 87/19 117/6
120/22 120/23 122/10
122/25 123/23 130/6

231

**S**

**Supreme Court... [1]** 156/6
**Supreme Court's [2]** 124/23 136/19
**sure [37]** 12/4 22/21 24/15 41/2 42/15 52/11 63/22 72/11 74/23 88/5 88/6 92/13 95/9 95/10 106/25 109/24 118/16 121/21 124/14 144/24 151/20 153/2 154/5 166/12 168/8 172/24 173/1 175/20 177/8 177/9 179/3 181/18 184/13 185/23 189/8 192/10 195/4
**surprise [1]** 133/4
**surprised [2]** 94/2 172/21
**surprisingly [1]** 44/1
**surrounding [2]** 189/16 194/3
**survive [1]** 21/16
**suscept [1]** 73/7
**suspect [1]** 126/4
**suspended [1]** 28/20
**swallow [2]** 45/14 45/22
**SWALWELL [18]** 1/8 2/8 5/6 5/11 7/9 42/17 103/6 104/2 154/9 154/12 162/22 162/23 179/19 184/18 184/20 185/11 193/17 196/4
**swath [2]** 139/24 184/1
**swearing [1]** 176/13
**swears [2]** 174/11 176/15
**sweep [1]** 84/23
**swept [1]** 83/6
**switched [1]** 9/17
**swore [1]** 176/7
**sworn [2]** 176/1 176/2
**symptoms [1]** 193/25
**system [1]** 154/5

**T**

**tabulated [1]** 144/15
**tacit [2]** 51/21 92/4
**take [54]** 6/7 6/16 14/13 16/9 17/22 18/23 19/4 19/5 9/11 19/22 24/17 24/24 28/23 30/6 49/9 53/8 53/15 54/9 54/12 55/4 55/23 58/12 60/22 68/23 70/14 80/5 83/19 87/17 89/2 91/13 93/18 94/19 94/25 102/23 111/1 112/12 112/25 113/9 117/22 125/6 133/8 134/11 140/17 150/10 165/1 165/7 168/2 172/22 176/18 182/20 182/21 185/16 189/1 189/20
**take-care [1]** 16/9
**taken [16]** 27/22 29/4

104/17 105/24 118/24 128/10 137/23 145/3 161/5 163/2 164/4 176/23
**takes [3]** 21/14 100/24 109/11
**taking [7]** 48/14 52/8 88/25 130/8 163/6 178/9 202/25
**talk [17]** 16/6 37/13 48/22 50/22 53/12 57/12 59/8 64/8 100/3 104/15 117/8 117/14 120/9 126/2 139/9 171/18 180/15
**talked [2]** 120/16 140/3
**talking [22]** 27/12 28/13 43/17 43/21 55/15 65/1 65/23 92/24 100/9 108/20 109/19 123/18 124/25 161/1 162/18 163/12 163/17 182/18 182/19 184/11 188/4 189/22
**talks [3]** 76/18 101/16 101/17
**tally [1]** 98/14
**target [1]** 191/22
**targeted [2]** 183/24 191/2
**Tarrio [2]** 3/11 5/15
**Tate [1]** 131/13
**taxpayer [1]** 155/8
**team [2]** 51/2 51/6
**technological [1]** 204/7
**Ted [1]** 33/6
**television [2]** 89/9 109/13
**tell [10]** 12/2 61/21 61/22 69/22 97/23 110/1 115/13 141/6 141/8 192/3
**telling [3]** 118/3 127/6 199/15
**tells [1]** 168/4
**temporal [2]** 113/10 185/17
**ten [3]** 83/19 83/25 142/16
**tend [1]** 193/25
**tends [1]** 66/22
**tenor [1]** 112/8
**tension [1]** 94/15
**term [5]** 17/14 21/21 27/20 105/2 177/24
**terms [15]** 8/15 13/2 22/20 45/15 72/19 73/24 75/2 79/7 87/20 89/23 95/4 165/22 165/23 169/17 185/7
**territory [1]** 167/4
**test [13]** 8/16 9/3 9/7 9/20 20/1 20/2 20/7 40/5 40/6 73/15 130/16 135/6 194/1
**testimony [1]** 47/19

**than [42]** 7/23 8/14 11/12 17/24 21/25 27/17 36/22 41/1 44/20 45/20 46/3 47/23 55/21 59/22 65/1 76/4 83/23 88/14 89/10 90/21 91/5 92/8 95/25 99/3 100/24 102/14 104/5 106/15 119/24 120/21 124/19 129/22 138/7 142/16 143/24 148/5 157/19 175/4 177/6 191/21 196/5 198/21
**thank [37]** 6/11 7/18 37/7 37/18 41/22 43/24 44/3 48/6 84/1 84/9 93/19 100/6 110/16 130/17 140/19 141/12 142/25 153/18 154/6 154/7 166/21 166/23 166/25 167/1 167/5 177/3 178/14 178/15 179/8 194/22 194/3 199/22 202/20 202/23 202/23 203/5
**thank you [22]** 6/11 37/7 44/3 84/9 93/19 100/6 110/16 130/17 140/19 141/12 153/18 166/21 166/25 167/1 167/5 178/14 178/15 179/8 194/22 199/22 202/23 202/23
**that [1462]**
**that can't [1]** 183/6
**that emotional [1]** 22/23
**that the [2]** 67/21 155/6
**that's [194]** 7/15 7/22 9/2 11/2 11/9 13/12 14/9 14/14 15/3 15/8 16/7 17/9 19/15 20/1 25/3 25/4 31/19 33/10 33/25 36/18 37/3 37/23 38/20 38/23 39/20 39/25 40/7 40/25 42/12 42/21 42/21 45/8 47/2 47/15 47/23 47/25 48/3 48/21 50/10 50/12 50/20 51/11 51/20 53/10 53/12 53/13 53/17 53/23 53/23 55/11 55/12 57/8 57/13 59/12 61/1 61/2 62/3 62/11 62/13 65/22 66/5 66/6 66/14 70/15 70/24 71/3 71/11 72/8 72/9 73/6 73/16 73/23 75/1 75/8 75/9 77/2 77/8 77/8 79/5 81/23 81/25 84/15 93/8 97/24 97/24 99/4 99/6 101/6 101/13 101/20 101/21 102/13 103/9 103/16 103/19 103/20 104/25 106/14 107/6 108/15 108/23

