```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA


BARBARA J. LEE, ET AL.,            )
                                   )
          Plaintiffs,              )
                                   )     CV No. 21-400
       vs.                         )     Washington, D.C.
                                   )     February 23, 2024
DONALD J. TRUMP, ET AL.,           )     1:30 p.m.
                                   )
          Defendants.              )
_____)



      TRANSCRIPT OF JOINT STATUS CONFERENCE PROCEEDINGS
          BEFORE THE HONORABLE AMIT P. MEHTA
               UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Lee Plaintiffs:           Joseph M. Sellers
                              COHEN MILSTEIN
                              SELLERS & TOLL PLLC
                              1100 New York Avenue, NW
                              Suite 500 East Tower
                              Washington, D.C. 20005
                              (202) 408-4604
                              Email:
                              jsellers@cohenmilstein.com
```

APPEARANCES CONTINUED:

For Smith Plaintiffs:              Edward G. Caspar
                                   LAWYERS' COMMITTEE FOR
                                   CIVIL RIGHTS UNDER LAW
                                   1500 K Street NW
                                   Suite 900
                                   Washington, D.C. 20005
                                   (202) 662-8318
                                   Email:
                                   ecaspar@lawyerscommittee.org


For Plaintiff
James Blassingame:                 Kristy Parker
                                   PROTECT DEMOCRACY
                                   2020 Pennsylvania Avenue NW
                                   Suite 163
                                   Washington, D.C. 20006
                                   (202) 579-4582
                                   Email:
                                   kristy.parker
                                   @protectdemocracy.org


For Plaintiff
Eric Swalwell:                     Philip C. Andonian
                                   CALEB ANDONIAN PLLC
                                   1100 H Street, N.W.
                                   Suite 315
                                   Washington, D.C. 20005
                                   (202) 953-9850
                                   Email: phil@calebandonian.com

APPEARANCES CONTINUED:

For Plaintiffs
Blassingame and Hemby:          Patrick A. Malone
                                PATRICK MALONE
                                & ASSOCIATES, P.C.
                                1310 L Street, NW
                                Suite 800
                                Washington, D.C. 20005
                                (202) 742-1500
                                Email:
                                pmalone@patrickmalonelaw.com


For Defendant
Donald J. Trump:                David Alan Warrington
                                Jonathan Mark Shaw
                                DHILLON LAW GROUP, INC.
                                2121 Eisenhower Avenue
                                Suite 608
                                Alexandria, VA 22314
                                (703) 574-1206
                                Email:
                                DWarrington@dhillonlaw.com

                                Jesse R. Binnall
                                BINNALL LAW GROUP
                                717 King Street
                                Suite 200
                                Alexandria, VA 22314
                                (703) 888-1943
                                Email: jesse@binnall.com

Court Reporter:                 William P. Zaremba
                                Registered Merit Reporter
                                Certified Realtime Reporter
                                Official Court Reporter
                                E. Barrett Prettyman CH
                                333 Constitution Avenue, NW
                                Washington, D.C. 20001
                                (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S
 2              COURTROOM DEPUTY:  All rise.  This Honorable Court
 3    is now in session; the Honorable Judge Amit P. Mehta now
 4    presiding.
 5              THE COURT:  Good afternoon.  Please be seated,
 6    everyone.
 7              COURTROOM DEPUTY:  Your Honor, we're in Civil
 8    Action 21-400, 21-586, 21-858, and 21-2265, Bennie Thompson
 9    versus Donald Trump, et al., Eric Swalwell versus
10    Donald Trump, et al., James Blassingame, et al., versus
11    Donald Trump, and Conrad Smith, et al., versus Donald Trump,
12    et al.
13              If I can have counsel from petitioners -- actually
14    if you can approach the podium and counsel from petitioners
15    please identify yourselves for the record.
16              MR. SELLERS:  Good afternoon, Your Honor.
17    I'm Joseph Sellers, one of the lawyers for the plaintiffs.
18    I believe the Court granted our motion to rename the caption
19    for the Thompson case is now Lee versus Trump so we'll refer
20    to it that way --
21              THE COURT:  Right.  All right.  Thank you,
22    Mr. Sellers.
23              MR. SELLERS:  -- going forward.
24              THE COURT:  And I only need counsel who may be
25    speaking on behalf of plaintiffs to identify themselves for
```

1    the record.

2              MR. CASPAR:  Good afternoon, Your Honor.

3    Edward Caspar for the plaintiffs in Smith versus Trump.

4              THE COURT:  Mr. Caspar, good afternoon.

5              MS. PARKER:  Good afternoon, Your Honor.

6    Kristy Parker for the plaintiffs in Blassingame versus

7    Trump.

8              THE COURT:  Ms. Parker, good afternoon.

9              MR. ANDONIAN:  Good afternoon, Your Honor.

10   Phil Andonian and Matthew Kaiser on behalf of Congressman

11   Swalwell.

12             THE COURT:  Mr. Andonian, good afternoon.

13             All right.  So then who do we have on behalf of

14   the defendant?

15             MR. WARRINGTON:  Your Honor, David Warrington on

16   behalf of President Trump.

17             We entered our appearance yesterday in the -- what

18   is now the Lee versus Trump matter.  We haven't entered

19   appearances in the other three assuming -- asking the Court

20   if you want us to do that or if it's going to be fine to

21   just having the appearance in matter No. 400.

22             THE COURT:  Just make sure we sort of do it right.

23   And if you would just notice your appearance in each of the

24   cases, that would be helpful.

25             Just so -- the part of it is, unless you do so,

```
1    when we start having separate filings, you won't get noticed

2    for those filings so best to go ahead and enter your

3    experience in those cases.

4              MR. WARRINGTON:  We will do that.

5              And with me at counsel table is Counsel Jesse

6    Binnall and Mr. Jonathan -- Counsel Jonathan Shaw is with my

7    firm.

8              THE COURT:  Okay.  Welcome, all.

9              All right.  Anybody on Zoom need to -- wish to

10   introduce yourselves for the record?

11             MR. MALONE:  Your Honor, my name is Patrick

12   Malone.  I represent Officers Blassingame and Hemby.

13             THE COURT:  All right, Mr. Malone, good afternoon.

14             Okay.  Thank you, all, for being here this

15   afternoon.  I think with many of you, I think it's the first

16   time we've been in actual in-person together, despite many

17   Zoom calls across various cases.

18             So the purpose for today's hearing was to try and

19   figure out a way forward consistent with the Circuit's

20   remand instructions.  I'd asked the parties to address a

21   number of questions, and you've done that and I appreciate

22   it.  I had an opportunity to review the submission.

