UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA J. LEE, et al., | ) |
| | ) |
|     *Plaintiff,* | ) |
| | ) |
| v. | )   Case No. 1:21-cv-00400 (APM) |
| | ) |
| DONALD J. TRUMP, et al., | ) |
| | ) |
|     *Defendants.* | ) |
| | ) |

STATEMENT AND POINTS OF AUTHORITY IN SUPPORT OF DEFENDANT
DONALD J. TRUMP'S MOTION FOR STAY

# TABLE OF AUTHORITIES

**Cases**

*Aluminum Bahrain B.S.C. v. Dahleh*, 2012 WL 5305167 (W.D. Pa. 2012) ................. 5

*\*Doe v. Sipper*, 869 F. Supp. 2d 113 (D.D.C. 2012) ........................................... passim

*Estate of Gaither ex rel. Gaither v. District of Columbia.*, No. Civ. A. 03-1458 (CKK), 2005 WL 3272130 (D.D.C. Dec. 5, 2005)). .......................................................... 4, 6

*Grunewald v. United States,* 353 U.S. 391, 421 (1957) ............................................... 7

*Kastigar v. U.S.,* 406 U.S. 441, 465-66 (1972) ............................................................ 6

*\*Kurd v. Republic of Turkey*, 2022 WL 17961245 (D.D.C. Dec. 27, 2022) .......... 3, 4, 7

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................. 2

*McSurely v. McClellan*, 426 F.2d 664 (D.C. Cir. 1970) ............................................. 10

*Ohio v. Reiner,* 532 U.S. 17 (2001) ......................................................................... 6, 7

*Pillsbury Co. v. Conboy,* 459 U.S. 248 (1983) ............................................................ 6

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) . passim

*Trump v. United States*, No. 23-939 (S. Ct. Feb. 28, 2024) ................................ 2, 7, 9

*United States v. Kordel*, 397 U.S. 1 (1970) ................................................................. 3

*Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084 (5th Cir. 1979) ............................... 6

## INTRODUCTION

Basic fairness to criminal defendants and principles of judicial economy counsel that this Court should stay all proceedings concerning President Trump until the criminal case brought by the Special Counsel in the District of Columbia is resolved.

Defendant Donald J. Trump ("President Trump") is the 45th President of the United States, the nominee of the Republican Party, and the leading candidate in the 2024 presidential election. Since leaving office, the Department of Justice under President Trump's successor and presumptive opponent in the 2024 presidential election, Joe Biden, through the Special Counsel, brought several criminal charges against President Trump. *See United States v. Trump,* No. 1:23-cr-00257 (D.D.C.).

As this Court acknowledged, "the allegations in this case are essentially co-extensive with what the Special Counsel has alleged." Hr'g Tr. (Mar. 12, 2024) 18:21–22. President Trump should not be forced to waive any of his constitutional rights in this matter, nor prematurely telegraph his criminal defense strategies prior to the completion of the criminal proceedings. The only way to adequately protect against this prejudice to his legal position is to stay these proceedings with respect to President Trump until the Special Counsel's D.C. case is resolved, as is the common practice for other defendants facing similar circumstances. *See generally* Order, *Smith v. Trump*, No. 1:21-cv-02265 (APM) (D.D.C. Sep. 30, 2022) (staying proceedings "in the interest of justice" due to "the overlapping defendants in [a criminal case] and this [civil] one" and "the start of trial" in the criminal matter.).

1

The necessity of a stay is further reinforced by principles of judicial economy. The issue of presidential immunity is the central issue at this stage in these proceedings, and those same issues of presidential immunity also are currently pending before the United States Supreme Court. *See* Order Granting Writ of Cert., *Trump v. United States*, No. 23-939 (S. Ct. Feb. 28, 2024). The Supreme Court's consideration and resolution of these fronts in the criminal context, and further consideration by the district court upon remand, if necessary, are likely to be highly relevant to the question of presidential immunity in civil cases presented in this matter. Judicial economy would be better served by waiting until the Supreme Court has ruled in *Trump* and the criminal matter is resolved than by pressing onward now and running the substantial risk of being overcome by events in short order. Proceedings in this matter should be stayed with respect to President Trump.

