**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BARBARA J. LEE, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:21-cv-00400 (APM) |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT DONALD J. TRUMP'S MOTION TO STAY IMMUNITY DISCOVERY

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 3

STANDARD OF REVIEW ..................................................................................................... 5

ARGUMENT ........................................................................................................................... 6

I.    The Limited Immunity Inquiry Here Is Unrelated to Defendant Trump's Criminal Case. ... 6

II.   An Indefinite Stay Would Frustrate Judicial Economy. ...................................................... 11

III.  The Balance of Hardships Weighs Against an Indefinite Stay. ........................................... 13

    A.   Limited immunity discovery poses no risk of hardship for Defendant Trump. ........ 13

        1.   Defendant Trump has not demonstrated any specific Fifth Amendment prejudice. ................................................................................................ 13

        2.   Defendant Trump's other claims of prejudice are flawed. ............................ 19

        3.   The public interest and judicial economy weigh against a stay. .................. 20

    B.   Granting a stay would pose serious hardship to Plaintiffs. ...................................... 21

IV.   Defendant Trump Must, but Cannot, Identify a Pressing Need for an Indefinite Stay........ 23

V.    The Court Can Deny a Stay and Still Protect Defendant Trump's Fifth Amendment Rights. 25

CONCLUSION ....................................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aluminum Bahrain B.S.C. v. Dahdaleh*,
　2012 WL 5305167 (W.D. Pa. Oct. 25 2012) ..........................................................................12

*Barry Farm Resident Council, Inc. v. U.S. Dep't of Navy*,
　1997 WL 118412 (D.D.C. Feb. 18, 1997) ..............................................................................17

*Baxter v. Palmigiano*,
　425 U.S. 308 (1976).................................................................................................................17

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
　668 F.3d 724 (D.C. Cir. 2012)................................................................................................23

*Blassingame v. Trump*,
　87 F.4th 1 (D.C. Cir. 2023).........................................................................................1, 4, 7, 12

*Bush v. Semyenova*,
　255 F. Supp. 3d 235 (D.D.C. 2017)..........................................................................................6

*Campaign Legal Ctr. v. 45Committee*,
　2022 WL 3088595 (D.D.C. July 18, 2022)...............................................................22, 23, 24

*Carroll v. Trump*,
　2023 WL 5312894 (S.D.N.Y. Aug. 18, 2023).......................................................................24

*Clinton v. Jones*,
　520 U.S. 681 (1997)................................................................................................................21

*In re Corrugated Container Antitrust Litig.*,
　662 F.2d 875 (D.C. Cir. 1981)................................................................................................14

*Couch v. United States*,
　409 U.S. 322 (1973)..........................................................................................................16, 17

*Cruz v. City of Deming*,
　2023 WL 5319254 (D.N.M. Aug. 18, 2023) ..........................................................................20

*Ctr. for Biological Diversity v. Ross*,
　419 F. Supp. 3d 16 (D.D.C. 2019)..........................................................................................11

*Dist. Title v. Warren*,
　265 F. Supp. 3d 17 (D.D.C. 2017) .......................................................................................3, 14

*Doe v. Sipper*,
　869 F. Supp. 2d 113 (D.D.C. 2012)..............................................................................12, 15, 18

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*,
　2015 WL 13668667 (D.D.C. Aug. 5, 2015) .............................................................................6

*Fed. Sav. & Loan Ins. Corp. v. Hardee*,
  686 F. Supp. 885 (N.D. Fla. 1988) ........................................................................15

*Fisher v. United States*,
  425 U.S. 391 (1976) ...............................................................................................16

*Estate of Gaither ex rel. Gaither v. District of Columbia*,
  2005 WL 3272130 (D.D.C. Dec. 5, 2005) ...............................................................12

*Gibbs v. Plain Green, LLC*,
  331 F. Supp. 3d 518 (E.D. Va. 2018) .....................................................................21

*Gordon v. Fed. Deposit Ins. Corp.*,
  427 F.2d 578 (D.C. Cir. 1970) ...........................................................................19, 20

*Hargroves v. City of New York*,
  2010 WL 3619542 (E.D.N.Y. Sept. 10, 2010) .........................................................20

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
  185 F. Supp. 3d 233 (D.D.C. 2016) ........................................................................20

*Hoffman v. United States*,
  341 U.S. 479 (1951) ...............................................................................................15

*Horn v. District of Columbia.*,
  210 F.R.D. 578 (D.C. Cir. 1970) ............................................................................13

*Huthnance v. District of Columbia*,
  722 F.3d 371 (D.C. Cir. 2013) ...............................................................................17

*In re Interbanque, Inc.*,
  1996 WL 762330 (Bankr. D.D.C. Mar. 28, 1996) ....................................................14

*Kurd v. Republic of Turkey*,
  2022 WL 17961245 (D.D.C. Dec. 27, 2022) ...............................................18, 19, 24

*In re Lindsey*,
  158 F.3d 1263 (D.C. Cir. 1998) ..............................................................................14

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012) .....................................................................................21

*McSurely v. McClellan*,
  426 F.2d 664 (D.C. Cir. 1970) ..........................................................12, 19, 24, 25

*Mitchell v. United States*,
  526 U.S. 314 (1999) ...........................................................................................13, 17

*Morrow v. City of Tenaha*,
  2010 WL 3927969 (E.D. Tex. Oct. 5, 2010) ...........................................................20

*N. River Ins. Co., Inc. v. Stefanou*,
  831 F.2d 484 (4th Cir. 1987) ............................................................................14, 25

*Nat'l Indus. for Blind v. Dep't of Veterans Affs.*,
  296 F. Supp. 3d 131 (D.D.C. 2017) ................................................................9

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ......................................................................................7

*Off. of Thrift Supervision, Dep't of Treasury v. Zannis*,
  1990 WL 421186 (D.D.C. Aug. 14, 1990) ....................................................13

*Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co.*,
  14 F.R.D. 333 (E.D. Pa. 1953) ....................................................................20

*In re Pittman*,
  2000 WL 1580968 (D.C. Cir. Sept. 1, 2000) ................................................19

*Resol. Tr. Corp. v. Lopez*,
  794 F. Supp. 1 (D.D.C. 1992) ..........................................................14, 15, 16

*S.E.C. v. Whittemore*,
  659 F.3d 1 (D.C. Cir. 2011) ........................................................................17

*S.E.C. v. Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980) ..........................................................5, 13, 19

*Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. UPMC McKeesport*,
  2022 WL 3644808 (D.D.C. Aug. 24, 2022) ..................................................11

*Smith v. Trump*,
  2023 WL 9016458 (D.C. Cir. Dec. 29, 2023) ..................................................4

*St. Paul Fire and Marine Insurance Co. v. United States*,
  24 Cl. Ct. 513 (1991) ..................................................................................13

*State Farm Mut. Auto. Ins. Co. v. Mittal*,
  2018 WL 3127155 (E.D.N.Y. June 25, 2018) ................................................22

*Trump v. Thompson*,
  573 F. Supp. 3d 1 (D.D.C.), *aff'd*, 20 F.4th 10 (D.C. Cir. 2021) ..................21

*Trump v. United States*,
  2024 WL 833184 (U.S. Feb. 28, 2024) ........................................................5, 7

*United States v. Trump*,
  91 F.4th 1173 (D.C. Cir. 2024) ......................................................................8

*United States v. Hubbell*,
  167 F.3d 552 (D.C. Cir. 1999) ....................................................................16

*United States v. Kordel*,
  397 U.S. 1 (1970) ........................................................................................10

*United States v. Lot 5*,
  23 F.3d 359 (11th Cir. 1994) ......................................................................17

