UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA J. LEE, et al., )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>DONALD J. TRUMP, et al., )<br>)<br>*Defendants.* )<br>) | Case No. 1:21-cv-00400 (APM) |

REPLY IN SUPPORT OF DEFENDANT
DONALD J. TRUMP'S MOTION FOR STAY

TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... 2

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.    The Criminal Proceedings Against President Trump are Plainly "Related" to the Allegations in this Case ................................................................................................ 2

        a. The Allegations in These Cases and the Criminal Matter are Essentially Co-Extensive ........................................................................................................................ 3

        b. Staying these Matters is Necessary to Protect President Trump's Fifth Amendment Rights ............................................................................................................ 5

    II.   Proceeding with this Case Now Would Burden the Court ................................. 6

    III.  The Balance of Interests Favors a Stay ......................................................... 7

        a.   President Trump will be Prejudiced by Proceeding with these Cases Now .. 7

        b.   Plaintiffs' Interests Will Not Be Unduly Burdened by a Stay ....................... 8

    IV.  Staying this Matter Until the Criminal Case is Resolved is Appropriate .. 10

CONCLUSION .......................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Clinton v. Jones*,
   520 U.S. 681 (1997) .................................................................................................. 2

*Grunewald v. United States*,
   353 U.S. 391 (1957) .................................................................................................. 5

*Hoffman v. United States*,
   341 U.S. 479 (1957) ............................................................................................... 3, 5

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ............................................................................................. 2, 10

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) .................................................................................................. 8

*Ohio v. Reiner*,
   532 U.S. 17, 19 (2001) ........................................................................................... 3, 5

*U.S. v. Philip Morris, Inc.*,
   314 F.3d 612 (D.C. Cir. 2003) ................................................................................... 8

## INTRODUCTION

As Defendant Donald J. Trump ("President Trump") observed in his Statement of Points and Authority in Support of Motion to Stay, basic fairness to criminal defendants and principles of judicial economy counsel that this Court should stay all proceedings concerning President Trump until the criminal case brought by the Special Counsel in the District of Columbia is resolved. Plaintiffs' Opposition does not and cannot refute this basic observation.

First, Plaintiffs claim that the Special Counsel's criminal case is "unrelated" to any immunity inquiry in this case. This claim is plainly incorrect. President Trump is currently arguing before the United States Supreme Court that the standard for criminal presidential immunity should be co-extensive with the standard for civil immunity. As this Court has noted, "the allegations in this case are essentially co-extensive with what the Special Counsel has alleged." Hr'g Tr. (Mar. 12, 2024) 18:21–22. If criminal immunity covers the allegations in the Special Counsel's case, then civil immunity can and does cover the allegations in this case. The claims in the Special Counsel's case are not only "related" to the allegations in this case, the resolution of President Trump's criminal immunity claims may well prove dispositive of this case.

Second, Plaintiffs' own briefing illustrates that their approach would burden the Court. To wit, they propose resolving concerns on a request-by-request basis. This would burden the Court with multifarious discovery disputes that could be minimized or avoided if this case were stayed until the criminal matter is complete.

1

Third, the balance of interests favors President Trump. Ensuring President Trump has a criminal process that is both fair and appears to all to be fair is critically important for our country. Against this interest, Plaintiffs offer baseless speculation about the future availability and reliability of evidence that disregards that much of the same evidence needed for these cases will likely be adduced through the criminal process.

Finally, an indefinite stay is appropriate in this case. The Supreme Court has advised, "especially in cases of extraordinary public moment, [plaintiffs] may be required to submit to a delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Clinton v. Jones*, 520 U.S. 681, 707 (1997) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 256 (1936)). This case—which concerns the first prosecution of a former president and the first prosecution of a major party nominee for President while campaigning for office—presents such an "extraordinary public movement."

The Court should grant President Trump's Motion for Stay.

