# Exhibit 51

# No. 18-1691

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

Knight First Amendment Institute at Columbia University, Rebecca Buckwalter, Phillip Cohen, Holly Figueroa, Eugene Gu, Brandon Neely, Joseph Papp, Nicholas Pappas,

Plaintiffs-Appellees,

v.

Donald J. Trump, President of the United States, Daniel Scavino, White House Director of Social Media and Assistant to the President,

Defendants-Appellants,

Sarah Huckabee Sanders, White House Press Secretary,

Defendant.

On Appeal from the United States District Court
for the Southern District of New York

### REPLY BRIEF FOR APPELLANTS

JOSEPH H. HUNT
*Assistant Attorney General*

HASHIM M. MOOPPAN
*Deputy Assistant Attorney General*

SCOTT MCINTOSH
JENNIFER UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*

Case 1:18-1691   Document 100, 10/28/2018, 2419797, Page2 of 23

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

ARGUMENT ........................................................................................................ 5

I.    The First Amendment Does Not Constrain Donald Trump in Blocking
      Other Twitter Users from His Personal Twitter Account ................................... 5

      A.    Donald Trump's Blocking of Twitter Users from
            @realDonaldTrump Does Not Involve Any Exercise of
            Governmental Authority and Is Thus Outside the First
            Amendment's Ambit ............................................................................... 5

      B.    @realDonaldTrump Is a Platform for Donald Trump's Own
            Speech, Not a Forum That the Government Has Intentionally
            Opened to Facilitate the Expression of Others ....................................... 14

II.   Plaintiffs' Alternative Theories Are Equally Unavailing ..................................... 19

CONCLUSION ..................................................................................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**      **Page(s)**

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
    531 U.S. 288 (2001) ................................................................................ 11

*Brown v. Louisiana,*
    383 U.S. 131 (1966) ................................................................................ 20

*Colombo v. O'Connell,*
    310 F.3d 115 (2d Cir. 2002) .................................................................. 12

*Flagg v. Yonkers Sav. & Loan Ass'n,*
    396 F.3d 178 (2d Cir. 2005) ............................................................. 5, 8

*Halleck v. Manhattan Community Access Corp.,*
    882 F.3d 300 (2d Cir. 2018),
    *cert. granted* (U.S. Oct. 12, 2018) (No. 17-1702) .............................. 13

*Harris v. Quinn,*
    134 S. Ct. 2618 (2014) ............................................................................. 5

*Hudgens v. NLRB,*
    424 U.S. 507 (1976) ......................................................................5, 6, 10

*Lloyd Corp. v. Tanner,*
    407 U.S. 551 (1972) .........................................................................6, 10

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982) ................................................................................. 5

*McDonald v. Smith,*
    472 U.S. 479 (1985) ............................................................................... 21

*Minnesota State Bd. for Cmty. Colls. v. Knight,*
    465 U.S. 271 (1984) ............................................................................... 20

*Packingham v. North Carolina,*
    137 S. Ct. 1730 (2017) ......................................................................13, 21

*Perry v. McDonald,*
    280 F.3d 159 (2d Cir. 2001) .................................................................. 14

*Pitchell v. Callan*,
  13 F.3d 545 (2d Cir. 1994) ........................................................................... 8, 12

*Smith v. Arkansas State Highway Emps., Local 1315*,
  441 U.S. 463 (1979) ....................................................................................20-21

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
  135 S. Ct. 2239 (2015) ............................................................................... 14, 16

*West Farms Assocs. v. State Traffic Comm'n*,
  951 F.2d 469 (2d Cir. 1991) .............................................................................. 5

*West v. Atkins*,
  487 U.S. 42 (1968) ............................................................................................ 12

## INTRODUCTION AND SUMMARY OF ARGUMENT

As explained in the defendants' opening brief, the First Amendment protects individuals against abridgments of their speech by the government, not against interference attributable to private actions. Thus, the constitutional right of a private individual to express his or her views in a public forum comes into play only when the property in question is owned or controlled by the government and the individual's exclusion from that property is the product of state action. Those elements are plainly not met here.

