# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA J. LEE *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 21-cv-00400 (APM) |
| DONALD J. TRUMP *et al.*, | (lead case) |
| *Defendants*. | |
| ERIC SWALWELL, | |
| *Plaintiff*, | |
| v. | Case No. 21-cv-00586 (APM) |
| DONALD J. TRUMP *et al.*, | (consolidated case) |
| *Defendants*. | |
| JAMES BLASSINGAME *et. al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 21-cv-00858 (APM) |
| DONALD J. TRUMP, | (consolidated case) |
| *Defendant*. | |
| CONRAD SMITH *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 21-cv-02265 (APM) |
| DONALD J. TRUMP *et al.*, | (consolidated case) |
| *Defendants*. | |
| MARCUS J. MOORE *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 22-cv-00010 (APM) |
| DONALD J. TRUMP, | (consolidated case) |
| *Defendant*. | |

| | |
|---|---|
| BOBBY TABRON *et al.*,<br><br>               *Plaintiffs*,<br><br>     v.<br><br>DONALD J. TRUMP,<br><br>               *Defendant*. | Case No. 22-cv-00011 (APM)<br><br>(consolidated case) |
| BRIANA KIRKLAND,<br><br>               *Plaintiff*,<br><br>     v.<br><br>DONALD J. TRUMP,<br><br>               *Defendant*. | Case No. 22-cv-00034 (APM)<br><br>(consolidated case) |
| SANDRA GARZA,<br><br>               *Plaintiff*,<br><br>     v.<br><br>DONALD J. TRUMP *et al.*,<br><br>               *Defendants*. | Case No. 23-cv-00038 (APM)<br><br>(consolidated case) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER DENIAL OF HIS MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.   PROCEDURAL HISTORY..................................................................................... 2

III.  LEGAL STANDARD.............................................................................................. 4

IV.   ARGUMENT ........................................................................................................... 4

    A.    *Counterman* Is Not an Intervening Change In the Law That Alters the
       Standard Governing the Incitement Doctrine. ......................................... 4

    B.    This Court's First Amendment Analysis was Consistent with *Counterman*
       and the *Brandenburg* Line of Cases.......................................................... 6

        1.    This Court properly defined incitement in accordance with
           Supreme Court precedent............................................................ 7

        2.    This Court properly analyzed the content of Trump's January 6
           Rally Speech. .............................................................................. 8

        3.    This Court properly evaluated the context in which the January 6
           Rally Speech was given. ........................................................... 10

        4.    This Court applied the proper mental state requirement for the
           incitement exception. ............................................................... 11

        5.    Trump's remaining criticisms of this Court's First Amendment
           analysis lack any merit.............................................................. 12

    C.    This Court Has Already Addressed and Rejected Trump's "Floodgates"
       Argument. ................................................................................................. 15

    D.    A Section 1292(b) Appeal is Not Warranted. .......................................... 15

V.    CONCLUSION...................................................................................................... 16

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Action Network, Inc. v. Cater Am., LLC,*
2014 WL 12675253 (D.D.C. Feb. 12, 2014) ...................................................4, 15

*Bible Believers v. Wayne County,*
805 F.3d 228 (6th Cir. 2015) (en banc) ...........................................................7, 9

*Blassingame v. Trump,*
87 F.4th 1 (D.C. Cir. 2023) .......................................................................1, 3, 16

*\* Brandenburg v. Ohio,*
395 U.S. 444 (1969) ......................................................................... *passim*

*Counterman v. Colorado,*
600 U.S. 66 (2023) .......................................................................... *passim*

*FCC v. Pacifica Foundation,*
438 U.S. 726, 744 (1978) .......................................................................10

*Halberstam v. Welch,*
705 F.2d 472 (D.C. Cir. 1983) ...................................................................12

*Hess v. Indiana,*
414 U.S. 105 (1973) ........................................................................ *passim*

*Molock v. Whole Foods Mkt. Grp., Inc.,*
317 F. Supp. 3d 1 (D.D.C. 2018) ..................................................................16

*NAACP v. Claiborne Hardware Co.,*
458 U.S. 886 (1982) ...............................................................................6, 7

*Nwanguma v. Trump,*
903 F.3d 604 (6th Cir. 2018) ...........................................................7, 9, 13, 14

*Singh v. George Washington Univ.,*
383 F. Supp. 2d 99 (D.D.C. 2005) ..............................................................2, 4, 14

*Snyder v. Phelps,*
562 U.S. 443 (2011).................................................................................11

*\* Thompson v. Trump,*
590 F. Supp. 3d 46 (D.D.C. 2022), *aff'd sub nom. Blassingame v. Trump*, 87 F.4th 1
(D.C. Cir. 2023) ............................................................................. *passim*

