**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA J. LEE *et al.*,<br><br>    *Plaintiffs,*<br><br>  v.<br><br>DONALD J. TRUMP *et al.*,<br><br>    *Defendants.* | No. 21-cv-00400 (APM)<br><br>(lead case) |
| ERIC SWALWELL,<br><br>    *Plaintiff,*<br><br>  v.<br><br>DONALD J. TRUMP *et al.*,<br><br>    *Defendants.* | No. 21-cv-00586 (APM)<br><br>(consolidated case) |
| JAMES BLASSINGAME *et al.*,<br><br>    *Plaintiffs,*<br><br>  v.<br><br>DONALD J. TRUMP,<br><br>    *Defendants.* | No. 21-cv-00858 (APM)<br><br>(consolidated case) |
| CONRAD SMITH *et al.*,<br><br>    *Plaintiffs,*<br><br>  v.<br><br>DONALD J. TRUMP *et al.*,<br><br>    *Defendant.* | No. 21-cv-02265 (APM)<br><br>(consolidated case) |

| | |
|---|---|
| MARCUS J. MOORE *et al.*, | |
| *Plaintiffs,* | No. 22-cv-00010 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP, | |
| *Defendant.* | |
| BOBBY TABRON *et al.*, | |
| *Plaintiffs,* | No. 22-cv-00011 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP, | |
| *Defendant.* | |
| BRIANA KIRKLAND, | |
| *Plaintiff,* | No. 22-cv-00034 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP, | |
| *Defendant.* | |
| SANDRA GARZA, | |
| *Plaintiff,* | No. 22-cv-00038 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP *et al.*, | |
| *Defendants.* | |

**PLAINTIFFS' REPLY TO REQUEST FOR JUDICIAL NOTICE**

In his Opposition, Defendant Donald J. Trump takes issue with only a subset of the items identified in Plaintiffs' Request for Judicial Notice ("RJN").[1]  *See* Dkt. 172 ("Opp.").  His Opposition both mischaracterizes Plaintiffs' RJN and misapplies the relevant standard.  Federal Rule of Evidence 201 provides that a court may take judicial notice of any adjudicative fact "that is not subject to *reasonable* dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot *reasonably* be questioned."  Fed. R. Evid. 201(b) (emphasis added).  Although Trump tries to manufacture disputes with the facts and documents for which Plaintiffs seek judicial notice, none of these disputes are reasonable.  And, contrary to Trump's contention, a dispute over the *significance* of a fact does not affect whether the fact itself may be judicially noticed.

Plaintiffs properly seek judicial notice for facts and documents that are "contained in public records of other proceedings," are "historical, political, or statistical facts," or are otherwise "verifiable with certainty."  *Johnson v. Comm'n on Pres. Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017) (cleaned up).  The Court should grant Plaintiffs' request.

## ARGUMENT

The facts and documents identified in Appendices A and B to Plaintiffs' RJN are not subject to reasonable dispute and are easily verified by reference to reliable sources.  Trump's counterarguments are unavailing for the reasons set out below.

### A.    Public Records and Information on Government Websites

Courts may take notice "of public records and government documents available from

---

[1] The facts and documents not referenced in Trump's Opposition (and those that Trump does not contest in his Opposition) should be judicially noticed for the reasons set forth in the RJN.

reliable sources." *Johnson*, 202 F. Supp. 3d at 167; *see also Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.").  Yet, Trump erroneously argues that the Court should not take judicial notice of items which indisputably fall into this category.

### 1.    NARA Webpages Concerning the Electoral College Process

Trump incorrectly contends that Plaintiffs' RJN mischaracterizes a National Archives and Records Administration ("NARA") webpage and that the webpage is not a reliable source.  Opp. at 3–4.  Trump is wrong on both points.

Plaintiffs' description of the information supplied by the NARA webpage is accurate and the information is not subject to reasonable dispute.  In their RJN, Plaintiffs request the Court take judicial notice of the following:  "While each candidate running for President 'has their own group of electors (known as a slate)' that are 'generally chosen by the candidate's political party' within the state, the electors who actually cast their votes as part of the Electoral College are selected by the voters of their respective states in the general election, and are subsequently identified in a Certificate of Ascertainment prepared by the state's Executive."  Dkt. 153 ("RJN") at 2–3.  This sentence accurately conveys the information on NARA's *What is the Electoral College?* webpage, available at https://www.archives.gov/electoral-college/about.[2]    Contrary to Trump's characterization, these facts do not suggest that "only one candidate's slate is identified in the Certificate of Ascertainment" or otherwise conflict with Trump's assertion that the names of the

