**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA J. LEE *et al.*, | Case No. 21-cv-00400 (APM) (lead case) |
| *Plaintiffs*, | *Consolidated with* Case Nos. |
| v. | 21-cv-00586 (APM) |
| DONALD J. TRUMP *et al.*, | 21-cv-00858 (APM) |
| | 21-cv-02265 (APM) |
| *Defendants*. | 22-cv-00010 (APM) |
| | 22-cv-00011 (APM) |
| | 22-cv-00034 (APM) |
| | 23-cv-00038 (APM) |

## JOINT CASE STATUS REPORT

Pursuant to the Court's February 13, 2026, Minute Order, the undersigned parties have conferred and jointly prepared the following Joint Status Report. [1]

### I.   Issues Specific to the *Smith* Action

The discussion below provides updates regarding the status of discovery in the *Smith* action since February 9, 2026. The Joint Status Report filed on February 9, 2026 (the "February 9 Status Report," *Lee* ECF No. 214; *Smith* ECF No.472) sets forth the status of discovery as of that date.

#### A.   *Smith* Plaintiffs' Discovery Requests

##### 1.   Discovery with the Campaign Entity Defendants

As indicated in the February 9 Status Report, Defendants Donald J. Trump for President, Inc. and Make America Great Again PAC's (the "Campaign Entity Defendants") submitted

---

[1] Plaintiffs sent a draft of this report, via email, to Defendants Donald J. Trump, Donald J. Trump for President Inc., Make America Great Again PAC, Joseph Biggs, Derek Kinnison, Felipe Antonio Martinez, Kelly Meggs, Ethan Nordean, Dominic Pezzola, Zachary Rehl, Elmer "Stewart" Rhodes III, Enrique Tarrio, and Erik Scott Warner. Plaintiffs also sent a draft of this report to The United States of America, which has requested to substitute itself in the place of Defendant Donald J. Trump as to certain claims. Defendants Kinnison, Martinez, and Warner, did not contribute to this report. Plaintiffs will serve the filed version of the Status Report on these and other Defendants per the Certificate of Service.

documents subject to their October 27, 2025 Motion to Sustain Asserted Privileges for *in camera* review on November 18, 2025.

### 2.    Discovery with Defendant Tarrio

From the *Smith* Plaintiffs: At the status conference on February 12, 2026, the Court ordered the *Smith* Plaintiffs to provide Tarrio a short list of discovery that they sought from Tarrio's criminal case and for counsel for Tarrio to inform Plaintiffs whether he would ask criminal defense counsel for those documents. *See* Feb. 12, 2026 Status Conf. Tr. at 29:12-15. Plaintiffs provided that short list, which included a request for Cellebrite reports of Tarrio's devices and electronic accounts. Tarrio refused to ask his criminal defense counsel for those documents. Counsel for Plaintiffs and Tarrio subsequently appeared at a hearing before the Court on March 20, 2026. Counsel for Tarrio stated he agreed that Tarrio "owe[s] these documents," that he wants Plaintiffs "to have those documents," and that criminal defense counsel "should have" these records, but neither he nor his co-counsel would contact criminal defense counsel even if the Court ordered them to do so. Mar. 20, 2026 Disc. Conf. Tr. at 6:10-11, 10:12, 13:24. Pursuant to the Court's order for supplemental briefing, *Lee* Mar. 20, 2026 Minute Entry, Plaintiffs will submit a motion to compel Defendant Tarrio to produce criminal discovery and request that the Court order counsel for Tarrio to obtain the requested discovery from Tarrio's criminal defense attorney and produce responsive information.

From Defendant Tarrio: On Monday morning, March 23, 2026, Tarrio's counsel, at his own expense, ordered transcripts of both the February 12, 2026, status conference and the March 20, 2026, hearing; to date, he has not received either of the transcripts or received any reports on their whereabouts. However, based on his good faith recollection of the February 12 conference and the March 20 hearing, Tarrio's counsel stated to everyone at both events the following: Plaintiffs should seek the Tarrio documents they wanted by going directly (a) to the Department of

Justice and/or (b) to Tarrio's criminal defense counsel in 21cr175-TJK.  At the March 20 hearing, moreover, counsel added that there was no federal discovery decision in which a court ordered defense counsel in a civil case to ask defense counsel in a criminal case for a client's discovery materials.  At the same hearing, counsel for Tarrio did state that he agreed that Tarrio "owe[s] these documents," that he wants Plaintiffs "to have those documents," and that criminal defense counsel "should have" some of (but certainly not all) these records, but neither he nor his co-counsel would contact criminal defense counsel even if the Court ordered them to do so.

