**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BARBARA J. LEE, *et al.*,<br><br>                     Plaintiffs,<br><br>v.<br><br>PRESIDENT DONALD J. TRUMP, *et al.*,<br><br>                     Defendants. | **Case No. 21-cv-00400 (APM)**<br><br>***Consolidated Cases:***<br>*21-cv-00586 (APM)*<br>*21-cv-00858 (APM)*<br>*21-cv-02265 (APM)*<br>*21-cv-00010 (APM)*<br>*21-cv-00011 (APM)*<br>*21-cv-00034 (APM)*<br>*21-cv-00038 (APM)* |

**PRESIDENT DONALD J. TRUMP'S RESPONSE TO THE COURT'S APRIL 20, 2026
MINUTE ORDER REGARDING PROCEEDING WITH DISCOVERY AND
MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO STAY**

Joshua Halpern, *pro hac vice*
**JH Legal PLLC**
1100 H Street, NW, Suite 840
Washington, D.C. 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

Jonathan M. Shaw, D.C. Bar No. 446249
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206
jshaw@dhillonlaw.com

Michael J. Walsh, Jr., D.C. Bar No. 483296
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
mike.walsh@us.dlapiper.com

Caryn G. Schechtman, *pro hac vice*
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4500
caryn.schechtman@us.dlapiper.com
*Attorneys for President Donald J. Trump*

Jesse R. Binnall, VA022
Jason C. Greaves, DC Bar No. 1033617
Gerald A. Urbanek, Jr., VA191
Jared Roberts, FL00153
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
jesse@binnall.com
jason@binnall.com
gerald@binnall.com
jared@binnall.com

*Attorneys for President Donald J. Trump,
Donald J. Trump for President, Inc., and
Make America Great Again PAC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………...………………….... ii

INTRODUCTION…………………………………………………………………………………...1

I.    THE APPEALS DIVESTED THIS COURT OF JURISDICTION AND IMPOSED AN AUTOMATIC STAY OF DISCOVERY………………………………………...1

II.    ALTERNATIVELY, SOUND JUDICIAL DISCRETION FAVORS A STAY OF ALL DISCOVERY…………………………………………………………………... 7

CONCLUSION………………………………………………………………………………..10

CERTIFICATE OF SERVICE…………………………………………………………………...13

i

# TABLE OF AUTHORITIES

**Cases**

*Accord, e.g., American Future Fund, Inc. v. New York State Bd. of Elections*,
25 Civ. 8151 (JHR), 2025 WL 3782963 at *1 (S.D.N.Y. Dec. 31, 2025) .................................. 7

*Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*,
539 F. Supp. 3d 211, 218 (D.D.C. 2021) .................................................................... 10

*Al-Adahi v. Obama*,
672 F. Supp. 2d 81, 84 (D.D.C. 2009) ....................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662, 685–86 (2009) ........................................................................... 5, 8, 9

*Blassingame v. Trump*,
87 F.4th 1, 29 (D.C. Cir. 2023) ........................................................................... 3, 4, 9

*City of Martinsville, Virginia v. Express Scripts, Inc.*,
128 F.4th 265, 269 (4th Cir. 2025) .............................................................................. 3

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ................................................................................... 1, 2, 3, 7

*Crawford-El v. Britton*,
523 U.S. 574, 598 (1998) ........................................................................................ 8

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
772 F.2d 972, 974 (D.C. Cir.1985) ............................................................................. 8

*Edrei v. City of New York*,
16 Civ. 1652 (RWS), 2017 WL 3822744 at *2 (S.D.N.Y. Aug. 31, 2017) ................................. 7

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) ............................................................................................ 1, 7

*Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982) ...................................................................................... 2, 8

*Hilton v. Braunskill*,
481 U.S. 770, 776 (1987) ........................................................................................ 8

*K.M. v. Alabama Dep't of Youth Servs.*,
209 F.R.D. 493, 495 (M.D. Ala. 2002) .......................................................................... 7

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132, 139 (2005) ................................................................................................. 7

