# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARBARA J. LEE, et al.,

                Plaintiffs,

   vs.

DONALD J. TRUMP, et al.,

                Defendants.

**Case No. 1:21-cv-00400-APM**

***Consolidated Cases:***
1:21-cv-00858 (APM)
1:23-cv-00038 (APM)
1:22-cv-00034 (APM)
1:22-cv-00010 (APM)
1:21-cv-2265 (APM)
1:21-cv-00586 (APM)
1:22-cv-00011 (APM)

## <u>THE UNITED STATES' MOTION TO STAY</u>

**TABLE OF CONTENTS**

**INTRODUCTION**.......................................................................................................................... 1

**BACKGROUND** ........................................................................................................................... 2

**ARGUMENT**................................................................................................................................ 4

I.    Supreme Court Precedent Mandates A Stay of All District Court Proceedings While the Interlocutory Appeals Over Immunity Are Ongoing. ............................................................ 5

II.   District Court Proceedings Must Also Be Stayed Pending Appeal As to the Other Parties in *Smith* and *Lee*. ...................................................................................................................... 9

**CONCLUSION** ............................................................................................................................ 14

i

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................... 8, 12, 13

*Behrens v. Pelletier*,
  513 U.S. 1142 (1995) ............................................................................................. 12

*Carswell v. Camp*,
  54 F.4th 307 (5th Cir. 2022) ................................................................................. 13

*Chamber of Com. of U.S. v. S.E.C.*,
  443 F.3d 890 (D.C. Cir. 2006) ................................................................................ 5

*Chang v. United States*,
  246 F.R.D. 372 (D.D.C. 2007) ................................................................................ 9

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023)........................................................................................ passim

*Couser v. Somers*,
  No. 18-cv-1221, 2019 WL 802038 (D. Kan. Feb. 21, 2019)................................ 12

*Dombrowski v. Eastland*,
  387 U.S. 82 (1967) .................................................................................................. 8

*Elmaghraby v. Ashcroft, No.*,
  04cv1809, 2005 WL 2375202 (E.D.N.Y. Sept. 27, 2005)..................................... 11

*Goshtasby v. Bd. of Trs. of Univ. of Ill.*,
  123 F.3d 427 (7th Cir. 1997) ................................................................................... 8

*Griggs v. Provident Consumer Disc. Co.*,
  459 U.S. 56 (1982)........................................................................................... 1, 4, 5

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)............................................................................................ 7, 9

*Huynh v. Sutter Health*,
  No. 20-cv-1757, 2021 WL 2268889 (E.D. Cal. June 3, 2021) ............................... 9

*In re LTV Sec. Litig.*,
  89 F.R.D. 595 (N.D. Tex. 1981) ............................................................................ 11

*In re Sealed Case*,
  77 F.4th 815 (D.C. Cir. 2023)................................................................................. 5

*Jones v. Clinton*,
  879 F. Supp. 86 (E.D. Ark. 1995)............................................................... 8, 10, 11

*Loumiet v. United States*,
  315 F. Supp. 3d 349 (D.D.C. 2018) ..................................................................... 12

*Lucero v. City of Aurora*,
  No. 23-cv-00851, 2023 WL 5957126 (D. Colo. Sept. 13, 2023)..................... 12, 13

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
  470 U.S. 373 (1985)................................................................................................ 5

*McCoy v. McCormick*,
  No. 22-cv-443, 2022 WL 4227239 (M.D. La. Sept. 13, 2022)............................. 12

*McMahon v. Presidential Airways, Inc.*,
  502 F.3d 1331 (11th Cir. 2007) .............................................................................. 9

