# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA J. LEE, *et al.*,<br><br>               Plaintiffs,<br><br>v.<br><br>PRESIDENT DONALD J. TRUMP, *et al.*,<br><br>               Defendants. | **Case No. 21-cv-00400 (APM)**<br><br>***Consolidated Cases:***<br>*21-cv-00586 (APM)*<br>*21-cv-00858 (APM)*<br>*21-cv-02265 (APM)*<br>*21-cv-00010 (APM)*<br>*21-cv-00011 (APM)*<br>*21-cv-00034 (APM)*<br>*21-cv-00038 (APM)* |

**PRESIDENT DONALD J. TRUMP'S BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION OF THE COURT'S HOLDING ON PRESIDENT
TRUMP'S 2:24 PM TWEET ON JANUARY 6, 2021, OR IN THE ALTERNATIVE, FOR
CERTIFICATION FOR INTERLOCUTORY APPEAL**

Joshua Halpern, *pro hac vice*
**JH Legal PLLC**
1100 H Street, NW, Suite 840
Washington, D.C. 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

Jonathan M. Shaw, D.C. Bar No. 446249
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206
jshaw@dhillonlaw.com

Michael J. Walsh, Jr., D.C. Bar No. 483296
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
mike.walsh@us.dlapiper.com

Jesse R. Binnall, VA022
Jason C. Greaves, DC Bar No. 1033617
Gerald A. Urbanek, Jr., VA191
Jared Roberts, FL00153
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
jesse@binnall.com
jason@binnall.com
gerald@binnall.com
jared@binnall.com

Caryn G. Schechtman, *pro hac vice*
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4500
caryn.schechtman@us.dlapiper.com

*Attorneys for President Donald J. Trump*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.     The Pending Immunity Appeals Divest This Court of Authority to Alter Any
Immunity-Related Ruling. ...................................................................................... 4

II.    Plaintiffs Identify No New Law and No Newly Discovered Evidence. ............................. 5

III.   Plaintiffs Cannot Show Clear Error. ....................................................................... 6

IV.   Plaintiffs' Alternative Request for Certification Under § 1292(b) Should Be Denied. ....... 9

CONCLUSION.................................................................................................................. 10

CERTIFICATE OF SERVICE ......................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Al Maqaleh v. Gates*,
620 F. Supp. 2d 51 (D.D.C. 2009) ...................................................................................9

*APCC Servs., Inc. v. Sprint Commc'ns Co.*,
297 F. Supp. 2d 90 (D.D.C. 2003) ...................................................................................8

*Blassingame v. Trump*,
87 F.4th 1 (D.C. Cir. 2023) ...........................................................................................7, 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) (Brennan, J., dissenting) ...............................................................6

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ...............................................................................................1, 3, 4

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) ...............................................................................................1, 3, 4

*Lindke v. Freed*,
601 U.S. 187 (2024) ........................................................................................................6

*Pfeiffer v. U.S. Department of Energy*,
No. 20-cv-2924, 2023 WL 4405158 (D.D.C. July 7, 2023) ..........................................3

*Singh v. Am. Ass'n of Retired Persons, Inc.*,
2020 WL 4039118 (D.D.C. July 17, 2020) .....................................................................3

*Snyder v. Phelps*, ...........................................................................................................6
562 U.S. 443, 453 (2011)

*Trs. of the Iam Nat'l Pension Fund v. M & K Emple. Sols., LLC*,
694 F. Supp. 3d 54 (D.D.C. 2023) ...............................................................................3, 5

*Trump v. United States*,
603 U.S. 593 (2024) .............................................................................................1, 2, 6, 8

*United States v. DeFries*,
129 F.3d 1293 (D.C. Cir. 1997) ......................................................................................4

*Waggel v. George Wash. Univ.*
957 F.3d 1364 (D.C. Cir. 2020) ......................................................................................6

*Wannall v. Honeywell Int'l, Inc.*,
 292 F.R.D. 26 (D.D.C. 2013) ..................................................................................................3

*U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*,
 893 F. Supp. 2d 258 (D.D.C. 2012) ..................................................................................3, 4, 9

*Wuterich v. Murtha*,
 562 F.3d 375 (D.C. Cir. 2009) ...............................................................................................1

**Statutes and Rules**

28 U.S.C. § 1292(b) .......................................................................................................3, 4, 9, 10

Fed. R. Civ. P. 56(c)(3), (e)(3) ..................................................................................................6

Fed. R. Civ. P. 62.1(a) ..................................................................................................1, 3, 5, 10

