**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BARBARA J. LEE, *et al.*,<br><br>               Plaintiffs,<br><br>v.<br><br>PRESIDENT DONALD J. TRUMP, *et al.*,<br><br>               Defendants. | **Case No. 21-cv-00400 (APM)**<br><br>***Consolidated Cases:***<br>*21-cv-00586 (APM)*<br>*21-cv-00858 (APM)*<br>*21-cv-02265 (APM)*<br>*21-cv-00010 (APM)*<br>*21-cv-00011 (APM)*<br>*21-cv-00034 (APM)*<br>*21-cv-00038 (APM)* |

**REPLY IN SUPPORT OF**
**JOINT MOTION TO STAY PENDING APPEAL**

Joshua Halpern, *pro hac vice*
**JH Legal PLLC**
1100 H Street, NW, Suite 840
Washington, D.C. 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

Jonathan M. Shaw, D.C. Bar No. 446249
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206
jshaw@dhillonlaw.com

Michael J. Walsh, Jr., D.C. Bar No. 483296
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
mike.walsh@us.dlapiper.com

Caryn G. Schechtman, *pro hac vice*
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4500
caryn.schechtman@us.dlapiper.com
*Attorneys for President Donald J. Trump*

Jesse R. Binnall, VA022
Jason C. Greaves, DC Bar No. 1033617
Gerald A. Urbanek, Jr., VA191
Jared Roberts, FL00153
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
jesse@binnall.com
jason@binnall.com
gerald@binnall.com
jared@binnall.com

*Attorneys for President Donald J. Trump, Donald J. Trump for President, Inc., and Make America Great Again PAC*

**INTRODUCTION**

Plaintiffs' opposition to Defendants' joint motion confirms the need for a full discovery stay. They offer no actual basis for subjecting President Trump to merits discovery while immunity appeals are pending in the D.C. Circuit, and they do not dispute that he is the sole remaining defendant in six of the eight cases. In *Smith* and *Lee*, the Plaintiffs wrongly allege that the President is the conspiracies' architect, and the other defendants, his alleged co-conspirators, are not parties to severable disputes.

That makes Plaintiffs' proposed carveout for non-Presidential discovery illusory. Any meaningful discovery would seek to prove the same President-focused issues: what President Trump allegedly knew, intended, or encouraged; what others allegedly did alongside him or at his direction; and whether those alleged acts support liability against him (they do not). Discovery nominally directed to alleged co-conspirators or third parties would thus be President-focused merits discovery, forcing him either to endure the litigation burdens his appeal is meant to prevent or to stand aside while Plaintiffs build a record against him. Under *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), and *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009), that is unacceptable and all discovery must be stayed.

Plaintiffs identify no authority permitting ongoing discovery on facts like these. The Court's January 2023 *Smith* order—a pre-*Coinbase* case-management ruling entered *before* President Trump's notice of appeal—did not address the mandatory jurisdictional stay now in effect. Plaintiffs' co-defendant cases fare no better; none involved the interlocking conspiracy claims at issue here. Every claim against President Trump requires proof of co-defendants' underlying conduct as a necessary element, so co-defendant discovery is not severable.

1

## ARGUMENT

### I.   Plaintiffs cannot avoid the automatic stay as to President Trump.

Plaintiffs try to recast this as an ordinary discretionary-stay dispute. It is not. Once President Trump filed his notice of appeal from the erroneous denial of absolute presidential immunity, this Court lost jurisdiction over the aspects of the case involved in that appeal. *Griggs*, 459 U.S. at 58. Further, where the appeal asks whether the defendant must litigate at all, as here, the district court must halt proceedings that impose the very burdens the appeal seeks to avoid. *Coinbase*, 599 U.S. at 740–43. This forecloses any further discovery against the President here.

Plaintiffs wrongly suggest *Coinbase* set forth an arbitration-only rule. But *Coinbase* applied the generally applicable *Griggs* principle and expressly relied on "the analogous contexts of qualified immunity and double jeopardy," where "district courts likewise must automatically stay their proceedings while the interlocutory appeal is ongoing." *Id.* at 742 & n.4, 746. When "whether 'the litigation may go forward in the district court is precisely what the court of appeals must decide,'" the district court may not proceed as though the answer were already yes. *Id.* at 741 (quoting *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997)).

