**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA J. LEE et al., | |
| Plaintiffs, | |
| v. | |
| DONALD J. TRUMP et al., | Case No. 21-cv-00400 (APM) |
| Defendants. | (lead case) |
| | |
| ERIC SWALWELL, | |
| Plaintiff, | |
| v. | Case No. 21-cv-00586 (APM) |
| DONALD J. TRUMP et al., | (consolidated case) |
| Defendants. | |
| | |
| JAMES BLASSINGAME et al., | |
| Plaintiffs, | |
| v. | Case No. 21-cv-00858 (APM) |
| DONALD J. TRUMP, | (consolidated case) |
| Defendant. | |
| | |
| CONRAD SMITH et al., | |
| Plaintiffs, | Case No. 21-cv-02265 (APM) |
| v. | (consolidated case) |
| DONALD J. TRUMP et al., | |
| Defendants. | |

MARCUS J. MOORE et al.,

        Plaintiffs,

        v.

DONALD J. TRUMP,

        Defendant.

Case No. 22-cv-00010 (APM)

(consolidated case)

BOBBY TABRON et al.,

        Plaintiffs,

        v.

DONALD J. TRUMP,

        Defendant.

Case No. 22-cv-00011 (APM)

(consolidated case)

BRIANA KIRKLAND,

        Plaintiff,

        v.

DONALD J. TRUMP,

        Defendant.

Case No. 22-cv-00034 (APM)

(consolidated case)

SANDRA GARZA,

        Plaintiff,

        v.

DONALD J. TRUMP et al.,

        Defendants.

Case No. 22-cv-00038 (APM)

(consolidated case)

**PLAINTIFFS' REPLY IN SUPPORT OF**
**(1) RECONSIDERATION OF THE COURT'S HOLDING ON TRUMP'S 2:24 P.M.**
**TWEET, OR, IN THE ALTERNATIVE,**
**(2) CERTIFICATION OF THE ISSUE FOR INTERLOCUTORY APPEAL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT................................................................................................................... 2

    I.   Threshold issues do not foreclose the motion. .................................................... 3

        A.  This Court has jurisdiction to decide the motion. ......................................... 3

        B.  Rule 54(b) is routinely invoked in situations like this one........................... 4

    II.  Trump did not carry his summary-judgment burden as to the 2:24 p.m. tweet. ................. 6

    III. Trump fails to demonstrate that he was tweeting as an office holder rather than an office-seeking candidate at 2:24 p.m. ............................................................................. 8

        A.  Trump does not meaningfully dispute the evidence indicating the tweet was unofficial. ................................................................................................ 8

        B.  Trump does not demonstrate that the Court's advisor-involvement conclusion was correct. ................................................................................................... 9

        C.  Trump's location at the White House cannot carry the day. ....................... 11

    IV. In the alternative, the Court should certify the 2:24 p.m. tweet immunity question under § 1292(b). ......................................................................................... 12

CONCLUSION............................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
    19 F.4th 472 (D.C. Cir. 2021)...........................................................................................14

*\*Blassingame v. Trump*,
    87 F.4th 1 (D.C. Cir. 2023).............................................................1, 5, 6, 7, 9, 11, 13

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,
    630 F.3d 217 (D.C. Cir. 2011)...........................................................................................4

*Clinton v. Jones*,
    520 U.S. 681 (1997).....................................................................................................5, 11

*Cobell v. Jewell*,
    802 F.3d 12 (D.C. Cir. 2015).............................................................................................4

*Cobell v. Norton*,
    224 F.R.D. 266 (D.D.C. 2004)...........................................................................................5

*\*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023)......................................................................................................2, 3

*Forney v. Apfel*,
    524 U.S. 266 (1998)...........................................................................................................3

*\*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982).........................................................................................................2–4

*Humane Soc. of U.S. v. Johanns*,
    2007 WL 1810103 (D.D.C. June 21, 2007)......................................................................3

*In Def. of Animals v. Nat'l Insts. of Health*,
    543 F. Supp. 2d 70 (D.D.C. 2008)....................................................................................5

*Lindke v. Freed*,
    601 U.S. 187 (2024).........................................................................................................10

