**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA J. LEE, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | **Case No. 21-cv-00400 (APM)**<br><br>***Consolidated Cases:***<br>*21-cv-00586 (APM)*<br>*21-cv-00858 (APM)*<br>*21-cv-02265 (APM)*<br>*21-cv-00010 (APM)*<br>*21-cv-00011 (APM)*<br>*21-cv-00034 (APM)*<br>*21-cv-00038 (APM)* |

**PRESIDENT DONALD J. TRUMP'S NOTICE OF OPPOSITION TO PLAINTIFFS'
MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL**

Defendant President Donald J. Trump opposes Plaintiffs' motion for an extension of time to file a notice of cross-appeal from this Court's March 31, 2026 Order. Plaintiffs seek additional time to pursue an interlocutory appeal from the portions of that Order recognizing official-acts immunity. That proposed appeal is not a proper cross-appeal: the ruling that Plaintiffs now seek to appeal grants immunity rather than denies it, and the collateral-order doctrine does not permit an immediate plaintiff-side appeal from a grant of immunity. Plaintiffs cannot evade this jurisdictional bar by invoking pendent appellate jurisdiction. That doctrine reaches non-appealable rulings only when they are inextricably intertwined with an order properly on appeal—that is, when resolving the latter necessarily resolves the former. The immunity determinations that Plaintiffs challenge fail that test: they are fact-bound questions that would not be resolved by deciding the issues now on appeal. Indeed, the D.C. Circuit has held that a grant of immunity remains fully reviewable after final judgment even when a denial of immunity in the same order is appealed at once—confirming that the two rulings are not intertwined.

1

Nor have Plaintiffs shown excusable neglect or good cause for extending the Rule 4 deadline. Their pending motion for reconsideration or certification does not convert a nonfinal, nonappealable grant of immunity into an appealable collateral order. If Plaintiffs obtain certification, they may pursue the permissive interlocutory-review procedure Congress supplied. If they do not, they may seek review after final judgment. The Plaintiffs' motion should be denied.

**ARGUMENT**

**I.      Plaintiffs Identify No Appealable Order from Which They May Cross-Appeal.**

**A. The Collateral-Order Doctrine Does Not Permit Plaintiffs' Proposed Cross-Appeal.**

Appellate jurisdiction is based on finality. Courts of appeals have jurisdiction over "final decisions" under 28 U.S.C. § 1291, and the collateral-order doctrine is a narrow exception. It permits immediate review for only the small class of orders that conclusively resolve an important issue separate from the merits and would be effectively unreviewable after final judgment. *Will v. Hallock*, 546 U.S. 345, 349–50 (2006); *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867–68 (1994).

That narrow exception applies asymmetrically in immunity cases. A defendant may immediately appeal a denial of immunity because immunity from suit is an entitlement not to stand trial and not to suffer the burdens of litigation, which is lost once the case proceeds. *Blassingame v. Trump*, 87 F.4th 1, 29 (D.C. Cir. 2023) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see Coinbase, Inc. v. Bielski*, 599 U.S. 736, 742 & n.4 (2023). The converse does not hold. A plaintiff challenging a grant of immunity loses nothing by waiting. Full review remains available after final judgment, and postponing that review does not impair the plaintiff's claimed right to proceed.

2

The D.C. Circuit has accepted this distinction, and it is dispositive here. In *Roth v. King*, the court entertained the defendants' collateral-order appeal from a partial denial of immunity, but dismissed the plaintiffs' cross-appeal from a partial grant of immunity. 449 F.3d 1272, 1280–82 (D.C. Cir. 2006). The court held that it "agree[d] with [its] sister circuits, which have uniformly held that an order granting immunity 'does not satisfy the collateral order doctrine and may not be immediately appealed.'" *Id.* at 1281–82 (emphasis in original) (quoting *Baird v. Palmer*, 114 F.3d 39, 43 (4th Cir. 1997)). That rule controls here.

Plaintiffs' proposed cross-appeal falls on the wrong side of *Roth*'s line. The only portion which is adverse to them, and thus could ultimately be appealed, *So v. Suchanek*, 670 F.3d 1304, 1309 (D.C. Cir. 2012), is exactly what *Roth* held could not be done via cross-appeal: the portion of the Order recognizing immunity for official conduct. That ruling is neither a final judgment nor an appealable collateral order, and Plaintiffs are therefore limited to review, if necessary, after final judgment or through a properly certified discretionary appeal. A purported cross-appeal now would be "an interlocutory appeal from a non-appealable order," destined for dismissal by the Court of Appeals. *United States v. DeFries*, 129 F.3d 1293, 1303 (D.C. Cir. 1997); *Roth*, *supra.* Granting an extension of time to facilitate the filing of a jurisdictionally defective notice would serve no purpose.

