**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| **BARBARA J. LEE et al.,** | ) | **Case No. 21-cv-00400 (APM)** |
| | ) | |
| **Plaintiffs,** | ) | **Consolidated Member Cases:** |
| | ) | 21-cv-00586 (APM) |
| **v.** | ) | 21-cv-00858 (APM) |
| | ) | 21-cv-02265 (APM) |
| **DONALD J. TRUMP et al.,** | ) | 22-cv-00010 (APM) |
| | ) | 22-cv-00011 (APM) |
| **Defendants.** | ) | 22-cv-00034 (APM) |
| | ) | 23-cv-00038 (APM) |

**MEMORANDUM OPINION AND ORDER**

**I.**

In its Memorandum Opinion issued on March 31, 2026, the court largely denied Defendant Donald J. Trump's motion for summary judgment on the grounds of official-acts immunity. Mem. Op., ECF No. 219.  One exception to that general ruling was a tweet that President Trump sent at 2:24 p.m. on January 6, 2026 ("2:24 p.m. tweet").  *See id.* at 54–55.  It said: "Mike Pence didn't have the courage to do what should have been done to protect our Country and our Constitution, giving States a chance to certify a corrected set of facts, not the fraudulent or inaccurate ones which they were asked to previously certify.  USA demands the truth!"  *Id.* at 54. The court held that the 2:24 p.m. tweet, "based on context alone, [fell] within the outer perimeter of President Trump's official responsibilities."  *Id.* at 55.  The court reasoned that "[t]he President was at the White House at the time" and "he was acting (or not) on the advice of White House advisors," and so the 2:24 p.m. tweet "reasonably can be construed as the act[] of an office-holder and therefore [is] cloaked in official-acts immunity."  *Id.*

Plaintiffs now seek reconsideration of that ruling.  Pls.' Mot. for Recons., ECF No. 228 [hereinafter Pls.' Mot.].  They argue that the court wrongly held in President Trump's favor because he "never sought immunity for [the 2:24 p.m. tweet] in the first place," *id.* at 1, and, even if he had, he failed to carry his burden to show that the tweet reasonably could be understood as the act of an office-holder rather than an office-seeker.  *Id.* at 8–12.  In the alternative, Plaintiffs seek certification of the ruling for interlocutory review.  *Id.* at 16.  And, by separate motion, they ask the court to extend time to file an appeal.  Pls.' Mot. for Extension of Time to File Notice of Appeal, ECF No. 241 [hereinafter Pls.' Mot. for Extension].

For the reasons that follow, the court denies the motion for reconsideration, grants the request to certify for interlocutory review, and grants an extension of time to file a notice of appeal.

## II.

Before reaching the merits, the court addresses jurisdiction.  President Trump and the United States both contend that the court cannot rule on Plaintiffs' motion for reconsideration because his appeal of the immunity ruling divested this court of jurisdiction.  Def.'s Br. in Opp'n to Pls.' Mot., ECF No. 235 [hereinafter Def.'s Opp'n], at 4–5; U.S. Mem. in Opp'n to Pls.' Mot., ECF No. 234, at 2–3.  The court disagrees.

For one, ordinarily, "a party may not appeal from a favorable judgment," *Kalka v. Hawk*, 215 F.3d 90, 96 n.9 (D.C. Cir. 2000), and the court's jurisdiction is divested only as to "those aspects of the case involved in the appeal," *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (internal quotation marks omitted).  The ruling on the 2:24 p.m. tweet was favorable to President Trump and thus is not before the court of appeals.  This court therefore is not divested of jurisdiction to rule on Plaintiffs' motion.

2

For another, Federal Rule of Civil Procedure 62.1(a) expressly authorizes the court to decide the motion.  The rule provides that, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court" has three options.  Fed. R. Civ. P. 62.1(a).  It may "defer considering the motion," "deny the motion," or "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  *Id.*  So, even if President Trump's appeal generally divested this court of jurisdiction as to its immunity ruling, Rule 62.1 allows the court to rule—or at least indicate its ruling—on Plaintiffs' motion.