111/11 113/12 113/12 114/1 114/12 114/21 116/6 116/12 116/12 121/4 121/16 123/23 125/1 125/3 125/3 126/6 126/15 126/17 126/19 129/14 130/4 130/17 131/6 134/10 137/2 137/10 138/18 145/6 147/6 147/6 147/15 150/1 150/25 151/10 154/18 154/21 155/21 156/9 158/20 158/25 158/25 161/11 162/7 162/14 162/21 162/25 163/3 163/10 164/2 164/10 165/8 165/11 166/17 167/22 168/5 168/6 168/10 168/12 168/17 168/19 169/18 170/17 170/19 171/19 171/23 171/25 173/6 173/9 176/12 177/23 178/22 179/2 180/4 180/10 181/9 184/9 184/16 184/21 184/24 186/21 187/13 188/3 188/5 191/5 192/4 192/11 194/17 198/21 198/22 202/9
**theater [1]** 59/3
**theft [1]** 158/1
**their [49]** 8/1 12/15 16/22 18/4 23/25 25/2 26/20 30/4 36/17 36/17 38/9 38/11 38/16 38/25 39/1 39/5 39/8 39/8 39/9 39/10 39/12 45/15 45/17 45/18 55/23 56/1 62/10 62/21 62/25 63/13 74/17 75/11 93/10 111/6 111/25 134/6 139/15 144/20 148/8 157/14 157/16 157/17 157/18 157/19 168/16 171/22 191/2
**them [59]** 6/17 8/10 16/19 20/17 26/13 26/13 30/3 30/4 30/5 30/10 34/15 38/3 39/8 39/11 40/1 50/15 52/24 53/6 53/7 53/7 58/11 61/21 61/22 62/2 64/10 75/12 76/22 83/3 91/10 92/13 93/15 94/5 94/10 97/2 98/15 99/9 104/18 108/4 109/15 112/3 116/11 119/2 120/4 122/17 123/13 141/8 157/9 157/9 167/17 176/10 176/17 176/18 176/20 189/2 189/7 189/12 191/24 195/18 195/19
**themselves [6]** 7/21 77/18 77/19 86/19

**then [96]** 7/1 10/21 12/12 16/2 20/6 21/15 21/18 22/15 23/4 24/13 24/13 24/16 30/8 31/11 33/5 37/16 45/6 45/11 47/6 47/19 49/16 53/5 55/3 56/16 57/20 59/14 60/20 63/1 64/18 64/18 65/5 65/9 68/22 71/25 77/10 78/23 81/11 81/19 81/20 83/3 83/21 84/14 86/7 89/7 91/9 93/22 94/21 96/22 100/11 100/14 104/6 114/21 125/1 125/5 130/19 131/9 131/10 131/20 136/12 138/14 139/23 141/6 141/8 143/5 149/21 154/9 158/7 161/1 163/7 164/3 166/9 174/3 175/14 176/20 178/9 178/13 180/9 180/9 181/4 181/6 181/11 184/6 185/15 187/10 187/13 188/15 189/2 189/14 189/14 189/17 189/17 190/3 191/12 195/24 200/14 201/5
**then-Assistant [1]** 33/5
**then-Attorney [1]** 161/1
**then-President Trump [1]** 174/3
**Theodore [2]** 10/20 152/8
**theoretically [3]** 17/15 53/23 68/3
**theory [6]** 70/18 78/1 187/13 187/23 188/12 188/23
**there [160]** 6/17 9/11 9/12 13/18 14/16 15/24 16/17 16/25 17/12 19/3 20/21 20/24 21/2 22/15 31/24 32/11 33/12 34/14 36/4 37/8 42/23 44/12 45/2 46/21 50/18 51/8 52/16 52/19 52/20 52/21 53/6 53/21 54/7 56/12 58/20 58/21 59/9 59/10 59/12 60/6 61/3 63/15 65/4 65/15 65/15 70/4 71/22 72/1 74/8 77/21 80/14 80/23 81/2 81/9 85/3 85/20 87/25 89/21 89/25 90/23 90/24 91/8 92/2 92/18 93/9 93/10 93/14 93/22 93/24 97/13 99/3 100/10 100/18 101/10 101/11 102/18 104/7 105/12 107/3 107/5 107/15 108/17 109/7 109/21 112/11

**T**

**there... [70]** 112/14 115/6 115/7 116/11 116/18 118/24 122/1 122/7 123/3 125/1 127/13 129/10 132/5 132/13 133/20 135/6 141/6 141/25 147/13 148/22 149/16 149/20 150/25 151/8 151/17 152/19 157/2 157/2 157/8 164/3 165/5 165/25 167/15 167/23 172/6 173/12 175/13 175/14 178/7 178/8 179/8 179/14 179/17 180/2 181/5 181/14 185/1 185/3 185/4 185/22 186/15 186/16 188/10 188/13 190/18 191/1 191/4 192/22 193/15 193/16 194/12 194/25 195/5 197/5 197/23 199/23 200/18 200/24 200/25 202/21

**there's [96]** 6/3 6/23 11/23 16/3 19/12 22/12 23/8 23/12 29/21 29/23 34/5 35/16 35/24 36/13 44/13 44/17 50/25 52/15 54/2 55/13 56/25 60/3 61/13 64/2 70/20 77/9 78/6 81/7 81/9 81/20 82/6 82/12 83/7 87/9 90/17 90/23 90/24 94/15 99/16 102/13 103/23 104/5 105/6 105/8 105/9 107/8 110/24 111/18 113/6 114/14 114/19 115/24 116/9 123/16 125/23 133/21 133/21 135/7 135/8 137/20 139/24 140/3 140/9 140/15 144/24 153/2 153/7 159/5 161/23 162/2 162/3 162/10 163/14 164/18 166/3 166/15 166/18 167/24 168/8 174/20 177/19 185/5 185/25 187/20 188/19 188/20 190/6 191/7 191/7 194/5 195/24 196/13 197/19 198/4 199/23 200/4

**therefore [6]** 49/16 171/16 172/21 182/22 188/14 204/6

**therein [1]** 86/7

**these [67]** 7/19 8/5 10/2 14/4 14/22 16/18 16/23 25/24 26/9 26/9 32/2 33/22 44/13 44/14 48/10 48/11 50/4 56/2 56/6 61/25 63/19 67/8 73/19 74/18 77/13 87/16 92/18 94/8 95/24 96/1 102/16 103/2

118/14 124/10 125/4 125/17 126/2 126/10 126/11 127/7 127/18 127/23 131/15 139/22 144/6 144/11 150/13 150/16 159/24 161/23 170/17 171/23 173/8 176/8 179/16 179/20 179/22 180/23 182/9 182/15 195/7 195/12 195/14 196/25