23             So I think what I'd like to proceed is as follows:

24             The main theme that I'm hearing from the

25   plaintiffs is that you all would like the former President
```

1     to, in some way, articulate -- and I don't mean to jump over

2     the stay issue, I know it's out there -- to articulate in

3     writing, whether by interrogatory or some other means, a

4     general theory of how immunity would apply; and then once

5     that -- you have that, we can all then perhaps figure out

6     how long discovery will take, because it will tell us

7     exactly what types of discovery will be needed and how easy

8     or hard it may be to achieve that.

9            Is that a fair summation, Mr. Sellers?

10           MR. SELLERS:  Yeah.

11           Your Honor, it's a fair summary other than,

12    I think we are hoping for something more than a summary of

13    his overall approach, because if we're going to design our

14    discovery, at least in part, to respond to what

15    President Trump has said he's going to rely on, we need to

16    know what kind of evidence he's going to rely on, what kind

17    of facts he's going to assert.  And so the more granular

18    that can be, the more I think it will permit us to focus the

19    discovery.

20           And we may have other discovery beyond that that

21    we want to pursue, but it will be a good starting point.

22           THE COURT:  Okay.

23           And what do you propose the way to do that is if

24    that's how we proceed?

25           I mean, would you issue a series of

1  interrogatories that --

2          MR. SELLERS:  Yeah.

3          I think, ideally, we would have two or three, we

4  don't need a dozen, just to make the general inquiry of the

5  sort I've just described.  We may frame it a little

6  differently.

7          But the goal would be to ask within an appropriate

8  time to make those representations in a matter that's

9  recognized by the Rules of Civil Procedure, and that would

10  permit us to have the confidence that we could then use that

11  as a basis to get a better understanding of the grounds of

12  which former President Trump would be relying.

13          THE COURT:  And just how long do you envision that

14  initial presentation of interrogatories and response?

15          MR. SELLERS:  Well, we propose in our submissions

16  about 30 days.

17          THE COURT:  Right.

18          MR. SELLERS:  As a point from which former

19  President Trump would make those -- well, we can propound

20  the interrogatories in a week to ten days and ask former

21  President Trump to then respond within 30 days as the rules

22  contemplate, or if the Court orders otherwise, we'll be

23  bound by that.  But that, I hope, would then help us to

24  understand better what grounds former President Trump is

25  going to rely on.

1          THE COURT:  And this is a small matter but may

2     have greater significance in the context of this request for

3     a stay:  Would you be prepared to accept interrogatory

4     responses that aren't sworn?

5          MR. SELLERS:  Well, we'd prefer to have them

6     sworn, but if it implicates the stay that you're being

7     presented with, we would certainly consider it.

8          The goal here is to have something that binds

9     former President Trump so we don't later find that that was

10    representations by counsel, and that's not really what was

11    intended by former President Trump.

12         THE COURT:  Okay.

13         All right.  Then, I mean, you are in a position

14    today to sort of peer over the horizon then and give me a

15    sense of what you contemplate discovery will look like, or

16    do you think that's premature until you get something in

17    writing?

18         MR. SELLERS:  Yeah, it's a little premature.

19         We've certainly started to think about how to do

20    that.

21         Our goal ultimately is to proceed as quickly as we

22    can.  We.

23         Regard this as an intermediate step in a process,

24    and whether it leads to another review by the

25    Court of Appeals or some other way in which this Court acts,

 1    we don't -- first, you can't predict.  But the case has been

 2    pending for three years, and so we'd like to -- I know that

 3    counsel indicated -- President Trump's counsel indicated

 4    about nine months of discovery.  We would certainly hope

 5    that the discovery could be completed more quickly than

 6    that.

 7              We proposed, however, because it's a little

 8    uncertain how long it would be until we see what's being

 9    represented to us and we can come back within ten days or so

10    and propose a schedule.

11              As you probably saw, we also think these cases

12    might benefit from some regular scheduled status

13    conferences, whether we end up needing them or not, just to

14    avoid a pileup of various issues that may come up.

15              THE COURT:  Okay.

16              All right.  Anything else you'd like to add,

17    Mr. Sellers?

18              MR. SELLERS:  Not at the moment.

19              THE COURT:  All right.

20              Any other counsel?

21              MR. SELLERS:  I guess just -- I just would say,

22    I think you saw, we believe if the Court is going to

23    seriously entertain a stay request at this juncture, we

24    think it should be made by motion practice.

25              Mr. Caspar is here today if you want to hear in

1   more detail about that; but I think it's -- if that's going

2   to really be a significant issue, I think we really ought to

3   inform the Court with some briefing.

4        THE COURT:  So the short answer is that's not

5   something I'm prepared to address today.  I mean, it's a

6   significant enough issue that if there is a request for a

7   stay of the proceedings in their entirety, I'm going to sort

8   of do that by motion and opposition, et cetera.

9        MR. SELLERS:  Good.  Okay.

10       THE COURT:  You know, look, I'm sensitive to the

11  parallel criminal calendars that are out there.  And if, as

12  part of this discovery, you know, the plaintiffs are

13  contemplating a deposition of the defendant, then that is

14  obviously something I need to think about as well.

15       MR. SELLERS:  Right.  We recognize that may be a

16  different issue.

17       THE COURT:  Right.  Okay.

18       MR. SELLERS:  Thank you.

19       THE COURT:  All right.  Thank you, Mr. Sellers.

20       Anyone else on behalf of plaintiffs' counsel?

21       MR. CASPAR:  Your Honor, Ed Caspar for the

22  plaintiffs in Smith versus Trump.

23       I would just add, Your Honor, that the plaintiffs'

24  counsels are coordinating very closely on this.

25       You know, we prepared to address your questions

1    from the order last week.  And with a little bit less time

2    on the stay issue.  But we anticipate continuing to

3    coordinate so we can make this as efficient as possible and

4    move things along very quickly.

5                    THE COURT:  Okay.  Thank you.

6                    All right.  Anyone else?

7                    Okay.  Thank you.

8                    All right.  Mr. Warrington.

9                    Warrington, correct?  Make sure I have that right.

10                   MR. WARRINGTON:  Yes, Your Honor.

11                   THE COURT:  Thank you.

12                   MR. WARRINGTON:  What Mr. Sellers proposes would

13   be eminently reasonable, except for the fact that we have

14   these parallel criminal proceedings going on, and I think

15   that's what forecloses even the request that they have for

16   some sort of layout of what the contours of an immunity

17   defense would look like from President Trump himself.

18                   However, I don't think they need that.  I think

19   the *Blassingame* opinion lays out the contours of what would

20   constitute the immunity defense, and I think that's enough

21   of a roadmap to give both sides an idea of what would be

22   sufficient or insufficient or counter to an immunity defense

23   being raised.  So I don't think they need that specifically

24   from President Trump.

25                   And that also goes to the issue of whether there's

1    document discovery to come from President Trump.  As I think

2    everybody understands, that many of the issues or documents,

3    we'll just go with documents first, the documents are not in

4    the possession of President Trump at this time, they're

5    likely in the possession of other government agencies,

6    they're likely in the possession at the National Archives.

7    That's one of the reasons why, when the Court asked us how

8    long we thought it would take to get this stuff done, we

9    don't control those entities.

10                  THE COURT:  Sure.

11                  MR. WARRINGTON:  And with regard to former and

12   current government employees, with the current government

13   employees who we may want to seek testimony from, we may

14   have to go through the whole *Touhy* process; former

15   employees, there may be executive privilege issues, there

16   may be ongoing criminal issues with those potential

17   witnesses or information from them.

18                  So there are a number of different issues that

19   arise.  That's why we suggested nine months.  We would --

20   hopefully, it wouldn't take that long, but we could

21   certainly foresee it taking even longer with all the complex

22   issues that are attendant to this matter.

23                  THE COURT:  Okay.

24                  Let me share with you my thoughts, and this is for

25   both sides, and get your reaction to this.

1          Based upon the framework that the Circuit has put

2    forward, it's an objective framework, the Court has,

3    I think, said I cannot look into the subjective reasons for

4    the President's conduct, although it's a little ambiguous,

5    but certainly the primary consideration is an objective one.

6          As I see it, the allegations sort of break out

7    into two time periods and then sort of across three types of

8    conduct.

9          The first, in terms of time period, we're talking

10   about prior to December 19th, and then after 19th, and the

11   19th, of course, is the day that the President sent out the

12   tweet about the January 6th rally.

13         We then have what I consider sort of three

14   baskets, and maybe it's really only two, of conduct that are

15   at issue.

16         The first is tweets and other communications.

17   There are allegations about what the President tweeted, when

18   he tweeted it, what he tweeted; and then there are

19   allegations about what he communicated to state actors, for

20   example, and then arguably there are allegations about what

21   agents did on his behalf.  That's one.

22         Two then is the January 6th rally.

23         And then three is any post-rally conduct, either

24   action or inaction.  I've ruled in part on the inaction part

25   to the extent it may support a claim, but there were, for

1    example, tweets after the rally was concluded.

2              Viewing it in that way, it's not clear to me how

3    much discovery we really need.

4              And the reason I say that is this:  What the

5    Circuit seems to have said is, because what's primary

6    consideration is objective, I would think most of this is

7    largely undisputed.

8              So, for example, let's just start with the rally.

9    It's not clear to me there's any real dispute about who

10   funded the rally, who sponsored the rally.  I mean, those

11   are, I think, objective facts that are probably largely

12   undisputed.

13             And in terms of the tweets and communications, a

14   lot of that would have to, I think, do with the content of

15   the tweets themselves and context in which they arose.  So

16   it's not clear to me how much discovery we need around that

17   conduct.

18             So given those observations, I wonder sort of two

19   things:

20             One is whether much of this can't be reached by

21   stipulation, because it seems to me -- and, again, I'm not

22   privy to what you all are thinking, much of it ought not to

23   be in actual dispute and you may not need to go to the

24   archives, for example, to substantiate a particular fact.

25   I don't know.

1          And, second, to the extent there are disputes or

2    you wish to supplement whatever you can stipulate to, that

3    would hopefully be a relatively more limited universe of

4    material.

5          So give me your thoughts and reaction to those

6    observations.

7          MR. WARRINGTON:  I would think there are certain

8    facts that the parties could stipulate to.  So with regard

9    to that, I think -- but I think those stipulated facts may

10   not be the determinative facts in the analysis that's set

11   forth in *Blassingame*.  And I'll just give one example.

12         The *Blassingame* opinion talks about the

13   President's actions, the President's involvement, and what

14   type of nature and character that was.  It doesn't --

15   I think -- so we would certainly place less emphasis on what

16   somebody else was doing or what somebody else did, but what

17   the President himself did.

18         And some of that, I think, is -- are objective

19   facts, not what was in his mind, what he was thinking, but

20   who in the White House was working on this, how his

21   participation was funded, those sort of things that are

22   actually laid out in *Blassingame*, because the focus is on

23   the President's involvement, the President's activity.

24         THE COURT:  Right.

25         MR. WARRINGTON:  And those things would be the

 1    nature and character of things where we would seek discovery

 2    on.

 3              THE COURT:  So help me out here just -- let's take

 4    a tweet, let's take the December 19th tweet.  What discovery

 5    do you think you will need, for example, as to that tweet?

 6              I mean, you've got your client, and presumably,

 7    you know, you've already got a head start in that sense; but

 8    what else would you think you need in terms of actual

 9    discovery around that tweet, for example?

10              MR. WARRINGTON:  On something like that,

11    Your Honor, as I sit here today without waiving any sort of

12    later defense or argument, I can't think of anything.

13              So I think a public statement, a tweet like, let's

14    say the President's speech itself on January 6th, I don't

15    think there's any dispute as to the contents of that speech.

16              THE COURT:  Right.

17              MR. WARRINGTON:  And those are the types of things

18    I think we could stipulate to fairly easily.

19              THE COURT:  And if that's the case, I mean, you

20    know, I haven't put -- sort of tried to create

21    proportionality on this, but some substantial portion of the

22    allegations are just that:  Tweets.  Or communications to

23    state actors.  You know, maybe there's some potential

24    dispute about communications to state actors; I don't know

25    whether you take that position or not.

1      But if, for example, you would agree, and I don't

2  know whether you will or not, that all of the tweets that

3  are alleged prior to January 6th were done in an unofficial

4  capacity, that would certainly move the ball along the road

5  quite far to getting to where we need to go, which is

6  presumably a motion for summary judgment on this issue.

7      MR. WARRINGTON:  Well, here's the wrinkle in that

8  is the criminal case.

9      One, we don't speak for President Trump in the

10  criminal matters, we don't represent him.  But certainly we

11  have to consult with them before we take a position.  We're

12  not going to take inconsistent positions in this matter that

13  may harm the criminal matter.  That's why even stipulating

14  to things poses -- two things that pose a challenge.

15      Like I said, something like the speech, you know,

16  as I stand here today without consulting with the criminal

17  defense team, I don't think I'd have problem with that,

18  certainly not waiving sort of any arguments to that.

19      But that's the kind of thing that, okay, that's

20  the speech and what was said; but anything further from

21  that, anything interpretive or any conclusions drawn, we

22  would not be able to stipulate to that.

23      THE COURT:  Sure.

24      But I mean, you know, let's move to the speech

25  then, for example.

1          Some of the indicia that the Circuit identified

2     were who sponsored the speech, who paid for the speech, and

3     the extent to which there was White House involvement in the

4     organization and planning of the event, the drafting of the

5     speech to the extent there was some pre-existing -- or

6     prepared remarks.  You know, all of those things, it seems

7     to me, could probably not require a whole lot of discovery

8     since they are likely to be undisputed, it seems to me.

9          MR. WARRINGTON:  I would respectfully disagree

10    with that, Your Honor, because I think -- for instance, if

11    the speech was written by White House speech writers, you

12    know, that information is likely included somewhere in

13    records from the White House or the Executive Office of the

14    Presidency and White House speech writing operation.  We

15    don't have access to that.

16         THE COURT:  Right, but you would know, I mean, in

17    theory.

18         MR. WARRINGTON:  Well, we would only know from a

19    our client, okay.

20         THE COURT:  Correct, correct.

21         MR. WARRINGTON:  And that, Your Honor, also goes

22    back to --

23         THE COURT:  Right.

24         MR. WARRINGTON:  -- we would be stipulating to

25    things that the government, the prosecution in the criminal

1    case may take advantage of that may disadvantage our client

2    in the criminal matter.

3            So what Mr. Sellers had said, he certainly would

4    prefer to have a response from President Trump that says

5    this is a response of President Trump, not his lawyers.

6    That's the precise problem that we have here, even with

7    stipulations.

8            THE COURT:  Right.

9            MR. WARRINGTON:  So I think the better course, and

10   I think it's the course that the courts have often taken

11   when there's parallel criminal and civil proceedings,

12   particularly when the underlying factual basis for both is

13   nearly identical, that proceedings are stayed to that

14   individual.  This Court has actually done that in the **Smith**

15   case, and so we think that that's fine.

16           But we don't think that disadvantages the

17   plaintiffs, because looking at the framework laid out in

18   *Blassingame*, they can, just like we can, we can say, okay,

19   well, there may be some information in this bucket and we

20   can go to that bucket and do third-party discovery in that

21   bucket, and there may be some information in this bucket and

22   we can go to this bucket and do it.

23           And I suspect that's probably -- we're going to

24   know -- and I think Mr. Sellers and I agree that there's

25   probably an opportunity for us to have a, you know,

1    scheduling conference about that stuff or a status

2    conference about those things in some time in the near

3    future.  And if both sides are finding there's no fruit on

4    those trees, then maybe that changes the calculation and

5    changes -- but we don't know that.  We're standing here in a

6    vacuum today.

7              THE COURT:  Can I ask you, and maybe you haven't

8    thought this all the way to the end, but, you know, the

9    Fifth Amendment protection typically exists, if my memory

10   serves, up through direct appeal.

11             I mean, you're not suggesting that if there were

12   to be a conviction, hypothetically, that that would still be

13   an impediment, any appeal of a conviction, to moving

14   forward?

15             MR. WARRINGTON:  I haven't thought about that

16   specifically in this context.

17             But in sort of thinking about it in just broad

18   terms, assuming that there was a conviction and the appeals

19   process had run its course, certainly the Fifth Amendment

20   doesn't really have the application that it does while the

21   criminal matter is going on.

22             But it also -- there are a bunch of nuances there

23   with regard to, okay, well, the testimony is precisely on

24   the conduct that's already covered by the indictment and

25   conviction versus conduct that could be charged anew.  So in

1   the abstract, I can't really, you know --

2            THE COURT:  Fair enough.  It's just something

3   that --

4            MR. WARRINGTON:  But the other thing about that,

5   Your Honor, if there's even a contemplation about asking,

6   you know, say, well, we could get to ask these questions of

7   President Trump and he has to answer, and he is -- in the

8   judgment of his attorneys, has to assert a privilege, in a

9   civil context, generally that comes with an adverse

10  instruction.

11           THE COURT:  Right.

12           MR. WARRINGTON:  And that's, again, why it's

13  common practice for courts in circumstances like this to

14  stay the proceedings against the individuals where there's

15  parallel proceedings.

16           THE COURT:  Well, I wonder if we can -- we should

17  have a -- maybe have a longer conversation about this.

18           But I do -- the greatest use of discovery against

19  a criminal defendant from a civil case is if that defendant

20  is deposed under oath, right?  Those statements are fair

21  game, they're under oath, they're admissions of a

22  party-opponent that can be used by a prosecutor.

23           That, I think, in my view, that creates sort of

24  greatest conflict between -- the potential for that, if it

25  happens in this early phase, that creates the greatest

1    jeopardy in terms of compromising Fifth Amendment privilege,

2    and then, you know, having potential implications for this

3    case if it's invoked.

4         But I do wonder whether we can do things short of

5    that to include, like, unsworn interrogatories or if there

6    are assertions to be made about certain things in the course

7    of either interrogatories or document discovery, whether

8    there would be a stipulation as to not draw an adverse

9    inference from those things.

10        I mean, some of this we can work around, I think,

11   it seems to me; not all of it, but some of it potentially.

12        MR. WARRINGTON:  The big thing we cannot work

13   around, if it's coming from President Trump or his counsel,

14   is that it reveals the contours of any potential defense in

15   the criminal matter.

16        THE COURT:  Sure, sure.

17        MR. WARRINGTON:  And I don't see a manner of

18   getting over that even working together in recognition of

19   that being the problem.

20        I don't -- because we don't control the

21   prosecution, we certainly don't, you know, have influence

22   over what they're going to decide to take and not take from

23   what goes on in this case.

24        THE COURT:  Right.

25        MR. WARRINGTON:  So...

1          THE COURT:  Look, I'll be clear.  It is not my

2     intention to -- I have no desire nor an intention to create

3     a further record for the Special Counsel.  He's got what

4     he's doing and I'm not here to assist in that; however, I do

5     obviously have an interest in moving this matter forward.

6          MR. WARRINGTON:  And I think we can move this

7     matter forward along the contours of what was laid out in

8     *Blassingame*, and both sides could do that.

9          We could check in a certain period of time, and

10    whether there is fruit, you know, being born from those

11    trees on both sides, and so I don't think the Court needs to

12    decide that issue fully today, maybe allow the parties to

13    get started on this third-party discovery.

14         When that substantially -- when the parties have

15    substantially developed an idea of how long this actually

16    might take, maybe we could reconvene and then discuss

17    whether even it's necessary, because the stuff that's going

18    to come from -- the Court laid out, it's an objective test,

19    and the stuff that's going to come from President Trump more

20    likely is inherently subjective, you know, what he thought,

21    what he -- you know, what -- you know, what he believed at

22    the time.

23         But the fact that you can go to these third

24    parties and essentially find out who was involved, who spent

25    money, you know, what other actors were -- played a role in

1   this, what was done, that's all in the hands of third

2   parties, and that's where you get, you know, focus on the

3   objective test.

4           THE COURT:  No.  I agree.

5           And I don't disagree with a thing you said.

6   I think the question is sort of how much of that you really

7   need to do to establish what are likely to be fairly

8   uncontroverted facts, including of the kind that you just

9   talked about, which is who paid for the rally, who sponsored

10  the rally, who was involved in the organization of it, was

11  anybody in the White House involved in the organization of

12  it.

13          You know, we can talk about the Select Committee's

14  report and the extent to which it made factual findings

15  about those things.  I believe it has, but, you know, that's

16  also another area of opportunity to obtain either actual

17  evidence or, for the plaintiff most likely, and perhaps even

18  the defense, to assert factual findings that are at least

19  admissible under the hearsay rules.

20          MR. WARRINGTON:  Certainly.

21          I mean, take the January 6th report, for instance.

22  I suspect that the plaintiffs would like to rely on certain

23  factual findings from that report.  We should certainly have

24  the opportunity to look behind those.  What are the

25  underlying documents that gave rise to that factual finding?

```
 1                    THE COURT:  Right.

 2                    MR. WARRINGTON:  What was the underlying

 3      testimony?

 4                    Some of that stuff is publicly available; we can

 5      mine that now.  Some of that may still be in the hands of

 6      committee members; it still may be in the hands of Congress.

 7      We just don't know that at this time.

 8                    THE COURT:  Okay.

 9                    All right.  Thank you, Counsel.  Anything you'd

10      like to add?

11                    MR. WARRINGTON:  Nothing further, Your Honor,

12      unless you have any other questions.

13                    THE COURT:  No.  Appreciate it.

14                    MR. WARRINGTON:  Thank you.

15                    THE COURT:  Mr. Sellers, do you wish to --

16                    MR. SELLERS:  May I speak to this?

17                    THE COURT:  Sure.

18                    MR. SELLERS:  So, first of all, we recognize and

19      understand what former President Trump's counsel is

20      interested in conducting this third-party discovery.

21                    They may be some third-party discovery that's

22      necessary.  But there's an enormous amount of information

23      from the Select Committee and from other places that we

24      think is already publicly available, and we would hope that

25      both sides would try to exhaust the publicly available
```

1    information before starting to propound lots of third-party

2    discovery that may lead to protracted litigation.

3              THE COURT:  That's my point, which is, I don't

4    want to spend a lot of time getting third-party discovery

5    for facts that aren't really in dispute.

6              I mean, I don't need a document, for example, if

7    everybody agrees that -- I can't remember the name of the

8    organization that sponsored the rally and paid for it, the

9    Right to Unite, or whatever it was called.

10             MR. SELLERS:  Right.

11             So I think that your notion of having some

12   stipulations may be something we should explore before we

13   all go off in our various directions.

14             And, again, I think with the opportunity for the

15   regular conferences, we can apprise the Court regularly of

16   the progress there.  So if it's grinding to a halt, we don't

17   waste a lot of time on that.

18             With respect to the discovery of former President

19   Trump, we recognize that that's a very sensitive area for

20   him in connection with the other matters he has available.

21             We could certainly, I suspect, agree that we would

22   put off any inquiry of former President Trump, if we need it

23   at all, until we have a better sense and a much clearer

24   sense of specifically what we may want to explore.

25             The immunity question, of course, whether it's