## LEGAL AUTHORITY

"The Court has the discretion to stay civil proceedings in the interest of justice and 'in the light of the particular circumstances of the case.'" *Doe v. Sipper*, 869 F. Supp. 2d 113, 115 (D.D.C. 2012) (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). This is because "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Court may "stay civil proceedings, postpone civil discovery or impose protective orders and conditions when the interests of justice seem to require such action." *Kurd v. Republic of Turkey*, No.

18-1117 (CKK), 2022 WL 17961245, at *1 (D.D.C. Dec. 27, 2022) (quoting *Dresser Indus., Inc.*, 628 F.2d at 1375).

## ARGUMENT

### I.  A Stay is Necessary to Avoid Prejudicing the Criminal Proceedings Against President Trump

"It is well-established that a district court has discretionary authority to stay a civil proceeding pending the outcome of a parallel criminal case when the interests of justice so require." *Kurd*, 2022 WL 17961245 at *1. *See generally United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action . . . ."). As this Court has previously explained, "[c]ourts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *Kurd*, 2022 WL 17961245 at *1 (citing *Dresser Indus., Inc.*, 628 F.2d at 1376).

There are four factors a court should consider when determining whether to stay a civil proceeding due to a related criminal proceeding: "1) the relationship between the civil and criminal actions; 2) the burden on the court; 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the duration of the requested stay." *Id.* (quoting *Sipper*, 869 F. Supp. 2d at 116). The Court must weigh the circumstances of each case when making this decision. *Dresser Indus., Inc.*, 628 F.2d at 1375.

3

### A. The Criminal Proceedings Against President Trump are "Co-Extensive" with Allegations in These Cases

"[T]he D.C. Circuit has recognized that 'the strongest case for deferring civil proceedings until after completion of criminal proceedings is where,' as here, 'a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.'" *Kurd*, at *2 (quoting *Dresser Indus., Inc.*, 628 F.2d at 1375–76). Indeed, the relationship between civil and criminal actions "is 'often viewed as the most significant factor in the balancing test.'" *Id.* (quoting *Estate of Gaither ex rel. Gaither v. District of Columbia.*, No. Civ. A. 03-1458 (CKK), 2005 WL 3272130, at *4 (D.D.C. Dec. 5, 2005)). This factor decisively counsels in favor of staying these proceedings.

It is undisputed that there is substantial overlap between the allegations in these proceedings and the allegations in the Special Counsel's D.C. case. At the status conference on March 12, 2024, this Court twice observed that the allegations in these cases and those in the Special Counsel's D.C. case are "co-extensive." *See* Hr'g Tr. (Mar. 12, 2024) 12:17–19 ("They overlap completely, at least the Special Counsel's case, I think, essentially is co-extensive in many respects."), 18:20–22 ("That's all contextual, which is fair, but, you know, the allegations here are essentially co-extensive with what the Special Counsel has alleged."). Counsel for Plaintiffs—and Plaintiffs' primary spokesman at the recent status conferences—Mr. Sellers acknowledged as much, at least "[i]n some respects." *Id.* 18:23.

The Government has brought four charges against President Trump in the D.C. case, which carry a maximum penalty of decades in prison. These are serious

4

potential consequences for any criminal defendant. Given the "co-extensive" nature of the allegations in this case with those in the criminal matter, this factor weighs decisively in favor of staying these proceedings.

### B. Proceeding with this case would burden the Court.

Proceeding with this case, at this time, would present this Court with significant unnecessary burdens.