*United States v. Marion,*
    404 U.S. 307 (1971) ................................................................................................22

*United States v. Spencer,*
    2024 WL 578953 (D.D.C. Feb. 13, 2024) ..............................................................9

*United States v. Donald J. Trump,*
    No. 1:23-CR-00257 (TSC), (D.D.C.) ..............................................................1, 10

*In re Vitamins Antitrust Litig.,*
    120 F. Supp. 2d 58 (D.D.C. 2000) ........................................................................13

*Walsh Sec., Inc. v. Cristo Prop. Mgmt,*
    7 F. Supp. 2d 523 (D.N.J. 1998) ...................................................................11, 12

*Weil v. Markowitz,*
    829 F.2d 166 (D.C. Cir. 1987) ................................................................................5

*U.S. ex rel. Westrick v. Second Chance,*
    2007 WL 1020808 (D.D.C. Mar. 31, 2007) .........................................................10

*Yee v. City of Escondido,*
    503 U.S. 519 (1992) ................................................................................................8

## Statutes

18 U.S.C. § 241 .............................................................................................................10

18 U.S.C. § 371 .............................................................................................................10

18 U.S.C. § 1512 ...........................................................................................................10

## Other Authorities

Rachel Treisman, *Trump faces some half a billion dollars in legal penalties. How
    will he pay them?*, NPR (Feb. 20, 2024) ...............................................................23

Sarah D. Wire, *Trump is accused of trying to delete surveillance video in
    classified documents case*, L.A. TIMES (July 27, 2023) ........................................22

Zeke Miller, Alanna Durkin Richer, & Eric Tucker, *Trump accused of asking
    staffer to delete camera footage in Florida classified documents case*, ASSOC.
    PRESS (July 27, 2023) ............................................................................................22

## Rules

Fed. R. Civ. P. 1 .......................................................................................................3, 21

Fed. R. Civ. P. 12 ..........................................................................................................25

Plaintiffs in *Lee v. Trump*, No. 1:21-cv-00400-APM, *Swalwell v. Trump*, No. 1:21-cv-00586-APM, *Blassingame v. Trump*, No. 1:21-cv-00858-APM, *Smith v. Trump*, No. 1:21-cv-02265-APM, and *Garza v. Trump*, No. 1:23-cv-00038-APM, by and through counsel, submit this Opposition to Defendant Donald J. Trump's Motion to Stay.

## PRELIMINARY STATEMENT

For three years, Plaintiffs' ability to pursue justice has been put on hold while Defendant Trump has litigated his defense of absolute immunity. His legal questions concerning the application of presidential immunity have been conclusively resolved, and the United States Court of Appeals for the District of Columbia Circuit has given clear direction to the parties on how to proceed. Still, Trump seeks to evade any meaningful participation in this litigation. Trump now asks the Court to grant him a blanket, indefinite stay of these cases until the ultimate resolution of a criminal case, *United States v. Trump*, No. 1:23-cr-257 (D.D.C.),[1] that has not yet been scheduled for trial and for which appeals will likely not be resolved for years to come. Trump's arguments distort the relationship between an immunity inquiry in Plaintiffs' civil cases and *U.S. v. Trump*, and Trump fails to make any particular showing of prejudice. He also fails to bear his burden of showing a pressing need for an indefinite stay, an extraordinary form of relief.

Nearly four months ago, the D.C. Circuit applied established law on civil presidential immunity to the allegations in Plaintiffs' cases, affirmed the denial of Defendant Trump's motion to dismiss on immunity grounds, and offered Trump the opportunity to "dispute the plaintiffs' allegations bearing on the immunity question or [] introduce his own facts pertaining to the issue." *Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023). Trump did not seek further review of that

---

[1] Plaintiffs refer to *United States v. Trump* as well as the petition pending before the Supreme Court, *Trump v. United States*, No. 23-939, as "*U.S. v. Trump*."

decision.  On remand, and consistent with the D.C. Circuit's opinion, this Court instructed the parties to identify those facts relevant to the immunity inquiry to which they could jointly stipulate, the facts that are disputed, and any discovery that might be needed.  Trump rejected that path, instead filing this motion.

For the reasons that follow, the Court should deny Defendant Trump's request for an indefinite stay.

*First*, the immunity inquiry at issue in these civil proceedings is limited to whether Defendant Trump's conduct at issue falls within the scope of his official responsibilities.  That question is not at issue in *U.S. v. Trump*.  As Trump himself recognized, the question of whether his conduct falls within his official responsibilities "lies outside the Question Presented" before the Supreme Court.  Br. of Pet'r President Donald J. Trump, *Trump v. United States*, 2024 WL 1234260, at *44 (U.S. Mar. 19, 2024).  And questions concerning whether Trump was acting within the scope of his official responsibilities are distinct from the merits of the criminal charges he faces in *U.S. v. Trump*.  Accordingly, there is nothing to be gained here—other than delay—by waiting for the Supreme Court's resolution of *U.S. v. Trump*.

*Second*, an indefinite stay would not further judicial economy.  Some of these cases have already been paused for three years.  Moreover, because the criminal case against Defendant Trump does not turn on whether he acted within the scope of his official responsibilities, there is no reason to believe a resolution of that case will shed light on immunity here.  Instead, if Trump is going to continue to pursue an immunity defense, he should be required to identify the contours of that defense so that the parties and the Court can determine what if any limited discovery is needed.

*Third*, Defendant Trump has not clearly established that he would suffer any prejudice absent a stay, including with respect to his Fifth Amendment rights, let alone that prejudice against him would clearly outweigh the damage such a stay would cause Plaintiffs.  Trump invokes the Fifth Amendment vaguely, without explaining how an inquiry into his immunity would specifically impact his criminal case.  Even if the Fifth Amendment were implicated here, a blanket stay of all civil proceedings is not necessary as any Fifth Amendment concerns can be addressed in the regular course of the litigation, on a case-by-case basis.  *See Dist. Title v. Warren*, 265 F. Supp. 3d 17, 21 (D.D.C. 2017).  To the extent necessary, the Court can create case-specific guardrails for the immunity inquiry to ensure that Trump does not have to make incriminating sworn statements or preview his criminal defense.  While tailored discovery poses no threat to Trump, the absence of any discovery would frustrate Plaintiffs' right to a "just, speedy," determination, Fed. R. Civ. P. 1, and prejudice Plaintiffs by increasing the risk that evidence is lost while lowering the likelihood that they can recover from any future judgment.

*Fourth*, as Defendant Trump concedes, the fact that he seeks an indefinite stay means he must identify a "pressing need" for it.  He has failed to do so.

Defendant Trump has exhausted all avenues of appeal related to presidential immunity from damages liability.  He must now be required to bear his burden on his immunity defense or let this case proceed to the merits.

## RELEVANT BACKGROUND

The consolidated cases were filed on February 16, 2021, March 5, 2021, March 30, 2021, August 26, 2021, and January 5, 2023, respectively.  *Lee v. Trump*, No. 1:21-cv-00400-APM, *Swalwell v. Trump*, No. 1:21-cv-00586-APM, *Blassingame v. Trump*, No. 1:21-cv-00858-APM, *Smith v. Trump*, No. 1:21-cv-02265-APM, and *Garza v. Trump*, No. 1:23-cv-00038-APM.  Each

of these cases seeks to hold Defendant Trump and other defendants civilly liable for their involvement in the January 6, 2021 attack on the United States Capitol.