## ARGUMENT

### I. The Criminal Proceedings Against President Trump are Plainly "Related" to the Allegations in this Case

Plaintiffs' claim that the immunity inquiry in this case is "unrelated" to the claims in *Trump v. United States* is clearly incorrect and disregards the risk that answering even seemingly innocuous questions at this stage may "furnish a link in the chain of evidence" used by the Special Counsel to wrongfully prosecute President

2

Trump. *See Hoffman v. United States*, 341 U.S. 479, 486 (1957); *see also Ohio v. Reiner*, 532 U.S. 17, 19 (2001).

### a. The Allegations in These Cases and the Criminal Matter are Essentially Co-Extensive

Plaintiffs entirely ignore that the allegations in *United States v. Trump* and many of the allegations in these consolidated cases overlap and arise from a common nucleus of operative facts. To wit, Plaintiffs never acknowledge—let alone refute—this Court's previous observation that the allegations in both proceedings are "essentially coextensive" nor Plaintiffs' own acknowledgment that this is true at least "[i]n some respects." *See* Hr'g Tr. (Mar. 12, 2024) 12:17–19 ("They overlap completely, at least the Special Counsel's case, I think, essentially is co-extensive in many respects."), 18:20–22 ("That's all contextual, which is fair, but, you know, the allegations here are essentially co-extensive with what the Special Counsel has alleged."), 18:23.

Overlap exists even on the "limited immunity inquiry here." *See* Opp'n at 6. President Trump's opening brief before the Supreme Court repeatedly asserts that criminal immunity is properly "coextensive with a President's civil immunity." Br. of Pet'r Donald J. Trump at 8, *Trump v. United States*, Case No.23-939 (S. Ct. Mar. 19, 2024) ("Petitioner's Brief"). *See also id.* at 41 ("The scope of criminal immunity should be congruent with the civil immunity recognized in *Fitzgerald* . . . ."). The Petitioner's Brief further argues that, based on this standard, "[t]he Court should dismiss the indictment under absolute criminal immunity for Presidential official acts." Petitioner's Brief at 44. In other words, President Trump's opening brief argues that

3

the conduct at issue in both proceedings falls within the scope of the "outer perimeter" of the President's official responsibilities and thus is immune from *both* civil and criminal liability or even adjudication. A ruling on this basis would not only be *relevant* to these proceedings—it would be dispositive of them.

Even if the Supreme Court does not adopt President Trump's position—and it should—any explanation it provides is likely to be highly relevant to the immunity questions in these cases. For example, if the Court draws a distinction between civil and criminal immunity—which it should not—any discussion of the contours of criminal immunity necessarily would have implications for civil immunity, and vice versa.

Rather than addressing these issues head on in an intellectually forthright manner, Plaintiffs seek to manufacture inconsistencies by taking a single line in President Trump's brief out of context. Specifically, Plaintiffs' quote the Petitioners' Brief stating "the application of immunity to the alleged facts of [President Trump's criminal] case . . . lies outside of the Question Presented." Pls' Opp'n at 8 (quoting Petitioner's Brief at 44). But Plaintiffs disregard that, at the beginning of the very paragraph Plaintiffs' quote, President Trump's brief in *Trump v. United States* states that "[t]he Court should dismiss the indictment under absolute criminal immunity for Presidential acts." Petitioner's Brief at 44. That necessarily presupposes that criminal immunity—which President Trump argues is co-extensive with civil immunity—reaches the conduct at issue in the criminal indictment—which substantially overlaps with the conduct at issue in this case. The Petitioner's Brief

4

raises the issue of the application of immunity of the alleged facts resting outside of the scope of the question presented "if the Court concludes that criminal immunity exists generally, but *requires further factfinding as to the specifics of this case.*" Petitioner's Brief at 44 (emphasis added). In other words, Plaintiffs' "gotcha" moment is no more than a plain mischaracterization of the argument in President Trump's merits brief in the Supreme Court. Moreover, the prospect that the Supreme Court might remand in *United States v. Trump* for further factfinding relevant to the application of immunity creates another compelling reason for these cases to be stayed.

*Trump v. United States* is plainly *relevant* to this case. Indeed, a decision adopting President Trump's position in that case would likely be dispositive of this matter. Judicial economy counsels in favor of staying this matter pending the resolution of the case currently before the United States Supreme Court.