Though plaintiffs repeatedly assert that Donald Trump has used the @realDonaldTrump account "as an instrument of governance" by using it to announce matters related to official government business, that assertion is legally immaterial in light of stipulated facts foreclosing their First Amendment claim. The @realDonaldTrump account is a private account that belongs to Donald Trump personally, not to the United States. Though he uses @realDonaldTrump to discuss matters related to the government, his control over that account is completely independent of his public office. And when Donald Trump decides not to interact with other Twitter users through the @realDonaldTrump account by blocking them, he exercises a power enjoyed by all Twitter users. His use of the account to make statements about official matters does not alter the fundamentally private, rather than governmental, nature of that authority. It therefore is not enough to say, as plaintiffs repeatedly do, that the @realDonaldTrump account "reflects state action." Their

Case 1:18-1691, Document 100, 10/28/2018, 2419797, Page27 of 28

claim depends not on whether some other aspect of the account "reflects" state action, but on whether the specific action that they are challenging—the blocking of the individual plaintiffs' accounts—is an exercise of governmental authority.

Plaintiffs simply cannot show that Donald Trump exercised governmental authority in blocking them from his personal account. Indeed, plaintiffs do not argue that the President is subject to the First Amendment's restrictions on viewpoint discrimination when excluding certain members of the public from real property that he privately owns, even if the property is otherwise opened to the public for purposes of attending official speeches or participating in town halls. And the First Amendment's limitation to the exercise of governmental authority does not depend on the type of private property involved or the size of the interested public at issue. Plaintiffs' failure to show that Donald Trump's use of the blocking function on his personal Twitter account constitutes the exercise of governmental authority is thus fatal to their First Amendment claim.

Nor have plaintiffs overcome the additional defect in their claim that they have been excluded from a designated public forum: the @realDonaldTrump account is not, and has never been, a "forum" intentionally opened to facilitate the private expression of others. On the contrary, since its creation, Donald Trump has used the account as a platform for his *own* speech. Donald Trump uses the account to convey his thoughts and opinions to his millions of followers and to anyone who chooses to visit the page.

Plaintiffs contend that Donald Trump's intent to open a designated public forum should be inferred from the fact that he has chosen to use Twitter, a social media platform defined by interactivity. That inference does not follow. Donald Trump began using Twitter in 2009 as a means to effectively and instantaneously share his views with a wide audience. He accumulated many millions of Twitter followers before he became President, and he has continued to use his Twitter account since his inauguration not to facilitate conversations among other persons, but for the simple reason that it provides him with direct access to his millions of followers and the public at large. To be sure, Twitter *itself* may be considered a private forum for public expressive conduct, albeit one that is not subject to First Amendment restrictions because of its private character. But individual Twitter accounts, like @realDonaldTrump, are merely the mechanism through which individuals can express their own views and engage—or decline to engage—with other Twitter users as they wish. Those accounts are not themselves "forums," public or otherwise.

Plaintiffs also press two alternative First Amendment claims: first, that the defendants unlawfully restricted plaintiffs' access to government information that is generally available to the public, and second, that the defendants unlawfully restricted plaintiffs' ability to petition the government for redress of grievances. Both claims suffer the same fatal threshold defect as plaintiffs' public-forum claim: Donald Trump was not engaged in state action when he blocked the individual plaintiffs.

3

Case 1:18-16914   Document 106, 10/26/2018, 2419757, Page8 of 28

Moreover, these claims suffer from additional defects.  As to plaintiffs' access to any government information contained in Donald Trump's tweets, they have not been restricted in accessing that information, because @realDonaldTrump tweets are fully accessible to all members of the public:  the content of @realDonaldTrump in its entirety is visible to all people who are not logged into Twitter accounts.  As to plaintiffs' right to petition, they cannot establish any violation of that right, because the constitution does not impose any affirmative obligation on the government to listen or respond to individuals' communications on public issues.  Further, plaintiffs' claim that they are unable to use Twitter as a platform to express their grievances is plainly belied by the evidence: they remain free to tweet about the government on their Twitter accounts, reply directly to the @POTUS and @WhiteHouse accounts maintained by the President and the White House, "mention" @realDonaldTrump in their personal tweets, and interact with other Twitter users who are discussing @realDonaldTrump tweets and government policies.