# TABLE OF AUTHORITIES

Page

*United States ex rel. Morsell v. NortonLifeLock, Inc.*,
 560 F. Supp. 3d 32 (D.D.C. 2021) ................................................................4, 14, 15

*Young v. American Mini Theaters*
 427 U.S. 50, 66 (1976).................................................................................................10

**STATUTES**

28 U.S.C. § 1292(b) ................................................................................................ *passim*

**OTHER AUTHORITIES**

U.S. Const. amend. I .............................................................................................. *passim*

Fed. R. Civ. P. 54(b) ...................................................................................................4, 6

Order, Feb. 16, 2024, ECF No. 78 ..........................................................................1, 16

## I.    INTRODUCTION

Over three years ago, this Court denied Defendant Donald J. Trump's Motion to Dismiss several of these actions, holding, in relevant part, that Trump's remarks at his January 6, 2021 Rally were not protected by the First Amendment.  *See Thompson v. Trump*, 590 F. Supp. 3d 46, 115-18 (D.D.C. 2022), *aff'd sub nom. Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023).  This Court then denied Trump's petition for review of that ruling pursuant to 28 U.S.C. § 1292(b).  As a result, the appeal Trump took from the ruling denying his Motion to Dismiss was limited to the issue of whether he was entitled to presidential immunity.  Br. for Appellant, Blassingame v. Trump, No. 1:21-cv-00858 (D.C. Cir.  Mar. 21, 2022), ECF No. 42.  In affirming this Court's ruling denying Trump immunity from these civil lawsuits, the D.C. Circuit Court remanded the case for the sole purpose of permitting Trump to develop evidence supporting his immunity defense. *Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023).  Therefore, the only issue before this Court at this juncture is whether Trump is entitled to summary judgment on the immunity question.  Order, Feb. 16, 2024, ECF No. 78.  That alone is a sufficient reason to deny Trump's Motion for Reconsideration.

Moreover, reconsideration would be inappropriate here because there has been no change in the well-settled law that this Court applied in its First Amendment analysis.  While Trump claims that *Counterman v. Colorado,* 600 U.S. 66 (2023) changed the applicable legal landscape, *Counterman* was a true threats case, and this Court did not rely on the true threats doctrine to deny Trump's Motion to Dismiss.  Rather, this Court held that Plaintiffs had plausibly alleged that Trump *incited* the crowd that attacked the Capitol.  *Thompson*, 590 F. Supp. 3d at 115 (holding statements from Trump's January 6 Rally Speech "are plausibly words of incitement not protected by the First Amendment").  Nothing in *Counterman* changed the law governing the incitement doctrine.

In arguing to the contrary, Trump misstates the holdings of *Counterman* and the *Brandenburg* line of cases, as well as this Court's prior opinion. He also attempts to relitigate several issues that this Court has already resolved. It is well-settled, however, that where "litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks and citations omitted).

Finally, nothing has changed substantively or procedurally to warrant an interlocutory appeal on the First Amendment issue pursuant to 28 U.S.C. § 1292(b).

## II.    PROCEDURAL HISTORY

In this Court's Motion to Dismiss decision, it considered two affirmative defenses presented by Trump: first, that he was entitled to presidential immunity, and, second, that his January 6 Rally Speech was protected under the First Amendment. This Court denied Trump's Motion to Dismiss, rejecting both his immunity defense and First Amendment defense. *See Thompson*, 590 F. Supp. 3d. With respect to Trump's First Amendment claim, this Court ruled that his Speech plausibly amounted to incitement, and therefore lost any protection otherwise afforded by the First Amendment. *Id.* at 115-18.

Specifically, in its Motion to Dismiss decision, this Court concluded that the key to the incitement exception under the Supreme Court's decision in *Brandenburg v. Ohio* is whether the speech "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Thompson*, 590 F. Supp. 3d at 110-11 (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)). This recitation of the incitement standard is fully consistent with *Counterman's* reminder that incitement is only actionable when "the speaker's words were 'intended' (not just likely) to produce imminent disorder." 600 U.S. at 76 (citing *Hess v. Indiana*, 414 U.S. 105, 109 (1973)). Both recitations of the standard—this Court's requirement that the

2

speech be "directed to inciting or producing imminent lawless action" and *Counterman*'s reference to the speaker's intentions—require that the imminent lawlessness follow from the speaker's conscious desire of or at least near certain awareness that the speech may have that affect.

Then, consistent with the demands of *Brandenburg* and its progeny, including *Counterman*, this Court examined the precise words of Trump's January 6 Rally Speech, the import of these words based on the broader context, and Trump's intent as the speaker. Ultimately, this Court held it was plausible that Trump's Speech was likely to incite imminent violence and lawlessness—and thereby fell into an unprotected class of speech. *Thompson*, 590 F. Supp. 3d at 113-18.