---

[2] Trump is correct that Plaintiffs inadvertently included an incorrect URL in their RJN.  Trump identified the correct NARA URL, *see* Opp. at 3, which contains the information for which Plaintiffs seek judicial notice.  This URL (https://www.archives.gov/electoral-college/about) corresponds to the webpage title Plaintiffs included in the RJN and is the source for each request which references this webpage.  *See* RJN, App. A, Nos. 5–8.

unchosen electors also appear on these Certificates.  Opp. at 4.  Moreover, Trump's contention is wholly irrelevant, as the significance of the sentence in question (or whatever "suggestions" may come from it) is not at issue.  Plaintiffs merely request that the Court take judicial notice of the process through which the electors who ultimately cast their votes in the Electoral College are identified, as plainly described on the NARA webpage; they do not request that the Court conclude that Certificates of Ascertainment cannot *also* identify the electors who were *not* chosen by the voters.  If Trump desired that the Court take judicial notice of the process through which the unchosen electors are identified—including whether they, too, have their names listed in the Certificate of Ascertainment—he was free to make such a request.  But Plaintiffs' proffered facts are not subject to reasonable dispute and may be judicially noticed.

Trump separately contends that the NARA webpage's reliability "must be questioned" because it does not have a named author.  Opp. at 5.  That position stretches much too far, and neither of his cited cases support this conclusion.  In *Mays*, the Seventh Circuit declined to take judicial notice of a report about COVID-19 interventions and their purported impact.  *Mays v. Dart*, 974 F.3d 810, 824 (7th Cir. 2020).  There, the parties *disputed* who authored the report, and the authors "were not subject to Daubert challenges, cross-examined, or tested with competing expert testimony."  *Id.*  Here, a factual description of the well-known and indisputable process for selecting and identifying electors is far afield of the scientific expert opinion required to draft a report about a newly identified viral illness and policy decisions concerning it.  Plaintiffs seek judicial notice of generally known, indisputable facts about the American elections process contained on a NARA webpage.  No expert testimony or cross-examination is necessary to ensure the truth of these facts.

Like *Mays*, Trump's second case, *Murakami*, involved a "wide range" of "reasonably contestable" statements, and is distinguishable on that basis. *Murakami v. United States*, 46 Fed. Cl. 731, 739 (2000). There, the court declined to judicially notice historical "documents allegedly from the National Archives relating to the internment of Americans of Japanese descent and to the conditions of the internment, restraint and ultimate release from restraint of Mr. Murakami's parents." *Id.* The court explained that these documents contained "a wide range of factual statements, some of which undoubtedly are reasonably contestable and all of which ordinarily would be subject to more rigorous evidentiary requirements and verification." *Id.*[3] By contrast, the information on the NARA webpage concerns well-known facts about the Electoral College process—a process fundamental to the American election system, and one that occurs every four years—not myriad decades-old documents about specific historical events and the individuals involved in them. The information on the NARA webpage is not subject to reasonable dispute.

In any event, it is well established that government agencies are trustworthy sources of information, and courts have judicially noticed information on government websites that do not name any individual authors. *See, e.g.*, *Seifert v. Winter*, 555 F. Supp. 2d 3, 11 n.5 (D.D.C. 2008) (taking judicial notice of information on a government website and collecting cases that have done the same). Here, NARA is the author of the statement regarding the method of selecting electors and identifying them in a Certificate of Ascertainment—the very government agency to which each state's Certificate of Ascertainment is sent. *See What is the Electoral College?*, Nat'l Archives (NARA), https://www.archives.gov/electoral-college/about. NARA's description of the

---

[3] *Murakami* is further distinguishable because it involved judicial review of an agency action, which ordinarily must "be based on the administrative record developed by the agency whose decision is being reviewed." *Murakami*, 46 Fed. Cl. at 739. "In such circumstances, discretion to take judicial notice must be exercised sparingly lest Rule 201 be wielded to create an exception that would envelop the established procedures for conducting arbitrary and capricious review." *Id.*

Electoral College process cannot reasonably be questioned.  *See Hamilton v. Paulson*, 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008) ("[D]ue to the fact that the document is located on the website for the United States Office of Personnel Management, it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, and therefore subject to judicial notice by the Court.") (cleaned up), *rev'd on other grounds*, 666 F.3d 1344 (D.C. Cir. 2012); *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 362 F. Supp. 2d 168, 176 n.5 (D.D.C. 2005) (taking judicial notice of State Department's annual publication as a reflection of the formal and official position of U.S. government); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) ("fail[ing] to see any merit to an objection" to appellate court taking judicial notice of the contents of a state agency's website); *Denius v. Dunlap*, 330 F. 3d 919, 926 (7th Cir. 2003) ("[T]he fact that the NPRC maintains medical records of military personnel is appropriate for judicial notice because it is not subject to reasonable dispute."); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994) (affirming judicial notice of a bank's FDIC-insurance status because as "the insuring agency itself," the FDIC "is a source whose accuracy cannot be reasonably questioned").