### 3.        Discovery with Defendant Meggs

From the *Smith* Plaintiffs: At the status conference on February 12, 2026, the Court ordered the *Smith* Plaintiffs to provide Defendant Meggs a short list of discovery that they sought from Defendant Meggs' criminal case and for counsel for Defendant Meggs to inform Plaintiffs whether she would ask criminal defense counsel for those documents. *See* Feb. 12, 2026 Status Conf. Tr. at 29:12-15. Plaintiffs provided that short list, which included a request for Cellebrite reports of Meggs' devices and electronic accounts. Counsel for Defendant Meggs indicated she has received a 700 page phone extraction report with communications from Defendant Meggs' phone. Counsel further advised that she does not intend to produce responsive documents without a ruling from the Court on the criminal case's protective order as to whether unrelated texts from J6 criminal discovery under that protective order is releasable.

*Smith* Plaintiffs request that the Court order Meggs to produce the responsive documents from the 700 page phone extraction in addition to other responsive discovery received from the defense counsel.

Defendant Meggs adds that: During the status conference on February 12, 2026, the Court discussed that the Signal chats might be relevant. Counsel for Defendant Meggs indicated that she has received a 700-page phone extraction report with communications from Defendant Meggs'

phone which contains no Signal messages. Counsel received the report for the ongoing criminal case appeal, where she was allowed this report under the specific rules contained in the Protective Order at 1:21-cr-00028-APM ECF No. 123. The report upon initial scan contains what appear to be business, family, and personal texts from Mr. Meggs' yahoo email. Plaintiffs still indicate they want the entire report and wrote that they want family texts related to January 6th. The requirement is overly broad and burdensome as it requires interpretation about what could be related to January 6th. Counsel for Mr. Meggs respectfully disagrees with the demands. Counsel further advised that she cannot produce any portions of the report without a ruling from the Court on the criminal case's protective order as to whether unrelated texts or anything in the phone extraction from J6 criminal discovery under that case's protective order may be releasable for this case. Mr. Meggs' counsel contends that the Protective Order at 1:21-cr-00028-APM ECF No. 123 does not provide such authority and the government will need to provide its position as a stakeholder party to the Order in the criminal trial court.

Mr. Meggs counsel opposes the request for an Order, especially without a government response in the criminal trial court case. Of note, the government opposed release of criminal case information under the protective order for civil case defense, even though that civil case had claims against a January 6th defendant that were like those in the criminal case – as distinguished from this case. Here, the claims by the Plaintiffs who never once encountered Mr. Meggs on January 6th are unrelated to the criminal case.

Plaintiffs appear to demand the entire phone extraction report despite the Court having made clear at the last status conference that perhaps Signal texts might be relevant. The Plaintiffs have not described why phone numbers, names, and messages of business associates, family and friends where Mr. Meggs was in a chat (even with no response by him) are relevant and should be

releasable under the criminal case protective order. The Plaintiffs already have full access to the government's trial exhibits and Signal chats.

Any requirement that is not limited to Mr. Meggs specifically texting and mentioning January 6th is overly burdensome as it means going through a 700+ page report to interpret and discern what could relate to January 6th, and where redactions must be made for privacy should the Court - after government input for the criminal case protective order - allow disclosure of information in this unrelated case.