*Mitchell v. Forsyth*,
  472 U.S. 511, 526 (1985) ............................................................................................. 2, 9

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100, 130 (2009) ................................................................................................. 8

*Nat'l Rifle Assoc. of Am. v. Vullo*,
  1:18-CV-0566, 2022 WL 152534 at *5 (N.D.N.Y. Jan. 18, 2022) ................................... 7

*Nken v. Holder*,
  556 U.S. 418, 434 (2009) ................................................................................................. 8

*Population Inst. v. McPherson*,
  797 F.2d 1062, 1078 (D.C. Cir.1986) .............................................................................. 8

*Princz v. Fed. Republic of Germany,*
  998 F.2d 1, 1 (D.C. Cir. 1993) ........................................................................................ 3

*Sosa v. Hames*,
  No. 05-23079-CIV-TURNOFF, 2006 WL 1284927, at *1 (S.D. Fla. May 3, 2006) ................. 7

*United States v. DeFries*,
  129 F.3d 1293, 1302-1303 (D.C. Cir. 1997) .................................................................... 3

*United States v. Philip Morris Inc.*,
  314 F.3d 612, 617 (D.C. Cir. 2003) ................................................................................. 8

*United States v. Philip Morris Inc.*,
  314 F.3d 612, 622 (D.C. Cir. 2003) ............................................................................... 10

*United States v. Trump*,
  706 F. Supp. 3d 91, 93 (D.D.C. 2023) ............................................................................ 4

**Other Authorities**

16A CHARLES ALAN WRIGHT & ARTHUR R. MILLER FEDERAL PRACTICE & PROCEDURE § 3949.1
  (5th ed. 2026) .................................................................................................................. 2

**INTRODUCTION**

This Court's April 20, 2026, Minute Order directed President Trump to show cause why merits discovery should not proceed against him. It also indicated that the Court's previously entered stay of merits discovery was no longer in effect as to the other parties. But the Notices of Appeal filed by President Trump with respect to absolute immunity (Dkt. No. 220) and by the United States with respect to the Westfall Act (Dkt. No. 224), divested this Court of jurisdiction over these cases and automatically stayed all proceedings, including all merits discovery, pending resolution of those appeals. Furthermore, allowing discovery to go forward pending appeal defies common sense and established precedent.

**I.     THE APPEALS DIVESTED THIS COURT OF JURISDICTION AND IMPOSED AN AUTOMATIC STAY OF DISCOVERY.**

In *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), the Supreme Court made clear that the filing of an appeal, including an interlocutory appeal, is "an event of jurisdictional significance," which "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* at 58. This is particularly true where, as here, the entire case is effectively on appeal because it involves broad, false conspiracy allegations against President Trump—who is appealing the immunity ruling—for the alleged actions of the other defendants. In these circumstances, permitting discovery against other parties either would deprive President Trump of one of the key benefits of absolute immunity—freedom from the burdens of litigation—or risk substantial repetition of discovery if litigation against him ultimately went forward, which it should not.

In *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), the Supreme Court reversed denial of a stay of proceedings pending an interlocutory appeal, holding that the Ninth Circuit's failure to recognize that *Griggs* mandated an automatic stay of proceedings in the district court was error.

1

*Id.* at 744 ("In short, the *Griggs* rule requires that a district court stay its proceedings while the interlocutory appeal on the question of arbitrability is ongoing."). Although *Coinbase* arose in the arbitration context, the Court was not applying an arbitration-specific rule, but rather the generally applicable *Griggs* principle, which is routinely applied in immunity appeals and other analogous contexts. *Id.* at 746 ("Applying the *Griggs* rule here simply subjects arbitrability appeals to the same stay principles that courts apply in other analogous contexts where an interlocutory appeal is authorized, including qualified immunity"); *Id.* at 742 ("in the analogous contexts of qualified immunity and double jeopardy, moreover, district courts likewise must automatically stay their proceedings while the interlocutory appeal is ongoing.").