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ................................................................................................ 7
*Montoya on behalf of SM v. Espanola Pub. Sch. Dist. Bd. of Educ.*,
  No. CV 10-cv-651, 2010 WL 11618928 (D.N.M. Dec. 22, 2010) ........................................ 13
*Osborn v. Haley*,
  549 U.S. 225 (2007) ................................................................................................ 3
*Seaside Farm, Inc. v. United States*,
  842 F.3d 853 (4th Cir. 2016) ..................................................................................... 9
*Second Amend. Found. v. U.S. Conf. of Mayors*,
  274 F.3d 521 (D.C. Cir. 2001) ................................................................................... 10
*Siegert v. Gilley*,
  500 U.S. 226 (1991) ................................................................................................ 7
*Sydnes v. United States*,
  523 F.3d 1179 (10th Cir. 2008) .................................................................................. 9
*Thornburg v. Williamson County*,
  No. 21-cv-00172, 2021 WL 2227390 (W.D. Tex. June 2, 2021) ....................................... 12
*Trump v. United States*,
  603 U.S. 593 (2024) ................................................................................................ 7
*Tuck v. Pan Am. Health Org.*,
  668 F.2d 547 (D.C. Cir. 1981) ................................................................................... 8
*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*,
  865 F. Supp. 2d 1 (D.D.C. 2011) ............................................................................... 10
*United States v. DeFries*,
  129 F.3d 1293 (D.C. Cir. 1997) ................................................................................. 5

**Statutes**

9 U.S.C. § 16(a) ......................................................................................................... 5
28 U.S.C. § 1292(b) .................................................................................................... 4
28 U.S.C. § 2679(b)(1) ................................................................................................ 7
28 U.S.C. § 2679(d) .................................................................................................... 3
42 U.S.C. § 1985(1) .................................................................................................... 2

**INTRODUCTION**

At this juncture, nothing further can or should happen in this Court in this case—least of all disruptive and untenable discovery directly against the sitting President of the United States. This Court's April 20, 2026, minute order contemplates such discovery and more against the President and putative co-conspirators. Any further district court proceedings cannot transpire, however. Supreme Court precedent mandates a stay of all proceedings in this Court while the D.C. Circuit considers whether President Trump is absolutely immune from further proceedings.

Defendants timely appealed the Court's March 31, 2026, Order, which as relevant here (1) denied President Trump's assertion of absolute constitutional immunity from suit; and (2) rejected the President's absolute statutory immunity from damages under the Westfall Act. Under Supreme Court precedent, the appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). That well-settled rule applies even more forcefully in the context of immunity—a context the Supreme Court drew upon in *Coinbase* because denials of immunity have always been immediately appealable, and such appeals have always halted district court proceedings in the meantime. If the D.C. Circuit correctly concludes that the President is entitled to constitutional immunity as to the underlying claims at issue, all of the underlying cases must end, and the President must be spared the burdens of further litigation in the meantime. The same goes for the President's statutory immunity under the Westfall Act. District courts cannot embark on further proceedings that would compromise the point of immunity when appellate courts are in the process of deciding whether that immunity applies. "[T]he entire case is [now] essentially involved in the appeal,"

because "whether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Coinbase*, 599 U.S. at 741 (internal quotations and citation omitted).

Defendant United States of America thus respectfully moves to stay all proceedings in the above-captioned consolidated cases pending resolution of the interlocutory appeals from the Court's March 31, 2026, Memorandum Opinion and Order (ECF Nos. 219, 220, and 224).

## BACKGROUND

As the Court is well aware, these eight consolidated cases arose when several current and now-former Members of Congress, Capitol Police Officers, and Metropolitan Police Department Officers brought eight separate lawsuits against President Trump, asserting a variety of federal statutory and state law claims involving the events of January 6, 2021.[1] This Court later consolidated all eight cases for discovery on presidential immunity and, if necessary, merits discovery. *See, e.g.*, Minute Order, *Tabron*, No. 22-cv-00011 (D.D.C. Apr. 17, 2024).

These cases all follow a similar playbook. In each, Plaintiffs sued the President in his individual capacity under 42 U.S.C. § 1985(1), accusing him of conspiring with others to prevent Congress from certifying the 2020 presidential election. In seven cases (all but *Lee*), Plaintiffs also assert claims under District of Columbia law, including "assault and battery" claims that accuse the President of aiding and abetting tortious conduct. In six cases (all but *Lee* and *Smith*), President Trump is the only remaining defendant (aside from the United States, which has sought to be substituted under the Westfall Act). In *Smith* and *Lee*, the other remaining defendants include the Trump Campaign, various campaign officials, and private individuals and entities alleged to be involved in a putative conspiracy helmed by President Trump.