Fed. R. Civ. P. 54(b) ...................................................................................................1, 2, 3, 5

**INTRODUCTION**

Plaintiffs' motion for reconsideration should be denied. Plaintiffs ask the Court to reconsider a correctly decided portion of the Court's March 31, 2026 Memorandum Opinion and Order ("Order"): the proper holding that President Trump's 2:24 p.m. tweet on January 6, 2021, just like his Rose Garden remarks and his 6:01 p.m. tweet that followed, fell within the outer perimeter of his official responsibilities and therefore cannot be used to prove Plaintiffs' claims. *See* ECF No. 219 at 54-58; *see also Trump v. United States*, 603 U.S. 593, 630–32 (2024).

Plaintiffs' motion fails at the threshold because the Court lacks jurisdiction to entertain it. President Trump has appealed the Order's presidential immunity ruling, and the United States has appealed the closely related Westfall Act ruling. *See* ECF Nos. 220, 224; ECF No. 229 at 1-5. Those appeals divest this Court of jurisdiction over every issue in any way related to, or bound up in the official-acts immunity inquiry, including Plaintiffs' incorrect request to recategorize the 2:24 p.m. tweet as unofficial conduct, which it was not. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58-59 (1982); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740-43 (2023); *Wuterich v. Murtha*, 562 F.3d 375, 380-82 (D.C. Cir. 2009) (same for appeal of Westfall certification). The Court should thus deny the motion on this jurisdictional basis alone, or, at minimum, defer consideration under Rule 62.1 because the pending appeals will resolve the official-acts immunity standard that governs Plaintiffs' motion.

Plaintiffs' reconsideration request also fails under Rule 54(b). They identify no intervening change in controlling law, nor any newly discovered evidence. Instead, they advance new (and still unavailing) arguments on old evidence—arguments that they could have raised before but chose not to. They ask the Court to improperly reweigh the same record it already considered—principally the Select Committee report and the parties' summary-judgment submissions—and to

1

somehow draw different conclusions from it. Rule 54(b) does not authorize a second round of summary-judgment briefing.

Plaintiffs also fail to show clear error. The tweet's content only further proves that it was official. The President was addressing the Vice President, Congress, and the public. He spoke on matters of public concern, including constitutional and statutory certification duties, and the possibly counterproductive effects of further protests. That is more than enough under *Trump v. United States*, 603 U.S. 593 (2024). It is also enough under the standard applied by this Court, based on objective, context-specific record facts: the President had returned to the White House; White House advisors were advocating for a public statement on the unfolding events at the Capitol; and the challenged tweet was one of several post-rally communications this Court evaluated together with the 6:01 p.m. tweet and the Rose Garden remarks, all of which were official acts. *See* Order at 54-55. No matter the test for official-acts immunity, the Court properly concluded that the tweet fell within the outer perimeter of the President's official responsibilities. Plaintiffs' preference for a different inference does not establish clear error.

Plaintiffs likewise cannot escape Rule 54(b)'s stringent requirements by wrongly arguing that President Trump never put the 2:24 p.m. tweet at issue. The President's summary-judgment motion established immunity for all @realDonaldTrump communications alleged in the complaints, including tweets concerning Congress, the Vice President, and the events at the Capitol. *See* Def.'s Summ. J. Mem. at 28, 34-36, ECF No. 144.1. The Court understood his motion the same way: it treated the post-rally tweets as part of the immunity question and analyzed them separately from his pre-rally Twitter activity. *See* March 31, 2026 Mem. Opinion at 18, 54-55, ECF No. 219.

Finally, the Court's ruling that the 2:24 p.m. tweet is official conduct satisfies none of the requirements for certification under 28 U.S.C. § 1292(b). Plaintiffs' disagreement with that fact-bound ruling does not create the kind of genuine legal dispute §1292(b) contemplates. Moreover, interlocutory review would only complicate and slow the immunity appeals already pending before the Court of Appeals.