That principle applies with special force here. Presidential immunity is "immunity from suit rather than a mere defense to liability," and it protects against "burdens of litigation," including discovery. *Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). That is why the D.C. Circuit has held that President Trump "must be afforded an opportunity to resolve his immunity claim before merits discovery." *Id.* Plaintiffs' contrary reliance on the *Coinbase dissent* underscores the weakness of their position. Pls.' Opp. to Mot. Stay Discovery Pending Appeal at 6, ECF No. 232 ("Pls.' Opp.").

Finally, Plaintiffs invoke *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989), wrongly arguing that an immunity appeal "may be ineffectual" where "the disposition is plainly correct." Pls.' Opp. at 6.

But the D.C. Circuit recognizes only two *Griggs* exceptions: frivolous appeals and appeals from non-appealable orders. *United States v. DeFries*, 129 F.3d 1293, 1302–03 (D.C. Cir. 1997). Plaintiffs do not (and cannot) contend that the immunity appeal is frivolous or improper. The Supreme Court has recognized that "most of a President's public communications are likely to fall comfortably within the outer perimeter of his official responsibilities," *Trump v. United States*, 603 U.S. 593, 629 (2024), and the speech at issue fits squarely within the President's bully-pulpit and Recommendations-Clause powers.

This analysis disposes of six of the eight consolidated cases outright. In all but *Smith* and *Lee*, President Trump is the sole remaining defendant. There is no co-defendant discovery to take. Any "case discovery" will by definition target the President. The immunity appeal asks whether the cases may proceed against him at all; until the D.C. Circuit answers, they cannot move forward.

## II.     The automatic stay must extend to all defendants in *Smith* and *Lee* because discovery in those cases is necessarily President-focused.

*Smith* and *Lee* are not different in substance. *Contra* Pls.' Opp. at 3. Plaintiffs have built their pleadings around President Trump, so discovery directed at any defendant will necessarily concern the President. In *Lee*, Plaintiffs wrongly allege a single cause of action—conspiracy under 42 U.S.C. § 1985(1)—against all defendants for a unitary conspiracy with President Trump at its center. *Lee* Am. Compl. ¶ 1, ECF No. 11.1. Plaintiffs leave no doubt who they claim drove it: "Defendant Trump 'summoned this mob, assembled the mob, and lit the flame of this attack. Everything that followed was his doing. None of this would have happened without the President.'" *Id.* ¶ 124. No claim in *Lee* is segregable from their goal of proving President Trump facilitated the alleged conspiracy. Any discovery will thus probe the conspiracy the President is falsely alleged to have orchestrated.

*Smith* presents the same structural problem. *Smith* Plaintiffs bring the identical § 1985(1) conspiracy claim (Count I) and likewise place President Trump at its center, wrongly alleging that "[r]esponding to [President] TRUMP's calls … other Defendants planned and coordinated among

themselves [to] … violently attack the United States Capitol." *Smith* Am. Compl. ¶ 6, ECF No. 89; *id.* ¶¶ 166–72. The complaint alleges "[e]ach Defendant"—including the President—agreed to commit the predicate acts of § 1985(1), *id.* ¶ 168, and that President "TRUMP agreed with" virtually every named defendant—even the ten unknown Doe defendants—to violate the statute. *Id.* ¶ 170(a).

The remaining *Smith* claims—battery (Count IV) and assault (Count V)—are similarly pleaded to try and implicate the President. Each pleads conduct by co-defendants and attempts to tie it to President Trump as the predicate for liability. Count IV wrongly alleges that "Defendants and others intentionally and unlawfully attacked Plaintiffs at the Capitol on January 6, 2021, … causing harmful or offensive bodily contact." *Id.* ¶ 200. The President is then falsely alleged to have "aided and abetted the batteries … as part of an overall illegal or tortious activity," *id.* ¶ 201, and to be "vicariously liable for the acts of" his alleged "agents, each of whom acted within the scope of their agency in committing this tort." *Id.* ¶ 202. Count V repeats the identical theory, substituting assault for battery. *Id.* ¶¶ 206-08. Underlying both counts is the false allegation that "the attackers (including many Defendants) made clear that they were acting at TRUMP's direction." *Id.* ¶ 142. Co-defendant discovery on these counts does not merely risk implicating the President—it would be aimed at building the evidentiary foundation for the case against him.