*Mahoney v. U.S. Capitol Police Bd.*,
    566 F. Supp. 3d 22 (D.D.C. 2022)....................................................................................4

*Osborn v. Haley*,
    549 U.S. 225 (2007)...........................................................................................................4

ii

*Roth v. King*,
   449 F.3d 1272 (D.C. Cir. 2006) ........................................................................14

*Trump v. United States*,
   603 U.S. 593 (2024) ..........................................................................6, 9, 10, 13

*United States v. Ibarra*,
   502 U.S. 1 (1991) ................................................................................................4

**Statutes**

28 U.S.C. § 1292(b) ...............................................................................................12

**Other Authorities**

*Fed. R. Civ. P. 54(b) ........................................................................................2, 4, 5

Fed. R. Civ. P. 56(c) ...............................................................................................8

Fed. R. Civ. P. 62.1(a) ...........................................................................................12

**INTRODUCTION**

The oppositions confirm that reconsideration is warranted. Neither President Trump nor the United States identifies anything in the record demonstrating: that @realDonaldTrump's 2:24 p.m. "Pence didn't have the courage" tweet was drafted, transmitted, organized, prompted by, or even influenced by White House advisors; that it could reasonably be construed as a statement to quell the violence at the Capitol; or that it was materially different from the earlier Pence-pressure tweets this Court held were unofficial campaign conduct. Nor does either opposition explain how Trump could have possibly carried his summary-judgment burden as to a tweet he did not specifically put at issue and as to which this Court correctly observed Trump had not "offered specific facts." Dkt. No. 219 at 54 (Memorandum Opinion and Order, hereinafter "Op.").

Trump's opposition responds with abstractions and generalizations: all @realDonaldTrump communications were supposedly at issue; the President was in the White House; advisors generally wanted a public statement; presidential communications often address matters of public concern; and the Court may consider uncited record evidence. But none of those broad assertions answers the central, context-focused inquiry. Under *Trump*, the classification of presidential communications—especially tweets—requires an objective, context-specific analysis of the particular communications at issue. Trump bore the burden to complete that analysis for this particular tweet. He did not do so. And he certainly cannot save himself by stating that the tweet is immune because its content demonstrates the "President exercised his broad power to speak on matters of public concern." Dkt. No. 235 at 6–7 (Trump's Opp'n to Pls.' Mot. for Recons., hereinafter "Trump Opp'n"). *Blassingame* expressly rejects a rule under which presidential speech on matters of public concern is automatically official. *Blassingame v. Trump*, 87 F.4th 1, 14–19 (D.C. Cir. 2023).

The United States' opposition sheds even less light on the required inquiry, focusing instead on the argument that the pending immunity appeals divest this Court of jurisdiction. Dkt. No. 234 at 1–2 (U.S.'s Opp'n to Pls.' Mot. for Recons., hereinafter "U.S. Opp'n"). But *Griggs* and *Coinbase* only divest the district court of jurisdiction over the issues involved in an appeal, and neither Trump nor the United States is appealing this Court's decision on the 2:24 p.m. tweet. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740–41 (2023). Nor does *Coinbase*'s other reasoning apply here. There, the parties sought to litigate a case on the merits while an appeal about the case's proper location remained unresolved. Here, the motion for reconsideration seeks to streamline appellate review that is almost certainly inevitable – and would be far more efficient at the current juncture.

If the Court declines reconsideration, Plaintiffs respectfully request that the Court certify the issue under 28 U.S.C. § 1292(b) so that the D.C. Circuit can review this important immunity question alongside the already pending appeals. Neither Trump nor the Government disputes that this Court has jurisdiction to certify the issue for appellate review, and certification would ensure that the Plaintiffs are not unnecessarily required to go to trial without evidence central to their claims.

## ARGUMENT

This Court is not jurisdictionally barred from deciding Plaintiffs' motion, and Rule 54(b) provides the appropriate mechanism for the reconsideration sought here. Fed. R. Civ. P. 54(b). This Court should grant the motion for two independent reasons: first, because Trump fails to demonstrate that he carried his summary-judgment burden as to the 2:24 p.m. tweet; and second, because (burden aside) Trump fails to demonstrate that the summary judgment record indicates

that he was tweeting as an office holder rather than an office-seeker at 2:24 p.m. In the alternative, the Court should certify the 2:24 p.m. tweet immunity question under § 1292(b).