### B. Pendent Appellate Jurisdiction Does Not Apply.

Nor can Plaintiffs avoid those jurisdictional limits by invoking pendent appellate jurisdiction. The Supreme Court has warned that "a rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay *Cohen*-type collateral orders into multi-issue interlocutory appeal tickets." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 49–50 (1995). Thus, pendent appellate jurisdiction is "often suggested, occasionally tempting, but only rarely appropriate," and exists only when review of the pendent matter is necessary "to ensure meaningful

review" of, or the pendent matter is "inextricably intertwined with," the appealable order, *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 199 (D.C. Cir. 2004) (citations omitted), or "when substantial considerations of fairness or efficiency demand it," *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1026 (D.C. Cir. 1997) (citations omitted).

Plaintiffs wrongly assert, in conclusory terms, that pendent appellate jurisdiction applies to their proposed cross-appeal here, because the issues it could raise are "inextricably intertwined" with those raised by President Trump's immunity appeal. That is wrong. Two issues are only "inextricably intertwined" when review of one is necessary to ensure meaningful review of the other, or when the same specific question underlies both rulings such that resolving one necessarily resolves the other. *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 679 (D.C. Cir. 1996); *Lam Yeen Leng v. Pinnacle Performance, Ltd.*, 474 F. App'x 810, 814 (2d Cir. 2012).

That standard is not met here. *Roth* held that plaintiffs can obtain meaningful review of the portion of an order granting immunity after final judgment, even when the portion of the same order that partially denied immunity is reviewed immediately. 449 F.3d at 1281–82. The same is true here: deciding whether other alleged conduct by President Trump was official conduct does not decide the fact-intensive question whether the 2:24 p.m. Tweet was official conduct, which is the case. Further, if the Court of Appeals were to reverse the denial of immunity, that disposition would eliminate Plaintiffs' claims regardless of how the Tweet is characterized, and it would not resolve Plaintiffs' other possible challenges to the grant of immunity. Adhering to the ordinary collateral-order rule here is thus both fair and efficient: it avoids burdening the appellate court with fact-intensive questions that may ultimately prove unnecessary, while fully preserving Plaintiffs' ability to seek review after final judgment. Indeed, the Supreme Court has warned that departures from that rule generally undermine these interests. *See Swint,* 514 U.S. at 49–50.

4

Plaintiffs' lone authority does not aid them. Plaintiffs cite *Agudas Chasidei Chabad v. Russian Federation* only in passing. 528 F.3d 934, 950 (D.C. Cir. 2008). *Agudas* is inapposite because it involved an underlying final order and a logically antecedent question—whether the case should be litigated in the United States at all. *Id.* This case is different: the appealable order is wholly interlocutory, Plaintiffs seek review of a separate grant of immunity that *Roth* says is not immediately appealable, and *Swint* counsels against expanding a collateral-order appeal into a multi-issue interlocutory appeal. *See Swint*, 514 U.S. at 49–50; *Gilda Marx,* 85 F.3d at 678 ("[*Swint*] involved a number of factors militating against pendent appellate jurisdiction . . . the appealable order was itself interlocutory, suggesting a greater threat to orderly procedure . . ."). Accordingly, the requested extension would not preserve a valid cross-appeal.

## II.    Plaintiffs Have Shown Neither Excusable Neglect nor Good Cause.

Rule 4(a)(5) permits an extension only if the movant shows "excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A)(ii). The two standards occupy distinct domains. Good cause applies when the need for more time is caused by circumstances outside the movant's control, such as where "'for example, the Postal Service fails to deliver a notice of appeal,'" *Webster v. Pacesetter, Inc.*, 270 F. Supp. 2d 9, 14 (D.D.C. 2003) (quoting Fed. R. App. P. 4, Advisory Committee's Notes to 2002 Amendments). The "excusable neglect standard applies in situations . . . occasioned by something within the control of the movant." *Slovinec v. Am. Univ.*, 552 F. Supp. 2d 12, 13–14 (D.D.C. 2008) (quoting Fed. R. App. P. 4(a)(5)(A)(ii), Advisory Committee's Notes).

Because there can be no contention that Plaintiffs' tactical decision to delay filing a (doomed) cross-notice of appeal was due to any external factor, Plaintiffs must meet the excusable neglect standard, which they cannot do.[1] Plaintiffs' argument "bears no resemblance to the

---

[1] Even if that standard applied—which it doesn't—Plaintiffs would also fail to meet the good cause standard. Good cause exists only when the need for an extension arises from circumstances outside

example cited by the Advisory Committee" for good cause. *Webster*, 270 F. Supp. 2d at 15. They indisputably knew of the March 31 Order, knew the appellate rules, and—under their own jurisdictional theory—could have filed a protective notice before the deadline.

Plaintiffs' assertion that they filed their motion "in an abundance of caution," to "preserve this alternative path to appellate review" does not supply the showing Rule 4(a)(5) demands. "Abundance of caution" is not a recognized ground for relief under Rule 4(a)(5)(A)(ii); the Rule requires excusable neglect or good cause, not tactical maneuver or a desire to keep options open. Plaintiffs' candid admission that the extension they seek is a tactical hedge confirms that they faced no genuine impediment to filing—they simply preferred to wait and see how the Court rules on their pending motion before committing to a cross-appeal. That is a tactical choice, not a basis for extending a jurisdictional deadline.