## III.

Now the merits.  Rule 54(b) permits a court to "revise[]" any "order or other decision" "at any time before entry of judgment adjudicating all claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  That rule "recognizes [the court's] inherent power to reconsider an interlocutory order 'as justice requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (*quoting Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985) (Breyer, J.)).  The "as justice requires" standard affords greater flexibility than that applicable to a Rule 59(e) motion as to a final order, *see Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015), and courts in this jurisdiction have looked to whether there are "good reasons" for granting a Rule 54(b) motion.  *United States v. All Assets Held at Bank Julius, Baer & Co.*, 308 F. Supp. 3d 186, 193 (D.D.C. 2018) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)).  Relevant considerations include whether the court failed to consider "data[] that might reasonably be expected to alter the conclusion reached by the court," *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted), or where the movant presents new information that "constitute[s] a change in the court's awareness of the

circumstances," even though it "may not constitute a change in the actual facts of the case," *Jud. Watch v. U.S. Dep't of Army*, 466 F. Supp. 2d 112, 124 (D.D.C. 2006).

**A.**

Plaintiffs' threshold contention is that "[t]he Court's grant of immunity on the 2:24 p.m. tweet exceeded the relief Trump himself sought." Pls.' Mot. at 8.  In other words, President Trump did not seek immunity for that act.  That argument is premised on the absence of any specific mention of the 2:24 p.m. tweet in both President Trump's summary judgment brief and his statement of undisputed facts, as well as his failure to present any contextual evidence regarding that tweet. *See id.*  All of that is true as far as it goes, but it too narrowly construes the relief sought by the motion.

President Trump sought recognition of immunity as to four categories of alleged acts, the last of which was his "alleged failure to take action to halt the events that occurred at the U.S. Capitol on January 6, 2021."  Def.'s Mem. of P. & A. in Supp. of His Mot. for Summ. J. on Absolute Presidential Immunity Grounds, ECF No. 144-1, at 2.  When identifying and describing that category, President Trump cited to acts or omissions alleged in various paragraphs across Plaintiffs' multiple complaints. *Id.* at 2 n.4.  Among the allegations falling within the fourth category was the 2:24 p.m. tweet.[1]  Therefore, contrary to Plaintiffs' contention, President Trump sought immunity as to the tweet "in the first place." Pls.' Mot. at 1.  Reconsideration therefore is not warranted on that ground.

---

[1] President Trump expressly cited to the 2:24 p.m. tweet allegation in the following complaints: (1) Am. Compl., *Blassingame v. Trump*, No. 21-cv-858 (APM), ECF No. 3, ¶ 116; (2) Compl., *Kirkland v. Trump*, No. 22-cv-34 (APM), ECF No. 1, ¶ 106; and (3) Compl., *Tabron v. Trump*, No. 22-cv-11 (APM), ECF No. 1, ¶ 121. And, although he did not cite to the relevant paragraph in other cases, the allegation is contained in each. *See* Compl., *Moore v. Trump*, No. 22-cv-10 (APM), ECF No. 1, ¶ 112; First Am. Compl., *Garza v. Trump*, No. 23-cv-38 (APM), ECF No. 35-3, ¶ 95; Compl., *Swalwell v. Trump*, No. 21-cv-586 (APM), ECF No. 1, ¶ 138; Am. Compl., *Lee v. Trump*, ECF No. 11-1, ¶ 118; Am. Compl., *Smith v. Trump*, No. 21-cv-2265 (APM), ECF No. 89, ¶ 145.

**B.**

Plaintiffs' main contention is that the record does not support a finding that the 2:24 p.m. tweet was an official act for which President Trump is immune. *Id.* at 9–15. Rather, they contend, "the 2:24 p.m. tweet was the activity of an office seeker. The nature of the function performed was a message from Trump's personal Twitter account to his campaign supporters at the Capitol, like a campaign speech." *Id.* at 10. They point out that President Trump presented no evidence that any Executive Branch official participated in drafting the tweet, assert that "Trump issued the tweet as part of a larger set of office-seeking activities," and argue that some usual trappings of the presidency, namely, official photographs and a recording of the President's activities in the Presidential Daily Diary, were absent at the time of the tweet. *Id.* at 10–11. They also contrast the 2:24 p.m. tweet with the later Rose Garden video, which was produced with the assistance of White House staff. *Id.* at 11. They further argue that the content of the tweet confirms that it was not an official act, as it was a message to his supporters that spoke to the Vice President's failure to return disputed electoral votes to states and urged them to demand the truth. *Id.* Finally, Plaintiffs challenge the court's analysis, contending that neither President Trump's presence at the White House nor his interaction with advisors renders the 2:24 p.m. tweet an official act. *Id.* at 12–15.