**they [139]** 7/20 8/5 9/6 9/25 14/23 16/16 16/20 16/20 16/23 18/24 24/9 30/6 30/8 37/12 37/17 38/2 38/3 39/2 39/4 39/9 39/11 39/12 39/23 41/10 42/2 46/2 46/5 46/11 49/1 50/15 51/2 51/3 51/25 52/2 52/14 53/6 53/20 53/24 54/17 55/1 58/3 58/12 59/9 61/7 61/25 62/25 63/12 68/4 74/25 75/11 75/12 77/16 77/16 77/17 77/18 78/5 78/6 78/7 79/9 79/19 80/11 82/3 83/13 87/10 87/11 87/14 87/15 87/18 88/16 90/3 91/9 92/4 94/9 96/19 98/16 100/11 103/2 103/3 103/4 104/18 106/2 106/3 110/21 111/22 112/4 112/20 113/10 115/1 115/2 115/9 115/25 115/25 116/11 117/4 117/4 117/24 117/24 118/14 118/18 119/6 119/6 119/18 120/6 120/25 123/19 127/18 128/15 134/7 136/24 143/18 150/25 152/21 157/20 157/25 157/25 161/10 161/15 168/16 173/3 176/19 176/23 176/24 178/6 178/12 180/13 182/16 182/17 183/9 184/18 185/16 186/18 186/20 188/10 189/11 189/11 194/3 195/15 195/17 201/22

**they'd [1]** 7/2

**they're [23]** 7/22 13/15 15/22 15/22 16/4 26/14 38/3 42/11 51/2 51/4 51/6 83/14 93/15 99/10 117/3 117/5 128/10 128/10 128/17 139/18 171/24 190/1 194/14

**they've [9]** 27/21 46/3 48/21 72/22 78/1 112/20 128/14 168/8 180/6

**thing [20]** 27/4 47/10 53/13 53/24 72/12

96/12 109/2 113/21 127/16 131/1 138/2 162/14 162/16 173/3 176/20 187/7 196/4

**things [39]** 9/19 12/15 23/10 34/10 36/24 43/7 45/14 48/25 66/16 66/18 69/20 70/14 71/2 71/6 72/6 80/3 80/16 80/19 80/23 87/20 87/24 92/18 115/24 117/15 117/24 118/14 121/7 128/8 131/15 132/2 134/3 148/21 150/14 161/9 170/23 170/24 176/16 188/18 190/17

**think [259]**

**thinking [9]** 12/21 13/2 71/13 98/24 99/4 103/13 108/13 147/25 175/17

**thinks [2]** 22/1 187/25

**third [14]** 36/25 63/17 101/4 101/16 125/6 164/13 173/24 176/20 178/5 185/2 185/3 187/8 188/14 190/4

**third-party [4]** 36/25 187/8 188/14 190/4

**this [333]**

**THOMPSON [6]** 1/3 2/2 5/5 5/9 64/21 81/5

**Thompson's [1]** 54/13

**those [109]** 6/18 8/1 11/11 12/14 13/21 13/24 14/23 18/15 18/16 18/19 20/20 25/14 26/1 26/4 26/9 28/15 31/13 33/23 34/2 34/3 34/10 35/17 44/20 44/25 49/1 54/12 54/21 54/23 54/23 57/24 58/18 60/7 65/3 65/16 66/10 67/2 69/21 71/2 71/6 76/5 76/7 76/8 76/8 76/20 76/25 78/23 79/4 79/16 81/10 87/22 89/1 90/16 90/18 90/19 90/21 92/8 92/9 94/20 94/24 95/16 106/8 108/18 108/24 116/10 118/19 119/17 119/17 122/8 122/18 127/12 139/14 139/14 142/13 144/19 144/20 148/1 148/24 149/24 150/3 150/19 152/25 153/7 154/3 159/19 161/12 163/15 163/20 166/14 169/9 169/18 176/18 176/22 180/20 182/21 184/3 184/7 187/1 187/3 187/4 187/5 188/18 189/4 189/5 189/9 189/10 189/10 196/7 196/9 197/11

though [8] 19/22 42/10 59/24 128/20 145/23 160/4 160/15 201/1

**thought [13]** 17/6 22/6 38/7 38/17 58/2 71/16 84/10 84/11 118/23 131/14 149/13 154/15 197/15

**thousands [1]** 41/12

**threat [4]** 65/15 65/16 104/1 110/11

**threats [2]** 130/14 186/13

**three [17]** 22/7 22/20 24/24 24/25 45/2 49/9 49/21 52/9 65/3 82/24 145/15 164/20 168/18 173/12 173/13 176/16 180/23

**threshold [3]** 18/18 43/20 46/2

**throat [1]** 142/7

**through [12]** 36/24 83/23 85/14 90/3 92/7 119/23 120/6 138/7 165/19 178/6 179/11 186/13

**throughout [1]** 80/5

**ticket [1]** 35/2

**tie [2]** 44/9 196/16

**ties [1]** 70/11

**time [29]** 6/18 36/21 47/8 63/2 76/3 79/23 86/19 105/21 107/13 107/24 113/17 117/10 119/4 120/3 135/11 156/8 167/14 168/21 170/23 171/18 172/24 173/1 177/18 183/21 190/1 196/14 201/22 202/12 202/25

**times [2]** 139/7 155/13

**timing [3]** 54/8 95/4 95/16

**tiny [1]** 109/2

**tired [1]** 172/9

**titled [1]** 204/4

**today [14]** 6/4 40/12 66/21 100/9 108/17 110/8 157/12 157/13 157/16 157/21 157/22 163/5 163/6 202/22

**today's [1]** 6/8

**together [2]** 51/23 76/22

**told [5]** 30/5 63/12 196/23 196/24 199/20

**TOLL [1]** 2/3

**tonight [1]** 99/10

**too [17]** 31/2 38/7 42/20 42/21 45/22 63/23 74/1 80/2 123/10 134/22 167/17 173/19 173/25 174/14 180/3 191/11 198/12

**took [10]** 16/20 31/5 31/10 36/2 43/2 47/20

Those gathered [1] 111/7 143/15 161/2

**toothbrush [1]** 118/4

**top [1]** 179/15

**topic [8]** 6/24 47/7 48/7 83/23 108/9 178/18 179/6 202/10

**topics [2]** 88/4 106/11

**tort [17]** 37/22 37/23 37/24 165/6 165/8 165/10 166/12 166/14 166/16 166/16 177/11 187/17 187/22 193/11 196/16 197/4 199/13

**tort-like [1]** 37/24

**tortious [21]** 41/15 56/14 56/15 57/2 67/13 67/25 68/9 68/10 75/5 75/7 82/12 100/11 100/20 101/1 102/24 134/16 141/11 141/11 162/25 163/1 163/3

**tortiously [1]** 134/11

**torts [3]** 88/10 187/21 189/6

**total [1]** 133/4

**totally [1]** 192/16

**touch [1]** 160/19

**tough [1]** 192/22

**Tower [1]** 2/4

**traceable [1]** 40/17

**traced [1]** 40/15

**track [1]** 76/2

**traffic [1]** 35/2

**tragic [1]** 125/20

**trail [1]** 12/13 12/25 43/19 45/11

**transcend [1]** 122/13

**transcript [3]** 1/20 4/14 204/3

**transcription [1]** 4/15

**traveling [1]** 36/23

**treason [2]** 27/3 31/16

**treat [1]** 127/8

**treating [1]** 127/10

**trial [4]** 55/17 82/16 96/18 117/25

**tried [3]** 6/17 21/6 44/6

**troops [1]** 146/13

**trouble [2]** 138/3 179/24

**troubling [1]** 126/5

**true [26]** 14/9 14/13 14/14 14/25 28/25 31/10 50/10 51/18 55/23 81/17 90/14 113/12 116/12 123/13 129/17 129/24 130/14 134/10 143/23 144/12 159/3 160/1 161/21 168/14 169/14 191/9