```
1    public or private actions, does not, at least on the face of
2    it, necessarily implicate the issues that are pending in the
3    criminal case and that --
4              THE COURT:  They do to some extent.
5              I mean, look, you know --
6              MR. SELLERS:  I understand.
7              I'm not saying there --
8              THE COURT:  All it takes is a chain in a link.
9              If he, for example, concedes or admits to a
10   particular --
11             MR. SELLERS:  Sure.
12             THE COURT:  -- tweet.
13             Anyway, you get the point.
14             MR. SELLERS:  I understand.
15             So I guess the point I'm making is perhaps we
16   could agree that we would, rather than -- certainly not stay
17   this entire proceeding over this.
18             And, second, if the greatest concern is the
19   discovery of former President Trump himself personally,
20   primarily through a deposition, we could put that off and
21   we'll see whether there are any particular areas we want to
22   inquire of him.
23             And if so, you can consider, they can consider
24   whether they are sufficiently tangential to what's at issue
25   in the criminal case that they're not a problem; and if they
```

1    are, we'll figure out some other way to deal with them.

2              But I think if we start by looking at the publicly

3    available information, getting -- try to get some agreement

4    on some key things, I think it would be very helpful.

5              The last thing I would say is that I understand

6    that counsel thinks of the Court of Appeals' decision as

7    laying out the exclusive list of things that should be

8    focused on.  We regard that as examples of things that the

9    Court may look at.  There may be other things that may be

10   bearing on whether it's public or private conduct.

11             So I just want to be clear that if the

12   representation made here today is that former President

13   Trump's counsel are going to rely only on that evidence to

14   support a claim of immunity, we'd like to know that, because

15   that is, in effect, a way of us understanding what they're

16   going to rely on.

17             THE COURT:  I'm sorry, rely on what evidence

18   again?

19             MR. SELLERS:  The examples that were mentioned in

20   the --

21             THE COURT:  Oh, I see.

22             MR. SELLERS:  -- Court of Appeals decision.

23             They kept referring to those as the kinds of

24   things that they would rely on.

25             If that is the exclusive body of information that

1    they're going to rely on, that would be good to know for us

2    because that would help define the scope of what former

3    President Trump is going to rely on.

4            If those are -- we view that as -- those are

5    exemplars and -- to illustrate for all of us the kinds of

6    things the Court of Appeals thinks would be relevant to the

7    distinction between public and private conduct, and we think

8    there's other evidence that may also be of assistance there.

9            So I just would like to be clear if

10   President Trump's counsel is intending to look at that list

11   of things in the Court's decision as the basis on which it's

12   going to rely exclusively, that would simplify this a lot.

13           If that's not what they're going to do, because

14   they just kept referring to those as things they would

15   propose to explore, I'd like to get a better sense -- and I

16   come back to the point I began with, which is whether it's

17   sworn or not sworn, we need some kind of indication what

18   they're going to rely on.

19           What counsel said in response to my question was,

20   just look at what's mentioned in the Court of Appeals

21   decision.  And as I said, if that's what they're going to

22   rely on, then we're prepared to accept that representation.

23   But if that's not all they're going to rely on, we'd like to

24   know what else they plan to rely on.

25           THE COURT:  Okay.

 1          MR. SELLERS:  Thank you.

 2          THE COURT:  Thank you, Mr. Sellers.

 3          Hang on one second, Counsel.

 4          Come on up.

 5          MR. CASPAR:  Thank you, Your Honor.  Ed Caspar for

 6    the Smith Plaintiffs.

 7          I think another factor that's of -- well, that's

 8    very important to the plaintiffs is that this period of

 9    initial discovery begin and that it end.

10          We need to get underway.  It's not in the

11    plaintiffs' interest or the Court's interest that there's

12    some indefinite period of discovery on this initial issue of

13    immunity, whether the President's actions were official or

14    not.

15          And as Your Honor alluded to, there are, you know,

16    innumerable ways to conduct this discovery without

17    implicating the defendant's Fifth Amendment rights.

18          If towards the end of this finite period of

19    discovery it becomes necessary to get the -- to at least ask

20    for the President's information, former President's

21    information, he certainly has his Fifth Amendment rights

22    still intact and he may assert them.

23          But that need not either grind this whole process

24    to a halt, nor does it need to put an open-ended date on

25    this.  It has to begin and it has to end, and that's

```
1   consistent with the Circuit's direction.

2            And I do believe that counsel for Blassingame has

3   a comment.

4            THE COURT:  Sure.

5            MS. PARKER:  Yes, Kristy Parker for the

6   Blassingame Plaintiffs.

7            Just one thing I wanted to add to all of what has

8   been said by my colleagues, which I agree with, is what

9   I think the Court has been getting at here today is, you

10  know, the D.C. Circuit opinion relied on Andersen versus

11  Creighton, footnote 6.

12           THE COURT:  Right.

13           MS. PARKER:  And it sets out the parameters for

14  what needs to happen at this stage after which a defendant,

15  asserting immunity, has lost a motion for summary judgment.

16           And I think very much contrary to what defendants'

17  counsel is saying, which is that they shouldn't have to do

18  really anything to define the parameters, that footnote and

19  the D.C. Circuit's, you know, summary of that footnote,

20  makes it clear that the defendant at this point needs to

21  come forward with the manner in which he either denies that

22  the allegations in the complaint happened or with additional

23  facts to tell a different story, and that those things need

24  to happen and that that's what's going to cabin the

25  additional discovery that goes on here.
```

1          But he very much does have an obligation and also

2     the burden to establish his immunity.

3          MR. WARRINGTON:  Your Honor, let me address what

4     Mr. Sellers raised, the first one.

5          In no way was I saying that we were conceding or

6     agreeing that that was a limited --

7          THE COURT:  I didn't think you were.

8          MR. WARRINGTON:  That's a good starting point.

9          THE COURT:  Mr. Sellers was hopeful.

10          MR. WARRINGTON:  That was a good starting point as

11     laid out by the Court of Appeals.

12          And with regard to the *Andersen* case, footnote 6,

13     it does not say what counsel just said it does.

14          What it says is that discovery has to be limited

15     to the immunity issue solely.  It doesn't go as far as it's

16     been stretched.

17          So I think we all agree that the only type of

18     discovery that's at issue right now for President Trump is

19     immunity discovery, and the only thing that we're discussing

20     or the only thing that really needs to be decided now is how

21     we move forward with that based on the *Blassingame* opinion.

22          THE COURT:  Here's another question for both

23     sides:  Is the issue at this juncture, in your view, limited

24     to the facts that are alleged in the complaint, the

25     complaint's allegations, or does it go beyond that?

1          In other words, you know, I set out a factual

2    summary, the Court of Appeals set out a factual summary.

3    Certainly that is, at a minimum, a starting point, but are

4    there really more facts that I need to be worried about?

5          MR. WARRINGTON:  Well, at the motion to dismiss

6    stage, which is where we were when the case went up on

7    appeal to the Court of Appeals was a motion to dismiss that

8    was ruled on, not summary judgment.

9          THE COURT:  Correct.

10         MR. WARRINGTON:  So I think now, and this is

11   what's contemplated in the *Andersen* case, is that once it's

12   been ruled on in a motion to dismiss, you can go back down

13   and have this limited immunity discovery for a motion for

14   summary judgment on the immunity issue.

15         THE COURT:  Right.

16         But that's going to necessarily involve, from the

17   defense, two things:

18         One, you're going to either have to admit or deny

19   the allegations in some sense, hypothetically.  You know, a

20   tweet was sent out on a particular day.  We're going to need

21   to know whether you agree that the President sent out the

22   tweet or you're going to dispute that.  Maybe you're going

23   to dispute it.  Maybe you're going to say, well, that was

24   sent by somebody else.  I don't know.  But maybe you won't

25   dispute it.

1      And so my question is:  Do I need to be thinking

2  about facts other than those that are alleged or can we

3  just, for example, have a factual framework that is

4  established by the allegations and whatever facts would

5  support or give rise to disputes of those allegations in

6  making the determination, or, or do I need to go beyond

7  that?  And if so, what does that look like and involve?

8      MR. WARRINGTON:  Well, what it looks like and

9  involves I don't really know at this point.

10      But what I'll set that up with is, not every

11  allegation is a material fact, and the standard on summary

12  judgment is undisputed material facts.  And if there's a

13  material fact that's not alleged but it's a material fact

14  that's developed by the defense, that's just as good in the

15  summary judgment context.

16      So when the Court asks how would that look, let's

17  say there was some evidence that was developed during the

18  course of this limited immunity discovery that clearly puts

19  the ball in the camp of, you know, this warrants official

20  act immunity, then that becomes the material fact.

21      All the other stuff, they're facts that are

22  contested, uncontested.  They really don't matter.  It may

23  turn on, you know, one fact.  That's just a -- that's pure

24  speculation.  That's why I say I can't give you the contours

25  of it now because I don't know.

1           THE COURT:  Right.  Okay.

2           MR. WARRINGTON:  But that's -- yeah.

3           And we could also develop additional information

4    that would not only contest those allegations, even though

5    they, for some reason, they were considered material, but we

6    could also have other facts that are just new facts that --

7           THE COURT:  Sure.

8           MR. WARRINGTON:  -- neither party knows about at

9    the given time.  That's why we do discovery.

10          And to address Mr. Seller's point about wanting to

11   know what we're -- sort of what we're doing, they're going

12   to get copies of our third-party subpoenas, they're going to

13   get copies of all of that.  They're going to see the

14   questions we're asking.  They're going to see the documents

15   we're looking for.  So -- and vice versa, we're going to see

16   that when they send out third-party subpoenas.

17          So it's not like this is all going to be conducted

18   in secret behind a curtain.  It's going to go just like

19   normal discovery in a civil case goes.  They just don't

20   have -- what they want is a roadmap of what we are planning

21   to do.

22          One, we don't know that yet.

23          Two, we don't think that's appropriate because of

24   the criminal case implications.

25          And, three, you generally don't have that in civil

1   litigation to a large degree, you know, setting aside the

2   issues and Rule 26.  But -- so I don't think that's

3   necessary here.

4           THE COURT:  Okay.

5           Mr. Sellers.

6           MR. SELLERS:  Yeah, may I speak to that?

7           The notion of the summary judgment process to

8   which the Court of Appeals referred provides the kind of

9   structure that I think your questions were asking, because

10  that's the place where former President Trump's counsel can

11  lay out the facts that they believe are relevant, material

12  to the issues of immunity, and we can contest those or see

13  whether there's anything that remains in dispute.

14          It provides precisely the kind of structure that

15  we need here.  And the sooner we can get to that stage,

16  recognizing there may be loose ends and things that have to

17  be explored further in discovery, the more, I think,

18  structured this whole process will be.  And so I would urge

19  the Court to try to set up a system here by which we have a

20  fairly early movement in that direction.

21          The other point I would make is that in civil

22  litigation, as you know, normally it's commenced by a

23  complaint in which the plaintiff lays out what the

24  plaintiffs' allegations are in some detail, enough to give

25  notice to the defendant, and that helps to structure the

1    defendant's response and whatever they are pursuing here.

2          Well, we don't have -- what we're looking for is

3    something analogous to if former President Trump were to be,

4    in fact, setting forth something like a complaint.  He lays

5    out what he's basically asserting as the basis, which is

6    something that I think he has to do at some point fairly

7    soon and not simply conduct a lot of third-party discovery,

8    and then nine months later figure out, well, I guess we need

9    more discovery.  That is a recipe for indefinite discovery.

10         So we really, again, emphasize the value of some

11   kind of description of the kind of evidence in which former

12   President Trump is going to rely, and a clear schedule and

13   pathway to get to summary judgment soon.

14         Thank you.

15         THE COURT:  Okay.

16         All right.  This has been a helpful discussion to

17   think through what I hope is a meaningful and efficient way

18   forward.

19         Here's what I think you all ought to do.

20   I'm going to give you two weeks to meet and confer and go

21   through the complaint and identify what facts can be

22   stipulated to, what facts are in dispute, and if there are

23   disputed facts, what discovery you think you need to

24   establish the facts that you wish to establish.

25         That's not in any way capping potential additional

1    facts that are outside the complaint, but it's got to be a

2    starting point, because, as I said, I really -- and I

3    haven't really heard anybody say otherwise, there really

4    are, just as I said, three buckets of conduct:  It's

5    communications, the rally, and post-rally action or

6    inaction.  And, you know, at least one of that category, the

7    communications, it seems to me, ought not to require that

8    much discovery.

9            And, you know, the defense at some point will

10   either be prepared to say, yes, he tweeted this, or, no, he

11   didn't tweet it, where he was when he tweeted it, et cetera.

12           And maybe there's some third-party discovery

13   that's needed for the rally, but even that I'm not so sure,

14   given all the other information that's already out there.

15           So I think it would be productive if you all sort

16   of put your heads together and had a meaningful conversation

17   about what you can agree to, what you can't agree to, and

18   what's needed to -- in terms of discovery, to sort of hash

19   out those disagreements.

20           MR. WARRINGTON:  May I approach, Your Honor?

21           THE COURT:  Yeah, of course.

22           MR. WARRINGTON:  Based on what I just heard

23   Your Honor say, it seems to me that you're asking us to go

24   through the complaint and essentially admit or deny facts in

25   the complaint.  I think the *Blassingame* opinion from the

1    Court of Appeals is very clear that this is not to go to any

2    of the merits of the case, this is solely to go to the

3    immunity question.

4            THE COURT:  Yes.

5            On the other hand, sometimes the line is going to

6    blur.

7            In other words, I mean, again, just take the

8    December 19th tweet, that is part of the immunity question

9    and it's also part of the merits.

10           And the questions that go to immunity may have

11   less to do with the merits, such as where the President was

12   when he sent the tweet, you know, et cetera.

13           But I don't see how we can avoid some overlap.

14   I mean, that's just -- that's inevitable.

15           MR. WARRINGTON:  I think we can avoid the overlap

16   if we're not engaging in an exercise that actually engages

17   in the merits, which this necessarily does.

18           THE COURT:  I'm not asking you to file an answer.

19   I'm asking you to get together to tell me what you can agree

20   to in terms of facts, stipulated facts based upon what's in

21   the complaint, what you can agree to, and what you need in

22   terms of discovery to establish the facts you want.

23           MR. WARRINGTON:  And, again, the second part of

24   that runs afoul of essentially laying out what the defense

25   would be in their criminal case.

1            THE COURT:  Well, I'm not so sure I --

2            MR. WARRINGTON:  And also --

3            THE COURT:  I mean, I don't see that, at least not

4  in a way that is concrete; in other words, you haven't

5  spelled out what you mean.

6            I can see it being possible, but you haven't

7  spelled out how, for example, admitting to, you know, that

8  he sent a tweet and where he was when he sent a tweet or who

9  was in the room during a particular phone call or how that

10 in any way is going to impair the defense in the criminal

11 case.

12           MR. WARRINGTON:  Well, the first part of it,

13 admitting to the tweet, that's no different than filing an

14 answer on that contested fact, okay?

15           Or even if it's not a contested fact, it's no

16 different.

17           THE COURT:  I get it.

18           But you've said more than that.  You've said it

19 might impair the defense, and I'm not quite sure that's

20 necessarily -- it may be.

21           MR. WARRINGTON:  I was going to get to that.

22           THE COURT:  Yeah.

23           Look, I think this is what makes the most sense.

24           And you all ought to sort of sharpen your pencils,

25 figure out what the defense really is going to contest in

1     terms of the allegations and what the objective facts you

2     think you're going to need to establish that the President's

3     conduct was in an official capacity, either in whole or in

4     part, and you've got to get to that point sooner rather than

5     later.

6              I'm not asking you to put anything in an answer,

7     I'm not asking you to put it in anything at this point that

8     can be held up in court by a prosecutor or elsewhere and

9     saying, this is Mr. -- this is the former President's

10    statement.

11             But I do think, you know, spending some time

12    thinking through exactly what you're going to contest --

13    well, one, what facts -- what objective evidence you think

14    is relevant; two, what facts you're going to contest; and,

15    three, if you're going to contest something, what discovery

16    you need, is a useful exercise to kick things off, because

17    otherwise we're just going to be spinning our wheels here

18    until these other proceedings get off the ground whenever

19    they may be, and I'm just not prepared to do that.

20             MR. WARRINGTON:  Your Honor, to address that

21    second point that you raised, we put that in writing and

22    then the prosecution takes that as the roadmap.

23             THE COURT:  I haven't asked you to put anything in

24    writing at this point.  I'm just asking you to sit down and

25    have a conversation with them.  That's it.