Proceeding with this case now would result in various privilege battles. President Trump should not be forced to waive his constitutional rights here, and therefore this Court would be burdened with a "constant stream of privilege issues." *Walsh Sec., Inc. v. Cristo Prop. Mgmt*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998). But this would be only a temporary state of play that a stay would prevent. *See Aluminum Bahrain B.S.C. v. Dahleh*, No. 8–299, 2012 WL 5305167, at *2 (W.D. Pa. Oct. 25 2012) (recognizing that criminal defendants will be able to candidly participate in the discovery process following the criminal trial). A stay prevents the Court from needing to hear various disputes. *See Sipper*, 869 F. Supp. 2d at 117 (holding that "the Court has an interest in avoiding unnecessary litigation that would burden its docket and hamper judicial economy.") (quotations and citations omitted).

In addition to avoiding significant disputes over constitutional claims, staying this case until the end of the criminal proceeding could streamline discovery— including the immunity discovery—in this case. The cases involve similar issues; thus, any discovery in the criminal case would likely reduce the need for a large amount of discovery in this case. *See Estate of Gaither ex rel. Gaither*, 2005 WL

5

3272130, at *4. Therefore, "judicial economy and the convenience of the court" weigh in favor of a stay. *Id.*

### C. The balance of interests weighs in favor of a stay.

While there are many factors to consider when weighing the parties' interests, perhaps the most significant factor is how a defendant's constitutional rights will impact the civil proceedings. *Sipper*, 869 F. Supp. 2d at 117–18. This is because it is "not fair to force [a] party to choose between Fifth Amendment privilege and the civil action." *Id.* at 117 (citing *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088–89 (5th Cir. 1979)). In *Sipper,* this concern outweighed the plaintiff's interest in a quick resolution. *Id.*

The Fifth Amendment right is foundational to this Nation's dedication to the rule of law. President Trump has been indicted and is entitled to the full protection of constitutional rights. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 266 n.1 (1983) (Marshall, J., concurring). *See also Kastigar v. United States*, 406 U.S. 441, 465–66 (1972) (Douglas, J., dissenting). He is clearly entitled to invoke his rights in this matter, including with respect to any discovery proceedings. *See Ohio v. Reiner,* 532 U.S. 17, 21 (2001).

While President Trump would be entitled to a presumption of innocence during his criminal trial that would include preventing any judge or jury from inferring any negative connotation from his invocation of his Fifth Amendment rights, should he choose to invoke such rights, the same is not true in a civil case. Rather, in a civil case, inferences may be drawn against a defendant who asserts his Fifth Amendment

6

rights. Allowing such an inference against President Trump—or any litigant—in the event he asserted such rights during an ongoing criminal trial would unfairly require them to choose between their Fifth Amendment protection or civil litigation. This would directly undermine a key tenet of the Fifth Amendment protection—the privilege offers protection to "*innocent* men … 'who otherwise might be ensnared by ambiguous circumstances.'" *Reiner,* 532 U.S. at 21 (emphasis in original) (citing *Grunewald v. United States,* 353 U.S. 391, 421 (1957)).

Given the substantial overlap in factual and legal allegations between these cases and the D.C. criminal case, there is also a substantial risk that proceeding in this matter now will "expose the defense's theory to the prosecution in advance of trial." *Kurd*, 2022 WL 17961245 at *1 (citing *Dresser Indus., Inc.*, 628 F.2d at 1376). This would prejudice President Trump's ability to effectively defend himself in both these civil cases and the Special Counsel criminal matter.

Staying these proceedings for the duration of the criminal proceedings has the added benefit of promoting principles of judicial economy. The issue of presidential immunity is a key issue at this stage in these proceedings. Indeed, this case cannot move forward with respect to President Trump until the issue of immunity is resolved. On February 28, 2024, the United States Supreme Court granted President Trump's Petition for Writ of Certiorari in *Trump v. United States*, No. 23-939 (S. Ct. Feb. 28, 2024). The sole question for the Court's consideration is "whether and if so to what extent does a former president enjoy presidential immunity from criminal prosecution for conduct alleged to involve official acts during his tenure in office."