Defendant Trump moved to dismiss in each case, including on the basis that he was entitled to absolute presidential immunity for the conduct at issue in Plaintiffs' complaints.  This Court denied each motion to dismiss as to Trump: on February 18, 2022, in *Lee* Dkt. 66, *Swalwell*, Dkt. 56, and *Blassingame*, Dkt. 37; on January 26, 2023, in *Smith*, Dkt. 179; and on January 2, 2024, in *Garza*, Dkt. 55.  Trump appealed the denials of his asserted civil immunity defense.  *See Blassingame*, 87 F.4th at 4–5.  The D.C. Circuit affirmed and remanded with instructions to allow Trump the opportunity to "dispute the plaintiffs' allegations bearing on the immunity question or to introduce his own facts pertaining to the issue" before the case could "move ahead to the merits, including before any merits-related discovery."  *See id.* at 29; *Smith v. Trump*, 2023 WL 9016458, at *1 (D.C. Cir. Dec. 29, 2023).  Trump did not seek further review, and the D.C. Circuit issued the mandate on February 16, 2024.

On February 16, 2024, this Court consolidated the five cases for purposes of immunity-related discovery, resolution of the immunity issue on summary judgment, and merits discovery.  On February 23, 2024, the Court held a status conference and directed the parties to "meet and confer and go through the complaint and identify what facts can be stipulated to, what facts are in dispute, and if there are disputed facts, what discovery you think you need to establish the facts that you wish to establish."  Dkt. 86 at 38:20–24.  The court set out guardrails for this process, clarifying that it was "not asking [Defendant Trump] . . . to put anything in writing at this point." *Id.* at 42:6–10, 23–24.  All this court asked for is that the parties "sit down and have a conversation." *Id.* at 42:24–26.

On February 28, 2024, the Supreme Court granted certiorari in Defendant Trump's appeal from the D.C. Circuit's decision in *U.S. v. Trump* denying his claim of presidential immunity from criminal prosecution. The Court's grant of certiorari was "limited" to a narrow legal question: "[w]hether and if so to what extent does a former President enjoy presidential immunity from criminal prosecution for conduct alleged to involve official acts during his tenure in office." *Trump v. United States*, 2024 WL 833184 (U.S. Feb. 28, 2024).

As this Court directed, Plaintiffs identified a series of facts for stipulation relevant to the issue of Defendant Trump's immunity and sent them to Trump's counsel on March 3, 2024. Dkt. 87-1. The parties scheduled an in-person meeting for March 6 to discuss those proposed stipulations. The day before the scheduled meeting, Trump's counsel informed Plaintiffs that he would not attend the meet and confer, would not agree to any stipulations, and would instead seek a wholesale stay of this matter. Dkt. 87, at 1–2. Trump's counsel reiterated this position at the next status conference on March 12, 2024. Dkt. 88, at 7–13.

Defendant Trump now seeks to stay all proceedings against him in the consolidated cases for the duration of the criminal proceedings in *U.S. v. Trump*, and any appeal thereafter. Dkt. 90.

## STANDARD OF REVIEW

"A total stay of civil discovery pending the outcome of related criminal matters is an extraordinary remedy appropriate for extraordinary circumstances." *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987). Indeed, the Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). A "party moving for a stay" of "all proceedings in an action pending the resolution of independent proceedings elsewhere" "bears the burden of making out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility

that the stay for which the movant prays will work damage to some one else." *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 2015 WL 13668667, at *1 (D.D.C. Aug. 5, 2015) (cleaned up).

In evaluating motions to stay, courts consider "(1) the relationship between the civil and criminal actions; (2) the burden on the court; (3) the hardships or inequalities the parties would face if a stay was granted; and (4) the duration of the requested stay." *Bush v. Semyenova*, 255 F. Supp. 3d 235, 238 (D.D.C. 2017) (quotation marks omitted).

## ARGUMENT

### I.     The Limited Immunity Inquiry Here Is Unrelated to Defendant Trump's Criminal Case.

The "extraordinary remedy" of staying a civil proceeding is inappropriate where—as here—the relationship between the civil and criminal matters is such that there is "little risk that permitting [the] civil matter to proceed would unfairly disadvantage either party." *Bush*, 255 F. Supp. 3d at 238. Defendant Trump argues that an overlap between Plaintiffs' civil claims and the criminal charges in *U.S. v. Trump* justifies a blanket stay of these cases. This is wrong. Instead, the Court should determine if the elements of the criminal charges in *U.S. v. Trump* turn on the single immunity inquiry currently at issue in this proceeding:  whether Trump's conduct falls within the "outer perimeter" of a president's official responsibilities. There is no such nexus. And because Trump has not shown that the issues implicated in the civil immunity inquiry here will likely be at issue in the criminal case, there is little risk of unfair disadvantage in requiring Trump to proceed in the manner prescribed by the D.C. Circuit, particularly if this Court places guardrails on the immunity process. Accordingly, this factor weighs strongly against a stay.

Defendant Trump makes two attempts to draw a connection between the civil presidential immunity inquiry he seeks to stay and the charges in *U.S. v. Trump*. Both fall short.

*First*, Defendant Trump says that the Supreme Court's resolution of the question before it in *U.S. v. Trump* is "likely to be highly relevant" to the scope of civil presidential immunity at issue here by "set[ting] forth at least some material factors for assessing presidential immunity." Dkt. 90-1, at 8.  Trump's argument rests on a misunderstanding of the difference between the well-established doctrine governing civil presidential immunity (at issue here) and the possibility that he may be afforded some degree of immunity from criminal prosecution (at issue in *U.S. v. Trump*). He also misreads the question presented in *U.S. v. Trump* (a reading that notably conflicts with his own positions in that very case).

The law governing presidential immunity from civil damages claims was established in 1982.  *See Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982).  The D.C. Circuit decided that the acts alleged in Plaintiffs' complaints were not within the "outer perimeter" of his official responsibilities under that clearly established law.  *Blassingame*, 87 F.4th 1.  Defendant Trump chose not to seek *en banc* review of that decision, and he declined to seek a writ of certiorari before the Supreme Court.  In other words, due in no small part to Trump's own choices in this litigation, the application of presidential civil immunity to Plaintiffs' specific cases is already set in stone.

Defendant Trump says the Supreme Court is likely to take up and modify the official-acts standard for civil presidential immunity set forth in *Nixon* and applied in *Blassingame*.  But the Supreme Court has already made clear it will do no such thing.  The Supreme Court granted review of only a "limited" *legal* question: "[w]hether and if so to what extent does a former President enjoy presidential immunity from criminal prosecution for conduct alleged to involve official acts during his tenure in office."  *Trump v. United States*, 2024 WL 833184, at *1.[2]  On its face, that

---

[2] Defendant Trump acknowledges the Court's review is limited to this "sole" Question Presented. Dkt. 90-1, at 7.  Even questions that are "*related . . .* and perhaps *complementary*" are not "fairly

question deals only with whether and to what extent presidential immunity applies to former presidents facing *criminal* prosecution for official acts taken during their time in office. The question has nothing to do with the scope of *civil* presidential immunity, which has already been settled. And it has nothing to do with the question before this Court, which is narrowly focused on the factual character of Trump's conduct and whether it constituted "official acts" within the definition applied in *Blassingame*. Even Trump admits that "the application of immunity to the alleged facts of [his criminal] case . . . lies outside the Question Presented." Br. of Pet'r President Donald J. Trump, *Trump v. United States*, 2024 WL 1234260, at *44.