### b. Staying these Matters is Necessary to Protect President Trump's Fifth Amendment Rights

"[O]ne of the Fifth Amendment's 'basic functions . . . is to protect *innocent* men . . . who otherwise might be ensnared by ambiguous circumstances.'" *Reiner*, 532 U.S. at 21 (quoting *Grunewald v. United States*, 353 U.S. 391, 421 (1957)). Consistent with this purpose, the Fifth Amendment is not limited to statements and admissions that are facially incriminating. It also applies where answers "would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v.*, 341 U.S. at 486.

5

Plaintiffs disregard this broad scope of the Fifth Amendment. Plaintiffs repeatedly claim that President Trump's reference to the Fifth Amendment does not "explain[] how an inquiry into his immunity would *specifically* impact his criminal case." Opp'n at 3 (emphasis added). But this focus on specificity misses the point. Given the common nucleus of factual and legal allegations in this case and the Special Counsel's case, admissions that may at first blush seem innocuous may provide a "link in the chain of evidence" that the Special Counsel uses to bolster his case. This risk is highly prejudicial to President Trump, who, in the absence of a stay, must risk either staying silent and hurting these civil cases or speaking and risking his testimony being taken out of context or spun in a way that is harmful to his criminal defense. The best way—and the only way, consistent with the importance of President Trump's liberty interest in his criminal matter—is to stay these proceedings while the criminal case is pending.

## II. Proceeding with this Case Now Would Burden the Court

Plaintiffs' own suggestions for how to proceed in this case merely emphasize that pressing forward at this time will unnecessarily burden the Court.

First, Plaintiffs fail to seriously engage with the argument that proceeding with the criminal case first will streamline discovery in this case. Instead, Plaintiffs fall back on their claim that the "immunity inquiry" issue "is not present in *U.S. v. Trump*." Opp'n at 11. But, as described above, this assertion is flat wrong. The "immunity inquiry" is present in the criminal case.

Second, Plaintiffs suggest that this Court should "address any specific concerns of prejudice that arise during the course of the immunity inquiry on a request-by-request basis." Opp'n at 19. This is at odds with Plaintiffs' claim that "an indefinite stay would frustrate judicial economy," Opp'n at 11, and is instead an invitation to force this Court to repeatedly consider and resolve contested claims of privilege that it likely would not once the criminal case is resolved.

Judicial economy is best served by staying this case.

### III. The Balance of Interests Favors a Stay

#### a. President Trump will be Prejudiced by Proceeding with these Cases Now

Forcing any criminal defendant to simultaneously defend a criminal case and a civil case that revolve around the same set of complex operative facts can be problematic and frequently necessitates a stay to protect the rights of the criminal defendant. These concerns are particularly acute in this case.

Contrary to Plaintiffs' baseless assertion, President Trump has shown a risk of self-incrimination and extensive motions practice that may be mitigated by a stay of these proceedings. For example, Plaintiffs again refer to their "97 proposed stipulations." Opp'n at 14. As noted above, over one-third of these "stipulations" ask President Trump to agree that his Twitter account is "personal." Accepting Plaintiffs' contention in this case would have repercussions for President Trump's criminal case, where he has asserted that his Twitter posts fall within the outer perimeter of his official duties. Thus, Plaintiffs' position places President Trump in a quandary: accept proposed stipulations that are likely to negatively impact his criminal proceedings or

7

contest them, which will necessarily require additional judicial intervention to resolve. President Trump's Twitter account is highly unlikely to be the only area where this quandary arises. These issues can be limited—if not avoided entirely—by staying this matter until the Special Counsel's case is resolved.

### b. Plaintiffs' Interests Will Not Be Unduly Burdened by a Stay

In response, Plaintiffs' claim that any stay will result in "serious hardship" to the Plaintiffs. But their arguments miss the mark.