## ARGUMENT

I.   **The First Amendment Does Not Constrain Donald Trump in Blocking Other Twitter Users from His Personal Twitter Account**

    A.   **Donald Trump's Blocking of Twitter Users from @realDonaldTrump Does Not Involve Any Exercise of Governmental Authority and Is Thus Outside the First Amendment's Ambit**

Plaintiffs do not and cannot dispute that "the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976); *Harris v. Quinn*, 134 S. Ct. 2618, 2628 n.4 (2014) ("[T]he First Amendment does not restrict private conduct."). Plaintiffs' claim here therefore requires them to show not only that the putative forum they seek access to is owned or controlled by the government, *West Farms Assocs. v. State Traffic Comm'n*, 951 F.2d 469, 473 (2d Cir. 1991), but also that the decision to exclude them was an exercise of governmental, rather than private authority, *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) ("[A] litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("[T]he deprivation must be caused by the exercise of some right or privilege created by the State.").

Plaintiffs have failed to show that Donald Trump's decision to block them from interacting with his personal Twitter account involved an exercise of

governmental authority.  Again, plaintiffs do not and cannot dispute that the
@realDonaldTrump account belongs to and is controlled by Donald Trump in his
personal capacity, not the federal government, and that when he chooses to block
particular individuals from his personal account, he is exercising a feature of a private
social media platform that is granted to all users and is entirely independent of his
public office.  Indeed, the facts establishing these dispositive points are stipulated, and
plaintiffs are fundamentally wrong (Br. 23-24) that they are irrelevant.

First, the @realDonaldTrump account belongs to and was created by Donald
Trump in his personal capacity.  He created and began frequent use of the account in
2009, and he will continue to have control over the account after he leaves office,
even with respect to the tweets that concerned official policy.  That the account is
controlled by him personally, and not by the government, forecloses the claim that
plaintiffs have any First Amendment right to interact with the @realDonaldTrump
account.  The First Amendment does not require private property owners to allow the
general public access to their property, nor does it forbid them from excluding
particular members of the public that express messages that the property owners
personally oppose.  *See, e.g.*, *Hudgens*, 424 U.S. at 520-21 (holding that picketers do not
have a First Amendment right to enter a privately-owned shopping center to advertise
their strike against a company); *Lloyd Corp. v. Tanner*, 407 U.S. 551, 556, 569-70 (1972)
(holding that protestors who sought to distribute handbill invitations to a meeting to

6

protest the draft and the Vietnam war had no right to do so at a privately owned and operated shopping center).

Second, and relatedly, Donald Trump's use of the @realDonaldTrump account, and the terms on which he may use it, do not depend on any right or privilege conferred on him by the Presidency. His control over the @realDonaldTrump account, unlike the @POTUS and @WhiteHouse Twitter accounts, is entirely independent of his office. He created the account before he assumed the Presidency, and he will retain control over it after he leaves public office. Indeed, he continues to use the account to discuss matters unrelated to government business, including purely personal topics. Stipulation ¶ 32 (A54).

Finally, Twitter—not the government—created the block function and provided all users with the ability to exercise that function should they wish not to interact with other Twitter users. Donald Trump's use of the block function on his personal account is therefore not dependent on any privilege granted to or enjoyed by him by virtue of his office. Indeed, he enjoyed the ability to block users from the @realDonaldTrump account before he assumed office, and he will continue to have that ability after he leaves. Taken together, these facts illustrate a simple, but decisive point: the @realDonaldTrump account belongs to and is controlled by Donald Trump in his personal capacity, and his decision not to interact with plaintiffs (or allow them to interact with others) *on that account* is likewise a private decision that

Case 18-1691, Document 309, 10/26/2018, 2419737, Page12 of 28

does not invoke any exercise of governmental authority.  Plaintiffs' First Amendment claim requires this Court to ignore all of these critical facts.