Following the denial of his Motion to Dismiss, Trump sought interlocutory appeal of this Court's denial of the Motion to Dismiss under 28 U.S.C. § 1292(b) on only one of his rejected defenses: the immunity defense. Therefore, when the D.C. Circuit Court remanded the case to this Court, it was solely to permit Trump to develop evidence on which he could support his claim to immunity. Nothing in the DC Circuit's decision even addressed Trump's First Amendment defense. *See Blassingame*, 87 F.4th.

Following several months of immunity-related discovery that the D.C. Circuit contemplated on remand, this Court scheduled briefing on the sole question whether Trump was entitled to immunity from suit. Though not part of this Court's entered schedule, Trump also filed a Motion to Reconsider this Court's Denial of His Motion to Dismiss on First Amendment Grounds. *See* Def.'s Mot. for Recons. of Order on Mot. to Dismiss, ECF No. 145-1. *See also* Def.'s Mem. in Supp. of His Mot. for Recons., ECF. No. 145-2 [hereinafter Mot.]. Plaintiffs now oppose Trump's Reconsideration Motion.

3

### III.    LEGAL STANDARD

The permissible grounds for reconsideration of a district court's non-final ruling under Federal Rule of Civil Procedure 54(b) are extremely limited.  While a district court may reconsider a non-final ruling after "a controlling or significant change in the law or facts," the court's discretion to do so is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Singh*, 383 F. Supp. 2d at 101(internal quotation marks and citations omitted).

To that end, reconsideration is not appropriate "merely because a party seeks the proper application of controlling authorities. . . .  Were the Court to allow reconsideration merely to re-analyze and re-apply precedent," the court would, in effect, have granted the party seeking reconsideration "the opportunity to battle for the court's decision again."  *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 560 F. Supp. 3d 32, 39 (D.D.C. 2021) (citations and alterations omitted).  Accordingly, "Rule 54(b) affords no opportunity for the parties to reargue facts and theories upon which a court has already ruled."  *Am. Action Network, Inc. v. Cater Am., LLC*, 2014 WL 12675253, at *1 (D.D.C. Feb. 12, 2014).

### IV.    ARGUMENT

#### A.    ***Counterman* Is Not an Intervening Change In the Law That Alters the Standard Governing the Incitement Doctrine.**

*Counterman* does not alter the state of the law governing when First Amendment protections are denied upon the "incitement to imminent lawless action."  *Brandenburg*, 395 U.S. at 449.  Without an intervening change in the law governing this Court's prior First Amendment ruling, Trump's Reconsideration Motion must be denied.  *See Singh*, 383 F. Supp. 2d at 101.

*Counterman* has two holdings, neither of which change the *Brandenburg* line of cases that have controlled First Amendment jurisprudence for the past half century and guided this Court's prior First Amendment analysis. First, *Counterman* holds that, if a criminal defendant is charged with making true threats, the First Amendment "requires proof that the defendant had some subjective understanding of the threatening nature of his statements." 600 U.S. at 69. Second, *Counterman* holds that "a mental state of recklessness" is sufficient to hold a defendant criminally liable for threatening conduct. *Id.*

Neither of those holdings is relevant here because Plaintiffs have not argued—and this Court has never held—that Trump's January 6 Rally Speech constituted a "true threat." Rather, Plaintiffs' allegations centered on an entirely distinct category of unprotected First Amendment speech—incitement—and that is the doctrine under which this Court properly rejected Trump's prior attempt to dismiss the case on First Amendment grounds. *Thompson*, 590 F. Supp. 3d at 115-18. No logical reading of *Counterman*'s holdings, which pertain solely to the true threats doctrine, could result in a conclusion that it represents "subsequent controlling authority" that might "alter this Court's conclusion" regarding Trump's incitement of a crowd to imminent lawless action. *See* Mot. at 12.

Nor do *Counterman*'s limited references to incitement mark any changes to that well-established First Amendment doctrine. *Counterman* recognized that there are several distinct categories of speech that are not entitled to First Amendment protection, including true threats, incitement, defamation, and obscenity. 600 U.S. at 73-74. The Supreme Court also noted that there are different *mens rea* requirements for imposing criminal liability on defendants who engage in these specific types of harmful speech. While a defendant can be convicted for true threats if she acts with "recklessness," convictions for incitement require a proof that the defendant acted

with "purpose" or "knowledge." *Id.* at 78-81. As described by the *Counterman* Court, "recklessness" means that one "consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm," while "purpose" means "consciously desir[ing] a result," and "knowledge" means one is "aware that [a] result is practically certain to follow." *Id* at 79 (internal quotation marks and citations omitted).