Finally, the fact that Plaintiffs conveyed information from the webpage rather than quoted it in its entirety has no bearing on the judicial notice analysis.  *See* Opp. at 4.  Tellingly, Trump does not cite any cases to support his contrary argument.  This failure to identify support is unsurprising, as courts have granted requests for judicial notice of information that the requesting party accurately described but did not quote.  *See, e.g.*, *Caldwell v. Univ. of N.M. Bd. of Regents*, 510 F. Supp. 3d 982, 1037 n.20 (D.N.M. 2020) (taking judicial notice of a university's code of conduct, "which [the plaintiff] discuss[ed], but d[id] not quote . . . because it comes from [the university's] official website and cannot reasonably be questioned"); *In re ConAgra Foods, Inc.*,

2013 WL 4259467, at *3 n.16 (C.D. Cal. Aug. 12, 2013) ("Although [plaintiff] d[id] not quote [a] portion of the FDA's website in its application, the court can take judicial notice of the statement.") (citing *Daniels–Hall v. National Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information displayed publicly on the websites of two school districts)); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (permitting judicial notice of information on government website even where plaintiff did not cite to the website).

### 2.    Wayne County, Michigan 2020 Election Certification

In response to Plaintiffs' request for judicial notice of the fact that Wayne County, Michigan election officials voted unanimously to certify the county's 2020 election results, Trump offers an additional fact—that in a previous vote, the Wayne County election officials did not vote unanimously to certify the results. Opp. at 6. But this fact does not contradict Plaintiffs' proffered fact concerning the ultimate unanimous certification, and Trump does not dispute that the Wayne County officials did ultimately vote unanimously to certify the election. Nor does he dispute the reliability of the Wayne County Board of Canvassers' November 17, 2020 meeting minutes. *Freedom From Religion Found., Inc. v. City of Green Bay*, 581 F. Supp. 2d 1019, 1024 n.1 (E.D. Wis. 2008) (taking judicial notice of city council meeting minutes available on a government website). In sum, the Wayne County officials' election certification is not subject to reasonable dispute, and judicial notice is appropriate.

### 3.    Press Release from Then-Speaker of the Arizona House of Representatives

Trump contends that a press release from the then-Speaker of the Arizona House of Representatives is not appropriate for judicial notice because Plaintiffs misconstrue it. Opp. at 6–7. To support this claim, Trump cites a single sentence in the press release that he contends "left

open the possibility of election fraud." Opp. at 7. But Trump's disagreement with the argument Plaintiffs advance based on the press release is irrelevant to whether the document is judicially noticeable. Contrary to Trump's characterization, Plaintiffs do not request that the Court take judicial notice of Plaintiffs' *argument* regarding the press release; they ask the Court to take judicial notice of the press release itself. Just as the Court can accept a document into evidence over an evidentiary objection but ultimately reject arguments about the significance of that document, so, too, can the Court take judicial notice of the press release but reject arguments predicated on it. The concepts are distinct, and Trump's argument is thus beside the point.

In any event, Trump's reading of the press release is patently unreasonable, as the sentence he identifies *does not* leave open the possibility of election fraud; it says only that if there were evidence of illegal votes (and there was not), a lawsuit would follow: "No election is perfect, and if there were evidence of illegal votes or an improper count, then Arizona law provides a process to contest the election: a lawsuit under state law." Opp. at 7. He also fails to acknowledge that Plaintiffs request this Court take judicial notice of the entire press release, including the sentence he identifies. All said, Trump does not refute the press release's legitimacy or accuracy, and it is thus properly subject to judicial notice. *See Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 68 (D.D.C. 2019) (taking judicial notice of a "White House Press Release as it is a government document available from a reliable source").