### 4.    Discovery with Defendant Rehl

From the *Smith* Plaintiffs: At the status conference on February 12, 2026, the Court ordered Plaintiffs to provide Defendant Rehl a short list of discovery that they sought from Rehl's criminal case and for counsel for Rehl to inform Plaintiffs whether he would ask criminal defense counsel for those documents. *See* Feb. 12, 2026 Status Conf. Tr. at 29:12-15. Plaintiffs provided that short list, which included a request for Cellebrite reports of Rehl's devices and electronic accounts. Counsel for Defendant Rehl requested and received a number of documents from Defendant Rehl's criminal defense counsel which included a number of government filings. He stated Rehl's criminal lawyer was "unable to produce any discovery materials, because the discovery materials produced during the criminal trial was marked as 'sensitive' or 'highly sensitive' and are protected from disclosure by protective orders."  Rehl's production included Government letters reflecting that Rehl received forensic copies of his cell phone and Apple iCloud account from the Government, and the Government's letters suggest there are no Protective Order designations as to those materials. Mr. Trainor indicated he would not request additional documents from defense counsel. Materials that were derived directly from a defendant or that pertain solely to a defendant are explicitly excluded from the *United States v. Nordean* Protective Order that Rehl is subject to. *See* Protective Order Governing Discovery ¶ 11.b & n.2, *Nordean*, No. 1:21-cr-00175 (D.D.C.), ECF

No. 83; Interim Protective Order Governing Discovery ¶ 11.b & n.2, *Nordean*, ECF No. 103; Notice of Accused Zachary Rehl's Coverage Under Prior Protective Order, *Nordean*, ECF No. 163. Plaintiffs therefore request that the Court order counsel for Mr. Rehl to obtain and produce the forensic copies of Rehl's cell phone and Apple iCloud account.

From Defendant Rehl: Mr. Trainor never indicated or said that he would not request additional documents from defense counsel. Mr. Trainor advised counsel for plaintiff that he requested "everything from Mr. Rehl's criminal defense attorney and she produced everything she could produce that was not covered by the extensive protective orders that the DOJ habitually demands in criminal trials these days."

Plaintiff's discovery production remains deficient and they refuse to supplement their production concerning identification of plainclothes and undercover officers on January 6, 2021, and briefings and preparation prior to January 6, 2021. Mr. Rehl's RFP sought discovery about Plaintiff's ability to identify undercover or plainclothes officers that were among the crowd on January 6, 2021, and about the briefings Plaintiff received prior to the First Amendment activities that occurred on January 6, 2021. Defendant's responses are essentially that they recognized familiar faces and none. However, since Plaintiff's initial discovery production multiple reports about law enforcement's response to the events of January 6, 2021, have been published, which disclosed that much more advance coordinated notice and preparation took place prior to January 6, 2021, than what was initially disclosed, and that also disclosed that there were hundreds of plainclothes officers in the crowd on January 6, 2021. Plaintiff refuses to supplement their discovery and produce information related to the briefings they received, or methods for identifying undercover/plainclothes officers on January 6, 2021, since it is not possible that they recognized the familiar face of hundreds of undercover/plainclothes officers, who may have been masked.

**5.    Discovery with Defendants Pezzola and Rhodes**

From the *Smith* Plaintiffs: At the status conference on February 12, 2026, the Court ordered Plaintiffs to provide Defendants Pezzola and Rhodes a short list of discovery that they sought from Pezzola and Rhode's criminal case and for counsel for Pezzola and Rhodes to inform Plaintiffs whether he would ask criminal defense counsel for those documents. *See* Feb. 12, 2026 Status Conf. Tr. at 29:12-15. Plaintiffs provided that short list, which included a request for Cellebrite reports of Pezzola's and Rhodes' devices and electronic accounts. Counsel for Defendants Pezzola and Rhodes has requested this information from defense counsel but has not received a response to the request. Plaintiffs request that the Court order counsel for Defendants Pezzola and Rhodes to obtain the requested criminal discovery, review for responsive material, and produce it.

From Defendants Pezzola and Rhodes: We object to the language regarding Pezzola and Rhodes. First, as we have already said previously, a cellbrite report for Pezzola does not and never existed. Secondly, as for Rhodes, I believe I have CC'd opposing counsel on the multiple emails my paralegal sent to his defense counsel that have gone unanswered.

**6.    Discovery with Defendant Kinnison**

Plaintiffs have received discovery responses from Defendant Kinnison and are assessing the responses.

**7.    Motion for Sanctions (Default Judgment) Against Defendant Warner**

At the February 12, 2026 status conference, the Court granted Plaintiffs permission to file a motion for sanctions against Defendant Warner, for his failure to comply with the Court's discovery orders. *See* Feb. 12, 2026 Status Conf. Tr. at 6:12-15. Plaintiffs filed the motion on March 25, 2026. *Smith* ECF No. 481.