Appeals from denials of absolute (and qualified, sovereign, and double jeopardy) immunity immediately divest the district court of jurisdiction because these immunities entitle the affected defendant to avoid the burdens of litigation altogether, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), including pretrial discovery. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."). "[I]f further district court proceedings would violate the very right being asserted in the appeal taken under the collateral order doctrine," such as claims of absolute immunity, "then the pendency of the appeal does oust the district court of authority to proceed." 16A CHARLES ALAN WRIGHT & ARTHUR R. MILLER FEDERAL PRACTICE & PROCEDURE § 3949.1 (5th ed. 2026). "The key point is that once jurisdiction passes to the court of appeals, the district court generally lacks power to act with respect to matters encompassed within the appeal, and actions taken by the district court in violation of this principle are null and void." *Id.*

For its part, the D.C. Circuit has applied the *Griggs* principle broadly, recognizing only narrow exceptions—not relevant here—such as when an appeal is frivolous or taken from a non-

2

appealable order. *United States v. DeFries*, 129 F.3d 1293, 1302-1303 (D.C. Cir. 1997).

> The relationship between district court jurisdiction and the issuance of the appeals court mandate is clear and well-known: The filing of a notice of appeal, including an interlocutory appeal, "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, (1982). The district court does not regain jurisdiction over those issues until the court of appeals issues its mandate. *Johnson v. Bechtel Associates Professional Corp.*, 801 F.2d 412, 415 (D.C.Cir.1986) (per curiam).

*Id.* at 1302.

Notably, in the context of immunity appeals, the D.C. Circuit's precedents—including an earlier appeal in this matter—establish that President Trump cannot be required to bear the burdens of merits discovery before final resolution of his immunity defense. *See Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023) ("President Trump therefore must be afforded an opportunity to resolve his immunity claim before merits discovery"); *Princz v. Fed. Republic of Germany,* 998 F.2d 1, 1 (D.C. Cir. 1993) (holding "appellant's emergency motion for stay of all proceedings in the district court" to be "unnecessary" because appeal from order denying sovereign immunity defense automatically effected such a stay). These decisions are consistent with the Supreme Court's recognition in *Coinbase* that "in the analogous contexts of qualified immunity and double jeopardy, moreover, district courts likewise must automatically stay their proceedings while the interlocutory appeal is ongoing."). 599 U.S. at 742 & n.4 (collecting cases so holding).

Thus, this Court lacks jurisdiction while President Trump's claim of absolute immunity is on appeal. An automatic stay of further proceedings is in effect,[1] and the Court must refrain from taking any action which moves towards resolution of the merits. Judge Chutkan has so held:

---

[1] The "[*Coinbase*] Court explained that this 'automatic stay' is, well, automatic. As the name implies, and as other contexts confirm, an automatic stay is self-executing." *City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265, 269 (4th Cir. 2025).

> As the D.C. Circuit recently made clear, a former President's absolute immunity would constitute "an entitlement not to stand trial or face the other burdens of litigation," *such as discovery obligations*. *Blassingame v. Trump*, No. 22-5069, 87 F.4th 1, 29 (D.C. Cir. Dec. 1, 2023) (citation omitted). Thus, because Defendant has appealed this court's denial of that immunity, "whether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Coinbase*, 599 U.S. at 741, 143 S.Ct. 1915 (quotation omitted). Consequently, the court agrees with both parties that Defendant's appeal *automatically stays any further proceedings* that would move this case towards trial or impose additional burdens of litigation on Defendant. Accordingly, and for clarity, the court hereby STAYS the deadlines and proceedings scheduled by its Pretrial Order, as amended.

*United States v. Trump*, 706 F. Supp. 3d 91, 93 (D.D.C. 2023) (cleaned up, emphasis added). That analysis and application of the relevant law was correct. Although an automatic, mandatory stay is in effect, this Court should nonetheless, for clarity, also stay all proceedings going to the merits of the claims against President Trump, including discovery.