---

[1] *Lee v. Trump*, No. 21-cv-00400 (D.D.C.); *Smith v. Trump*, No. 21-cv-02265 (D.D.C.); *Swalwell v. Trump*, No. 21-cv-00586 (D.D.C.); *Blassingame v. Trump*, No. 21-cv-00858 (D.D.C); *Moore v. Trump*, No. 22-cv-00010 (D.D.C.); *Kirkland v. Trump*, No. 22-cv-00034 (D.D.C.); *Tabron v. Trump*, Case No. 22-cv-00011 (D.D.C.); *Garza v. Trump*, No. 23-cv-00038 (D.D.C.).

On January 26, 2023, this Court ordered a stay of discovery as to President Trump in all eight cases, noting that "permitting discovery to proceed . . . while the question of absolute immunity remains unresolved is inconsistent with the broad and protective purposes of official acts immunity." *Smith*, 21-cv-2265, ECF 180, at 2. Any prejudice to Plaintiffs from a stay, this Court said, was "diminished by the extensive public record that already has been compiled about the President's actions before and on January 6th." *Id.* However, this Court permitted merits discovery to commence against other defendants in *Smith*.

Shortly after his inauguration, on January 24, 2025, President Trump moved for summary judgment based on his constitutional immunity for official acts. The President further moved for reconsideration of the Court's earlier denial of his motion to dismiss on First Amendment grounds. *See Lee*, 21-cv-400, ECF Nos. 144 & 145. The motions applied to all claims against the President in all eight cases.

On March 20, 2025, the United States filed notices under the Westfall Act, 28 U.S.C. § 2679(d), certifying that President Trump was acting in the scope of his employment as President and substituting the United States for the President as to the state-law claims in *Blassingame*, *Swalwell*, *Smith*, *Moore*, *Tabron*, *Kirkland*, and *Garza*. *See Smith*, No. 21-cv-2265, ECF 376. By virtue of the Westfall Act notices, "[t]he United States . . . must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn v. Haley*, 549 U.S. 225, 231 (2007).

On May 13, 2025, this Court granted the parties' joint motion to modify the existing scheduling order governing discovery. *See Smith*, 21-cv-2265, ECF 393. The Court stayed all depositions or further discovery against the Government pending the Court's resolution of

3

Plaintiffs' motion to strike the Westfall Act notices, and President Trump's official-acts immunity and First Amendment motions. *See id.* The Court's prior stay of discovery as to President Trump also remained in effect. *Id.* Thus, the only discovery permitted at that juncture in *Smith* was (1) document discovery against defendants other than the President or the Government, (2) non-party discovery under Rule 45, and (3) the completion of outstanding document subpoenas already issued to the Government. *See id.*

On March 31, 2026, this Court granted Plaintiffs' motion to strike the Westfall Act certifications; largely denied the President's motion for summary judgment as to official-act immunity; and denied in full his motion to reconsider the First Amendment ruling. *See Lee*, 21-cv-400, ECF 219.

President Trump and the Government promptly filed interlocutory appeals. The President appealed the Court's denial of presidential immunity, and the United States appealed the Court's Westfall Act ruling. *Id.* ECF 220 & 224. Under 28 U.S.C. § 1292(b), the Court certified its ruling on President Trump's First Amendment defense as appropriate for interlocutory appeal, and the President has filed a petition in the D.C. Circuit for permission to appeal the certified question.

## ARGUMENT

This Court must stay all pending proceedings. The Supreme Court has repeatedly held that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase*, 599 U.S. at 740 (quoting *Griggs*, 459 U.S. at 58). Here, the interlocutory appeals concern whether the President is immune under the Constitution and the Westfall Act such that the cases against him cannot proceed. That immunity-based appeal is the textbook example of when district-court proceedings must halt in the meantime. Nothing can proceed as to the President himself, nor can putative co-conspirators

4

face discovery or further proceedings. This Court thus lacks jurisdiction to proceed in any way—let alone to greenlight discovery against the President and others—while those appeals are pending.

## I.    Supreme Court Precedent Mandates A Stay of All District Court Proceedings While the Interlocutory Appeals Over Immunity Are Ongoing.