## STANDARD OF REVIEW

A motion to reconsider a denial of summary judgment is evaluated under Rule 54(b). *Singh v. Am. Ass'n of Retired Persons, Inc.*, 2020 WL 4039118, at *1 (D.D.C. July 17, 2020). "The judicial interest in finality disfavors reconsideration, but a Court may do so 'as justice requires.'" *Trs. of the Iam Nat'l Pension Fund v. M & K Emple. Sols., LLC*, 694 F. Supp. 3d 54, 84-85 (D.D.C. 2023) (quoting *Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 30 (D.D.C. 2013)). "Although this standard is flexible and allows a district court to exercise broad discretion, there must be good reason to reconsider an issue already litigated by the parties and decided by the court, such as new evidence, a patent misunderstanding by the Court, clear error, or intervening changes in controlling law." *Id.* at 85. The burden rests with the movant to demonstrate that reconsideration is appropriate and that harm or injustice would result if the motion were denied. *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012). Motions for reconsideration "are not vehicles for either reasserting arguments previously raised and rejected by the Court or presenting arguments that should have been raised previously with the Court." *Pfeiffer v. U.S. Department of Energy*, No. 20-cv-2924, 2023 WL 4405158, at *2 (D.D.C. July 7, 2023).

Furthermore, a notice of appeal divests the district court of control over the aspects of the case involved in the appeal. *Griggs*, 459 U.S. at 58-59; *Coinbase*, 599 U.S. at 740-43. If a timely motion seeks relief that the district court lacks authority to grant because an appeal has been docketed and is pending, Rule 62.1 permits the Court to defer consideration, deny the motion, or

3

state that it would grant the motion or that the motion raises a substantial issue if the court of appeals remands. Fed. R. Civ. P. 62.1(a).

## ARGUMENT

Plaintiffs' motion fails for three reasons. *First*, President Trump's pending immunity appeal and the United States' Westfall Act appeal divest this Court of authority to reconsider its immunity ruling. *Second*, Plaintiffs identify no new law and no newly discovered evidence that would justify reconsideration. *Third*, Plaintiffs cannot show clear error: the Court correctly held that the 2:24 p.m. tweet can reasonably be understood as official conduct. The Court should also deny Plaintiffs' alternative request for § 1292(b) certification because it is fact-bound, non-dispositive, and would disrupt the appeals already pending.

## I.    The Pending Immunity Appeals Divest This Court of Authority to Alter Any Immunity-Related Ruling.

Plaintiffs' motion should be denied at the threshold. "The filing of a notice of appeal is an event of jurisdictional significance"—it "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58-59; *accord Coinbase*, 599 U.S. at 740. Once a timely notice of appeal is filed, the district court does not regain jurisdiction over the issues on appeal until the court of appeals issues its mandate. *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997). That divestiture rule has special force in the immunity context, where the issue on appeal is freedom from the burdens of litigation itself. *Coinbase,* 599 U.S. at 741-743.

Here, President Trump has appealed the Order's presidential immunity ruling, and the United States has appealed the closely related Westfall Act ruling. *See* ECF Nos. 220, 224; ECF No. 229 at 1-5; Order at 75-76. The D.C. Circuit's resolution of those appeals will define the legal framework for determining whether any given conduct is or is not immune—the very inquiry this

4

Court undertook with respect to the 2:24 p.m. tweet. Plaintiffs are essentially asking this Court to reconsider an immunity determination while the D.C. Circuit considers the very law that governs that determination. The Court lacks jurisdiction to do so and should deny the motion or, at a minimum, defer it pending resolution of the appeals. *See* Fed. R. Civ. P. 62.1.

**II.        Plaintiffs Identify No New Law and No Newly Discovered Evidence.**

Rule 54(b) authorizes reconsideration only on a limited set of grounds, such as an intervening change in controlling law, newly discovered evidence, an oversight by the court, or clear error. *See Trs. of the IAM Nat'l Pension Fund*, 694 F. Supp. 3d at 84-85. Plaintiffs do not come close to satisfying any of those grounds.

Plaintiffs identify no intervening change in controlling law and no newly discovered evidence. Instead, they rely entirely on record materials that were available to them at summary judgment. *See* Pls' Mot. to Recons. at 7-16, ECF No. 228. Nor do Plaintiffs point to any material fact the Court overlooked. To the contrary, the Court expressly considered the very evidence they now highlight, including the Select Committee report and the events leading up to the President issuing the 2:24 p.m. tweet. *See* March 31, 2026 Mem. Opinion Order at 2-3, 54-55, 77, ECF No. 219. Rehashing the same record under the same *Blassingame* framework the Court already applied is not the kind of "good reason" required to revisit an interlocutory ruling. *See Nat'l Pension Fund,* 694 F. Supp. 3d at 84-85.