The Supreme Court in *Ashcroft v. Iqbal*, rejected the notion that discovery could proceed against co-conspirators without compromising a governmental defendant's immunity from suit: "It is *no answer* … that discovery [against the immune defendants] can be deferred while pretrial proceedings continue for other defendants." 556 U.S. at 685 (emphasis added). Co-defendant discovery would still require the President and his counsel to "ensure the case does not develop in a misleading or slanted way." *Id.* Plaintiffs dismiss *Iqbal's* analysis as "dicta," Pls.' Opp. at 4, but it was the Court's direct response to a proposed case-management solution for protecting immunity while permitting related proceedings to continue. In any event, this Court "*must* obey 'carefully considered language of the

4

Supreme Court, even if technically dictum.'" *Marin Audubon Soc. v. FAA*, 121 F.4th 902, 913 (D.C. Cir. 2024) (emphasis added, citations omitted).

*Iqbal*'s logic applies with even greater force here. Whereas *Iqbal* involved qualified immunity, this case involves absolute presidential immunity asserted by the sitting President in cases that make him the alleged hub of the entire scheme. Because presidential immunity is designed to protect a "'vigorous' and 'energetic' Executive," workarounds that "intrud[e] on the Article II interests that immunity seeks to protect" are unacceptable. *Trump*, 603 U.S. at 610, 618. Courts have repeatedly recognized under *Iqbal* that an assertion of immunity by one alleged co-conspirator requires a discovery stay as to all defendants. Opening Br. at 7–8 & n.3; *see, e.g.*, *Nat'l Rifle Ass'n of Am. v. Vullo*, 1:18-CV-0566, 2022 WL 152534, at *5 (N.D.N.Y. Jan. 18, 2022) ("global discovery stay" because immune defendant "would need to participate to protect her rights"); *American Future Fund, Inc. v. New York State Bd. of Elections*, 25 Civ. 8151 (JHR), 2025 WL 3782963, at *1 (S.D.N.Y. Dec. 31, 2025) (similar); *Lucero v. City of Aurora*, Civil Action No. 1:23-cv-00851-GPG-SBP, 2023 WL 5957126, at *4 (D. Colo. Sept. 13, 2023); *K.M. v. Alabama Dep't of Youth Servs.*, 209 F.R.D. 493, 495 (M.D. Ala. 2002).

Plaintiffs' non-conspiracy cases are inapt. *In re Flint Water Cases*, 960 F.3d 820 (6th Cir. 2020), involved separate claims against non-immune defendants, predated *Coinbase*, and the lone conspiracy count had been dismissed. *Alice L. v. Dusek*, 492 F.3d 563 (5th Cir. 2007), and *Lugo v. Alvarado*, 819 F.2d 5 (1st Cir. 1987), are similar: the non-appealing defendants had distinct theories of liability that did not require proving the immune defendant's participation. *Aska v. United States*, Case No. 23 CV 50004, 2024 WL 6864047 (N.D. Ill. June 21, 2024), turned on a concession that the claims were not "inextricably tied" to the appeal. None involved alleged conspiracies where every claim against the immune defendant requires proof of co-defendants' conduct, and every claim against co-defendants alleges agreement with the immune defendant as its center, as is the case here.

Plaintiffs' assertion that President Trump will "inevitably" be subject to discovery "as a party

5

or non-party" is wrong and beside the point. Pls.' Opp. at 11. If that argument sufficed, immunity from suit would disappear whenever an official had relevant knowledge. If the claims against the President are dismissed, as they should be, any attempt to seek third-party discovery would raise separate questions not before the Court. The actual question here is not whether Plaintiffs might one day secure discovery from President Trump, but whether they may impose President-focused litigation burdens on him today, while the D.C. Circuit decides whether he is immune from this litigation altogether. They may not.

Plaintiffs' appeal to three years of supposedly harmless co-defendant discovery only underscores why a stay is required now. *Id.*. Merits discovery to date has been limited, carefully cabined, and did not involve President Trump. Plaintiffs now seek full merits discovery: depositions of co-defendants, alleged co-conspirators, and third-party witnesses about the alleged conspiracy, overt acts, communications, and the President's alleged role. That discovery would not merely brush against the claims against President Trump that are on appeal; it would be designed to prove them.