## I. Threshold issues do not foreclose the motion.

### A. This Court has jurisdiction to decide the motion.

Trump and the United States are wrong that *Coinbase* and *Griggs* preclude jurisdiction. *Coinbase* invokes *Griggs* to explain that an appeal divests the district court of control over only "those aspects of the case involved in the appeal." *Coinbase*, 599 U.S. at 740; *Griggs*, 459 U.S. at 58–59. There, because the appeal concerned a motion to compel arbitration that the appellant had lost in full, "the entire case [was] essentially involved in the appeal." *Coinbase*, 599 U.S. at 741. But here, Trump did not lose the motion for summary judgment in full: He was granted immunity for his 2:24 p.m. tweet. Trump has not appealed that favorable aspect of this Court's ruling. Thus, this Court's decision on the 2:24 p.m. tweet is not "involved" in Trump's appeal. *Cf. Forney v. Apfel*, 524 U.S. 266, 271 (1998) (recognizing that a party may appeal only the adverse portions of a mixed ruling); *Humane Soc. of U.S. v. Johanns*, 2007 WL 1810103, at *3 (D.D.C. June 21, 2007) (holding portion of ruling not mentioned in Notice of Appeal is "clearly" not an "issue or aspect involved in the appeal" (citation modified)).

For this reason, the district court cases the United States cites for support are not persuasive. U.S. Opp'n 2 (citing *Georgia v. Ashcroft*, 195 F. Supp. 2d 25, 35–36 (D.D.C. 2002) and *United States v. Cisneros*, 26 F. Supp. 2d 24, 58–59 (D.D.C. 1998)). Unlike this case, they concern the same party filing a notice of appeal and a motion for reconsideration concerning the same issues.

In any event, the motion for reconsideration here is also unlike the proceedings (arbitration of the case's merits) that animated *Coinbase*'s rule, because it seeks to *streamline* appellate review. As *Griggs* explains, "to prevent unnecessary appellate review," the federal rules give district courts the "authority to entertain a timely motion to alter or amend the judgment . . . even after a notice

3

of appeal had been filed." *Griggs*, 459 U.S. at 59; *cf. United States v. Ibarra*, 502 U.S. 1, 5 (1991) (discussing favorable treatment of motions to reconsider because "district courts are given the opportunity to correct their own alleged errors, and allowing them to do so prevents unnecessary burdens being placed on the courts of appeals").

Plaintiffs seek to achieve that type of streamlining. Appellate review of this Court's holding on the 2:24 p.m. tweet is inevitable. But Plaintiffs' motion permits this Court to revise an erroneous holding in Trump's favor, which would, in turn, permit him to immediately appeal alongside his already-filed appeal; or, in the alternative, the motion permits this Court to certify the issue for interlocutory review, which would, in turn, permit Plaintiffs to immediately appeal alongside Trump's already-filed appeal. Thus, Plaintiffs' reconsideration motion cannot be shoehorned into *Coinbase*'s framework.[1]

### B.  Rule 54(b) is routinely invoked in situations like this one.

Trump attempts to narrow Rule 54(b) into a rigid requirement that Plaintiffs identify newly discovered evidence, intervening law, or clear error. Trump Opp'n 5–6. That is not the governing standard. Rule 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment," creating a standard more flexible than those governing final judgments. Fed. R. Civ. P. 54(b); *see Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015); *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). Thus, courts may reconsider if they "misunderstood the parties, strayed from the issues presented, or failed to consider . . . significant  . . . law or facts." *Mahoney v. U.S. Capitol Police Bd.*, 566 F. Supp. 3d

---

[1] The Government's standing to oppose this motion is dubious at best. It relies on *Osborn v. Haley* for support. *See* U.S. Opp'n 3; 549 U.S. 225, 231 (2007). But *Osborn* merely recognizes that the Court of Appeals had appellate jurisdiction to review both the district court's denial of Westfall Act Certification as well as its order remanding the case to state court, where the outcome of the former issue would inform the outcome of the latter. 549 U.S. at 231, 237.