The excusable-neglect factors confirm that relief is unwarranted. Courts consider "(1) the risk of prejudice to the other side; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay and whether it was within counsel's reasonable control; and (4) whether counsel acted in good faith." *Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 479 (D.C. Cir. 2016). The first two factors—prejudice and delay—favor denial. Plaintiffs' proposed cross-appeal would add a plaintiff-side challenge to a single Tweet to an already multi-issue consolidated appeal, without aiding meaningful review of the immunity issues

---

the movant's control. *Webster,* 270 F. Supp. 2d at 15. Even "inadvertence, oversight, or neglect of counsel … does not constitute good cause." *Inst. for Pol'y Stud. v. CIA*, 246 F.R.D. 380, 385 (D.D.C. 2007) (quoting *Hegmann v. United States*, 745 F. Supp. 886, 890–91 (E.D.N.Y. 1990)). Plaintiffs' tardiness here is not from oversight, but from the deliberate tactical choice to defer filing a notice of cross-appeal while awaiting this Court's ruling on their motion. It falls far short of good cause. "Plaintiffs could have—with minimal time, energy, and expense—filed a timely notice of appeal, . . . Thus, Plaintiffs have failed to demonstrate 'good cause' justifying a late filing of their notice of appeal." *Clowers v. OneWest Bank*, FSB, 572 F. App'x. 822, 824 (11th Cir. 2014).

President Trump has placed before the Court of Appeals. It would also risk delaying resolution of those appeals, contrary to the interest in prompt review of immunity questions.

The third factor—the reason for the delay and whether it was within counsel's control—is particularly important. *Inst. for Pol'y Stud. v. CIA*, 246 F.R.D. 380, 383 (D.D.C. 2007) (citation omitted). Plaintiffs identify no circumstance that prevented them from filing a timely protective notice. Their sole explanation is that they are awaiting a ruling on their pending motion for reconsideration. But that motion did not prevent a notice of cross-appeal. If Plaintiffs believed pendent appellate jurisdiction existed, they could have timely filed a cross-notice and allowed the Court of Appeals to address jurisdiction. If certification is granted, which it should not be, Plaintiffs can pursue permissive review under § 1292(b) and Federal Rule of Appellate Procedure 5. If certification is denied, as it should be, they can seek review after final judgment. But there is no scenario where the pending motion justifies a pointless and unnecessary extension.

Plaintiffs also suggest in passing that "newly raised jurisdictional issues" at the May 21, 2026 hearing provide an independent basis for excusable neglect. That contention is meritless. Post-order jurisdictional disputes—regarding the extent of *this* Court's jurisdiction—do not excuse Plaintiffs' decision not to file a timely protective notice of cross-appeal. Plaintiffs were aware of the appeal deadline, were represented by experienced counsel, and could have filed a protective notice at minimal cost while simultaneously litigating the jurisdictional issues they now invoke. The existence of a jurisdictional dispute in the trial court is not the kind of extraordinary circumstance that excuses a missed appellate deadline; it is a routine feature of complex litigation that counsel must navigate without forgoing basic procedural safeguards.

The fourth factor—counsels' good faith—does not change the result. Even assuming Plaintiffs acted in subjective good faith, the absence of a reasonable excuse for failing to file a

timely protective notice bars a finding of excusable neglect. The pending reconsideration/certification motion may bear on Plaintiffs' preferred appellate path, but it does not supply a basis to extend the deadline for a jurisdictionally defective cross-appeal. Plaintiffs therefore have not shown excusable neglect. The motion should be denied.

Dated: June 15, 2026.

/s/ Jonathan M. Shaw
Jonathan M. Shaw
D.C. Bar No. 446249
**Dhillon Law Group, Inc.**
2121 Eisenhower Ave, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 574-1206
Facsimile: (415) 520-6593
jshaw@dhillonlaw.com

Josh Halpern
JH Legal PLLC
1100 H Street NW, Suite 840
Washington, DC 20005
Tel. (610) 405-5531
jhalpern@jhlegalpllc.com

Michael J. Walsh, Jr.
D.C. Bar No. 483296
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Facsimile: (202) 799-5000
mike.walsh@us.dlapiper.com

Caryn G. Schechtman, Esq.
(*Pro Hac Vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
caryn.schechtman@us.dlapiper.com

Jesse R. Binnall
D.C. Bar No. 79292
**Binnall Law Group PLLC**
717 King Street, Suite 200
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
jesse@binnall.com

*Counsel for President Donald J. Trump*

9

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2026, a copy of the foregoing was filed with the Clerk of Court

using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jonathan M. Shaw*
Jonathan M. Shaw