The court is unpersuaded by these contentions.

Plaintiffs' arguments lose sight of the governing standard: President Trump satisfies his burden "if, based on an appropriately objective, context-specific assessment, his alleged actions can reasonably be understood as the official actions of an office-holder rather than the unofficial actions of an office-seeker." *Blassingame v. Trump*, 87 F.4th 1, 30 (D.C. Cir. 2023). "And if it is a close call, doubts are resolved in favor of the President." Mem. Op. at 7 (citing *Blassingame*,

87 F.4th at 21).  It is at least a reasonable construction of the 2:24 p.m. tweet that it was an official act.  Plaintiffs acknowledge that President Trump was told at 1:21 p.m., minutes after he returned to the White House from the Ellipse, that rioters had started to overrun the Capitol.  Pls.' Mot. at 3.  He then sat in the White House dining room to watch the events unfold.  *Id.* at 4.  A moment of crisis was now before the President of the United States.  A coordinate branch of the federal government was under attack.  It fell to him to decide how the Executive Branch would respond.  He could have used persuasion or force, or both, to put down the riot.  But he chose instead to remain idle and, eventually, post the 2:24 p.m. tweet.  The tweet arguably poured gasoline on the fire, but that President Trump, in Plaintiffs' view, exacerbated the crisis is no less an official act than if he had exercised the powers of the presidency to quell the riot.  *See* Mem. Op. at 55.

Plaintiffs insist that the President's message echoed that of a "campaign speech," Pls.' Mot. at 10, but that is but one plausible characterization of the tweet.  True, it was sent from "Trump's personal Twitter account," *id.*, but Plaintiffs previously accepted such tweets could be official acts.  *See* Mem. Op. at 48.  And while Plaintiffs assert that the President directed the tweet at his "campaign supporters at the Capitol," Pls.' Mot. at 10, there is nothing on the face of the message to suggest such a narrow target audience.

Plaintiffs also contend that the tweet was part "a larger set of office-seeking activities," including his Ellipse Speech, calls before and after the tweet to members of Congress about lodging objections to electoral votes, and phone calls to his personal lawyer, Rudolph Giuliani.  *See id.* at 4–5, 10–11.  Fair enough; that context matters.  But other context clues matter, too, perhaps none more than that, moments before the tweet, two of his closest advisors, Chief of Staff Mark Meadows and White House Counsel Pat Cipollone, implored him to do something to stop the riot.  *See* Def.'s Obj. to Admission of Select Committee Final Report, ECF No. 173, Ex. W,

ECF No. 173-24 [hereinafter Select Report], at 595. The President refused, then sent the 2:24 p.m. tweet. *See id.* at 595–96; Mem. Op. at 54.

Plaintiffs respond that the evidentiary source of that timeline—the Select Committee's report—is ambiguous as to whether Meadows and Cipollone spoke to the President before the 2:24 p.m. tweet. *See* Pls.' Mot. at 12–13. It is not. The order of events established by the Committee is clear: Cipollone walked into Meadows's office shortly after 2:13 p.m. to persuade him to get the President to act; after a brief exchange, the two walked "toward the dining room to meet with the President"; the President posted his tweet at 2:24 p.m.; and "[m]inutes later, Meadows and Cipollone returned from their talk with the President." *See* Select Report at 595–96. That sequence of events cannot reasonably be understood to allow for the possibility that President Trump sent the 2:24 p.m. tweet *before* Meadows and Cipollone entered the dining room.

If there were any doubt, a Department of Justice filing in President Trump's criminal case— which Plaintiffs cite in their motion—confirms the timeline. *See* Pls.' Mot. at 5 (citing Mot. for Immunity Determinations, *United States v. Trump*, No. 23-cr-257 (TSC), ECF No. 252 [hereinafter Smith Mot.]). In asking the court there to find that the 2:24 p.m. tweet was an unofficial act, the Special Counsel wrote:

> [W]hen news broke that rioters had breached the Capitol, the defendant's advisors—including [redacted] Deputy White House Counsel [redacted] and [redacted]—urged the defendant to issue a calming message and make efforts to stop the riot. The defendant refused, responding that the people at the Capitol were angry because the election been stolen. Eventually, all of the defendant's staffers left him alone in the dining room. Fox News continued to report on the growing crisis at the Capitol.
>
> *It was at that point*—alone, watching news in real time, and with knowledge that rioters had breached the Capitol building—that the defendant issued the 2:24 p.m. Tweet attacking Pence for refusing the defendant's entreaties to join the conspiracy and help overturn the results of the election.