**true-threats [1]** 130/14

**truly [1]** 187/9

**TRUMP [74]** 1/6 1/11 1/17 3/2 5/6 5/7 5/8 5/13 7/7 7/8 7/24 9/8 16/22 24/7 24/10 24/11 25/10 25/18 25/22 30/2

**T**

**TRUMP... [54]** 34/4
34/21 54/18 57/16
58/18 61/13 63/12 64/2
72/5 72/12 80/12 81/22
85/21 86/12 91/10
96/21 100/11 100/16
103/8 104/4 104/13
105/25 106/4 108/4
110/9 110/23 112/7
112/18 115/13 116/1
116/20 116/20 117/18
119/9 123/12 124/20
126/12 126/13 140/8
156/4 158/22 159/24
159/24 160/17 162/3
162/6 162/7 174/3
176/2 185/25 191/22
191/23 191/23 201/21
**Trump's [7]** 11/17
26/23 28/18 43/7 87/10
99/1 100/19
**trust [3]** 76/19 77/12
78/18
**Trustees [1]** 185/14
**truth [5]** 23/16 23/21
128/22 133/13 140/25
**try [14]** 6/18 29/5 29/8
30/24 58/7 58/9 58/11
118/14 123/25 134/3
146/20 167/20 172/8
179/11
**trying [29]** 13/11 16/6
21/1 22/11 30/9 32/5
41/3 43/8 55/22 72/21
72/25 79/8 101/12
103/14 115/6 121/9
121/17 126/1 126/6
129/11 129/16 137/14
180/11 186/20 195/8
196/10 196/22 198/19
199/20
**Tuberville [3]** 97/19
97/20 99/2
**Turkey [1]** 191/15
**turn [19]** 7/1 8/13
24/13 24/16 39/15
39/25 63/3 84/5 91/19
100/1 103/11 110/17
117/13 119/22 130/19
141/19 154/8 154/21
157/23
**turned [2]** 95/18 95/19
**turns [1]** 186/15
**tweet [4]** 69/19 89/8
104/6 108/2
**tweeted [2]** 60/14
60/15
**tweeting [3]** 90/6 90/6
90/7
**tweets [6]** 9/9 52/25
53/13 60/18 102/14
106/15
**twice [1]** 57/19
**Twitter [3]** 60/22 90/8
159/8
**two [59]** 18/10 18/15
18/16 25/2 25/17 32/20

60/20 60/21 65/3 69/22
70/4 73/19 79/1 81/8
81/10 83/16 90/16
90/18 90/19 90/21 91/5
91/6 99/12 102/14
103/14 103/15 106/11
111/12 114/17 116/7
116/9 122/8 143/3
144/19 153/6 159/14
159/19 160/24 164/18
165/21 172/11 172/17
172/18 174/3 176/6
176/11 176/17 177/6
178/22 188/18 188/20
190/17 191/7 191/7
194/13 198/17
**two-hour [1]** 60/21
**Twombly [4]** 82/8
114/24 116/17 117/6
**TX [1]** 3/9
**type [9]** 10/15 11/12
43/18 60/22 74/3
103/20 129/22 171/4
182/14
**types [5]** 66/10 74/11
76/16 103/14 139/23
**typical [1]** 11/10
**typically [5]** 12/13
66/17 170/17 182/18
192/18

**U**

**U.S [5]** 136/21 143/2
143/13 143/19 166/11
**U.S. [3]** 120/3 143/10
143/19
**U.S. Attorney [1]** 120/3
**U.S. Code [1]** 143/10
**U.S. Constitution [1]**
143/19
**U.S.A [1]** 176/17
**U.S.C [1]** 143/11
**ultimate [1]** 65/5
**ultimately [5]** 59/11
67/10 116/14 135/4
169/4
**unceremoniously [1]**
102/17
**unchallenged [1]**
157/5
**unclear [2]** 54/8 135/16
**unconstitutional [1]**
66/4
**unconstitutionally [1]**
85/7
**under [55]** 6/7 8/16
8/17 9/7 13/17 18/10
18/12 18/21 20/19
23/23 23/25 24/4 33/24
34/3 37/22 42/5 48/8
48/9 48/12 48/24 50/23
73/18 73/19 74/3 75/13
76/15 76/19 78/19
78/19 78/22 84/13
100/12 106/2 106/9
107/2 132/15 134/21
135/5 136/7 143/4

165/15 166/1 166/5
166/16 166/19 173/16
188/23 192/12 195/7
196/14 196/25 200/24
**underlining [1]** 174/13
**underlying [5]** 137/20
143/3 146/12 181/3
189/4
**underscore [2]** 40/4
109/8
**underscores [1]**
202/25
**understand [42]** 11/11
12/2 14/17 33/21 35/1
47/8 51/17 52/18 60/6
64/7 71/3 71/3 74/24
74/25 75/24 76/10
85/15 91/11 95/14
101/14 110/14 110/14
120/17 124/14 125/2
133/10 155/20 168/9
170/5 177/10 180/5
180/6 180/11 182/24
188/16 190/10 190/15
195/22 196/22 198/16
198/25 200/11
**understanding [9]**
95/5 98/18 99/8 111/21
112/6 118/19 172/19
175/23 198/7
**understood [10]** 22/6
39/14 85/16 95/9 126/8
135/19 137/8 142/18
142/20 158/25
**undertaken [3]** 33/2
36/7 165/10
**undisputed [1]** 114/4
**undoubtedly [1]** 28/25
**undue [1]** 106/16
**unearth [1]** 86/2
**unequivocal [1]** 8/3
**unfairly [1]** 83/6
**unidentified [1]** 117/22
**uniform [1]** 50/3
**unify [1]** 122/16
**Union [5]** 12/12 12/14
19/13 43/19 45/10
**unique [1]** 25/2
**uniquely [1]** 183/24
**Unit [1]** 4/4
**UNITED [28]** 1/1 1/21
4/6 5/19 19/14 21/3
28/1 40/9 43/17 75/19
75/21 76/1 76/20 77/13
78/18 78/19 79/10
79/13 87/19 87/21
143/9 146/24 151/3
151/7 153/10 167/8
167/10 168/1
**United States [20]**
21/3 28/1 75/19 75/21
76/1 76/20 77/13 78/18
78/19 79/10 79/13
87/19 87/21 146/24
151/3 151/7 153/10
167/8 167/10 168/1
**United States of [1]**