```
 1              MR. WARRINGTON:  As long as we are not being
 2    ordered to come to some sort of written agreement about --
 3              THE COURT:  Not yet.  Not yet.  We'll take this in
 4    steps, okay?
 5              So how about two weeks, is that enough time for
 6    you all to put your heads together?
 7              So why don't you submit something to me that is
 8    simply a Joint Status Report that's not anything that
 9    contains evidentiary admissions or matter, we'll all agree
10    to that, by March the 8th.
11              And then let's get back together at, if everyone
12    is available, 2:30 on March the 12th.
13              Does that work for everyone?
14              MR. WARRINGTON:  I need to check my --
15              THE COURT:  Sure.  Go ahead and take a look.
16              MR. SELLERS:  I think that's fine for the
17    plaintiffs.
18              THE COURT:  Or I can do it at 5:00 like I've been
19    doing all the others.  I'm trying to avoid that.
20              MR. SELLERS:  Your Honor, I think March 12th at
21    2:30 is fine for us.
22              THE COURT:  Okay.
23              MR. WARRINGTON:  March 12th at 2:30 works for us,
24    Your Honor.
25              THE COURT:  Okay.
```

1          So what I'm contemplating you all filing on the

2     8th is something that has the -- provides the content I've

3     just described, which is what is it that's actually going to

4     be contested, what other objectives -- what are the

5     objective facts that each side -- that the defense, because

6     it's the defense's burden here, to establish official act

7     immunity; two, to what extent what's alleged in the

8     complaint is something you think you will contest in

9     connection with the immunity question, because ultimately

10    we've got to look at the allegations of the complaint

11    through this crucible of official versus unofficial.  And

12    then, third, to the extent that there are going to be

13    disputes or facts that you think you need further

14    development on, what that discovery is going to entail.

15          And I really would like you all to sort of -- I've

16    described this.  Again, let's just use the rally as a

17    hypo -- as a case in point.  Think about what you think the

18    objective facts are around that rally, whether you can

19    stipulate to certain facts around that rally, and if not,

20    what discovery you think is necessary to support your

21    position, whether from -- it's party discovery or

22    third-party discovery.  And I think if we do that, that'll

23    give us a pretty good sense of what needs to be done moving

24    forward, because right now I think it's a little vague,

25    okay?

1        All right.  Last thing, I think, if there is a

2   request to stay the proceedings in their entirety, file a

3   motion and we can proceed apace.  Maybe if you want

4   expedited briefing, you can suggest that, talk to

5   Mr. Sellers and his team, that's fine with me.  And if not,

6   then we'll just wait for your motion and proceed under the

7   ordinary course.

8        MR. WARRINGTON:  One housekeeping matter,

9   Your Honor.

10       Any filings should be done in the 0400 matter and

11  they will trickle down to the others, or do you want us to

12  file --

13       THE COURT:  No, just in the 0400 matter.

14  I've consolidated all the cases for purposes of the immunity

15  discovery.  So just file everything in that one case and it

16  will apply to all of them.

17       MR. WARRINGTON:  Thank you, Your Honor.

18       THE COURT:  Okay?

19       All right.  Thank you, all, very much.  We'll see

20  you in a few weeks.

21       Mr. Woodward, can I talk to you for a second?

22  Completely unrelated.

23       COURTROOM DEPUTY:  The parties are excused.

24  All rise.

25       (Proceedings concluded at 2:26 p.m.)

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


Date:__February 27, 2024___      

                      William P. Zaremba, RMR, CRR

COURTROOM
DEPUTY: [3]  4/2 4/7
45/23
MR. ANDONIAN: [1]
5/9
MR. CASPAR: [3]  5/2
11/21 31/5
MR. MALONE: [1]
6/11
MR. SELLERS: [25]
4/16 4/23 7/10 8/2 8/15
8/18 9/5 9/18 10/18
10/21 11/9 11/15 11/18
26/16 26/18 27/10 28/6
28/11 28/14 29/19
29/22 31/1 37/6 43/16
43/20
MR. WARRINGTON:
[47]
MS. PARKER: [3]  5/5
32/5 32/13
THE COURT: [80]

0
0400 [2]  45/10 45/13

1
1100 [2]  1/13 2/14
1206 [1]  3/11
12th [3]  43/12 43/20
43/23
1310 [1]  3/4
1500 [2]  2/3 3/5
163 [1]  2/9
1943 [1]  3/16
19th [5]  14/10 14/10
14/11 17/4 40/8
1:30 [1]  1/6

2
200 [1]  3/15
20001 [1]  3/20
20005 [4]  1/14 2/4 2/15
3/5
20006 [1]  2/10
202 [6]  1/15 2/5 2/10
2/16 3/5 3/21
2020 [1]  2/9
2024 [2]  1/5 46/7
21-2265 [1]  4/8
21-400 [2]  1/4 4/8
21-586 [1]  4/8
21-858 [1]  4/8
2121 [1]  3/10
22314 [2]  3/11 3/15
2265 [1]  4/8
23 [1]  1/5
26 [1]  37/2
27 [1]  46/7
2:26 [1]  45/25
2:30 [3]  43/12 43/21
43/23

3
30 days [2]  8/16 8/21
315 [1]  2/15
3249 [1]  3/21
354-3249 [1]  3/21

4
400 [3]  1/4 4/8 5/21
408-4604 [1]  1/15
4582 [1]  2/10
4604 [1]  1/15

5
500 [1]  1/14
574-1206 [1]  3/11
579-4582 [1]  2/10
586 [1]  4/8
5:00 [1]  43/18

6
608 [1]  3/10
662-8318 [1]  2/5
6th [5]  14/12 14/22
17/14 18/3 25/21

7
703 [2]  3/11 3/16
717 [1]  3/14
742-1500 [1]  3/16

8
800 [1]  3/4
8318 [1]  2/5
858 [1]  4/8
888-1943 [1]  3/16
8th [2]  43/10 44/2

9
900 [1]  2/4
953-9850 [1]  2/16
9850 [1]  2/16

A
able [1]  18/22
about [32]  8/16 9/19
10/4 11/1 11/14 14/10
14/12 14/17 14/19
14/20 15/9 16/12 17/24
21/1 21/2 21/15 21/17
22/4 22/5 22/17 23/6
25/9 25/13 25/15 34/4
35/2 36/8 36/10 39/17
43/2 43/5 44/17
above [1]  46/4
above-titled [1]  46/4
abstract [1]  22/1
accept [2]  9/3 30/22
access [1]  19/15
achieve [1]  7/8
across [2]  6/17 14/7
act [2]  35/20 44/6
action [3]  4/8 14/24
39/5
actions [3]  16/13 28/1
31/13
activity [1]  16/23
actors [4]  14/19 17/23
17/24 24/25
acts [1]  9/25
actual [4]  6/16 15/23
17/8 25/16
actually [6]  4/13 16/22

add [4]  10/16 11/23
26/10 32/7
additional [4]  32/22
32/25 36/3 38/25
address [6]  6/20 11/5
11/25 33/3 36/10 42/20
admissible [1]  25/19
admissions [2]  22/21
43/9
admit [2]  34/18 39/24
admits [1]  28/9
admitting [2]  41/7
41/13
advantage [1]  20/1
adverse [2]  22/9 23/8
afoul [1]  40/24
after [3]  14/10 15/1
32/14
afternoon [10]  4/5 4/16
5/2 5/4 5/5 5/8 5/9 5/12
6/13 6/15
again [8]  15/21 22/12
27/14 29/18 38/10 40/7
40/23 44/16
against [2]  22/14 22/18
agencies [1]  13/5
agents [1]  14/21
agree [13]  18/1 20/24
25/4 27/21 28/16 32/8
33/17 34/21 39/17
39/17 40/19 40/21 43/9
agreeing [1]  33/6
agreement [2]  29/3
43/2
agrees [1]  27/7
ahead [2]  6/2 43/15
aided [1]  3/22
al [7]  1/3 1/6 4/9 4/10
4/10 4/11 4/12
Alan [1]  3/8
Alexandria [2]  3/11
3/15
all [50]
All rise [1]  45/24
allegation [1]  35/11
allegations [14]  14/6
14/17 14/19 14/20
17/22 32/22 33/25
34/19 35/4 35/5 36/4
37/24 42/1 44/10
alleged [5]  18/3 33/24
35/2 35/13 44/7
allow [1]  24/12
alluded [1]  31/15
along [3]  12/4 18/4
24/7
already [4]  17/7 21/24
26/24 39/14
also [11]  10/11 12/25
19/21 21/22 25/16 30/8
33/1 36/3 36/6 40/9
41/2
although [1]  14/4
ambiguous [1]  14/4
Amendment [5]  21/9
21/19 23/1 31/17 31/21
AMIT [2]  1/9 4/3

analogous [1]  38/3
analysis [1]  16/10
Andersen [3]  32/10
33/12 34/11
Andonian [4]  2/13 2/14
5/10 5/12
anew [1]  21/25
another [4]  9/24 25/16
31/7 33/22
answer [5]  11/4 22/7
40/18 41/14 42/6
anticipate [1]  12/2
any [16]  10/20 14/23
15/9 17/11 17/15 18/18
18/21 21/13 23/14
26/12 27/22 28/21
38/25 40/1 41/10 45/10
anybody [3]  6/9 25/11
39/3
Anyone [2]  11/20 12/6
anything [11]  10/16
17/12 18/20 18/21 26/9
32/18 37/13 42/6 42/7
42/23 43/8
Anyway [1]  28/13
apace [1]  45/3
appeal [3]  21/10 21/13
34/7
appeals [10]  9/25
21/18 29/22 30/6 30/20
33/11 34/2 34/7 37/8
40/1
Appeals' [1]  29/6
appearance [3]  5/17
5/21 5/23
appearances [4]  1/11
1/19 2/17 5/19
application [1]  21/20
apply [2]  7/4 45/16
appreciate [2]  6/21
26/13
apprise [1]  27/15
approach [3]  4/14 7/13
39/20
appropriate [2]  8/7
36/23
archives [1]  13/6 15/24
are [57]
area [2]  25/16 27/19
areas [1]  28/21
aren't [2]  9/4 27/5
arguably [1]  14/20
argument [1]  17/12
arguments [1]  18/18
arise [1]  13/19
arose [1]  15/15
around [6]  15/16 17/9
23/10 23/13 44/18
44/19
articulate [2]  7/1 7/2
as [41]  6/23 8/11 8/18
8/21 9/21 9/21 9/23
10/11 11/11 11/14 12/3
12/3 13/1 14/6 17/5
17/11 17/15 18/16 23/8
29/6 29/8 29/23 30/4
30/11 30/14 30/21

33/15 33/10 33/15
33/15 35/14 37/22 38/5
39/2 39/4 40/11 42/22
43/1 43/1 44/16 44/17
aside [1]  37/1
ask [5]  8/7 8/20 21/7
22/6 31/19
asked [3]  6/20 13/7
42/23
asking [10]  5/19 22/5
36/14 37/9 39/23 40/18
40/19 42/6 42/7 42/24
asks [1]  35/16
assert [4]  7/17 22/8
25/18 31/22
asserting [2]  32/15
38/5
assertions [1]  23/6
assist [1]  24/4
assistance [1]  30/8
ASSOCIATES [1]  3/3
assuming [2]  5/19
21/18
attendant [1]  13/22
attorneys [1]  22/8
available [6]  26/4
26/24 26/25 27/20 29/3
43/12
Avenue [4]  1/13 2/9
3/10 3/20
avoid [4]  10/14 40/13
40/15 43/19

B
back [5]  10/9 19/22
30/16 34/12 43/11
ball [2]  18/4 35/19
BARBARA [1]  1/3
Barrett [1]  3/3
based [4]  14/1 33/21
39/22 40/20
basically [1]  38/5
basis [4]  8/11 20/12
30/11 38/5
baskets [1]  14/14
be [74]
bearing [1]  29/10
because [21]  7/6 7/13
10/7 15/5 15/21 16/22
19/10 20/17 23/20
24/17 29/14 30/2 30/13
35/25 36/23 37/9 39/2
42/16 44/5 44/9 44/24
becomes [2]  31/19
35/20
been [8]  6/16 10/1 32/8
32/9 33/16 34/12 38/16
43/18
before [4]  1/9 18/11
27/1 27/12
began [1]  30/16
begin [5]  31/9 31/25
behalf [6]  4/25 5/10
5/13 5/16 11/20 14/21
behind [2]  25/24 36/18
being [8]  6/14 9/6 10/8
12/23 23/19 24/10 41/6
43/1

**B**

believe [5] 4/18 10/22 25/15 32/2 37/11
believed [1] 24/21
benefit [1] 10/12
Bennie [1] 4/8
Bennie Thompson [1] 4/8
best [1] 6/2
better [5] 8/11 8/24 20/9 27/23 30/15
between [2] 22/24 30/7
beyond [3] 7/20 33/25 35/6
big [1] 23/12
binds [1] 9/8
Binnall [3] 3/13 3/14 6/6
binnall.com [1] 3/16
bit [1] 12/1
Blassingame [15] 2/8 3/2 4/10 5/6 6/12 12/19 16/11 16/12 16/22 20/18 24/8 32/2 32/6 33/21 39/25
blur [1] 40/6
body [1] 29/25
born [1] 24/10
both [8] 12/21 13/25 20/12 21/3 24/8 24/11 26/25 33/22
bound [1] 8/23
break [1] 14/6
briefing [2] 11/3 45/4
broad [1] 21/17
bucket [5] 20/19 20/20 20/21 20/21 20/22