7

The Court's consideration and resolution of this question is likely to be highly relevant to the question of presidential immunity in civil cases presented in this matter. To wit, in resolving the question presented in *Trump*, the Court may set forth at least some material factors for assessing presidential immunity, and if not, the district court may do so upon remand. These factors may well influence, or even determine, how the parties address the questions posed by the Court at the February 23 status conference: (1) what are the objective facts to establish official act immunity; (2) to what extent are factors alleged in the complaint going to be contested as part of assessing official act immunity; and (3) the extent to which there are going to be disputes of fact that will need further development and discovery, along with what that discovery entails.

The Court's first question—what objective facts are necessary to establish official act immunity—speaks directly to the issues that are likely to be addressed in *Trump*. The Court's subsequent questions follow from the identification of relevant factors. Accordingly, principles of sound judicial economy, as well as the underlying imperative of protecting persons who are immune from suit from the burdens of litigation, counsel against providing answers to the Court's questions until after the Supreme Court resolves *Trump*.

This view is bolstered by the briefing schedule set by the Court in *Trump*: the Court ordered Petitioner's brief on the merits to be filed on or before March 19, 2024, Respondent's brief on the merits to be filed on or before April 8, 2024, Petitioner's reply brief, if any, to be filed on or before April 15, 2024, and set oral argument for

8

April 25, 2024. *See* Order Granting Writ of Cert., *Trump v. United States*, No. 23-939 (S. Ct. Feb. 28, 2024). Waiting for the courts to resolve President Trump's criminal matter has the added benefit of promoting judicial economy in addressing his immunity claims in this matter.

Lastly, the Court may consider the public interest in a stay. *Sipper*, 869 F. Supp. 2d at 118. It is in the public interest for the Court to stay this case so that President Trump may pursue his rights in the criminal proceeding without being impaired by the need also to consider the issues presented in this civil litigation. President Trump is a former President, the current nominee of the Republican Party for President in 2024, and the overall leading candidate in that election. The appearance of justice is often as important as justice itself. As discussed above, if President Trump is hampered by the civil litigation issues presented in this case, or worse, forced to choose between presenting his strongest defense in one case or the other, the appearance of justice could easily be damaged. Accordingly, it is in the public interest to allow President Trump to defend the criminal proceeding against him without the burden of this case.

While Plaintiffs may have an interest in having their day in Court—and, of course, this stay motion seeks to determine only when, not whether, they will have it—this interest is outweighed by the serious and consequential burdens of proceeding with this litigation with respect to President Trump while the criminal case is ongoing. The balance of interests favors a stay.

9

### D. The Duration of the Stay

This case must be stayed for the duration of President Trump's criminal proceedings in the indictment in *United States v. Trump*, No. 1:23-cr-00257 (D.D.C.). As this Court has found, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Dresser Indus., Inc.*, 628 F.2d at 1375–76. The D.C. Circuit has recognized that when there is a pressing need, an indefinite stay may be warranted. *McSurely v. McClellan*, 426 F.2d 664, 671 (D.C. Cir. 1970).

Given the seriousness of the charges, as well as the extraordinary impact on our Nation as a whole, there is a pressing need to stay this case as to President Trump for the duration of the criminal proceedings against him, so that he may diligently pursue his rights.

### CONCLUSION

For the foregoing reasons, this Court should stay all proceedings concerning President Trump until the criminal case brought by the Special Counsel in the District of Columbia is resolved.

Dated: March 19, 2024                    Respectfully submitted,


                                                    /s/ David A. Warrington
                                                    David A. Warrington (D.C. Bar No. 1616846)
Jonathan M. Shaw (D.C. Bar No. 446249)
Gary M. Lawkowski (D.D.C. Bar ID VA125)
DHILLON LAW GROUP, INC.
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Tel: (703) 574-1206
Fax: (415) 520-6593
dwarrington@dhillonlaw.com
jshaw@dhllonlaw.com
glawkowski@dhillonlaw.com
*Attorneys for Donald J. Trump*

11