Nor is Defendant Trump entitled to an indefinite stay of this proceeding based on speculation that the Supreme Court *might* find former presidents entitled to criminal immunity, *might* adopt the official acts standard that governs civil immunity to apply to criminal immunity, *might* include in its opinion some dicta that *might* be persuasive in this case, and then *might* remand to the district court for further fact finding on Trump's official acts. It is undisputed that no court has ever held that a former president is entitled to criminal immunity for acts committed while in office, let alone that the standard for that immunity would be the same as for civil immunity. *See U.S. v. Trump*, 91 F.4th 1173, 1188 (D.C. Cir. 2024) ("The question of whether a former President enjoys absolute immunity from federal criminal liability is one of first impression."). Trump's argument, then, holds no weight absent an intervening change in the law establishing a new relationship between his criminal case and these civil proceedings. Virtually any civil defendant

---

included therein" within the meaning of Supreme Court Rule 14.1(a), and there is a "heavy presumption" against considering them. *Yee v. City of Escondido*, 503 U.S. 519, 536–37 (1992). Here, the civil immunity issue centers on whether Trump's action were within the outer perimeter of his official responsibilities, and is thus wholly unrelated to the criminal immunity question currently before the Court. This Court should not grant a stay based on speculation that the Supreme Court will contradict its own practices and rules and consider matters outside the ambit of the limited Question Presented.

could speculate that the Supreme Court might say something pertinent to the defendant's case in a forthcoming opinion. If all such defendants received stays, the business of the federal courts would grind to a halt. *See Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 142 (D.D.C. 2017) (denying a stay where "there is considerable uncertainty regarding whether or not the [appellate court] will actually reach the legal issue that is common to these cases."); *United States v. Spencer*, 2024 WL 578953 (D.D.C. Feb. 13, 2024) (denying a stay where the D.C. Circuit had already considered the claim at issue and there was no evidence that the Supreme Court's resolution of another case would resolve the instant matter). Finally, even accepting Trump's hypothetical for the sake of argument, he faces no prejudice from moving ahead with a limited immunity-related inquiry in the near term. In that scenario, Trump would bear the burden of establishing immunity in both *U.S. v. Trump* and these proceedings, presumably based on the same facts. Trump has not explained how progress in the latter could cause prejudice in the former.

*Second*, Defendant Trump argues that even after the Supreme Court resolves the petition pending before it in *U.S. v. Trump*, any proceedings relating to his entitlement to civil presidential immunity should remain stayed indefinitely, until the criminal case and all potential appeals are fully and finally resolved. But Trump has not met his burden of showing any relationship between the resolution of the charges against him in that criminal case and the limited inquiry into civil immunity at issue here. For example, Trump claims that "proceeding in this matter now will expose the defense's theory to the prosecution in advance of trial." Dkt. 90-1, at 9 (quotation marks omitted). But the proceedings that Trump seeks to stay relate solely to understanding whether his conduct in this case fell within the scope of his official responsibilities as president under the test established in *Nixon* and *Blassingame*. This inquiry has no relation to the criminal charges Trump faces in *U.S. v. Trump*. The indictment there asserts four charges against Trump:

(1) conspiracy to defraud the United States under 18 U.S.C. § 371; (2) conspiracy to obstruct an official proceeding under 18 U.S.C. § 1512(k); (3) obstruction of and attempt to obstruct an official proceeding under 18 U.S.C. §§ 1512(c)(2), 2; and (4) conspiracy against rights under 18 U.S.C. § 241.  Indictment, *United States v. Trump*, 2023 WL 4883396, at *1 (D.D.C. Aug. 1, 2023).  None of these charges involve elements that inquire into whether the defendant was acting in any official capacity when he violated the law.  *See* 18 U.S.C. § 371 ("two or more persons conspir[ing] to commit any offense against" or "to defraud" the United States); § 1512(k) ("whoever conspires"); § 1512(c)(2) ("whoever corruptly" "obstructs, influences, or impedes any official proceeding, or attempts to do so"); § 241 ("two or more persons conspir[ing] to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States").  In other words, the limited immunity inquiry at issue here is irrelevant to the criminal charges in *U.S. v. Trump*.

Defendant Trump does not specify what "similar issues" or "overlap in factual and legal allegations" exist between the civil immunity questions at issue here and the criminal charges pending against him elsewhere.[3]  For that reason, his motion should be denied.

---

[3] Defendant Trump's reliance on *United States v. Kordel*, 397 U.S. 1 (1970) is misplaced, as that case concerned the potential for unfairness stemming from government actors attempting to obtain evidence for criminal prosecution through civil discovery.  *Id.* at 11–12 (discussing cases "where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution"); *see also, e.g.*, *U.S. ex rel. Westrick v. Second Chance*, 2007 WL 1020808, at *4 (D.D.C. Mar. 31, 2007) (discussing "civil action[s] initiated by the government" that have "no distinct statutory or enforcement aim and appear[] to be purely opportunistic or manipulative").  Where, as here, the civil claims have been brought by private parties and have no indicia of duplicitousness, those concerns do not apply.

## II.     An Indefinite Stay Would Frustrate Judicial Economy.

The question of judicial economy also weighs against Defendant Trump's motion.  This Court has an interest in "promot[ing] efficient use of the court's resources."  *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. UPMC McKeesport*, 2022 WL 3644808, at *3 (D.D.C. Aug. 24, 2022) (quoting *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019)).  Trump's proposed indefinite stay would directly harm the Court's interest in judicial economy, causing Plaintiffs' cases against Trump to languish on the Court's docket interminably.

Defendant Trump claims that the Court will be burdened with a "constant stream of privilege issues" should the stay motion be denied.  Dkt. 90-1, at 5 (citing *Walsh Sec., Inc. v. Cristo Prop. Mgmt*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998)).  As described in more detail below, *see infra* Section III.A, this is speculative and does not justify the "extraordinary remedy" of a blanket stay of discovery.  For example, having been handed 97 proposed factual stipulations from Plaintiffs for the immunity inquiry, *see* Dkt. 87-1, Trump has not explained how a single one of them would create privilege issues.  *See infra* Section III.A.  To the extent privilege concerns would arise, Plaintiffs would work with Trump in good faith to resolve those concerns without the need for judicial intervention.

The argument that immunity discovery in this case would be streamlined by waiting until the final resolution of his criminal case is likewise baseless.  The single issue at hand in the pending immunity inquiry is whether Defendant Trump's conduct falls within the scope of his official responsibilities.  That issue is not present in *U.S. v. Trump*.  *See supra* Section I.  Thus, there is no reason to expect the criminal case will aid resolution of Trump's invocation of civil presidential immunity.  And Trump's suggestion that "discovery in the criminal case would likely reduce the need for a large amount of discovery in this case," is doubly problematic.  Dkt. 90-1, at 7.  At this

point, Trump has not established that "discovery bearing on the immunity question itself" is warranted at all, *Blassingame*, 87 F.4th at 29, much less that the amount of discovery on that question is impacted by a criminal case that is not concerned with whether he acted within the scope of his official responsibilities.[4]

The existence of an alternative to a blanket, indefinite stay also weighs heavily against granting Defendant Trump's motion. *See McSurely v. McClellan*, 426 F.2d 664, 672 (D.C. Cir. 1970) (holding an indefinite stay of discovery "should not be entered unless no alternative is available"). Here, a viable alternative to a stay exists: the course this Court charted when it instructed the parties to "meet and confer and go through the complaint and identify what facts can be stipulated to, what facts are in dispute, and if there are disputed facts, what discovery you think you need to establish the facts that you wish to establish." Declaration of Marc P. Epstein ("Epstein Decl."), Ex. 1 at 38:19–39:19. Trump should make a good-faith effort to comply with that directive and to resolve any disputes without judicial intervention. Judicial economy is best served by this approach.