First, Plaintiffs' point to the length of time these cases have been pending. *See* Opp'n at 21. But as the D.C. Circuit has previously observed, "[a] mere assertion of delay does not constitute substantial harm" because "[s]ome delay would be occasioned by almost all interlocutory appeals." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003), *jurisdictional ruling overruled by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)). The timing of these cases has been significantly impacted by factors beyond the parties' control, including the time required for the Court to assess President Trump's Motion to Dismiss and for the adjudication of President Trump's immunity claims on appeal.

Second, Plaintiffs' claim a delay would "limit[] the availability and reliability of evidence." Opp'n at 22. This argument is speculative, because there is no specific indication that any particular evidence may become unavailable. Moreover, this risk is mitigated if not completely eliminated by the criminal case. There is little risk that delaying these civil proceedings will impact the availability and reliability of evidence

8

because the evidence relevant to this case must also be preserved and developed for reference in the criminal matter.

The Special Counsel, backed by the resources and investigative tools of the federal government, is prosecuting President Trump based on the same set of operative facts at issue in this case and is developing an evidentiary case based on those facts. Under these circumstances, there is little risk that a stay will substantially reduce the availability and reliability of relevant evidence.

Third, Plaintiffs raise the baseless and insulting insinuation that President Trump "may take [steps] to actively conceal and destroy non-public evidence relevant to the claims in this case." Opp'n at 22. This is a serious accusation that requires serious proof. But Plaintiffs provide no evidence that this has or will occur in this case, nor any plausible inference for how or why this could occur. The core events at issue in this case have been investigated by the January 6 Committee and the Special Counsel in preparing his criminal indictment. Plaintiffs provide no explanation for how or why relevant inculpatory evidence (a) has been overlooked by these investigations yet (b) both exists and (c) is likely to be destroyed between now—three years into these proceedings—and the end of President Trump's criminal trial—which, again, concerns *the same operative events*.

And fourth, Plaintiffs' claim that a stay would increase the risk that assets needed to satisfy any judgment in this case will be moved or depleted is wholly speculative. *See* Opp'n at 22. Plaintiffs cite a judgment in the New York state courts in support of their argument, Opp'n at 22–23, but fail to note two salient points: First,

9

President Trump vociferously disputes the propriety of that judgment and believes it is unlikely to withstand scrutiny on appeal; and second, the referenced judgment has already been entered and is unaffected by whether or not this case is stayed. This leaves only Plaintiffs' reference to "potentially other[]" judgments, which is wholly speculative.

Plaintiffs' highly speculative claims of hardship are outweighed by the serious burdens imposed on President Trump by proceeding with this case while the criminal matter is pending. The balance of interests favors a stay.

## IV.  Staying this Matter Until the Criminal Case is Resolved is Appropriate

The Supreme Court has advised, "especially in cases of extraordinary public moment, [plaintiffs] may be required to submit to a delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Clinton*, 520 U.S. at 707 (quoting *Landis*, 299 U.S. at 256). This presents such an "extraordinary public movement."

President Trump is both a former President of the United States and the nominee of one of two major parties for President of the United States. He is the first former President to be criminally charged for conduct that occurred while in office. He is the first major party nominee in history to be criminally charged for conduct that occurred while in Presidential office. The Special Counsel's criminal accusations against President Trump are an "extraordinary public moment."

Meeting this moment requires ensuring that President Trump's criminal proceeding is completely fair in both practice and appearance. Moving forward with these matters during the pendency of the Special Counsel's case harms both.

## CONCLUSION

For the foregoing reasons, this Court should stay all proceedings concerning President Trump until the criminal case brought by the Special Counsel in the District of Columbia is resolved.

Dated: April 2, 2024                    Respectfully submitted,

/s/ *Gary M. Lawkowski*
Gary M. Lawkowski (D.D.C. Bar ID VA125)
David A. Warrington (D.C. Bar No. 1616846)
Jonathan M. Shaw (D.C. Bar No. 446249)
DHILLON LAW GROUP, INC.
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Tel: (703) 574-1654
glawkowski@dhillonlaw.com
dwarrington@dhillonlaw.com
jshaw@dhllonlaw.com

*Attorneys for Donald J. Trump*