Plaintiffs argue that because Donald Trump uses his personal account as an "instrument of governance" through which he communicates with the public about matters relating to his office, the "@realDonaldTrump account plainly reflects state action." Br. 13, 17-18.  But the account is not action, and as plaintiffs themselves acknowledge, what is legally critical is the "nature of the officer's act" at issue.  Br. 16 (quoting *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994)).  The state action inquiry therefore must focus not on whether other aspects of the @realDonaldTrump account "reflect" state action, but on whether *the act that plaintiffs are challenging* is fairly attributable to the government.

Here, the challenged action is Donald Trump's blocking of the individual plaintiffs, not his use of tweets to speak about governmental business.  As a result, the fact that his power to block people from his account is a power he enjoys in his personal capacity, and one that is entirely independent of his official position, is dispositive.  *See, e.g.*, *Flagg*, 396 F.3d at 186 (state action requires "the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the [s]tate").  If, for example, Donald Trump were a defendant in his official capacity in a different lawsuit, the court would not begin and end the state action inquiry by simply noting that Donald Trump is the president; it would look to the nature of the specific act being challenged.  The same is true for his Twitter account:  there is not a blanket

8

"state action" label that can be applied to the account, divorced from an analysis of how he is using that account in a particular setting.

Likewise, that Donald Trump has assumed a public office does not alter the private nature of his property or his ability to exclude people from it, even while he is using it to promote official actions of his Presidency. As plaintiffs implicitly concede (Br. 29), public officials retain personal control over their private property after assuming office, including the private right to exclude individuals based on their speech, even where the officials are allowing other members of the public to access the property for public purposes.[1]

Plaintiffs suggest that such exclusion may be permissible when the private property has only been opened to a "small audience," but not when the public is admitted in large numbers. That is a distinction without a constitutional difference. Shopping malls, for example, are generally open to members of the public, and countless speech acts take place there. Nevertheless, the First Amendment does not forbid private mall owners from excluding members of the public who seek access to

---

[1]  Plaintiffs suggest that several elements of the @realDonaldTrump account, including the account's use of photos of Donald Trump in the Oval Office or the fact that the webpage describes him as the "45th President of the United States," are "indicia" that the account is an "official" one, rather than a personal one. Br. 17. But these snapshots of Donald Trump's day-to-day life merely reflect the undeniable fact that he is the 45th President of the United States. They cannot in and of themselves transform the account into public property, nor actions taken in connection with the @realDonaldTrump account into exercises of Presidential authority, rather than actions of a citizen and Twitter user.

the property for the purpose of expressing messages with which the property owner disagrees. *Hudgens*, 424 U.S. at 520-21; *Lloyd Corp.*, 407 U.S. at 556, 570. What is true for shopping malls is just as true for large gatherings on any other private property, including property that belongs to Twitter or, as here, to government officials in their personal capacity. Indeed, no one could seriously contend that whether Presidents George W. Bush or John F. Kennedy possessed the ability to exclude critics from a speech or town-hall debate that was generally open to the public on their family estates turned on the acreage of the compounds or the number of attendees. The same is true for Donald Trump's personal Twitter account. Likewise, if Jack Dorsey, the co-founder and CEO of Twitter, were ever to obtain public office, he would not suddenly lose his ability as a private entrepreneur to exclude critics from creating *any* Twitter accounts, or from accessing *any* other Twitter accounts. *A fortiori*, Donald Trump did not lose the ability on Inauguration Day to block critics from accessing *his own* Twitter account.