*Counterman*'s description of the mental state required to sustain a conviction for incitement did not create new law; it simply noted that, "when incitement is at issue," the Supreme Court tends to describe the *mens rea* requirement imposed by the First Amendment "in terms of specific intent, presumably equivalent to purpose or knowledge." *Id.* at 82 (citing *Hess*, 414 U.S. at 109). In other words, *Brandenburg* and *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 888 (1982) "demanded a showing of intent" in incitement cases. *Id.* Drawing on these cases, *Counterman* concluded that a "strong intent requirement *was, and remains*," the proper way to ensure that laws against incitement did not reach mere political advocacy. *Id* (emphasis added).

At bottom, nothing in *Counterman* changed the standards used or analysis required for incitement cases. Trump contends that the Rule 54(b) standard is met simply because the *Counterman* decision followed this Court's Motion to Dismiss ruling. Mot. at 12. That is not enough. Trump has not—and cannot—show how *Counterman* changed the controlling law in this case, as is required to merit reconsideration of this Court's prior ruling. Trump recognized this as well, admitting that *Counterman* simply "clarified" the *Brandenburg* standard; it did not change it. *Id.* at 21.

### B.   This Court's First Amendment Analysis was Consistent with *Counterman* and the *Brandenburg* Line of Cases.

This Court's First Amendment analysis, and its holding that Plaintiffs plausibly alleged Trump incited a crowd on January 6, 2021, was consistent with *Counterman* and the *Brandenburg*

line of cases.  As explained below, none of the arguments in Trump's Motion would dictate a change in this Court's prior First Amendment analysis, even if it were to grant reconsideration. Trump's Motion should therefore be denied.

        1.   <u>This Court properly defined incitement in accordance with Supreme Court precedent.</u>

This Court began its prior First Amendment analysis by emphasizing its reliance on the "trio of Supreme Court cases" that over the past five decades has "come to define the incitement exception to the First Amendment": *Brandenburg*, *Hess*, and *Claiborne Hardware*.  *Thompson*, 590 F. Supp. 3d at 110.  Drawing directly from this precedent, this Court properly defined the incitement exception: whether the speech "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."  *Id.* at 111 (quoting *Brandenburg*, 395 U.S. at 447).

Trump relies heavily on the Sixth Circuit's use of a three-part test applying *Brandenburg*, even implying that this Court adopted that test because it cited to the Sixth Circuit's decision.  Mot. at 14 (citing *Bible Believers v. Wayne County*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc); *Nwanguma v. Trump*, 903 F.3d 604, 609 (6th Cir. 2018)).  But in its prior decision, this Court only cited this three-part test, along with a similar three-part test provided in a treatise, to emphasize that it took no position on whether this formulation "is useful, or even accurate."  *Thompson*, 590 F. Supp. 3d at 112.  As this Court has correctly noted, this three-part test has not been adopted in this jurisdiction.  *See id.* ("[t]he parties have not cited any D.C. Circuit case applying *Brandenburg*, and the court has not found one.").  Trump's present Motion likewise cites no D.C. Circuit case applying *Brandenburg*, let alone a three-part *Brandenburg* test.  And although Trump refers to this three-part test as "*Brandenburg*'s test," nowhere in *Brandenburg* does this three-part test appear. *See* Mot. at 5-6.

Thus, *Brandenburg* remains the controlling authority on incitement, and it is from *Brandenburg* itself that this Court derived the standard that it correctly applied to deny First Amendment protection to Trump's Speech.

2.   This Court properly analyzed the content of Trump's January 6 Rally Speech.

Having set the appropriate legal standard and definitions, this Court proceeded to analyze the content of Trump's January 6 Rally Speech to determine whether he explicitly or implicitly encouraged the use of violence and unlawful action.  Trump acknowledges the propriety of this inquiry.  *Id.* at 20 ("The inquiry must begin with the words used by the speaker . . . .").

This Court extensively summarized and analyzed the full contents of Trump's 75-minute speech.  *Thompson*, 590 F. Supp. 3d at 113-17.  For example, this Court described how Trump told the crowd that the election was "stolen" and "rigged," and identified who (according to Trump) was to blame for this claimed election fraud.  *Id.* at 113, 116.  Focusing further on the specific words Trump used, this Court italicized those words that it identified as furthering Trump's dangerous narrative that the election had been stolen not just from him, but also from *them*—that is, from his supporters in the audience.  *Id.* at 113 ("He told attendees at the start that '*our* election victory' had been taken away, '*we* won this election,' and '[*w*]*e* didn't lose.'").

Then, this Court examined specific lines from Trump's Speech that, in context, plausibly amounted to an intention to cause the incitement of violent or lawless action, including the following:

- "[Y]ou're allowed to go by very different rules[.]" *Id.* at 116.

- "[I]f you don't fight like hell, you're not going to have a country anymore[.]" *Id.*

- "[W]e're going to walk down Pennsylvania Avenue[.]" *Id.* at 114-15.