### 4.    U.S. House of Representatives Resolution

Plaintiffs request judicial notice of U.S. House of Representatives Resolution No. 117-216, a resolution recommending that Congress find Mark Meadows in contempt for refusing to comply with a subpoena concerning the events of January 6, 2021. RJN at 4. Trump argues that the Resolution cannot be judicially noticed but fails to identify any colorable dispute with the

Resolution's accuracy. *See* Opp. at 7. Given the many instances in which courts have taken judicial notice of government resolutions—including over objections, and for the truth of the information asserted therein—Trump's conclusory contention is unavailing. *See Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (taking judicial notice of city council resolution over objection, as the contents of the resolution were not subject to reasonable dispute); *Oneida Indian Nation of New York v. Cnty. of Oneida, New York*, 217 F. Supp. 2d 292, 304 (N.D.N.Y. 2002), *motion for relief from judgment granted on different grounds*, 2003 WL 21026573 (N.D.N.Y. Apr. 28, 2003) (taking judicial notice of county resolution which noted the historical significance of the land at issue in the action); *Selk v. Pioneers Mem'l Healthcare Dist.*, 2014 WL 12729166, at *2 (S.D. Cal. Apr. 7, 2014) (taking judicial notice of county board of supervisors resolution which stated the formation date of defendant hospital district). Trump is also incorrect that Plaintiffs improperly request the Court take judicial notice of "cherry picked" portions of the Resolution, as Plaintiffs instead ask that the Court take judicial notice of the *entire* Resolution. *Compare* Opp. at 7 *with* RJN at 4. The Resolution is not subject to reasonable dispute, and the Court should take judicial notice of it.

     **5.**    **FEC Data**

The Federal Election Commission ("FEC") data for which Plaintiffs seek judicial notice is not subject to reasonable dispute, and Trump's Opposition does not refute this conclusion. First, Trump contends that Plaintiffs' explanation as to how the publicly available FEC data was obtained is unclear. Not so. Taken together, the RJN, the Caspar Declaration, and the FEC data exhibits provide all the information necessary for the Court (and Trump) to perform the same searches on the same government website and obtain the same FEC data. Moreover, the data itself is not subject to reasonable dispute. For example, the RJN explains that Exhibit 63 "is a

spreadsheet containing the results from a search of online FEC records of disbursements made by Make America Great Again PAC to Justin Caporale, Ronald Holden, Kiran Menon, Maggie Mulvaney, James Oaks, Megan Powers, Hannah Salem, Tim Unes, William Wilson, and Caroline Wren from January 1, 2015 through March 1, 2021," and "[t]he data was obtained by running the search parameters depicted in Exhibit 64 through the FEC website search tool."  RJN at 4.  The Caspar Declaration avers that Exhibit 63 is a true and correct copy of the FEC data obtained from this search, and the search terms and FEC website used to obtain these results are depicted in Exhibit 64.  Caspar Decl. ¶¶ 16–17.  The same information is provided for the other exhibits reflecting FEC data.  *See id.* ¶¶ 19–20, 23–24, 31–32, 63; RJN at 4–5.  Using this information, anyone can obtain the FEC data for which Plaintiffs request judicial notice.  Accordingly, contrary to Trump's contention, there is no legitimate need to cross-examine Plaintiffs' attorney.  *See* Opp. at 8.  Plaintiffs' submissions leave no doubt that the FEC data for which they seek judicial notice was obtained from a source whose accuracy cannot reasonably be questioned.  *See Johnson*, 202 F. Supp. 3d at 167 (taking judicial notice of "political and statistical facts that the Federal Election Commission has posted on the web"); *De La Fuente v. DNC Servs. Corp.*, 2019 WL 1778948, at *8 n.13 (D.D.C. Apr. 23, 2019) (taking judicial notice of the DNC's public filings with the FEC). Indeed, Trump's failure to dispute the accuracy of the FEC data confirms that the data itself is not subject to reasonable dispute.[4]

Second, Trump appears to contend that because Plaintiffs seek to introduce the FEC data to support their argument about how the payments therein were used, the data is not subject to judicial notice.  But again, this argument is irrelevant, as Plaintiffs do not seek judicial notice of

---

[4] Trump appears to concede that publicly available FEC data is not subject to reasonable dispute, as he submitted his own FEC data sets with his Reply to Motion for Summary Judgment.  *See* Dkts. 174-14–174-17 (Exs. 246–249).

the *implications* of the FEC data; they only seek judicial notice of the data sets themselves. The conclusions to be drawn from the data are the subject of substantive argument in Plaintiffs' Opposition and Statement of Additional Undisputed Facts. Judicially noticing the FEC data does not preclude either Plaintiffs or Trump from presenting arguments concerning their evidentiary weight in the summary judgment context.