**8.    Defendants Nordean and Biggs's Motion to Set Aside (or, Alternatively, Alter or Amend) the Default Judgment**

On February 14, 2026, the Court granted Plaintiffs default judgment against Defendants Nordean and Biggs. *Smith* ECF No. 474. Defendants Nordean and Biggs, through their newly-appearing counsel, subsequently filed a "Motion to Set Aside (or, Alternatively, Alter or Amend) the Default Judgment" against them. *Smith* ECF No. 479. Plaintiffs requested and obtained an extension from the Court to file their opposition by April 13, 2026. *Smith* Mar. 23, 2026 Minute Order.

**B.    *Smith* Plaintiffs' Third-Party Discovery**

**1.    Enforcement Actions**

The *Smith* Plaintiffs have commenced proceedings to compel productions from Rudolph Giuliani, Caroline Wren, and Kylie and Amy Kremer (together, the "Kremers"). *See Smith, et al. v. Giuliani*, 1:24-mc-00351 (S.D.N.Y.); *Smith, et al. v. Wren*, 9:24-mc-81074 (S.D. Fla.); *Smith et al. v. Kremer et. al*, 1:21-cv-02265 (N.D. Ga.).

In the *Giuliani* matter, the *Smith* Plaintiffs have met and conferred with counsel for Mr. Giuliani concerning his compliance with the court order granting Plaintiffs' motion to compel. *Giuliani* ECF No. 33. The *Smith* Plaintiffs and Mr. Giuliani have reached impasse as to what the costs of compliance with the subpoena are and who will bear those costs. The *Smith* Plaintiffs intend to seek relief from the U.S. District Court for the Southern District of New York.

In the *Wren* matter, after the *Smith* Plaintiffs' last Status Report, on February 13, 2026, Ms. Wren filed a response to the *Smith* Plaintiffs' motion to take her deposition, *Wren* ECF No. 40. On February 19, 2026, the Court granted the *Smith* Plaintiffs leave to depose Ms. Wren. *Wren* ECF No. 41. On Monday, March 30, 2026, Ms. Wren is scheduled to sit for a two-hour deposition

concerning her search and production of documents in response to the *Smith* Plaintiffs' non-party subpoena *duces tecum*.

In the *Kremer* matter, since the *Smtih* Plaintiffs' last status report, the Kremers have still failed to respond to Plaintiffs' motion seeking to compel Amy and Kylie Kremer to produce unredacted versions of certain documents and provide a privilege log justifying any privilege assertions over information that remains redacted. *Kremer* ECF No. 1. On February 17, 2026, the *Smith* Plaintiffs submitted a request for a status conference concerning the pending motion to compel. *Kremer* ECF No. 8. To date, no status conference has been scheduled. The *Smith* Plaintiffs will update the Court as to any developments.

The *Smith* Plaintiffs previously served non-party Roger Stone with subpoenas for documents and a deposition. The deposition has been held in abeyance for the time being, but discussions regarding the subpoena for documents ensued, during which the *Smith* Plaintiffs agreed to accept documents and information responsive to six categories of document requests. Mr. Stone served objections to the subpoena, the Court held a pre-motion conference on Mr. Stone's objections, after which on January 30, 2026, Mr. Stone responded to the six categories with answers notwithstanding his prior objections. Plaintiffs found some of Mr. Stone's responses incomplete, and the lawyers conferred on February 3. Based on that discussion, Mr. Stone's lawyers provided additional specific information on the basis of which Plaintiffs served subpoenas on Google, Gab AI Inc., WhatsApp, Gettr, Signal, and AT&T. Plaintiffs also intend to serve a subpoena on Proton Mail, an email network that Mr. Stone used to communicate. As Proton Mail is based in Switzerland, the *Smith* Plaintiffs understand that to effectuate service of a subpoena, they must file a motion in this Court seeking permission to issue a Letter of Request under the Hague Evidence

9

Convention that will formally ask Swiss judicial authorities to obtain the evidence. The *Smith* Plaintiffs respectfully request this Court's leave to file such a motion.

Mr. Stone also agreed to search the "cloud" using specific search strings provided by Plaintiffs for any documents responsive to the six categories of requests in the subpoena. Mr. Stone's lawyers informed the *Smith* Plaintiffs this week that their search of the "cloud" is ongoing. The *Smith* Plaintiffs have asked Mr. Stone's lawyers to complete their search and produce the responsive documents located in the "cloud" by April 2, 2026.