*   *   *

Moreover, the contours of this stay must extend beyond a mere prohibition of discovery against the President personally. Plaintiffs' conspiracy allegations are far reaching, and their claims against President Trump are inextricably intertwined with their claims against the other defendants. As such, *Coinbase* requires a stay as to merits discovery involving any claim touching on President Trump, including—but not limited to—the conspiracy claims. Because the benefit of absolute immunity is the "entitlement not to stand trial *or face the other burdens of litigation*,"[2] allowing further merits proceedings as to Plaintiffs' claims of conspiracy will require President Trump to choose between abstaining from discovery—and risking prejudice (e.g., if a witness is deposed and becomes unavailable before President Trump can cross-examine)—or forsake the protection of absolute immunity to preserve his interests. That choice is untenable. As the Supreme Court has explained, a stay of discovery against a defendant claiming immunity but not against

---

[2] *Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023) (emphasis added).

4

related co-defendants is, as a practical matter, likely to be illusory for the defendant who is required to be protected from the burdens of litigation, and therefore unacceptably burdens immunity rights:

> Our rejection of the careful-case-management approach is especially important in suits where Government-official defendants are entitled to assert the defense of qualified immunity. The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery."
>
> * * *
>
> It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

*Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009) (internal citations omitted). For these reasons, a total stay of discovery is required by both *Griggs* and its progeny and the necessity to avoid undercutting the "basic thrust" of the absolute immunity doctrine.

The need for a total stay of discovery here to preserve President Trump's immunity benefits is not hypothetical or speculative. It is the result of Plaintiffs' claims against him. Each Plaintiff has asserted conspiracy claims purporting to make President Trump liable for the actions of all alleged co-conspirators. Those broad conspiracy claims against the President (as well as any other claims that are advanced against the President and some or all of his co-defendants)—which are on appeal—cannot be distinguished or separated from the claims against the other defendants. For example, the very first sentence in the *Lee v. Trump* complaint reads: "On and before January 6, 2021, the Defendants Donald J. Trump, Rudolph W. Giuliani, Proud Boys, and Oath Keepers conspired to incite an assembled crowd to march upon and enter the Capitol of the United States for the common purpose of disrupting, by the use of force, intimidation and threat, the approval by Congress of the count of votes cast by members of the Electoral College …." Dkt. No. 1 at ¶ 1.

5

And the sole claim that the *Lee* Plaintiffs advance is against all defendants for a conspiracy under 42 U.S.C. § 1985(1). *Id.* at ¶¶ 133-141. There is therefore complete overlap between the claims against President Trump and the identical claims against his co-defendants. Similarly, by way of further example, former Rep. Swalwell's complaint purports to bring nine claims "Against All Defendants," beginning with a § 1985(1) conspiracy claim. (Case No. 1:21-cv-00586-APM, Dkt. No. 1.). Again, complete overlap. The remaining complaints are all similar in this respect.

As a practical matter, the claims against President Trump's co-defendants cannot be litigated without the discovery covering the same facts and issues underlying the claims against him. Every deposition question, every subpoena, every interrogatory, every document request, and every request for admission would be calculated to prove or disprove a conspiracy or other tort in which President Trump allegedly took part and for which Plaintiffs seek to hold him liable. Given that the Plaintiffs seek to impose joint and several liability against the President for the alleged acts of the other defendants, discovery focused on those acts would be tantamount to discovery against the President. Because (a) the claims against the President are required to be stayed under *Griggs* and *Coinbase*, and (b) as *Iqbal* held the Court must take a practical, rather than formalistic, approach that protects a defendant who asserts an immunity defense from the burdens of litigation, the pendency of the appeals stays all discovery.