**A**. Well-settled legal principles require staying all district-court proceedings here. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 59; *see also*, *e.g.*, *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 389 (1985) (same). Once that notice is timely filed, a "district court does not regain jurisdiction over those issues" on appeal "until the court of appeals issues its mandate." *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (per curiam) (identifying two inapplicable exceptions, for frivolous appeals or "non-appealable order[s]"); *In re Sealed Case*, 77 F.4th 815, 828 n.4 (D.C. Cir. 2023). This principle "is clear, well-established, and grounded in solid considerations of efficient judicial administration." *DeFries*, 129 F.3d at 1303; *see also Chamber of Com. of U.S. v. S.E.C.,* 443 F.3d 890, 897 (D.C. Cir. 2006). The Supreme Court in *Griggs* thus emphasized that "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." 459 U.S. at 58.

More recently, the Supreme Court in *Coinbase* applied these longstanding principles and held that when a party files an interlocutory appeal over arbitrability pursuant to 9 U.S.C. § 16(a) (which authorizes such appeals), the district court must stay all proceedings because "the entire case is essentially 'involved in the appeal.'" 599 U.S. at 741. In so holding, the Court declined to distinguish the "threshold question of arbitrability" from the "merits of the underlying disputes," even if the latter was "severable" from arbitrability. *Id.* at 747. "Because the question on appeal

is whether the case belongs in arbitration or instead in the district court," the Supreme Court reasoned, "the entire case is essentially involved in the appeal." *Id.* at 741. In particular, the Court emphasized, "[i]f the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along." *Id.* at 743.

Of particular importance here, in holding that a stay of all district-court proceedings was mandatory, the Court drew on "the analogous contexts of qualified immunity and double jeopardy," where federal circuit courts have uniformly recognized that district courts "must automatically stay their proceedings while the interlocutory appeal is ongoing." *Id.* at 742 & n.4 (collecting cases). In these circumstances, district courts lack any discretion to continue with proceedings that are bound up with the appeal; a stay is mandatory. *Id.* at 742, 747.

**B.**  Those established principles strip this Court of jurisdiction and mandate a stay of all further proceedings until the President and the Government's appeals concerning constitutional and statutory immunity are resolved. Bedrock principles of immunity—the denial of which has always been immediately appealable, and has always triggered a stay of district-court proceedings—buttress that conclusion. Any appeal over an absolute immunity places "essentially" "the entire case" in front of the court of appeals. *Coinbase*, 599 U.S. at 741. If the defendant is immune, he cannot face suit; the appeal divests the district court of jurisdiction in the meantime so that he is not forced to forgo all of the protections of that immunity and face litigation burdens while the question of his immunity gets settled on appeal. The Supreme Court

has long recognized those principles even in the qualified-immunity context. *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Here, the President claims absolute constitutional immunity from suit. Presidents have absolute immunity "from civil damages liability for acts within the outer perimeter of his official responsibilities" as well as immunity from criminal prosecution for official actions. *Trump v. United States*, 603 U.S. 593, 606 (2024). Further, the President is statutorily immune from suit; the United States has sought under the Westfall Act to substitute itself as defendant for all the claims brought against the President under District of Columbia law. In addition, Presidents— like other governmental employees—enjoy complete statutory immunity under the Westfall Act against individual tort liability for acts "while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Upon certification by the Attorney General, or his delegee, "that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the United States "shall be substituted" as the sole defendant, and the suit "shall be deemed an action against the United States" under the Federal Tort Claims Act (FTCA). *Id.* § 2679(d)(1).

Where two such absolute immunities are at issue, a stay of all further district-court proceedings is absolutely required. "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Thus, if this Court were to move "forward with pre-trial and trial proceedings" as the immunity appeals unfold, "many of the asserted benefits of" those immunities "would be irretrievably lost." *Coinbase*, 599 U.S. at 743. Launching discovery against the President and forcing other pretrial proceedings to unfold while the D.C. Circuit is determining whether the President is

7

immune from these suits would "largely defeat[] the point of the appeal[s]," "create[] the possibility that the district court will waste scarce judicial resources," and potentially invoke "the worst possible outcome for the parties and the courts: litigating a dispute in the district court only for the court of appeals to reverse and order the dispute" dismissed on immunity grounds. *Id.* at 743. In the Supreme Court's words, the right to an interlocutory appeal "without an automatic stay of the district court proceedings [would be] like a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible." *Id.*

Accordingly, under that principle—and inherent in the concept of immunity—is that where, as here, "a public official takes an interlocutory appeal to assert a colorable claim to absolute or qualified immunity from damages, the district court must stay proceedings." *Goshtasby v. Bd. of Trs. of Univ. of Ill.*, 123 F.3d 427, 428 (7th Cir. 1997). "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009). And *absolute* immunity doctrines warrant at least as much (if not more) solicitude.