Plaintiffs also cannot excuse their failure by arguing that President Trump did not seek immunity for the tweet. That is not an exception to Rule 54(b). Further, in any event, it is wrong. President Trump's summary-judgment brief argued that "President Trump's communications on his Twitter account also fell within the outer perimeter of presidential authority," Def.'s Summ. J. Mem. at 28, ECF No. 144.1, and that he was entitled to "absolute civil immunity for any tweet"

5

implicating Article II authority or the outer perimeter of his executive authority, *id.* The summary-judgment brief then made the point unmistakable: "President Trump's use of his Twitter account, as alleged in the Complaints, was official conduct for which President Trump is entitled to absolute civil immunity." Def.'s Summ. J. Mem. at 36, ECF No. 144.1. Thus, the Court did not grant relief on a matter President Trump failed to present; it resolved the immunity status of a Twitter communication that Plaintiffs placed in the case and that President Trump correctly argued was immune.

Plaintiffs also err in arguing that the Court may not consider contextual evidence from the record not cited by either party. Pls' Mot. to Recons. at 1, ECF No. 228 (arguing for reconsideration because "'[n]either side has offered specific facts' about the 2:24 p.m. tweet."). "Rule 56(e)(3) grants district courts discretion to go beyond facts cited by the moving party." *Waggel v. George Wash. Univ.* 957 F.3d 1364, 1377 n.4 (D.C. Cir. 2020); *see also* Fed. R. Civ. P. 56(c)(3), (e)(3). Whether or not the President has the burden of either proof or production, he still easily met both by arguing that the tweets were immune when the totality of the evidence in the record—explicitly cited or not—establishes that they are immune as a matter of law. *Id.* Further, although the Court may properly consider any evidence in the record, Plaintiffs were "not free to ignore supporting evidence that the record clearly contained." *Celotex Corp. v. Catrett*, 477 U.S. 317, 336 (1986) (Brennan, J., dissenting).

### III.     Plaintiffs Cannot Show Clear Error.

Plaintiffs do not come close to showing clear error. Rather, "objective analysis of 'content, form, and context,'" *Trump,* 603 U.S. at 598 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)), underscores that the Court was correct and that the tweet was official. The tweet's content proves that the President exercised his "broad power to speak on matters of public concern," namely, the

6

"fairness and integrity of federal elections," and that he "'communicated with the Vice President' and with 'Members of Congress about the exercise of their official duties regarding the election certification.'" *Id.* at 627, 604. Its content also shows that the President communicated to the public that he understood their pain, but the matter was finished—Pence had failed to do his duty, and further protests in Congress could be counterproductive. That alone establishes that the tweet is official. The form—a publicized tweet on an account likely to be monitored by the Vice President, Congress, and the public—further confirms this conclusion. *See Lindke v. Freed*, 601 U.S. 187, 188, 196 (2024).

The Court's broader analysis of context supports the same result. The Court grouped the 2:24 p.m. tweet with the other communications that the President made after the protests at the Capitol began—the Rose Garden video and the 6:01 p.m. tweet. At that time, the President was in "the White House dining room and remained there until early evening," and he issued the 2:24 p.m. tweet from that setting. March 31, 2026 Mem. Opinion at 54-55, ECF No. 219. The Court considered location together with the other contextual factors—such as timing, the unfolding events at the Capitol, the lockdown, the pause in Congressional proceedings, the contemporaneous advocacy by White House advisors for a public statement, the 6:01 p.m. tweet, and the Rose Garden video prepared with White House staff and a government recording device. *See id;* Def.'s Summ. J. Mot., Ex. 34, ECF No. 144-39 at NARA_PROD_043172 (Meadows scheduling email); Def.'s Summ. J. Mot., Ex. 36, ECF No. 144-41 at NARA_PROD_042380-83 (event schedule); *Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023). In that specific setting, the Court correctly recognized that the 2:24 p.m. tweet was clearly an official act. Accordingly, the Court correctly found that even "based on context alone," the 2:24 p.m. tweet "fall[s] within the outer perimeter of President Trump's official responsibilities." *Id.* at 55.

7

The Court's context-driven analysis supports the content-driven analysis and thus reaches the correct result under *Trump.* Additionally, it is plainly correct even under the pre-*Trump* standard articulated by *Blassingame*: if an "objective, context-specific assessment yields no sufficiently clear answer in either direction," the President "should be afforded immunity." 87 F.4th at 21. The Court correctly noted that where one reasonable construction of the conduct is official, "it need not be the only or best one." March 31, 2026 Mem. Opinion at 16, ECF No. 219. Here, the construction determining that the tweet is official is both a plausible one and the best one.

Plaintiffs' efforts to discount the Court's consideration of the President's location—while largely ignoring the rest of the surrounding context present in the record and considered by the Court, *Id.* at 54–55—cannot establish clear error. Plaintiffs would weigh the record differently, but that is not grounds for reconsideration. The tweet could at least reasonably be understood as part of the President's response to a disruption of Congress's official proceedings—even if Plaintiffs believe the response was misguided—and that settles the issue.