### III.    The January 26, 2023, Order does not resolve this jurisdictional question.

Plaintiffs repeatedly invoke this Court's *Smith* Stay Order for the proposition that "the Court has already ordered discovery to proceed against all defendants except Trump." Pls.' Opp. at 1, 2, 7. They also contend "no intervening law undermines this Court's prior holding." *Id.* at 2. Both contentions are wrong.

**First**, the January 26, 2023 order was not a ruling on *Griggs* divestiture. It was a discretionary case-management ruling entered when no appeal existed; President Trump's notice of appeal was not filed until the next day. The order says nothing about whether the district court retains jurisdiction once an interlocutory immunity appeal has been filed (it does not).

**Second**, *Coinbase* is "intervening law." It was decided five months after the January 26 order and later notice of appeal. *Coinbase* makes clear that an automatic stay on the facts here is *mandatory*.

599 U.S. at 741-44, 746. Plaintiffs cannot credibly argue that a discretionary pre-*Coinbase* protective-order ruling forecloses application of a rule that the Supreme Court had not yet announced.

**Third**, Plaintiffs wrongly argue that Movants must satisfy the "reconsideration standard" because they seek to change the Court's prior order. Pls.' Opp. at 2. But the question is not whether the prior order should be "reconsidered" as a matter of discretion. It is whether this Court has jurisdiction to proceed while the appeal is pending. Jurisdiction cannot be conferred by a prior case-management order. The *Griggs* rule is not discretionary—it "applies regardless of how often courts might otherwise grant stays under the ordinary discretionary stay factors." *Coinbase*, 599 U.S. at 747; *Griggs*, 459 U.S. at 58 (a notice of appeal is "an event of jurisdictional significance").

## IV.    The discretionary factors independently favor a stay.

Even if the stay were not mandatory—and it is—the *Nken* factors favor the President. The appeal raises at minimum "serious legal questions" satisfying the first factor, *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986), and this Court's § 1292(b) certification of the First Amendment question found "substantial ground for difference of opinion." Irreparable harm is inherent: once the President is forced to bear the burdens of litigation, immunity's core protection "would be irretrievably lost." *Coinbase*, 599 U.S. at 743. *Carroll v. Trump*, 635 F. Supp. 3d 229 (S.D.N.Y. 2022), is inapposite as a pre-*Coinbase* appeal not involving the *Griggs* principle. Any harm to Plaintiffs is "substantially diminished by the extensive public record," which has only grown through immunity discovery, criminal prosecutions, and the Select Committee proceedings. Finally, the public interest in the orderly resolution of a fundamental constitutional question of presidential immunity outweighs any interest in accelerating potentially unnecessary discovery.

## CONCLUSION

For these reasons, the Court should rule that proceedings in these consolidated cases neither can nor should go forward pending resolution of the interlocutory appeals.

Dated: May 15, 2026

Respectfully submitted,

Joshua Halpern, *pro hac vice*
**JH Legal PLLC**
1100 H Street, NW, Suite 840
Washington, D.C. 20005
Telephone: (610) 405-5531
jhalpern@jhlegalpllc.com

Jonathan M. Shaw, D.C. Bar No. 446249
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206
jshaw@dhillonlaw.com

Michael J. Walsh, Jr., D.C. Bar No. 483296
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
mike.walsh@us.dlapiper.com

Caryn G. Schechtman, *pro hac vice*
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4500
caryn.schechtman@us.dlapiper.com

*Attorneys for President Donald J. Trump*


*/s/ Jesse R. Binnall*
Jesse R. Binnall, VA022
Jason C. Greaves, DC Bar No. 1033617
Gerald A. Urbanek, Jr., VA191
Jared Roberts, FL00153
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
jesse@binnall.com
jason@binnall.com
gerald@binnall.com
jared@binnall.com

8

*Attorneys for President Donald J. Trump, Donald J. Trump for President, Inc., and Make America Great Again PAC*

9

## CERTIFICATE OF SERVICE

I certify that on May 15, 2026, a copy of the foregoing was filed with the Clerk of Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jesse R. Binnall*
Jesse R. Binnall, VA022

*Attorney for President Donald J. Trump, Donald J. Trump for President, Inc., and Make America Great Again PAC*

10