4

22, 25 (D.D.C. 2022) (citation modified); *see Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). Reconsideration is also appropriate where the court made a decision beyond the adversarial issues presented or made an error in failing to consider controlling decisions or data. *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008).

Rule 54(b)'s standard is met here. As is discussed in Plaintiffs' motion for reconsideration and below in Section II, Trump's summary-judgment motion did not specifically seek immunity for the 2:24 p.m. tweet; and, as this Court recognized, Trump offered no tweet-specific facts about the tweet's circumstances. Op. 54. The Court nevertheless granted Trump immunity for the tweet based on two contextual observations: that Trump was at the White House and that he "was acting (or not) on the advice of White House advisors." *Id.* at 54–55. The first observation cannot carry the functional immunity inquiry. *See Clinton v. Jones*, 520 U.S. 681, 695 (1997). The second is not supported by clear record evidence and, in any event, appears to resolve an ambiguous factual situation by improperly drawing inferences in Trump's favor.

Trump's answer—that Plaintiffs identify no new law or new evidence—thus misses the point. Plaintiffs are not invoking Rule 54(b) to relitigate a final judgment. [2] They seek reconsideration because the Court decided a discrete immunity question beyond the scope of Trump's actual summary-judgment showing and relied on an unsupported factual inference. Rule 54(b)'s flexible standard exists to permit correction of precisely that kind of issue before final judgment.

---

[2] Rule 54(b) itself makes clear that a ruling on a single claim is *not* final unless the court "expressly determines" it is so. Fed. R. Civ. P. 54(b). This Court did not do so—nor did it even resolve a claim in its entirety. Thus, the issue here "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*

## II.    Trump did not carry his summary-judgment burden as to the 2:24 p.m. tweet.

Trump bore the burden to establish official-act immunity at summary judgment. *Blassingame*, 87 F.4th at 30. Thus, Trump had to show that, on an undisputed record, @realDonaldTrump's 2:24 p.m. tweet could reasonably be understood to be the official action of an office-holder rather than the unofficial action of an office-seeker. *Id.* at 30.

Trump failed to do so. His briefing addressed four categories of conduct: the Ellipse Speech, tweets leading up to January 6, outreach to state and local officials, and alleged failure to act. Dkt. No. 144-1 at 1–2. When his brief turned to tweets, it discussed tweets promoting the rally, the tweeted video of his Ellipse speech, and tweets directed at protesters urging peace. *Id.* at 34. The 2:24 p.m. tweet – inflaming the then-Capitol-breaching attackers by accusing Vice President Pence of lacking "the courage" to take steps that would help Trump overturn the electoral count and encouraging Trump's supporters to "demand" the truth – fits none of those categories.

Trump does not and cannot argue that his briefing mentioned the 2:24 p.m. tweet, let alone that he made any arguments or presented any undisputed facts as to whether it specifically is entitled to immunity. Instead, Trump now reframes his motion as having sought immunity for all @realDonaldTrump communications alleged in the complaints, or tweets implicating Article II authority.

But sprawling statements about blanket entitlements for all tweets to immunity are insufficient under the context-focused governing law and under this Court's own analysis. In *Trump v. United States,* the Supreme Court explained that whether tweets involve official conduct may depend on "the content and context of each," including "what else was said contemporaneous to the excerpted communications" and "who was involved in transmitting the electronic communications." 603 U.S. 593, 630 (2024). *Blassingame* likewise holds that a blanket contention that the president is acting in an exercise of Article II duties does not suffice: the "contention . . .

6

does not demonstrate that he was acting in his official capacity so much as presume it." 87 F.4th at 23. The president must "explain[] why his actions should count as official other than to say they fit within the ambit of his Take Care Clause duties. They might, or they might not, depending on the context in which he acted." *Id.* at 24.

Conforming to this standard, this Court recognized that the task is not to decide whether tweeting is categorically official, but to make a tweet-by-tweet inquiry. The Court applied that rule to Trump's other tweets. It held that general facts about the @realDonaldTrump account had little probative value because they were not specific to any particular tweet. Op. 51–52. It further held that Trump could not rely on general evidence that Dan Scavino helped operate the account because the inquiry is "fact-specific" and the Court could not presume Scavino participated in transmitting any particular tweet. *Id.* at 50–52. The Court then held that Trump "bears the burden to show, through contextual evidence, that a particular tweet can reasonably be construed as official conduct" and that because he "essentially offered no such evidence, he has not carried his burden as to any tweet." *Id.* at 52.