Smith Mot. at 141 (emphasis added) (footnotes omitted).  Thus, like the Select Committee, the Special Counsel determined that President Trump's advisors spoke to him minutes *before* he sent the 2:24 p.m. tweet.  That additional context, as this court found, renders it reasonable that the tweet was the act of an office-holder, not an office-seeker.  *See* Mem. Op. at 54–55.

Plaintiffs next try to diminish the significance of the President's rejection of his advisors' pleas to act.  *See* Pls.' Mot. at 13.  Calling the court's reliance on that sequence of events as establishing a "rule," Plaintiffs say it would lead to "incongruous results: It would mean that any act taken by the president—no matter how outlandish (like organizing a poker game) or plainly office-seeking (like firing a campaign pollster)—would become official simply because they occurred after the President received some advice about not engaging in such acts from government officials." *Id.* at 14.  But, of course, the court never established any such "rule." Again, context matters.  The President's advisors were urging him to exercise his official *presidential* powers—not those of an office-seeker—to put an end to the violence at the Capitol. That the President elected not to do so and instead sent the 2:24 p.m. tweet may seem unpresidential, but the court's task is not to evaluate the wisdom of the conduct.  *Cf. Trump v. United States*, 603 U.S. 593, 618 (2024) (observing that the official-acts immunity inquiry cannot explore the President's motives).  It is only to assess, based on context, whether the act can reasonably be construed as official.  The 2:24 p.m. tweet can be so understood.

Finally, Plaintiffs are critical of the court's reliance on the President's physical presence at the White House at the time of the tweet.  Pls.' Mot. at 15.  They insist that fact "cannot bear much weight without contravening the foundational principle that immunity attaches to functions, not to actors or to physical settings." *Id.* (citing *Clinton v. Jones*, 520 U.S. 681, 695 (1997)).  The court does not disagree with that principle; it disagrees, however, that it contravened it.  The President's

presence at the White House matters in the analysis because that is where he learned about the riot at the Capitol, received advice from White House personnel, and made the decision not to act but to send the tweet. This sequence of events distinguishes the President's actions here from those Plaintiffs note would not be official even if performed at the White House, such as taking a call from a child's teacher. *Id.* And this remains true even though President Trump sent the tweet from the White House dining room, rather than, for example, the Oval Office. *See id.* At bottom, President Trump took actions that could reasonably be construed as official from the White House. The location is not dispositive, but it is an important contextual clue that the court had to assess.

For these reasons, the court denies Plaintiffs' motion for reconsideration.[2]

## IV.

Next, the court considers Plaintiffs' request to certify for interlocutory review the issue of the 2:24 p.m. tweet's status. Pls.' Mot. at 16. To start, it is not clear to the court why Plaintiffs require certification. It would be an odd result to make Plaintiffs wait until after entry of a final judgment to seek review on an immunity issue on which they lost, when President Trump already has exercised his right to an interlocutory review of the immunity rulings adverse to him. It makes far more sense that Plaintiffs, too, would have the right to a cross-appeal to promote judicial efficiency and uniformity. *See Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 330 F.3d 523, 527 (D.C. Cir. 2003) (describing circumstances where an appeals court may exercise "pendent jurisdiction," including "'when substantial considerations of fairness or efficiency demand it,' such

---

[2] Nothing in this opinion should be understood to mean that the court agrees with President Trump's view that the content of the 2:24 p.m. tweet alone made it official because it concerned a matter of public interest. *See* Def.'s Opp'n at 6–7. The court previously rejected that very argument. *See* Mem. Op. at 11–14.

as when a non-appealable order is 'inextricably intertwined' with an appealable order" (citation omitted)).[3]

In any event, the court grants certification.  The court agrees with Plaintiffs that the question of the 2:24 p.m. tweet's status as an official act involves a controlling question of law regarding the President's official-act immunity and presents substantial grounds for difference of opinion (beyond, as President Trump suggests, Plaintiffs' own disagreement), and its resolution may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  Additionally, certifying the question for interlocutory review will promote judicial efficiency and fairness.