**Univ [1]** 185/14
**unlawful [19]** 26/20
34/17 50/18 52/3 59/17
60/2 60/3 88/21 122/22
134/20 134/24 134/25
136/17 136/23 137/20
137/23 137/24 138/22
138/25
**unlawfully [2]** 88/16
88/17
**unless [4]** 74/15 100/2
137/9 200/13
**unlike [4]** 38/19 89/25
105/5 189/20
**unlikely [1]** 193/7
**unmute [1]** 142/4
**unnecessarily [1]** 73/8
**unofficial [2]** 42/8
44/25
**unprotected [2]** 136/7
139/25
**unquestionably [1]**
146/14
**unrelated [1]** 145/10
**unrepresentative [1]**
144/12
**unrest [1]** 183/24
**unsourced [1]** 117/21
**unsupported [1]**
129/25
**until [2]** 60/17 60/20
**untruth [2]** 42/8 42/9
**unusual [4]** 89/25
90/11 105/4 182/23
**up [41]** 6/16 10/20 13/9
15/5 18/5 20/4 21/7
53/21 57/24 63/20 64/3
79/23 83/6 89/17 98/21
104/20 107/7 107/8
107/13 107/16 107/21
108/3 110/15 110/21
120/5 126/4 126/10
131/23 134/13 140/6
140/11 140/20 141/14
151/21 161/21 165/17
167/17 172/14 173/10
178/21 185/16
**upcoming [1]** 148/15
**upon [7]** 105/13 111/25
117/21 123/2 129/8
180/8 185/10
**upset [2]** 17/23 17/25
**urge [2]** 19/16 126/1
**urged [2]** 15/7 88/16
**urging [6]** 89/1 97/2
98/15 99/21 159/9
160/16
**us [12]** 54/18 61/18
95/10 109/8 123/5
141/24 157/25 167/6
171/15 171/16 202/16
202/22
**usdoj.gov [1]** 4/9
**use [18]** 11/7 12/10
44/21 54/6 66/22 76/3
87/20 101/19 123/12
123/24 127/7 132/21

138/3 140/14 150/2
182/4 182/23 183/13
**used [32]** 8/20 8/25
10/1 22/1 26/19 30/24
33/14 33/16 33/17
33/18 59/11 65/16
66/17 87/22 94/9 105/4
114/20 120/20 120/20
122/18 124/18 124/20
125/12 126/13 126/14
127/10 138/24 139/6
139/7 139/19 155/9
173/2
**uses [2]** 66/23 68/20
**using [5]** 10/18 66/21
71/13 125/5 190/21
**usually [1]** 192/11
**uttered [1]** 65/3
**uttering [2]** 42/18
176/8

**V**

**VA [2]** 3/4 3/18
**vacuum [1]** 126/11
**vagueness [2]** 45/22
73/6
**value [2]** 38/25 129/18
**variety [3]** 139/24
170/23 192/23
**various [9]** 9/8 36/16
52/5 68/20 92/16
143/10 143/21 144/1
150/16
**vast [4]** 79/2 139/24
139/24 183/8
**vastly [1]** 96/14
**vehicle [3]** 196/22
197/1 198/15
**vein [2]** 46/18 145/18
**verifiable [1]** 192/6
**version [1]** 195/20
**versus [18]** 5/5 5/7 5/8
32/17 33/1 35/8 35/17
40/5 41/5 47/12 145/20
146/9 160/25 171/24
185/14 191/14 193/4
201/23
**very [86]** 6/12 7/18
9/25 10/11 11/9 15/8
16/18 17/6 17/11 17/19
19/2 19/16 20/15 25/2
35/16 41/22 41/23 46/8
47/15 47/23 57/20 59/9
59/21 61/1 63/14 63/14
64/25 65/10 65/10
66/23 70/16 70/19
70/19 72/7 73/7 74/15
75/18 75/21 80/7 82/21
83/17 85/19 86/5 87/6
89/8 90/11 96/18 97/4
98/5 99/19 102/10
107/1 109/11 109/13
109/18 110/18 115/1
119/19 123/22 124/2
124/3 124/3 125/5
126/5 127/24 128/20
140/14 141/7 141/9
148/9 152/22 160/15

**V**

very... [14] 161/18
162/21 166/23 166/24
170/20 172/9 176/25
178/19 179/12 179/14
185/16 191/17 192/8
203/3
veto [1] 38/24
vetoing [1] 11/6
VIA [1] 1/20
viable [1] 137/16
vicary [1] 102/17
Vice [9] 29/20 60/16
60/16 77/23 78/3 78/17
78/21 79/12 144/12
viciously [1] 102/17
victim [1] 183/22
victims [2] 168/1
185/21
video [5] 60/20 66/19
66/19 102/8 125/13
view [37] 9/17 10/23
13/21 15/10 17/1 18/9
18/13 19/22 20/9 20/12
20/25 21/2 22/23 22/24
28/23 30/18 53/10
56/17 57/3 70/22 71/4
73/12 77/22 88/12
104/7 124/15 128/6
149/16 165/24 171/5
171/11 175/6 182/8
184/16 185/16 194/7
202/12
viewed [5] 36/11 41/1
138/4 138/6 191/24
viewpoint [2] 60/7
129/19
viewpoint-neutral [1]
129/19
views [1] 95/24
violate [3] 73/21
152/24 189/9
violated [6] 35/9
151/18 178/3 195/7
195/11 199/2
violates [8] 73/20
103/19 121/15 121/19
122/7 195/23 196/14
198/14
violation [20] 35/14
35/19 35/19 35/21 42/9
103/22 121/17 181/4
182/10 183/2 184/3
187/17 188/23 195/1
195/3 198/5 198/10
198/12 199/6 199/13
violations [7] 152/20
177/12 180/12 182/5
184/7 189/24 195/21
violence [33] 58/24
59/2 59/17 59/18 59/19
60/9 61/8 61/22 62/2
62/7 72/1 80/20 85/5
94/3 103/3 106/19
109/12 112/16 114/1
114/5 122/20 122/23
123/2 123/15 123/18
124/16 125/9 130/15

139/16 185/24
violent [8] 59/13 60/1
89/9 104/8 106/1
131/10 131/19 152/4
virtual [2] 5/22 66/21
virtually [1] 25/7
virtue [3] 9/8 142/14
199/6
vocabulary [1] 77/15
voice [2] 112/15 142/8
voicemail [1] 99/2
voices [4] 8/2 63/13
64/13 64/14
voicing [1] 144/9
volume [1] 33/9
vote [30] 29/8 58/8
58/9 98/17 107/11
143/8 143/16 143/25
144/8 144/12 147/12
148/25 149/1 149/8
152/6 157/23 158/1
158/2 158/5 158/16
158/21 159/9 159/15
160/5 160/14 162/10
170/12 172/19 176/24
176/25
voted [3] 16/20 152/10
170/10
voter [4] 94/8 144/16
144/16 158/1
votes [19] 19/24 28/20
38/25 144/4 144/10
144/11 144/13 144/14
144/14 145/1 145/2
145/3 150/18 157/14
157/16 158/22 160/17
162/10 177/21
vs [3] 1/5 1/10 1/16