buckets [1] 39/4
bunch [1] 21/22
burden [2] 33/2 44/6

**C**

cabin [1] 32/24
calculation [1] 21/4
CALEB [1] 2/14
calebandonian.com [1] 2/16
calendars [1] 11/11
call [1] 41/9
called [1] 27/9
calls [1] 6/17
camp [1] 35/19
can [44] 4/13 4/14 7/5 7/18 8/19 9/22 10/9 12/3 16/22 20/18 20/18 20/20 20/22 21/7 22/16 22/22 23/4 23/10 24/6 24/23 25/13 26/4 34/12 35/2 37/10 37/12 37/15 38/21 39/17 40/13 40/15 40/19 40/21 41/6 42/8 43/18 44/18 45/3 45/4 45/21
can't [7] 10/1 15/20 17/12 22/1 27/7 35/24 39/17
cannot [2] 14/3 23/12

capacity [2] 18/4 42/5
capping [1] 38/25
caption [1] 4/18
case [21] 4/19 10/1 17/19 18/8 20/1 20/15 22/19 23/3 23/23 28/3 28/25 33/12 34/6 34/11 36/19 36/24 40/2 40/25 41/11 44/17 45/15
cases [5] 5/24 6/3 6/17 10/11 45/14
Caspar [6] 2/2 5/3 5/4 10/25 11/21 31/5
category [1] 39/6
certain [5] 16/7 23/6 24/9 25/22 44/19
certainly [18] 9/7 9/19 10/4 13/21 14/5 16/15 18/4 18/10 18/18 20/3 21/19 23/21 25/20 25/23 27/21 28/16 31/21 34/3
Certified [1] 3/18
certify [1] 46/2
cetera [3] 11/8 39/11 40/12
CH [1] 3/19
chain [1] 28/8
challenge [1] 18/14
changes [2] 21/4 21/5
character [2] 16/14 17/1
charged [1] 21/25
check [2] 24/9 43/14
Circuit [4] 14/1 15/5 19/1 32/10
Circuit's [3] 6/19 32/1 32/19
circumstances [1] 22/13
civil [9] 2/3 4/7 8/9 20/11 22/9 22/19 36/19 36/25 37/21
claim [2] 14/25 29/14
clear [9] 15/2 15/9 15/16 24/1 29/11 30/9 32/20 38/12 40/1
clearer [1] 27/23
clearly [1] 35/18
client [3] 17/6 19/19 20/1
closely [1] 11/24
COHEN [1] 1/12
cohenmilstein.com [1] 1/16
colleagues [1] 32/8
COLUMBIA [1] 1/1
come [9] 10/9 10/14 13/1 24/18 24/19 30/16 31/4 32/21 43/2
comes [1] 22/9
coming [1] 23/13
commenced [1] 37/22
comment [1] 32/3
committee [3] 2/2 26/6 26/23
Committee's [1] 25/13
common [1] 22/13

communicated [1] 14/19
communications [6] 14/16 15/13 17/22 17/24 39/5 39/7
complaint [11] 32/22 33/24 37/23 38/4 38/21 39/1 39/24 39/25 40/21 44/8 44/10
complaint's [1] 33/25
completed [1] 10/5
Completely [1] 45/22
complex [1] 13/21
compromising [1] 23/1
computer [1] 3/22
computer-aided [1] 3/22
concedes [1] 28/9
conceding [1] 33/5
concern [1] 28/18
concluded [2] 15/1 45/25
conclusions [1] 18/21
concrete [1] 41/4
conduct [13] 14/4 14/8 14/14 14/23 15/17 21/24 21/25 29/10 30/7 31/16 38/7 39/4 42/3
conducted [1] 36/17
conducting [1] 26/20
confer [1] 38/20
conference [3] 1/9 21/1 21/2
conferences [2] 10/13 27/15
confidence [1] 8/10
conflict [1] 22/24
Congress [1] 26/6
Congressman [1] 5/10
connection [2] 27/20 44/9
Conrad [1] 4/11
consider [4] 9/7 14/13 28/23 28/23
consideration [2] 14/5 15/6
considered [1] 36/5
consistent [2] 6/19 32/1
consolidated [1] 45/14
constitute [1] 12/20
Constitution [1] 3/20
consult [1] 18/11
consulting [1] 18/16
contains [1] 43/9
contemplate [2] 8/22 9/15
contemplated [1] 34/11
contemplating [2] 11/13 44/1
contemplation [1] 22/5
content [2] 15/14 44/2
contents [1] 17/15
contest [7] 36/4 37/12 41/25 42/12 42/14 42/15 44/8

contested [1] 32/16
context [5] 9/2 15/15 21/16 22/9 35/15
CONTINUED [2] 2/1 3/1
continuing [1] 12/2
contours [5] 12/16 12/19 23/14 24/7 35/24
contrary [1] 32/16
control [2] 13/9 23/20
conversation [3] 22/17 39/16 42/25
conviction [4] 21/12 21/13 21/18 21/25
coordinate [1] 12/3
coordinating [1] 11/24
copies [2] 36/12 36/13
correct [5] 12/9 19/20 19/20 34/9 46/3
could [16] 8/10 10/5 13/20 16/8 17/18 19/7 21/25 22/6 24/8 24/9 24/16 27/21 28/16 28/20 36/3 36/6
counsel [24] 4/13 4/14 4/24 6/5 6/5 6/6 9/10 10/3 10/3 10/20 11/20 23/13 24/3 26/9 26/19 29/6 29/13 30/10 30/19 31/3 32/2 32/17 33/13 37/10
counsels [1] 11/24
counter [1] 12/22
course [9] 14/11 20/9 20/10 21/19 23/6 27/25 35/18 39/21 45/7
court [31] 1/1 3/17 3/19 4/2 4/18 5/19 8/22 9/25 9/25 10/22 11/3 13/7 14/2 20/14 24/11 24/18 27/15 29/6 29/9 29/22 30/6 30/20 32/9 33/11 34/2 34/7 35/16 37/8 37/19 40/1 42/8
Court's [2] 30/11 31/11
courts [2] 20/10 22/13
covered [1] 21/24
create [2] 17/20 24/2
creates [2] 22/23 22/25
Creighton [1] 44/11
criminal [18] 11/11 12/14 13/16 18/8 18/10 18/13 18/16 19/25 20/2 20/11 21/21 22/19 23/15 28/3 28/25 36/24 40/25 41/10
CRR [2] 46/2 46/8
crucible [1] 44/11
current [2] 13/12 13/12
curtain [1] 36/18
CV [1] 1/4

**D**

D.C [7] 1/5 1/14 2/4 2/10 2/15 3/5 3/20
D.C. [2] 32/10 32/19
D.C. Circuit [1] 32/10

D.C. Circuit's [1] 32/19
date [2] 31/24 46/7
David [2] 3/8 5/15
day [2] 14/11 34/20
days [4] 8/16 8/20 8/21 10/9
deal [1] 29/1
December [3] 14/10 17/4 40/8
decide [2] 23/22 24/12
decided [1] 33/20
decision [4] 29/6 29/22 30/11 30/21
defendant [8] 3/8 5/14 11/13 22/19 22/19 32/14 32/20 37/25
defendant's [2] 31/17 38/1
Defendants [1] 1/7
defendants' [1] 32/16
defense [15] 12/17 12/20 12/22 17/12 18/17 23/14 25/18 34/17 35/14 39/9 40/24 41/10 41/19 41/25 44/5
defense's [1] 44/6
define [2] 30/2 32/18
degree [1] 37/1
DEMOCRACY [1] 2/8
denies [1] 32/21
deny [2] 34/18 39/24
deposed [1] 22/20
deposition [2] 11/13 28/20
described [3] 8/5 44/3 44/16
description [1] 38/11
design [1] 7/13
desire [1] 24/2
despite [1] 6/16
detail [2] 11/1 37/24
determination [1] 35/6
determinative [1] 16/10
develop [1] 36/3
developed [3] 24/15 35/14 35/17
development [1] 44/14
DHILLON [1] 3/9
dhillonlaw.com [1] 3/12
did [3] 14/21 16/16 16/17
didn't [2] 33/7 39/11
different [5] 11/16 13/18 32/23 41/13 41/16
differently [1] 8/6
direct [1] 21/10
direction [2] 32/1 37/20
directions [1] 27/13
disadvantage [1] 20/1
disadvantages [1] 20/16
disagree [2] 19/9 25/5
disagreements [1] 39/19

**D**

**discovery [53]**
**discuss [1]** 24/16
**discussing [1]** 33/19
**discussion [1]** 38/16
**dismiss [3]** 34/5 34/7
34/12
**dispute [10]** 15/9 15/23
17/15 17/24 27/5 34/22
34/23 34/25 37/13
38/22
**disputed [1]** 38/23
**disputes [3]** 16/1 35/5
44/13
**distinction [1]** 30/7
**DISTRICT [3]** 1/1 1/1
1/10
**do [38]** 5/13 5/20 5/22
5/25 6/4 7/23 7/23 8/13
9/16 9/19 11/8 15/14
17/5 20/20 20/22 22/18
23/4 23/4 24/4 24/8
25/7 26/15 28/4 30/13
32/2 32/17 35/1 35/6
36/9 36/21 38/6 38/19
40/11 42/11 42/19
43/18 44/22 45/11
**do you [3]** 7/23 8/13
26/15
**document [3]** 13/1
23/7 27/6
**documents [5]** 13/2
13/3 13/3 25/25 36/14
**does [10]** 21/20 28/1
31/24 33/1 33/13 33/13
33/25 35/7 40/17 43/13
**doesn't [3]** 16/14 21/20
33/15
**doing [4]** 16/16 24/4
36/11 43/19
**don't [40]** 7/1 8/4 9/9
10/1 12/18 12/23 13/9
15/25 17/14 17/24 18/1
18/9 18/10 18/17 19/15
20/16 21/5 23/17 23/20
23/20 23/21 24/11 25/5
26/7 27/3 27/6 27/16
34/24 35/9 35/22 35/25
36/19 36/22 36/23
36/25 37/2 38/2 40/13
41/3 43/7
**DONALD [6]** 1/6 3/8
4/9 4/10 4/11 4/11
**Donald Trump [1]** 4/9
4/10 4/11 4/11
**done [7]** 6/21 13/8 18/3
20/14 25/11 44/23 45/10
**down [3]** 34/12 42/24
45/11
**dozen [1]** 8/4
**drafting [1]** 19/4
**draw [1]** 23/8
**drawn [1]** 18/21
**during [2]** 35/17 41/9
**DWarrington [1]** 3/12

**E**

**each [2]** 5/23 44/5

**easily [1]** 17/18
**East [1]** 1/14
**easy [1]** 7/7
**ecaspar [1]** 2/6
**Ed [2]** 11/21 31/5
**Ed Caspar [1]** 11/21
31/5
**Edward [2]** 2/2 5/3
**Edward Caspar [1]** 5/3
**effect [1]** 29/15
**efficient [2]** 12/3 38/17
**Eisenhower [1]** 5/18
**either [8]** 14/23 23/7
25/16 31/23 32/21
34/18 39/10 42/3
**else [8]** 10/16 11/20
12/6 16/16 16/16 17/8
30/24 34/24
**elsewhere [1]** 42/8
**Email [7]** 1/15 2/5 2/11
2/16 3/6 3/12 3/16
**eminently [1]** 12/13
**emphasis [1]** 16/15
**emphasize [1]** 38/10
**employees [3]** 13/12
13/13 13/15
**end [5]** 10/13 21/8 31/9
31/18 31/25
**ended [1]** 31/24
**ends [1]** 37/16
**engages [1]** 40/16
**engaging [1]** 40/16
**enormous [1]** 26/22
**enough [5]** 11/6 12/20
22/2 37/24 43/5
**entail [1]** 44/14
**enter [1]** 6/2
**entered [2]** 5/17 5/18
**entertain [1]** 10/23
**entire [1]** 28/17
**entirety [1]** 11/7 45/2
**entities [1]** 13/9
**envision [1]** 8/13
**Eric [2]** 2/13 4/9
**essentially [3]** 24/24
39/24 40/24
**establish [7]** 25/7 33/2
38/24 38/24 40/22 42/2
44/6
**established [1]** 35/4
**et [10]** 1/3 1/6 4/9 4/10
4/10 4/11 4/12 11/8
39/11 40/12
**et al [1]** 4/10
**et cetera [2]** 39/11
40/12
**even [11]** 12/15 13/21
18/13 20/6 22/5 23/18
24/17 25/17 36/4 39/13
41/15
**event [1]** 19/4
**every [1]** 35/10
**everybody [1]** 13/2
27/7
**everyone [3]** 4/6 43/11
43/13
**everything [1]** 45/15

25/17 29/13 29/17 30/8
35/17 38/11 42/13
**evidentiary [1]** 43/9
**exactly [2]** 7/7 42/12
**example [13]** 14/20
15/1 15/8 15/24 16/11
17/5 17/9 18/1 18/25
27/6 28/9 35/3 41/7
**examples [2]** 29/8
29/19
**except [1]** 12/13
**exclusive [2]** 29/7
29/25
**exclusively [1]** 30/12
**excused [1]** 45/23
**executive [2]** 13/15
19/13
**exemplars [1]** 30/5
**exercise [2]** 40/16
42/16
**exhaust [1]** 26/25
**existing [1]** 19/5
**exists [1]** 21/9
**expedited [1]** 45/4
**experience [1]** 6/3
**explore [3]** 27/12 27/24
30/15
**explored [1]** 37/17
**extent [8]** 14/25 16/1
19/3 19/5 25/14 28/4
44/7 44/12

**F**

**face [1]** 28/1
**fact [11]** 12/13 15/24
24/23 35/11 35/13
35/13 35/20 35/23 38/4
41/14 41/15
**factor [1]** 31/7
**facts [34]** 7/17 15/11
16/8 16/9 16/10 16/19
25/8 27/5 32/23 33/24
34/4 35/2 35/4 35/12
35/21 36/6 36/6 37/11
38/21 38/22 38/23
38/24 39/1 39/24 40/20
40/20 40/22 42/1 42/13
42/14 44/5 44/13 44/18
44/19
**factual [8]** 20/12 25/14
25/18 25/23 25/25 34/1
34/2 35/3
**fair [4]** 7/9 7/11 22/2
22/20
**fairly [4]** 17/18 25/7
37/20 38/6
**far [2]** 18/5 33/15
**February [2]** 1/5 46/7
**few [1]** 45/20
**Fifth [5]** 21/9 21/19
23/1 31/17 31/21
**Fifth Amendment [4]**
21/9 21/19 23/1 31/21
**figure [5]** 6/19 7/5 29/1
38/8 41/25
**file [4]** 40/18 45/2
45/12 45/15

**filings [3]** 6/1 6/2 45/10
**find [2]** 9/9 24/24
**finding [2]** 21/3 25/25
**findings [3]** 25/14
25/18 25/23
**fine [5]** 5/20 20/15
43/16 43/21 45/5
**finite [1]** 31/18
**firm [1]** 6/7
**first [8]** 6/15 10/1 13/3
14/9 14/16 26/18 33/4
41/12
**focus [3]** 7/18 16/22
25/2
**focused [1]** 29/8
**follows [1]** 6/23
**footnote [4]** 32/11
32/18 32/19 33/12
**forecloses [1]** 12/15
**foregoing [1]** 46/3
**foresee [1]** 13/21
**former [20]** 6/25 8/12
8/18 8/20 8/24 9/9 9/11
13/11 13/14 26/19
27/18 27/22 28/19
29/12 30/2 31/20 37/10
38/3 38/11 42/9
**forth [2]** 16/11 38/4
**forward [10]** 4/23 6/19
14/2 21/14 24/5 24/7
32/21 33/21 38/18
44/24
**frame [1]** 8/5
**framework [4]** 14/1
14/2 20/17 35/3
**fruit [2]** 21/3 24/10
**fully [1]** 24/12
**funded [2]** 15/10 16/21
**further [5]** 18/20 24/3
26/11 37/17 44/13