---

[4] Defendant Trump's cases do not suggest an indefinite stay would serve judicial economy. In *Walsh Sec., Inc. v. Cristo Property Mgmt.*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998), the court entered a five-month stay after finding that interrogatory and deposition discovery into the merits of the civil case "would likely . . . force[]" defendants "to assert Fifth Amendment privileges." The stay in *Aluminum Bahrain B.S.C. v. Dahdaleh*, 2012 WL 5305167, at *2 (W.D. Pa. Oct. 25, 2012) was, as Trump acknowledges, "temporary" and time-limited, unlike the indefinite stay at issue here. In *Doe v. Sipper*, 869 F. Supp. 2d 113, 117 (D.D.C. 2012), the court granted a 90-day stay, after finding that civil proceedings could result in "unnecessary" duplicative litigation. And in *Estate of Gaither ex rel. Gaither v. District of Columbia*, 2005 WL 3272130, at *6 (D.D.C. Dec. 5, 2005) the court approved a three-month stay, after plaintiff had previously consented to a years-long stay, where civil litigation "might well prove wholly duplicative and unnecessary. . . ." Here, by contrast, Trump seeks an indefinite stay without having met his burden of showing that a limited civil immunity inquiry that does not reach the merits of the case would be duplicative of the charges in his criminal case or otherwise implicate the Fifth Amendment. *See infra* Section III.A.

### III.    The Balance of Hardships Weighs Against an Indefinite Stay.

Defendant Trump fails to satisfy his burden of making a clear showing of hardship or inequality if the Court's inquiry into civil immunity proceeds.  Plaintiffs, by contrast, will suffer severe prejudice if these cases are stayed indefinitely.

### A.    Limited immunity discovery poses no risk of hardship for Defendant Trump.

To justify a stay, Defendant Trump must "make a clear showing of hardship or inequality if required to go forward with the civil case while the criminal investigation is pending." *Horn v. District of Columbia*, 210 F.R.D. 13, 15 (D.D.C. 2002) (quoting *St. Paul Fire and Marine Ins. Co. v. United States*, 24 Cl. Ct. 513, 515 (1991)).  Trump's motion outlines two hypothetical sources of prejudice—the violation of his Fifth Amendment privilege against self-incrimination, and the risk of "expos[ing] the defense's theory to the prosecution in advance of trial."  Dkt. 90-1, at 7.  Neither justifies a blanket stay.

### 1.    Defendant Trump has not demonstrated any specific Fifth Amendment prejudice.

The mere fact that civil and criminal cases overlap in subject matter does not mean Defendant Trump can invoke the Fifth Amendment—rather, D.C. Circuit case law "clearly contemplate[s] the prospect of simultaneous parallel civil and criminal proceedings going forward in harmony with one another, and with the Constitution as well." *Off. of Thrift Supervision, Dep't of Treasury v. Zannis*, 1990 WL 421186, at *4 (D.D.C. Aug. 14, 1990) (citing *Dresser Indus.*, 628 F.2d 1368).

"The first question when a witness invokes the Fifth Amendment privilege against self-incrimination is whether that privilege is applicable to the case at hand." *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 58, 65 (D.D.C. 2000) (citing *Mitchell v. United States*, 526 U.S. 314, 326 (1999)).  In general, Defendant Trump bears the burden of establishing that the privilege applies.

*In re Corrugated Container Antitrust Litig.*, 662 F.2d 875, 882 (D.C. Cir. 1981) ("The witness is not exonerated merely because he declares that he would incriminate himself . . . ."); *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) ("It is settled law that the party claiming the privilege bears the burden of proving that the communications are protected"); *In re Interbanque, Inc.*, 1996 WL 762330, at *5 (Bankr. D.D.C. Mar. 28, 1996) (accord).  Moreover, because "the danger of self-incrimination must be real, not remote or speculative," "there is a presumption against blanket assertions of Fifth Amendment privilege." *Warren*, 265 F. Supp. 3d at 21–22 (quotation marks, brackets and citations omitted).  Accordingly, "the law is clear that the privilege against self-incrimination must be asserted *on a question-by-question basis*." *Id.* (emphasis added); *see also Resol. Tr. Corp. v. Lopez*, 794 F. Supp. 1, 2 (D.D.C. 1992) (enforcing subpoenas where the respondent failed to make a "detailed showing of how the privilege applies to the requested documents"); *N. River Ins. Co., Inc. v. Stefanou*, 831 F.2d 484, 486 (4th Cir. 1987) ("Nor does a proper invocation of the privilege mean that a defendant is excused from the requirement to file a responsive pleading; he is obliged to answer those allegations that he can and to make a specific claim of the privilege as to the rest.").

Here, Defendant Trump has not shown a risk of self-incrimination protected by the Fifth Amendment for any particular document, stipulation, or other discovery request, despite the fact that he has already received 97 proposed stipulations from Plaintiffs.  His motion to stay includes only a conclusory assertion that "[h]e is clearly entitled to invoke his rights." Dkt. 90-1, at 6.  This *ipse dixit* is insufficient to support his claim that a limited inquiry into his entitlement to immunity

would "force [him] . . . to choose between Fifth Amendment privilege and the civil action." *See* Dkt. 90-1 at 6 (quoting *Doe v. Sipper*, 869 F. Supp. 2d 113, 117 (D.D.C. 2012)).[5]

Even if he attempted to make such a showing, however, he would fail. For the privilege to apply, objected-to discovery requests must be both "incriminating" and "testimonial." *Resol. Tr. Corp.*, 794 F. Supp. at 2. Discovery that stems from a limited inquiry into whether Defendant Trump's actions fall within the scope of his official responsibilities would be neither.

First, the nature of the immunity inquiry at issue here means that Defendant Trump would not be subjected to a blanket risk of self-incrimination, such that the entire proceeding should be stayed. For example, Plaintiffs proposed nine stipulations that relate only to statements that Trump made in public. Dkt. 87, Ex. 1 ¶¶ 37–45. Trump has not explained how these stipulations would subject him to self-incrimination. And, as the Court noted, Trump has not "spelled out how, for example" facts about "who was in the room during a particular phone call . . . [are] going to impair the defense in the criminal case." Epstein Decl., Ex. 1 at 41:6–11; *see, e.g.*, ¶ 53. In fact, Trump has not established that *any* questions, stipulations, or documents relating to the scope of immunity could possibly harm him in his criminal case.

At the very least, the fact that there is room for the immunity inquiry to proceed without implicating Defendant Trump's Fifth Amendment rights illustrates that a blanket stay would be an

---

[5] Defendant Trump cannot argue that requiring him to make such a specific showing in this case is itself an invasion of the privilege. It is settled law that a "witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). And courts frequently inquire into the propriety of invoking the privilege through protective mechanisms like *in camera* review of documents. *Resol. Tr. Corp.*, 794 F. Supp. at 4; *see also Fed. Sav. & Loan Ins. Corp. v. Hardee*, 686 F. Supp. 885, 886 (N.D. Fla. 1988) (ruling that "the respondent's blanket assertion of Fifth Amendment privilege was improper, and direct[ing] her to supply all subpoenaed documents to the Court for an in camera inspection").

unnecessary and overbroad remedy.  If Trump can identify particular questions or discovery requests that he finds objectionable, those concerns can and should be dealt with in the regular course:  through a good-faith meet and confer between the parties, with only intractable disputes (should they exist) rising to this Court's attention.[6]

Even if potentially incriminating discovery became necessary to the immunity inquiry, the Court could tailor that discovery to avoid testimonial discovery within the scope of the Fifth Amendment.  For example, Plaintiffs are not seeking to depose Defendant Trump or have him respond to interrogatories under oath in a manner that would bind him beyond this Court's immunity determination.  Instead, potential immunity discovery would be non-testimonial.  *Fisher v. United States*, 425 U.S. 391, 410 (1976); *see also United States v. Hubbell*, 167 F.3d 552, 585 (D.C. Cir. 1999), *aff'd*, 530 U.S. 27 (2000).  The privilege only attaches in such instances where the act of "admitting the existence, possession, or authenticity of documents would itself be an incriminating fact," such as where "the purpose of the investigation is [] to establish ownership or existence of the papers."  *Resol. Tr. Corp.* 794 F. Supp. at 2.  That is not true here, where Trump has not demonstrated how his ownership, possession, or existence of documents or other materials could cause his self-incrimination.