Of course, the government itself may acquire a temporary property interest in private property, such as a lease. The @POTUS and @WhiteHouse accounts, for example, are, in a sense, "leased" for free from Twitter directly to the federal government, which created them pursuant to Twitter's terms of service. In such cases, as plaintiffs suggest (Br. 32), the property can fairly be said to belong to the government, rather than to a private individual, and an official's decision to exclude persons from that property would at least satisfy the First Amendment's threshold

10

requirement that there be an exercise of the government's own authority. But that is not this case. The @realDonaldTrump account, in contrast to the official government accounts, has not been "leased" by the government, but rather by Donald Trump himself. And when he exercises control over that property using means available to him both before assuming office and after leaving it, that right belongs to him as a private account holder, independent of his office.

Plaintiffs further suggest that there is a "close nexus" between Donald Trump's official status and his decision to exclude plaintiffs from his personal account, such that actions taken pursuant to his private authority should be considered state action. Br. 22 (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001)). In so arguing, plaintiffs rely on a line of state-action cases that address whether a private actor has been sufficiently imbued with state power such that his conduct may be considered state action. *See, e.g.*, *Brentwood Acad.*, 531 U.S. at 295, 298 (assessing whether actions of a private interscholastic athletic association constituted state action).

As even the district court correctly acknowledged, SPA.46 & n.17, the *Brentwood* inquiry is inapposite for cases like this one, in which courts must assess whether an admittedly public official acted in a private capacity. In cases like this one, courts have found (Opening Br. 25-26) a wide range of conduct to be purely within "the ambit of [the official's] personal pursuits" and "plainly excluded" from being considered state action, even when the conduct is related to their official status.

11

*Pitchell*, 13 F.3d at 548.  The appropriate question in these circumstances is whether the official acted under color of law or in his personal capacity, a question that focuses on whether the official exercised governmental power conferred on him by his official position.  *West v. Atkins*, 487 U.S. 42, 49 (1968).

Despite plaintiffs' contentions (Br. 25-26 & n.9), that is the appropriate inquiry regardless whether the challenged conduct is related to or prompted by official matters.  Thus, for example, in *Colombo v. O'Connell*, 310 F.3d 115 (2d Cir. 2002) (per curiam), this Court held that a local official's threat to sue over criticism regarding his public acts was not state action, despite the nexus between the criticism and the official's position, because he "exercised no special powers possessed by virtue of state law" in making the threat, "nor were his actions made possible only because [he was] clothed with the authority of state law."  *Id.* at 118 (quotation marks omitted; alteration in original).  While the entire dispute arose *solely* because of the official's position, the decisive point was that the *precise action* subject to constitutional challenge—the threat to sue over criticism—did not depend on the official's position.  So too here, while the dispute may have arisen because Donald Trump tweets about official policies, it is fatal to plaintiffs' claim that his blocking of the private individuals' accounts does not require the exercise of any governmental authority.

Finally, plaintiffs argue (Br. 30-31) that the @realDonaldTrump account should be considered a public forum because speech and interactivity is integral to all Twitter accounts.  They emphasize that the Supreme Court recently recognized the role

12

Twitter can play in facilitating public discourse.  Br. 33 (citing *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017)).  But *Packingham* involved a governmental restriction on private parties' ability to access any commercial social networking website that allowed its visitors to communicate with each other.  *Id.* at 1733-34.  This case, by contrast, involves the private actions of a public official on his personal Twitter account.  Once again, therefore, plaintiffs fail to grapple with the fact that Donald Trump does not exercise state authority when he blocks individuals from interacting with the @realDonaldTrump account.  It is clear that Twitter, by virtue of its control over the social media platform, could choose to ban particular accounts that have violated its terms of service, including any terms of service that may draw viewpoint- or content-based distinctions.  Similarly, the First Amendment places no restrictions on Twitter's private users who may choose to block other users from their personal accounts for any reason or no reason at all.  Neither *Packingham* nor any other case cited by plaintiffs even remotely suggests, let alone holds, that public officials forfeit their ability to control their personal property, including their personal social media accounts, in the same manner as any other private party, simply because they use those accounts to discuss their official positions.[2]