8

This Court acknowledged Trump's words did not explicitly advocate the use of force or violence. *Id.* at 115. But that is not—and under Supreme Court precedent has never been— dispositive, as this Court properly held. *Id.* *Hess* recognized that it is entirely possible to encourage imminent lawless action *implicitly*. *Id.* (citing *Hess*, 414 U.S. at 109). The Sixth Circuit *Bible Believers* Court recognized this as well. *Id.* (citing *Bible Believers*, 805 F.3d at 246) (examining, pursuant to the incitement inquiry, whether "the speech explicitly or implicitly encouraged the use of violence or lawless action"). In accordance with this precedent, this Court properly held that nothing in the incitement doctrine provides a safe haven for the "strategic speaker who does not directly and unequivocally advocate for imminent violence or lawlessness, but does so through unmistakable suggestion and persuasion." *Id.*

Nothing in *Counterman* calls this Court's analysis into question. And Trump all but concedes this point. He begins his Motion by acknowledging that speech can meet the incitement exception when it implicitly encourages the use of violence or lawless action. Mot. at 1 (citing *Brandenburg*, 395 U.S. 444). Although Trump later muddies the waters by claiming that the January 6 Rally Speech did not "specifically advocate imminent violence" (*id.* at 20), that articulation stems from the Sixth Circuit's *Nwanguma* decision, which likewise recognizes that the advocacy for violence may be implicit. *See Nwanguma*, 903 F.3d at 613 (observing the incitement inquiry focuses on the "words used by the speaker and whether they specifically advocated imminent violence or lawless action, either explicitly or implicitly."). The fact that Trump implicitly incited violence and lawless action through his January 6 Rally Speech in no way makes the speech "facially protected," as he appears to be arguing. Mot. at 15.

3.      This Court properly evaluated the context in which the January 6 Rally Speech was given.

To evaluate whether Trump's January 6 Rally Speech fell under *Brandenburg*'s incitement exception, this Court properly relied upon established precedent and examined "both the words spoken and the context in which they are spoken." *Thompson*, 590 F. Supp. 3d at 112. As this Court correctly noted, in *Young v. American Mini Theaters*, the Supreme Court emphasized the importance of focusing "on exactly what the speaker had to say," 427 U.S. 50, 66 (1976), while in *FCC v. Pacifica Foundation*, the Supreme Court further directed that "both the content and the context of speech are critical elements of First Amendment analysis . . . '[T]he character of every act depends upon the circumstances in which it is done . . . .'" 438 U.S. 726, 744 (1978) (citation omitted).

With those principles in mind, this Court outlined the context and circumstances that it deemed relevant to determining whether the plausible "import" of Trump's words was to advocate lawlessness. *Thompson*, 590 F. Supp. 3d at 115 (quoting *Hess*, 414 U.S. at 109). This Court noted that *for months* prior to January 6th, Trump and others had told his supporters that the election "was stolen and that 'weak politicians' had failed" to help him. *Id.* at 116. It observed that in the weeks after the election, some of those supporters had made threats against state election officials, and others had clashed with police in Washington, D.C., following pro-Trump rallies. *Id*. at 115. It also noted that pro-Trump websites and social media lit up following the January 6 Rally announcement, with some supporters "explicitly call[ing] for violence on January 6th" while others "took direct aim at the Certification itself." *Id.* Against this backdrop, this Court concluded that Trump's "75 uninterrupted" minutes telling rally-goers that the election was "rigged" and "stolen" and to "walk down Pennsylvania Avenue" were plausibly "directed to inciting or

producing *imminent* lawless action." *Id.* at 115-16 (citing *Hess*, 414 U.S. at 108-09) (emphasis added).

This approach is completely consistent with *Counterman*, wherein the Supreme Court reiterated that the context in which a speech is given is relevant to the incitement analysis.  600 U.S. at 76 ("Like threats, incitement inheres in particular words used in particular contexts."). Trump likewise acknowledged that "[i]n an incitement case" speech must be "evaluated in" the "context" in which it was given.  Mot. at 15 (citing *Snyder v. Phelps*, 562 U.S. 443, 453-54 (2011)).

    4.    <u>This Court applied the proper mental state requirement for the incitement exception.</u>

Furthermore, this Court applied the proper mental state requirement for the incitement exception to the First Amendment.  By analyzing whether Trump's Speech was "directed to" inciting lawless action, pursuant to *Brandenburg*, this Court correctly asked whether Plaintiffs had plausibly alleged that the purpose of the Speech was to incite violence and lawlessness, or at least that Trump had knowledge that lawlessness was practically certain to follow from his words.  As this Court correctly ruled, "when the President stepped to the podium on January 6th, it is reasonable to infer that he would have *known* that some in the audience were prepared for violence.  Yet, the President delivered a speech *he understood* would only aggravate an already volatile situation." *Thompson*, 590 F. Supp. 3d at 116 (emphasis added).