## B.    Information in Public Records of Judicial Proceedings

Plaintiffs seek judicial notice for aspects of judicial proceedings that are not subject to reasonable dispute, and courts in this district routinely grant such requests. *See, e.g.*, *Al–Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014); *Covad Commc'ns Co. v. Bell Atl. Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005); *Clark v. D.C.*, 241 F. Supp. 3d 24, 34 (D.D.C. Mar. 14, 2017). Although Trump "does not object to the Court taking judicial notice of the existence of the court documents Plaintiffs include in their motion," he contends that the Court cannot judicially notice factual findings and legal conclusions from these proceedings. Opp. at 10–11. This argument mischaracterizes Plaintiffs' RJN and the single in-district case on which Trump relies.

Here, Plaintiffs request judicial notice of the *existence* of various proceedings and their *outcomes*, and such facts are not subject to reasonable dispute. It is beyond dispute that Kenneth Chesebro agreed during his plea hearing that had the Georgia case against him gone to trial, the state would have shown that he and others conspired with fraudulent electors to "hold themselves out as the duly elected and qualified electors for the President and Vice President from Georgia following the November 3rd, 2020, presidential election." RJN at 7; Opp. at 11. Contrary to Trump's characterization, Plaintiffs do not request that the Court judicially notice the substance of Chesebro's plea—*i.e.*, that Chesebro actually conspired with fraudulent electors. Plaintiffs request only that the Court judicially notice Chesebro's *agreement to* this statement during judicial

proceedings. RJN at 7. Chesebro's agreement can be accurately and readily determined from judicial records, cannot reasonably be questioned, and is thus subject to judicial notice. *Al–Aulaqi*, 35 F. Supp. 3d at 67 (taking judicial notice of facts agreed to during plea hearing and set out in sentencing memorandum). Trump's citation to *Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13 (D.D.C. 2001) is inapposite, as that case concerned a collateral estoppel-like request that the court "*adopt* certain findings of fact and conclusions of law" from a separate action and apply them in the case at bar. Plaintiffs have not requested the Court adopt any findings of fact or conclusions of law here.

The same is true for the other two examples Trump provides. It is beyond reasonable dispute that the Middle District of Pennsylvania, in *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-CV-02078 (M.D. Pa. 2020), concluded that Trump's lawsuit was without merit and the Eastern District of Wisconsin, in *Trump v. Wisconsin Elections Commission*, No. 2:20-cv-01785 (E.D. Wis. 2020), dismissed a separate election-related lawsuit. RJN at 8–9; Opp. at 11. Plaintiffs request that the Court take judicial notice of these proceedings, but do not ask that the Court conclude the outcomes were correct as a matter of fact or law. Indeed, Plaintiffs rely on these and other proceedings to demonstrate that Trump and his Campaign had filed myriad election-related lawsuits, all of which failed. *See* Dkt. 152-1 ¶¶ 57, 103–115. Such facts are not subject to reasonable dispute and are easily determined from reliable judicial records. Accordingly, Plaintiffs' RJN should be granted.

## CONCLUSION

Plaintiffs respectfully request that the Court take judicial notice of the items listed in Appendices A and B to Plaintiffs' Request for Judicial Notice.

Dated:  May 14, 2025                          Respectfully submitted,

                                              */s/ Edward G. Caspar*
                                              Edward G. Caspar, D.C. Bar No. 1644168
                                              Marc P. Epstein D.C. Bar No. 90003967
                                              LAWYERS' COMMITTEE FOR
                                              CIVIL RIGHTS UNDER LAW
                                              1500 K Street N.W., Suite 900
                                              Washington, DC 20005
                                              Tel: 202-662-8600
                                              ecaspar@lawyerscommittee.org
                                              mepstein@lawyerscommittee.org

                                              Faith E. Gay, *pro hac vice*
                                              Joshua S. Margolin, *pro hac vice*
                                              Babak Ghafarzade, *pro hac vice*
                                              SELENDY GAY PLLC
                                              1290 Avenue of the Americas
                                              New York, NY 10104
                                              Tel: 212-390-9000
                                              fgay@selendygay.com
                                              jmargolin@selendygay.com
                                              bghafarzade@selendygay.com