### 2.    National Archives and Records Administration

Since the January 13, 2026 status conference between the *Smith* Plaintiffs and counsel for the National Archives and Records Administration ("NARA"), NARA has produced the first of three privilege logs it intends to produce by April 13, 2026. *See* February 9 Status Report. On March 18, 2026, NARA produced a privilege log containing privilege assertions for 324 documents reflecting external White House communications. Also on March 18, 2026, NARA produced six additional documents that it identified as non-privileged during its review. Plaintiffs are reviewing the log and will update the Court as to any developments.

Dated: March 27, 2026                                  Respectfully submitted,

/s/    *Joshua S. Margolin*                            /s/    *Jason C. Greaves*
Faith E. Gay, *pro hac vice*                           Jesse R. Binnall, VA022
Joshua S. Margolin, *pro hac vice*                     Jason C. Greaves, DC Bar No. 1033617
Babak Ghafarzade, *pro hac vice*                       Gerald A. Urbanek, Jr. VA191
SELENDY GAY PLLC                                       Jared J. Roberts, *pro hac vice*
1290 Avenue of the Americas                            BINNALL LAW GROUP
New York, NY  10104                                    717 King Street Suite 200
Tel: 212-390-9000                                      Alexandria, VA 22314
fgay@selendygay.com                                    Tel: 703-888-1943
jmargolin@selendygay.com                               jesse@binnall.com
bghafarzade@selendygay.com                             jason@binnall.com
                                                       gerald@binnall.com
                                                       jared@binnall.com
/s/    *Edward G. Caspar*
Edward G. Caspar, D.C. Bar No. 1644168

Marc P. Epstein, D.C. Bar No. 90003967
Jeffrey Blumberg, D.C. Bar No. 432928
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W. Suite 900
Washington, DC 20005
Tel: 202-662-8390
ecaspar@lawyerscommittee.org
mepstein@lawyerscommittee.org
jblumberg@lawyerscommittee.org


 /s/     William J. Blechman
William J. Blechman, *pro hac vice*
Elizabeth B. Honkonen, *pro hac vice*
Jeffrey T. Foreman, *pro hac vice*
SPERLING KENNY NACHWALTER
Four Seasons Tower – Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Tel: 305-373-1000
wblechman@sperlingkenny.com
ebh@sperlingkenny.com
jtf@sperlingkenny.com


*Attorneys for Plaintiffs Conrad Smith, et al.*

*Attorneys for Defendants Donald J. Trump for President, Inc. and Make America Great Again PAC*


 /s/     J. Daniel Hull
John Daniel Hull, IV, DC Bar No. 323006
HULL MCGUIRE PC
1420 N Street, NW
Washington, DC 20005
Tel: 202-439-6520
jdhull@hullmcguire.com


Ronald Coleman,
COLEMAN LAW FIRM
50 Park Place, Suite 1105
Newark, NJ 07102
Tel: 973-264-9611
rcoleman@colemanlaw-pc.com

*Attorneys for Defendant Enrique Tarrio*


 /s/     Carolyn A. Stewart
Carolyn A. Stewart, D.D.C. Bar No. FL-0098
Defense Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: 813-659-5178
Carolsteweart_esq@protonmail.com

*Attorney for Defendant Kelly Meggs*


 /s/     Patrick Trainor
Patrick Trainor, Esq., *pro hac vice*
LAW OFFICE OF PATRICK TRAINOR
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Tel: 201-777-3327
Fax: 201-896-7815
pt@ptesq.com

*Attorney for Defendant Zachary Rehl*

11

_/s/_      _Roger I. Roots_
Roger I. Roots
JOHN PIERCE LAW PC
10 Dorrance Street, Suite 700 #649
Providence, RI 02903
Tel: 775-764-9347
rroots@johnpiercelaw.com

_Attorney for Defendants Stewart Rhodes and Dominic J. Pezzola_

12

## CERTIFICATE OF SERVICE

I certify that on March 27, 2026, I served a copy of the foregoing filing on all parties of record by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice to all attorneys of record. Plaintiffs are serving the remaining Defendants via first class mail or other permitted means.

Dated: March 27, 2026                    By:           /s/   Joshua S. Margolin
                                                            Joshua S. Margolin