In other words, because of the complete or near-complete overlap between allegations against President Trump and those against the other defendants, whether or not President Trump is the nominal responding party, every bit of discovery would be against him on the claims under appeal and therefore is part of what is at issue on appeal. Where, as here, "there is no ascertainable line between that discovery needed in the case of the claims against [the other defendants] and the claims [against President Trump]," "the discovery stay should generally extend to all discovery in

this case." *K.M. v. Alabama Dep't of Youth Servs.,* 209 F.R.D. 493, 495 (M.D. Ala. 2002) (staying all discovery in case while some but not all defendants advanced immunity defenses on appeal because the claims against the appealing defendants were too intertwined with those against other defendants to be segregated).[3]

This Court should hold that an automatic stay of discovery is required because the total (or near-total) overlap between the allegations against President Trump and those against his co-defendants mean that "the entire case is essentially 'involved in the appeal." *Coinbase,* 599 U.S. at 741 (quoting *Griggs*, 459 U.S. at 58)*.*

## II.    ALTERNATIVELY, SOUND JUDICIAL DISCRETION FAVORS A STAY OF ALL DISCOVERY.

In addition to the law requiring an automatic discovery stay here, such a stay is warranted as a prudential matter. "The fact that the issuance of a stay is left to the court's discretion 'does not mean that no legal standard governs that discretion.'" *Id.* at 434 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Indeed, "a motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Martin*, 546 U.S. 132, 139 (2005). In particular, trial courts must be mindful to protect the "basic thrust" of absolute immunity "so that officials are not subjected to unnecessary and

---

[3] *Accord, e.g., American Future Fund, Inc. v. New York State Bd. of Elections*, 25 Civ. 8151 (JHR), 2025 WL 3782963 at *1 (S.D.N.Y. Dec. 31, 2025) ("'As there will likely be overlap between' the remaining issues for this Court to decide and those before the Second Circuit, a stay of the entire action is 'merited pending resolution of Defendants' appeal.'" (quoting *Edrei v. City of New York*, 16 Civ. 1652 (RWS), 2017 WL 3822744 at *2 (S.D.N.Y. Aug. 31, 2017)); *Nat'l Rifle Assoc. of Am. v. Vullo*, 1:18-CV-0566, 2022 WL 152534 at *5 (N.D.N.Y. Jan. 18, 2022) ("There is merit to Defendant Vullo's concern that no matter how narrowly the NRA may tailor discovery as to Defendant Cuomo, Defendant Vullo would need to participate to protect her rights on the chance the appeal is denied, thereby defeating her putative qualified immunity rights. *See Iqbal,* 556 U.S. at 685-86. This warrants a global discovery stay."); *Sosa v. Hames*, No. 05-23079-CIV-TURNOFF, 2006 WL 1284927, at *1 (S.D. Fla. May 3, 2006) (staying entire case where claims on appeal "inextricably linked to the claims against" remaining defendants).

burdensome discovery or trial proceedings." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). In this connection, the Supreme Court has identified four factors that courts must take into consideration, with the first two most heavily weighed:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003), abrogated on other grounds by *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 (2009).

"These factors interrelate on a sliding scale and must be balanced against each other." *Serono Laboratories, Inc. v. Shalala,* 158 F.3d 1313, 1318 (D.C. Cir.1998). The test is a flexible one and "[a] stay may be granted with either a high probability of success and some injury, or vice vers.." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir.1985). A moving party need not establish an absolute certainty of success, rather "[i]t will ordinarily be enough that the [movant] has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation...." *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir.1986).

It is settled law that discovery should not be allowed pending the resolution of an immunity question. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until [the] threshold immunity question is resolved, discovery should not be allowed"). As the Supreme Court has recognized, immunity serves the important purpose of protecting a defendant from the burdens of litigation, including discovery, to which he may not be properly subject. *Iqbal*, 556 U.S. at 685-86 (rejecting arguments that discovery can be allowed to proceed against parties other than the assertedly immune defendant because of the likelihood that such discovery would, as a practical

8

matter, gut immunity's intended protection against the burdens of litigation); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (because qualified immunity provides "immunity from suit rather than a mere defense to liability… [the immunity] is effectively lost if a case is erroneously permitted to go to trial.").

Here, the balance favors a complete stay. *First*, President Trump's appeal as to his claim of absolute immunity raises, at a minimum, a serious, substantial legal question. Indeed, the President's appeal raises a fundamental constitutional question going to the heart of Article II Section 3 of the United States Constitution and implicates the separation of powers between the Executive and the Judiciary.