That conclusion is well-settled in practice, too. The district court thus stayed all further proceedings pending appeal when President Clinton raised immunity (even for what turned out to be unofficial acts) in *Jones*, even for a defendant with "nothing to appeal" and who did not advance any immunity claim. *Jones v. Clinton*, 879 F. Supp. 86, 88 (E.D. Ark. 1995). In particular, the district court held, "there is no question that the Court is required to stay discovery against the President pending appeal." *Id*. Similar conclusions abound. "[I]mmunity, where justly invoked, properly shields defendants 'not only from the consequences of litigation's results but also from the burden of defending themselves.'" *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)). "The value of

any kind of immunity, applied here as a jurisdictional bar [under the FTCA], declines as litigation proceeds." *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 861 (4th Cir. 2016).[2]

Likewise, the Supreme Court has adamantly rejected the notion that district courts can proceed with discovery before an immunity appeal is resolved—whether that appeal involves constitutional or statutory immunity. Until "threshold immunity question[s are] resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818. As one court aptly summarized, in such cases, "the United States would be prejudiced by having to expend time and resources participating in discovery in a case where the claims against it (if substituted for [the individual defendant]) are premature under the FTCA." *Huynh v. Sutter Health*, No. 20-cv-1757, 2021 WL 2268889, at *7 (E.D. Cal. June 3, 2021). In short, while the D.C. Circuit is adjudicating the Defendants' assertions of presidential and Westfall Act immunity, they may not be subjected to the burdens of district court litigation of any sort.

A stay of further proceedings—including discovery—is thus indisputably required for the six cases here (*Blassingame*, *Garza*, *Kirkland*, *Moore*, *Tabron*, and *Swalwell*) that solely challenge President Trump's actions and solely target him as a defendant. Thus, "the entire case is essentially 'involved in the appeal.'" *Coinbase*, 599 U.S. at 741.

## II.      District Court Proceedings Must Also Be Stayed Pending Appeal As to the Other Parties in *Smith* and *Lee*.

Two additional cases (*Smith* and *Lee*) involve other defendants besides the President. Those cases, too, must be stayed. Certainly, they must be stayed as to the President; the many

---

[2] *See also, e.g.*, *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1339 (11th Cir. 2007) ("Courts have recognized a number of immunities from suit, all of which protect important interests that would be irrevocably lost if the holder of the immunity were erroneously required to stand trial."); *Sydnes v. United States*, 523 F.3d 1179, 1186 (10th Cir. 2008) ("[S]overeign immunity . . . entitles a [sovereign] not only to protection from liability, but also from suit, including the burden of discovery."); *see Chang v. United States*, 246 F.R.D. 372, 373 (D.D.C. 2007) ("[B]ecause a . . . decision to initiate prosecution is subject to absolute immunity, [defendants] are equally shielded from discovery[.]").

aspects of those cases involving presidential conduct for which President Trump is entitled to absolute constitutional or statutory immunity cannot proceed. Further, the interlocutory appeals also divest this Court of authority to continue proceedings against the other defendants in *Smith* and *Lee*, where the plaintiffs charged numerous individuals and entities as President Trump's putative co-conspirators—including Defendants Rudolph Guliani, Proud Boys, Oath Keepers, Warboys, Enrique Tarrio, Stop the Steal, Ali Alexander, Brandon Straka, Roger Stone, Ethan Nordean, Joseph Biggs, Zachary Rehl, Charles Donohoe, Dominic Pezzola, Stewart Rhodes, Thomas Caldwell, Jessica Watkins, Kelly Meggs, Alan Hostetter, Russel Taylor, Erik Warner, Felipe Martinez, Derek Kinnison, Ronald Mele, and "John Does 1-10."  Plaintiffs' broad conspiracy allegations have woven together the claims against the President and non-immune defendants to such a degree that "the entire case" now is "essentially" involved in the appeal. *See Coinbase*, 599 U.S. at 741. Proceeding with discovery, even as to non-immune defendants, would contravene settled precedent and the very purpose and protection of the absolute constitutional and statutory immunities at issue.