Plaintiffs also twist *Trump v. United States* to argue that the tweet should be viewed as unofficial because, they argue, it is not clear that advisors were "involved in transmitting the electronic communication[s]." Pls' Mot. to Recons. at 13, ECF No. 228 (quoting 603 U.S. at 630). This turns *Trump* on its head. *Trump* made clear that the President must be able to take "bold and unhesitating action"—it could not possibly require that he run each tweet through a team of advisors or other layer of bureaucracy any time he addresses the public. 603 U.S. at 604. Vitally, *Trump* made clear that "most of a President's public communications are likely to fall comfortably within the outer perimeter of his official responsibilities"—not that each one must be carefully

vetted and approved by staffers. *Id.* at 629. The President must be free to agree or disagree with his advisors, and his actions could easily be viewed as an official response.

**IV.      Plaintiffs' Alternative Request for Certification Under § 1292(b) Should Be Denied.**

The Court should deny Plaintiffs' fallback request to certify a narrow factual dispute for interlocutory review. Section 1292(b) is a narrow departure from the final-judgment rule, available only when an interlocutory order "involves a controlling question of law," with "substantial ground for difference of opinion," and an immediate appeal would "materially advance the ultimate termination of [the] litigation." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 101 (D.D.C. 2003).

*First*, Plaintiffs do not identify a controlling question of law. Unlike the President, Plaintiffs do not question whether this Court articulated or even applied the correct test for official-acts immunity in its summary-judgment decision. To the contrary, they accept the Court's articulation of the legal test, and they disagree only on its application to the particular content, timing, location, and surrounding circumstances of the 2:24 p.m. tweet. Section 1292(b) does not exist to obtain immediate review of a district court's fact-bound application of legal principles with which the movant has no genuine dispute.

*Second*, Plaintiffs identify no substantial ground for difference of opinion. They contend that the Court should have weighed the facts differently, including the President's location, the timing of advisor requests, the similarity of the 2:24 p.m. tweet to earlier Pence-related tweets, and the alleged effect of the tweet on rioters. That is not a substantial ground for immediate appellate intervention. *See Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009) ("a party's own disagreement" with a ruling does not establish a substantial ground for difference of opinion).

9

*Third*, certification would not promote efficiency; it would only further complicate the appeals already pending. President Trump has appealed the Order's immunity ruling, and the United States has appealed the closely related Westfall Act ruling. *See* ECF Nos. 220, 224; ECF No. 229 at 4-5. Those appeals already present threshold questions about the standard governing presidential immunity, the official/unofficial line, and whether these suits may proceed against President Trump at all, which they should not be allowed to do. Plaintiffs' requested certification would not avoid piecemeal litigation; it would add a plaintiff-side appeal—and at least one additional round of briefing—about one record-specific sub-issue to pending immunity appeals that already divest this Court of authority over the aspects of the case on appeal.

## CONCLUSION

For these reasons, President Trump respectfully requests that the Court deny Plaintiffs' Motion for Reconsideration and deny Plaintiffs' alternative request for certification under 28 U.S.C. § 1292(b). To the extent the Court concludes that the pending appeals limit its authority to grant relief, the Court should deny or defer the motion under Rule 62.1 rather than disturb the March 31 ruling now before the D.C. Circuit.

Dated: May 14, 2026                                Respectfully submitted,

Joshua Halpern, *pro hac vice*
**JH Legal PLLC**
1100 H Street, NW, Suite 840
Washington, D.C. 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

Jonathan M. Shaw, D.C. Bar No. 446249
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206
jshaw@dhillonlaw.com

10

Michael J. Walsh, Jr., D.C. Bar No. 483296
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
mike.walsh@us.dlapiper.com

Caryn G. Schechtman, *pro hac vice*
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4500
caryn.schechtman@us.dlapiper.com


*/s/ Jesse R. Binnall*
Jesse R. Binnall, VA022
Jason C. Greaves, DC Bar No. 1033617
Gerald A. Urbanek, Jr., VA191
Jared Roberts, FL00153
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
jesse@binnall.com
jason@binnall.com
gerald@binnall.com
jared@binnall.com

*Attorneys for President Donald J. Trump*

11

## CERTIFICATE OF SERVICE

I certify that on May 14, 2026, a copy of the foregoing was filed with the Clerk of Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall, VA022

*Attorney for President Donald J. Trump*

12