That same reasoning controls the 2:24 p.m. tweet. Trump did not submit tweet-specific evidence showing who drafted it, who transmitted it, whether any government advisor participated in it, whether it was organized through official channels, what contemporaneous official purpose it served, or how it differed from the earlier Pence-pressure tweets the Court deemed unofficial. The Court's observation that "[n]either side has offered specific facts" about the tweet confirms the deficiency. *Id.* at 54. Because Trump bore the burden on summary judgment, the absence of specific facts required denial of immunity.

Trump's reliance on Rule 56(c)(3) does not cure the problem. Trump Opp'n 6. Rule 56(c)(3) permits a court to consider materials in the record not cited by the parties, but it does not

relieve the summary judgment movant of his burden; nor does it permit the Court to draw inferences against the nonmovants. Fed. R. Civ. P. 56(c)(3).

**III. Trump fails to demonstrate that he was tweeting as an office holder rather than an office-seeking candidate at 2:24 p.m.**

**A. Trump does not meaningfully dispute the evidence indicating the tweet was unofficial.**

Trump does not meaningfully dispute the abundant context indicating that he was acting in his private capacity at 2:24 p.m. For instance, he does not dispute that he was in the dining room (rather than the Oval Office): where there was no official documentation of his activities (*e.g.* the White House photographer was turned away, the Presidential Daily Diary was blank); where he watched the rioters on Fox News after he was not permitted to join them; where White House staff understood he wanted to be alone, and where he spoke with his personal attorney and lobbied members of Congress to help him overturn the election. Dkt. No. 228 at 4–5 (Pls.' Mot. for Recons., hereinafter "Mot.").

Nor does Trump's opposition offer any substantive distinction between the 2:24 p.m. tweet and the January 6 Pence-pressure tweets this Court held were unofficial. The Court held that Trump's contemporaneous January 5 and January 6 tweets about what Vice President Pence "needed to do" during the Joint Session were unofficial because they were "those of a candidate trying to retain office." Op. 52–53. Trump does not dispute that the 2:24 p.m. tweet is more of the same, with the same target, subject, rhetoric, and audience.

Trump's only response is that "the tweet could at least reasonably be understood as part of the President's response to a disruption of Congress's official proceedings… and that settles the issue." Trump Opp'n 8. But that is tantamount to saying that the tweet is official because it is a President's response to a matter of public concern. *Blassingame* and *Trump* reject such circular logic and require more. The Court must look to the content, form, and context of the speech to

determine whether Trump was responding to the disruption as the President or as a candidate continuing his efforts to retain office. *See Blassingame*, 87 F.4th at 15 (rejecting the premise that speech on matters of public concern is automatically official because that theory "does not rule out much when the speaker is the President"); *Trump*, 603 U.S. at 629–30 (requiring a content, form, and context analysis for tweets). Thus, a tweet is not transformed into an official act simply because it concerns the disruption of Congress's official proceedings.

Invoking the tweet's content, Trump next argues that the "content also shows that the President communicated to the public that he understood their pain, but the matter was finished—Pence had failed to do his duty, and further protests in Congress could be counterproductive." Trump Opp'n 7. But the tweet did not convey "further protests" were "counterproductive." It did not ask rioters to leave, disperse, remain peaceful, respect police, or allow Congress to resume. That (among other things) distinguishes it from the later Rose Garden video and the 6:01 p.m. tweet. Instead, the 2:24 p.m. tweet accused Pence of lacking courage and encouraged rioters to continue by stating, "USA demands the truth!" The fact that Trump's response was to incite the attackers at a key moment during the Capitol breach debunks his content-related "office holder" plea and highlights the relevance of the tweet to Plaintiffs' case.

### B.  Trump does not demonstrate that the Court's advisor-involvement conclusion was correct.

Trump argues that the President need not run every communication through White House advisors, attempting to dismiss the advisor-timeline evidentiary gap as irrelevant. But Plaintiffs do not contend that advisor involvement is a prerequisite for immunity. Rather, they challenge the Court's reliance on advisor involvement without record evidence tying any advisor to the 2:24 p.m. tweet and despite evidence that the only clear advisor request was for something entirely different from Trump's tweet (a public statement aimed at quelling the violence at the Capitol).