## V.

The court also grants Plaintiffs' motion to extend the time for appeal.  It does so out of an abundance of caution.  "A timely motion for reconsideration filed within a window to appeal does not toll anything; it 'renders an otherwise final decision of a district court not final' for purposes of appeal."  *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 197 (2019) (quoting *United States v. Ibarra*, 502 U.S. 1, 6 (1991) (per curiam)); *see also Myers v. Comm'r of IRS*, 928 F.3d 1025, 1029–1030 (D.C. Cir. 2019).  If the immunity ruling is treated as a "final decision" for purposes of an interlocutory appeal, the clock to file notice may not have yet started given Plaintiffs' timely filing of a motion for reconsideration.

In any event, the court agrees that Plaintiffs have established at least "excusable neglect" to extend the deadline.  *See* Fed. R. App. P. 4(a)(5)(A)(ii).  Whether neglect is "excusable" requires weighing a number of factors, including "the danger of prejudice to the [non-movant], the length

---

[3] President Trump argues that the D.C. Circuit held in *Roth v. King* that a partial order granting immunity is not immediately appealable under the collateral order doctrine.  *See* Def.'s Opp'n to Pls.' Mot. for Extension, ECF No. 249, at 3 (citing *Roth v. King*, 449 F.3d 1272, 1280–82 (D.C. 2006)).  That may be, but the court "decline[d] to resolve whether the cross-appeal is so 'inextricably intertwined' as to allow for pendent appellant jurisdiction in this case."  *Roth*, 449 F.3d at 1283.  *Roth* therefore does not foreclose an exercise of pendent jurisdiction without a certification for interlocutory review.

of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . . ." *Id.* at 392. "[T]he determination is at bottom an equitable one . . . ." *Id.* at 395.

The four *Pioneer* factors weigh in Plaintiffs' favor. As to the first and second factors, permitting late-filing poses no meaningful prejudice to President Trump, and Plaintiffs did not delay in seeking relief. President Trump asserts that "Plaintiffs' proposed cross-appeal would add a plaintiff-side challenge to a single Tweet to an already multi-issue consolidated appeal, without aiding meaningful review of the immunity issues President Trump has placed before the Court of Appeals. It would also risk delaying resolution of those appeals, contrary to the interest in prompt review of immunity questions." Def.'s Opp'n to Pls.' Mot. for Extension, ECF No. 249 [hereinafter Def.'s Opp'n to Pls.' Mot. for Extension], at 6–7. But adding the single issue that Plaintiffs wish to raise will not add complexity to the appeal—after all, it concerns only one act, a single tweet. Nor will it risk delaying appellate proceedings. The court presumes that the issue can easily be folded into the parties' existing briefing schedule, which has yet to commence. *See* Order, *Lee v. Trump*, No. 26-7049 (D.C. Cir. July 16, 2026) (setting appellants' opening brief deadline as August 10, 2026, and appellees' joint brief deadline as September 4, 2026).

The third factor—the reason for delay and whether it was in counsel's control—also favors Plaintiffs. As Plaintiffs explain, given the pendency of the motion for reconsideration, they did not file a notice of appeal. *See* Pls.' Mot. for Extension at 3. A decision on the motion would allow them to notice both the original decision and the denial of reconsideration. To be sure, as President Trump points out, it was within Plaintiffs' control to file a protective notice, *see* Def.'s Opp'n to

11

Pls.' Mot. for Extension at 7, but this is not a case akin to one of actual neglect or inexcusable error. Plaintiffs simply have attempted to follow an orderly process to tee up a narrow immunity ruling for appellate review.

Finally, Plaintiffs have acted in good faith. President Trump does not assert otherwise. *See id.* at 7–8.

Accordingly, the court grants Plaintiffs' motion to extend time to notice an appeal of this court's ruling regarding the 2:24 p.m. tweet. Plaintiffs shall file their notice of appeal no later than August 5, 2026.

## VI.

For the foregoing reasons, the court (1) denies Plaintiffs' Motion for Reconsideration but grants their request for certification of interlocutory review, ECF No. 228, and (2) grants Plaintiffs' Motion for Extension of Time to File Notice of Appeal, ECF No. 241.

Dated: July 22, 2026

Amit P. Mehta
United States District Judge