**W**

wait [4] 38/11 61/9
86/2 120/4
waited [1] 167/14
waiting [2] 108/10
120/2
walk [8] 53/14 57/25
58/1 58/5 94/22 105/7
119/19 167/9
walked [1] 160/7
Walorski [1] 152/8
want [83] 5/25 6/4 8/5
27/11 37/9 37/10 37/13
37/15 37/17 38/6 38/11
41/8 41/11 41/21 41/23
42/14 42/15 49/2 49/6
49/8 51/2 62/10 63/6
74/23 80/1 80/3 86/1
86/1 86/7 87/24 88/4
92/13 94/7 98/21 99/13
100/7 100/23 101/8
106/25 109/7 118/2
120/25 123/19 123/19
124/13 124/14 124/21
125/22 125/24 126/2
127/21 136/19 140/23
142/20 144/24 146/20
149/15 153/1 153/5

167/2 167/15 172/7
173/15 176/19 177/9
178/12 178/19 178/20
179/14 179/15 179/16
179/17 180/5 189/14
192/9 192/9 194/18
195/1 198/9 202/20
wanted [24] 6/8 39/22
39/23 42/2 60/24 77/16
96/12 109/10 109/15
109/19 109/24 112/4
112/5 113/23 123/21
131/1 142/20 166/7
176/15 176/17 176/18
176/20 184/15 200/5
wants [7] 27/8 27/8
37/3 62/20 95/21 100/3
130/5
war [1] 146/14
warned [1] 140/11
warrant [1] 142/7
was [343]
Washington [12] 1/5
2/5 2/10 2/14 2/20 3/13
4/4 4/7 4/13 16/13 82/2
92/15
wasn't [10] 46/9 73/9
79/12 90/6 96/22
112/21 116/13 119/19
163/17 170/7
watching [2] 59/5
203/1
water [1] 88/10
Waters [5] 23/9 23/12
24/2 66/23 144/7
way [62] 12/18 13/6
14/6 15/8 16/5 16/13
26/8 29/10 29/11 33/17
34/5 35/3 36/8 41/16
51/19 54/2 56/3 58/16
66/2 66/3 68/13 70/20
71/12 72/21 74/10
76/11 86/14 87/16 90/4
92/9 94/4 95/8 112/6
112/15 118/23 127/10
128/5 138/24 140/8
140/11 144/2 144/5
145/19 151/1 152/22
154/18 158/17 158/18
158/19 160/14 163/6
168/15 176/24 181/2
187/6 188/24 189/6
189/10 190/2 191/24
194/7 194/7
ways [2] 44/22 52/14
we [214]
we believe [7] 57/8
138/19 155/2 159/1
159/22 181/7 191/20
we can [1] 99/11
We do [1] 155/16
we will [3] 202/18
202/19 203/3
we would [1] 36/21
we'd [1] 76/15
we'll [21] 6/13 6/16
6/21 48/13 59/8 82/11

120/4 142/1 154/5
154/9 178/20 179/6
179/8 179/17 180/15
180/25 203/4
we're [61] 7/13 12/21
13/11 14/18 19/7 27/11
32/8 40/12 40/19 43/4
43/21 43/22 44/1 46/2
47/6 49/22 51/10 54/17
56/8 56/9 57/25 58/1
58/5 58/6 58/7 58/9
58/11 63/19 65/22
65/23 65/25 66/5 83/18
92/17 93/2 105/20
105/20 109/7 113/16
115/4 120/18 122/6
124/5 124/6 124/7
137/12 137/21 140/12
141/14 154/14 155/17
165/17 182/18 182/19
188/4 189/22 194/19
198/17 199/15 200/6
201/6
we've [30] 5/24 50/5
61/22 80/7 83/16 83/21
85/11 94/10 100/9
100/17 104/12 106/10
107/1 109/23 113/15
117/10 120/6 125/14
132/1 140/3 140/4
141/13 157/5 160/19
178/18 181/7 188/24
189/16 193/19 200/13
weak [2] 58/10 190/22
weak-kneed [1] 190/22
weakness [1] 30/7
weapons [2] 185/7
186/18
week [1] 6/15
weeks [3] 119/12
122/23 174/3
weigh [1] 129/4
weight [5] 106/16
156/12 166/1 166/3
169/12
welcome [3] 5/21 84/3
179/10
welfare [2] 183/3
183/18
well [107] 5/23 11/25
13/14 16/6 17/6 17/11
18/24 22/23 23/23 24/6
29/12 29/14 30/16
32/20 34/20 36/3 37/5
37/10 38/16 40/1 40/19
45/18 45/19 46/18
47/17 47/17 50/15 56/8
57/12 59/11 59/23 61/5
61/16 64/7 65/12 72/16
72/16 81/12 82/8 83/18
84/8 88/12 88/22 89/21
91/16 97/12 97/25
101/17 106/23 107/18
107/18 109/22 110/2
110/15 111/13 117/13
118/18 118/22 120/3
121/9 123/13 123/20

130/15 135/17 136/3
138/8 147/11 147/14
147/17 155/11 155/22
156/5 163/12 168/7
168/12 171/5 172/10
172/16 173/19 174/2
175/13 180/22 181/2
181/18 183/11 184/13
184/21 186/7 188/2
188/19 191/12 192/15
193/18 193/18 194/20
196/4 197/2 197/5
197/9 198/1 198/25
200/13 200/13 202/13
well-established [2]
155/11 155/22
well-pleaded [1] 34/20
went [1] 51/15
were [145] 11/15 18/8
18/8 20/2 23/10 26/5
28/11 30/8 31/8 32/4
36/20 39/4 39/4 39/6
43/7 46/4 46/11 46/21
49/13 49/18 54/3 54/7
54/7 54/17 57/20 57/21
58/3 58/5 58/20 59/10
59/12 61/7 61/9 63/15
63/16 67/8 70/2 70/18
71/22 73/13 74/1 74/2
75/12 76/3 76/4 76/5
76/7 77/17 78/5 78/6
79/9 79/10 79/10 79/14
85/3 86/16 87/8 89/1
92/3 92/10 92/18 93/14
93/24 94/6 94/20 95/1
95/13 95/13 97/15 98/7
104/16 105/16 105/23
109/4 109/19 109/22
111/8 112/17 112/20
112/22 113/18 116/11
118/24 119/12 119/18
122/8 122/9 124/24
128/15 129/11 129/13
132/11 132/21 134/7
134/12 136/1 136/5
139/2 139/5 143/18
145/2 145/3 145/22
146/11 146/25 147/1
147/22 147/25 149/3
149/9 150/13 150/19
150/21 150/24 152/19
157/3 160/16 161/5
161/10 161/14 162/20
163/4 163/18 166/9
176/23 178/3 178/8
180/16 184/11 186/15
186/18 186/18 186/19
186/20 186/20 188/9
189/1 189/17 190/18
190/20 191/1 191/21
191/22 191/22 191/23
weren't [3] 119/3
119/17 119/17
West [1] 2/13
Westfall [12] 108/14
108/21 120/2 141/19
143/5 146/11 153/11