**future [1]** 21/3

**G**

**game [1]** 22/21
**gave [1]** 25/25
**general [2]** 7/4 8/4
**generally [2]** 22/9
26/25
**get [23]** 6/1 8/11 9/16
13/8 13/25 22/6 24/13
25/2 28/13 29/3 30/15
31/10 31/19 36/12
36/13 37/15 38/13
40/19 41/17 41/21 42/4
42/18 43/11
**getting [5]** 18/5 23/18
27/4 29/3 32/9
**give [9]** 9/14 12/21
16/5 16/11 35/5 35/24
37/24 38/20 44/23
**given [3]** 15/18 36/9
39/14
**go [20]** 6/2 13/3 13/14
15/23 18/5 20/20 20/22
24/23 27/13 33/15
33/25 34/12 35/6 36/18
38/20 39/23 40/1 40/2

**Go ahead [1]** 43/15
**goal [3]** 8/7 9/8 9/21
**goes [5]** 12/25 19/21
23/23 32/25 36/19
**going [54]**
**good [16]** 4/5 4/16 5/2
5/4 5/5 5/8 5/9 5/12
6/13 7/21 11/9 30/1
33/8 33/10 35/14 44/23
**got [6]** 17/6 17/7 24/3
39/1 42/4 44/10
**government [4]** 13/5
13/12 13/12 19/25
**granted [1]** 4/18
**granular [1]** 7/17
**greater [1]** 9/2
**greatest [2]** 22/18
22/24 22/25 28/18
**grind [1]** 31/23
**grinding [1]** 27/16
**ground [1]** 42/18
**grounds [2]** 8/11 8/24
**GROUP [2]** 3/9 3/14
**guess [3]** 10/21 28/15
38/8

**H**

**had [4]** 6/22 20/3 21/19
39/16
**halt [2]** 17/16 31/24
**hand [1]** 40/5
**hands [3]** 25/1 26/5
26/6
**Hang [1]** 31/3
**happen [2]** 32/14 32/24
**happened [1]** 32/22
**happens [1]** 22/25
**hard [1]** 7/8
**harm [1]** 18/13
**has [20]** 7/15 10/1 14/1
14/2 20/14 22/7 22/8
25/15 27/20 31/21
31/25 31/25 32/2 32/7
32/9 32/15 33/14 38/6
38/16 44/2
**hash [1]** 39/18
**have [46]** 4/13 5/13 7/5
7/20 8/3 8/10 9/2 9/5
9/8 12/9 12/13 12/15
13/14 14/13 15/5 15/14
18/11 18/17 19/15 20/4
20/6 20/10 20/25 21/20
22/17 22/17 23/21 24/2
24/5 24/14 24/23 26/12
27/23 32/17 33/1 34/13
34/18 35/3 36/6 36/20
36/25 37/16 37/19 38/2
40/10 42/25
**haven't [8]** 5/18 17/20
21/7 21/15 39/3 41/4
41/6 42/23
**having [4]** 5/21 6/1
23/2 27/11
**he [26]** 14/18 14/18
14/19 16/19 20/3 22/7
22/7 24/20 24/21 24/21
27/20 28/9 31/21 31/22

**H**

he... [12] 32/21 33/1 38/4 38/6 39/10 39/10 39/11 39/11 40/12 41/8 41/8 41/8

he's [6] 7/15 7/16 7/17 24/3 24/4 38/5

head [1] 17/7

heads [2] 39/16 43/6

hear [1] 10/25

heard [2] 39/3 39/22

hearing [2] 6/18 6/24

hearsay [1] 25/19

held [1] 42/8

help [3] 8/23 17/3 30/2

helpful [3] 5/24 29/4 38/16

helps [1] 37/25

Hemby [2] 3/2 6/12

here [18] 6/14 9/8 10/25 17/3 17/11 18/16 20/6 21/5 24/4 29/12 32/9 32/25 37/3 37/15 37/19 38/1 42/17 44/6

here's [3] 18/7 33/22 38/19

him [3] 18/10 27/20 28/22

himself [3] 12/17 16/17 28/19

his [10] 7/13 14/21 16/19 16/20 20/5 22/8 23/13 31/21 33/2 45/5

Honor [26] 4/7 4/16 5/2 5/5 5/9 5/15 6/11 7/11 11/21 11/23 12/10 17/11 19/10 19/21 22/5 26/11 31/5 31/15 33/3 39/20 39/23 42/20 43/20 43/24 45/9 45/17

HONORABLE [3] 1/9 4/2 4/3

hope [4] 8/23 10/4 26/24 38/17

hopeful [1] 33/9

hopefully [2] 13/20 16/3

hoping [1] 7/12

horizon [1] 9/14

House [6] 16/20 19/3 19/11 19/13 19/14 25/11

housekeeping [1] 45/8

how [19] 7/4 7/6 7/7 7/24 8/13 9/19 10/8 13/7 15/2 15/16 16/20 24/15 25/6 33/20 36/15 40/13 41/7 41/9 43/5

however [3] 10/7 12/18 24/4

hypo [1] 44/17

hypothetically [2] 11/12 34/19

**I**

I believe [2] 4/18 25/15

I can [2] 41/6 43/18

I can't [1] 22/1

I don't [14] 12/18 12/23 15/25 17/14 18/1 18/17 23/20 24/11 25/5 27/6 34/24 35/9 35/25 37/2

I guess [2] 28/15 38/8

I have [2] 12/9 24/2

I haven't [2] 17/20 42/23

I hope [2] 8/23 38/17

I just [3] 29/11 30/9 39/22

I know [2] 7/2 10/2

I mean [15] 7/25 9/13 11/5 15/10 17/6 17/19 18/24 19/16 21/11 23/10 25/21 27/6 28/5 40/14 41/3

I say [1] 15/4

I think [42] 6/15 7/12 7/18 8/3 10/22 11/1 11/2 12/14 12/18 12/20 13/1 14/3 15/11 16/9 16/9 16/15 16/18 17/18 19/10 20/10 20/24 22/23 23/10 24/6 25/6 27/14 29/2 29/4 31/7 32/9 32/16 37/9 37/17 38/6 39/25 40/15 41/23 43/16 43/20 44/22 44/24 45/1

I understand [3] 28/6 28/14 29/5

I wanted [1] 32/7

I was [1] 41/21

I'd [4] 6/20 6/23 18/17 30/15

I'll [3] 16/11 24/1 35/10

I'm [22] 4/17 6/24 11/5 11/7 11/10 15/21 24/4 28/7 28/15 29/17 38/20 39/13 40/18 40/19 41/1 41/19 42/6 42/7 42/19 42/24 43/19 44/1

I'm going [2] 11/7 38/20

I'm Joseph Sellers [1] 4/17

I'm just [2] 42/19 42/24

I'm not [8] 15/21 24/4 28/7 39/13 41/1 41/19 42/6 42/7

I'm sorry [1] 29/17

I've [6] 8/5 14/24 43/18 44/2 44/15 45/14

I've consolidated [1] 45/14

idea [2] 12/21 24/15

ideally [1] 8/3

identical [1] 20/13

identified [1] 19/1

identify [3] 4/15 4/25 38/21

illustrate [1] 30/5

immunity [22] 7/4 12/16 12/20 12/22 13/25 29/14 31/13 32/15 33/2 33/15 33/19

impair [2] 41/10 41/19

impediment [1] 21/13

implicate [1] 28/2

implicates [1] 9/6

implicating [1] 31/17

implications [1] 23/2 36/24

important [1] 31/8

inaction [3] 14/24 14/24 39/6

INC [1] 3/9

include [1] 23/5

included [1] 19/12

including [1] 25/8

inconsistent [1] 18/12

indefinite [2] 31/12 38/9

indicated [2] 10/3 10/23

indication [1] 30/17

indicia [1] 19/1

indictment [1] 21/24

individual [1] 20/14

individuals [1] 22/14

inevitable [1] 40/14

inference [1] 23/9

influence [1] 23/21

inform [1] 11/3

information [12] 13/17 19/12 20/19 20/21 26/22 27/1 29/3 29/25 31/20 31/21 36/3 39/14

inherently [1] 24/20

initial [3] 8/14 31/9 31/12

innumerable [1] 31/16

inquire [1] 28/22

inquiry [2] 8/4 27/22

instance [2] 19/10 25/21

instruction [1] 22/10

instructions [1] 6/20

insufficient [1] 12/22

intact [1] 31/22

intended [1] 9/11

intending [1] 30/10

intention [2] 24/2 24/2

interest [2] 24/5 31/11 31/11

interested [1] 26/20

intermediate [1] 9/23

interpretive [1] 18/2

interrogatories [5] 8/1 8/14 8/20 23/5 23/7

interrogatory [1] 7/3 9/3

introduce [1] 6/10

invoked [1] 23/3

involve [2] 34/16 35/7

involved [3] 24/24 25/10 25/11

involvement [3] 16/13 16/23 19/3

involves [1] 35/9

is [114]

issue [16] 7/2 7/25

35/20 37/12 40/3 40/8 40/10 44/7 44/9 45/14

12/25 14/15 18/6 24/12 28/24 31/12 33/15 33/18 33/23 34/14

issues [9] 10/14 13/2 13/15 13/16 13/18 13/22 28/2 37/2 37/12

it [81]

it would be [3] 10/8 29/4 39/15

it's [41] 5/20 6/15 7/2 7/11 9/18 10/7 11/1 11/5 14/2 14/4 14/14 15/2 15/9 15/16 20/10 22/2 22/12 23/3 23/13 24/17 24/18 27/16 27/25 29/10 30/11 30/16 31/10 33/15 34/11 35/13 36/17 36/18 37/22 39/1 39/4 40/9 41/15 41/15 44/6 44/21 44/24

its [1] 21/19

itself [1] 17/14

**J**

James [2] 2/8 4/10

January [5] 14/12 14/22 17/14 18/3 25/21

January 6th [5] 14/12 14/22 17/14 18/3 25/21

jeopardy [1] 23/1

jesse [3] 3/13 3/16 6/5

jesse [1] 3/16

JOINT [2] 1/9 43/8

Jonathan [3] 3/9 6/6 6/6

Joseph [2] 1/12 4/17

jsellers [1] 1/16

JUDGE [2] 1/10 4/3

judgment [9] 18/6 22/8 32/15 34/8 34/14 35/12 35/15 37/7 38/13

jump [1] 7/1

juncture [2] 10/23 33/23

just [45] 5/21 5/22 5/23 5/25 8/4 8/5 8/13 10/13 10/21 10/21 11/23 13/3 15/8 16/11 17/3 17/22 20/18 21/7 22/2 22/5 25/8 26/7 29/11 30/9 30/14 30/20 32/7 33/13 35/3 35/14 35/23 36/6 36/18 36/19 39/4 39/22 40/7 40/14 42/17 42/19 42/24 44/3 44/16 45/6 45/13 45/15

**K**

Kaiser [1] 5/10

kept [2] 29/23 30/14

key [1] 29/4

kick [1] 42/16

kind [9] 7/16 7/16 18/19 25/8 30/17 37/8 37/14 38/11 38/11

kinds [2] 29/23 30/5

King [1] 3/14

**know [59]**

knows [1] 36/8

Kristy [3] 2/8 5/6 32/5

Kristy Parker [1] 5/6

kristy.parker [1] 2/11

**L**

laid [5] 16/22 20/17 24/7 24/18 33/11

large [1] 37/1

largely [1] 15/7 15/11

last [2] 12/1 29/5 45/1

later [4] 9/9 17/12 38/8 42/5

LAW [2] 2/3 3/9 3/14

lawyers [2] 4/17 20/5

LAWYERS' [1] 2/2

lawyerscommittee.org [1] 2/6

lay [1] 37/11

laying [2] 29/7 40/24

layout [1] 12/16

lays [3] 12/19 37/23 38/4

lead [1] 27/2

leads [1] 9/24

least [6] 7/14 25/18 28/1 31/19 39/6 41/3

LEE [4] 1/3 1/12 4/19 5/18

less [2] 12/1 16/15 40/11

let [2] 13/24 33/3

let's [8] 15/8 17/3 17/4 17/13 18/24 35/16 43/11 44/16

like [26] 6/23 6/25 9/15 10/2 10/16 12/17 17/10 17/13 18/15 18/15 20/18 22/13 23/5 25/22 26/10 29/14 30/9 30/15 30/23 35/7 35/8 36/17 36/18 38/4 43/18 44/15

likely [2] 13/5 13/6 19/8 19/12 24/20 25/7 25/17

limited [6] 16/3 33/6 33/14 33/23 34/13 35/18

line [1] 40/5

link [1] 28/8

list [2] 29/7 30/10

litigation [3] 27/2 37/1 37/22

little [4] 8/5 9/18 10/7 12/1 14/4 44/24

long [7] 7/6 8/13 10/8 13/13/20 24/15 43/1

longer [3] 12/21 22/17

look [15] 9/15 11/10 12/17 14/3 24/1 25/24 28/5 29/9 30/10 30/20 35/7 35/16 41/23 43/15 43/16

looking [4] 20/17 29/2 36/15 38/2

looks [1] 35/8

loose [1] 37/16

**L**

lost [1] 32/15
lot [6] 15/14 19/7 27/4
27/17 30/12 38/7
lots [1] 27/1

**M**

made [4] 10/24 23/6
25/14 29/12
main [1] 6/24
make [7] 5/22 8/4 8/8
8/19 12/3 12/9 37/21
makes [2] 32/20 41/23
making [2] 28/15 35/6
Malone [4] 3/2 3/3 6/12
6/13
manner [2] 23/17
32/21
many [3] 6/15 6/16
13/2
March [4] 43/10 43/12
43/20 43/23
Mark [1] 3/9
material [8] 16/4 35/11
35/12 35/13 35/13
35/20 36/5 37/11
matter [18] 5/18 5/21
8/8 9/1 13/22 18/12
18/13 20/2 21/21 23/15
24/5 24/7 35/22 43/9
45/8 45/10 45/13 46/4
matters [2] 18/10
27/20
Matthew [1] 5/10
may [38] 4/24 7/8 7/20
8/5 9/1 10/14 11/15
13/13 13/13 13/15
13/16 14/25 15/23 16/9
18/13 20/1 20/1 20/19
20/21 26/5 26/6 26/16
26/21 27/2 27/12 27/24
29/9 29/9 29/9 30/8
31/22 35/22 37/6 37/16
39/20 40/10 41/20
42/19
maybe [12] 14/14
17/23 21/4 21/7 22/17
24/12 24/16 34/22
34/23 34/24 39/12 45/3
me [18] 6/5 9/14 13/24
15/2 15/9 15/16 15/21
16/5 17/3 19/7 19/8
23/11 33/3 39/7 39/23
40/19 43/7 45/5
mean [18] 7/1 7/25
9/13 11/5 15/10 17/6
17/19 18/24 19/16
21/11 23/10 25/21 27/6
28/5 40/7 40/14 41/3
41/5
meaningful [2] 38/17
39/16
means [1] 7/3
mechanical [1] 3/22
meet [1] 38/20
MEHTA [2] 1/9 4/3
members [1] 26/6
memory [1] 21/9

**N**

mentioned [1] 29/1
30/20
Merit [1] 3/18
merits [4] 40/2 40/9
40/11 40/17
might [3] 10/12 24/16
41/19
MILSTEIN [1] 1/12
mind [1] 16/19
mine [1] 26/5
minimum [1] 34/3
moment [1] 10/18
money [1] 24/25
months [3] 10/4 13/19
38/8
more [11] 7/12 7/17
7/18 10/5 11/1 16/3
24/19 34/4 37/17 38/9
41/18
most [3] 15/6 25/17
41/23
motion [11] 4/18 10/24
11/8 18/6 32/15 34/5
34/7 34/12 34/13 45/3
45/6
move [5] 12/4 18/4
18/24 24/6 33/21
movement [1] 37/20
moving [3] 21/13 24/5
44/23
Mr [1] 42/9
Mr. [21] 4/22 5/4 5/12
6/6 6/13 7/9 10/17
10/25 11/19 12/8 12/12
20/3 20/24 26/15 31/2
33/4 33/9 36/10 37/5
45/5 45/21
Mr. Andonian [1] 5/12
Mr. Caspar [2] 5/4
10/25
Mr. Jonathan [1] 6/6
Mr. Malone [1] 6/13
Mr. Seller's [1] 36/10
Mr. Sellers [13] 4/22
7/9 10/17 11/19 12/12
20/3 20/24 26/15 31/2
33/4 33/9 37/5 45/5
Mr. Warrington [1]
12/8
Mr. Woodward [1]
45/21
Ms. [1] 5/8
Ms. Parker [1] 5/8
much [10] 15/3 15/16
15/20 15/22 25/6 27/23
32/16 33/1 39/8 45/19