Moreover, much of the documentary record relevant to immunity is expressly exempt from the Fifth Amendment privilege.  Defendant Trump can only claim the privilege where he "can reasonably claim . . . an expectation of privacy or confidentiality."  *Couch v. United States*, 409

---

[6] Defendant Trump has identified only a single concern with Plaintiffs' 97 proposed stipulations of fact:  that some of the stipulations refer to Defendant "Trump's personal Twitter account," and the Second Circuit has classified tweets issued by that account as "official records."  Dkt. 87, at 6. But that issue could have been easily resolved had Trump simply raised it with Plaintiffs during a meet and confer.  Plaintiffs merely seek to have Trump stipulate that the Twitter account was his own, private account.  Plaintiffs do not seek a stipulation as to the legal question of whether tweets issued from the account were official actions.  *See* Epstein Decl., Ex. 2 at 14:21–15:8.

U.S. 322, 336 (1973).  Here, there is an "extensive public record that already has been compiled about the President's actions before and on January 6th."  *Smith v. Trump*, No. 1:21-cv-02265, at 2 (Jan. 26, 2023), Dkt. 180.

Further, if Defendant Trump had met his burden of showing the Fifth Amendment could be implicated in an analysis of his entitlement to presidential immunity, the mere fact that he might face an adverse inference from invoking that privilege does not justify a stay.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."); *Mitchell v. United States*, 526 U.S. 314, 328 (1999) ("The rule allowing invocation of the privilege, though at the risk of suffering an adverse inference or even a default, accommodates the right not to be a witness against oneself while still permitting civil litigation to proceed.").   Such an inference is particularly unproblematic where, as here, "independent evidence exists of the fact to which the party refuses to answer."  *S.E.C. v. Whittemore*, 659 F.3d 1, 12 (D.C. Cir. 2011).  "In similar cases, the courts have refused to stay civil proceedings pending the outcome of related criminal proceedings, finding unpersuasive defendants' arguments that the exercise of their Fifth Amendment rights would somehow prejudice them."  *Barry Farm Resident Council, Inc. v. U.S. Dep't of Navy*, 1997 WL 118412, at *3 (D.D.C. Feb. 18, 1997); *see also United States v. Lot 5*, 23 F.3d 359, 364 (11th Cir. 1994), *cert. denied*, 513 U.S. 1076 (1995) (holding that a "blanket assertion of the privilege [against self-incrimination] is an inadequate basis for the issuance of a stay").

In any event, this Court is free to disallow any adverse inferences against Defendant Trump with respect to whether he has borne his burden of establishing his entitlement to presidential immunity.  *See, e.g.*, *Huthnance v. District of Columbia*, 722 F.3d 371, 379 (D.C. Cir. 2013)

(explaining that allowing an adverse inference "entails a fair amount of discretion," and that the trial court must play a "gatekeeping function" to ensure that such inferences are only drawn when appropriate).

In arguing that the balance of interests weighs in favor of a stay, Defendant Trump cites just two cases—*Sipper* and *Kurd v. Republic of Turkey*, 2022 WL 17961245 (D.D.C. Dec. 27, 2022)—where such a stay was granted. *Sipper* involved vastly different considerations. On the one hand, the defendant was faced with a real, not speculative, Fifth Amendment dilemma— namely, being called "to answer deposition questions" in a civil proceeding based on rape allegations that were concurrently being criminally prosecuted. 869 F. Supp. 2d at 117–18. On the other hand, the burden on plaintiffs was minimal because the requested stay was just 90 days, as opposed to the indefinite one Trump requests here. *Id.* at 118 ("A stay with a limited duration, as presented here, is more likely to be granted than an indefinite one."). And in *Kurd*, the defendants sought to stay full merits discovery, not limited discovery concerning pre-trial immunity as Trump is here. The burden on plaintiffs in *Kurd* was also small, since the court approved a stay of "just over one month." *Id.* at *2. In granting that limited stay, the court took care to point out that the defendant was *not* seeking a stay "pending the outcome of [a] criminal proceeding[]," *id.* at *3, as Trump seeks here. In fact, the court in *Kurd* noted it would "be very unlikely to grant an indefinite stay" like the one at issue here, and that it would "be wary of granting additional stays that, though finite, will together amount to a near-indefinite one" because "[p]laintiffs deserve resolution of their claims and an extended delay weighs against both [p]laintiffs' interest and the public interest . . . ." *Id.* at *4.

Given the weakness of Defendant Trump's Fifth Amendment arguments and the many ways in which the Court can otherwise protect his rights, an indefinite stay is unnecessary and overbroad.

### 2. Defendant Trump's other claims of prejudice are flawed.

*First*, Defendant Trump is wrong that there is a "substantial risk that proceeding in this matter now will 'expose the defense's theory to the prosecution in advance of trial.'" Dkt. 90-1, at 7 (quoting *Kurd*, 2022 WL 17961245, at *1). As discussed above, there is no relationship between the merits of the criminal charges brought against Trump and the very limited inquiry he now faces: whether the conduct at issue here fell within the official responsibilities of the presidency. *See supra* Section I.

*Second*, given the extensive amount of publicly available evidence of the events at issue, there is little risk that any discovery plaintiffs might need to contest Defendant Trump's theory of immunity would be testimonial or would "expose the basis of the defense to the prosecution in advance of criminal trial." *Dresser Indus.*, 628 F.2d at 1376.

*Third*, were there any risk of prejudice, this Court has numerous tools to mitigate it. The Court could address any specific concerns of prejudice that arise during the course of the immunity inquiry on a request-by-request basis. *See, e.g.*, *Gordon v. Fed. Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1970) (refusing to stay a civil case based on a parallel criminal case); *McSurely*, 426 F.2d at 672 (reversing stay where there was "no indication that the District Court considered the possibility of more narrowly framed protective orders— as, for example . . . to limit discovery concerning certain matters to written interrogatories to be held under seal pending completion of the criminal trial"). To protect Defendant Trump in that inquiry, the Court could route any disputed materials through *in camera* review. *See, e.g.*, *In re Pittman*, 2000 WL 1580968, at *1 (D.C. Cir. Sept. 1, 2000) (collecting examples). "The fact that the civil case is not stayed does not mean that

discovery must proceed in the same way as ordinary civil litigation," and a court may "properly provide[] a protective order to prevent discovery, such as interrogatories, which 'may well provide proof to the Government from which it may establish the criminal charges. . . .'" *Gordon*, 427 F.2d at 580 (quoting *Paul Harrigan & Sons, Inc. v. Enter. Animal Oil Co.*, 14 F.R.D. 333 (E.D. Pa. 1953)).

### 3.    The public interest and judicial economy weigh against a stay.

Defendant Trump blends arguments about judicial economy and the public interest into his unsubstantiated claims of personal hardship, but neither bears any weight.  Judicial economy does not counsel in favor of a stay, *see supra* Sections I–II, and the public interest, too, weighs strongly against a stay.