---

[2]  The district court declined to engage in a separate analysis of whether Donald Trump's blocking of the individual plaintiffs from the @realDonaldTrump account involved state action.  Relying on *Halleck v. Manhattan Community Access Corp.*, 882 F.3d 300, 306-07 (2d Cir. 2018), the district court held that the purported government control over the account was sufficient to turn the act of excluding users from the

### B.   @realDonaldTrump Is a Platform for Donald Trump's Own Speech, Not a Forum That the Government Has Intentionally Opened to Facilitate the Expression of Others

In addition to failing to show that Donald Trump excluded them from government property (through the exercise of governmental authority), plaintiffs have also failed to show that the @realDonaldTrump account meets the additional requirements of a public forum.  "[The] government 'does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse.'"  *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015); *Perry v. McDonald*, 280 F.3d 159, 166 (2d Cir. 2001) ("A designated public forum is created by purposeful governmental action—that is, when the government 'intentionally open[s] a nontraditional forum for public discourse.'" (alteration in original)).  Donald Trump has not intentionally opened @realDonaldTrump to provide a forum for public discourse.  On the contrary, it is plain from the stipulated facts, and indeed from plaintiffs' own characterization, that Donald Trump created the @realDonaldTrump account as a platform for his *own* speech.

---

personal account into state action.  SPA.45-46.  As explained in our opening brief, (at 24-25) the district court was wrong to think that the @realDonaldTrump account is controlled by the government, and doubly wrong to rely on *Halleck* for the proposition that exclusion from a public forum always involves state action.  We further note that, since the filing of our opening brief, the Supreme Court has granted certiorari to review *Halleck*.  No. 17-1702 (U.S. Oct. 12, 2018).

Since its inception in 2009, Donald Trump has used his personal account to convey his views to his Twitter followers and the world at large. That practice has not changed since he became President. He continues to use the account to express his own views and to convey them to other Twitter users and the public in general. Stipulation ¶ 37 (A55-56) ("Dan Scavino, has, on at least one occasion, promoted @realDonaldTrump . . . as [a] channel[ ] through which 'President Donald J. Trump . . . [c]ommunicat[es] directly with you, the American people!'") (fourth and fifth alterations in original); SPA.10 (observing that Donald Trump uses @realDonaldTrump "often multiple times a day" to communicate with his followers about his policies, legislative agenda, or other "matters related to official government business"); Appellees' Br. 5 (explaining that "Trump has used the @realDonaldTrump account almost exclusively for communications" about his administration).[3]

Plaintiffs argue (Br. 35-36) that Twitter is defined by interactivity, and that Donald Trump's decision to use Twitter instead of some other medium to communi-

---

[3] Plaintiffs suggest (Br. 33-38) that defendants are arguing that all of the tweets visible on @realDonaldTrump, including replies by other Twitter users in the comment threads, are government speech. That is a fundamental mischaracterization of defendants' position. Defendants have explained that, depending on their subject matter, Donald Trump's own tweets may constitute government speech. See Defendants Br. 21 ("[T]o the extent that *these* tweets are, as the district court concluded, 'governmental' in nature, they are government speech.") (emphasis added). Defendants have never suggested that responses by other Twitter users to such tweets, or tweets by Donald Trump on purely personal matters such as his children's birthdays, are government speech.

15

cate regarding governmental matters therefore reflects an intent on his part to open the account up for interactive responses.  That argument is a non sequitur.  The fact that Donald Trump has chosen to use Twitter, as opposed to a blog or some other less interactive medium, to discuss governmental subjects does not mean that he (let alone the federal government) "intentionally open[ed]" @realDonaldTrump as a venue "for public discourse" following his inauguration.  *Walker*, 135 S. Ct. at 2250. Instead, that choice reflects the simple fact that Twitter is a popular social media platform, widely known and easily accessible to the public, that has provided him with a ready means of disseminating his own views ever since he created the @realDonaldTrump account in 2009, and he has continued using it for that same purpose since he took public office.  By continuing to use the @realDonaldTrump account, he is able to disseminate his messages broadly to the millions of Twitter users who follow @realDonaldTrump and to anyone else who chooses to view his account's webpage.  That people may choose to reply to his tweets from their own accounts hardly shows an intent on the part of the government to create a forum for such discussion.  Similarly, the bare fact that Donald Trump sometimes retweets replies to his tweets by other Twitter users (Stipulation ¶ 39 (A14-15)) in no way suggests that he has chosen to use @realDonaldTrump, rather than some other medium of communications, *in order* to provide a forum for such tweets.