Trump attempts to refashion this Court's holding as simply stating that he "was aware of a risk that some listeners might react violently and spoke anyway."  Mot. at 22.  This is wholly inconsistent with this Court's actual conclusion that Trump "called for thousands 'to fight like hell' immediately before directing an unpermitted march to the Capitol, where the targets of their ire were at work, *knowing* that militia groups and others among the crowd were prone to violence." *Thompson*, 590 F. Supp. 3d at 117 (emphasis added).  In other words, Trump knowingly directed

a violent crowd to take immediate, unlawful action. *See also id.* at 115-16 (citing *Hess* and *Brandenburg* to hold Trump's words were "plausibly '*directed* to inciting or producing imminent lawless action and [were] likely to incite or produce such action'") (emphasis added); *id.* at 116 (holding that Trump "directed" his supporters "not to 'concede'"); *id.* at 118 (holding that Trump "directed" his supporters "to march on the Capitol building").

And other parts of this Court's decision denying Trump's Motion to Dismiss confirm that it properly held that Trump plausibly acted with the requisite purpose or knowledge. For example, this Court held that Plaintiffs had plausibly alleged a conspiracy because Trump "pursu[ed] the same goal" as his coconspirators—to prevent Congress from certifying the election. *Id.* at 102 (quoting *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983)). *Id.* ("[I]t is at least plausible to infer that, when he called on rally-goers to march to the Capitol, the President did so with the goal of disrupting lawmakers' efforts to certify the Electoral College votes."). And Trump had the requisite state of mind for Plaintiffs Swalwell and Blassingame's aiding and abetting claim. *Id.* at 124 ("Plaintiffs have plausibly alleged that the President was of one mind with organized groups and others to participate in violent and unlawful acts to impede the Certification.").

As Plaintiffs have plausibly alleged, the entire *purpose* of the Rally was to gather an angry crowd and direct them to the Capitol to lawlessly and violently prevent Congress from certifying the election. Trump did not just recklessly ignore the possibility of an assault on the Capitol; he consciously desired and directed that result.

     5.    <u>Trump's remaining criticisms of this Court's First Amendment analysis lack any merit.</u>

Grasping at straws, the Motion (wrongly) argues that this Court: (1) focused on how the Speech might have been interpreted by the crowd; (2) did not sufficiently credit portions of Trump's Speech in which he used non-violent language; and (3) should not have looked at past

events to derive contextual meaning for the Speech.  Mot. at 25-29.  These arguments inaccurately describe this Court's analytical approach, repeat Trump's arguments from earlier briefing that this Court already considered and rejected, and assert limitations that have no basis in the law.

First, Trump faults this Court for not focusing "on what the speaker actually said," as he contends *Counterman* demands, but rather how the speech "may be heard by a listener." *Id.* at 25 (citing *Nwanguma*, 903 F.3d at 613).  Not so.  Contrary to Trump's contention, *id.* at 21-25, this Court "assiduously avoided relying on any allegations that Plaintiffs made about any person's reaction to the President's January 6 Rally Speech." *Thompson*, 590 F. Supp. 3d at 117.  Instead, this Court relied on "the words spoken and their context, including the audience to whom the President spoke and when he spoke to them." *Id.*  This was a proper analysis under *Brandenburg* of the context in which the Speech was given.

Second, Trump attempts to redirect this Court's focus to parts of his Speech that he frames as mitigating against the finding of incitement ("peacefully and patriotically," "[s]tay peaceful"). Mot. at 26-27.  But this Court fully addressed, and rejected, this argument.  *Thompson*, 590 F. Supp. 3d at 117.  In its prior decision, this Court acknowledged "[t]hose words are a factor favoring" Trump, which is "why the court recited those words in summarizing his Speech," but explained that, nevertheless, Trump's "passing reference to 'peaceful[] and patriotic[]' protest" did not undermine this Court's conclusion that his exhortation, "nearly an hour later, to 'fight like hell' immediately before sending rally-goers to the Capitol, within the context of the larger Speech and circumstances, was not protected expression." *Id.*  The same logic applies to Trump's additional point that his Speech referred to "sweeping election reforms" and "ballot harvesting." Mot. at 26.  This Court reviewed these references—and indeed, the entire speech Trump delivered—before concluding that Plaintiffs had plausibly alleged incitement.  Where, as here, the

13

parties "have once battled for the court's decision," they should not subsequently be permitted "to battle for it again." *Singh*, 383 F. Supp. 2d at 101 (internal citations omitted); *see also United States ex rel. Morsell*, 560 F. Supp. 3d at 39 (same). Trump's Motion is nothing more than an attempt to relitigate failed arguments.

Third, no authority (let alone new authority) supports Trump's attempts to put a time limit on the conduct and circumstances that created the relevant context for his January 6 Rally Speech. Mot. at 28. Notably, Trump does not cite to any specific portion of *Counterman* to support his unfounded contention that past events and statements cannot inform this Court's incitement analysis. This is unsurprising because *Counterman* supplies no support for Trump's position. *Id.* at 27-29.