                                              William J. Blechman, *pro hac vice*
                                              Elizabeth B. Honkonen, *pro hac vice*
                                              Jeffrey T. Foreman, *pro hac vice*
                                              SPERLING KENNY NACHWALTER
                                              Four Seasons Tower – Suite 1100
                                              1441 Brickell Avenue
                                              Miami, FL 33131
                                              Tel: 305-373-1000
                                              wblechman@sperlingkenny.com
                                              ebh@sperlingkenny.com
                                              jtf@sperlingkenny.com

                                              *Attorneys for Plaintiffs Conrad Smith, et al.*

                                              */s/ Joseph Sellers*
                                              Joseph M. Sellers, Bar No. 318410
                                              Brian Corman, Bar No. 1008635
                                              Alison S. Deich, Bar No. 1572878
                                              Nina Jaffe-Geffner, Bar No. 90011459 (application
                                              for admission forthcoming)

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue N.W.
Eighth Floor Washington, D.C. 20005
Telephone: 202-408-4600
Facsimile: 202-408-4699
jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com
njaffegeffner@cohenmilstein.com

Janette McCarthy-Wallace, Bar No. OH066257
Anthony P. Ashton, Bar No. MD25220
NAACP
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Telephone: 410-580-5777
jlouard@naacpnet.org
aashton@naacpnet.org

*Attorneys for Plaintiffs Barbara J. Lee, et al.*

*/s/ Matthew Kaiser*
Matthew Kaiser, D.C. Bar No. 486272
Noah Brozinsky, D.C. Bar No. 1655789
KAISER PLLC
1099 Fourteenth Street N.W. 8th Floor
Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
nbrozinsky@kaiserlaw.com

Philip Andonian, D.C. Bar No. 490792
Joseph Caleb, D.C. Bar No. 495383
CALEBANDONIAN PLLC
1100 H Street N.W. Suite 315
Washington, D.C. 20005
Telephone: 202-953-9850
phil@calebandonian.com
joe@calebandonian.com

*Attorneys for Plaintiff Eric Swalwell*

*/s/ Patrick Malone*
Patrick A. Malone, Bar No. 397142

Daniel Scialpi, Bar No. 997556
(application for admission forthcoming)
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

Cameron Kistler, Bar No. 1008922
Kristy Parker, Bar No. 1542111
Erica Newland (Bar No. MD0141)
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Avenue N.W. #163
Washington, D.C. 20006
Telephone: 202-579-4582
cameron.kistler@protectdemocracy.org
kristy.parker@protectdemocracy.org
erica.newland@protectdemocracy.org

Genevieve C. Nadeau, Bar No. 979410
UNITED TO PROTECT DEMOCRACY
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: 202-579-4582
genevieve.nadeau@protectdemocracy.org

*Attorneys for Plaintiffs James Blassingame and Sidney Hemby*

/s/ Mark Zaid
Mark S. Zaid, Esq., D.C. Bar No. 440532
Bradley P. Moss, Esq., D.C. Bar No. 975905
MARK S. ZAID, P.C.
1250 Connecticut Avenue N.W. Suite 700
Washington, D.C. 20036
Telephone: 202-498-0011
Facsimile: 202-330-5610
Mark@MarkZaid.com
Brad@MarkZaid.com

Matthew Kaiser, D.C. Bar No. 486272
Noah Brozinsky, D.C. Bar No. 1655789
Daniel Csigirinszkij, D.C. Bar No. 90017805

KAISER PLLC
1099 Fourteenth Street N.W. 8th Floor
Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
nbrozinsky@kaiserlaw.com
dcsigirinszkij@kaiserlaw.com

Philip Andonian, D.C. Bar No. 490792
Joseph Caleb, D.C. Bar No. 495383
CALEBANDONIAN PLLC
1100 H Street N.W. Suite 315
Washington, D.C. 20005
Telephone: 202-953-9850
phil@calebandonian.com
joe@calebandonian.com

*Attorneys for Plaintiff Sandra Garza*


*/s/ Patrick Malone*
Patrick A. Malone, Bar No. 397142
Daniel Scialpi, Bar No. 997556
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

*Attorneys for Plaintiffs Marcus J. Moore et al.;*
*Bobby Tabron et al.; and Briana Kirkland*

## CERTIFICATE OF SERVICE

I certify that on May 14, 2025, a copy of the foregoing was filed with the Clerk of Court using the Court's CM/ECF system, which will send a copy to all counsel of record. Plaintiffs are serving pro se defendants with copies of the foregoing via first class mail or other permitted means.

*/s/ Edward G. Caspar*

Edward G. Caspar