*Second*, if this Court permits discovery against President Trump, or even allows discovery necessitating his involvement, the President will be immediately and irreparably harmed. Absolute immunity confers an "entitlement not to stand trial or face the other burdens of litigation." *Blassingame*, 87 F.4th 1, 29 (D.C. Cir. 2023). Once President Trump must engage in "the other burdens of litigation," he will irrevocably forfeit his entitlement, thus constituting an irreparable injury. This injury is both certain and actual. As explained above, the Supreme Court has rejected any suggestion that allowing discovery to proceed among other parties in the absence of the party asserting immunity can be squared with immunity's "basic thrust." *Iqbal*, 556 U.S. at 685–86.

*Third,* the requested stay will not injure the other parties interested in these proceedings. Indeed, as this court previously acknowledged, "[a]lthough Plaintiffs claim that delay will prejudice them, such prejudice is substantially diminished by the extensive public record that already has been compiled about the President's actions before and on January 6th." *Smith v. Trump*, Doc. 180 at 2. Since that stay was entered, the record has only been developed further, and Plaintiffs have the benefit of extensive immunity discovery. This substantial public and privately

9

compiled record not only answers any concerns about delay, but also minimizes the prospect that relevant evidence will become unavailable. Ultimately, "[a] mere assertion of delay does not constitute substantial harm," and a mere assertion of delay is all that supports Plaintiffs' opposition to staying these matters pending resolution of President Trump's appeal. *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003).

*Fourth*, the public interest favors a stay. To be sure, the public has a vested interest in safeguarding the President from unnecessary distractions, and that this "litigation presents questions of 'extraordinary public moment' [is] a consideration which [also] militates in favor of a stay." *Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 211, 218 (D.D.C. 2021) (quoting *Al-Adahi v. Obama*, 672 F. Supp. 2d 81, 84 (D.D.C. 2009)).

Without a full stay of all discovery, President Trump will, as *Iqbal* recognized, impermissibly be forced as a practical matter to attend to discovery notwithstanding the Court's lack of jurisdiction to order his participation—and in violation of the immunity protection to which he is entitled. Or, if any discovery moves forward ostensibly only as to the claims against other defendants—which mirror those against President Trump—without the President's participation, if his appeal were denied, discovery would have to be re-conducted with his participation or else he would seek to preclude Plaintiffs from using against him any discovery taken without his participation. A complete stay avoids this dilemma and the potential for duplicative litigation, is necessary to vindicate the President's absolute immunity rights, and will allow the case to proceed efficiently and with full participation of the appropriate parties at the appropriate time.

## CONCLUSION

For the foregoing reasons, discovery in this proceeding neither can nor should proceed pending the completion of the appeals.

10

Dated April 29, 2026

Respectfully submitted,

Joshua Halpern, *pro hac vice*
**JH Legal PLLC**
1100 H Street, NW, Suite 840
Washington, D.C. 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

Jonathan M. Shaw, D.C. Bar No. 446249
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206
jshaw@dhillonlaw.com

Michael J. Walsh, Jr., D.C. Bar No. 483296
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
mike.walsh@us.dlapiper.com

Caryn G. Schechtman, *pro hac vice*
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4500
caryn.schechtman@us.dlapiper.com

*Attorneys for President Donald J. Trump*

/s/ *Jesse R. Binnall*
Jesse R. Binnall, VA022
Jason C. Greaves, DC Bar No. 1033617
Gerald A. Urbanek, Jr., VA191
Jared Roberts, FL00153
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
jesse@binnall.com
jason@binnall.com
gerald@binnall.com
jared@binnall.com

11

*Attorneys for President Donald J. Trump, Donald J. Trump for President, Inc., and Make America Great Again PAC*

## CERTIFICATE OF SERVICE

I certify that on April 29, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

_/s/ Jesse R. Binnall_____
Jesse R. Binnall, VA022

*Attorneys for President Donald J. Trump, Donald J. Trump for President, Inc., and Make America Great Again PAC*

13