Plaintiffs' claims here, even as to the non-immune defendants, are inseparable from the alleged conduct forming the basis of the Government and President Trump's appeals. All claims revolve around the same supposed wide-ranging "conspiracy" between these other defendants and President Trump, the "central figure" of these cases. *Jones*, 879 F. Supp. at 88. The crux of any conspiracy is "an agreement between two or more persons." *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). A "fundamental aspect of determining" if one individual or entity "joined a conspiracy" requires "understanding of the nature and scope of that conspiracy." *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 865 F. Supp. 2d 1, 9 (D.D.C. 2011). Further discovery, even as to other defendants, thus inherently implicates the

10

President himself and his potential liability, which is why a defendant in a conspiracy may challenge discovery even as to co-conspirators or third parties. *See In re LTV Sec. Litig.*, 89 F.R.D. 595, 604-05 (N.D. Tex. 1981) (acknowledging defendant's right to challenge discovery directed at alleged co-conspirators where discovery invades a privilege or implicates a personal right). Allowing that discovery to proceed thus puts the President (or any other immune party) to the untenable choice of having to participate further in litigation and thereby shoulder the very burdens that his immunity is supposed to shield against.

Underscoring the problem, it is hard to fathom how any discovery as to other defendants could be cordoned off from the President's putative liability. It is difficult to imagine how Plaintiffs could, for example, depose current and former Executive Branch officials, like the President's former Chief of Staff, his daughter, or his son-in-law, without inquiring into the President's own conduct in a manner that would be relevant to his own liability. At best, such officials would have "to limit" their "testimony" to not encompass the President, which "would be a hollow shell." *Jones*, 879 F. Supp. at 88. Every one of these cases "revolve[s] around the alleged actions of" President Trump, and there is no way to disaggregate Plaintiffs' claims against him or the Government from any other defendant. *Id.*

The Supreme Court's decision in *Iqbal* vividly illustrates that there is no way to cabin the proceedings to the other defendants without prejudicing and burdening the President and the United States. There, Attorney General Ashcroft and FBI Director Mueller were the only defendants who sought Supreme Court review, though the plaintiffs also pressed claims against the United States and 32 other defendants in district court. *Elmaghraby v. Ashcroft*, No. 04cv1809, 2005 WL 2375202, at *1 (E.D.N.Y. Sept. 27, 2005). The Supreme Court rejected the notion that, through "careful case management," a district court could adequately protect a

federal official's immunity protections by allowing discovery *only* against *other* defendants, saying "[i]t is no answer . . . to say that discovery [against Ashcroft and Mueller] can be deferred while pretrial proceedings continue for other defendants." *Iqbal*, 556 U.S. at 685. Instead, the Court endorsed a complete stay of discovery as to *all* defendants until the question of immunity was resolved. *See id.* at 685-86; *see also Behrens v. Pelletier*, 513 U.S. 1142 (1995) (staying all district court proceedings, to include FTCA claims against the Government, pending a resolution of an individual official's entitlement to qualified immunity through a petition for certiorari). Countless other courts have followed that same approach.[3]

This Court should follow that consensus. This Court was previously "not convinced" that *Iqbal* required staying discovery against non-immune defendants, *see Smith*, 21-cv-2265, ECF 180, at 2, but that was at a much different posture. For one, the Government had not yet filed its Westfall Act notices, which prompted this Court to circumscribe its prior order by granting the parties' joint motion to stay further discovery against the Government. *See Smith*, 21-cv-2265, ECF 393. Moreover, this Court's prior order was not made in the context of a motion to stay pending appeal and pre-dated the Supreme Court's decision in *Coinbase*.