The involvement of official advisors in transmitting electronic communications can support an immunity finding. *See Trump*, 603 U.S. at 630; *Lindke v. Freed*, 601 U.S. 187, 203 (2024) (recognizing that, in the social-media context, use of government staff to make a post can matter to whether the official was conducting government business).

But the record does not establish that White House advisors entered the dining room before the tweet was drafted or posted; that any advisor advised Trump to post the tweet; or that any advisor drafted, edited, reviewed, approved, transmitted, or organized the tweet. Nor does the record establish that the tweet was part of an official White House effort to respond to the Capitol breach. To the contrary, the record demonstrates that Trump sought to separate himself from the trappings of his official office (documentation, photographs, and advisors) when he retreated to the dining room to watch Fox News, call his personal attorney, and lobby members of Congress to help get him reelected. *See* Mot. 10–11 (discussing in detail the record concerning the 2:24 p.m. tweet).

Trump in passing suggests that the tweet was responsive to advice from his advisors, arguing "[t]he President must be free to agree or disagree with his advisors." Trump Opp'n 9. But even assuming advisors entered the dining room before the tweet issued, Trump fails to demonstrate that the tweet was, in fact, responsive to them. White House officials asked Trump to make a public statement calming the rioters. Trump outright refused. "No statement was forthcoming." Mot. 5 (quoting Select Comm.'s Final Rep., Dkt. No. 173-24, at 596). Trump chose instead to proceed with a separate and unrelated message: part of the campaign efforts he had engaged in throughout the morning and afternoon. Trump's decision to rebuff his advisors' intrusion does not evidence that his tweet was official.

Trump also does nothing to defend his erroneous construction of the law—that is, his reliance on the principle that rejecting advisor advice suffices to make conduct official. As Plaintiffs explained in their motion, the immunity inquiry cannot be collapsed into that principle. *Blassingame* makes clear that it is *supporting* acts from the Executive Branch that matter (whether an activity is affirmatively "organized and promoted by official White House channels and government officials"). 87 F.4th at 21. And Trump's contrary construction would mean that any act taken by the president—no matter how outlandish (like driving drunk) or plainly office-seeking (like firing a campaign pollster)—would become official simply because they occurred after the President received some advice about not engaging in such acts from government officials.

### C. Trump's location at the White House cannot carry the day.

The remaining contextual fact on which the Court relied was that Trump was in the White House. That fact cannot carry Trump's burden when the immunity inquiry is "grounded in 'the nature of the function performed, not the identity of the actor.'" *Clinton*, 520 U.S. at 695. The President's location in his home is thus not dispositive.

And Trump does not even dispute that the White House dining room setting is especially weak evidence of official conduct. Trump was not in the Oval Office meeting with government officials about Executive Branch responsibilities. He was in the dining room, where he had retreated after being prevented from joining the march to the Capitol because the room had a television. He may as well have been in his bedroom: official documentation halted; the White House photographer was turned away; he watched Fox News; White House staff understood he wanted to be alone; and he spoke with his personal attorney. Mot. 4–5.

Because Trump does not even try to argue that the White House dining room bears official significance, on this record, this Court should hold that the dining room functioned as a private setting for unofficial political activity.

11

IV.    **In the alternative, the Court should certify the 2:24 p.m. tweet immunity question under § 1292(b).**

If the Court declines reconsideration, it should certify the issue for interlocutory appeal. Neither Trump nor the United States disputes that this Court has the power to certify its immunity holding on the 2:24 p.m. tweet for interlocutory review. *Cf.* Fed. R. Civ. P. 62.1(a) ("[Where] a timely motion is made for relief that the [district] court lacks authority to grant because an appeal is pending, the court may state that the motion raises a substantial issue.") (citation modified).[3]

Section 1292(b) permits certification where an order involves a controlling question of law, substantial ground for difference of opinion, and immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Trump fails to undermine Plaintiffs' showing that all three criteria are satisfied.