**W**

**Westfall... [5]** 154/10
159/12 159/13 164/8
177/10
**what [242]**
**what's [12]** 9/4 34/20
68/8 80/24 120/19
125/20 137/3 142/16
173/4 181/1 190/15
192/4
**whataboutism [3]** 67/5
72/9 72/10
**whatever [8]** 27/8 27/8
40/10 62/10 99/17
132/18 181/22 191/21
**whatsoever [2]** 52/17
141/4
**when [57]** 12/1 12/21
16/1 19/6 20/15 20/19
21/20 23/10 31/20 42/5
42/5 42/19 43/16 49/8
50/15 50/22 53/25 72/4
76/21 76/22 79/6 89/17
92/23 93/12 93/24 94/4
95/5 101/24 102/16
103/2 103/18 109/12
111/8 114/16 118/1
126/20 129/6 130/8
135/12 136/10 140/4
141/4 141/9 155/5
157/8 160/2 160/20
161/18 162/1 162/5
162/18 169/7 169/8
171/24 175/25 182/18
187/7
**where [55]** 10/5 12/2
16/4 17/16 21/1 34/15
34/15 35/5 35/7 38/23
41/9 41/17 44/12 49/3
49/16 52/5 53/17 53/20
54/1 59/19 59/20 70/7
70/12 70/13 75/18
92/14 102/4 118/14
119/2 119/5 120/23
123/18 124/15 126/22
140/11 149/22 161/1
162/22 163/5 164/22
173/11 174/11 176/1
176/2 176/4 176/7
176/15 182/24 187/9
189/25 190/20 192/23
194/5 198/6 198/22
**whereas [1]** 161/15
**whereby [1]** 86/9
**wherever [1]** 37/4
**whether [89]** 10/6
10/11 14/14 19/10 20/1
26/6 26/8 26/23 29/7
31/18 35/12 37/8 37/25
38/13 38/14 43/8 43/9
43/13 43/21 46/25 49/8
49/19 56/23 59/16 61/3
62/5 62/20 62/25 65/20
74/17 80/8 81/1 81/20
82/6 82/19 82/24 85/21
87/15 92/4 100/18
100/25 109/9 112/20
121/18 122/21 123/3

129/16 129/17 129/17
129/23 130/9 130/10
130/11 131/4 131/17
132/17 132/17 132/18
132/23 133/14 133/23
135/2 138/5 147/4
150/19 150/20 151/6
155/14 155/14 155/18
163/2 164/14 169/9
169/25 170/1 170/1
170/3 171/15 171/17
174/14 184/17 186/15
190/5 192/20 196/15
202/2
**which [100]** 6/16 12/21
14/13 22/15 23/4 25/18
25/22 28/7 28/17 31/7
31/7 31/24 32/16 32/17
32/17 32/21 33/5 33/6
33/7 34/4 34/12 35/25
38/7 39/1 39/3 39/6
43/10 46/5 50/4 52/3
52/15 56/12 60/21
61/9 65/1 65/2 65/4
67/1 67/10 78/19 79/3
85/1 85/1 87/19 87/25
88/9 89/8 91/20 92/24
95/4 96/21 105/17
109/22 115/4 119/6
121/3 121/21 125/8
126/2 129/2 130/3
130/4 133/25 134/19
136/2 136/4 136/16
136/20 137/15 140/5
140/7 140/7 146/24
147/21 150/8 151/6
151/24 153/12 153/13
157/14 157/16 158/12
164/14 165/10 166/19
171/21 174/10 174/21
177/1 181/25 182/1
182/18 184/7 184/17
189/19 192/11 196/10
198/9 200/17 202/1
**while [19]** 20/25 21/2
32/12 36/1 39/11 42/2
42/11 51/18 75/20 86/2
97/1 97/15 98/11
110/23 112/17 112/21
154/14 185/22 192/9
**White [3]** 33/3 90/23
150/24
**White House [3]** 33/3
90/23 150/24
**who [52]** 6/23 41/9
41/16 43/9 51/14 51/25
58/8 67/2 69/21 70/2
72/5 75/3 75/6 75/25
76/5 76/7 76/8 76/9
76/20 77/12 78/21 83/9
83/12 83/17 86/19 89/1
89/15 90/8 92/3 92/8
92/19 104/24 110/1
110/7 110/25 112/9
113/22 114/16 116/10
117/18 150/23 154/20
163/18 163/19 172/9

191/22 191/22 191/23
202/21
**who's [8]** 72/20 75/2
87/4 112/11 131/11
164/23 187/9 187/19
**whoever [1]** 120/12
**whole [9]** 28/17 32/22
34/2 90/23 100/9 129/7
150/21 170/8 183/21
**wholeheartedly [1]**
127/1
**wholly [2]** 99/17
145/10
**whom [2]** 93/25 105/25
**whose [2]** 61/9 176/23
**why [63]** 6/20 6/22 7/4
11/4 11/18 28/6 29/10
35/20 37/16 38/8 43/2
44/15 44/23 48/7 52/4
54/5 54/5 54/19 55/9
57/12 57/23 60/5 61/5
62/24 69/7 72/16 75/23
76/10 77/3 79/22 88/12
88/13 97/3 103/1
106/14 123/5 126/6
126/10 126/19 128/9
129/4 129/10 130/19
131/11 133/8 139/21
148/3 154/1 154/8
156/5 158/10 158/17
158/18 168/5 168/6
168/24 171/23 171/25
174/5 181/12 188/3
188/5 198/21
**wide [1]** 170/23
**widely [1]** 136/10
**widen [1]** 183/15
**widespread [1]** 183/25
**wild [2]** 92/15 112/11
**will [30]** 6/23 8/10
24/24 39/9 48/14 83/5
97/25 105/7 108/20
120/12 138/2 142/8
144/15 145/12 152/16
157/13 157/14 157/16
157/23 157/25 157/25
158/5 167/20 178/2
178/6 191/13 199/10
202/18 202/19 203/3
**William [5]** 2/12 4/10
5/10 204/2 204/11
**Williams [2]** 160/25
161/2
**Williams's [1]** 161/2
**willing [1]** 104/25
163/8
**win [1]** 28/14
**wind [1]** 167/17
**wind-up [1]** 167/17
**windows [1]** 82/4
**winner [3]** 107/24
158/23 160/18
**Wisconsin [5]** 18/2
26/16 26/17 136/20
137/17
**wish [2]** 130/20 153/24
**within [53]** 8/20 9/4 9/6