my [11] 6/6 6/11 13/24
21/9 22/23 24/1 27/3
30/19 32/8 35/1 43/14

**N**

N.W [1] 2/14
name [2] 6/11 27/7
National [1] 13/6
nature [2] 16/14 17/1
near [1] 21/2
nearly [1] 20/13
necessarily [4] 28/2

necessary [5] 24/17
26/22 31/19 37/3 44/20
need [33] 4/24 6/9 7/15
8/4 11/14 12/18 12/23
15/3 15/16 15/23 17/5
17/8 18/5 25/7 27/6
27/22 30/17 31/10
31/23 31/24 32/23 34/4
34/20 35/1 35/6 37/15
38/8 38/23 40/21 42/2
42/16 43/14 44/13
needed [3] 7/7 39/13
39/18
needing [1] 10/13
needs [5] 24/11 32/14
32/20 33/20 44/23
neither [1] 36/8
new [1] 1/13 36/6
nine [3] 10/4 13/19
38/8
no [11] 1/4 5/21 21/3
24/2 25/4 26/13 33/5
39/10 41/13 41/15
45/13
normal [1] 36/19
normally [1] 37/22
not [62]
Nothing [1] 26/11
notice [2] 5/23 37/25
noticed [1] 6/1
notion [2] 27/11 37/7
now [10] 4/3 4/3 4/19
5/18 26/5 33/18 33/20
34/10 35/25 44/24
nuances [1] 21/22
number [2] 6/21 13/18
NW [5] 1/13 2/3 2/9 3/4
3/20

**O**

oath [2] 22/20 22/21
objective [11] 14/2
14/5 15/6 15/11 16/18
24/18 25/3 42/1 42/13
44/5 44/18
objectives [1] 44/4
obligation [1] 33/1
observations [2] 15/18
16/6
obtain [1] 25/16
obviously [2] 11/14
24/5
off [5] 27/13 27/22
28/20 42/16 42/18
Office [1] 19/13
Officers [1] 6/12
official [6] 3/19 31/13
35/19 42/3 44/6 44/11
often [1] 20/10
Oh [1] 29/21
okay [25] 6/8 6/14 7/22
9/12 10/15 11/9 11/17
12/5 12/7 13/23 18/19
19/19 20/18 21/23 26/8
30/25 36/1 37/4 38/15
41/14 43/4 43/22 43/25
44/25 45/18

**P**

one [17] 4/17 13/7 14/5
14/21 15/20 16/11 18/9
31/3 32/7 33/4 34/18
35/23 36/22 39/6 42/13
45/8 45/15
ongoing [1] 13/16
only [8] 4/24 14/14
19/18 29/13 33/17
33/19 33/20 36/4
open [1] 31/24
open-ended [1] 31/24
operation [1] 19/14
opinion [5] 12/19
16/12 32/10 33/21
39/25
opponent [1] 22/22
opportunity [5] 6/22
20/25 25/16 25/24
27/14
opposition [1] 11/8
order [1] 12/1
ordered [1] 43/2
orders [1] 8/22
ordinary [1] 45/7
organization [4] 19/4
25/10 25/11 27/8
other [27] 5/19 7/3
7/11 7/20 9/25 10/20
13/5 14/16 22/4 24/25
26/12 26/23 27/20 29/1
29/9 30/8 34/1 35/2
35/21 36/6 37/21 39/14
40/5 40/7 41/4 42/18
44/4
others [2] 43/19 45/11
otherwise [3] 8/22
39/3 42/17
ought [5] 11/2 15/22
38/19 39/7 41/24
our [10] 4/18 5/17 7/13
8/15 9/21 19/19 20/1
27/13 36/12 42/17
out [32] 6/19 7/2 7/5
11/11 12/19 14/6 14/11
16/22 17/3 20/17 24/7
24/18 24/24 29/1 29/7
32/13 33/11 34/1 34/2
34/20 34/21 36/16
37/11 37/23 38/5 38/8
39/14 39/19 40/24 41/5
41/7 41/25
outside [1] 39/1
over [5] 7/1 9/14 23/18
23/22 28/17
overall [1] 7/13
overlap [2] 40/13 40/15

**P**

P.C [1] 3/3
p.m [2] 1/6 45/25
paid [3] 19/2 25/9 27/8
parallel [4] 11/11 12/14
20/11 22/15
parameters [2] 32/13
32/18
Parker [2] 2/8 5/6 5/8
32/5

start [10] 5/25 7/14
11/12 14/24 14/24 40/8
40/9 40/23 41/12 42/4
participation [1] 16/21
particular [5] 15/24
28/10 28/21 34/20 41/9
particularly [1] 20/12
parties [7] 6/20 16/8
24/12 24/14 24/24 25/2
45/23
party [14] 20/20 22/22
24/13 26/20 26/21 27/1
27/4 36/8 36/12 36/16
38/7 39/12 44/21 44/22
party-opponent [1]
22/22
pathway [1] 38/13
Patrick [3] 3/2 3/6/11
patrickmalonelaw.com
[1] 3/6
peer [1] 9/14
pencils [1] 41/24
pending [2] 10/2 28/2
Pennsylvania [1] 2/9
perhaps [3] 7/5 25/17
28/15
period [5] 14/9 24/9
31/8 31/12 31/18
periods [1] 14/7
permit [2] 7/18 8/10
person [1] 6/16
personally [1] 28/19
petitioners [2] 4/13
4/14
phase [1] 22/25
phil [2] 2/16 5/10
Phil Andonian [1] 5/10
Philip [1] 2/13
phone [1] 41/9
pileup [1] 10/14
place [2] 16/15 37/10
places [1] 26/23
plaintiff [4] 2/7 2/13
25/17 37/23
plaintiffs [17] 1/4 1/12
2/2 3/2 4/17 4/25 5/3
5/6 6/25 11/12 11/22
20/17 25/22 31/6 31/8
32/6 43/17
plaintiffs' [4] 11/20
11/23 31/11 37/24
plan [1] 30/24
planning [2] 19/4
36/20
played [1] 24/25
please [2] 4/5 4/15
PLLC [2] 1/13 2/14
pmalone [1] 3/6
podium [1] 4/14
point [21] 7/21 8/18
27/3 28/13 28/15 30/16
32/20 33/8 33/10 34/3
35/9 36/10 37/21 38/6
39/2 39/9 42/4 42/7
42/21 42/24 44/17
portion [1] 17/21
pose [1] 18/14
poses [1] 18/14

**P**

**position [4]** 9/13 17/25 18/11 44/21
**positions [1]** 18/12
**possession [3]** 13/4 13/5 13/6
**possible [2]** 12/3 41/6
**post [2]** 14/23 39/5
**post-rally [2]** 14/23 39/5
**potential [6]** 13/16 17/23 22/24 23/2 23/14 38/25
**potentially [1]** 23/11
**practice [2]** 10/24 22/13
**pre [1]** 19/5
**pre-existing [1]** 19/5
**precise [1]** 20/6
**precisely [2]** 21/23 37/14
**predict [1]** 10/1
**prefer [2]** 9/5 20/4
**premature [2]** 9/16 9/18
**prepared [7]** 9/3 11/5 11/25 19/6 30/22 39/10 42/19
**presentation [1]** 8/14
**presented [1]** 9/7
**Presidency [1]** 19/14
**President [36]** 5/16 6/25 7/15 8/12 8/19 8/21 8/24 9/9 9/11 10/3 12/17 12/24 13/1 13/4 14/11 14/17 16/17 18/9 20/4 20/5 22/7 23/13 24/19 26/19 27/18 27/22 28/19 29/12 30/3 30/10 33/18 34/21 37/10 38/3 38/12 40/11
**President Trump [14]** 5/16 7/15 8/12 12/17 12/24 13/1 13/4 18/9 20/4 20/5 22/7 23/13 24/19 33/18
**President Trump's [2]** 10/3 30/10
**President's [11]** 14/4 16/13 16/13 16/23 16/23 17/14 31/13 31/20 31/20 42/2 42/9
**presiding [1]** 4/4
**presumably [2]** 17/6 18/6
**pretty [1]** 44/23
**Prettyman [1]** 3/19
**primarily [1]** 28/20
**primary [2]** 14/5 15/5
**prior [2]** 14/10 18/3
**private [3]** 28/1 29/10 30/7
**privilege [3]** 13/15 22/8 23/1
**privy [1]** 15/22
**probably [5]** 10/11 15/11 19/7 20/23 20/25
**problem [4]** 18/17 20/6

**Procedure [1]** 8/9
**proceed [5]** 6/23 7/24 9/21 45/3 45/6
**proceeding [1]** 28/17
**proceedings [12]** 1/9 3/22 11/7 12/14 20/11 20/13 22/14 22/15 42/18 45/2 45/25 46/4
**process [6]** 9/23 13/14 21/19 31/23 37/7 37/18
**produced [1]** 3/22
**productive [1]** 39/15
**progress [1]** 27/16
**proportionality [1]** 17/21
**propose [4]** 7/23 8/15 10/10 30/15
**proposed [1]** 10/7
**proposes [1]** 12/12
**propound [2]** 8/19 27/1
**prosecution [3]** 19/25 23/21 42/22
**prosecutor [2]** 22/22 42/8
**PROTECT [1]** 2/8
**protectdemocracy.org [1]** 2/12
**protection [1]** 21/9
**protracted [1]** 27/2
**provides [3]** 37/8 37/14 44/2
**public [4]** 17/13 28/1 29/10 30/7
**publicly [4]** 26/4 26/24 26/25 29/2
**pure [1]** 35/23
**purpose [1]** 6/18
**purposes [1]** 45/14
**pursue [1]** 7/21
**pursuing [1]** 38/1
**put [11]** 14/1 17/20 27/22 28/20 31/24 39/16 42/6 42/7 42/21 42/23 43/6
**puts [1]** 35/18

**Q**

**question [8]** 25/6 27/25 30/19 33/22 35/1 40/3 40/8 44/9
**questions [7]** 6/21 11/25 22/6 26/12 36/14 37/9 40/10
**quickly [3]** 9/21 10/5 12/4
**quite [2]** 18/5 41/19

**R**

**raised [3]** 12/23 33/4 42/21
**rally [16]** 14/12 14/22 14/23 15/1 15/8 15/10 15/10 25/9 25/10 27/8 39/5 39/5 39/13 44/16 44/18 44/19
**rather [2]** 28/16 42/4

**reaction [2]** 13/25 16/5
**real [1]** 15/9
**really [20]** 9/10 11/2 11/2 14/14 15/3 21/20 22/1 25/6 27/5 32/18 33/20 34/4 35/9 35/22 38/10 39/2 39/3 39/3 41/25 44/15
**Realtime [1]** 3/18
**reason [2]** 15/4 36/5
**reasonable [2]** 12/13
**reasons [2]** 13/7 14/3
**recipe [1]** 38/9
**recognition [1]** 23/18
**recognize [3]** 11/15 26/18 27/19
**recognized [1]** 8/9
**recognizing [1]** 37/16
**reconvene [1]** 24/16
**record [5]** 4/15 5/1 6/10 24/3 46/3
**recorded [1]** 3/22
**records [1]** 19/13
**refer [1]** 4/19
**referred [1]** 37/8
**referring [2]** 29/23 30/14
**regard [6]** 9/23 13/11 16/8 21/23 29/8 33/12
**Registered [1]** 3/18
**regular [2]** 10/12 27/15
**regularly [1]** 27/15
**relatively [1]** 16/3
**relevant [3]** 30/6 37/11 42/14
**relied [1]** 32/10
**rely [16]** 7/15 7/16 8/25 25/22 29/13 29/16 29/17 29/24 30/1 30/3 30/12 30/18 30/22 30/23 30/24 38/12
**relying [1]** 8/12
**remains [1]** 37/13
**remand [1]** 6/20
**remarks [1]** 19/6
**remember [1]** 27/7
**rename [1]** 4/18
**report [4]** 25/14 25/21 25/23 43/8
**Reporter [4]** 3/17 3/18 3/18 3/19
**represent [2]** 6/12 18/10
**representation [2]** 29/12 30/22
**representations [2]** 8/8 9/10
**represented [1]** 10/9
**request [5]** 9/2 10/23 11/6 12/15 45/2
**require [2]** 19/7 39/7
**respect [1]** 27/18
**respectfully [1]** 19/9
**respond [2]** 7/14 8/21
**response [5]** 8/14 20/4 20/5 30/19 38/1
**responses [1]** 9/4

**reveals [1]** 39/7
**review [2]** 6/22 9/24
**right [36]** 4/21 4/21 5/13 5/22 6/9 6/13 8/17 9/13 10/16 10/19 11/15 11/17 11/19 12/6 12/8 12/9 16/24 17/16 19/16 19/23 20/8 22/11 22/20 23/24 26/1 26/9 27/9 27/10 32/12 33/18 34/15 36/1 38/16 44/24 45/1 45/19
**rights [3]** 2/3 31/17 31/21
**rise [4]** 4/2 25/25 35/5 45/24
**RMR [2]** 46/2 46/8
**road [1]** 18/4
**roadmap [3]** 12/21 36/20 42/22
**role [1]** 24/25
**room [1]** 41/9
**Rule [1]** 37/2
**Rule 26 [1]** 37/2
**ruled [3]** 14/24 34/8 34/12
**rules [3]** 8/9 8/21 25/19
**run [1]** 21/19
**runs [1]** 40/24

**S**

**said [15]** 7/15 14/3 15/5 18/15 18/20 20/3 25/5 30/19 30/21 32/8 33/13 39/2 39/4 41/18 42/18
**saw [2]** 10/11 10/22
**say [13]** 10/21 15/4 17/14 20/18 22/6 29/5 33/13 34/23 35/17 35/24 39/3 39/10 39/23
**saying [4]** 28/7 32/17 33/5 42/9
**says [2]** 20/4 33/14
**schedule [2]** 10/10 38/12
**scheduled [1]** 10/12
**scheduling [1]** 21/1
**scope [1]** 30/2
**seated [1]** 4/5
**second [6]** 16/1 28/18 31/3 40/23 42/21 45/21
**secret [1]** 36/18
**see [13]** 10/8 14/6 23/17 28/21 29/21 36/13 36/14 36/15 37/12 40/13 41/3 41/6 45/19
**seek [2]** 13/13 17/1
**seems [7]** 15/5 15/21 19/6 19/8 23/11 39/7 39/23
**Select [2]** 25/13 26/23
**Seller's [1]** 36/10
**Sellers [16]** 1/12 1/13 4/17 4/22 7/9 10/17 11/19 12/12 20/3 20/24 20/5 31/2 33/4 33/9

**send [1]** 36/16
**sense [8]** 9/15 17/7 27/23 27/24 30/15 34/19 41/23 44/23
**sensitive [2]** 11/10 27/19
**sent [7]** 14/11 34/20 34/21 34/24 40/12 41/8 41/8
**separate [1]** 6/1
**series [1]** 7/25
**seriously [1]** 10/23
**serves [1]** 21/10
**session [1]** 4/3
**set [5]** 16/10 34/1 34/2 35/10 37/19
**sets [1]** 32/13
**setting [2]** 37/1 38/4
**share [1]** 13/24
**sharpen [1]** 41/19
**Shaw [2]** 3/9 6/6
**short [1]** 14/4 23/4
**should [6]** 10/24 22/16 25/23 27/12 29/7 45/10
**shouldn't [1]** 32/17
**side [1]** 44/5
**sides [7]** 12/21 13/25 21/3 24/8 24/11 26/25 33/23
**significance [1]** 9/2
**significant [2]** 11/2 11/6
**simplify [1]** 30/12
**simply [2]** 38/7 43/8
**since [1]** 19/8
**sit [2]** 17/11 42/24
**small [1]** 9/1
**Smith [6]** 2/2 4/11 5/3 11/22 20/14 31/6
**so [53]**
**So I think [7]** 6/23 17/13 20/9 27/11 33/17 34/10 39/15
**solely [2]** 33/15 40/2
**some [37]** 7/1 7/3 9/25 10/12 11/3 12/16 16/18 17/21 17/23 19/1 19/5 20/19 20/21 21/2 23/10 23/11 26/4 26/5 26/21 27/11 28/4 29/1 29/3 29/4 30/17 31/12 34/19 35/17 36/5 37/24 38/6 38/10 39/9 39/12 40/13 42/11 43/2
**somebody [3]** 16/16 16/16 34/24
**something [16]** 7/12 9/8 9/16 11/5 11/14 17/10 18/15 22/2 27/12 38/3 38/4 38/6 42/15 43/7 44/2 44/8
**sometimes [1]** 40/5
**somewhere [1]** 19/12
**soon [2]** 38/7 38/13
**sooner [2]** 37/15 42/4
**sorry [1]** 29/17
**sort [22]** 5/22 8/5 9/14

**S**

sort... [19] 11/7 12/16 14/6 14/7 14/13 15/18 16/21 17/11 17/20 18/18 21/17 22/23 25/6 36/11 39/15 39/18 41/24 43/2 44/15