Even in the face of immunity defenses, the public is well served by the prompt administration of justice, *see Hargroves v. City of New York*, 2010 WL 3619542, at *1, *3 (E.D.N.Y. Sept. 10, 2010) (denying request for stay despite defendant's invocation of qualified immunity); *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 185 F. Supp. 3d 233, 250 (D.D.C. 2016) (denying a stay in a case concerning foreign sovereign immunity and explaining that the "public interest counsel[s] in favor of no further delays").  The public interest in efficient adjudication is even more acute where, as here, government officials are alleged to have acted in their own self-interest.  In such circumstances, courts consistently recognize that undue delay may disincentivize plaintiffs "to pursue justice against the few but pernicious government entities or officials responsible for civil rights violations, undermining accountability for even the worst wrongdoing by rampantly corrupt or cruel public officials." *Cruz v. City of Deming*, 2023 WL 5319254, at *11 (D.N.M. Aug. 18, 2023); *see also Morrow v. City of Tenaha*, 2010 WL 3927969, at *4 (E.D. Tex. Oct. 5, 2010) (noting that the public has a strong interest in "violations of civil rights by public officials").

Defendant Trump's argument, in the end, boils down to a claim that civil proceedings against a former president necessarily threaten "the appearance of justice."  Dkt. 90-1, at 9.  But, as this Court previously told Trump, "Presidents are not kings, and [Trump] is not President." *Trump v. Thompson*, 573 F. Supp. 3d 1, 16 (D.D.C.), *aff'd*, 20 F.4th 10 (D.C. Cir. 2021).  If anything, the appearance of justice would most be damaged by allowing him to delay indefinitely to escape accountability for his wrongdoing on January 6.

**B.     Granting a stay would pose serious hardship to Plaintiffs.**

Even if Defendant Trump could demonstrate some hardship absent a stay, it would be dwarfed by the prejudice Plaintiffs will suffer if his extraordinary request is granted.  "Courts must consider the potential prejudice to the non-moving parties if a stay is granted.  Courts consider the length of the proposed delay, as well as potential for ongoing harm to the non-moving parties." *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 527 (E.D. Va. 2018) (citation omitted); *Clinton v. Jones*, 520 U.S. 681, 707–08 (1997) (holding that the district court's "lengthy and categorical stay" was an abuse of discretion, insofar as it took "no account whatever of the respondent's interest in bringing the case to trial").  Here, Trump seeks an indefinite delay pending the resolution of a criminal case that is not currently scheduled for trial.  Such a stay would plainly prejudice Plaintiffs' "interest in the prompt resolution of [their] claims."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012); *see also* Fed. R. Civ. P. 1 (instructing courts to construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding").  And this prejudice is only multiplied by the fact that Plaintiffs have already waited *years* to see their cases against Trump progress.

Defendant Trump's indefinite stay would also prejudice Plaintiffs by limiting the availability and reliability of evidence.  Courts have made clear that "prejudice [is] inherent in any

extended stay [because] memories will dim, witnesses [will] become inaccessible, and evidence [will] be lost." *Campaign Legal Ctr. v. 45Committee*, 2022 WL 3088595, at *1 (D.D.C. July 18, 2022) (Mehta, J.) (quoting *United States v. Marion*, 404 U.S. 307, 326 (1971)); *Clinton*, 520 U.S. at 707–08 (noting that delaying proceedings increases "the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party").

This ongoing harm to Plaintiffs is compounded by the steps Defendant Trump may take to actively conceal and destroy non-public evidence relevant to the claims in this case. Trump's propensity for purging evidence against him has been widely covered in the media.[7] For any evidence relevant to Trump's immunity claim that may be in his possession, each day of the requested stay would present another opportunity for spoliation.

Courts also recognize prejudice to Plaintiffs where a "a stay would likely increase the risk to plaintiff that assets that might be available to satisfy a judgment will be moved or depleted in the interim." *State Farm Mut. Auto. Ins. Co. v. Mittal*, 2018 WL 3127155, at *3 (E.D.N.Y. June 25, 2018). Here, there can be no doubt that a delay, especially an indefinite one, decreases the likelihood that Plaintiffs will be able to recover against Defendant Trump for any eventual judgment against him. Trump is currently subject to judgments totaling more than $500 million.[8]

---

[7] *See, e.g.*, Zeke Miller, Alanna Durkin Richer, & Eric Tucker, *Trump accused of asking staffer to delete camera footage in Florida classified documents case*, ASSOC. PRESS (July 27, 2023), *available at* https://apnews.com/article/trump-classified-documents-justice-department-special-counsel-2025feb3f0f4e3820d14387c67ce4316; Sarah D. Wire, *Trump is accused of trying to delete surveillance video in classified documents case*, L.A. TIMES (July 27, 2023), *available at* https://www.latimes.com/politics/story/2023-07-27/donald-trump-faces-additional-charges-in-classified-documents-case-in-florida.

[8] *See* Rachel Treisman, *Trump faces some half a billion dollars in legal penalties. How will he pay them?*, NPR (Feb. 20, 2024), *available at* https://www.npr.org/2024/02/20/1232688266/trump-afford-legal-penalties-civil-cases.

As those judgments (and potentially others) come due, Defendant Trump's ability to satisfy any judgment entered against him here will necessarily decrease, severely prejudicing Plaintiffs.

## IV.    Defendant Trump Must, but Cannot, Identify a Pressing Need for an Indefinite Stay.

The fourth and final factor, the duration of the stay Defendant Trump seeks, weighs decisively against granting it.  Trump concedes that he is asking the Court for an indefinite stay, Dkt. 90-1, at 10, because he can provide "no assurance as to when" *U.S. v. Trump* "will conclude." *Campaign Legal Ctr.*, 2022 WL 3088595, at *1 (finding a stay was indefinite when the record failed to show how long it would take for a different court to resolve related action and the defendant had not provided assurance that he would decline appellate review of that resolution); *see also Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (holding stay order was "indefinite" when the stay's end date was pegged to a foreign ruling that could be rendered at an unknown time).  Trump also concedes that because he is requesting an indefinite stay, he must demonstrate a "pressing need."  Dkt. 90-1, at 10.  As this Court has already recognized, the "pressing need" standard is an elevated one, requiring Trump to meet a much higher burden than he would if he merely requested a time-limited stay of a few months.  *See Campaign Legal Ctr.*, 2022 WL 3088595, at *1.

Defendant Trump has not met that burden for the simple reason that he has not explained with any specificity how a limited inquiry into his entitlement to presidential immunity would negatively impact him in *U.S. v. Trump*.  *See supra* Section III.A.  Instead, he argues that "the seriousness of the charges, as well as the extraordinary impact on our Nation as a whole," of the criminal case establishes a pressing need to stay this civil proceeding.  Dkt. 90-1, at 10.  But that argument is beside the point—the gravity of the criminal charges against Trump does not change the calculation because the civil immunity inquiry will not affect them.  *See supra* Section I; *see*

*also Carroll v. Trump*, 2023 WL 5312894, at *7 (S.D.N.Y. Aug. 18, 2023) (acknowledging the public interest in "ensuring that even presidents will be held accountable for [their] actions."). Nor do any of his judicial economy or streamlining arguments help him. Not only are they incorrect, *see supra* Section II, but "the mere possibility of time and resource savings does not rise to the level of 'pressing need.'" *Campaign Legal Ctr.*, 2022 WL 3088595, at *1.

Plaintiffs, on the other hand, would suffer prejudice if Defendant Trump's indefinite stay were granted. *See supra* Section III.B. As this Court has held elsewhere, "[a]dding an indefinite amount of time on top of" an already years-old litigation is "highly prejudicial" to plaintiffs. *Campaign Legal Ctr.*, 2022 WL 3088595, at *1.[9] This is especially true when "the facts underlying [the] litigation are already more than two years old." *McSurley*, 426 F.2d at 672.