To be sure, Twitter's terms and conditions allow its users to interact with each other in a variety of ways, including by replying to or retweeting another user's tweet.

But those same terms and conditions allow users to decline to interact with each other through use of the blocking function. Through these functions, Twitter provides the means for individuals to have—or decline to have—many overlapping conversations. To that extent, Twitter *itself* can be characterized as a private forum for public expression. But the individual accounts are merely the mechanism through which the users express their views and engage—or decline to engage—with other users in that forum. They are participants in the forum, but are not themselves a "forum" in any sense of the word, public or otherwise.

Plaintiffs argue that defendants "have not published any rule or policy purporting to restrict, by form or subject matter, the speech of those who participate in the forum," and that they have not "sought to limit the forum to specific classes of speakers based on their status." Br. 29. But these are not choices available to Donald Trump in maintaining his personal Twitter account. He has chosen to make his account public, which allows anyone with or without a Twitter account to view his tweets. This is entirely consistent with the fact that he uses the @realDonaldTrump account to broadcast his own speech. But Twitter establishes the rules by which he may engage with others on the platform. Twitter does not allow its users to disable or delete replies or comments, or to confine them to particular topics. It allows them only to pick and choose who they want to interact with on the platform, and how they wish to interact with them.

For these reasons, plaintiffs' attempt to analogize the @realDonaldTrump account to a digital town hall is misconceived. In the digital town-hall scenario, the government has specifically and purposefully designed the event to provide the public with the opportunity to speak and respond to public officials. That is not what is going on here. Instead, Donald Trump has used his Twitter account as a platform for his own speech, and has chosen not to engage with particular Twitter users in that account, which has the incidental effect of making it harder for them to engage with others in that account. That choice does not prevent blocked users from engaging with any other Twitter users in their own accounts, from talking about the current Administration's policies, or from criticizing the President by posting their views to their own accounts.[4]

In short, by exercising private control over who may interact with his Twitter account, Donald Trump prevents blocked Twitter users from communicating directly with him *on that account*. But nothing about his use of the account or the stipulated facts of this case suggest that he ever opened the account *for the purpose* of facilitating

---

[4] Moreover, as discussed earlier, a public official could exclude certain critics even from a physical town-hall debate so long as the debate was held on his own private property or any other property that was not owned or controlled (even temporarily) by the government, because then the exclusion would not involve the exercise of governmental authority required for the state-action requirement and public-forum test. *Supra* Part I.A. The same would hold true for a "digital" town-hall debate, even if this were one, which it is not for the reasons discussed in text.

conversations with or among his followers.[5]   For this reason as well, there is no basis

for the district court's conclusion that Donald Trump's decision to block the

individual plaintiffs from the @realDonaldTrump account unconstitutionally

excluded them from a public forum.

## II.    Plaintiffs' Alternative Theories Are Equally Unavailing

Plaintiffs advance two additional claims as alternative grounds for affirmance.

First, plaintiffs claim that Donald Trump "selectively denied" the individual plaintiffs

the benefit of "generally available government information" based on their expressed

viewpoints when he blocked their Twitter accounts from @realDonaldTrump.  Br.

40-42.  Second, plaintiffs claim that Donald Trump "burdened their right 'to petition

the Government for a redress of grievances.'"  Br. 42-43.  But both of these claims

fail for the same threshold reason as plaintiffs' public forum claim:   plaintiffs cannot

show that Donald Trump was exercising governmental authority when he blocked

them from his personal Twitter account, and the First Amendment simply does not

apply to non-governmental conduct, even if that conduct interferes with access to

public information or the ability to petition the government.  *Supra* p. 5-13.