Trump argues that in *Hess*, 414 U.S. 105, the Supreme Court reversed the lower court's incitement ruling because it supposedly placed too much emphasis on the speaker's intent and failed to apply a three-factor test for incitement. Mot. at 27. Even if that accurately described *Hess* (which it does not), it is unclear how that would support Trump's assertion that events occurring weeks or months before Trump's Speech were not relevant context for understanding whether his Speech constituted incitement.[1]

Indeed, no part of *Counterman* or *Hess* supports Trump's efforts to circumscribe the time frame of events from which this Court was permitted to analyze the context surrounding Trump's Speech. Trump began to set the stage for the January 6 insurrection months before the election

---

[1] Trump completely misconstrues the holding and reasoning of *Hess* for several reasons. Initially, contrary to his bald assertions, the *Hess* Court did not take issue with the Indiana Supreme Court's focus on the speaker's intent in its First Amendment analysis. Rather, it disagreed with the trial court's *factual* finding that the speaker intended to incite further lawless action. *Hess*, 414 U.S. at 108-09. Additionally, *Hess* makes no mention of any *Brandenburg* "factor" that must be "analyzed and met on its own terms." Instead, this three-factor articulation stems from the Sixth Circuit's discussion of *Hess*. Mot. at 27-28; *Nwanguma*, 903 F.3d at 611.

had even occurred, and this Court properly viewed the Rally Speech in this context. Moreover, while Trump may contend that this Court's contextual analysis conflicts with Supreme Court precedent, reconsideration is not appropriate "merely to re-analyze and re-apply precedent." *See United States ex rel. Morsell*, 560 F. Supp. 3d at 39.

C.   **This Court Has Already Addressed and Rejected Trump's "Floodgates" Argument.**

This Court has also already considered and rejected Trump's argument that its incitement decision will open the "floodgates" to limitations on free speech. Mot. at 29. This is yet another attempt to reopen an issue that has been fully adjudicated before this Court. Trump concedes as much in his Motion, writing: "The Court *dismissed* concerns raised by Trump *in prior briefing* regarding effects of the Order on potential and past political speech by other speakers . . . ." *Id.* (emphasis added). Although Trump now argues that this Court's decision will impact not just political speech but also "public citizen speech," the undercurrent remains the same. *Id.* at 30. This Court's prior conclusion that "[e]ach case must be evaluated on its own merits" and liability be held "only in the rarest of circumstances" applies here with equal force. *Thompson*, 590 F. Supp. 3d at 117. Trump's disagreement with this Court's dismissal of his "floodgates" concerns is not a ground for reconsideration. He already presented this argument, and this Court rejected it; he does not get to relitigate it now. *See United States ex rel. Morsell*, 560 F. Supp. 3d at 39; *Am. Action Network, Inc.*, 2014 WL 12675253, at *1.

D.   **A Section 1292(b) Appeal is Not Warranted.**

Finally, an appeal of this Court's non-final ruling that Trump's statements at his January 6 Rally Speech were plausibly words of incitement not protected by the First Amendment is not warranted at this stage of the case. Interlocutory appeal pursuant to 28 U.S.C. § 1292(b) only applies when: "(1) the order involves a controlling question of law; (2) a substantial ground for

difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance the litigation." *Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 4 (D.D.C. 2018) (citation omitted)." None of those circumstances exists here.

Although the D.C. Circuit stated in its decision that it could address the merits of Trump's First Amendment defense "at a later stage," that stage is not yet set, as there has been no discovery related to the merits of this defense. *See Blassingame*, 87 F.4th at 27. Trump's request for appellate review of the First Amendment issue is plainly premature. The only issue on remand from the D.C. Circuit's decision was the disposition of Trump's immunity defense, and fact discovery on *that* defense then ensued in this Court. Order, Feb. 16, 2024, ECF No. 78. Therefore, an "immediate appeal" on the First Amendment issue would not "materially advance the ultimate termination of the litigation" given that no party has engaged in any discovery regarding Trump's First Amendment defense. *Molock*, 317 F. Supp. 3d at 4 (citing 28 U.S.C. § 1292(b)).

This Court held that Plaintiffs had properly alleged at the pleading stage that Trump had the requisite mental state under the incitement exception; nothing in controlling law has changed since then, and no "controlling question of law" has been implicated. *Thompson*, 590 F. Supp. 3d at 115-17; 28 U.S.C. § 1292(b). Just as *Counterman* does not change the incitement doctrine—as needed to warrant reconsideration—it also does not change the lack of appealability of the First Amendment issue.

## V.    CONCLUSION

Accordingly, Plaintiffs respectfully request that this Court deny Trump's Motion to Reconsider the Denial of His Motion to Dismiss on First Amendment Grounds.