---

[3] *See Loumiet v. United States*, 315 F. Supp. 3d 349, 353 (D.D.C. 2018) (staying all discovery pending appeal, even as to FTCA claims not on appeal, because "[t]he Supreme Court urges caution where discovery may entangle individuals potentially protected by qualified immunity"); *Lucero v. City of Aurora*, No. 23-cv-00851, 2023 WL 5957126, at *4 (D. Colo. Sept. 13, 2023) ("[A]fter *Iqbal*, the law is clear that discovery should be stayed upon assertion of . . . immunity, even for those defendants not asserting the defense."); *McCoy v. McCormick*, No. 22-cv-443, 2022 WL 4227239, at *3 (M.D. La. Sept. 13, 2022) (finding "no plausible manner in which bifurcated discovery could proceed with respect to any prospective defendants who do not raise any immunity defenses without implicating, and unduly burdening, the defendants who . . . have raised immunity defenses"); *Thornburg v. Williamson County*, No. 21-cv-00172, 2021 WL 2227390, at *2 (W.D. Tex. June 2, 2021) ("When a stay of discovery is warranted for certain parties asserting . . . immunity, discovery should be stayed as to all parties."); *Couser v. Somers*, No. 18-cv-1221, 2019 WL 802038, at *4 (D. Kan. Feb. 21, 2019) ("Even if the Court could somehow parse out specific claims on which to move forward with discovery, a number of opinions . . . have found bifurcated discovery to be inefficient, impractical, and prejudicial.").

Meanwhile, moving ahead with further discovery now would saddle the President and the Government with the very types of burdens that courts have refused to countenance when immunity questions are unresolved. The Government and President Trump's "attorneys would have to monitor ongoing discovery; participate in depositions; and keep abreast of all discovery developments to ensure that 'the case does not develop in a misleading or slanted way that causes prejudice to their position.'" *Montoya on behalf of SM v. Espanola Pub. Sch. Dist. Bd. of Educ.*, No. CV 10-cv-651, 2010 WL 11618928, at *2 (D.N.M. Dec. 22, 2010) (quoting *Iqbal*, 556 U.S. at 685–86). The actions of the President that give rise to governmental liability "would remain front and center" during such discovery, regardless of if it is sought from a party who does not assert an immunity. *Lucero*, 2023 WL 5957126, at *4 ("[A]s shown in the written discovery [plaintiff] has already sought to propound, [defendant's] actions will be the object of information specifically requested."). Courts across the country have rejected such burdens even as to lower-level governmental officials. *See, e.g.*, *Carswell v. Camp*, 54 F.4th 307, 313 (5th Cir. 2022) ("[T]he district court would have allowed Carswell to proceed with discovery on her *Monell* claim, including by noticing depositions for all eight of the individual defendants asserting qualified immunity. *Iqbal* squarely forecloses that[.]"). Burdening the President in this fashion would greatly exacerbate the constitutional offense.

In sum, whether to stay further proceedings does not present a close question. From the Supreme Court on down, courts have resoundingly held that when (as here) an appeal involves immunity from suit, district court proceedings must stop. That holds both as to the President and to the other defendants here. Any other outcome would defy precedent, render immunities a dead letter, transgress bedrock constitutional principles, and untenably subject the sitting President to burdensome litigation and discovery.

13

**CONCLUSION**

For the foregoing reasons, this Court must stay all proceedings while the interlocutory appeals are ongoing.


Dated: May 1, 2026                              Respectfully submitted,

                                                BRETT A. SHUMATE
                                                Assistant Attorney General
                                                Civil Division

                                                JONATHAN D. GUYNN
                                                Deputy Assistant Attorney General
                                                Torts Branch

                                                PAUL E. WERNER
                                                Assistant Director, Torts Branch

                                                REGINALD M. SKINNER
                                                Senior Trial Counsel, Torts Branch

                                                By: */s/ Connor J. Hackert*
                                                CONNOR J. HACKERT
                                                Trial Attorney
                                                United States Department of Justice
                                                Torts Branch, Civil Division
                                                P.O. Box 7146, Ben Franklin Station
                                                Washington, D.C. 20044-7146
                                                Tel: (202) 616-4332
                                                Email: connor.hackert@usdoj.gov

14

**CERTIFICATION OF SERVICE**

I certify that on May 1, 2026, the foregoing was filed electronically through ECF/CM, served on ECF participating parties via ECF, and served on non-ECF participants by mail or other appropriate means.

By: */s/ Connor J. Hackert*
CONNOR J. HACKERT
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4332
Email: connor.hackert@usdoj.gov