First, the ruling involves a controlling question of law: under *Blassingame*, *Trump*, and Rule 56, whether a court may grant official-act immunity at summary judgment for a discrete presidential communication where the immunity proponent did not identify communication-specific facts, the Court found that neither side offered specific facts about that communication, and the ruling rested on White House location plus possible advisor involvement. Op. 54–55. Contrary to Trump's assertion that Plaintiffs merely dispute the application of settled law to facts, the issues raised are legal ones about the governing analytical framework, burden, and permissible inferences in a presidential-immunity adjudication.

---

[3] Any other conclusion would create untenable results. If one party could deprive the district court of authority to certify the opposing party's adverse rulings simply by filing the first notice of appeal from the portions of an interlocutory order it lost, 28 U.S.C. § 1292(b) practice would devolve into a race to appeal. The first filer would dictate the universe of issues presented to the court of appeals, while the opposing party would lose any meaningful opportunity to seek contemporaneous review of adverse rulings arising from the same order.

Second, there is substantial ground for difference of opinion. The issue arises at the intersection of two recent and important presidential-immunity decisions: *Blassingame* and *Trump*. 87 F.4th 1; 603 U.S. 593. The Court itself has recognized that public presidential communications require a fact-specific content, form, and context inquiry. *Blassingame*, 87 F.4th at 15; *Trump*, 603 U.S. at 629–30. It also recognized, as to other tweets, that general facts about the Twitter account and general staff involvement do not satisfy Trump's burden as to particular tweets. Yet for the 2:24 p.m. tweet, the Court reached the opposite result despite acknowledging that neither side offered specific facts. Op. 54–55. There is substantial ground for difference of opinion on whether White House location and possible advisor involvement can suffice under these circumstances, particularly given that Trump—who bore the burden at summary judgment— did not address the 2:24 p.m. tweet.

Third, judicial economy strongly favors certification. Trump has appealed the aspects of the March 31 Order denying him immunity, and the United States has appealed the Westfall Act ruling. Dkt. No. 220; Dkt. No. 224. Plaintiffs seek only to place before the D.C. Circuit the companion immunity issue decided against them in the same order and governed by the same legal framework. Certification now would permit the same court of appeals to address the 2:24 p.m. tweet alongside the pending immunity appeals, avoiding piecemeal proceedings rather than creating them.

Any other outcome results in serious inefficiencies. If this Court does not certify but then reconsiders its holding on the tweet *after* the appeal is resolved—as Trump urges—Trump will simply waylay the litigation again by exercising his right to an automatic appeal. If the 2:24 p.m. tweet remains immunized until after final judgment—when Plaintiffs can appeal as a matter of

13

course—Plaintiffs may be forced to try the case on a record missing a critical contemporaneous communication, only to litigate the issue later.

Fairness also strongly favors certification. Plaintiffs cannot safely obtain that review by simply filing a cross-appeal. Section 1292(b) requires district-court certification as the "indispensable first step" of a permissive interlocutory appeal. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 19 F.4th 472, 476 (D.C. Cir. 2021); *see also Roth v. King*, 449 F.3d 1272, 1281–83 (D.C. Cir. 2006) (explaining that review of an uncertified purported cross-appeal challenging a grant of immunity is "at most discretionary"). Thus, certification is warranted such that both parties can have finality on the immunity issues.

## CONCLUSION

For the foregoing reasons and those stated in Plaintiffs' motion, the Court should reconsider its ruling that Trump acted in an official capacity when he posted his 2:24 p.m. tweet and hold that Trump did not carry his burden to establish official-act immunity for that communication. In the alternative, the Court should certify the issue for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: May 28, 2026                          Respectfully submitted,

                                             */s/ Joseph Sellers*
                                             Joseph M. Sellers, Bar No. 318410
                                             Brian Corman, Bar No. 1008635
                                             Alison S. Deich, Bar No. 1572878
                                             Alisa Tiwari (appl. for admission pending)
                                             Nina Jaffe-Geffner, Bar No. 90011459
                                             COHEN MILSTEIN SELLERS & TOLL
                                             PLLC
                                             1100 New York Avenue N.W.
                                             Eighth Floor Washington, D.C. 20005
                                             Telephone: 202-408-4600