13/21 21/11 26/2 26/9
26/10 26/23 27/23 28/4
29/6 29/12 29/12 32/17
36/3 36/11 40/5 40/19
42/24 82/25 101/5
143/4 143/17 145/16
145/22 145/24 146/2
147/6 150/5 151/10
151/13 151/14 153/15
156/2 158/18 159/2
160/3 161/25 164/19
164/20 166/10 169/10
170/21 171/17 174/22
175/9 175/24 187/23
**without [11]** 28/12
31/13 72/22 80/2 118/2
141/2 141/4 147/7
174/24 190/21 198/14
**withstand [1]** 24/4
**women [1]** 156/7
**won [1]** 144/16
**wonder [1]** 134/9
**wondering [1]** 105/12
**word [4]** 31/7 77/4
105/4 139/7
**words [85]** 10/5 11/14
30/24 31/9 42/4 42/17
42/19 43/6 43/11 43/13
54/6 57/1 57/20 57/21
57/25 58/5 58/19 59/10
60/8 61/6 61/7 61/9
63/16 64/10 65/3 65/4
65/20 66/9 66/10 66/16
66/21 66/22 67/8 68/3
68/20 76/3 86/22
100/16 102/18 104/16
106/8 106/14 107/5
114/20 119/18 123/9
123/12 123/24 124/18
124/18 124/19 125/5
125/8 125/12 126/13
127/7 128/18 128/21
129/6 129/8 129/9
129/12 139/2 139/5
139/14 139/14 139/19
139/23 140/2 141/3
147/17 147/18 149/16
160/6 161/14 176/8
181/14 182/11 185/18
187/15 188/9 188/14
189/5 191/21 192/6
**work [3]** 79/8 118/23
202/19
**workable [1]** 45/23
**worked [1]** 168/20
175/10
**workplace [2]** 194/4
194/5
**works [4]** 83/17 126/20
154/19 165/22
**worried [1]** 80/20
**worrying [1]** 193/12
**worse [1]** 198/21
**would [224]**
**wouldn't [4]** 61/8
73/11 113/25 122/8
**wpittard [1]** 2/15

**wrap [2]** 117/23 165/17
**wrapping [2]** 135/11
138/3
**writ [1]** 190/13
**write [1]** 148/20
**writing [2]** 170/3 170/7
**written [4]** 73/12
118/18 170/2 202/10
**wrong [8]** 11/18 62/9
72/13 81/24 97/23 98/3
101/21 170/6
**wrongful [3]** 196/17
197/2 197/6
**wrote [1]** 174/18
**Wuterich [1]** 146/9

**Y**

**yardstick [1]** 136/10
**yeah [27]** 31/3 68/18
73/23 85/13 91/3 91/16
91/16 95/7 99/5 101/11
101/15 103/10 108/8
119/5 119/17 121/25
128/13 137/4 138/13
139/8 139/20 154/1
180/2 188/2 201/16
201/20 202/9
**year [3]** 5/23 36/14
143/24
**years [4]** 33/25 79/19
168/20 202/7
**yell [1]** 59/4
**yelling [2]** 110/25
111/6
**Yep [2]** 134/4 197/16
**yes [55]** 9/15 9/18
10/13 14/1 15/12 18/17
19/25 20/14 23/2 24/19
25/12 28/25 32/10
41/22 47/8 47/21 50/8
63/1 63/7 63/8 64/8
65/24 67/21 68/6 74/22
77/25 80/2 81/14 81/18
81/18 82/16 84/18
84/18 86/23 88/8 98/7
100/14 104/9 107/18
107/18 114/13 117/12
131/25 134/8 140/24
141/17 145/7 165/7
167/5 171/10 179/4
183/13 198/19 200/9
200/16
**yet [1]** 144/15
**York [1]** 2/4
**you [536]**
**You have [1]** 139/12
**you know [6]** 21/10
64/8 79/14 82/2 92/16
187/7
**You need [1]** 139/10
**you'd [7]** 81/16 103/20
110/18 114/9 128/20
132/16 153/4
**you'll [5]** 7/17 59/7
142/3 142/5 172/5
**you're [40]** 6/5 6/9 16/5
30/21 30/23 32/5 58/15
60/24 64/8 65/1 73/1

**Y**

**you're... [29]**  74/25
75/4 79/25 83/1 91/4
92/23 95/10 102/10
105/19 118/17 119/10
121/21 139/10 139/11
141/9 141/21 142/3
151/20 180/11 182/22
182/25 184/4 191/5
195/8 196/10 196/18
198/7 198/14 202/24
**you've [40]**  6/2 24/25
35/14 44/20 52/23
59/22 73/12 73/13
73/25 88/6 90/15 92/13
103/23 105/1 140/4
147/21 148/14 149/23
154/4 159/10 167/7
167/14 180/7 180/17
180/24 182/15 184/22
187/9 187/21 189/6
192/3 195/4 196/15
198/8 199/2 199/3
199/19 199/24 200/3
200/18
**your [246]**
**Your Honor [129]**  5/2
6/11 7/10 7/18 7/19
9/13 9/19 11/4 11/22
12/9 14/1 14/17 15/19
16/6 17/3 18/17 18/21
21/6 22/10 24/19 28/8
29/15 39/18 40/2 41/23
44/3 44/8 44/11 45/3
45/25 46/18 46/23 48/1
48/15 48/19 48/24
49/22 50/10 50/17
51/11 52/12 53/18
58/17 61/2 61/17 62/19
63/3 63/5 65/7 65/24
66/14 69/6 72/4 72/8
72/25 73/16 74/7 76/12
78/5 84/9 96/9 97/21
98/7 99/6 100/6 100/21
104/9 105/15 106/23
108/19 109/3 110/20
111/12 113/6 113/19
114/3 114/11 116/17
117/11 120/14 121/6
123/8 124/22 125/22
126/9 126/19 127/21
128/8 129/15 130/22
130/25 131/12 132/1
151/16 153/5 154/11
154/24 155/13 159/21
160/12 166/4 166/17
166/25 167/5 168/12
169/6 169/19 170/11
171/10 172/16 173/15
174/6 175/20 176/8
177/14 178/15 179/21
181/2 182/24 183/11
188/3 191/13 193/18
198/23 200/7 200/11
200/16 201/4 201/11

**Z**

**Zaremba [3]**  4/10

**zero [2]**  105/19 105/20
**ZOOM [5]**  1/20 141/22
144/6 150/24 151/22