speak [3] 18/9 26/16 37/6
speaking [1] 4/25
Special [1] 24/3
specifically [3] 12/23 21/16 27/24
speculation [1] 35/24
speech [11] 17/14 17/15 18/15 18/20 18/24 19/2 19/2 19/5 19/11 19/11 19/14
spelled [2] 41/5 41/7
spend [1] 27/4
spending [1] 42/11
spent [1] 24/24
spinning [1] 42/17
sponsored [4] 15/10 19/2 25/9 27/8
stage [3] 32/14 34/6 37/15
stand [1] 18/16
standard [1] 35/11
standing [1] 21/5
start [4] 6/1 15/8 17/7 29/2
started [2] 9/19 24/13
starting [6] 7/21 27/1 33/8 33/10 34/3 39/2
state [3] 14/19 17/23 17/24
statement [2] 17/13 42/10
statements [1] 22/20
STATES [2] 1/1 1/10
status [1] 1/9 10/12 21/1 43/8
stay [9] 7/2 9/3 9/6 10/23 11/7 12/2 22/14 28/16 45/2
stayed [1] 20/13
stenography [1] 3/22
step [1] 9/23
steps [1] 43/4
still [4] 21/12 26/5 26/6 31/22
stipulate [5] 16/2 16/8 17/18 18/22 44/19
stipulated [3] 16/9 38/22 40/20
stipulating [1] 18/13 19/24
stipulation [2] 15/21 23/8
stipulations [2] 20/7 27/12
story [1] 32/23
Street [4] 2/3 2/14 3/4 3/14
stretched [1] 33/16
structure [3] 37/9 37/14 37/25

stuff [6] 13/8 21/1 24/17 24/19 26/4 35/21
subjective [2] 14/3 24/20
submission [1] 6/22
submissions [1] 8/15
submit [1] 43/7
subpoenas [2] 36/12 36/16
substantial [1] 17/21
substantially [2] 24/14 24/15
substantiate [1] 15/24
such [1] 40/11
sufficient [1] 12/22
sufficiently [1] 28/24
suggest [1] 45/4
suggested [1] 13/19
suggesting [1] 21/11
Suite [7] 1/14 2/4 2/9 2/15 3/4 3/10 3/15
summary [13] 7/11 7/12 18/6 32/15 32/19 34/2 34/2 34/8 34/14 35/11 35/15 37/7 38/13
summation [1] 7/9
supplement [1] 16/2
support [4] 14/25 29/14 35/5 44/20
sure [14] 5/22 12/9 13/10 18/23 23/16 23/16 26/17 28/11 32/4 36/7 39/13 41/1 41/19 43/15
suspect [3] 20/23 25/22 27/21
Swalwell [3] 2/13 4/9 5/11
sworn [4] 9/4 9/6 30/17 30/17
system [1] 37/19

**T**

table [1] 6/5
take [16] 7/6 13/8 13/20 17/3 17/4 17/25 18/11 18/12 20/1 23/22 23/22 24/16 25/21 40/7 43/3 43/15
taken [1] 20/10
takes [2] 28/8 42/22
taking [1] 13/21
talk [3] 25/13 45/4 45/21
talked [1] 25/9
talking [1] 14/9
talks [1] 16/12
tangential [1] 28/24
team [2] 18/17 45/5
tell [3] 7/6 32/23 40/19
ten [2] 8/20 10/9
terms [9] 14/9 15/13 17/8 21/18 23/1 39/18 40/20 40/22 42/1
test [2] 24/18 25/3
testimony [3] 13/13 21/23 26/3

**Thank [4]** 4/21 6/14 11/18 11/19 12/5 12/7 12/11 26/9 26/14 31/1 31/2 31/5 38/14 45/17 45/19
Thank you [11] 4/21 6/14 11/18 11/19 12/7 26/14 31/1 31/2 31/5 38/14 45/17
that [279]
that'll [1] 44/22
that's [62]
their [3] 11/7 40/25 45/2
them [8] 9/5 10/13 13/17 18/11 29/1 31/22 42/25 45/16
theme [1] 6/24
themselves [2] 4/25 15/15
then [27] 5/13 7/4 7/5 8/10 8/21 8/23 9/13 9/14 11/13 14/7 14/10 14/13 14/18 14/20 14/22 14/23 18/25 21/14 23/2 24/16 30/22 35/20 38/8 42/22 43/11 44/12 45/6
theory [1] 7/4 19/17
there [37] 7/2 11/6 11/11 13/15 13/15 13/18 14/17 14/18 14/20 14/25 16/1 16/7 19/3 19/5 20/19 20/21 21/11 21/18 21/22 21/22 23/5 23/8 24/10 27/16 28/7 28/21 29/9 30/8 31/15 34/4 35/17 37/16 38/22 39/3 39/14 44/12 45/1
there's [15] 12/25 15/9 17/15 17/23 20/11 20/24 21/3 22/5 22/14 26/22 30/8 31/11 35/12 37/13 39/12
these [5] 10/11 12/14 22/6 24/23 42/18
they [27] 12/15 12/18 12/23 15/15 19/8 20/18 26/21 28/4 28/23 28/24 28/25 29/23 29/24 30/14 30/14 30/24 32/17 35/22 36/5 36/5 36/16 36/19 36/20 37/11 38/1 42/19 45/11
they're [17] 13/4 13/6 22/21 22/21 23/22 28/25 29/15 30/1 30/13 30/18 30/21 30/23 35/21 36/11 36/12 36/13 36/14
thing [9] 18/19 22/4 23/12 25/5 29/5 32/7 33/19 33/20 45/1
things [27] 12/4 15/19

28/16 35/2 41/13 41/18 42/4
Thank [4] 4/21 6/14 11/18 11/19 12/5 12/7 12/11 26/9 26/14 31/1 31/2 31/5 38/14 45/17 45/19
think [84]
thinking [5] 15/22 16/19 21/17 35/1 42/12
thinks [2] 29/6 30/6
third [14] 20/20 24/13 24/23 25/1 26/20 26/21 27/1 27/4 36/12 36/16 38/7 39/12 44/12 44/22
third-party [11] 20/20 24/13 26/20 26/21 27/1 27/4 36/12 36/16 38/7 39/12 44/22
this [75]
Thompson [2] 4/8 4/19
those [31] 6/2 6/3 8/8 8/19 13/9 13/16 15/10 15/18 16/5 16/9 16/21 16/25 17/17 19/6 21/2 21/4 22/20 23/9 24/10 25/15 25/24 29/23 30/4 30/4 30/14 32/23 35/2 35/5 36/4 37/12 39/19
though [1] 36/4
thought [4] 13/8 21/8 21/15 24/20
thoughts [2] 13/24 16/5
three [9] 5/19 8/3 10/2 14/7 14/13 14/23 36/25 39/4 42/15
through [8] 13/14 21/10 28/20 38/17 38/21 39/24 42/12 44/11
time [15] 6/16 8/8 12/1 13/4 14/7 14/9 21/2 24/9 24/22 26/7 27/4 27/17 36/9 42/11 43/5
titled [1] 46/4
today [9] 9/14 10/25 11/5 17/11 18/16 21/6 24/12 29/12 32/9
today's [1] 6/18
together [6] 6/16 23/18 39/16 40/19 43/6 43/11
TOLL [1] 1/13
Touhy [1] 13/14
towards [1] 31/18
Tower [1] 1/14
transcript [3] 1/9 3/22 46/3
transcription [1] 3/22
trees [1] 21/4 24/11
trickle [1] 45/11
tried [1] 17/20
TRUMP [36] 1/6 3/8 4/9 4/10 4/11 4/11 4/19 5/3 5/7 5/16 5/18 7/15 8/12 8/19 8/21 8/24 9/9 9/11 11/22 12/17 12/24 13/1 13/4 18/9 20/4 20/5

27/22 28/19 30/3 33/18 38/3 38/12
Trump's [5] 10/3 26/19 29/13 30/10 37/10
try [4] 6/18 26/25 29/3 37/19
trying [1] 43/19
turn [1] 35/23
tweet [15] 14/12 17/4 17/4 17/5 17/9 17/13 28/12 34/20 34/22 39/11 40/8 40/12 41/8 41/8 41/13
tweeted [5] 14/17 14/18 14/18 39/10 39/11
tweets [6] 14/16 15/1 15/13 15/15 17/22 18/2
two [12] 8/3 14/7 14/14 14/22 15/18 18/14 34/17 36/23 38/20 42/14 43/5 44/7
type [2] 16/14 33/17
types [3] 7/7 14/7 17/17
typically [1] 21/9

**U**

ultimately [2] 9/21 44/9
uncertain [1] 10/8
uncontested [1] 35/22
uncontroverted [1] 25/8
under [5] 2/3 22/20 22/21 25/19 45/6
underlying [3] 20/12 25/25 26/2
understand [5] 8/24 26/19 28/6 28/14 29/5
understanding [2] 8/11 29/15
understands [1] 13/2
underway [1] 31/10
undisputed [4] 15/7 15/12 19/8 35/12
Unite [1] 27/9
UNITED [2] 1/1 1/10
universe [1] 16/3
unless [5] 5/25 26/12
unofficial [2] 18/3 44/11
unrelated [1] 45/22
unsworn [1] 23/5
until [4] 9/16 10/8 27/23 42/18
up [8] 10/13 10/14 21/10 31/4 34/6 35/10 37/19 42/8
upon [2] 14/1 40/20
urge [1] 37/18
us [16] 5/20 7/6 7/18 8/10 8/23 10/9 13/7 20/25 29/15 30/1 30/5 39/23 43/21 43/23 44/23 45/11
use [3] 8/10 22/18 44/16

**U**

**used [1]** 22/22
**useful [1]** 42/16

**V**

**VA [2]** 3/11 3/15
**vacuum [1]** 21/6
**vague [1]** 44/24
**value [1]** 38/10
**various [3]** 6/17 10/14 27/13
**versa [1]** 36/15
**versus [12]** 4/9 4/9 4/10 4/11 4/19 5/3 5/6 5/18 11/22 21/25 32/10 44/11
**very [9]** 11/24 12/4 27/19 29/4 31/8 32/16 33/1 40/1 45/19
**vice [1]** 36/15
**view [3]** 22/23 30/4 33/23
**Viewing [1]** 15/2
**vs [1]** 1/5

**W**

**wait [1]** 45/6
**waiving [2]** 17/11 18/18
**want [12]** 5/20 7/21 10/25 13/13 27/4 27/24 28/21 29/11 36/20 40/22 45/3 45/11
**wanted [1]** 32/7
**wanting [1]** 36/10
**warrants [1]** 35/19
**Warrington [4]** 3/8 5/15 12/8 12/9
**was [39]** 6/18 9/9 9/10 15/1 16/14 16/16 16/19 16/19 16/20 16/21 18/20 19/3 19/5 19/11 21/18 24/7 24/24 25/1 25/10 25/10 26/2 27/9 30/19 33/5 33/6 33/9 33/10 34/7 34/8 34/20 34/23 35/17 35/17 39/11 40/11 41/8 41/9 41/21 42/3
**Washington [7]** 1/5 1/14 2/4 2/10 2/15 3/5 3/20
**waste [1]** 27/17
**way [14]** 4/20 6/19 7/1 7/23 9/25 15/2 21/8 29/1 29/15 33/5 38/17 38/25 41/4 41/10
**ways [1]** 31/16
**we [129]**
**we believe [1]** 10/22
**we'd [4]** 9/5 10/2 29/14 30/23
**we'll [9]** 4/19 8/22 13/3 28/21 29/1 43/3 43/9 45/6 45/19
**we're [17]** 4/7 7/13 14/9 18/11 20/23 21/5 30/22 33/19 34/20

36/15 36/15 38/2 40/16 42/17
**we've [4]** 6/16 9/19 44/10
**week [2]** 8/20 12/1
**weeks [3]** 38/20 43/5 45/20
**Welcome [1]** 6/8
**well [19]** 8/15 8/19 9/5 11/14 18/7 19/18 20/19 21/23 22/6 22/16 31/7 34/5 34/23 35/8 38/2 38/8 41/1 41/12 42/13
**went [1]** 34/6
**were [13]** 14/25 18/3 19/2 21/11 24/25 29/19 31/13 33/5 33/7 34/6 36/5 37/9 38/3
**what [102]**
**what's [9]** 10/8 15/5 28/24 30/20 32/24 34/11 39/18 40/20 44/7
**whatever [4]** 16/2 27/9 35/4 38/1
**wheels [1]** 42/17
**when [13]** 6/1 13/7 14/17 20/11 20/12 24/14 24/14 34/6 35/16 36/16 39/11 40/12 41/8
**whenever [1]** 42/18
**where [9]** 17/1 18/5 22/14 25/2 34/6 37/10 39/11 40/11 41/8
**whether [21]** 7/3 9/24 10/13 12/25 15/20 17/25 18/2 23/4 23/7 24/10 24/17 27/25 28/21 28/24 29/10 30/16 31/13 34/21 37/13 44/18 44/21
**which [23]** 8/12 8/18 9/25 15/15 18/5 19/3 25/9 25/14 27/3 30/11 30/16 32/8 32/14 32/17 32/21 34/6 37/8 37/19 37/23 38/5 38/11 40/17 44/3
**while [1]** 21/20
**White [6]** 16/20 19/3 19/11 19/13 19/14 25/11
**White House [6]** 16/20 19/3 19/11 19/13 19/14 25/11
**who [14]** 4/24 5/13 13/13 15/9 15/10 16/20 19/2 19/2 24/24 24/24 25/9 25/9 25/10 41/8
**whole [5]** 13/14 19/7 31/23 37/18 42/3
**why [7]** 13/7 13/19 18/13 22/12 35/24 36/9 43/7
**will [14]** 6/4 7/6 7/6 7/7 7/18 7/21 9/15 17/5 18/2 37/18 39/9 44/8 45/11 45/16

46/8
**wish [4]** 6/9 16/2 26/15 38/24
**within [3]** 8/7 8/21 10/9
**without [3]** 17/11 18/16 31/16
**witnesses [1]** 13/17
**won't [2]** 6/1 34/24
**wonder [3]** 15/18 22/16 23/4
**Woodward [1]** 45/21
**words [3]** 34/1 40/7 41/4
**work [3]** 23/10 23/12 43/13
**working [2]** 16/20 23/18
**works [1]** 43/23
**worried [1]** 34/4
**would [63]**
**wouldn't [1]** 13/20
**wrinkle [1]** 18/7
**writers [1]** 19/11
**writing [5]** 7/3 9/17 19/14 42/21 42/24
**written [2]** 19/11 43/2

**Y**

**yeah [7]** 7/10 8/2 9/18 36/2 37/6 39/21 41/22
**years [1]** 10/2
**yes [4]** 12/10 32/5 39/10 40/4
**yesterday [1]** 5/17
**yet [3]** 36/22 43/3 43/3
**York [1]** 1/13
**you [146]**
**you know [1]** 34/1
**you'd [2]** 10/16 26/9
**you're [11]** 9/6 21/11 34/18 34/22 34/22 34/23 39/23 42/2 42/12 42/14 42/15
**you've [6]** 6/21 17/6 17/7 41/18 41/18 42/4
**your [40]** 4/7 4/16 5/2 5/5 5/9 5/15 5/23 6/2 6/11 7/11 11/21 11/23 11/25 12/10 13/25 16/5 17/6 17/11 19/10 19/21 22/5 26/11 27/11 31/5 31/15 33/3 33/23 37/9 39/16 39/20 39/23 41/24 42/20 43/6 43/20 43/24 44/20 45/6 45/9 45/17
**Your Honor [24]** 4/7 4/16 5/2 5/5 5/9 5/15 7/11 11/21 11/23 12/10 17/11 19/10 19/21 22/5 26/11 31/5 33/3 39/20 39/23 42/20 43/20 43/24 45/9 45/17
**yourselves [2]** 4/15 6/10

**Z**

**Zaremba [3]** 3/17 46/2 46/8
**Zoom [2]** 6/9 6/17