The cases Defendant Trump relies on do not support his request for an indefinite stay. Trump primarily relies on one case, *Kurd*, 2022 WL 17961245, at *3–4. But that case is easily distinguishable. *See supra* Section III.A. Nor does *McSurely* support Trump's request. There, the D.C. Circuit *reversed* the grant of an indefinite stay of a civil proceeding where the civil case was already "more than two years old," "resolution of any appeals if the [defendants were] convicted, may require considerable time," and the district court had not "considered the

---

[9] While this Court did previously stay proceedings against two defendants in *Smith v. Trump*, Stewart Rhodes and Ethan Nordean, the circumstances of those stays are easily distinguishable from the one Defendant Trump seeks here. The cases against Rhodes and Nordean had not been previously stayed for years, as Plaintiffs' case against Trump has been. Discovery into Rhodes and Nordean would have related to the merits of the *Smith* plaintiffs' case against them, unlike Trump, where the current proceeding is focused only on a limited inquiry into whether he has immunity. And critically, the stays in favor of Rhodes and Nordean were of limited duration: the stay as to Rhodes was entered at the start of his trial, and was lifted when his trial concluded, *Smith v. Trump*, No. 21-cv-2265, Dkt. 165, and the stay as to Nordean was entered after his trial had already commenced and was lifted when it concluded, *id.*, Dkt. 195. Trump seeks an indefinite stay.

possibility of more narrowly framed protective orders."   426 F.2d at 672.   These same considerations counsel in favor of denying the pending stay motion.

## V.    The Court Can Deny a Stay and Still Protect Defendant Trump's Fifth Amendment Rights.

The Court can both protect Defendant Trump's rights and move this case forward consistent with the D.C. Circuit's instructions, while also denying his motion:

1.    Defendant Trump should be required to answer the complaints to the extent they bear on his immunity defense, the same as any defendant who has lost a Rule 12 motion to dismiss. *See* Fed. R. Civ. P. 12(a)(4)(A).[10]

2.    Defendant Trump should also be required to describe in detail the basis for his immunity defense, with identities of witnesses and documents now known to his counsel, and whether (and why) limited discovery may be required.

3.    If Defendant Trump does set forth a basis for limited immunity discovery, the Court can establish basic rules to protect his Fifth Amendment rights, as is often done in cases such as this where a defendant faces both criminal and civil liability.  *See supra* Section III(A)(1).

These simple steps would fairly balance the needs and rights of both sides in these cases, consistent with the mandate of Fed. R. Civ. P. 1 that the rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  An indefinite stay, on the other hand, would dishonor the rules and unfairly favor Defendant Trump.  If Trump cannot comply with the simple steps outlined here, Plaintiffs request that the parties proceed to merits discovery without limitation.

---

[10] The Fifth Amendment does not mean that Defendant Trump "is excused from the requirement to file a responsive pleading."  *N. River Ins. Co., Inc. v. Stefanou*, 831 F.2d 484, 486 (4th Cir. 1987).  Rather, "he is obliged to answer those allegations that he can and to make a specific claim of the privilege as to the rest."  *Id.*

## CONCLUSION

Plaintiffs respectfully ask the Court to deny Defendant Trump's motion to stay and direct Trump to describe in detail the basis for his immunity defense and how he intends to prove it, so that any limited discovery appropriate to such a defense can proceed forthwith.

Respectfully submitted,

By:  /s/ Marc P. Epstein
     Marc P. Epstein


Date:  March 26, 2024

Jon Greenbaum, D.C. Bar No. 489887
Edward G. Caspar, D.C. Bar No. 1644168
Marc P. Epstein, D.C. Bar No. 90003967
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W. Suite 900
Washington, D.C. 20005
Telephone: 202-662-8390
jgreenbaum@lawyerscommittee.org
ecaspar@lawyerscommittee.org
mepstein@lawyerscommittee.org

Faith E. Gay, pro hac vice
Joshua S. Margolin, pro hac vice
Claire O'Brien, pro hac vice
Elizabeth H. Snow, pro hac vice
Esther D. Ness, pro hac vice
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
fgay@selendygay.com
jmargolin@selendygay.com
cobrien@selendygay.com
esnow@selendygay.com
eness@selendygay.com

William J. Blechman, pro hac vice

Patrick A. Malone, Bar No. 397142
Daniel Scialpi, Bar No. 997556
(application for admission forthcoming)
PATRICK MALONE & ASSOCIATES,
P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

Cameron Kistler, Bar No. 1008922
Kristy Parker, Bar No. 1542111
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Avenue N.W. #163
Washington, D.C. 20006
Telephone: 202-579-4582
cameron.kistler@protectdemocracy.org
kristy.parker@protectdemocracy.org

Genevieve C. Nadeau, Bar No. 979410
UNITED TO PROTECT DEMOCRACY
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: 202-579-4582
genevieve.nadeau@protectdemocracy.org

Elizabeth B. Honkonen, pro hac vice
KENNY NACHWALTER, P.A.
Four Seasons Tower – Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: 305-373-1000
wblechman@knpa.com
ehonkonen@knpa.com

*Attorneys for Plaintiffs Conrad Smith, et al.*

Joseph M. Sellers, Bar No. 318410
Brian Corman, Bar No. 1008635
Alison S. Deich, Bar No. 1572878
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Avenue N.W. Fifth Floor
Washington, D.C. 20005
Telephone: 202-408-4600
Facsimile: 202-408-4699
jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com

Janette McCarthy-Wallace, Bar No. OH066257
Anthony P. Ashton, Bar No. MD25220
Anna Kathryn Barnes Barry, D.C. Bar No.
1719493
NAACP
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Telephone: 410-580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Plaintiffs Barbara J. Lee, et al.*

Matthew Kaiser, D.C. Bar No. 486272
Sarah Fink, D.C. Bar No. 166663
KAISER PLLC
1099 Fourteenth Street N.W. 8th Floor
Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
sfink@kaiserlaw.com

*Attorneys for Plaintiffs James
Blassingame and Sidney Hemby*

Mark S. Zaid, Esq., D.C. Bar No. 440532
Bradley P. Moss, Esq., D.C. Bar No.
975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue N.W. Suite 700
Washington, D.C. 20036
Telephone: 202-498-0011
Facsimile: 202-330-5610
Mark@MarkZaid.com
Brad@MarkZaid.com

Matthew Kaiser, D.C. Bar No. 486272
Noah Brozinsky, D.C. Bar No. 1655789
Kaiser PLLC
1099 Fourteenth Street N.W. 8th Floor
Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiser.com
nbrozinsky@kaiser.com

Philip Andonian, D.C. Bar No. 490792
Joseph Caleb, D.C. Bar No. 495383
CalebAndonian PLLC
1100 H Street N.W. Suite 315
Washington, D.C. 20005
Telephone: 202-953-9850
phil@calebandonian.com
joe@calebandonian.com

*Attorneys for Plaintiff Sandra Garza*

Philip Andonian, D.C. Bar No. 490792
Joseph Caleb, D.C. Bar No. 495383
CALEBANDONIAN PLLC
1100 H Street N.W. Suite 315
Washington, D.C. 20005
Telephone: 202-953-9850
phil@calebandonian.com
joe@calebandonian.com

*Attorneys for Plaintiff Eric Swalwell*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 26, 2024, I served a true and correct copy of the foregoing filing on all parties of record by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice to all attorneys of record.

Dated: March 26, 2024

<u>/s/ Marc P. Epstein</u>
Marc P. Epstein