---

[5]  As noted by one of the amici, some government agencies use official Twitter accounts to actively solicit and answer questions.  *See* Electronic Frontier Foundation Amicus Br. at 32-34 (explaining that the Department of Education and the Transportation and Security Administration maintain Twitter accounts that actively solicit and repeatedly respond to inquiries about various government regulations). That practice is in stark contrast to Donald Trump's use of @realDonaldTrump, which has, since its inception, been used to disseminate Donald Trump's own views rather than to solicit and respond to inquiries from constituents.

Moreover, each of plaintiffs' alternative claims has additional fatal deficiencies. With respect to the access-to-information claim, Donald Trump's decision to block the individual plaintiffs' Twitter accounts does not deny those plaintiffs access to generally available government information. The information on the @realDonaldTrump account remains available to the public at large. Stipulation ¶ 18, 36 (A48, 55). All tweets are publicly available and are visible to anyone with a web browser. *Id.* The fact that the individual plaintiffs' Twitter accounts have been blocked does not deprive them of this access; they can view the content of @realDonaldTrump in its entirety without logging in to their accounts, just as members of the public who do not have a Twitter account may do. Plaintiffs therefore remain completely free to access the information in the same manner as any member of the general public.

Similarly, plaintiffs' ability to petition the government for a redress of grievances has not been infringed. The right to petition prevents the government from penalizing a petitioner, *Brown v. Louisiana*, 383 U.S. 131, 141-42 (1966) (op. of Fortas, J.) (holding that the government may not "punish" those exercising their right to "petition the Government for a redress of grievances"), but it does not grant a petitioner an entitlement to force the government "to listen or respond to [their] communications on public issues." *Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984); *id.* at 283 ("Appellees have no constitutional right to force the government to listen to their views."); *Smith v. Arkansas State Highway Emps., Local*

*1315*, 441 U.S. 463, 465 (1979) ("[T]he First Amendment does not impose any affirmative obligation on the government to listen.").  The President is thus not under any constitutional obligation to receive the individual plaintiffs' replies to his tweets— as even the district court acknowledged (SPA.66-67) in allowing the President to "mute" the individual plaintiffs after unblocking them.  *See McDonald v. Smith*, 472 U.S. 479, 485 (1985) (holding that there generally is "no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions").

Plaintiffs cite dicta from *Packingham*, in which the Supreme Court observed that "on Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner."  137 S. Ct. at 1735; *see also id.* at 1738 (Alito, J. concurring in the judgment).  And so plaintiffs can:  They are free to tweet about the President on their Twitter accounts and express their grievances at length.  They can read Donald Trump's tweets (when not logged into their blocked accounts), and they can post responsive tweets on their own Twitter pages.  They may "mention" the @realDonaldTrump account in those tweets, and interact with other Twitter users who are discussing the content of @realDonaldTrump tweets.  Stipulation ¶¶ 28, 30 (A52, 53).  And they can directly reply to the @POTUS and @WhiteHouse accounts maintained by the President and the White House.  Stipulation ¶ 45 (A60).  The only thing they may not do is speak directly to Donald Trump through his personal Twitter account by replying to his tweets there, because he does not want to listen to them

21

Case 18-1691, Document 109, 10/26/2018, 2419787, Page28 of 29

there.  And nothing in *Packingham* remotely purports to overrule his ability under *Knight* and *Smith* to make that choice—an ability that applies with special force to his own personal Twitter account.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
   *Assistant Attorney General*

HASHIM M. MOOPPAN
   *Deputy Assistant Attorney General*

SCOTT MCINTOSH
JENNIFER UTRECHT
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7710*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 353-9039*

October 2018

22

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,536 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Jennifer Utrecht*
Jennifer Utrecht

A1

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2018, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Jennifer Utrecht*
Jennifer Utrecht