16

Dated: February 28, 2025

Respectfully submitted

*/s/ Joseph Sellers*
Joseph M. Sellers, Bar No. 318410
Brian Corman, Bar No. 1008635
Alison S. Deich, Bar No. 1572878
Nina Jaffe-Geffner, Bar No. 90011459 (application for admission pending)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue N.W.
Eighth Floor Washington, D.C. 20005
Telephone: 202-408-4600
Facsimile: 202-408-4699
jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com
njaffegeffner@cohenmilstein.com

Janette McCarthy-Wallace, Bar No. OH066257
Anthony P. Ashton, Bar No. MD25220
NAACP
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Telephone: 410-580-5777
jlouard@naacpnet.org
aashton@naacpnet.org

*Attorneys for Plaintiffs Barbara J. Lee, et al.*

*/s/ Edward G. Caspar*
Edward G. Caspar, D.C. Bar No. 1644168
Marc P. Epstein D.C. Bar No. 90003967
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, DC 20005
Tel: 202-662-8600
ecaspar@lawyerscommittee.org
mepstein@lawyerscommittee.org

Faith E. Gay, *pro hac vice*
Joshua S. Margolin, *pro hac vice*
Elizabeth H. Snow, *pro hac vice*
Esther D. Ness, *pro hac vice*
SELENDY GAY PLLC

17

1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
jmargolin@selendygay.com
esnow@selendygay.com
eness@selendygay.com

William J. Blechman, *pro hac vice*
Elizabeth B. Honkonen, *pro hac vice*
SPERLING KENNY NACHWALTER
Four Seasons Tower – Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Tel: 305-373-1000
wblechman@sperlingkenny.com
ebh@sperlingkenny.com

*Attorneys for Plaintiffs Conrad Smith, et al.*

/s/ Matthew Kaiser
Matthew Kaiser, D.C. Bar No. 486272
Noah Brozinsky, D.C. Bar No. 1655789
KAISER PLLC
1099 Fourteenth Street N.W. 8th Floor
Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
nbrozinsky@kaiserlaw.com

Philip Andonian, D.C. Bar No. 490792
Joseph Caleb, D.C. Bar No. 495383
CALEBANDONIAN PLLC
1100 H Street N.W. Suite 315
Washington, D.C. 20005
Telephone: 202-953-9850
phil@calebandonian.com
joe@calebandonian.com

*Attorneys for Plaintiff Eric Swalwell*

/s/ Patrick Malone
Patrick A. Malone, Bar No. 397142
Daniel Scialpi, Bar No. 997556

18

(application for admission forthcoming)
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

Cameron Kistler, Bar No. 1008922
Kristy Parker, Bar No. 1542111
Erica Newland (Bar No. MD0141)
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Avenue N.W. #163
Washington, D.C. 20006
Telephone: 202-579-4582
cameron.kistler@protectdemocracy.org
kristy.parker@protectdemocracy.org
erica.newland@protectdemocracy.org

Genevieve C. Nadeau, Bar No. 979410
UNITED TO PROTECT DEMOCRACY
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: 202-579-4582
genevieve.nadeau@protectdemocracy.org

*Attorneys for Plaintiffs James Blassingame and
Sidney Hemby*

/s/ Mark Zaid
Mark S. Zaid, Esq., D.C. Bar No. 440532
Bradley P. Moss, Esq., D.C. Bar No. 975905
MARK S. ZAID, P.C.
1250 Connecticut Avenue N.W. Suite 700
Washington, D.C. 20036
Telephone: 202-498-0011
Facsimile: 202-330-5610
Mark@MarkZaid.com
Brad@MarkZaid.com

Matthew Kaiser, D.C. Bar No. 486272
Noah Brozinsky, D.C. Bar No. 1655789
Daniel Csigirinszkij, D.C. Bar No. 90017805
KAISER PLLC

19

1099 Fourteenth Street N.W. 8th Floor
Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
nbrozinsky@kaiserlaw.com
dcsigirinszkij@kaiserlaw.com

Philip Andonian, D.C. Bar No. 490792
Joseph Caleb, D.C. Bar No. 495383
CALEBANDONIAN PLLC
1100 H Street N.W. Suite 315
Washington, D.C. 20005
Telephone: 202-953-9850
phil@calebandonian.com
joe@calebandonian.com

*Attorneys for Plaintiff Sandra Garza*

/s/ Patrick Malone
Patrick A. Malone, Bar No. 397142
Daniel Scialpi, Bar No. 997556
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

*Attorneys for Plaintiffs Marcus J. Moore et al.;*
*Bobby Tabron et al.; and Briana Kirkland*

20

**CERTIFICATE OF SERVICE**

I certify that on February 28, 2025, a copy of the foregoing was filed with the Clerk of

Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

_/s/ Joseph M. Sellers_
Joseph M. Sellers