14

Facsimile: 202-408-4699
jsellers@cohenmilstein.com
bcorman@cohenmilstein.com
adeich@cohenmilstein.com
atiwari@cohenmilstein.com
njaffegeffner@cohenmilstein.com

Anthony P. Ashton, Bar No. MD25220
NAACP
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
Telephone: 410-580-5777
aashton@naacpnet.org

*Attorneys for Plaintiffs Barbara J. Lee, et al.*


*/s/ Edward G. Caspar*
Edward G. Caspar, D.C. Bar No. 1644168
Marc P. Epstein, D.C. Bar No. 90003967
Jeffrey Blumberg, D.C. Bar No. 432928
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, DC 20005
Tel: 202-662-8600
ecaspar@lawyerscommittee.org
mepstein@lawyerscommittee.org
jblumberg@lawyerscommittee.org

Faith E. Gay, *pro hac vice*
Joshua S. Margolin, *pro hac vice*
Babak Ghafarzade, *pro hac vice*
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
jmargolin@selendygay.com
bghafarzade@selendygay.com

William J. Blechman, *pro hac vice*
Elizabeth B. Honkonen, *pro hac vice*
SPERLING KENNY NACHWALTER
Four Seasons Tower – Suite 1100

15

1441 Brickell Avenue
Miami, FL 33131
Tel: 305-373-1000
wblechman@sperlingkenny.com

*Attorneys for Plaintiffs Conrad Smith, et al.*


/s/ *Matthew Kaiser*
Matthew Kaiser, D.C. Bar No. 486272
Sarah R. Fink, D.C. Bar No. 166663
KAISER PLLC
1099 Fourteenth Street N.W.
8th Floor Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
sfink@kaiserlaw.com

*Attorneys for Plaintiff Eric Swalwell*


/s/ *Patrick Malone*
Patrick A. Malone, Bar No. 397142
Daniel Scialpi, Bar No. 997556 (application
for admission forthcoming)
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

Cameron Kistler, Bar No. 1008922
Kristy Parker, Bar No. 1542111
Erica Newland, Bar No. MD0141
UNITED TO PROTECT DEMOCRACY
2020 Pennsylvania Avenue N.W. #163
Washington, D.C. 20006
Telephone: 202-579-4582
cameron.kistler@protectdemocracy.org
kristy.parker@protectdemocracy.org
erica.newland@protectdemocracy.org

Genevieve C. Nadeau, Bar No. 979410
UNITED TO PROTECT DEMOCRACY

16

15 Main Street, Suite 312
Watertown, MA 02472
Telephone: 202-579-4582
genevieve.nadeau@protectdemocracy.org

*Attorneys for Plaintiffs James Blassingame and Sidney Hemby*

*/s/ Mark Zaid*
Mark S. Zaid, Esq., D.C. Bar No. 440532
Bradley P. Moss, Esq., D.C. Bar No. 975905
MARK S. ZAID, P.C.
1250 Connecticut Avenue N.W. Suite 700
Washington, D.C. 20036
Telephone: 202-498-0011
Facsimile: 202-330-5610
Mark@MarkZaid.com
Brad@MarkZaid.com

Matthew Kaiser, D.C. Bar No. 486272
Sarah R. Fink, D.C. Bar No. 166663
KAISER PLLC
1099 Fourteenth Street N.W. 8th Floor
Washington, D.C. 20005
Telephone: 202-640-2850
mkaiser@kaiserlaw.com
sfink@kaiserlaw.com

*Attorneys for Plaintiff Sandra Garza*

*/s/ Patrick Malone*
Patrick A. Malone, Bar No. 397142
Daniel Scialpi, Bar No. 997556
PATRICK MALONE & ASSOCIATES, P.C.
1310 L Street N.W. Suite 800
Washington, D.C. 20005
Telephone: 202-742-1500
Facsimile: 202-742-1515
pmalone@patrickmalonelaw.com
dscialpi@patrickmalonelaw.com

*Attorneys for Plaintiffs Marcus J. Moore et al.; Bobby Tabron et al.; and Briana Kirkland*

17

**CERTIFICATE OF SERVICE**

I certify that on May 28, 2026, a copy of the foregoing was filed with the Clerk of

Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Joseph Sellers*
Joseph M. Sellers

18